# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RICHARD ALLEN, *et al.* | ) | |
| | ) | Civil Action No.: 05-cv-02077 (CKK) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUSSIAN FEDERATION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## THE RUSSIAN FEDERATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b) and the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, and for the reasons stated more fully in the Statement of Points and Authorities in Support of the Russian Federation's Motion to Dismiss Plaintiffs' Complaint, the Russian Federation respectfully moves for the dismissal of all the claims alleged against it in the Plaintiffs' complaint. A proposed order of dismissal is attached hereto.

May 15, 2006

Respectfully submitted,

Jay L. Alexander (DC Bar No. 412905)
Ryan E. Bull (DC Bar No. 481473
Baker Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington D.C. 20004
Telephone: (202) 639-7700
Facsimile: (202) 585-4064

Michael S. Goldberg
(*pro hac vice* pending)
Baker Botts L.L.P.
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

*Counsel to the Russian Federation*

1

**<u>Certificate of Service</u>**

I hereby certify that on May 15, 2006, this motion was electronically filed with the Clerk of the Court, and that, in the same manner, an electronic copy was served on all counsel of record.

Ryan E. Bull

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD ALLEN, *et al.* | ) | |
| | ) | |
| | ) | Civil Action No.: 05-cv-02077 (CKK) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUSSIAN FEDERATION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT THE RUSSIAN FEDERATION'S MOTION TO DISMISS
## PLAINTIFFS' COMPLAINT

Michael S. Goldberg
(*pro hac vice* pending)
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

Jay L. Alexander (DC Bar No. 412905)
Ryan E. Bull (DC Bar No. 481473)
Baker Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington D.C. 20004
Telephone: (202) 639-7700
Facsimile: (202) 585-4064

## **Table of Contents**

Introduction ...................................................................................................................1

Argument .......................................................................................................................1

    A.   The Russian Federation Is Presumptively Immune From Suit In The U.S. ...................2

    B.   The Allegations In The Complaint Establish That No Exception to FSIA
Immunity Applies. ...............................................................................................3

        1.   The Commercial Activity Exception Is Inapplicable Because The Alleged
Conduct Is Not "Commercial" And Had No Direct Effect In The U.S.................4

            a.    *None of the alleged conduct at issue is "commercial activity"* .................4

            b.    *The alleged conduct of the Russian Federation does not directly
effect the United States* ...............................................................................5

        2.   The "Expropriation" Exception Is Inapplicable Because Plaintiffs'
Allegations Satisfy None Of Its Preconditions. .......................................................7

            a.    *Plaintiffs did not have a "right" in the property allegedly taken* ...............7

            b.    *There is no alleged "taking" in violation of international law* ..................9

            c.    *The complaint does not allege the necessary connection to the
United States* ................................................................................................10

        3.   The "Noncommercial Tort" Exception Does Not Apply Because Plaintiffs
Do Not Allege Any Torts In The United States ...................................................11

Conclusion....................................................................................................................12

## Table of Authorities

## CASES

*Antares Aircraft L.P. v. Federal Republic of Nigeria*,
   999 F.2d 33 (2d Cir. 1993) ...................................................................................................6

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989) .............................................................................................................2

*Asociacion de Reclamantes v. United Mexican States*,
   735 F.2d 1517 (D.C. Cir. 1984)...........................................................................................11

*BPA Int'l v. Kingdom of Sweden*,
   281 F. Supp. 2d 73 (D.D.C. 2003).........................................................................................3

*Banco Nacional de Cuba v. Chase Manhattan Bank*,
   658 F.2d 875 (2d Cir. 1981) ..................................................................................................9

*Barr v. Mateo*,
   360 U.S. 564 (1959) ..............................................................................................................5

*Beg v. Islamic Republic of Pakistan*,
   353 F.3d 1323 (11th Cir. 2003) .............................................................................................5

*Carl Marks & Co. v. Union of Soviet Socialist Republics*,
   841 F.2d 26 (2d Cir. 1988) ....................................................................................................2

