## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD ALLEN, *et al.*       )
                         )     Civil Action No.: 05-cv-02077 (CKK)
                         )
        Plaintiffs,     )
                         )
     v.                  )
                         )
RUSSIAN FEDERATION, *et al.*  )
                         )
        Defendants.    )

## MOTION BY MINISTERS ALEXEI KUDRIN AND VIKTOR KHRISTENKO TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b) and the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, and for the reasons stated fully in the Statement of Points and Authorities In Support of the Motion by Ministers Alexei Kudrin and Viktor Khristenko to Dismiss Plaintiffs' Complaint, Alexei Kudrin, Minister of Finance of the Russian Federation, and Viktor Khristenko, Minister of Energy and Industry of the Russian Federation, respectfully move for the dismissal of all the claims alleged against them in the Plaintiffs' complaint. A proposed order of dismissal is attached hereto.


May 15, 2006                          Respectfully submitted,

Jay L. Alexander (DC Bar No. 412905)
Ryan E. Bull (DC Bar No. 481473)
Baker Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington D.C. 20004
Telephone: (202) 639-7700
Facsimile: (202) 585-4064

Michael S. Goldberg
(*pro hac vice* pending)
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

*Counsel to Ministers Alexei Kudrin and
Viktor Khristenko*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RICHARD ALLEN, *et al.*　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　Civil Action No.: 05-cv-02077 (CKK)
　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　)
　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
RUSSIAN FEDERATION, *et al.*　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　)

# STATEMENT OF POINTS AND AUTHORITIES
# IN SUPPORT THE MOTION BY MINISTERS ALEXEI KUDRIN AND VIKTOR
# KHRISTENKO TO DISMISS PLAINTIFFS' COMPLAINT

Michael S. Goldberg　　　　　　　Jay L. Alexander (DC Bar No. 412905)
(*pro hac vice* pending)　　　　　Ryan E. Bull (DC Bar No. 481473)
Baker Botts L.L.P.　　　　　　　　Baker Botts L.L.P.
One Shell Plaza　　　　　　　　　1299 Pennsylvania Avenue, N.W.
910 Louisiana Street　　　　　　　Washington D.C. 20004
Houston, TX 77002　　　　　　　　Telephone: (202) 639-7700
Telephone: (713) 229-1234　　　　Facsimile: (202) 585-4064
Facsimile: (713) 229-1522

## Table of Contents

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

    1.    Plaintiffs' Allegations Concerning the Russian Federation's Criminal Enforcement Actions and the Allegedly False Statement Relating to Them ............. 4

    2.    Plaintiffs' Allegations Concerning the Tax Investigation of Yukos and the Allegedly False Statement Relating To It ................................................................. 5

ARGUMENT ................................................................................................................... 6

I.   THE MINISTERS ARE ENTITLED TO SOVEREIGN IMMUNITY ..................... 6

II.  THIS COURT LACKS PERSONAL JURISDICTION OVER THE MINISTERS ................. 8

III. THE ACT OF STATE DOCTRINE COMPELS DISMISSAL OF PLAINTIFFS' COMPLAINT .......................................................................................................... 10

IV. PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE ....................................................................................... 13

V.  THE DOCTRINE OF INTERNATIONAL COMITY BARS RE-LITIGATION OF DISPUTES THAT HAVE ALREADY BEEN DECIDED IN RUSSIA ................................. 15

VI. PLAINTIFFS' CLAIMS SHOULD ALL BE DISMISSED AS A MATTER OF LAW FOR FAILURE TO STATE A CLAIM ................................................................ 16

   A. Plaintiffs Fail to State a Claim For Common Law Conversion ......................... 17

   B. Plaintiff Yukos ADR Holders' RICO Claims Must Be Dismissed As a Matter of Law ............................................................................................................... 20

      1.    The RICO Claims Must Be Dismissed for Lack of Standing ................... 21

         a.    The RICO Counts Must Be Dismissed Because Plaintiffs Have Suffered No Direct Injury ............................................................. 21

         b.    The ADR Holders Have Not Alleged a Clear and Definite Indirect Injury ............................................................................... 23

      2.    Congress Did Not Intend RICO to Apply Extraterritorially to Circumstances Like Those Alleged Here ................................................. 23

      3.    Plaintiffs Have Not Alleged a Pattern of Racketeering Activity .............. 25

a.     Plaintiffs Have Failed to Allege Any Predicate Crimes ................................... 25

b.     Plaintiffs Have Not Alleged a "Pattern" of Racketeering Activity ................ 27

c.     The Ministers Are Not Indictable for Predicate Crimes ................................... 27

d.     Plaintiffs Have Not Pleaded Participation by Either Minister in a Pattern of Racketeering Activity. ................................................................... 28

4.     Count II Must Be Dismissed for the Additional Reason that Neither Minister Has Acquired an Interest in or Control Over Yukos ................................. 29

5.     Count III Must Be Dismissed for the Additional Reasons that (i) Plaintiffs Have Not Alleged an Association-In-Fact Enterprise, and (ii) Plaintiffs Have Not Alleged Facts Capable of Showing that Either Minister "Participated in the Conduct of an Enterprise." ................................................................... 30

C. Count V Must Be Dismissed Because (i) Prima Facie Tort Is Not Recognized in this District and (ii) the Allegations of the Complaint Concede that the Defendants Did Not Act with Disinterested Malevolence ................................. 32

D. Plaintiff ADR Holders Cannot State a Claim for Fraud Because They Have Not Alleged Any Fraudulent Statement by Either Minister, Nor Have They Alleged Specific Acts of Reliance or Cognizable Damages ........................................... 34

E. Plaintiffs' Securities Fraud Claim Must Be Dismissed ...................................... 36

1.     The U.S. Securities Law Does Not Apply Extraterritorially to Foreign Government Officials with No Connection or Relationship to the Plaintiffs or the Security at Issue ............................................................................. 37

2.     Plaintiffs Fail to Specifically Allege a False Statement ........................... 38

3.     Plaintiffs Have Failed Adequately To Allege Scienter ........................... 39

4.     Plaintiffs Have Failed to Allege "Loss Causation" Adequately ............... 40

5.     Plaintiffs Cannot, as a Matter of Law, Sue the Ministers for Alleged Statements Regarding Yukos ................................................................... 40

VII. THIS ACTION SHOULD BE DISMISSED FORUM NON CONVENIENS ...................... 41

A. The Russian Federation Offers an Adequate Alternative Forum ........................ 42

B. The Balance of Private and Public Factors Confirms that Russia Provides the
Most Appropriate Forum For Resolving Plaintiffs' Claims............................................43

CONCLUSION ..........................................................................................................................45

## Table of Authorities

## CASES

*A. Terzi Productions, Inc. v. Theatrical Protective Union,*
    2 F. Supp. 2d 485 (S.D.N.Y. 1998) ...................................................................................33

*Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n,*
    176 F.3d 315 (6th Cir. 1999) .........................................................................................29

*Amalgamated Bank of New York v. Marsh,*
    823 F. Supp. 209 (S.D.N.Y. 1993) ...................................................................................28

*Arent v. Distribution Sciences, Inc.,*
    975 F.2d 1370 (8th Cir. 1992) .........................................................................................35

*Argentine Republic v. Amerada Hess Shipping Corp.,*
    488 U.S. 428 (1989) ...........................................................................................................27

*Arnlund v. Deloitte & Touche LLP,*
    199 F. Supp. 2d 461 (E. D. Va. 2002) .......................................................................35, 36

*Art Metal-U.S.A., Inc. v. United States,*
    577 F. Supp. 182 (D.D.C. 1983) ......................................................................................33

*Asahi Metal Indus. Co. v. Superior Court of Ca.,*
    480 U.S. 102 (1987) .............................................................................................................9

*Atlantigas Corp. v. Nisource, Inc.,*
    290 F. Supp. 2d 34 (D.D.C. 2003) .....................................................................................9

*Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,*
    268 F.3d 103 (2d Cir. 2001) ....................................................................................15, 16, 24

*Baker v. Carr,*
    369 U.S. 186 (1962) ...........................................................................................................13

*Bald Eagle Area School Dist. v. Keystone Financial, Inc.,*
    189 F.3d 321 (3d Cir. 1999) ..............................................................................................26

*Banco Nacional de Cuba v. Sabbatino,*
    376 U.S. 398 (1964) ...........................................................................................................11

*Bancoult v. Mcnamara,*
    No. 05-5049, 2006 WL 1042356 (D.C. Cir. Apr. 21, 2006) .............................................13

*Bankers Trust Co. v. Rhoades,*
   859 F.2d 1096 (2d Cir. 1988) ...................................................................................22

*Base Metal Trading Ltd. v. Russian Aluminum,*
   2004 WL 928165 (2d Cir. April 30, 2004) .........................................................42

*Basic Inc. v. Levinson,*
   485 U.S. 224 (1988) .................................................................................................38

*Bivens Gardens Office Bldg Inc. v. Barnett Banks of Florida,*
   140 F.3d. 898 (11th Cir. 1998) ..............................................................................22

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975) .................................................................................................39

*Browning v. Clinton,*
   292 F.3d 235 (D.C. Cir. 2002) ..............................................................................17

*Burdett v. Harrah's Kansas Casino Corp.,*
   260 F. Supp. 2d 1109 (D. Kan. 2003) ..................................................................29

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ...................................................................................................8

*Burman v. Phoenix Worldwide Industries, Inc.,*
   384 F. Supp. 2d 316 (D.D.C. 2005) ......................................................................34

*Burnham v. Superior Court of California.,*
   495 U.S. 604 (1990) ...................................................................................................9

*Butte Mining PLC v. Smith,*
   76 F.3d 287 (9th Cir. 1996) ...................................................................................24

*Byer Indus., Inc. v. Gulf Ins. Co.,*
   888 F. Supp. 1 (D.D.C. 1995) ...............................................................................26

*Bynum v. Equitable Mortgage Group,*
   No. 99 CV-2266-SBC-JMF, 2005 WL 818619 (D.D.C. Apr. 7, 2005) ...........19

*Cadle Co. v. Schultz,*
   779 F. Supp. 392 (N.D. Tex. 1991) ......................................................................29

*Callejo v. Bancomer, S.A.,*
   764 F.2d 1101 (5th Cir. 1985) ...............................................................................11

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
    511 U.S. 164 (1994) ......................................................................................................38

Chanoff v. United States Surgical Corp.,
    857 F. Supp. 1011 (D. Conn. 1994)..............................................................................36

Chiarella v. United States,
    445 U.S. 222 (1980) ......................................................................................................39

Chisholm v. Transouth Fin. Corp.,
    95 F.3d 331 (4th Cir. 1996) ..........................................................................................26

Chuidian v. Philippine Nat'l Bank,
    912 F.2d 1095 (9th Cir. 1990) ........................................................................................8

COMSAT Corp. v. Finshipyards S.A.M.,
    900 F. Supp. 515 (D.D.C. 1995) .....................................................................................9

Conley v. Gibson,
    355 U.S. 41 (1957) ........................................................................................................16

Cowin v. Bresler,
    741 F.2d 410 (D.C. Cir. 1984)........................................................................................18

Crocker v. Federal Deposit Ins. Corp.,
    826 F.2d 347 (5th Cir. 1987) ...................................................................................35, 36

Curaflex Health Serv. Inc. v. Bruni,
    877 F. Supp. 30 (D.D.C. 1995)................................................................................17, 18

Dale v. Colagiovanni,
    337 F. Supp. 2d 825 (S.D. Miss. 2004) .........................................................................28

Danielson v. Burnside-Ott Aviation Training Center,
    941 F.2d 1220 (D.C. Cir. 1991)..........................................................................26, 28, 29

Dayton v. Czechoslovak Socialist Republic,
    834 F.2d 203 (D.C. Cir. 1987)........................................................................................11

DiVittorio v. Equidyne Extractive Indus., Inc.,
    822 F.2d 1242 (2d Cir. 1987) ........................................................................................28

District Telecommunications Development Corp. v. District Cablevision, Inc.,
    638 F. Supp. 418 (D.D.C. 1985).....................................................................................31

*Dittman v. Myers,*
   95 S.W.2d 1332 (Tex. Civ. App. 1936) .............................................................. 18

*\*Doe I v. State of Israel,*
   400 F. Supp. 2d 86 (D.D.C. 2005) ............................................................. *passim*

*Doe I v. Unocal Corp.,*
   395 F.3d 932 (9th Cir. 2002) .............................................................................. 24

*Dura Pharmaceuticals v. Broudo,*
   125 S.Ct. 1627 (2005) ................................................................................... 38, 40

*EEOC v. Arabian American Oil Co.,*
   499 U.S. 244 (1992) ........................................................................................... 23

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n,*
   48 F.3d 1260 (D.C. Cir 1995) ........................................................................... 27

*\*El-Fadl v. Central Bank of Jordan,*
   75 F.3d 668 (D.C. Cir. 1996) .............................................................................. 6

*Emory v. Grenough,*
   3 U.S. (Dall.) 369 (1797) ................................................................................... 15

*Ferguson v. Christie, No. Civ. A. 04-2289 (CKK),*
   2005 WL 3201065 (D.D.C. Oct. 12, 2005) .......................................................... 6

*First American Bank, N.A. v. District of Columbia,*
   583 A.2d 993 (D.C. 1990) .................................................................................. 19

*First Chicago Int'l v. United Exchange Co.,*
   836 F.2d 1375 (D.C. Cir. 1988) ........................................................................... 8

*First Nationwide Bank v. Gelt Funding Corp.,*
   27 F.3d 763 (2d Cir. 1994) ................................................................................. 23

*Foley Bros., Inc. v. Filardo,*
   336 U.S. 281 (1949) ........................................................................................... 24

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.,*
   717 F.2d 602 (D.C. Cir 1983) ............................................................................ 42

*Gaff v. Federal Deposit Ins. Corp.,*
   814 F.2d 311 (6th Cir. 1987) .............................................................................. 22

*GEICO v. Fetisoff,*
    958 F.2d 1137 (D.C.Cir. 1992)........................................................................33

*GTE New Media Services, Inc. v. Ameritech Corp.,*
    21 F. Supp. 2d 27 (D.D.C. 1998)......................................................................9

*GTE New Media Services, Inc. v. BellSouth Corp.,*
    199 F.3d 1343 (D.C. Cir. 2000)........................................................................9

*Goren v. New Vision Int'l., Inc.,*
    156 F.3d 721 (7th Cir. 1998) ..........................................................................32