*Chuidian v. Philippine Nat'l Bank*,
   912 F.2d 1095 (9th Cir. 1990) .............................................................................................10

*Cicippio v. Islamic Republic of Iran*,
   30 F.3d 164 (D.C. Cir. 1994)...............................................................................................11

*Cowin v. Bresler*,
   741 F.2d 410 (D.C. Cir. 1984)...............................................................................................6

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*,
   212 F. Supp. 2d 30 (D.D.C. 2002).........................................................................................6

*Daliberti v. Republic of Iraq*,
   97 F. Supp. 2d 38 (D.D.C. 2000)...........................................................................................3

*Dayton v. Czechoslovak Socialist Republic*,
   834 F.2d 203 (D.C. Cir. 1987).........................................................................................10, 11

*Dayton v. Czechoslovak Socialist Republic,*
      672 F. Supp. 7 (D.D.C. 1986).........................................................................10

*Frolova v. Union of Soviet Socialist Republics,*
      761 F.2d 370 (7th Cir. 1985)...........................................................................2

*Global Index, Inc. v. Mkapa,*
      290 F. Supp. 2d 108 (D.D.C. 2003)..................................................................6

*Gregorian v. Izvestia,*
      871 F.2d 1515 (9th Cir. 1989)......................................................................2, 5

*Jungquist v. Sheik Sultan Bin Khalifa Al Nahyan,*
      115 F.3d 1020 (D.C. Cir. 1997)........................................................................3

*Kozorowski v. Russian Fed'n,*
      124 F.3d 211, 1997 WL 582880 (9th Cir. Sept. 19, 1997)................................2

*Labovitz v. Washington Times Corp.,*
      172 F.3d 897 (D.C. Cir. 1999)..........................................................................6

*Lempert v. Republic of Kazakhstan,*
      223 F. Supp. 2d 200 (D.D.C. 2002)..................................................................3

*Leutwyler v. Office of Her Majesty Queen Rania al Abdullah,*
      184 F. Supp. 2d 277 (S.D.N.Y. 2001) ..............................................................8

*Lord Day & Lord v. Socialist Republic of Vietnam,*
      134 F. Supp. 2d 549 (S.D.N.Y. 2001) ..............................................................8

*Malewicz v. City of Amsterdam,*
      362 F. Supp. 2d 298 (D.D.C. 2005)................................................................10

*Millicom Int'l Cellular v. Republic of Costa Rica,*
      995 F. Supp. 14 (D.D.C. 1998)......................................................................10

*Nemariam v. Fed. Democratic Republic of Ethiopia,*
      400 F. Supp. 2d 76 (D.D.C. 2005)................................................................3, 8

*Persinger v. Islamic Republic of Iran,*
      729 F.2d 835 (D.C. Cir. 1984)........................................................................11

*Peterson v. Royal Kingdom of Saudi Arabia,*
      332 F. Supp. 2d 189 (D.D.C. 2004)..................................................................8

*Peterson v. Royal Kingdom of Saudi Arabia,*
    416 F.3d 83 (D.C. Cir. 2005)...................................................................2, 6, 7, 8, 9

*Phoenix Consulting, Inc. v. Republic of Angola,*
    216 F.3d 36 (D.C. Cir. 2000).........................................................................1, 3

*Republic of Argentina v. Weltover,*
    504 U.S. 607 (1992) .........................................................................................4

*Republic of Austria v. Altmann,*
    541 U.S. 677 (1999) .......................................................................................10

*Riggs Nat'l Corp. v. Comm'r of Internal Revenue Serv.,*
    163 F.3d 1363 (D.C. Cir. 1999).......................................................................9

*Rong v. Liaoning Provincial Gov't,*
    362 F. Supp. 2d 83 (D.D.C. 2005)..........................................................3, 7, 8, 9

*Ruckelshaus v. Monsanto,*
    467 U.S. 986 (1984) .........................................................................................9