*Gould, Inc. v. Mitsui Mining & Smelting Co.,,*
    750 F. Supp. 838 (N.D. Ohio 1990) ...............................................................28

*Graves v. United States,*
    961 F. Supp. 314 (D.D.C. 1997).....................................................................19

*Gulf Oil Co. v. Gilbert,*
    330 U.S. 501 (1947) .......................................................................................42

*Haig v. Agee,*
    453 U.S. 280 (1981) .......................................................................................14

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983).........................................................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) .........................................................................................9

*Hemispherx Biopharma v. Asencio,*
    No. Civ. A. 98-3204, 1999 WL 144109 (E.D. Pa. 1999) ................................27

*Hilton v. Guyot,*
    159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895)..............................................15

*Holmes v. Securities Investor Protection Corp.,*
    503 U.S. 258 (1992) .......................................................................................21

*Howard v. America Online, Inc.,*
    208 F.3d 741 (9th Cir. 2000)..........................................................................26

*Hutchings v. Manchester Life and Cas. Management Corp.,*
    896 F. Supp. 946 (E.D. Mo. 1995) ..................................................................18

*In re Baan Co. Sec. Litig.*,
   103 F. Supp. 2d 1 (D.D.C. 2000)....................................................................37, 38

*In re U.S. Office Products Securities Litigation*,
   326 F. Supp. 2d 68 (D.D.C. 2004)...............................................................18, 39

*In re WorldCom, Inc. Securities Litig.*,
   336 F. Supp. 2d 310 (S.D.N.Y. 2004) ................................................................36

*In re Yukos Oil Co. Sec. Litig.*,
   No. 04 - CV-5243 (WHP), 2006 WL 800736 (S.D.N.Y. March 30, 2006) ........6

*Int'l Ass'n of Machinists v. OPEC*,
   649 F.2d 1354 (9th Cir. 1981) ............................................................................33

*International Shoe Co. v. Washington Office of Unempl. Comp.*,
   326 U.S. 310 (1945) ..............................................................................................9

*Isen v. Calvert Corp.*,
   379 F.2d 126 (D.C. Cir. 1967)......................................................................34, 35

*Iwanowa v. Ford Motor Co.*,
   67 F. Supp. 2d, 424 (D.N.J. 1999) .....................................................................14

*Jackson v. Amer. Univ. in Cairo*,
   52 F. App'x. 518 (D.C. Cir. 2002) ......................................................................41

*Jones v. Meridian Towers Apartments, Inc.*,
   816 F. Supp. 762 (D.D.C. 1993).........................................................................32

*\*Jungquist v. Sheik Sultan Bin Khalifa Al Nahyan*,
   115 F.3d 1020 (D.C. Cir. 1997)............................................................................6

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004)................................................................5, 17, 18

*Kagan v. Edison Bros. Stores, Inc.*,
   907 F.2d 690 (7th Cir. 1990) .........................................................................35, 36

*Keller v. Cent. Bank of Nigeria*,
   277 F.3d 811 (6th Cir. 2002) ..............................................................................28

*Koal Indus. Corp. v. Asland, S.A.*,
   808 F. Supp. 1143 (S.D.N.Y. 1992) ....................................................................38

*Koster v. Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947) ..................................................................................................42

*Kowal v. MCI Commcn's. Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994)...............................................................................34, 38, 39

*Labovitz v. Washington Times Corp.*,
  172 F.3d 897 (D.C. Cir. 1999)...................................................................................18

*Lakonia Management Ltd. v. Meriwether*,
  106 F. Supp. 2d 540 (S.D.N.Y. 2000) .........................................................................22

*Leach v. FDIC*,
  860 F.2d 1266 (5th Cir. 1988) ...................................................................................22

*Lincoln House, Inc. v. Dupre*,
  903 F.2d 845 (1st Cir. 1990)......................................................................................23

*Luftig v. McNamara*,
  373 F.2d 664 (D.C. Cir. 1967)...................................................................................14

*Magellan Int'l. Corp. v. Salzgitter Handel GmbH*,
  76 F. Supp.2d 919 (N.D. Ill. 1999)..............................................................................5

*Manson v. Stacescu*,
  11 F.3d 1127 (2d Cir. 1993) .....................................................................................22

*McDowell v. Jones*,
  990 F.2d 433 (8th Cir. 1993) ....................................................................................19

*McNeily v. United States*,
  6 F.3d 343 (5th Cir. 1993) ........................................................................................28

*Medellin v. Dretke*,
  125 S.Ct. 2088 (2005)...............................................................................................15

*Minebea Co. v. Papst*,
  377 F. Supp. 2d 34 (D.D.C. 2005).............................................................................17

*Moffat Enterprises, Inc. v. Borden, Inc.*,
  763 F. Supp. 143 (W. D. Pa. 1990) ..........................................................................29

*Moore v. Mitchell*,
  30 F.2d 600 (2d Cir. 1929) .......................................................................................16

*Motorola Credit Corp. v. Uzan*,
    322 F.3d 130 (2d Cir. 2003) ...................................................................................23

*Murray v. The Charming Betsy*,
    6 U.S. (2 Cranch) 64 (1804) ..................................................................................24

*Mwani v. Bin Laden*,
    417 F.3d 1 (D.C. Cir. 2005)......................................................................................8

*Nathan Gordon Trust v. Northgate Exploration, Ltd.*,
    148 F.R.D. 105 (S.D.N.Y. 1993)............................................................................38

*Nemariam v. Fed. Democratic Repub. of Ethiopia*,
    315 F.3d 390 (D.C. Cir. 2003)................................................................................42

*Nix v. Hoke*,
    139 F. Supp. 2d 125 (D.D.C. 2001)........................................................................32

*Norris v. Dept. of Defense*,
    No. 96-5326, 1997 WL 362495 (D.C. Cir. May 5, 1997) .................................28

*North South Fin. Corp. v. Al-Turki*,
    100 F.3d 1046 (2d Cir. 1996) ................................................................................24

*Oetjen v. Cent. Leather Co.*,
    246 U.S. 297 (1918) .......................................................................................10, 14

*One-O-One Enters., Inc. v. Caruso*,
    848 F.2d 1283 (D.C. Cir. 1988)........................................................................34, 39

*Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks Corp.*,
    369 F.3d 27 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 919 (2005)........................41

*Oscar v. University Students Co-op. Ass'n*,
    965 F.2d 783 (9th Cir. 1992) ..................................................................................23

*Ostler v. Codman Research Group, Inc.*,
    Civ. No. 98-356-JD, 1999 WL 1059684 (D.N.H. April 20, 1999) ....................27

*Parsons v. Mains*,
    580 A.2d 1329 (D.C. 1990) .....................................................................................8

*Pasquantino v. United States*,
    125 S.Ct. 1766 (2005).............................................................................................16

*Phillips v. LCI Int'l, Inc.,*
    190 F.3d 609 (4th Cir. 1999) ............................................................................38, 40

*Phoenix Consulting, Inc. v. Republic of Angola,*
    216 F.3d 36 (D.C. Cir. 2000) ....................................................................................2

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ........................................................................................41, 42

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003) .....................................................................................42

*PT United Can Co. v. Crown Cork & Seal Co.,*
    138 F.3d 65 (2d Cir. 1998) .....................................................................................42

*Pyramid Securities Ltd. v. I.B. Resolution, Inc.,*
    924 F.2d 1114 (D.C. Cir. 1991) .............................................................................30

*Rand v. Anaconda-Ericsson, Inc.,*
    794 F.2d 843 (2d Cir. 1986) ...................................................................................22

*Republic of Philippines v. Marcos,*
    665 F. Supp. 793 (N.D. Cal. 1987) ...........................................................................9

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) ........................................................................................31, 32

*Ricaud v. American Metal Co.,*
    246 U.S. 304 (1918) ...............................................................................................10

*\*Riggs Nat'l Corp. v. Comm'r of IRS,*
    163 F.3d 1363 (D.C. Cir. 1999) .......................................................................11, 12

*Roeder v. Alpha Indus., Inc.,*
    814 F.2d 22 (1st Cir. 1987) ....................................................................................22

*Rogers v. Cisco Sys. Inc.,*
    268 F. Supp. 2d 1305 (N.D. Fla. 2003) ..................................................................35

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004) .............................................................................39, 40

*Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic,*
    877 F.2d 574 (7th Cir. 1989) ..................................................................................33

*Schneider v. Kissinger,*
    412 F.3d 190 (D.C. Cir. 2005) .......................................................................... 13

*Schwartz v. Franklin National Bank,*
    718 A.2d 553 (D. C. 1998) ..........................................................................32, 33

*Sears v. Likens,*
    912 F.2d 889 (7th Cir. 1990) .......................................................................... 22

*Sedima, S.P.R.L. v. Imrex Co.,*
    473 U.S. 479 (1985) ...................................................................................21, 30

*Service Employees Int'l Union v. Philip Morris,*
    249 F.3d 1069 (D.C. Cir 2001) ........................................................................21

*Shapiro v. Cantor,*
    123 F.3d 717 (2d Cir. 1997) ............................................................................38

*Shea v. Fridley,*
    123 A.2d 358 (D.C. 1956) ...............................................................................18

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994) ............................................................................41

*Shoenbaum v. Firstbrook,*
    405 F.2d 200 (2d Cir. 1968) ............................................................................37

*Shulman v. Voyou, L.L.C.,*
    251 F. Supp. 2d 166 (D.D.C. 2003)..................................................................17

*\*Small v. Fritz Companies, Inc.,*
    65 P.3d 1255 (Cal. 2003)..................................................................................35

*Smith v. Jenkins,*
    452 A.2d 333 (D.C. 1982) .................................................................................8

*Smith v. Washington Sheraton Corp.,*
    135 F.3d 779 (D.C. Cir. 1998)..........................................................................18

*Societe Nationale Industrielle Arospatiale v. Southern District Ct. of Iowa,*
    482 U.S. 522 (1987) .........................................................................................15

*Sound Video Unlimited, Inc. v. Video Shack, Inc.,*
    700 F. Supp. 127 (S.D.N.Y. 1988) ..................................................................22

*Sparling v. Hoffman Construction Co.,*
    864 F.2d 635 (9th Cir. 1988) ........................................................................... 22

*Stephenson v. Deutsche Bank AG,*
    282 F. Supp. 2d 1032 (D. Minn. 2003) ...................................................... 26, 27

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976) ....................................................................................... 38

*Tarasevich v. Eastwind Transport Ltd.,*
    No. 02 Civ 1806, 2003 WL 21692759 (S.D.N.Y. 2003) .................................. 42

*Teague v. Bakker,*
    35 F.3d 978 (4th Cir. 1994) ............................................................................ 29

*Tel-Oren v. Libyan Arab Republic,*
    726 F.2d 774 (D.C. Cir. 1984) ......................................................................... 14

*Timberlane Lumber Co. v. Bank of Am.,*
    549 F.2d 597 (9th Cir. 1976) ........................................................................... 24

*Twin Laboratories, Inc. v. Weider Health & Fitness,*
    900 F.2d 566 (2d Cir. 1990) ............................................................................ 33

*United States v. Perholtz,*
    842 F.2d 343 (D.C. Cir. 1988) ......................................................................... 31

*United States v. Richardson,*
    167 F.3d 621 (D.C. Cir. 1999) ......................................................................... 31

*\*United States v. Turkette,*
    452 U.S. 576 (1981) ........................................................................................ 31

*University of Maryland v. Peat, Marwick, Main & Co.,*
    996 F.2d 1534 (3d Cir. 1993) .......................................................................... 32

*Vandenbroeck v. CommonPoint Mortgage Co.,*
    210 F.3d 696 (6th Cir. 2000) ........................................................................... 26

*Varnelo v. Eastwind Transport, Ltd.,*
    No. 02- Civ 2084 (KMW), 2003 WL 230741 (S.D.N.Y. 2003) ......................... 42

*\*W.S. Kirkpatrick & Co., Inc. v. Envt'l Tectonics Corp., Int'l,*
    493 U.S. 400 (1990) ................................................................................. 10, 11

*Wagh v. Metris Direct, Inc.*,
    363 F.3d 821 (9th Cir. 2003) ..................................................................29, 30

*\*Western Associates Ltd P'ship v. Market Square Associates*,
    235 F.3d 629 (D.C. Cir. 2001)..........................................................22, 23, 27

*Whaley v. Auto Club Ins. Ass'n*,
    891 F. Supp. 1237 (E.D. Mich. 1995) ...............................................................29

*\*World Wide Minerals v. Republic of Kazakhstan*,
    296 F.3d 1154 (D.C. Cir. 2002).................................................................*passim*

## STATUTES

D.C. Code § 13-423 ...........................................................................................8

Fed. R. Civ. P. 9(b)....................................................................................26, 34

Fed. R. Civ. P. 12(b)(6) ....................................................................................16

Fed. R. Civ. P. 44.1..........................................................................................17

Fed. R. Evid. 106 ...............................................................................................5

11 U.S.C. § 1112(b)..........................................................................................26

15 U.S.C. §78u-4(b) ....................................................................................39, 40

18 U.S.C. § 152 ...........................................................................................25, 26

18 U.S.C. § 1343 .........................................................................................25, 26

18 U.S.C. § 1961 .............................................................................27, 30, 31, 32

18 U.S.C. §§ 1962 ...........................................................................20, 25, 29, 30

18 U.S.C. § 1964 .........................................................................................21, 26

18 U.S.C. § 2314 ...............................................................................................25

28 U.S.C. § 1330 ...............................................................................................27

## MISCELLANEOUS

Restatement (Third) of the Foreign Relations Law of the United States (1986)..................9, 16, 24

Restatement (Second) of Conflict of Laws § 106 (1969)................................................................17

## INTRODUCTION

Defendant Alexei Kudrin is the sitting Minister of Finance of the Russian Federation, with responsibilities similar to U.S. Treasury Secretary Snow. *See* Compl., ¶ 38. Defendant Viktor Khristenko is the sitting Minister of Industry and Energy of the Russian Federation, with responsibilities similar to U.S. Energy Secretary Bodman. *See id.*, ¶ 41. Ministers Kudrin and Khristenko are collectively referred to in this Motion as "the Ministers." Both Ministers are immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), and the claims against them must be dismissed for lack of subject-matter jurisdiction before they are put to further burden and expense in a United States court. In support of this relief, the Ministers adopt, in full, the Statement of Points and Authorities in Support of the Russian Federation's Motion to Dismiss Plaintiffs' Complaint (the "Russian Federation's Motion").