*Sampson v. Fed. Republic of Germany,*
    975 F. Supp. 1108 (N.D. Ill. 1997).................................................................8

*Saudi Arabia v. Nelson,*
    507 U.S. 349 (1993) ..................................................................................3, 4, 5

*Smith v. Washington Sheraton Corp.,*
    135 F.3d 779 (D.C. Cir. 1998).........................................................................6

*Soudavar v. Islamic Republic of Iran,*
    67 Fed. Appx. 618, 619 (D.C. Cir. 2003).........................................................6

*Southeastern Leasing Corp. v. Union of Soviet Socialist Republics,*
    493 F.2d 1223 (1st Cir. 1974)..........................................................................2

*Virtual Countries, Inc. v. Republic of South Africa,*
    300 F.3d 230 (2d Cir. 2002) ............................................................................6

*Von Dardel v. Union of Soviet Socialist Republics,*
    736 F. Supp. 1 (D.D.C. 1990)..........................................................................2

*World Wide Minerals v. Republic of Kazakhstan,*
    296 F.3d 1154 (D.C. Cir. 2002)...............................................................1, 5, 9

*Zedan v. Kingdom of Saudi Arabia,*
    849 F.2d 1511 (D.C. Cir. 1988)..................................................................................6

## STATUTES

28 U.S.C. § 1602 .........................................................................................................1

28 U.S.C. § 1603 .........................................................................................................4

28 U.S.C. § 1604 .........................................................................................................3

28 U.S.C. § 1605 ...............................................................................................4, 5, 7, 11

## MISCELLANEOUS

1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 31
    (perm. ed., rev. vol. 1999) ......................................................................................7

## INTRODUCTION

Plaintiffs' complaint alleges that the Russian Federation's tax and criminal enforcement actions against a Russian company, within the borders of Russia, are reviewable in a United States court. The Russian Federation, however, is a sovereign state and presumptively immune from suit in the United States pursuant to the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1602 *et seq*. Just as a Russian court would have no jurisdiction to assess whether the United States government's enforcement actions against Enron, Arthur Andersen or Martha Stewart were appropriate, so this Court is obliged by long-standing principles of sovereign immunity to respect the Russian Federation's authority to enforce tax and criminal laws within its own borders.

The Russian Federation requests this Court to respect its immunity and immediately dismiss the claims against it. Because the Russian Federation is immune from the burdens and expense of defending these claims in a United States court, the Russian Federation is not addressing the many glaring factual and legal defects in the plaintiffs' complaint at this time.

## ARGUMENT[1]

Plaintiffs allege that in 2003, the Russian Federation began to pursue, in Russia, various criminal and tax enforcement actions against Yukos Oil Company ("Yukos") and its officials. *See* Compl. ¶¶ 108-120. Specifically, plaintiffs contend that the Russian Federation has (1) "impos[ed] illegal and confiscatory tax levies and . . . transfer[red] Yukos's most

---

[1]    For the limited purposes of demonstrating its immunity from this lawsuit, the Russian Federation assumes *arguendo* the truth of the facts alleged in the complaint. *See Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). Accordingly, this motion is based solely on the allegations of the complaint, the documents incorporated by reference therein, and matters subject to judicial notice. *World Wide Minerals Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1157 n.2 (D.C. Cir. 2002).

1

important asset to the State," and (2) conducted "the direct seizure of a majority of Yukos shares and . . . intimidat[ed] and harass[ed] Yukos directors and executives." *See id.* ¶ 1.   According to plaintiffs, these actions support claims in the United States for conversion and prima facie tort against the Russian Federation.  The plaintiffs further assert that two public statements — allegedly made by Russian President Vladimir Putin on October 27, 2003, and June 17, 2004, about the Russian Federation's criminal and tax enforcement policies — are actionable as fraud and securities fraud.  *Id.* ¶¶ 86-88, 138, 140, 230-50.