Although this Court lacks subject-matter jurisdiction over the claims against the Ministers, the claims alleged must also be dismissed because they are factually and legally indefensible. As a matter of fact, the plaintiffs seek to avoid the obvious consequence of the Ministers' sovereign status by conclusorily alleging that each of them is "being sued in his individual capacity." But while the complaint alleges numerous acts of misconduct by the Russian Federation, it fails to identify *any* wrongful act committed by either Minister in *any* capacity. Without allegations specific to the Ministers, there is no factual basis for the claims against them. Moreover, as a matter of law, the necessary and fundamental premise of plaintiffs' complaint — that Russian prosecutors, tax authorities and courts have violated *United States* law by (i) issuing resolutions and judgments in Russia against a Russian company, Yukos Oil Company, (ii) freezing, attaching, and auctioning Yukos Oil Company's corporate assets located in Russia and (iii) investigating and prosecuting Yukos Oil Company's officials in Russia for violating Russian criminal law — is not sustainable in a United States court.

1

For these reasons and others detailed below, while plaintiffs' conclusory allegations that Cabinet-level Russian government officials have engaged in criminal racketeering, securities fraud and other tortious conduct may garner headlines, this Court would have to dismiss them as a matter of law even if the Ministers were not entitled to sovereign immunity.

### FACTUAL BACKGROUND[1]

Yukos Oil Company ("Yukos") is a vertically integrated oil and gas company organized under the laws of the Russian Federation with its central place of business in Moscow, Russia. Compl., ¶ 46. Yukos' business activities include: "exploration for, and development and production of, crude oil and natural gas; refining crude oil into finished petroleum products; and marketing and distributing petroleum products." *Id.* In early 2004, Yukos had a market capitalization exceeding the equivalent of US$ 40 billion. *Id.*, ¶ 68.

Each of the twelve plaintiffs claims to own, or to have owned and then sold, ADRs in shares of Yukos. *Id.*, ¶¶ 8-29.[2] Collectively, the plaintiffs claim to have paid slightly more than $3 million to purchase their Yukos ADRs. *See id.* Two of the plaintiffs, who account for approximately two-thirds of that total, are citizens of the Netherlands and the Cayman Islands. *See* Compl., ¶¶ 24-26.

---

[1]    Solely for the purposes of this motion, the Ministers do not dispute the false factual allegations of the complaint. *See Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). Accordingly, this motion is based on the allegations of the plaintiffs' complaint, documents incorporated by reference therein, and matters subject to judicial notice. *World Wide Minerals v. Republic of Kazakhstan*, 296 F.3d 1154, 1157 n.2 (D.C. Cir. 2002).

[2]    Although Yukos' majority owner, Group Menatep, is not a plaintiff, public records suggest that it is instigating and funding this lawsuit. Plaintiffs' counsel has stated that Group Menatep is paying its legal fees. *See* www.mosnews.com/news/2005/10/25/yukostrial.html (visited May 8, 2006); *see also* www.yukosshareholdercoalition.com/adr_initiatives/us_adr_holder_suit.html (visited May 8, 2006) (soliciting new plaintiffs and promising that plaintiffs' attorneys are not being compensated by plaintiffs or by a contingency fee). Yukos and Group Menatep — which have threatened a "lifetime of litigation" and are pursuing equally meritless legal claims against the Russian Federation in Europe and Russia — are funding this action for the ulterior purpose of obtaining U.S.-style discovery unavailable elsewhere in the world.

Plaintiffs allege that in 2003, the Russian Federation began to pursue, in Russia, various criminal and tax enforcement actions against Yukos and its officials. *See, e.g., id.*, ¶¶ 108-120. These enforcement measures, according to the plaintiffs, have reduced the value of their investments in Yukos. *Id.* Eight plaintiffs, however, continue to hold some or all of their allegedly devalued ADRs. *Id.* at ¶¶ 8-29. Of those eight, one has already timed the market accurately and sold some of his ADRs at a *profit. Id.*, ¶¶ 20, 21.

Plaintiffs do not allege that their ADRs, or the Yukos shares on which those ADRs are founded, have been expropriated. Rather, plaintiffs contend that the Russian Federation has (1) interfered with Yukos' management by prosecuting Yukos' officers and attaching the shares of Yukos' majority shareholder (which is *not* a plaintiff), and (2) taken various Yukos assets through allegedly improper domestic tax assessments and delinquency enforcement measures.[3] According to plaintiffs, these actions support claims in the United States for conversion, RICO and prima facie tort against the Ministers and others. The plaintiffs further assert that two alleged public statements by Russian President Vladimir Putin about the Russian Federation's criminal and tax enforcement policies are actionable as fraud and securities fraud. Compl., ¶¶ 86-88, 138, 140, 230-50. The allegations regarding each category of alleged misconduct are described below.

---

[3]    The first paragraph of the complaint summarizes the alleged misconduct and objectives of the Russian Federation and other defendants as follows:

> First, Defendant Russian Federation and the other Defendants have . . . impos[ed] illegal and confiscatory tax levies and . . . transfer[red] Yukos's most important asset to the state. Second, Defendants have . . . [conducted] the direct seizure of a majority of Yukos shares and . . . intimidat[ed] and harass[ed] Yukos directors and executives.

In paragraphs 80 through 178, the complaint then details this alleged conduct.

### 1. **Plaintiffs' Allegations Concerning the Russian Federation's Criminal Enforcement Actions and the Allegedly False Statement Relating to Them**

Plaintiffs complain that the Russian Federation has brought criminal charges against a group of Yukos executives and attorneys. *Id.*, ¶¶ 81-91. In June 2003, plaintiffs point out that the Russian Federation arrested Yukos' former security manager on charges of murder. *Id.*, ¶ 81. The security manager was tried and convicted. *Id.* The next month, the Russian Federation arrested the chairman of Group Menatep on charges of tax evasion and fraud. *Id.*, ¶¶ 82, 95.[4] In October 2003, the Russian Federation arrested Mikhail Khodorkovsky, the chief executive officer of Yukos, on similar charges. *Id.*, ¶¶ 83, 95. Thereafter, various Yukos officials fled, while others have been prosecuted. *See generally id.,* ¶ 90. After an extended trial, both the former chairman of Group Menatep and Mr. Khodorkovsky were convicted. Both are serving prison terms in Russia. *Id.*, ¶ 95. Plaintiffs ask this Court to rule that the Russian Federation, its Ministers and others can be haled into a United States court to adjudicate the legality under United States law of these alleged sovereign acts of the Russian Federation.

Plaintiffs further contend that following the arrest of Mr. Khodorkovsky in October 2003, Russian President Putin issued a press statement that was purportedly intended to defraud them by allegedly stating falsely that the arrest did not reflect the Russian Federation's intent to attack Yukos or its assets. Compl, ¶¶ 85-86. Apart from the absurdity of implying an intent to defraud from a Presidential statement regarding government policy, the complaint mischaracterizes the text of the press release. The President's release explains that government

---

[4]    Group Menatep held *and continues to hold* its majority stake in Yukos through wholly-owned entities called Yukos Universal Limited and Hulley Enterprises. *Id.*, ¶¶ 48, 100. Plaintiffs allege that the Russian Federation seized Group Menatep's shares in Yukos as security for damage claims against Mr. Khodorkovsky, but do not — and truthfully could not — claim that ownership or voting rights in those shares changed (*id.*, ¶¶ 104-105). Rather, plaintiffs admit that Group Menatep still "owns" the 51 percent stake through these two subsidiaries (*id.*, ¶ 48), and that the Russian Federation did not accept Mr. Khodorkovsky's offer to "turn over" these shares in settlement of government claims (*Id.*, ¶ 152).

enforcement actions in "the Yukos case" should not give *other* privatized companies reason for concern (Exhibit A):

> At the same time, I do understand the business community's concern because any action taken by the federal authorities often gets turned into some kind of campaign. I must make it clear that the Yukos case should in no way be seen as setting a precedent or giving rise to analogies and generalisations regarding the results of previous privatisations, and I would ask therefore that all speculation and hysteria on this issue come to an end and that the government not get drawn into this debate.[5]

The release made no representations about future actions toward Yukos' assets or its officers.

## 2. Plaintiffs' Allegations Concerning the Tax Investigation of Yukos and the Allegedly False Statement Relating To It

In December 2003, the Russian Federation's Ministry of Taxes and Levies ("Tax Ministry") completed a tax audit of Yukos for the 2000 tax year. Compl., ¶ 117. The Tax Ministry's official resolution, issued on April 14, 2004, assessed back taxes against Yukos equivalent to US$ 1.6 billion, plus interest and penalties of an additional US$ 1.8 billion. *See id.*, ¶ 126 (describing Tax Ministry Resolution # 14-3-05/1609-1).[6] The Tax Ministry's official resolution revealed that Yukos' tax evasion was the largest in Russian history. *See id.*, ¶ 117. The Tax Ministry immediately initiated enforcement measures in Russian courts — including the freezing of Yukos' assets — to recover the unpaid taxes. *See id.*, ¶ 130. Plaintiffs further complain that the Russian Federation thereafter arrested the shares that Yukos owned in another Russian company, Yuganskneftegaz ("YNG"), and auctioned approximately 76 percent of those

---

[5]     The plaintiffs' complaint quotes snippets of the President's press release out of context, but the Court may take judicial notice of the entire document. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (court may take judicial notice of document referenced in complaint); *see also* Fed. R. Evid. 106; *Magellan Int'l. Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) (finding the rule of completeness applicable to motions to dismiss because "it would be totally wasteful to uphold a claim on the false premise created by less than complete documentation when the delayed consideration of the remaining documents would lead to dismissal . . . .").

[6]     Thereafter, in July, September and November 2004, the Tax Ministry issued resolutions finding similar tax evasions during the 2001, 2002 and 2003 tax years. *Id.*, ¶¶ 132-135.

shares to help pay Yukos' tax arrearages. *See* Compl., ¶ 154. Plaintiffs' many accusations that the Tax Ministry's issuance and enforcement of its tax determinations were illegal or wrongful under Russian law have been litigated before Russian courts where, so far, they have been rejected. *See, e.g., id.*, ¶ 127. *Cf. In re Yukos Oil Co. Sec. Litig.*, No. 04-CV-5243 (WHP), 2006 WL 800736, at *15 (S.D.N.Y. March 30, 2006) (holding that a securities class action by Yukos ADR holders against Yukos and certain of its officers "adequately pleads that Yukos implemented an illegal tax strategy in violation of [Russian law].").

As the Russian Federation's tax enforcement procedures progressed, and while Yukos' judicial appeal of the tax assessment was pending, plaintiffs claim that President Putin made another allegedly fraudulent public statement. Compl., ¶ 138. According to plaintiffs, President Putin publicly stated on June 17, 2004, that (i) Yukos' tax liability was in the hands of the courts, (ii) the "Russian Federation was 'not interested in the bankruptcy of such a company as Yukos,'" and (iii) the Russian Federation "'will try to act so as not to destroy this company.'" *Id.*, ¶ 138. Plaintiffs conclusorily allege that the President intentionally lied, although the Complaint simultaneously concedes that the tax debts were (and still are) being litigated in the Russian courts and Yukos continued to operate as a vertically integrated oil and gas company. *Id.*, ¶¶ 140, 46.

<u>ARGUMENT</u>

## I.    THE MINISTERS ARE ENTITLED TO SOVEREIGN IMMUNITY

A government official, as the Ministers are admitted to be, is an "agency or instrumentality of a foreign state" entitled to immunity under the FSIA if his or her alleged misconduct was taken in an "official capacit[y]." *Jungquist v. Sheik Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 102, 105 (D.D.C. 2005); *see also Ferguson v. Christie*, No. Civ. A. 04-2289 (CKK), 2005 WL 3201065 (D.D.C. Oct. 12,

2005). Although the complaint purports to name each of the Ministers as a defendant in his "individual capacity," it alleges no personal misconduct by either of them. Rather, the complaint revolves around the alleged "de facto re-nationalization" of Yukos' assets by the *Russian Federation*. Compl., ¶ 1; *see also id.* at ¶¶ 106, 107, 128, 129, 136, 140, 144, 145, 152, 157, 171, 179 (alleging de facto re-nationalization of Yukos' assets).[7] In the absence of specific allegations of personal gain or profit motive by the Ministers, this Court must treat the Ministers as instrumentalities of the Russian Federation entitled to the FSIA's presumption of immunity. *See, e.g., Doe I*, 400 F. Supp. 2d at 105 (finding allegations in complaint to allege official conduct, rather than personal, insofar as the complaint in essence challenged "official policy of the sovereign state of Israel" and did not assert "that the individual Israeli defendants acted out of personal gain or for profit motive.").

The FSIA's presumption of immunity cannot be overcome in this case. For all the reasons stated in the Russian Federation's Motion, the exceptions to immunity cannot possibly apply. Because the Court must dismiss the complaint against the Ministers for lack of subject-matter jurisdiction, it need not reach the complaint's remaining insurmountable legal deficiencies.[8]

---

[7] Virtually every allegation accuses the "Defendant Russian Federation," alone. For example, the alleged "direct seizure of a majority of Yukos shares" is described in paragraph 105 as a seizure by "Defendant Russian Federation . . . 'as security against material damage' in connection with the criminal case against Khodorkovsky." *Id.*, ¶ 105. And the alleged intimidation and harassment of Yukos directors and executives is described in paragraphs 81 through 96 as actions by "Defendant Russian Federation" to pursue criminal prosecutions, searches and seizures of various offices. *Id.*, ¶¶ 81-96. Paragraph 179 of the complaint then summarizes the alleged wrongdoing as follows: "Defendants have effectively re-nationalized Yukos by (1) seizing control of a majority of Yukos shares, (2) transferring Yukos's most valuable assets to commercial entities controlled by Defendant Russian Federation, and (3) diverting to state-controlled entities all remaining benefits of owning an interest in Yukos."

[8] Because Plaintiffs have also sued the Russian Federation, claims against its officials are redundant, and must be dismissed as a matter of law. *See Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1101 (9th Cir. 1990) ("a suit against an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly").

## II.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE MINISTERS

Not only are the Ministers entitled to sovereign immunity, but the complaint fails to allege *any* basis upon which this Court could exercise personal jurisdiction over the Ministers in either their official or personal capacities. The complaint does not allege that the Ministers took any action within the District of Columbia (or the United States), or directed any action toward the District of Columbia (or the United States) that would empower this Court to exercise jurisdiction over them. Plaintiffs' conclusory demand that this Court exercise personal jurisdiction over the Ministers simply cannot be squared with due process.