This Court lacks subject matter jurisdiction over plaintiffs' allegations against the Russian Federation because (i) the Russian Federation is a "foreign state," and (ii) the allegations of the complaint affirmatively establish that none of the FSIA exceptions to sovereign immunity applies to the Russian Federation's alleged sovereign conduct in Russia.[2]

### A.     The Russian Federation Is Presumptively Immune From Suit In The U.S.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989); *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 86 (D.C. Cir. 2005). Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts" unless one of the limited exceptions to immunity enumerated within the statute applies.

---

[2]    Courts of the United States have consistently enforced the immunity of the Russian Federation, as well as its predecessors. *See, e.g., Kozorowski v. Russian Fed'n*, 124 F.3d 211, 1997 WL 582880 (9th Cir. Sept. 19, 1997) (immunity from wrongful death claims); *Gregorian v. Izvestia*, 871 F.2d 1515, 1528 (9th Cir. 1989) (immunity for alleged libel in connection with publication of official government policy by Izvestiya newspaper); *Carl Marks & Co. v. Union of Soviet Socialist Republics*, 841 F.2d 26 (2d Cir. 1988) (immunity from suit based on alleged debts repudiated by "Lenin's Bolshevik government" in 1918); *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370 (7th Cir. 1985) (immunity from mental anguish and loss of consortium claims); *Southeastern Leasing Corp. v. Union of Soviet Socialist Republics*, 493 F.2d 1223 (1st Cir. 1974) (immunity in admiralty dispute); *Von Dardel v. Union of Soviet Socialist Republics*, 736 F. Supp. 1 (D.D.C. 1990) (immunity from suit concerning alleged seizure, imprisonment and possible death of diplomat).

*Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *see* 28 U.S.C. § 1604 (explaining that a "foreign state *shall* be immune from the jurisdiction of the courts of the United States and of the States" unless a statutory exception to immunity applies). Moreover, the immunity afforded by the FSIA is an immunity from the "burdens of litigation," not simply an immunity from trial. *See Phoenix Consulting*, 216 F.3d at 39; *Jungquist v. Sheik Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997). To respect and protect the full scope of the Russian Federation's immunity, this Court must dismiss the claims against the Russian Federation at the earliest possible stage. *Phoenix Consulting*, 216 F.3d at 39.

The allegations of the complaint establish the Russian Federation's entitlement to a presumption of immunity by acknowledging that the Russian Federation is a foreign state. *See* Compl. ¶ 30. Once it is established that a defendant "is a foreign sovereign," the plaintiffs must come forward with grounds to dispute the availability of immunity. *See Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 91 (D.D.C. 2005); *see also Nemariam v. Fed. Democratic Republic of Ethiopia*, 400 F. Supp. 2d 76, 80 (D.D.C. 2005); *BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 79-80 (D.D.C. 2003); *Lempert v. Republic of Kazakhstan*, 223 F. Supp. 2d 200, 204 (D.D.C. 2002); *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 42 (D.D.C. 2000). As the allegations of plaintiffs' complaint make clear, they cannot meet that burden.

## B.    The Allegations In The Complaint Establish That No Exception to FSIA Immunity Applies

The Complaint does not even attempt to identify any theory of subject-matter jurisdiction under the FSIA, and instead alleges conclusorily that the Russian Federation is not entitled to immunity. *See* Compl. ¶ 54. Plaintiffs' failure to identify a specific jurisdictional basis under the FSIA confirms that no statutory exception disturbs the presumption of immunity. Moreover, the three exceptions that are most commonly relied upon — (i) the "commercial

activity" exception, 28 U.S.C. § 1605(a)(2); (ii) the "expropriation" exception, 28 U.S.C. §

1605(a)(3); and (iii) the "non-commercial tort" exception, 28 U.S.C. § 1605(a)(5) — are

inapplicable here.  Plaintiffs apparently do not cite to these exceptions in their complaint because

not a single element of any one of them applies.