To establish a prima facie case supporting the exercise of specific jurisdiction, a plaintiff must (i) identify "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the [United States], thus invoking the benefits and protections of its laws," (ii) allege a cause of action arising out of that act, and (iii) demonstrate that the exercise of personal jurisdiction over the defendant would comport with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *Mwani v. Bin Laden*, 417 F.3d 1, 12-14 (D.C. Cir. 2005); *see also* D.C. Code § 13-423 (the District of Columbia's long arm statute for exercising specific jurisdiction over defendants).[9]

The plaintiffs' inability to point to any concrete connection between the Ministers, the plaintiffs' allegations, and the District of Columbia (or the United States) renders it impossible for them to make out a prima facie case for personal jurisdiction. *See, e.g., First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988) (affirming personal jurisdiction

---

[9]    The District of Columbia's long-arm statute imposes even stricter standards than the due process protections of the Constitution. *See Parsons v. Mains*, 580 A.2d 1329, 1331 (D.C. 1990); *Smith v. Jenkins*, 452 A.2d 333 (D.C. 1982). Since the plaintiffs' allegations are incapable of supporting a prima facie case for jurisdiction under the broader due process standards, the Ministers have not focused on the more restrictive standards within the District of Columbia long-arm statute. The Ministers, however, assert those protections as well.

dismissal based on lack of allegation that defendant purposefully availed itself of the District of Columbia).[10]  Moreover, the assertion of personal jurisdiction over sitting Ministers of a foreign nation based on the allegations in this complaint offends the most basic notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington Office of Unempl. Comp.*, 326 U.S. 310, 316 (1945); *see also Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113-16 (1987) (due process considers "reasonableness" and "fairness" of assertion of personal jurisdiction).[11]

Because the allegations of the complaint fail to establish a *prima facie* case that this Court has authority to exercise personal jurisdiction over the Ministers, the complaint must be dismissed. *See Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003); *GTE New Media Services, Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998), *remanded on other grounds sub nom, GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000); *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 520 (D.D.C. 1995).

---

[10]    The complaint certainly does not allege facts to support a finding that either Minister has had such "continuous and systematic" contacts with the District of Columbia (or the United States) that it would be permissible for this Court to exercise *general* jurisdiction over them. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

[11]    The purported personal service on Ministers Kudrin and Khristenko during separate diplomatic missions to the United States does not confer personal jurisdiction over them. *First*, personal service on foreign officials traveling on official business in the United States is legally improper. *See Republic of Philippines v. Marcos*, 665 F. Supp. 793, 799-800 (N.D. Cal. 1987) (quashing service of subpoena on Philippines official temporarily visiting United States on diplomatic business). *Second*, even when personal service is completed on a foreign citizen visiting the United States, this Court must consider whether the foreign citizen had constitutionally mandated minimum contacts with the United States. *See* Restatement (Third) of the Foreign Relations Law of the United States, § 421(2) (explaining that jurisdiction over a non-resident defendant may be based on the defendant's presence in the forum, "other than transitorily."); *id.* at cmt. e (explaining "'tag' jurisdiction . . . is not generally acceptable under international law."); *cf. Burnham v. Superior Ct of Cal.*,  495 U.S. 604, 628  (1990) (Brennan, J., concurring), *id.* at 640 (Stevens, J., concurring).  Where, as here, there is no allegation of any contacts with the United States, the Constitution forbids the exercise of personal jurisdiction.

## III.    THE ACT OF STATE DOCTRINE COMPELS DISMISSAL OF PLAINTIFFS' COMPLAINT

The acts alleged in the complaint — (i) pursuing criminal arrests and prosecutions in Russia; (ii) conducting searches of offices in Russia; (iii) issuing and enforcing tax rulings imposing back taxes, penalties and interest obligations in Russia; (iv) seizing and auctioning Yukos assets in Russia; and (v) publicly announcing government positions regarding some of these official acts in Russia — are sovereign acts of the Russian government taken within its own borders.  Under the act of state doctrine, this Court must respect those acts as lawful.

The act of state doctrine recognizes that foreign governments are sovereign within their own borders and that United States courts have no right to intrude on — much less to judge — the exercise of that sovereignty. *W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp., Int'l*, 493 U.S. 400, 404 (1990).  To "permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 304 (1918).

The act of state doctrine operates on principles similar to res judicata, requiring United States courts to accept the sovereign acts of a foreign government within its own borders as final and lawful:

> [The act of state doctrine] requires only that, when it is made to appear that the foreign government has acted in a given way on the subject-matter of the litigation, the details of such action or the merit of the result . . . must be accepted by our courts as a rule for their decision.

*Ricaud v. American Metal Co.*, 246 U.S. 304, 309 (1918); *see also Kirkpatrick*, 493 U.S. at 406. When the allegations in a case would require the court to review or adjudge the acts of a foreign sovereign within its own borders, even if only indirectly, the case must be dismissed. *See World Wide Minerals*, 296 F.3d at 1165-66 (affirming dismissal of conversion and RICO claims against

- 10 -

the Republic of Kazakhstan on act of state grounds).  This outcome is mandated whether the

defendant is the foreign sovereign whose act is being challenged, or a third party.  *See, e.g., Riggs*

*Nat'l Corp. v. Comm'r*, 163 F.3d 1363, 1368 (D.C. Cir. 1999) (vacating U.S. government claim

against private party insofar as claim called into question the legality of Brazilian Tax Ministry's

rulings); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1122 (5th Cir. 1985) (applying act of state

doctrine to dismiss claims against a non-sovereign defendant).

  The sovereign acts about which plaintiffs complain are classic acts of state.  Most

fundamentally, the Complaint alleges the "de-facto" nationalization of Yukos' assets, within

Russia.  In *Banco Nacional de Cuba v. Sabbatino*, the Supreme Court explained that U.S. courts

"will not examine the validity of a taking of property within its own territory by a foreign

sovereign government."  376 U.S. 398, 428 (1964).  This Circuit, too, has stressed that alleged

"expropriation of property is the classic act of state addressed in the case law."  *World Wide*

*Minerals*, 296 F.3d at 1166; *see also Dayton v. Czechoslovak Socialist Rep.*, 834 F.2d 203, 206

(D.C. Cir. 1987).  This basic act of state principle precludes plaintiffs from challenging the

propriety of any alleged nationalization of Yukos' assets in Russia.

  Plaintiffs' allegations that the Russian Federation's Tax Ministry imposed unlawful

taxes are similarly irreconcilable with the act of state doctrine.  In *Riggs*, the D.C. Circuit

recognized that the act of state doctrine precludes even an indirect attack on a foreign sovereign's

tax assessments.  163 F.3d at 1368.  In that case, the Brazilian tax authority had ruled, under

Brazilian law, that a U.S. taxpayer was required to pay Brazilian tax on interest earned on loans it

had made to the Brazilian Central Bank.  The Brazilian Central Bank recovered the unpaid

Brazilian taxes by withholding funds from interest payments due the U.S. taxpayer.  The case

arose when the United States' IRS disallowed a foreign tax credit claim by the U.S. taxpayer

because, the IRS argued, the U.S. taxpayer was not liable for the Brazilian taxes that had been

assessed against it by the Brazilian tax authority. The D.C. Circuit rejected the IRS's claim,

explaining that the act of state doctrine "directs United States courts to refrain from deciding a

case when the outcome turns on the legality or illegality (whether as a matter of U.S., foreign, or

international law) of official action by a foreign sovereign performed within its own territory."

*Riggs*, 163 F.3d at 1367. According to the Court, the Brazilian tax authority's order directing the

Brazilian Central Bank to withhold Brazilian taxes from the interest payments constituted an act of

state, and an order from a U.S. court affirming the IRS determination that the Brazilian taxes were

not owed would have the effect of reviewing the legality of that sovereign act. *Id.* Because the act

of state doctrine "requires courts to abstain from even engaging in . . . an inquiry" that could have

the effect of revisiting an act of state, the Court of Appeals reversed the trial court's affirmance of

the IRS disallowance of the U.S. tax credit. *Riggs*, 163 F.3d at 1368.

                 Plaintiffs ask this Court to do precisely what the D.C. Circuit held in *Riggs* and

*Worldwide Minerals* could not be done — rule that the alleged conduct of various defendants is

unlawful based on the alleged illegality of the Russian Federation's tax and criminal enforcement

and collection decisions on its own territory. As in *Riggs*, however, Russia's enforcement of its

tax laws against Yukos is a sovereign act that must be treated by this Court as lawful and valid.

Otherwise, the arguments advanced by the plaintiffs here could just as likely be advanced in

Russian courts by Russian stakeholders adversely affected by, for example, the U.S. investigations

and prosecutions of Enron, Worldcom or Arthur Andersen. Application of the act of state doctrine

serves precisely to avoid such second-guessing of each nation's enforcement policies. Because

this Court must — as a matter of law — treat the actions of the Russian Federation, in Russia, as

lawful and valid, the essential premises of plaintiffs' complaint (*e.g.*, that the tax assessment

against Yukos, or the government seizure and auction of YNG shares, was illegal) must fail.

## IV.    PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE

The political question doctrine prohibits courts from exercising jurisdiction over cases that would require them to decide political issues committed by the Constitution exclusively to the political branches of the government. *Bancoult v. McNamara*, No. 05-5059, 2006 WL 1042356, *3-*4 (D.C. Cir. April 21, 2006); *Schneider v. Kissinger*, 412 F.3d 190, 193 (D.C. Cir. 2005) (explaining that "courts lack jurisdiction over political questions that are by their nature committed to the political branches . . . .") (quotation marks omitted).   In applying the doctrine, a dispute is nonjusticiable if it meets any one of six criteria:

> Prominent on the surface of any case held to involve a political question is found a [1] textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment of multifarious pronouncements by various departments on one question.

*Id.* at 194 (quoting *Baker v. Carr*, 369 U.S. 186, 210 (1962)).   The complaint implicates at least the first, fourth, fifth and sixth *Baker* factors because this case involves significant and complex issues of foreign policy that are committed to the political branches, and on which those branches have already expressed a position that this Court must respect.

Plaintiffs' complaint asks this Court to declare that the Russian Federation has committed fraud and conversion, that its Ministers are racketeers, and that none of them respect the rule of law.  Such a declaration would "implicitly condemn American foreign policy," insofar as the U.S. official policy is to treat the Russian Federation as an important ally and partner. *See Doe I*, 400 F. Supp. 2d at 110.  The Constitution commits questions of foreign policy — such as

- 13 -

whether to treat a major foreign power as a partner or as a racketeer — to the political branches of government, not the judiciary. *Oetjen*, 246 U.S. at 302 ("The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative – 'the political' – departments."). For that reason, this Court lacks jurisdiction to decide them. *See Haig v. Agee*, 453 U.S. 280, 292 (1981); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 803 (D.C. Cir. 1984) (Bork, J., concurring) ("Questions touching on the foreign relations of the United States make up what is likely the largest class of questions to which the political question doctrine has been applied."); *Luftig v. McNamara*, 373 F.2d 664, 665-66 (D.C. Cir. 1967); *Doe I*, 400 F. Supp. 2d at 110; *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d, 424, 483 (D.N.J. 1999) ("[T]he most appropriate case for applicability of the political question doctrine concerns the conduct of foreign affairs.").

Plaintiffs' complaint itself reveals the serious foreign policy issues by alleging that President Bush, Secretary of State Condoleeza Rice and former Secretary of State Colin Powell have all "questioned" the Russian Federation's actions involving Yukos. Compl., ¶ 2. Notwithstanding such expressions of concern, however, the Court can take judicial notice that the Executive Branch has not taken action that would undermine the U.S.-Russia partnership. By accepting jurisdiction to consider plaintiffs' accusations that the Russian Federation, President Putin, the Ministers, and other Russian government officials are racketeers, fraudsters or thieves, this Court would be countermanding the Executive Branch's foreign policy prerogatives regarding the U.S.'s relationship with the Russian Federation. For this reason alone, the Court is unable to accept jurisdiction over the plaintiffs' accusations.[12]

---

[12]    Use of judicial power can have important consequences for the United States' relations with the Russian Federation. For example, when a U.S. bankruptcy court accepted jurisdiction over Yukos' application for a temporary restraining order in December 2004, the Russian parliament responded by taking under consideration legislation that would deny sovereign immunity to the

## V.     THE DOCTRINE OF INTERNATIONAL COMITY BARS RE-LITIGATION OF DISPUTES THAT HAVE ALREADY BEEN DECIDED IN RUSSIA

"'Comity' . . . is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience . . . ." *Société Nationale Industrielle Aérospatiale v. Southern Dist. Ct. of Iowa*, 482 U.S. 522, 544 (1987) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895)) (also citing *Emory v. Grenough*, 3 U.S. (Dall.) 369, 370 n.1 (1797)). Recently, in *Medellin v. Dretke*, the Supreme Court reinforced the established rule that comity precludes re-litigation of the decisions of foreign tribunals (125 S.Ct. 2088, 2094 (2005)):

> It is the long-recognized general rule that, when a judgment binds or is respected as a matter of comity, a "let's see if we agree" approach is out of order. See *Hilton v. Guyot*, 159 U.S. 113, 202- 203, 16 S.Ct. 139, 40 L.Ed. 95 (1895) (where "comity of this nation" calls for recognition of a judgment rendered abroad, "the merits of the case should not ... be tried afresh ... upon the mere assertion ... that the judgment was erroneous in law or in fact"); *see also* Restatement (Second) of Conflict of Laws § 106 (1969) ("A judgment will be recognized and enforced in other states even though an error of fact or of law was made in the proceedings before judgment ...."); *id.*, § 106, Comment a ("Th[is] rule is ... applicable to judgments rendered in foreign nations....").

The ordinary deference under international comity to a foreign nation's legislative, executive and judicial decisions becomes mandatory when the matter at issue involves a nation's domestic enforcement of its own tax or criminal laws. In *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings*, the Second Circuit explained that because tax laws serve to implement a nation's political, moral and ideological principles and goals, U.S. courts must avoid entangling themselves in foreign tax disputes to "help[] nations maintain their mutual respect and

---

United States and its diplomats. *See* Exhibit B (proposed Russian sovereign immunity legislation). Fortunately, the U.S. bankruptcy court dismissed the action before it.

security." 268 F.3d 103, 111 (2d Cir. 2001). Citing Judge Learned Hand, the Second Circuit

continued (*id.* at 114):

> "To pass [judgment] upon the provisions for the public order of
> another state is, or at any rate should be, beyond the powers of a
> court; it involves the relations between the states themselves, with
> which courts are incompetent to deal, and which are intrusted to
> other authorities. . . . Revenue laws fall within the same reasoning;
> they affect a state in matters as vital to its existence as its criminal
> laws." (quoting *Moore v. Mitchell*, 30 F.2d 600, 604 (2d Cir. 1929)
> (L. Hand, J., concurring)).