### 1. The Commercial Activity Exception Is Inapplicable Because The Alleged Conduct Is Not "Commercial" And Had No Direct Effect In The U.S.

The FSIA codified the restrictive theory of sovereign immunity by withdrawing

immunity only for those commercial acts with a direct effect in the United States.  *Nelson*, 507

U.S. at 360-61; *see* 28 U.S.C. § 1605(a)(2).  That exception has no application here for at least

two reasons: (i) the alleged conduct of the Russian Federation, including the alleged tax and

criminal enforcement actions that are central to the complaint, are sovereign, not commercial, in

nature, and (ii) the alleged conduct of the Russian Federation has had no direct effect in the

United States.

### a. None of the alleged conduct at issue is "commercial activity"

The FSIA defines commercial activity as either "a regular course of commercial

conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d).  The "commercial

character of an activity shall be determined by reference to the *nature* of the course of conduct or

particular transaction or act, rather than by reference to its purpose." *Id*. (emphasis added).

Thus, the Supreme Court has explained that "the question is not whether the foreign government

is acting with a profit motive," but instead "whether the particular actions that the foreign state

performs (whatever the motive behind them) are the *type* of actions by which a private party

engages in 'trade and traffic or commerce.'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S.

607, 614 (1992); *see also Nelson*, 507 U.S. at 360-61 (explaining that a foreign state engages in

commercial activity, and thus may be amenable to suit, "where it exercises '*only* those powers

- 4 -

that can also be exercised by private citizens' as distinct from 'those powers peculiar to sovereigns.'") (emphasis added; citation omitted).

The alleged misconduct attributed to the Russian Federation — the alleged imposition and enforcement of allegedly confiscatory taxes, alleged expropriation and tax auction of assets, arrest and prosecution of individuals, and statements of public policy by that nation's President — is plainly not "trade and traffic or commerce," but conduct peculiar to sovereigns. *See Nelson*, 507 U.S. at 349-50 (affirming immunity dismissal upon holding exercise of police powers is inherently sovereign in nature); *World Wide Minerals*, 296 F.3d at 1166 (affirming dismissal after acknowledging that alleged "expropriation of property" is inherently sovereign in nature); *Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1326-27 (11th Cir. 2003) (same); *Gregorian*, 871 F.2d at 1522 (agreeing with amicus curiae brief of the United States that a sovereign's public "commenting on events" constitutes "sovereign or governmental" activities) (internal quotations omitted); *see also Barr v. Mateo*, 360 U.S. 564, 573, 577-78 (1959) (affirming immunity for government official from libel suit based on press release issued by the government official within his sovereign function). Private parties are not capable of imposing tax assessments, arresting property or engaging in any of the other conduct on which plaintiffs' claims rest. The conduct alleged is thus not commercial activity capable of supporting jurisdiction over the Russian Federation in a United States court.

> b. *The alleged conduct of the Russian Federation does not directly affect the United States*

Not only are the sovereign tax and criminal enforcement actions of the Russian Federation not "commercial activity," but this alleged misconduct also occurred in Russia and had no "direct effect" in the United States. 28 U.S.C. § 1605(a)(2). A "'direct effect' . . . is one which has no intervening element, but, rather, flows in a straight line without deviation or