*See also* Restatement (Third) Of The Law Of Foreign Relations Of The United States, § 483

(1986); *Pasquantino v. United States*, 125 S.Ct. 1766, 1774-75 n.8 (2005) ("Since the late 19th

and early 20th century, courts have treated the common-law revenue rule as a corollary of the rule

that, as Chief Justice Marshall put it, '[t]he Courts of no country execute the penal laws of

another.'") (citing *Moore*, *supra*, at 603).

The twin pillars supporting the doctrine of comity — respect for the decisions of

foreign sovereigns and promoting judicial efficiency — are squarely implicated in this case. The

Russian executive and judicial branches have decided the tax and criminal measures that plaintiffs

now seek to put back at issue in this lawsuit. Those decisions — which are central to the "public

order" of the Russian Federation — are entitled to comity from this Court. Because plaintiffs'

complaint requires this Court to allow the re-litigation of the legality of those actions in violation

of international comity, it should be dismissed.

## VI.    PLAINTIFFS' CLAIMS SHOULD ALL BE DISMISSED AS A MATTER OF LAW
FOR FAILURE TO STATE A CLAIM

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when the plaintiff can prove

no set of facts in support of its claim entitling it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957). In considering whether plaintiffs have stated a claim, this Court should not accept

inferences that "are unsupported by the facts set out in the complaint" or "legal conclusions cast in

the form of factual allegations." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Nor should this Court accept factual allegations that are contradicted by matters subject to judicial notice.  *See Kaempe*, 367 F.3d at 964.[13]

### A.    Plaintiffs Fail to State a Claim For Common Law Conversion

Count I alleges that each of the defendants is liable for conversion.  Conversion is the "unlawful exercise of ownership, dominion, or control, over the personal property of another in denial or repudiation of that person's rights thereto." *Shulman v. Voyou, L.L.C.*, 251 F. Supp. 2d 166, 170 (D.D.C. 2003).  Plaintiffs' conversion claim fails as a matter of law because the allegations of the complaint fail to establish three essential elements of conversion.  *First*, plaintiffs' allegations confirm that they lack standing to pursue the conversion alleged because they have no possessory right to the assets allegedly converted.  *Second*, the complaint does not allege that either Minister exercises ownership, dominion or control over the allegedly converted assets.  *Third*, the allegations of the complaint confirm, as a matter of law, that the allegedly converted property was purchased in accord with Russian law.  For each of these reasons, Count I must be dismissed.

### 1.    Plaintiffs Lack Standing Because They Have No Possessory Right To the Assets at Issue

A plaintiff lacks standing to assert conversion unless it either owns or has an immediate right to possess the property at issue.  *Shulman*, 251 F. Supp. 2d at 171 (granting motion to dismiss conversion claim where plaintiff had only contractual right, as opposed to proprietary right, to possess the property allegedly converted); *Curaflex Health Serv. Inc. v. Bruni*,

---

[13]    Because plaintiffs refer to "common law" as the legal basis for their conversion, prima facie tort, and fraud claims, the Ministers address the sufficiency of those allegations under U.S. law solely for the purposes of this motion.  *Cf.* Fed. R. Civ. P. 44.1 (requiring notice of intent to rely on foreign law).  If plaintiffs' complaint were to survive, however, Russian law would control — and mandate dismissal — of plaintiffs' claims.  *See Minebea Co. v. Papst*, 377 F. Supp. 34, 37-38 (D.D.C. 2005); Restatement (Second) of Conflict of Laws § 145 (1971).

877 F. Supp. 30, 32 (D.D.C. 1995); *Shea v. Fridley*, 123 A.2d 358, 361 (D.C. 1956) ("Where there has been no dispossession of property rights, there can be no action for conversion").

Although plaintiffs own and have an immediate right to possess their ADRs, they do *not* allege that any ADRs have been taken from them. Instead, plaintiffs allege that property they neither own nor have an immediate right to possess has been taken: (i) the shares of Yukos stock that are owned by Hulley Enterprises and Yukos Universal Limited (Compl., ¶¶ 104-106 & 182a); (ii) the shares of YNG that were owned by Yukos (*Id.*, ¶¶ 51, 153-168, 182b); and (iii) other property belonging to Yukos that is being applied to satisfy Yukos' tax liabilities (*Id.*, ¶¶ 128-135, 182c).

Plaintiffs' claim of conversion of property in which they have no ownership or possessory rights must be dismissed. It is a fundamental principle of corporate law that shareholders do not own or have possessory rights in corporate assets. *Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 786 (D.C. Cir. 1998). For that reason, courts have repeatedly held that shareholders (much less ADR-holders) lack standing to assert claims for conversion of corporate assets. *Labovitz v. Washington Times Corp.*, 172 F.3d 897, 904-05 (D.C. Cir. 1999); *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984); *In re U.S. Office Products Sec. Litig.*, 326 F. Supp. 2d 68, 82 (D.D.C. 2004); *Hutchings v. Manchester Life and Cas. Mgmt Corp.*, 896 F. Supp. 946, 948 (E.D. Mo. 1995); *Dittman v. Myers*, 95 S.W.2d 1332, 1336 (Tex. Civ. App. 1936).

### 2.    The Ministers Do Not Exercise Any Rights Over the Assets

Even if plaintiffs had standing to assert a claim for conversion (which they do not), the Ministers could not be liable because the complaint does not allege that they exercise (or have ever exercised) ownership, dominion or control over the property that was allegedly converted. *See Kaempe*, 367 F.3d at 964 ("Under D.C. law, an action for conversion is recognized only when a defendant unlawfully exercises ownership, dominion or control over the personal property of

- 18 -

another in denial or repudiation of his rights thereto."). The failure to allege ownership, dominion or control by either Minister compels dismissal of Count I. *Bynum v. Equitable Mortgage Group*, No. 99 CV-2266-SBC-JMF, 2005 WL 818619, at \*15 (D.D.C. Apr. 7, 2005).

Moreover, plaintiffs cannot avoid the requirement that the Ministers have rights over the allegedly converted property merely be inserting the word "conspiracy" into the caption of Count I. Plaintiffs do not plead the underlying elements of a civil conspiracy. *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983) (holding civil conspiracy requires "an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement by someone participating in it; and injury caused by the act."). Plaintiffs' failure to identify (or allege) any actual agreement among the defendants to perform an unlawful act or a lawful act in an unlawful manner requires dismissal of any conspiracy claim. *See Bynum*, 2005 WL 818619 at \*16 (dismissing conspiracy to convert property claim in the absence of agreement among defendants); *Graves v. United States,* 961 F. Supp. 314, 320 (D.D.C. 1997); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (affirming dismissal of alleged civil rights conspiracy where complaint failed to allege agreement).

### 3.      There Is No Unlawful Possession of the Assets

A defendant cannot be liable for conversion unless he *wrongfully* possesses the plaintiff's asset. *See First American Bank, N.A. v. District of Columbia*, 583 A.2d 993, 998 (D.C. 1990) (dismissing alleged conversion claim against District of Columbia when city seized property in accordance with statutory grant of authority). In this case, the act of state doctrine and international comity require this Court to find that Russia's sovereign acts regarding the allegedly converted property were lawful. *See World Wide Minerals*, 296 F.3d at 1160; *see generally supra* at 10-16. Because the alleged transfer of these assets must be treated as lawful, no claim for conversion is possible and Count I must be dismissed.

## B. Plaintiff Yukos ADR Holders' RICO Claims Must Be Dismissed As a Matter of Law

In Counts II, III, and IV, three of the plaintiffs — the "Plaintiff ADR Holders"

(Compl., ¶¶ 8-11)[14] — allege that the Ministers, the remaining individual defendants,

Baikalfinancegroup and Gazpromneft (the "RICO Defendants") engaged in racketeering in

violation of 28 U.S.C. §§ 1962(b), (c), and (d). Count II alleges that the RICO Defendants

"acquired an interest in and/or control of Yukos" through a pattern of racketeering activity.

Compl., ¶ 192. Count III alleges that the RICO Defendants formed an association in fact

enterprise and conducted its affairs through a pattern of racketeering activity. *Id.*, ¶ 202. Finally,

Count IV alleges that the RICO Defendants conspired to commit the violations alleged in Counts

II and III.

All three RICO counts must be dismissed as a matter of law for three independent

reasons. *First*, the Plaintiff ADR Holders do not have standing to pursue RICO relief. *Second*, the

RICO statute does not apply extraterritorially to the circumstances presented in this case. *Third*,

there is no "pattern of racketeering activity." Parts 1 through 3, below, discuss these three

independent grounds for dismissal of all of the RICO claims.

In addition to the universal defects in the RICO allegations, Counts II and III suffer

from their own, unique fatal defects. Part 4, below, demonstrates that Count II is fatally defective

because the plaintiffs have failed, as a matter of law, to plead sufficient facts that the RICO

Defendants have "acquired an interest in or control over" Yukos. Part 5, below, demonstrates that

---

[14]    The complaint identifies the "Plaintiff ADR Holders" as plaintiffs who purchased Yukos ADRs before October 25, 2003, and continue to hold those ADRs. *Id.*, ¶ 11. There are just three Plaintiff ADR Holders. Although the complaint fails to specify a purchase price for some purchases, the total purchase price for the holders' ADRs is less than $400,000. Plaintiff ADR Purchasers, the other group of plaintiffs in this case, purchased Yukos ADRs after October 25, 2003.

Count III is fatally defective because the plaintiffs have failed, as a matter of law, to plead a

cognizable association-in-fact enterprise.

### 1. The RICO Claims Must Be Dismissed for Lack of Standing

A RICO plaintiff "only has standing if, and can only recover to the extent that, he

has been injured in his business or property by the conduct constituting the violation." *Sedima,*

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also* 18 U.S.C. § 1964(c). The three Plaintiff

ADR Holders lack standing for two independent reasons. *First*, the purported predicate acts allege

direct injuries only to *Yukos*, and the ADR Holders lack standing to assert injuries to *Yukos*.

*Second*, even if an indirect injury could provide standing under RICO (which it cannot), the ADR

Holders have not suffered a "clear and definite" injury because they still hold their ADRs.

### a. The RICO Counts Must Be Dismissed Because Plaintiffs Have Suffered No Direct Injury

Only a plaintiff who suffers a direct, proximate injury from the alleged RICO

misconduct has standing under RICO. *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258,

268 (1992); *Serv. Employees Int'l Union v. Philip Morris*, 249 F.3d 1068, 1072 (D.C. Cir 2001)

(affirming dismissal of RICO claims, explaining "the Supreme Court has insisted on an

appropriate plaintiff, namely, a plaintiff whose alleged injury possesses a sufficiently direct causal

relationship to the alleged wrongdoing"). The Plaintiff ADR Holders complain only that the value

of their ADRs has been reduced because of alleged racketeering activities that directly affected

*Yukos*. *See* Compl., ¶¶ 193(a), 205(a) (alleging RICO Defendants violated 18 U.S.C. § 2314 by

"convert[ing] *Yukos* property worth more than $5,000") (emphasis added); *id.*, ¶¶ 193(b), 205(b)

(alleging RICO Defendants violated 18 U.S.C. § 152 by "receiv[ing] property from a *debtor*

*[Yukos]* after the filing of a case under Title 11") (emphasis added); *id.*, ¶¶ 193(c), 205(c) (alleging

RICO Defendants violated 18 U.S.C. § 1343 by "the *de facto* re-nationalization of *Yukos*")

(emphasis added); *see also id.*, ¶ 179 (describing the "*de facto* re-nationalization" as the alleged

taking by the Russian Federation of Yukos' assets to satisfy allegedly wrongful tax claims)
(emphasis added).

   The indirect or derivative injury alleged by the ADR Holders is inadequate — as a
matter of law —because RICO's standing requirement is *not* satisfied by "losses suffered by a
company's stakeholders as a result of racketeering activity against the company." *Bivens Gardens
Offic Bldg, Inc.  v. Barnett Banks of Florida, Inc.*, 140 F.3d. 898 (11th Cir. 1998).[15] In *Western
Associates Ltd P'ship v. Market Square Associates,* 235 F.3d 629, 635 (D.C. Cir. 2001), the D.C.
Circuit similarly reasoned that individual partners of a limited partnership who suffer losses as a
result of racketeering activity against the partnership do not, themselves, have standing under

---

[15] *See also Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) (dismissing civil RICO claims
predicated on alleged violations of bankruptcy laws because "[a] shareholder generally does not
have standing to bring an individual action under RICO to redress injuries to the corporation in
which he owns stock"); *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990) ("Shareholders of a
corporation do not have standing as individuals to bring a RICO action for diminution in the value
of their stock caused allegedly by racketeering activities conducted against the corporation.");
*Sparling v. Hoffman Constr. Co*, 864 F.2d 635, 640-41 (9th Cir. 1988) (explaining that plaintiff
shareholders "must show either an injury distinct from that to other shareholders or a special duty
between [defendants] and [shareholder plaintiffs] if they are to have standing to assert RICO
claims based on injury to the corporation."); *Leach v. FDIC*, 860 F.2d 1266, 1273 (5th Cir. 1988)
(applying state law to hold that shareholders did not have standing to assert RICO claim based on
injury to corporation); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988)
(applying in civil RICO action the rule that "[a]n action to redress injuries to a corporation cannot
be maintained by a shareholder in his [or her] own name but must be brought in the name of the
corporation through a derivative action."); *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 29-30 (1st
Cir. 1987) ("A suit under RICO for injuries to the corporation, however, can only be brought by
the corporation itself or by a shareholder suing derivatively on behalf of the corporation."); *Gaff v.
Federal Deposit Ins. Corp.*, 814 F.2d 311, 317 (6th Cir. 1987) (applying in RICO action the
"general rule that a shareholder does not have standing to bring a direct cause of action under
federal law when the only damage alleged is the diminution in the value of corporate shares.");
*Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986) (holding that a shareholder
generally does not have standing to bring an action under RICO to redress injuries to a
corporation); *Lakonia Mgmt Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 550-51 (S.D.N.Y. 2000)
(dismissing RICO claims by shareholders where alleged injury was derived from injury to
corporation); *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127, 136 (S.D.N.Y.
1988).

RICO because "they [are] injured indirectly." Because the ADR Holders assert RICO claims based on alleged indirect losses, they lack standing and all three RICO counts must be dismissed.