interruption." *Peterson*, 416 F.3d at 91 (*quoting Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994)). The "direct effect" of the conduct alleged in the complaint occurred in Russia, where Yukos violated Russian tax laws and was prosecuted for tax evasion; where shares of a Yukos subsidiary, Yuganskneftegaz, were auctioned; where criminal actions were prosecuted against Yukos employees; and where all additional alleged misconduct took place. None of these actions were even taken against the plaintiffs, much less taken against them in the United States. The alleged indirect economic effect on some of the plaintiffs in the United States resulted, at most, only derivatively from the alleged reduction in Yukos' price per share value. That alleged financial injury cannot support FSIA jurisdiction because it is well established that "mere financial loss" to U.S. residents, standing alone, is not a "direct effect" in the United States. *Soudavar v. Islamic Republic of Iran*, 67 Fed. Appx. 618, 619 (D.C. Cir. 2003); *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1514 (D.C. Cir. 1988) (finding no direct effect in breach of employment contract with American citizen employed abroad); *Global Index, Inc. v. Mkapa*, 290 F. Supp. 2d 108, 115 (D.D.C. 2003) (finding alleged failure of Tanzanian government to satisfy promissory notes in favor of a U.S. company did not have a direct effect in the U.S.); *Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 37 n.5 (D.D.C. 2002) (finding no direct effect in the United States from alleged default by Brazil on sovereign bonds held by U.S. citizens); *see also Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 237-38 (2d Cir. 2002) (no "direct effect" in the United States from allegedly false press release issued abroad that allegedly caused financial injury to U.S. company); *Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993) ("[T]he fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the [commercial activity] exception.").

Accordingly, neither of the two independent preconditions to application of the commercial activities exception is satisfied: the alleged misconduct is not commercial activity and the alleged misconduct did not have a direct effect in the United States.

### 2. The "Expropriation" Exception Is Inapplicable Because Plaintiffs' Allegations Satisfy None Of Its Preconditions

Section 1605(a)(3) only withdraws immunity for a foreign sovereign's taking of property if three predicates exist: *First*, "rights in property" must be taken by the foreign state. *Second*, that taking must be in violation of international law. *Third*, the property at issue must be either (i) present in the United States in connection with a foreign state's commercial activities here or (ii) owned or operated by an agency or instrumentality of the foreign state that engages in commercial activity in the United States. 28 U.S.C. § 1605(a)(3); *see Peterson*, 416 F.3d at 87-88; *Rong*, 362 F. Supp. 2d at 97. Plaintiffs cannot satisfy any of these requirements.

#### a. *Plaintiffs did not have a "right" in the property allegedly taken*

The plaintiffs do not allege that *their* property — their ADRs — has been frozen or taken.[3] Rather, the complaint alleges only that the Russian Federation took (i) shares of Yukos *owned by Hulley Enterprises and Yukos Universal Limited*, neither of which is a plaintiff (Compl. ¶¶ 104, 105); (ii) bank accounts *owned by Yukos* (Compl. ¶ 128, *et seq.*); and (iii) shares of Yuganskneftegaz *owned by Yukos* (Compl. ¶¶ 153, *et seq*). Because these assets never belonged to any of the plaintiffs, none of the plaintiffs has any "rights in [the] property" allegedly taken. *See* 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 31 (perm. ed., rev. vol. 1999) (explaining the hornbook rule that an individual shareholder, by virtue of his ownership of shares, does not have legal or equitable ownership of

---

[3]    Indeed, the plaintiffs either continue to possess their ADRs, or sold them at a time of their own choosing. Compl., ¶¶ 8-29.

the corporation's assets); *see also Peterson*, 416 F.3d at 88 (holding that because assets at issue "were not placed in a private account in his name . . . . [Plaintiff] had no right, contractual or otherwise, to this benefit stream.").

Plaintiffs attempt to allege that the Russian Federation's enforcement actions against Yukos have had the indirect effect of impairing some vague, undefined intangible rights created by their ADRs. Courts, however, routinely limit the expropriation exception to FSIA immunity to alleged takings of tangible property. *See Nemariam*, 400 F. Supp. 2d at 84 (contractual right to recover funds on deposit in bank account are not covered); *Rong*, 362 F. Supp. 2d at 98-101 (shares of stock held in trust are not covered); *Peterson v. Royal Kingdom of Saudi Arabia*, 332 F. Supp. 2d 189, 197 (D.D.C. 2004) (right to receive government social benefits not covered), *aff'd on other grounds*, 416 F.3d at 88.[4] Because plaintiffs do not even attempt to allege the conversion or expropriation of tangible property in which they had proprietary rights, the expropriation exception cannot apply.