### b. The ADR Holders Have Not Alleged a Clear and Definite Indirect Injury

Even if a reduction in ADR value were a direct, proximate injury, a "cause of action does not accrue under RICO until the amount of damages becomes clear and definite." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994).[16] Because the Plaintiff ADR Holders continue to hold their ADRs, not even the alleged indirect injury to the value of their ADRs has become "clear and definite." *See Lincoln House*, 903 F.2d at 847 (dismissing RICO claims for lack of RICO standing where "alleged injury [wa]s clearly contingent on events that may not occur as anticipated or may not occur at all"). Notably, Yukos is pursuing legal claims in various fora — against the Russian Federation and many of the other defendants in this lawsuit — to reverse the tax rulings and recover damages for the alleged conduct that is at issue here. Under these circumstances, it is far from certain what, if any, injury the ADR Holders will suffer. RICO claims, like this one, that are filed before a "concrete and definite" injury has occurred must be dismissed for lack of standing. *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135-36 (2d Cir. 2003); *First Nationwide Bank*, 27 F.3d at 768.

### 2. Congress Did Not Intend RICO to Apply Extraterritorially to Circumstances Like Those Alleged Here

It is "a long-standing principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 276 (1992) *superseded on other grounds by* Civil Rights Act of 1991, Pub. L. No. 102-166, § 109(a) (1991) (codified as

---

[16] *See also Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (finding plaintiff lacked standing because alleged injury was contingent on plaintiff prevailing in an on-going state action); *Oscar v. University Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) (RICO requires a showing of concrete financial loss).

amended at 42 U.S.C. § 2000e(f)), (quoting *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285

(1949)). Because the RICO statute reflects no intent to apply beyond the borders of the United

States, it only applies to a "controversy involving significant and material contact with the United

States." *North South Fin. Corp. v. Al-Turki*, 100 F.3d 1046, 1051 (2d Cir. 1996); *see also Butte

Mining PLC v. Smith*, 76 F.3d 287, 291 (9th Cir. 1996) (requiring significant, material effects in

the U.S); *Doe I*, 400 F. Supp. 2d at 114-115.[17]

      The alleged racketeering described by plaintiffs has virtually no contact with the

United States. The plaintiffs have not alleged that defendants engaged in any activities in the

United States. Nor are there any direct effects in the United States, since the only alleged direct

victim of the alleged racketeering acts is Yukos, a Russian company. Even the three Plaintiff

ADR Holders (with a total of just 5,085 ADRs) cannot show any indirect concrete injury because,

as explained *supra*, no injury to them may ever materialize. *See* Compl., ¶¶ 8-10 (revealing total

of 5,085 ADRs at issue in the RICO claims). In comparison, Russia has substantial interest in this

dispute. Congress never intended the federal RICO statute to apply to international controversies

with such little connection to the United States. *See, e.g., Doe I v. Unocal Corp.*, 395 F.3d 932,

961 (9th Cir. 2002) (holding RICO statute inapplicable to alleged foreign conduct lacking

sufficient effects in the United States); *Doe I*, 400 F. Supp. 2d at 114-15; *see also Attorney

General of Canada*, 268 F.3d at 114 (recognizing that Congress did not intend RICO to displace

---

[17]    The inappropriateness of extraterritorial effect is heightened in this case, where the allegations of racketeering strike directly at alleged sovereign conduct of the Russian Federation within its own borders. Under these circumstances, the doctrines of act of state, political question and international comity strongly disfavor the extraterritorial application of RICO. *See Murray v. The Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804) (Marshall, C.J.) ("[A]n act of Congress ought never to be construed to violate the law of nations if any other possible construction remains."); *Doe I*, 400 F. Supp. 2d at 116; Restatement (Third) of the Foreign Relations Law of the United States, § 403 (explaining that a nation may only exercise jurisdiction to proscribe conduct outside its own territory when "reasonable"); *cf. Timberlane Lumber Co. v. Bank of Am.*, 549 F.2d 597, 614 (9th Cir. 1976) (stating that U.S. interests must be weighed against the interests of other nations in assessing the appropriateness of extraterritorial application of U.S. antitrust laws).

fundamental notions of international comity embodied in the revenue rule). Accordingly, Counts II, III, and IV must be dismissed.

### 3. Plaintiffs Have Not Alleged a Pattern of Racketeering Activity

A cognizable RICO violation requires allegations that the defendant engaged, or conspired to engage, in "a pattern of racketeering activity." 18 U.S.C. §§ 1962(b)-(d). The plaintiffs' allegations are inadequate for four independent reasons: (i) plaintiffs have failed to allege any predicate acts that constitute racketeering activity; (ii) plaintiffs' allegations are insufficient as a matter of law to establish the "continuity" required for a "pattern;" (iii) the sovereign defendants, including the Ministers, cannot commit predicate acts because they are not "indictable;" and (iv) plaintiffs' allegations concerning predicate acts of racketeering are not connected to the Ministers.

#### a. Plaintiffs Have Failed to Allege Any Predicate Crimes

Plaintiffs allege three types of racketeering activity: transport of YNG's illegally converted oil and gas in violation of 18 U.S.C. § 2314, receipt of bankruptcy estate property in violation of 18 U.S.C. § 152, and wire fraud in violation of 18 U.S.C. § 1343. As a matter of law, this Court cannot find that either Minister engaged in any of these activities.

*First*, it is essential to a violation of Section 2314 that the property being transported has been converted. Because the complaint alleges that the shares of YNG were attached and auctioned by the Russian Federation, Compl. ¶¶ 153-154; 193a; 205a, the act of state doctrine and international comity require this Court to treat as lawful the transfer of ownership of the YNG shares. *See, supra*, at 10-16. Accordingly, the plaintiffs cannot — as a matter of law — prove that YNG (or its oil and gas) was converted by any party.

*Second*, the alleged violation of Section 152 is based on the alleged acquisition of YNG shares after the voluntary filing by Yukos of a bankruptcy petition that was thereafter

dismissed for cause under 11 U.S.C. § 1112(b). Even if an improperly filed bankruptcy petition could provide the foundation for a Section 152 violation, the attachment and auction of the YNG shares were acts of state performed by the Russian government, within Russia, that must be treated as valid by the Court.

*Third*, the alleged violation of Section 1343 is based on the non-specific allegation that the RICO Defendants issued misleading statements by wire communication in connection with a scheme to defraud. A RICO plaintiff alleging fraud as a predicate act, however, must "stat[e] with particularity" the facts supporting that allegation. *Danielson v. Burnside-Ott Aviation Training*, 941 F.2d 1220, 1229 (D.C. Cir. 1991) (quoting Fed. R. Civ. P. 9(b)). The complaint specifies neither any allegedly false statement by *any* of the RICO Defendants nor reasonable reliance by the plaintiffs on such statements. Those failures are fatal. *See Byer Indus., Inc. v. Gulf Ins. Co.*, 888 F. Supp. 1, 2 (D.D.C. 1995) (dismissing RICO complaint alleging wire fraud because it failed to plead a misrepresentation and detrimental reliance with "sufficient particularity"); *Vandenbroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 701-02 (6th Cir. 2000) (dismissing RICO complaint based upon wire fraud because plaintiffs "failed to allege facts 'with particularity' which would show either intent to defraud or reliance . . . ."); *Chisholm v. Transouth Fin. Corp.*, 95 F.3d 331, 337-38 (4th Cir. 1996) (dismissing RICO claim for failure to "specifically plead" justifiable reliance).[18]

---

[18]    The failure to plead with particularity the conduct allegedly giving rise to wire fraud violations appears to be an attempt to circumvent RICO's bar against using conduct allegedly actionable as securities fraud as a RICO predicate: "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." 18 U.S.C. § 1964(c); *Bald Eagle Area School Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999). Application of this bar does not depend on whether the plaintiff alleging a RICO violation could himself bring a securities fraud claim; rather, the PSLRA prohibits the use by any person of "any conduct" that could be actionable as securities fraud. *See Howard v. America Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). Applying this standard, courts have held that 18 U.S.C. § 1964(c) "bars plaintiffs from pleading RICO counts in the alternative" to securities fraud counts. *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1050 (D. Minn.

Thus, counts II, III and IV must be dismissed for failing to allege predicate acts.

### b. Plaintiffs Have Not Alleged a "Pattern" of Racketeering Activity

Even if some or all of the alleged predicate acts were viable, plaintiffs have not

alleged a "pattern" of racketeering activity. This Circuit has explained that it is "virtually

impossible" for plaintiffs to state a RICO claim based on a single scheme, a single injury, and a

single set of victims. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260

(D.C. Cir 1995). Plaintiffs have alleged only a single scheme (allegedly to de facto re-nationalize

Yukos' assets), a single injury (allegedly the loss of Yukos' economic value), and just one victim

(Yukos or, at most, a single set of ADR-holder victims). Under these circumstances, this Court

cannot, as a matter of law, find a "pattern." *See id.*; *see also Western Associates*, 235 F.3d at 634

(rejecting plaintiffs' RICO claim based on a "single scheme, a single injury, and a single victim

(or single set of victims)" where the defendant's conduct was "more accurately characterized as a

single effort to diminish the value of [the plaintiff's] partnership interest"). Accordingly, Counts

II, III and IV must be dismissed.

### c. The Ministers Are Not Indictable for Predicate Crimes

Plaintiffs allege that each RICO Defendant committed two or more racketeering

acts. Compl., ¶¶ 194, 206. "[R]acketeering activity" is limited, however, to those acts that are

"indictable" under particular sections of the federal criminal code. 18 U.S.C. § 1961(1)(B).

Foreign states and their agencies and instrumentalities are immune from the criminal jurisdiction

of the United States courts. *See* 28 U.S.C. § 1330 (granting American courts jurisdiction to hear

only *civil* claims against non-immune foreign states); *Argentine Republic v. Amerada Hess

Shipping Corp.*, 488 U.S. 428, 433 (1989) (explaining that FSIA is "the sole basis for obtaining

---

2003); *Hemispherx Biopharma, Inc. v. Asencio*, No. Civ. A. 98-5204, 1999 WL 144109, at *4
(E.D. Pa. 1999) (same); *Ostler v. Codman Research Group, Inc.*, Civ. No. 98-356-JD, 1999 WL
1059684, at *6 (D.N.H. April 20, 1999) (same).

jurisdiction over a foreign state in our courts"). For that reason, the acts of foreign states (including their agencies and instrumentalities) are not "indictable" and, therefore, cannot be "racketeering activity" under RICO. *See Keller v. Cent. Bank of Nigeria*, 277 F.3d 811, 821 (6th Cir. 2002) (holding that "a foreign sovereign is not indictable, and therefore not amenable to civil RICO claims"); *Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 750 F. Supp. 838 (N.D. Ohio 1990); *see also Norris v. Dept. of Defense*, No. 96-5326, 1997 WL 362495 at *1 (D.C. Cir. May 5, 1997) (summarily affirming dismissal of RICO claims based on the doctrine of official immunity); *McNeily v. United States*, 6 F.3d 343, 350 (5th Cir. 1993) (holding that FDIC is not subject to RICO because it is not "'chargeable', 'indictable', or 'punishable' for violations of specified criminal provisions").

The plaintiffs have tacitly conceded the inapplicability of RICO to foreign sovereigns. The complaint does not allege any RICO claims against the four defendants (the Russian Federation, Rosneftegaz, Rosneft and Gazprom) alleged to be foreign sovereigns. Because the Ministers qualify as "foreign states" for purposes of the FSIA (*see*, *supra*, at 6-7), they cannot be liable under RICO. Counts II, III and IV must, therefore, be dismissed.

> d.  *Plaintiffs Have Not Pleaded Participation by Either Minister in a Pattern of Racketeering Activity.*

Plaintiffs' RICO counts lack any allegation connecting either Minister to the alleged pattern of racketeering activity. Where, as here, plaintiffs have alleged claims against multiple defendants, "the complaint must disclose the specific nature of each defendant's participation in the alleged fraud." *Amalgamated Bank of New York v. Marsh*, 823 F. Supp. 209, 216 (S.D.N.Y. 1993) (*citing DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). The complaint makes no specific allegations concerning involvement by either Minister in the alleged RICO activity. Counts II, III and IV must therefore be dismissed. *See Danielson*, 941 F.2d at 1229.

- 28 -

### 4. Count II Must Be Dismissed for the Additional Reason that Neither Minister Has Acquired an Interest in or Control Over Yukos

Section 1962(b) "makes it unlawful to acquire control of an enterprise through a pattern of racketeering activity." *Danielsen*, 941 F.2d at 1231. To "avoid dismissal for failure to state a claim [under 18 U.S.C. § 1962(b)], a plaintiff must articulate how each defendant acquired or maintained an interest in an enterprise, or acquired control of an enterprise, by means of a racketeering activity." *Cadle Co. v. Schultz*, 779 F. Supp. 392, 396 (N.D. Tex. 1991). The alleged "enterprise" in Count II is Yukos. Compl., ¶ 190. Count II must be dismissed because the complaint fails, as a matter of law, to establish that any RICO Defendant, much less either Minister, "acquired an interest in or control of" Yukos. *Cadle Co.*, 779 F. Supp. at 396; *see also Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003) (affirming dismissal of § 1962(b) claim where plaintiff "did not include more than the vaguest allusions to the acquisition or maintenance of any interest in or control of the alleged enterprise"); *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 329 (6th Cir. 1999) (affirming dismissal of § 1962(b) claim when plaintiff pleaded only a legal conclusion by parroting the statutory language); *Burdett v. Harrah's Kansas Casino Corp.*, 260 F. Supp. 2d 1109, 1120-21 (D. Kan. 2003) (same).

Although the RICO statute does not define "control" or "interest," precedent stresses that defendants must secure a proprietary interest in an enterprise, or the operational control associated with such a proprietary interest. *Teague v. Bakker*, 35 F.3d 978, 995 (4th Cir. 1994) (defendants had control of the day-to-day operations of the business); *Whaley v. Auto Club Ins. Ass'n*, 891 F. Supp. 1237, 1240–41 (E.D. Mich. 1995) ("The type of 'interest' contemplated in § 1962(b) is not just any 'interest' but a proprietary one, such as the acquisition of stock, and the 'control' contemplated is the power gained over an enterprise's operations by acquiring such interest."); *Moffat Enterprises, Inc. v. Borden, Inc.*, 763 F. Supp. 143, 147 (W. D. Pa. 1990) (defendants had control through ability to appoint directors and officers). Other than a conclusory

- 29 -

allegation in paragraph 192, plaintiffs have not alleged facts capable of supporting an inference that any of the RICO Defendants secured a proprietary interest in or operational control over *Yukos*. Read in the light most favorable to the plaintiffs, Count II can only support the conclusion that defendant Baikalfinansgroup purchased shares of YNG — not Yukos — that had been sold at auction by the Russian Federation. Compl., ¶¶ 160, 193  But procuring shares of *YNG* that were once owned by Yukos cannot — as a matter of law and logic — support the conclusion that defendants acquired an interest in or control over *Yukos*.