Plaintiffs' inability to allege the expropriation of tangible property alone dooms any effort to rely on the expropriation exception. But even if alleged intangible property rights could support application of the expropriation exception, the alleged diminution in the value of plaintiffs' ADRs would still be insufficient to trigger the exception because plaintiffs "had no right, contractual or otherwise," to receive a certain value for their ADR interests. *See, e.g.*,

---

[4]    *See also Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 560 (S.D.N.Y. 2001) ("Property taken within the meaning of the statute means 'physical property' not the right to receive payment.") (citation omitted); *Leutwyler v. Office of Her Majesty Queen Rania al Abdullah*, 184 F. Supp. 2d 277, 289 (S.D.N.Y. 2001) ("Section 1605(a)(3) only applies to the takings of tangible forms of property."); *Sampson v. Fed. Republic of Germany*, 975 F. Supp. 1108, 1117 (N.D. Ill. 1997), *aff'd*, 250 F.3d 1145 (7th Cir. 2001) ("'property' under this section refers to tangible property.") (citation omitted).

*Peterson*, 416 F.3d at 88. Plaintiffs simply do not allege the taking of "rights in property" that could support application of the expropriation exception.

> b.      There is no alleged "taking" in violation of international law

Not only have the plaintiffs suffered no "taking" of any of their rights in property, but the Russian Federation has not taken any property in violation of international law.

*First*, the Russian Federation is not alleged to have taken property without compensation. Rather, it is alleged to have either (i) frozen assets in the manner of a pre-judgment attachment, Compl. ¶ 104, or (ii) auctioned assets in partial satisfaction of Yukos' outstanding tax obligations, Compl. ¶ 159 — neither of which can support application of the expropriation exception.[5] Similarly, the proceeds of the auction of shares of Yuganskneftegaz have been applied against Yukos' tax debts. Offsetting assets against tax debts is a common government function, not a violation of international law. *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 892 (2d Cir. 1981) (declining to hold that international law requires anything more or less than "appropriate compensation" to be paid to owners of property that is allegedly expropriated by the state); *cf. Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) (noting that a "taking" in violation of the Fifth Amendment does not occur until the aggrieved property holder is denied appropriate compensation).

*Second*, it is well-established that a sovereign's taking of property of its own nationals does not violate international law. *See, e.g., Rong*, 362 F. Supp. 2d at 101 ("[E]xpropriation by a sovereign state of the property of its own nationals does not implicate

---

[5]      Plaintiffs' allegation that the tax debts are unlawful is factually and legally wrong. For purposes of this motion, however, the act of state doctrine and international comity require this Court to treat the acts of the Russian Federation in assessing those taxes as valid and lawful. *See World Wide Minerals*, 296 F.3d at 1165-66; *Riggs Nat'l Corp. v. Comm'r of Internal Revenue Serv.*, 163 F.3d 1363, 1368 (D.C. Cir. 1999) (holding act of state doctrine precludes U.S. court from casting doubt on the domestic tax determinations of a foreign sovereign).

settled principals of international law.") (quoting *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1105 (9th Cir. 1990)); *Dayton v. Czechoslovak Socialist Republic*, 672 F. Supp. 7, 9 (D.D.C. 1986), *aff'd* 834 F.2d 203 (D.C. Cir. 1987) (holding sovereign's taking of property of its own nationals does not violate international law or defeat sovereign immunity). Thus, even if the Russian Federation's enforcement of Russian tax or criminal laws had resulted in a "taking" of Yukos assets, that taking would not violate international law because Yukos is a Russian company.