Yukos' recent activities confirm that defendants have not "acquired an interest in or control over" Yukos. If the Ministers had acquired such control over Yukos, then Yukos would not have filed a proposed chapter 11 reorganization plan in early 2005 that valued the Russian Federation's tax claims at US$ 0. Nor would Yukos have sought, through the chapter 11 proceeding, to compel the Russian Federation to arbitrate tax claims that had been fully litigated in Russian courts. If the Ministers controlled Yukos, Yukos would not have filed claims in the European Court of Human Rights against the Russian Federation. Yukos' actions are irreconcilable with plaintiffs' conclusory allegation that the RICO Defendants acquired ownership and control of Yukos. Accordingly, Count II must be dismissed.

### 5. Count III Must Be Dismissed for the Additional Reasons that (i) Plaintiffs Have Not Alleged an Association-In-Fact Enterprise, and (ii) Plaintiffs Have Not Alleged Facts Capable of Showing that Either Minister "Participated in the Conduct of an Enterprise."

A violation of Section 1962(c) requires "(1) conduct (2) of [an] enterprise (3) through a pattern (4) of racketeering activity." *Pyramid Sec. Ltd. v. I.B. Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991) (quoting *Sedima*, 473 U.S. at 496). An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In Count III, plaintiffs allege that the RICO Defendants (*i.e.*, the Individual Defendants, Gazpromneft and

Baikalfinansgroup) were an association-in-fact that engaged in racketeering activity. Compl., ¶¶ 202, 205. Count III must be dismissed because (i) the allegations of an association-in-fact enterprise fail as a matter of law, and (ii) there is no allegation that the Ministers (or any other defendant) participated in the management or control of the alleged enterprise.

An "enterprise" — even an "association in fact enterprise" — must have organization and continuity. *See District Telecomm. Dev. Corp. v. District Cablevision, Inc.*, 638 F. Supp. 418, 421 (D.D.C. 1985) (dismissing RICO allegations where the only "common denominator" among the defendants in alleged enterprise was their involvement in the transaction that was the subject of the suit). The enterprise "is not a 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Moreover, it is not enough for a group of individuals to commit acts enumerated by § 1961(1); a plaintiff must assert that those individuals were organized together in some way, and that there was a structure to the association. *Turkette*, 452 U.S. at 583; *United States v. Perholtz*, 842 F.2d 343, 363 (D.C. Cir. 1988). Applying these standards, this Circuit requires an association-in-fact enterprise to have three characteristics: "(1) a common purpose among the participants, (2) organization, and (3) continuity." *United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999). Because Count III does not identify any organization or continuity among the defendants, it must be dismissed as a matter of law. *See District Telecomm.*, 638 F. Supp. at 421.

Count III also does not allege any facts demonstrating that the Ministers (or any of the other RICO Defendants) "conduct[ed] or participate[d], directly or indirectly, in the operation" of any enterprise. In *Reves v. Ernst & Young*, the Supreme Court held that a defendant "must participate in the operation or management of the enterprise itself" to be liable under Section 1962(c). 507 U.S. 170, 185 (1993). In other words, "some part in *directing* the enterprise's affairs

- 31 -

is required." *Id.* at 179 (emphasis added); *see also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721,

727 (7th Cir. 1998) ("mere participation in the activities of the enterprise is insufficient"); *Jones v.*

*Meridian Towers Apartments, Inc.*, 816 F. Supp. 762, 772 (D.D.C. 1993) ("the commission of

predicate acts violates § 1962(c) 'only when those acts were the vehicle through which a

defendant 'conducted or participated . . . in the conduct of the enterprise's affairs'") (citation

omitted)). Because the complaint contains only conclusory statements about the defendants,

generally — and contains *no* allegation that either Minister (or any other RICO defendant)

directed the alleged enterprise's affairs — Count III must be dismissed. *See Goren*, 156 F.3d at

727 ("It is not enough . . . for a plaintiff simply to allege the [§ 1962(c)] elements in boilerplate

fashion; instead, she must allege sufficient facts to support each element [of a RICO claim].");

*Univ. of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (addressing

conduct of enterprise at motion to dismiss stage).

      Because each of the RICO Counts is legally defective for multiple, independent

reasons, each must be dismissed.

### C. Count V Must Be Dismissed Because (i) Prima Facie Tort Is Not Recognized in this District and (ii) the Allegations of the Complaint Concede that the Defendants Did Not Act with Disinterested Malevolence

      Count V alleges that all of the defendants are liable for prima facie tort because

"each of them with a malevolent intent and without justification participated in the confiscation of

plaintiffs' property through their participation in the uncompensated "de-facto" re-nationalization

of Yukos and the distribution of its principal assets to state-owned commercial enterprises."

Compl., ¶ 228. This claim fails for at least two reasons.

      *First*, the District of Columbia does not recognize a cause of action for prima facie

tort. *Nix v. Hoke*, 139 F. Supp. 2d 125, 132 n. 5 (D.D.C. 2001) (citing *Schwartz v. Franklin Nat'l*

*Bank*, 718 A. 2d 553, 556-57 (D. C. 1998) (noting that the District of Columbia has not recognized

- 32 -

prima facie tort)); *Art Metal-U.S.A., Inc. v. United States*, 577 F. Supp. 182, 184 (D.D.C. 1983)

("District of Columbia courts have not embraced a form of generic tort like the prima facie tort").

Count V thus fails to state a claim and must be dismissed.

      *Second*, even in the few jurisdictions that do recognize this tort, an essential

limiting feature is that the defendant must have acted with *no* purpose except to cause harm.  As

the Second Circuit has explained, "[m]otives other than disinterested malevolence, such as profit,

self-interest, or business advantage will *defeat* a prima facie tort claim." *Twin Laboratories, Inc.*

*v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) (emphasis added).  Plaintiffs have

*not* alleged "disinterested malevolence." *See* Compl., ¶¶ 227-229.  To the contrary, they allege

that the defendants acted with the intent of re-nationalizing Yukos assets and promoting the

Russian Federation's own interests in the global energy market. *Id.*, ¶¶ 1, 70-79.  Every nation has

an inherent interest in exercising sovereignty over its natural resources, and it was that sovereign

interest — not pure malevolence — that defendants are alleged to have pursued. *See World Wide*

*Minerals*, 296 F.3d at 1165 (citing *Int'l Ass'n of Machinists v. OPEC*, 649 F.2d 1354, 1361 (9th

Cir. 1981) (affirming "the principle of supreme state sovereignty over natural resources")); *Rush-*

*Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 578 (7th Cir. 1989)

(recognizing that exploitation of natural resources is not a commercial activity under the FSIA,

since natural resources "are goods in which only the sovereign may deal").  Because plaintiffs'

complaint contradicts the presence of an essential element of a prima facie tort, Count V must be

dismissed. *See, e.g., A. Terzi Productions, Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485,

495 (S.D.N.Y. 1998).

### D. Plaintiff ADR Holders Cannot State a Claim for Fraud Because They Have Not Alleged Any Fraudulent Statement by Either Minister, Nor Have They Alleged Specific Acts of Reliance or Cognizable Damages

In Count VI, the three plaintiffs labeled "Yukos ADR Holders" allege that "all Defendants" defrauded them through "misrepresentations and omissions that induced plaintiffs to maintain their ownership of Yukos ADRs through and including December 19, 2004." Compl., ¶ 231. This claim must be dismissed because plaintiffs have not alleged with specificity three essential elements of fraud: (i) the claim fails to identify any allegedly false statements by any defendant; (ii) the claim fails to allege with specificity any reasonable reliance by the Yukos ADR Holders; and (iii) the Yukos ADR Holders have failed to allege any cognizable damages. *See* Fed. R. Civ. P. 9(b).

*First*, Count VI fails to specify any allegedly false statement by any defendant, including either of the Ministers.[19] Plaintiffs' failure to allege with specificity a false statement by these defendants is fatal to their fraud claim. *Burman v. Phoenix Worldwide Indus., Inc.*, 384 F. Supp. 2d 316, 336 n.16 (D.D.C. 2005) (common law fraud requires the plaintiff to allege with particularity that the defendant made a false representation); *see also  Kowal v. MCI Commc'n. Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994).

*Second*, Count VI also fails to allege that the plaintiffs reasonably relied on any (unidentified) false statements. *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1286 (D.C. Cir. 1988) (Ginsburg, R.B., J.) ("To state a claim of fraud or securities fraud upon which relief can be granted, plaintiffs' allegations *must indicate* that their reliance on the allegedly fraudulent representations was reasonable.") (emphasis added); *Isen v. Calvert Corp.*, 379 F.2d 126, 130

---

[19]    The only allegedly false statements identified in the entire complaint are two statements attributed to President Putin. Compl., ¶¶ 86, 138. Notwithstanding the fact that President Putin's statements were not false, both are acts of state that cannot provide any basis for a fraud claim pursuant to the act of state and political question doctrines. *See*, *supra*, 10-15.

(D.C. Cir. 1967).    Rather than alleging facts that would justify an allegation of reasonable

reliance, the complaint limits itself to the blithe assertion that unspecified false statements

"induced" the Yukos ADR Holders to retain their Yukos ADRs. Compl., ¶ 239. As a matter of

law, this vague allegation is insufficient to plead actual, much less reasonable, reliance.

According to the complaint, these plaintiffs held their ADRs notwithstanding (i) continuing

announcements by Russian tax officials of findings of massive corporate tax frauds, (ii) the arrest

of the company's CEO for criminal misconduct, (iii) the repeated freezing of Yukos assets; and

(iv) the announcement of the auction of shares of YNG. In fact, these three plaintiffs apparently

*still* hold their ADRs. In circumstances like this, the limited number of jurisdictions that have

even recognized a "holder's action" for fraud require plaintiffs to allege with specificity "*actions*,

as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that

the plaintiff actually relied on the misrepresentations." *Small v. Fritz Companies, Inc.*, 65 P.3d

1255 (Cal. 2003) (emphasis added). The reason for this requirement is clear: plaintiffs "who

cannot plead with sufficient specificity to show a bona fide claim of actual reliance do not stand

out from the mass of stockholders who rely on the market. . . . [S]uch persons cannot bring

individual or class actions for fraud or misrepresentation." *Id.*; *see also Rogers v. Cisco Sys. Inc.*,

268 F. Supp. 2d 1314 (N.D. Fla. 2003) (dismissing holders claim in the absence of specific

allegations of acts in reliance)   The three Yukos ADR Holders' failure to allege "actions" — or

even any other basis to conclude that they acted in reasonable reliance on any statement —

confirms their inability, as a matter of law, to establish a claim of fraud.

        *Third*, plaintiffs' claim of injury caused by the alleged (but unidentified) deception

is far too speculative to support relief. *See Arent v. Distribution Sci., Inc.*, 975 F.2d 1370, 1374

(8th Cir. 1992); *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 692 (7th Cir. 1990); *Crocker v.

Federal Deposit Ins. Corp.*, 826 F.2d 347, 351 (5th Cir. 1987); *Arnlund v. Deloitte & Touche LLP*,

199 F. Supp. 2d 461, 488 (E. D. Va. 2002); *Chanoff v. United States Surgical Corp.*, 857 F. Supp.

1011, 1018 (D. Conn. 1994), *affirmed* 31 F.3d 66 (2d Cir 1994); *see also  In re WorldCom, Inc.*

*Sec. Litig.*, 336 F. Supp. 2d 310, 322-23 (S.D.N.Y. 2004) (holding that Georgia law would not

recognize a holders fraud claim).  The ADR Holders' fraud claim assumes that disclosure of an

alleged scheme to re-nationalize Yukos assets without compensation would have *increased* the

value of Yukos ADRs, or at least enabled the ADR Holders to sell their ADRs at prices higher

than they may be able to realize now.  But neither logic, nor the facts alleged, support a causal

connection between disclosure of the alleged scheme of re-nationalization and a higher price for

Yukos ADRs.  *Compare Crocker*, 826 F.2d at 351-52; *Kagan*, 907 F.2d 692.  Moreover, the

Plaintiff ADR Holders still hold their ADRs and retain the opportunity to regain any diminution in

Yukos share value as Yukos pursues relief in the Russian courts.  Under such circumstances, any

claims for damages "based on the plaintiffs' failure to sell . . . their stock are too speculative to be

actionable." *See Chanoff*, 857 F. Supp. at 1018.  Because the Yukos ADR Holders have failed to

allege a concrete injury caused by the alleged deception, their fraud claim fails as a matter of law.

For each of these three independent reasons, the "holders' fraud" claim against the

Ministers is legally defective and must be dismissed.

### E.  Plaintiffs' Securities Fraud Claim Must Be Dismissed

Count VII alleges that the defendants committed securities fraud in violation of

Section 10(b) and Rule 10b-5 by making false statements and/or omissions with the alleged intent

to keep the price of Yukos shares artificially high.  Plaintiffs' claim fails for at least five reasons.

*First*, the U.S. securities laws do not apply extraterritorially to reach statements and conduct that

was not directed to the plaintiff ADR purchasers.  *Second*, plaintiffs have failed specifically to

allege any misrepresentations by either Minister (or any other defendant).  *Third*, plaintiffs have

failed to allege facts sufficient to establish scienter under the Private Securities Litigation Reform

Act ("PSLRA"). *Fourth*, plaintiffs have failed adequately to allege "loss causation." *Fifth*, even if

any defendant had made a misrepresentation, such statement could not, as a matter of law, give

rise to a claim under Section 10(b).

### 1.  The U.S. Securities Law Does Not Apply Extraterritorially to Foreign Government Officials with No Connection or Relationship to the Plaintiffs or the Security at Issue

The general presumption against the extraterritorial application of U.S. laws applies

with equal force to U.S. securities laws. *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 9, 11

(D.D.C. 2000). An act committed outside the United States does not support subject-matter

jurisdiction under U.S. securities laws unless that act was intended to produce, and in fact

produced, detrimental effects in this country. *Id.*; *see also Shoenbaum v. Firstbrook*, 405 F.2d

200, 206 (2d Cir. 1968). Moreover, even an intent to cause substantial effects in the U.S. will not

extend jurisdiction to claims by foreign plaintiffs concerning shares purchased on foreign

exchanges. *In re Baan*, 103 F. Supp. 2d at 11 (explaining that the "effects test" applies "only . . .

to those American plaintiffs who are affected" by a foreign act).