*Third*, even if the plaintiffs had alleged a taking of *their* property by the Russian Federation, they cannot complain of that alleged expropriation until they have exhausted their remedies in the Russian Federation. *See Malewicz v. City of Amsterdam*, 362 F. Supp. 2d 298, 307 (D.D.C. 2005) ("[A] claimant cannot complain that a 'taking' or other economic injury has not been fairly compensated, and hence violates international law unless the claimant has first pursued and exhausted domestic remedies in the foreign state that is alleged to have caused the injury.") (*quoting Millicom Int'l Cellular v. Republic of Costa Rica*, 995 F. Supp. 14, 23 (D.D.C. 1998)); *see also Republic of Austria v. Altmann*, 544 U.S. 677, 714 (Breyer, J., concurring) ("A plaintiff who chooses to litigate in this country in disregard of the post-deprivation remedies in the 'expropriating' state may have trouble showing a 'tak[ing] in violation of international law.'") (citation omitted). The complaint reveals no effort by the plaintiffs to remedy any alleged expropriation of their assets in the Russian Federation.

>   c.  *The complaint does not allege the necessary connection to the United States*

According to the allegations of the complaint, the allegedly taken assets remain in Russia and have no connection with the United States. The fact that the property in question remains in Russia establishes that the expropriation exception does not confer jurisdiction on this

Court to hear plaintiffs' allegations. *See Dayton*, 834 F.2d at 206 (finding expropriation exception inapplicable where property at issue was located outside the United States). Because the allegedly "taken" assets have no connection with the United States, the expropriation exception does not apply.

In sum, none of the three independent preconditions to application of the expropriation exception applies: the alleged misconduct did not result in any taking of any property of the plaintiffs, the alleged misconduct did not violate international law, and the alleged misconduct lacks the necessary connection to the United States.

### 3. The "Noncommercial Tort" Exception Does Not Apply Because Plaintiffs Do Not Allege Any Torts In The United States

The FSIA also withdraws immunity for certain nondiscretionary, noncommercial torts. 28 U.S.C. § 1605(a)(5). For this exception to apply, however, the "entire tort" must occur in the United States. *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 169 (D.C. Cir. 1994) (citing *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984)); *see also Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1525 (D.C. Cir. 1984) ("'the tortious act or omission must occur within the jurisdiction of the United States.'") (citation omitted). According to the Complaint, all of defendants' alleged actions occurred in Russia; only an alleged indirect injury (diminution in the value of ADRs) allegedly occurred in the United States. *See* Compl. ¶¶ 80-178. Thus, the complaint itself establishes that the noncommercial tort exception does not apply in this case.

Rather than point to an applicable exception to sovereign immunity, the facts alleged in the complaint establish that no exception to sovereign immunity applies to the alleged sovereign conduct of the Russian Federation. For that reason, this Court lacks subject matter jurisdiction and must dismiss this action.

## CONCLUSION

While plaintiffs have publicly characterized their lawsuit as "precedent-setting," it
is nothing more than an unprecedented and improper attempt to embroil this Court in ongoing
tax and criminal enforcement efforts by the Russian Federation against Russian corporations and
individuals within the territorial boundaries of the Russian Federation.  Plaintiffs' allegations are
precisely the kind that the FSIA deprives this Court of jurisdiction to hear.  Accordingly, the
Russian Federation requests that this Court dismiss the complaint against it forthwith.

May 15, 2006                                    Respectfully submitted,

                                               Jay L. Alexander (DC Bar No. 412905)
                                               Ryan E. Bull (DC Bar No. 481473)
                                               Baker Botts L.L.P.
                                               1299 Pennsylvania Avenue, N.W.
                                               Washington D.C.  20004
                                               Telephone: (202) 639-7700
                                               Facsimile:  (202) 585-4064

                                               Michael S. Goldberg
                                               (*pro hac vice* pending)
                                               Baker Botts L.L.P.
                                               One Shell Plaza
                                               910 Louisiana Street
                                               Houston, Texas  77002
                                               Telephone: (713) 229-1234
                                               Facsimile: (713) 229-1522

                                               *Counsel to the Russian Federation*

- 12 -

**Certificate of Service**

I hereby certify that on May 15, 2006, this memorandum of law was electronically filed with the Clerk of the Court, and that, in the same manner, an electronic copy was served on all counsel of record.

Ryan E. Bull