Congress could not have intended the U.S. securities laws to apply to claims

against foreign government officials — such as the Ministers — who have no relationship to the

plaintiffs, or even to the foreign security in question. No connection between either Minister and

the U.S. has been alleged in the complaint. No specific conduct by either Minister has been

alleged to violate U.S. securities laws. Certainly no specific conduct by either Minister has been

alleged to have been directed toward and intended to have a substantial effect in the U.S.

Moreover, the two plaintiffs — FCT America, Ltd and Z.E. Thijssen — that account for two-

thirds of the Yukos securities allegedly traded by plaintiffs are neither U.S. citizens nor alleged to

have purchased and/or sold Yukos ADRs on U.S. securities markets. *See* Compl., ¶¶ 24-26

(alleging securities transactions on the London Stock Exchange). These plaintiffs have no basis to

seek the benefit of U.S. securities laws. *See In re Baan*, 103 F. Supp 2d at 11; *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 108 (S.D.N.Y. 1993); *Koal Indus. Corp. v. Asland*, S.A., 808 F. Supp. 1143, 1155 (S.D.N.Y. 1992). The plaintiffs' allegations do not present the intentional connection with the U.S. needed to support extraterritorial application of U.S. securities laws.

### 2. Plaintiffs Fail to Allege Specifically a False Statement

Plaintiffs must plead each element of their securities fraud claim with particularity. *Kowal*, 16 F.3d at 1276, 1277-78 (plaintiff must "state the time, place, and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of a fraud"); 15 U.S.C. § 78u-4(b). An essential element of a Section 10(b) claim is the existence of a false statement or omission in the face of a duty to speak. *Dura Pharmaceuticals v. Broudo*, 125 S.Ct. 1627, 1631 (2005); *In re Baan*, 103 F. Supp. 2d at 16; *see also Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997) (holding "a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)."). Although Section 10(b) imposes liability solely for a defendant's own alleged false statements, *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) (holding that Section 10(b) does not create a cause of action for aiding and abetting), plaintiffs have failed to identify any statement by either Minister (or any other defendant) that supposedly gives rise to liability under Section 10(b).[20]

---

[20] Pursuant to *Central Bank of Denver*, the allegedly false statements of Russian President Putin (which, indeed, are not false) are not actionable against the Ministers. Even if the President's alleged statements were considered, those statements are not material misrepresentations. The Supreme Court has repeatedly cautioned that allegedly fraudulent statements must be examined in light of the "total mix" of information available to investors. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). When a reasonable factfinder could not conclude that a contested statement allegedly giving rise to a violation of Section 10(b) constitutes a material misrepresentation, the complaint must be dismissed. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 615 (4th Cir. 1999) ("If what [the defendant] actually said here is examined in the context of all information publicly available, we believe that a reasonable factfinder could not conclude that the contested statement constitutes a

Nor can any of the defendants be liable for failing to disclose any alleged facts. A

defendant cannot be liable for an omission under Section 10(b) unless he has a "duty to disclose

arising from a relationship of trust and confidence *between parties to a transaction*." *Chiarella v.*

*United States*, 445 U.S. 222, 230 (1980) (emphasis added). Plaintiffs have not alleged a

relationship of trust and confidence between themselves and any defendant, nor could they. The

Ministers have absolutely no legal relationship of trust and confidence with ADR investors in the

U.S., Netherlands and Cayman Islands that could support a legal duty to disclose. Nor were

plaintiffs "parties to a transaction" with defendants. Because plaintiffs have failed to allege with

specificity an essential element of a Section 10(b) claim, Count VII must be dismissed.[21]

### 3. Plaintiffs Have Failed Adequately To Allege Scienter

The PSLRA serves to "prevent abusive and meritless [securities] lawsuits." *In re*

*U.S. Office Products,*, 326 F. Supp. 2d at 74. Under the PSLRA, the plaintiffs must, "with respect

to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2).

A "pleading technique that couples a factual statement with a conclusory statement

of fraudulent intent is insufficient to support the inference that the defendants . . . acted with

fraudulent intent." *In re U.S. Office Products*, 326 F. Supp. 2d at 77 (quoting *Rombach v. Chang*,

---

material misrepresentation [and therefore dismiss the complaint]."). No reasonable factfinder
could conclude that the statements of the Russian President — particularly given the total mix of
information that the complaint alleges was available regarding Yukos and its officers — are
material misrepresentations.

[21]    Plaintiffs have also failed to allege specific facts establishing that they *reasonably* relied on
any alleged misrepresentations. *See One-O-One*, 848 F.2d at 1286 ("To state a claim of fraud or
securities fraud upon which relief can be granted, plaintiffs' allegations must indicate that their
reliance on the allegedly fraudulent representations was reasonable."). Given Yukos' many public
difficulties highlighted in the complaint, plaintiffs cannot claim they reasonably relied on any
statements of the Ministers. Moreover, it appears that Plaintiff ADR Holders have joined in Count
VII. But only purchasers or sellers of securities — not holders — have standing to bring claims
under section 10(b). *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-748 (1975).

355 F.3d 164, 176 (2d Cir. 2004)).  Other than a vague conclusory allegation, plaintiffs have

alleged no fact capable of supporting an inference that either Minister (or any other defendant)

acted with fraudulent intent.  In fact, plaintiffs' allegations are inconsistent with fraudulent intent.

If, as plaintiffs allege, the defendants supposedly intended to destroy Yukos, they would have

wanted to Yukos' stock price to collapse (not rise), and they would *not* have made statements with

the intent of inflating the price of Yukos stock.  *See Phillips*, 190 F.3d at 621 ("In order to

demonstrate motive, a plaintiff must show concrete benefits that could be realized by one or more

of the false statements and wrongful non disclosures alleged.") (internal quotation omitted).

Plaintiffs' false allegations are precisely the sort of abusive claims that Congress barred by

heightening the scienter pleading standards in the PSLRA.

### 4.  Plaintiffs Have Failed to Allege "Loss Causation" Adequately

Plaintiffs' bare allegation that they purchased "artificially inflated" Yukos stock

and were "damaged thereby" is insufficient to plead "loss causation" under Section 10(b).  Compl.

¶ 248; *see Dura*, 125 S.Ct. at 1631.  In *Dura*, the Supreme Court ordered dismissal of a securities

fraud complaint containing identical conclusory allegations.  *Id.* at 1630 (dismissing complaint

alleging that plaintiffs "paid artificially inflated prices . . . and suffered damages thereby").  The

Court held that each plaintiff must plead a connection between each specific misrepresentation and

the economic loss it allegedly caused that plaintiff.  *Id.* at 1634.  Because the only allegedly false

statements identified in the complaint are attributed to a non-defendant, the plaintiffs have failed,

as a matter of law, to plead the necessary loss causation to hold any defendant liable.

### 5.  Plaintiffs Cannot, as a Matter of Law, Sue the Ministers for Alleged Statements Regarding Yukos

Finally, even if the plaintiffs had alleged false statements by either Minister and

otherwise stated a viable claim, we are aware of no case in which a securities fraud claim has been

brought against a government or its officials (domestic or foreign) for public official statements.

In the context of foreign governments and officials, the absence of such claims is explained in part by the act of state and political question doctrines. *See supra*, 10-15. It is not plausible that foreign public officials can be held liable under the U.S. securities laws for speaking on matters relating to domestic tax and criminal enforcement. The absurdity of a contrary rule is revealed if one considers the possibility of a foreign shareholder filing a securities fraud action under its local law against the U.S. for an allegedly false public statement by a U.S. President or Cabinet official.

Such claims also fail because statements by government officials are too attenuated from the purchase or sale of securities to support an action under Section 10(b). For example, in *Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 919 (2005), the Second Circuit held that a stockholder lacks standing to sue a non-issuer of the stock under Section 10(b) even if that third party's alleged material misrepresentation negatively impacted the stockholder's stock. Here, none of the defendants is alleged to have any connection to Yukos. To the contrary, the Russian Tax Ministry, throughout the time during which allegedly false statements were being made, was actively involved in a dispute with Yukos.

For any one of the many independent defects in the plaintiffs' securities fraud claim, this Court must dismiss Count VII for failure to state a claim.

## VII.    THIS ACTION SHOULD BE DISMISSED FOR FORUM NON CONVENIENS

Even if plaintiffs had stated any cognizable claims over which this Court could exercise jurisdiction over either Minister, the *forum non conveniens* doctrine would still call for dismissal. Courts in this Circuit apply a two-step inquiry to assess whether a case should be dismissed in favor of a more convenient forum. *Jackson v. Am. Univ. in Cairo*, 52 F. App'x 518 (D.C. Cir. 2002) (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 255-261 (1981)). *First*, the courts determine whether there is an adequate alternative forum. *Piper Aircraft*, 454 U.S. at

241, 254; *Nemariam v. Fed. Democratic Repub. of Ethiopia*, 315 F.3d 390, 394 (D.C. Cir. 2003). *Second*, the courts balance the "private interest factors" and "public interest factors" to decide if dismissal is appropriate. *Piper Aircraft*, 454 U.S. at 241. Dismissal is appropriate if, for example, trial in the U.S. forum would "'establish . . . oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience,' *or* when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Id.* at 241 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

       In this case, which deals exclusively with events that occurred in Russia, *forum non conveniens* dismissal is appropriate. The witnesses are in Russia, the documents are in Russia (and in Russian), and the proper application of Russian law is central to the plaintiffs' claims. Moreover, some or all of the defendants are only amenable to suit in Russia.

### A. The Russian Federation Offers an Adequate Alternative Forum

       An alternative forum for resolving plaintiffs claims is generally adequate if "the defendant is amenable to process in the foreign jurisdiction." *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602, 607 (D.C. Cir 1983) (internal citations omitted); *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003). It is well-established that "[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum," or on identical remedies. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998). Federal courts have consistently held that the Russian Federation offers an adequate alternative forum.[22] Because Russian courts are open to plaintiffs, Russia provides an adequate, alternative forum.

---

[22]    *See, e.g., Base Metal Trading Ltd. v. Russian Aluminum*, 2004 WL 928165 (2d Cir. April 30, 2004); *Varnelo v. Eastwind Trans., Ltd.*, No. 02 Civ 2084 (KMU), 2003 WL 230741 at *2, 18 (S.D.N.Y. 2003) (adequate for claims brought under the Death On the High Seas Act and general maritime law); *Tarasevich v. Eastwind Transp. Ltd.*, No. 02 Civ 1806 (JSM), 2003 WL 21692759 at *3 (S.D.N.Y. 2003) (adequate for personal injury).

**B. The Balance of Private and Public Factors Confirms that Russia Provides the Most Appropriate Forum For Resolving Plaintiffs' Claims**

In *Gulf Oil Corp. v. Gilbert*, Justice Jackson summarized the type of private and

public interest factors to be considered in assessing a forum non conveniens motion 330 U.S. 501,

508-09 (1947) *superseded on other grounds by* 28 U.S.C. § 1404:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained....
>
>          \* \* \*
>
> Factors of public interest also have [a] place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a [] case in a forum that is at home with the [] law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

The private factors all weigh in favor of a Russian forum. Virtually all sources of

proof that would be necessary to prove the plaintiffs' allegations and the defendants' defenses will

be in the Russian Federation and in the Russian language. All of the alleged misconduct occurred

in Russia. The underlying tax and criminal misconduct of Yukos will be reflected in Yukos'

records in Moscow. Records of the Russian court proceedings and judgments, too, are all in

Russia in the Russian language. Apart from the plaintiffs, virtually all potential witnesses to the

alleged misconduct — including Yukos' accountants, Tax Ministry officials involved in the

investigation of Yukos, police and prosecutors involved in the arrest and trial of Mr.

Khodorkovsky, government officials involved in the auction of YNG shares — are located in Russia. This Court cannot compel the attendance of witnesses from Russia. And if the plaintiffs were to seek to call the Ministers as witnesses, the impropriety and offensiveness of haling such officials into a U.S. court (or even of directing their depositions) is apparent. Finally, the cost of bringing foreign government officials to the U.S. — including distraction from their official duties and the cost of providing security — far outweighs the inconvenience to private plaintiffs of traveling to Russia to litigate claims relating to their investments in a Russian company.

The public interest factors also weigh heavily in favor of dismissal. The plaintiffs' allegations concerning the Russian Federation's enforcement of its tax laws against Yukos are far more important to the people of the Russian Federation than they are to a handful of American, Dutch, and Cayman Island purchasers and holders of Yukos ADRs. Moreover, for all of the reasons detailed in sections III, IV and V above, the courts of the United States should seek to avoid this dispute on act of state, separation of powers and comity grounds. Finally, interpreting the Russian tax and criminal laws, Russian language documents, and Russian-speaking witnesses poses obstacles for this Court not present in Russian courts. This case will present an unnecessary and costly burden on this Court, the District of Columbia, and its jurors, even though this jurisdiction has no genuine interest in this Russian dispute.

CONCLUSION

Ministers Kudrin and Khristenko are sitting cabinet-level ministers of the Russian Federation. The Complaint fails to identify a single act, much less a single wrongful act, by either Minister. Rather, they are named in this lawsuit precisely because of the government positions they hold. But those government positions entitle them to sovereign immunity, and the claims against them must be dismissed for that reason alone. Dismissal is equally justified on numerous additional grounds, also detailed in this Motion. In sum, the claims against the Ministers are an unprecedented and indefensible attempt to harass high government officials of a close American ally at the behest of third parties with ulterior objectives. Because United States courts and United States law can provide no remedy for the alleged misconduct, the Ministers respectfully request that this Court direct the immediate dismissal of this entire action.

May 15, 2006                                   Respectfully submitted,

Jay L. Alexander (DC Bar No. 412905)
Ryan E. Bull (DC Bar No. 481473
Baker Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington D.C.  20004
Telephone: (202) 639-7700
Facsimile:  (202) 585-4064

Michael S. Goldberg
(*pro hac vice* pending)
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas  77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

*Counsel to Ministers Alexei Kudrin and
Viktor Khristenko*

## Certificate of Service

I hereby certify that on May 15, 2006, this motion was electronically filed with the Clerk of the Court, and that, in the same manner, an electronic copy was served on all counsel of record.

Ryan E. Bull