# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RICHARD ALLEN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RUSSIAN FEDERATION, *et al.*, <br><br> Defendants. | 1:05-cv-02077-CKK <br><br> Hon. Colleen Kollar-Kotelly |

### OAO GAZPROM'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant OAO Gazprom ("Gazprom"), by counsel, hereby moves this Court, pursuant to Federal Rule of Civil Procedure 12, to dismiss plaintiffs' Complaint in its entirety, with prejudice.

As detailed in the accompanying Statement of Points and Authorities, this Motion to Dismiss should be granted because: (1) this Court does not have personal jurisdiction over Gazprom, a Russian corporation that develops and refines oil and gas products in Russia; (2) plaintiffs' Complaint implicates U.S. foreign relations and asks this Court to examine the legality of acts of the Russian Federation, however, the act of state doctrine, the political question doctrine, and international comity prevent this Court from resolving the issues raised in plaintiffs' Complaint and from judging the acts of a foreign government; (3) plaintiffs' Counts I and V fail because, as ADR holders of a corporation, plaintiffs lack standing to sue for injuries to the corporation; (4) plaintiffs' Count VII fails because it attempts to apply U.S. securities laws extraterritorially, it fails to allege any connection between Gazprom and plaintiffs' purchase or sale of securities, and it fails to allege any specific conduct by Gazprom or any duty owed by

Gazprom to plaintiffs; (5) the doctrine of forum non conveniens mandates dismissal of the Complaint because both public and private interests favor litigating this suit in the Russian Federation; (6) plaintiffs' Count VII attempts to hold Gazprom liable for securities fraud, but fails to state the essential elements of the claim including any statement or omissions, a duty or special relationship with plaintiffs, scienter, and reasonable reliance; (7) plaintiffs' Count I, alleging conversion, fails to plead the essential elements of the claim; (8) plaintiffs' Count V, which alleges "prima facie tort," seeks recovery for a cause of action not recognized in the District of Columbia and which plaintiffs have failed to plead as required by the few jurisdictions that recognize such an action; and (9) plaintiffs' Count VI fails to plead fraud with the requisite specificity, seeks damages that are too speculative, and fails to allege reasonable reliance.

WHEREFORE, for these and such other reasons as may appear just to the Court, Gazprom respectfully requests that its Motion to Dismiss be granted.

Dated: May 15, 2006

/s/ William M. Sullivan, Jr.
William M. Sullivan, Jr. (DC Bar No. 467269)
Karen Sugden Manley (DC Bar No. 495029)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

OF COUNSEL:
W. Gordon Dobie
Greg Vamos
Brooke B. Ward
Jennifer M. Erickson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for OAO Gazprom*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RICHARD ALLEN, *et al.*, | |
| Plaintiffs, | 1:05-cv-02077-CKK |
| v. | Hon. Colleen Kollar-Kotelly |
| RUSSIAN FEDERATION, *et al.*, | |
| Defendants. | |

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
## OAO GAZPROM'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Attorneys for OAO Gazprom*

William M. Sullivan, Jr. (DC Bar No. 467269)
Karen Sugden Manley (DC Bar No. 495029)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

OF COUNSEL

W. Gordon Dobie
Greg Vamos
Brooke B. Ward
Jennifer M. Erickson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 8

I.     THE COMPLAINT AGAINST GAZPROM MUST BE DISMISSED BECAUSE
       PERSONAL JURISDICTION OVER GAZPROM DOES NOT EXIST .......................... 8

       A.     The Complaint Contains No Facts Permitting Gazprom To Be Subject To General
              Jurisdiction ........................................................................................................ 9

       B.     The Complaint Contains No Facts Permitting Gazprom To Be Subject To Specific
              Jurisdiction ...................................................................................................... 11

       C.     Forcing Gazprom To Defend This Litigation In The District Of Columbia Would
              Violate Traditional Notions Of Fair Play And Substantial Justice ....................... 14

       D.     Personal Jurisdiction Cannot Exist Because Plaintiffs Failed To Serve Gazprom In
              Accordance With The Hague Convention ............................................................ 16

II.    THE ACT OF STATE DOCTRINE, POLITICAL QUESTION DOCTRINE, AND
       DOCTRINE OF COMITY ALL REQUIRE THE DISMISSAL OF THE COMPLAINT
       ...................................................................................................................................... 18

       A.     The Act of State Doctrine Mandates Dismissal Of Plaintiffs' Complaint ........... 18

       B.     The Political Question Doctrine Mandates Dismissal Of Plaintiffs' Complaint .. 20

       C.     International Comity Mandates Dismissal Of Plaintiffs' Complaint .................... 21

III.   PLAINTIFFS LACK STANDING TO PURSUE COUNTS I AND V ........................... 22

IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF
       FORUM NON CONVENIENS ................................................................................... 25

V.     PLAINTIFFS' SECURITIES FRAUD CLAIM MUST BE DISMISSED BECAUSE U.S.
       SECURITIES LAW CANNOT BE APPLIED EXTRATERRITORIALLY TO THE
       CONDUCT ALLEGED ............................................................................................ 28

VI.    PLAINTIFFS' SECURITIES FRAUD CLAIMS ARE FRIVOLOUS AND MUST BE
       DISMISSED ........................................................................................................... 30

       A.     The Complaint Fails To Plead Any Statement By Gazprom ............................... 31

       B.     There Is No Plausible "Duty" Or Required Relationship Alleged In The
              Complaint ........................................................................................................ 31

       C.     The Complaint Fails To Plead Scienter On The Part Of Gazprom ...................... 33

       D.     The Allegations In The Complaint Preclude Any Claim Of Reliance .................. 33

VII.   PLAINTIFFS' COMMON LAW CAUSES OF ACTION FAIL UNDER U.S. LAW .... 36

       A.     Count I Of The Complaint Must Be Dismissed Because Plaintiffs Fail To Allege
              Gazprom Committed Essential Elements Of Conversion ..................................... 36

B.      Plaintiffs' "Prima Facie Tort" Claim Is Deficient .............................................. 37

C.      Plaintiffs' Common Law Fraud And Deceit Claim Is Fatally Deficient .............. 39

        1.      Plaintiffs fail to plead fraud with specificity............................................ 39

        2.      Plaintiffs' claim for damages from the alleged fraud is too speculative... 41

        3.      Plaintiffs' alleged reliance was unreasonable........................................... 43

CONCLUSION.................................................................................................................. 44

# TABLE OF AUTHORITIES

*Cases*

AGS Int'l Servs. S.A. v. Newmont USA Ltd., 346 F. Supp. 2d 64 (D.D.C. 2004)................. 9, 15

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) .............................. 17

Art Metal-U.S.A., Inc. v. United States, 577 F. Supp. 182 (D.D.C. 1983) .................................. 38

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987)................................................ 9, 15

Asher v. Baxter Int'l Inc., 377 F.3d 727 (7th Cir. 2004) ................................................................ 35

Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34 (D.D.C. 2003) .................................... 9, 10

Bagdon v. Bridgestone/Firestone, Inc., 916 F.2d 379 (7th Cir. 1990)........................................... 24

Baltierra v. West Va. Bd. of Med., 253 F. Supp. 2d 9 (D.D.C. 2003)........................................... 10

Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964).......................................... 18, 19, 22

Bancoult v. McNamara, 214 F.R.D. 5 (D.D.C. 2003) ....................................................... 8, 11, 14

Basic, Inc. v. Levinson, 485 U.S. 224 (1988)................................................................................. 34

Batchelder v. Kawamoto, 147 F.3d 915 (9th Cir. 1998)................................................................ 25

Berg v. First American Bankshares, Inc., No. 83-3887, 1985 WL 2232 (D.D.C. April 17, 1985)
.................................................................................................................................................... 34

Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir. 1975)...................................................... 29

Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975)..................................................... 33

Brunson v. Kalil & Co., 404 F. Supp. 2d 221 (D.D.C. 2005).......................................................... 11

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ............................................................. 9, 13

Burman v. Phoenix Worldwide Indus., Inc., 384 F. Supp. 2d 316 (D.D.C. 2005) ....................... 43

Callejo v. Bancomer, S.A., 764 F.2d 1101 (5th Cir. 1985) ........................................................... 19

Calvetti v. Antcliff, 346 F. Supp. 2d 92 (D.D.C. 2004)........................................................... 36, 39

Casey v. Dept. of State, 980 F.2d 1472 (D.C. Cir. 1992) .............................................................. 22

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994)... 31

Century Int'l Arms, Ltd. v. Federal State Unitary Enter. State Corp. 'Rosvoorouzhenie', 172 F. Supp. 2d 79 (D.D.C. 2001) ........................................................................................................... 27

Chaiken v. VV Publ'g Corp., 119 F.3d 1018 (2d Cir. 1997) ........................................................ 16

Chanoff v. United States Surgical Corp., 857 F. Supp. 1011 (D. Conn. 1994) ........................... 42

Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc., No. 86-2516, 1987 WL 11085 (D.D.C. May 8, 1987) ............................................................................................................................... 17

COMSAT Corp. v. Finshipyards S.A.M., 900 F. Supp. 515 (D.D.C. 1995) ........................... 11, 12

D'Andrea v. Rafla-Demetrious, 3 F. Supp. 2d 239 (E.D.N.Y. 1996) ...................................... 38, 39

Dammarell v. Islamic Republic of Iran, No. Civ. A. 01-2224, 2005 WL 756090 (D.D.C. Mar. 29, 2005) ............................................................................................................................................ 27

Davidson v. Wilson, 973 F.2d 1391 (8th Cir. 1992) .................................................................... 35

Doe I v. State of Israel, 400 F. Supp. 2d 86 (D.D.C. 2005) ................................................... passim

Dole Food Co. v. Patrickson, 538 U.S. 468 (2003) ..................................................................... 17

Dow Chem. Co. v. Calderon, 422 F.3d 827 (9th Cir. 2005) ........................................................ 12

Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627 (2005) ....................... 30, 33, 34, 35

EEOC v. Arabian American Oil Co., 499 U.S. 244 (1992) .......................................................... 28

Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474 (4th Cir. 1993) ........................ 16

Flynn v. Merrick, 881 F.2d 446 (7th Cir. 1989) .......................................................................... 23

Foley Bros., Inc. v. Filardo, 336 U.S. 281 (1949) ...................................................................... 28

Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311 (6th Cir. 1987) .............................................. 23

General Elec. Co. v. Deutz A.G., 270 F.3d 144 (3d Cir. 2001) ................................................... 22

Gershon v. Wal-Mart Stores, Inc., 901 F. Supp. 128 (S.D.N.Y. 1995) ....................................... 32

Gowens v. Dyncorp, 132 F. Supp. 2d 38 (D.D.C. 2001) ............................................................. 11

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) ..................................................................... 26, 27

Harner v. Prudential-Bache Sec., Inc., 35 F.3d 565 (6th Cir. 1994) .......................................... 35

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) ................................ 11

Hilton v. Guyot, 159 U.S. 113 (1895).................................................................. 22

IDT Corp. v. eGlobe Inc., 140 F. Supp. 2d 30 (D.D.C. 2001).......................... 30, 33

IM Partners v. Debit Direct Ltd., 394 F. Supp. 2d 503 (D. Conn. 2005) ...................... 17

In re Baan Co. Sec. Litig., 103 F. Supp. 2d 1 (D.D.C. 2000) ......................................... 28

In re EAL (Delaware) Corp., No. 93-578-SLR, 1994 WL 828320 (D. Del. Aug. 3, 1994)......... 13

In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334 (D. Md. 2004).................... 14

In re Ski Train Fire in Kaprun, Austria on November 11, 2000, No. 1428 (SAS) 01 Civ. 7342,
    2003 WL 1807148 (S.D.N.Y. April 4, 2003) ............................................................. 10

In re U.S. Office Prods. Sec. Litig., 326 F. Supp. 2d 68 (D.D.C. 2004)................................ 31, 40

In re Worldcom, Inc. Sec. Litig., 336 F. Supp. 2d 310 (S.D.N.Y. 2004) ...................................... 42

In re Yukos Oil Co., 321 B.R. 396 (Bankr. S.D. Tex. 2005)................................................ 6, 13, 17

Interbrew v. EdperBrascan Corp., 23 F. Supp. 2d 425 (S.D.N.Y. 1998)....................................... 28

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ......................................................... 9

Jackson v. American Univ., in Cairo, 52 F. App'x 518 (D.C. Cir. 2002) .................................... 25

Jacobsen v. Oliver, 201 F. Supp. 2d 93 (D.D.C. 2002) ................................................................ 5

Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110 (11th Cir. 1990)................................................ 14

Johnson v. M.J. Uline Co., 40 A.2d 260 (D.C. App. 1945)............................................................ 36

Kaempe v. Myers, 367 F.3d 958 (D.C. Cir. 2005) ........................................................................ 5

Koal Indus. Corp. v. Asland, S.A., 808 F. Supp. 1143 (S.D.N.Y. 1992) ...................................... 29

Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518 (1947)........................................................ 25

Kowal v. MCI Comm'ns Corp., 16 F.3d 1271 (D.C. Cir. 1994)................................................... 41

Kowal v. MCI Comm'ns Corp., No. 90-2862, 1992 WL 121378 (D.D.C. May 20, 1992), aff'd,
    16 F.3d 1271 (D.C. Cir. 1994)......................................................................................... 32

Labovitz v. Washington Times Corp., 900 F. Supp. 500 (D.D.C. 1995), aff'd, 172 F.3d 897 (D.C.
    Cir. 1999) ................................................................................................................... 24

Lance v. United Mine Workers of Am. 1974 Pension Trust, 355 F. Supp. 2d 358 (D.D.C. 2005),
    vacated on other grounds, 400 F. Supp. 2d 29 (D.D.C. 2005)............................................. 31, 41

Lee v. State Comp. Ins. Fund, No. Civ. A. 05-670, 2005 WL 1903343 (D.D.C. July 13, 2005). 10

Lennon v. Seaman, 63 F. Supp. 2d 428 (S.D.N.Y. 1999)............................................................. 39

Lindblom v. Mobile Telecomms. Techs. Corp., 985 F. Supp. 161 (D.D.C. 1997) ...................... 32

Marcantonio v. Primorsk Shipping Corp., 206 F. Supp. 2d 54 (D. Mass. 2002)......................... 17

Marcella v. ARP Films, Inc., 778 F.2d 112 (2d Cir. 1985) ........................................................ 39

Medellin v. Dretke, 544 U.S. 660, 125 S. Ct. 2088 (2005) ........................................................ 22

Minebea Co., Ltd. v. Papst, 377 F. Supp. 2d 34 (D.D.C. 2005) .................................................. 27

Moncrief Oil Int'l, Inc. v. OAO Gazprom, No. 4:05-CV-353-Y, slip op. (N.D. Tex. March 21, 2006) ...................................................................................................................... 10, 11, 15

Montefusco v. Nassau County, 39 F. Supp. 2d 231 (E.D.N.Y. 1999)......................................... 38

Naartex Consulting Corp. v. Watt, 722 F.2d 779 (D.C. Cir. 1983) ............................................. 41

Nathan Gordon Trust v. Northgate Exploration, Ltd., 148 F.R.D. 105 (S.D.N.Y. 1993)............. 29

Nix v. Hoke, 62 F. Supp. 2d 110 (D.D.C. 1999) ..................................................................... 8, 38

Novak-Canzeri v. HRH Al Saud, 864 F. Supp. 203 (D.D.C. 1994) ............................................... 8

O'Donnell v. Shalayev, No. 01-4721(JBS), 2004 WL 2958698 (D.N.J. Dec. 22, 2004)............. 17

Oetjen v. Central Leather Co., 246 U.S. 297 (1918) ............................................................. 21, 22

OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086 (10th Cir. 1998) ................. 9, 16

Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97 (1987) .......................................... 16

One-O-One Enters., Inc. v. Caruso, 848 F.2d 1283 (D.C. Cir. 1988) .......................................... 43

Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp., 369 F.3d 27 (2d Cir. 2004)....................................................................................................................... 32

PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland), 260 F.3d 453 (5th Cir. 2001) ............................................................................................................................................. 12

Phillips v. LCI Int'l, Inc., 190 F.3d 609 (4th Cir. 1999).............................................................. 33

Pieczenik v. Cambridge Antibody Tech. Group, 03 Civ. 6336, 2004 WL 527045 (S.D.N.Y. Mar. 16, 2004) ................................................................................................................................ 10

Pignato v. Dein Host, Inc. (In re Dein Host, Inc.), 835 F.2d 402 (1st Cir. 1987)........................ 23

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981)............................................................. 25, 26, 27

Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387 (9th Cir. 1995).................................................... 13

Republic of Austria v. Altmann, 541 U.S. 677 (2004) ................................................................ 18

Riggs National Corp. & Subsidiaries v. Comm'r, 163 F.3d 1363 (D.C. Cir. 1999)..................... 19

Sarei v. Rio Tinto PLC, 221 F. Supp. 2d 1116 (C.D. Cal. 2002) ..................................... 18, 19, 20

Schwartz v. Franklin Nat'l Bank, 718 A.2d 553 (D.C. 1998) ....................................................... 38

Shekoyan v. Sibley Int'l Corp., 217 F. Supp. 2d 59 (D.D.C. 2002) .............................................. 40

Shulman v. Voyou, L.L.C., 251 F. Supp. 2d 166 (D.D.C. 2003) .................................................. 36

Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522 (1987)................................................................................................................ 21

Stevens v. Lowder, 643 F.2d 1078 (5th Cir. 1981).......................................................................... 23

Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522 (7th Cir. 1985) .................. 35

Tel-Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C. Cir. 1984)............................................. 21

Tomran, Inc. v. Passano, 891 A.2d 336 (Md. App. Ct. 2006) ...................................................... 24

United States ex rel. Fisher v. Network Software Assocs., 227 F.R.D. 4 (D.D.C. 2005) ...... 40, 41

United States ex rel. Totten v. Bombardier Corp., 286 F.3d 542 (D.C. Cir. 2002)...................... 40

United States v. Ferrara, 54 F.3d 825 (D.C. Cir. 1995)................................................................ 11

United States v. Smithfield Foods, Inc., 332 F. Supp. 2d 55 (D.D.C. 2004).................................. 8

Vietnam Veterans Found. v. Erdman, Civ. A. No. 84-0940, 1987 WL 10143 (D.D.C. March 30, 1987) ................................................................................................................................. 43

Virginia Academy of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc., 878 A.2d 1226 (D.C. App. 2005)............................................................................................... 39

Whelan v. Abell, 953 F.2d 663 (D.C. Cir. 1992)........................................................................... 25

Williams v. CWI, Inc., 777 F. Supp. 1006 (D.D.C. 1991) ........................................................... 42

Wright v. Herman, 230 F.R.D. 1 (D.D.C. 2005) ......................................................................... 24

***Statutes***

15 U.S.C. § 78j ............................................................................................................. 30

15 U.S.C. § 78u-4 ......................................................................................................... 30

D.C. Code § 29-1052 .................................................................................................... 23

***Rules***

17 C.F.R. § 240.10b-5 .................................................................................................. 30

Fed. R. Civ. P. 17(a) .................................................................................................... 25

Fed. R. Civ. P. 9(b) ................................................................................................. 30, 39

***Treatises***

Restatement (Second) of Conflict of Laws § 145 ........................................................ 27

# INTRODUCTION

Through the present Complaint, a few holders of American Depository Receipts in Yukos Oil Co. ("Yukos"), a large Russian oil and gas company, seek to have this Court sit in judgment of the sovereign actions of the Russian Federation and declare its taxing, law enforcement, and regulatory actions to be illegal, while reversing the Russian courts' determination that Yukos engaged in massive tax fraud under Russian law. At the same time, plaintiffs seek to drag the Russian Federation itself, as well as Russian companies, officials, and individuals that have no connection to the United States or to the District of Columbia, to litigate the propriety of actions that took place thousands of miles away, inside the borders of the Russian Federation. That this litigation is improper is confirmed by the absence of any facts providing a basis for jurisdiction over defendant OAO Gazprom ("Gazprom"), and, because the substance of their claims—which include the theory that the public policy statements of Vladimir Putin, President of the Russian Federation, violated U.S. federal securities fraud provisions and the RICO Act—borders on the frivolous.

Plaintiffs' Complaint concerns the highly publicized, government-ordered auction of the assets of a division of Yukos to satisfy Yukos' $27.5 billion unpaid tax obligation owed to the Russian Federation and its citizens and the Federation's other law-enforcement actions against certain officers and employees of Yukos. As the Complaint alleges, both Yukos and the division that was auctioned, Yuganskneftegas ("YNG"), are involved in the extraction and refinement of oil and gas reserves located under the soil of the Russian Federation. The auction occurred in the Russian Federation after lengthy Russian enforcement and court proceedings that upheld the tax fraud rulings against Yukos. As the Complaint makes clear, Yukos itself has contested the Russian Federation's sovereign actions in the proper venue: the Russian court system.

Nevertheless, plaintiffs have chosen this forum to bring claims for federal securities fraud, RICO violations, conversion, prima facie tort, and fraud. Of these, plaintiffs specifically assert claims for common law conversion (Count I), prima facie tort (Count V), common law fraud and deceit (Count VI) and securities fraud (Count VII) against defendant Gazprom.[1]

It is now time for the Court to end this publicity stunt and dismiss the case against all defendants, including Gazprom. As alleged in the Complaint, Gazprom is an oil and gas company headquartered and located in the Russian Federation. Among the 250 paragraphs in the Complaint, Gazprom is alleged to have taken only two identifiable actions, which could only have occurred within the Russian Federation: (1) to have authorized its then-wholly owned, Russian-organized subsidiary, OAO Gazpromneft ("Gazpromneft"), to participate in the government-ordered auction of YNG; and (2) before the auction occurred, to have "sold off" Gazpromneft after a U.S. bankruptcy court entered an order directing Gazpromneft and other named entities to refrain from participating in the auction. The remainder of plaintiffs' Complaint is equally devoid of any connection between Gazprom and the United States: there is not a single allegation that Gazprom maintains any real property, personnel, or offices, or conducts any business in the United States.

By plaintiffs' own reckoning, Gazprom did nothing improper. According to the Complaint, Gazprom did not participate in the auction and did not acquire YNG. The Complaint does not allege that Gazprom had any relationship with these plaintiffs or that Gazprom made any statements or misstatements to them. In short, the Complaint must be dismissed for these and the following reasons:

---

[1]    On April 5, 2006, counsel for plaintiffs confirmed that Gazprom is not named in any RICO Count, including Count IV.

First, this Court cannot exercise personal jurisdiction over Gazprom because plaintiffs have failed to allege anything approaching the requisite contacts with the United States or this District. Second, under the act of state doctrine and other long recognized principles, this Court cannot, as the Complaint requires, re-examine and set aside the official decisions and actions of the Russian Federation. Third, under Russian and U.S. law, because the majority of plaintiffs' causes of action seek to recover for alleged harm to Yukos, and Yukos is already asserting these claims, plaintiffs lack standing to bring their claims. Fourth, this action should be dismissed because the Russian Federation provides a much more convenient, alternative forum insofar as the Russian Federation is where the defendants reside, where the relevant actions took place, whose courts are better situated to apply Russian law, and where Yukos has already asserted a claim. Fifth, plaintiffs' U.S. securities fraud theory cannot proceed because these statutes cannot be applied extraterritorially to conduct that occurred wholly within the Russian Federation. Sixth, plaintiffs' claims are fatally flawed and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **BACKGROUND**

The twelve plaintiffs in this action are holders and former holders of American Depository Receipts ("ADRs") in Yukos who claim to have bought or sold limited quantities of ADRs during the 2003-2005 timeframe over the OTC market and the London Stock Exchange. (Compl. ¶¶ 8-29.) With the exceptions of plaintiffs Z.E. Thijssen, who is a citizen of the Netherlands, and FCT America Limited, a Cayman Islands corporation, plaintiffs are United States citizens. (Compl. ¶¶ 8-29.) Through their Complaint, plaintiffs have purported to sue the Russian Federation, high-ranking Russian Federation officials, Russian oil companies (including Gazprom) and certain of their officers, and other Russian individuals and entities. According to

3

the Complaint, Gazprom was the largest oil and gas producer in Russia and is now majority owned (though indirectly) by the Russian Federation. (Compl. ¶¶ 31, 72.) The Complaint does not allege that Gazprom had any offices, employees, property, bank accounts, business activities, or other meaningful contacts with or in the United States.

The acts and events of which plaintiffs complain involved official acts of the Russian Federation taking place entirely outside the borders of the United States, inside the sovereign Federation of Russia. As plaintiffs themselves state, their Complaint centers on the alleged de facto "re-nationalization" of Yukos' assets. (Compl. ¶ 1.) Plaintiffs allege that, in the early 1990s, the Russian Federation sought to restructure the country's oil and gas sector through privatization, and created Yukos "as a separate legal entity and consolidated certain state-owned producing, refining and distribution entities into its structure." (Compl. ¶ 57.) Over succeeding years, Russian oligarch Mikhail Khodorkovsky and the entity he founded, Group Menatep, gained control over Yukos. (Compl. ¶¶ 47-50, 58-59.)

According to the Complaint, beginning in 2003, the Russian Federation began investigating criminal wrongdoing on the part of Yukos, Khodorkovsky, and members of Group Menatep. Indeed, the Complaint alleges, at length, that the Russian Federation made a number of seizures and arrests, including the arrest of Khodorkovsky, between June and October 2003. (E.g., Compl. ¶¶ 81-83, 90-96, 100, 105.) In the summer and fall of 2003, the Russian Federation launched an investigation into whether Yukos had complied with Russia's tax laws. (Compl. ¶ 89.) After an initial audit of Yukos' records, in December 2003 the Russian taxing authorities concluded that Yukos owed $3.4 billion in back taxes, penalties and interest for the year 2000. (Compl. ¶ 117.) This assessment was subsequently upheld in April 2004 by a ruling

from the Russian Tax Ministry and on May 26, 2004, by the Court of Arbitration, which upheld ninety-nine per cent of the Russian Federation's tax assessment. (Compl. ¶¶ 126-27.)

Following this decision, on July 1, 2004, the Russian Federation demanded payment of the owed taxes and, on July 20, 2004, it announced its intention to auction YNG to satisfy this debt. (Compl. ¶¶ 141-42.) Subsequent audits of Yukos records on September 3, 2004 resulted in additional assessments of $4.1 billion for the year 2002; on November 2, 2004, the Russian Federation determined Yukos owed an additional $10 billion for 2001 and 2002. (Compl. ¶¶ 134-35.) On November 19, 2004, the Russian Federation announced that the auction of YNG would occur on December 19, 2004. (Compl. ¶ 154.)

According to the Complaint, Yukos filed for bankruptcy protection in the United States District Court for the Southern District of Texas just five days before the auction. (Compl. ¶ 157.) The Complaint alleges that on December 16, 2004, the bankruptcy court entered an order preventing three named bidders (including Gazprom's then-subsidiary Gazpromneft) from participating in the auction. (Compl. ¶ 157.) Gazprom was not a defendant when the order was entered, was not named in the order itself, and was never served with process. (Ex. A, Bankr. S.D. Tex., Docket Entry 9.)[2] The auction allegedly took place as scheduled in the Russian Federation on December 19, 2004, and a "new company," Baikalfinansgroup ("BFG"), acquired YNG for $9.3 billion. (Compl. ¶¶ 158-59.) According to plaintiffs, Gazprom sold off Gazpromneft prior to the auction and "Gazpromneft did not substantively participate" and did not bid in the auction. (Compl. ¶¶ 158, 160.) Nor is there any claim that Gazprom itself participated in the auction.

---

[2] This Court may take judicial notice of public records, including other court opinions and pleadings. Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004) ("[T]he cited documents are public records subject to judicial notice on a motion to dismiss."); Jacobsen v. Oliver, 201 F. Supp. 2d 93, 110 (D.D.C. 2002) ("In deciding this

After the auction—and after discovery and a hearing—on February 24, 2005 the U.S. bankruptcy court dismissed Yukos' petition "for cause" pursuant to the factors enumerated in 11 U.S.C. § 1112(b) and on the "totality of the circumstances." In re Yukos Oil Co., 321 B.R. 396, 410-11 (Bankr. S.D. Tex. 2005). The bankruptcy court found that "[t]he vast majority of the business and financial activities of Yukos continue to occur in Russia" and that "Yukos was, on the petition date, one of the largest producers of petroleum products in Russia, and was responsible for approximately 20 percent of the oil and gas production in Russia." Id. at 411. The court further reasoned that the "sheer size of Yukos, and correspondingly, its impact on the entirety of the Russian economy, weighs heavily in favor of allowing resolution in a forum in which participation of the Russian government is assured." Id. Neither in that opinion nor thereafter did the bankruptcy court ever comment, suggest, or hold that any entity, including Gazprom, had transgressed the court's prior December 16, 2004 order.

Throughout the entire time period discussed in the Complaint, plaintiffs continually bought Yukos ADRs; indeed, plaintiffs allege that they purchased Yukos ADRs on dozens of occasions between October 30, 2003 and November 25, 2004. (Compl. ¶¶ 12, 14-15, 17, 19-20, 22, 24-25, 27-28.) Plaintiffs' theory is that, in the midst of the highly public campaign allegedly to de facto "re-nationalize" Yukos' assets, they somehow relied on two public statements of Russian President Putin relating to the Russian Federation's official policies and actions in connection with Yukos. President Putin's first statement allegedly was made after Khodorkovsky's arrest in October 2003 and reassured the public that there "was no cause for 'generalization, analogies, to say nothing about precedents, especially in connection with privatization.'" (Compl. ¶¶ 85-86.) According to the Complaint, President Putin's second

---

motion to dismiss, the Court may consider extra-record materials, such as matters of public record and previous filings with the Court.").

statement, made on June 17, 2004—well after Yukos' tax problems were made clear—provided that the Federation "will try to act so as not to destroy this company." (Compl. ¶ 138.) This statement also allegedly made clear that the question of Yukos' tax liability "was for the [Russian] courts." (Compl. ¶ 138.)

As noted in an article cited in the Complaint, Yukos itself is proceeding with identical suits to recover for the same harms against the same defendants in the Russian courts. (See Complaint in <u>Yukos Oil Company v. Specialized State Agency under the Auspices of the Russian Government "Russian Fund of Federal Property," OOO Baikal Finance Group, OAO Rosneft, OOO Gazpromneft, OAO Gazprom and Finance Ministry of Russian Federation</u>, filed on June 2, 2005 in the Arbitration Court of Moscow; <u>see also</u> Catherine Belton, "Paper Sheds Light on Yukos Sale," <u>Moscow Times</u>, August 16, 2005 at 5, available at http://www.themoscowtimes.com/stories/2005/08/16/041.html (cited in plaintiffs' Complaint ¶ 167) (discussing Yukos lawsuit against Gazprom, the Russian Federation and other defendants "for expropriating Yugansk")).

## ARGUMENT

### I.    THE COMPLAINT AGAINST GAZPROM MUST BE DISMISSED BECAUSE PERSONAL JURISDICTION OVER GAZPROM DOES NOT EXIST

Plaintiffs have attempted to sue Gazprom—a Russian corporation that develops and refines oil and gas products in Russia (Compl. ¶ 31)—for acts that allegedly occurred not within the United States, but instead within the Russian Federation. Indeed, the Complaint does not allege a single contact between Gazprom and the United States and does not allege that Gazprom had any property, offices, personnel, or business activities in the United States. Because plaintiffs have not alleged any contacts by Gazprom with the United States, personal jurisdiction over Gazprom simply cannot and does not exist.[3]

It is well-established that "the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant." Bancoult v. McNamara, 214 F.R.D. 5, 9 (D.D.C. 2003) (citations omitted). In order to meet this burden plaintiffs must allege "specific acts connecting the defendant with the forum." Id.; see also United States v. Smithfield Foods, Inc., 332 F. Supp. 2d 55, 60 (D.D.C. 2004). Additionally, District of Columbia courts have uniformly recognized that "[b]are allegations and conclusory statements are insufficient" to support personal jurisdiction. Bancoult, 214 F.R.D. at 9; see also Smithfield Foods, 332 F. Supp. 2d at 60; Nix v. Hoke, 62 F. Supp. 2d 110, 113 (D.D.C. 1999); Novak-Canzeri v. HRH Al Saud, 864 F. Supp. 203, 206 (D.D.C. 1994) (explaining that assertions that do not specify "when, why and with whom" the jurisdictional activities took place are not sufficient to support a finding of personal jurisdiction).

---

[3]    In the event the Court dismisses plaintiffs' federal securities fraud claim, as it should, the personal jurisdiction analysis would focus only on Gazprom's contacts with the District of Columbia. See Doe I v. State of Israel, 400 F. Supp. 2d 86, 120 (D.D.C. 2005). Plaintiffs' Complaint fails to allege any contact between Gazprom and the District.

It is equally well settled that the jurisdictional allegations in a complaint must demonstrate the defendant's purposeful, "minimum contacts" with the U.S. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 43 (D.D.C. 2003). The complaint must allege facts demonstrating that the defendant "purposefully directed" its conduct toward the U.S. forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Even if such contacts are alleged, a court should decline to exercise jurisdiction if doing so would violate "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987) (citation omitted); see also Doe I v. State of Israel, 400 F. Supp. 2d 86, 109 (D.D.C. 2005); AGS Int'l Servs. S.A. v. Newmont USA Ltd., 346 F. Supp. 2d 64, 78 (D.D.C. 2004). As demonstrated below, plaintiffs have failed to allege any facts supporting personal jurisdiction over Gazprom.

### A.    The Complaint Contains No Facts Permitting Gazprom To Be Subject To General Jurisdiction

General jurisdiction exists only when it is shown that the defendant has substantial contacts with the forum that "are so continuous and systematic that it could foresee being haled into a court" in the forum. AGS Int'l Servs. S.A., 346 F. Supp. 2d at 74; Doe I, 400 F. Supp. 2d at 108. The threshold for showing general jurisdiction is substantial. E.g., OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).

Far from alleging "continuous and systematic" contacts with the U.S. or this District, plaintiffs' allegations concerning Gazprom demonstrate its overwhelming connection to Russia and its lack of any cognizable connection to the United States. Plaintiffs allege that Gazprom is organized, headquartered, and does business in the oil and gas industry in the Russian Federation. (Compl. ¶ 31.) While plaintiffs allege that Gazprom ADRs (which are traded on the London Stock Exchange) "represent Gazprom American Depository Shares ('ADSs') held by the

9

Bank of New York" (Compl. ¶ 31), the existence of ADRs or ADSs alone does not create general jurisdiction over the corporation in which such shares or receipts are held. Pieczenik v. Cambridge Antibody Tech. Group, 03 Civ. 6336, 2004 WL 527045, at *6 (S.D.N.Y. Mar. 16, 2004); see also In re Ski Train Fire in Kaprun, Austria on November 11, 2000, No. 1428 (SAS) 01 Civ. 7342, 2003 WL 1807148 at *6, n.12 (S.D.N.Y. April 4, 2003) ("The fact that a corporation has minority shareholders in a jurisdiction in no way indicates that it is engaged in continuous and systematic business in that jurisdiction.").

Beyond the ADRs, there is not a single allegation in the Complaint that Gazprom had any offices, property, personnel, assets, or business activities in the United States or in this District. As a result, the Complaint cannot support any theory of general jurisdiction over Gazprom. See Moncrief Oil Int'l, Inc. v. OAO Gazprom, No. 4:05-CV-353-Y, slip op. at 9 (N.D. Tex. March 21, 2006) (granting Gazprom's motion to dismiss for lack of personal jurisdiction, observing the absence of even a colorable argument supporting continuous or systematic conduct for general jurisdiction over Gazprom); Doe I, 400 F. Supp. 2d at 108 (finding no jurisdiction when "the complaint establishes that the individual Israeli defendants live abroad, acted abroad, and are employed abroad"); Lee v. State Comp. Ins. Fund, No. 05-670, 2005 WL 1903343, at *3 (D.D.C. July 13, 2005); Atlantigas Corp., 290 F. Supp. 2d at 42 (finding no personal jurisdiction when the plaintiff "concedes that all of the [defendants] are incorporated and maintain their principal offices outside" the forum); Baltierra v. West Va. Bd. of Med., 253 F. Supp. 2d 9, 14 (D.D.C. 2003) (finding no personal jurisdiction when "[t]here is no evidence that this defendant has engaged in any activity at all in the [forum], solicits business within the [forum], or that it has any contacts within the [forum], much less 'continuous and systematic' business contacts within the jurisdiction").

**B.      The Complaint Contains No Facts Permitting Gazprom To Be Subject**
**To Specific Jurisdiction**

The Complaint also fails to allege any facts supporting any plausible theory of specific

personal jurisdiction over Gazprom.    Specific jurisdiction exists only when the defendant

"purposefully" directs its actions at the relevant forum and the cause of action arises out of or

relates to those activities. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414

(1984); Bancoult, 214 F.R.D. at 12-13; Gowens v. Dyncorp, 132 F. Supp. 2d 38, 41-42 (D.D.C.

2001).   This requires a showing that the defendant "expressly aimed" its conduct at the forum.

E.g., United States v. Ferrara, 54 F.3d 825, 828-30 (D.C. Cir. 1995) (finding no personal

jurisdiction existed when the head of Disciplinary Board of New Mexico Supreme Court charged

a New Mexico attorney with violating New Mexico rules of professional conduct; noting

defendant's actions were not "'expressly aim[ed]' at the forum, and their effects on the District

of Columbia were, at most, incidental" despite having a direct effect in the District).   In addition,

the defendant must have "purposely availed" itself of the privilege of conducting activities

within the forum and invoked the benefits and protections of the forum's laws. Brunson v. Kalil

& Co., 404 F. Supp. 2d 221, 237 (D.D.C. 2005) (rejecting plaintiff's conclusory allegations that

defendant "purposefully availed itself" by virtue of communicating with an attorney located in

the forum to conduct negotiations with the plaintiff).   The fact that a plaintiff or some other third

party engaged in "unilateral actions" in the forum or claimed to suffer injury in the forum is

likewise insufficient. COMSAT Corp. v. Finshipyards S.A.M., 900 F. Supp. 515, 518 (D.D.C.

1995); Moncrief Oil Int'l, Inc. v. OAO Gazprom, No. 4:05-CV-353-Y, slip op. at 18-20 (N.D.

Tex. March 21, 2006) (rejecting specific jurisdiction over Gazprom despite plaintiffs' claim that

Gazprom has sought financing from it, where plaintiffs' claim was brought on that investment).

11

Here, plaintiffs' claims are even more attenuated; plaintiffs do not allege any claim based upon an investment in Gazprom.

In fact, the only "specific" alleged Gazprom-U.S. contact contained in the Complaint is plaintiffs' strained effort to connect Gazprom to Yukos' failed bankruptcy petition in the Southern District of Texas. (Compl. ¶¶ 157-58.) As shown below, however, Yukos' unilateral decision to seek bankruptcy protection in the U.S.—an attempt that was rejected because under the "totality of circumstances," the case involved predominantly Russian matters—hardly provides a basis for specific personal jurisdiction over Gazprom in this separate action.

There is no allegation (nor can there be) that Gazprom had any role in Yukos' decision to file for bankruptcy in the U.S. At Yukos' request, on December 16, 2004, the bankruptcy court entered an order "enjoining 'Gazpromneft, ZAO Interkom, OAO First Venture Company, [and the financial institutions], and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them'" from participating in the YNG auction. (Compl. ¶ 157.) Gazprom was not named in this order. At the time the TRO was entered, Gazprom had not been served (and indeed never was served) and was not named as a defendant in any pleading in the bankruptcy action. (See Ex. A, Docket Entry 9.)[4]

The Complaint further alleges that before the December 19 auction of YNG, Gazprom "sold off" Gazpromneft. (Compl. ¶ 158.) Plaintiffs assert that Gazpromneft "did <u>not</u>

---

[4]    While plaintiffs allege that Gazprom was named a "defendant" in the bankruptcy proceedings, that allegation is immaterial. As the bankruptcy court's docket reflects, Gazprom was ultimately named as a defendant in an amended complaint filed in the adversary proceedings well after the TRO was entered and the YNG auction completed. (See Ex. A, Docket Entry 96.) That fact alone, however, does nothing to suggest that Gazprom is now subject to personal jurisdiction in this Court. Indeed, it is well settled that even when a defendant in a prior suit substantively participates in that suit, that alone will not give rise to personal jurisdiction in future litigation. <u>Dow Chem. Co. v. Calderon</u>, 422 F.3d 827, 833-36 (9th Cir. 2005); <u>PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)</u>, 260 F.3d 453, 459-60 (5th Cir. 2001) (finding defendant did not consent to jurisdiction in the Southern District of Texas where it participated in another suit that was ultimately transferred from New York to Texas over the party's objection). Hence, the simple assertion that Gazprom was named as a defendant or was "present" at a related hearing—a claim plaintiffs cannot support in any event—does not provide a proper basis for asserting personal jurisdiction over Gazprom in this case.

substantively participate" and "did not place any bid" in the auction held in the Russian Federation on December 19. (Compl. ¶ 160 (emphasis added).) There is no claim that Gazprom itself participated in the auction. Approximately two months later, on February 24, 2005, the bankruptcy court dismissed Yukos' petition. In its written opinion, the bankruptcy court never suggested that Gazprom was bound by or had breached its previous TRO and, indeed, stated that "it is not clear that this court can obtain personal jurisdiction of the pertinent parties sufficient to grant much of the relief sought in the instant case." In re Yukos Oil Co., 321 B.R. 396, 411 (Bankr. S.D. Tex. 2005).[5] The bankruptcy court then went on to dismiss Yukos' petition "for cause" under the "totality of circumstances" because the case involved predominantly Russian matters centrally connected to the Russian Federation. Id. at 410-11.

These facts and allegations demonstrate that plaintiffs cannot support even a prima facie case that Gazprom "purposefully directed" or "expressly aimed" any conduct at the United States in connection with Yukos' failed bankruptcy filing in Texas. See Burger King, 471 U.S. at 472.

---

[5]    Indeed, any claim that the TRO is somehow relevant to the question of specific personal jurisdiction over Gazprom must be rejected. Plaintiffs' actual allegations do not support any suggestion that Gazprom violated the TRO or that the TRO has any bearing on their claims against Gazprom. Instead, plaintiffs allege that Gazprom sold off Gazpromneft before the auction, and that Gazpromneft did not "substantively participate" and did not bid in the auction. (Compl. ¶¶ 158-61.) There is no allegation that Gazprom participated in the auction. Moreover, even if plaintiffs had alleged facts demonstrating that Gazprom was bound by and had transgressed the TRO-and they have not-specific jurisdiction still would not exist. Courts have refused to assert personal jurisdiction over foreign non-parties accused of violating orders entered by courts in the U.S. E.g., Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1390-94 (9th Cir. 1995) (reversing district court's conclusion that non-party Luxembourg bank was subject to jurisdiction in the U.S. because it assisted U.S. defendants in transferring certain moneys in violation of an injunction); In re EAL (Delaware) Corp., No. 93-578-SLR, 1994 WL 828320, at *16 (D. Del. Aug. 3, 1994) (holding that a U.S. bankruptcy court's "automatic stay and stay order did not operate against" European agency that participated in detention of debtor's assets in Europe unless the European agency had "'minimum contacts' with the United States needed for this Court and the Bankruptcy Court to exercise jurisdiction over it"). As noted infra, Gazprom was never served in the Texas bankruptcy proceedings and was not even named as a defendant until well after the December 16, 2004 TRO was entered and the YNG auction was completed. Gazprom was not named in the TRO and the bankruptcy court itself expressed doubt about its jurisdiction over foreign entities. In re Yukos Oil Co., 321 B.R. at 411. Because plaintiffs have not alleged facts sufficient to support a conclusion that Gazprom was already subject to personal jurisdiction in the bankruptcy court at the time the TRO was entered, specific jurisdiction simply cannot exist on any theory that Gazprom somehow "violated" the TRO.

The sole theory of the Complaint is that Russian actors—including Gazprom— somehow acted within the Russian Federation to dismantle certain assets of Yukos—a Russian corporation. By plaintiffs' own admission, all of Gazprom's challenged conduct (as well as that of the other defendants) occurred within the borders of the Russian Federation and was allegedly directed solely at entities that were also within the Russian Federation, primarily Yukos. Accordingly, there can be no legitimate claim that these alleged actions were "expressly aimed" or "purposefully directed" at the U.S. E.g., In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334, 354 (D. Md. 2004) (finding personal jurisdiction did not exist over director of Netherlands corporation in shareholder lawsuit when allegedly fraudulent letters were sent from one foreign corporation to another and the fraud itself was directed at the Netherlands and globally, but not specifically directed at shareholders in the U.S.).[6]

### C. Forcing Gazprom To Defend This Litigation In The District Of Columbia Would Violate Traditional Notions Of Fair Play And Substantial Justice

Even if plaintiffs did allege facts sufficient to demonstrate that Gazprom maintained minimum contacts with the United States—which plaintiffs have failed to do—this Court nevertheless should decline to exercise personal jurisdiction over Gazprom because doing so would violate traditional notions of fair play and substantial justice. Indeed, on March 21, 2006, the United States District Court for the Northern District of Texas held that compelling Gazprom to defend a diversity case in Texas would violate the Due Process Clause. Moncrief Oil Int'l,

---

[6]    In addition, plaintiffs cannot show, as they must, that their causes of actions against Gazprom arise from or relate to Gazprom's alleged activities in a U.S. forum. Under plaintiffs' own theory, all of the alleged conduct—including Gazprom's supposed decision to "sell off" Gazpromneft before the auction (and indeed, the actual sale of Gazpromneft itself)—occurred within the Russian Federation, not the United States. Accordingly, plaintiffs' claims against Gazprom simply do not and cannot arise from any actions by Gazprom in the U.S. See Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1113-14 (11th Cir. 1990) (holding specific jurisdiction did not exist over Swiss bank where the bank representative's contacts with Florida were not "essential" to its involvement in the transaction with the Florida plaintiff); Bancoult, 214 F.R.D. at 12-13 (finding specific jurisdiction did not exist when causes of action did not arise out of defendant's activities in the forum); Gowens, 132 F. Supp. 2d at 41-42 (same).

Inc. v. OAO Gazprom, No. 4:05-CV-353-Y, slip op. at 20-22 (N.D. Tex. March 21, 2006) (finding the exercise of jurisdiction over Gazprom would be unreasonable and would not comport with Due Process). The same is true here.

An analysis of "fair play and substantial justice" takes into consideration "[1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interests in obtaining relief." Asahi Metal Indus. Co., 480 U.S. at 113; Doe I, 400 F. Supp. 2d at 109; AGS Int'l Servs. S.A., 346 F. Supp. 2d at 78.

The burden on the defendant is especially heavy when, as here, it is a foreign citizen or corporation. E.g., Asahi Metal Indus. Co., 480 U.S. at 114 ("Certainly the burden on the defendant in this case is severe. Asahi has been commanded . . . not only to traverse the distance between Asahi's headquarters in Japan and the Superior Court of California . . . but also to submit its dispute . . . to a foreign nation's judicial system."). Just as in Asahi, Gazprom would be substantially and inappropriately burdened by being compelled to travel from the Russian Federation to the District of Columbia only to have this case submitted to a foreign jurisdiction's judicial system.

At the same time, plaintiffs' interests and the interests of this forum are minimal. None of the relevant alleged acts or events took place in the United States, and none of the key players are U.S. citizens or corporations. See id. Moreover, only about one third of plaintiffs' alleged indirect damages can be linked to U.S. citizens or corporations. Plaintiffs' claims concern indirect harm to the plaintiffs themselves; the alleged direct injury (if any) was suffered by a foreign corporation, Yukos, which is located in the Russian Federation along with all of the defendants. Further, plaintiffs' own Complaint demonstrates that actions stemming from these same underlying allegations have been litigated in the appropriate forum—the Russian

Federation. Given the large burden to Gazprom, its lack of connection to the U.S., and the minimal interests of this forum in being injected into this dispute, Gazprom cannot be sued here consistent with any notion of fair play and substantial justice. See Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1029-30 (2d Cir. 1997) (holding Massachusetts resident could not maintain defamation action against Israeli newspaper consistent with due process because the Israeli newspaper's circulation in Massachusetts was minimal, litigation in the U.S. would impose a significant burden, Massachusetts had little interest in adjudicating the claim, all the evidence was located in Israel, and no social policy weighed in favor of resolving the issue in Massachusetts); OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998) (holding Canadian insurers could not be sued in Kansas when defendants had no license to conduct business in Kansas, maintained no offices in Kansas, employed no agents in Kansas, and insured no Kansas residents and forum had little interest in adjudicating dispute); Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 478 (4th Cir. 1993) (holding due process would be violated by exercising jurisdiction over breach of contract claim against Australian dredging company where contract was performed in Australia).

### D. Personal Jurisdiction Cannot Exist Because Plaintiffs Failed To Serve Gazprom In Accordance With The Hague Convention

As a final matter, personal jurisdiction over Gazprom does not exist because Gazprom has not been properly served with process. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). While plaintiffs allege in conclusory fashion that Gazprom is an "instrumentality" of the Russian Federation (and, according to plaintiffs, may be served pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-11), the allegations in the Complaint do not

support, and in fact contradict, the label plaintiffs have selected. In order for Gazprom to be an "instrumentality" for purposes of the Complaint, plaintiffs must allege that Gazprom was <u>directly</u> majority owned by the Russian Federation. <u>Dole Food Co. v. Patrickson</u>, 538 U.S. 468, 473-76 (2003) (holding that "only direct ownership of a majority of shares" by the foreign state qualifies a corporation as an "instrumentality" under the FSIA).

In the present case, plaintiffs have alleged that Gazprom is <u>not</u> directly owned by the Russian Federation: the Complaint plainly alleges that the Russian Federation acquired a "controlling stake" in Gazprom <u>through</u> an acquisition of 10.7 percent of Gazprom's stock by a "special purpose vehicle"—defendant Rosneftegaz (Compl. ¶ 169), which is allegedly wholly owned by the Russian Federation (Compl. ¶ 35). Accordingly, Federal Rule of Civil Procedure 4(h)(2) requires that service on Gazprom be conducted via the Hague Convention. <u>See Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc.</u>, Civ. A. No. 86-2516, 1987 WL 11085, at *7-*8 (D.D.C. May 8, 1987); <u>see also</u> <u>In re Yukos Oil Co.</u>, 321 B.R. 396, 410 n.9 (Bankr. S.D. Tex. 2005); <u>IM Partners v. Debit Direct Ltd.</u>, 394 F. Supp. 2d 503, 511 (D. Conn. 2005); <u>O'Donnell v. Shalayev</u>, No. 01-4721(JBS), 2004 WL 2958698, at *6 (D.N.J. Dec. 22, 2004); <u>Marcantonio v. Primorsk Shipping Corp.</u>, 206 F. Supp. 2d 54, 56-58 (D. Mass. 2002). The Hague Convention requires an appropriate authority or judicial officer to send prescribed materials to the designated Central Authority. Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, *reprinted in* 28 U.S.C.A., Fed. R. Civ. P. 4 appendix, Articles 1, 3, 5. Here, however, plaintiffs have attempted to serve Gazprom only by registered mail (Docket Entry Nos. 7, 25), which does not comply with the Hague Convention. Accordingly, the Complaint must be dismissed. <u>See</u> <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 435 n.3 (1989).

## II. THE ACT OF STATE DOCTRINE, POLITICAL QUESTION DOCTRINE, AND DOCTRINE OF COMITY ALL REQUIRE THE DISMISSAL OF THE COMPLAINT

Even if personal jurisdiction somehow could be asserted over Gazprom, the Complaint nevertheless must be dismissed under longstanding principles preventing courts from adjudicating acts of state and political questions and from violating settled doctrines of comity.

### A. The Act of State Doctrine Mandates Dismissal Of Plaintiffs' Complaint

Under the long-recognized act of state doctrine, this Court should reject plaintiffs' Complaint as a matter of law. Plaintiffs' Complaint makes clear that plaintiffs want this Court to re-examine and overturn the Russian Federation's domestic tax assessment and law enforcement actions against Yukos. The act of state doctrine, however, prevents this Court from passing judgment on the legality of the Russian Federation's governmental conduct.

The act of state doctrine holds that the "courts of one state will not question the validity of public acts (acts jure imperii) performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts." Republic of Austria v. Altmann, 541 U.S. 677, 690 (2004); see also Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 428 (1964) (same). Accordingly, "[r]edress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves." Banco Nacional de Cuba, 376 U.S. at 416 (citation omitted). Under this doctrine, an action in a U.S. court is barred where "it involves (1) an official act of a foreign sovereign, (2) performed within its own territory, and (3) seeks relief that would require the court to declare the foreign sovereign's act invalid." Sarei v. Rio Tinto PLC, 221 F. Supp. 2d 1116, 1184 (C.D. Cal. 2002) (citations omitted).

The act of state doctrine plainly bars this Court from judging invalid the Russian Federation's enforcement of its tax laws and its tax auction of YNG (all of which occurred within the Russian Federation). See Banco Nacional de Cuba, 376 U.S. at 428-37 (explaining that the act of state doctrine prevents the court from questioning the validity of a sovereign state's taking of property located within its own territory). The act of state doctrine also bars this Court from adjudicating the acts of parties who participated in the Russian Federation's auction. See Callejo v. Bancomer, S.A., 764 F.2d 1101, 1113 (5th Cir. 1985) (noting the act of state doctrine applies "even if the defendant is a private party . . . and even if the suit is not based specifically on a sovereign act"). For example, in Riggs National Corp. & Subsidiaries v. Commissioner, 163 F.3d 1363 (D.C. Cir. 1999), the D.C. Circuit held that litigation against Riggs Bank ("Riggs"), a privately owned corporation, violated the act of state doctrine. In Riggs, the Tax Court had determined that Riggs was not eligible for certain U.S. tax credits because a Brazilian Minister's order characterizing Riggs' tax status in Brazil was invalid. Id. at 1367. In rejecting this determination by the lower court, the D.C. Circuit found that the Brazilian Minister's order relating to the payment of Brazilian taxes should properly be considered an act of state, and that the determination of the propriety of the order as it related to Riggs was barred under the doctrine. Id. at 1368.

Other courts have similarly held that litigation against corporate or private entities must be dismissed under the act of state doctrine where the entities were acting in accordance with acts of a foreign state. In Sarei v. Rio Tinto PLC, for example, the Central District of California determined that the act of state doctrine barred consideration of several claims brought in a suit against a private mining company. 221 F. Supp. 2d 1116 (C.D. Cal. 2002). In that case, the private mining company, Rio Tinto, had engaged in mining activities in Papua New Guinea

("PNG") pursuant to an agreement with the PNG government. Id. at 1121-22. In determining the act of state doctrine barred consideration of portions of the case the court reasoned:

> [P]laintiffs assert that no official action was involved since the allegedly wrongful conduct was committed by Rio Tinto [the private mining corporation], not PNG. This argument is unavailing, as Rio Tinto conducted its mining activity pursuant to an agreement between its subsidiary, BCL, and the PNG government.

Id. at 1186-87.

Here, plaintiffs' allegations against Gazprom relate only to its alleged, pre-TRO authorization of its then-subsidiary, Gazpromneft, "to participate in the auction" ordered by the Russian Federation. (Compl. ¶ 155.) It is impossible to determine whether this limited participation in the auction—the only alleged wrongful conduct by Gazprom—somehow violated U.S. (or other) laws without making a determination that the Russian Federation's official conduct leading up to and culminating in the auction itself was also improper or unlawful. (Compl. ¶ 154.) Indeed, plaintiffs' Complaint goes to great lengths to convince the Court that the Russian Federation's (and the Russian courts') conclusions about Yukos' violations of the Russian tax code were wrong. Because this Court is precluded from re-examining the propriety of the Russian Federation's conduct under the act of state doctrine, plaintiffs' Complaint against Gazprom must be dismissed.

**B.    The Political Question Doctrine Mandates Dismissal Of Plaintiffs' Complaint**

Plaintiffs' claims must also be dismissed because they present political questions appropriately left to the determination of the executive branch. The political question doctrine is "based upon respect for the pronouncements of coordinate branches of government that are better equipped and properly intended to consider issues of a distinctly political nature." Doe I, 400 F. Supp. 2d at 111. In cases like this, where U.S. foreign relations with another country are

in issue, courts lack jurisdiction to hear the case. Oetjen v. Central Leather Co., 246 U.S. 297, 302 (1918) ("The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative—'the political'–department of the government."); Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 803 (D.C. Cir. 1984) (Bork, J., concurring) ("Questions touching on the foreign relations of the United States make up what is likely the largest class of questions to which the political question doctrine has been applied.").

Here, it is clear that plaintiffs' claims directly implicate U.S. foreign policy related to the Russian Federation. The claims revolve around the Russian Federation's tax treatment of a major Russian oil and gas producing company—presumably an area of keen international interest given the Russian Federation's extensive oil and gas reserves. (Compl. ¶¶ 56-57.) Indeed, the Complaint notes that key figures within the United States' executive branch—including President Bush, Secretary of State Condoleezza Rice and former Secretary of State Colin Powell—have already taken stances addressing the issues underlying the Complaint. (Compl. ¶ 2.) Further involvement by U.S. courts on issues relating to Yukos—whether consistent or inconsistent with the approaches being followed by the executive branch—would very likely increase the strain on the already-tense U.S.-Russian relations. For this independent reason, the Court should decline jurisdiction to hear this case based on the political question doctrine.

## C.   International Comity Mandates Dismissal Of Plaintiffs' Complaint

Apart from the act of state and political question doctrines, this Court should dismiss plaintiffs' claims under the doctrine of comity. Comity applies where the resolution of a case "touch[es] the laws and interests of other sovereign states." Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522, 543 n.27 (1987).

The Supreme Court has emphasized the goal of international comity "in a variety of contexts." Casey v. Dept. of State, 980 F.2d 1472, 1477 (D.C. Cir. 1992).

Comity clearly applies in cases such as this, where a challenge is being made to the acts and judgments of a foreign state. Banco Nacional de Cuba, 376 U.S. at 417-18 (finding under the act of state doctrine and principles of international comity that Cuban expropriation decree could not be challenged). In Banco Nacional de Cuba, the Court noted "[t]he principle that the conduct of one independent government cannot be successfully questioned in the courts of another . . . rests at last upon the highest considerations of international comity and expediency." 376 U.S. at 417-18 (citing Oetjen v. Central Leather Co., 246 U.S. 297, 303-04 (1918)). Indeed, the Supreme Court has held, "where 'comity of this nation' calls for recognition of a judgment rendered abroad, 'the merits of the case should not . . . be tried afresh . . . upon the mere assertion . . . that the judgment was erroneous in law or in fact.'" Medellin v. Dretke, 544 U.S. 660, 125 S. Ct. 2088, 2094 (2005) (Ginsburg, J., concurring) (quoting Hilton v. Guyot, 159 U.S. 113, 202-03 (1895)) (alterations in original). Accordingly, because this Court must avoid re-trying the actions of the Russian Federation concerning Yukos' delinquent taxes, and the subsequent decisions of the Russian courts relating to Yukos' appeal of the tax penalties, plaintiffs' Complaint should be dismissed under the doctrine of comity. See General Elec. Co. v. Deutz AG, 270 F.3d 144, 160 (3d Cir. 2001) (holding deference to "rulings of foreign tribunals [fosters] international cooperation and encourages reciprocity" are "worthy goals of comity").

## III.    PLAINTIFFS LACK STANDING TO PURSUE COUNTS I AND V

Plaintiffs lack standing to bring Counts I and V of their Complaint because these causes of action seek to recover for alleged injuries to Yukos. Under Russian law—which governs plaintiffs' standing to sue for alleged injuries to Yukos—an ADR holder cannot pursue claims

against third-parties on behalf of their corporation. These plaintiffs would also lack standing to bring the corporation's claims on their own behalf if U.S. law applied to plaintiffs' claims. Thus, regardless of which law is applied, plaintiffs lack standing to pursue Counts I and V of the Complaint.

In Counts I and V, plaintiffs assert claims for conversion and prima facie tort based on Yukos' alleged loss of its assets, including the YNG division. (Compl. ¶¶ 182, 228). Because plaintiffs are seeking to recover for alleged injuries to Yukos, which allegedly led to a decline in the value of plaintiffs' ADRs (e.g., Compl. ¶ 6), they lack standing to bring suit under United States law. See, e.g., Flynn v. Merrick, 881 F.2d 446, 449 (7th Cir. 1989) ("'[D]iminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.'") (quoting Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. 1981)); Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311, 315 (6th Cir. 1987); Pignato v. Dein Host, Inc. (In re Dein Host, Inc.), 835 F.2d 402, 405-06 (1st Cir. 1987). Here, Yukos itself is already bringing its claim against Gazprom in a Russian court—which precludes its ADR holders from seeking to do the same here. See, e.g., Fed. R. Civ. P. 23.1 (stockholders may only bring action for injury to their corporation caused by third parties after making demand upon corporation and its directors and officers to take action which is refused).

Likewise, Russian law—which controls the question of whether shareholders may bring suit on behalf of the corporation—does not allow for this lawsuit. The District of Columbia follows the "internal affairs" doctrine in determining choice of law for shareholder suits; this doctrine mandates that "the laws of the state or other jurisdiction under which a foreign limited liability company is formed govern its formation and internal affairs and the liability of its members and managers . . . ." D.C. Code § 29-1052; see also Wright v. Herman, 230 F.R.D. 1, 8

(D.D.C. 2005) (applying "internal affairs" doctrine).  The question of whether a shareholder may pursue claims belonging to the corporation is governed by the law of the jurisdiction in which the corporation is organized.  Labovitz v. Washington Times Corp., 900 F. Supp. 500, 503 (D.D.C. 1995), aff'd, 172 F.3d 897 (D.C. Cir. 1999); see also Bagdon v. Bridgestone/Firestone, Inc., 916 F.2d 379, 382 (7th Cir. 1990).

Here, it is undisputed that Yukos is organized under the laws of the Russian Federation and maintains its principal place of business in Moscow, Russia.  (Compl. ¶ 46.)  Thus, whether plaintiffs may bring Yukos' claims is governed by Russian law.  Russian law, however, makes no provision for foreign ADR holders to sue on behalf of the corporation—particularly where the corporation has already brought suit.  (Ex. B, Federal Law No. 208-FZ of Dec. 26, 1995 on Joint-Stock Companies, art. 71(5) (providing that only shareholders possessing at least one percent of common stock may bring suit against a member of the board of directors), art. 48 (providing description of authority and powers of the General Meeting of Shareholders, which does not include the ability to bring suit on behalf of the company), art. 65(1) (providing responsibilities of the board of directors), art. 69(2) (providing that executive body of company shall have authority over all other matters not allocated to the General Meeting of Shareholders or board of directors).)[7]  Courts considering identical situations involving other foreign countries have likewise found that ADR holders of shares in foreign companies lack standing to pursue lawsuits based on injury to the corporation.  E.g., Tomran, Inc. v. Passano, 891 A.2d 336, 346-48 (Md. App. Ct. 2006) (finding U.S. ADR holders in Irish corporation lacked standing under Irish

---

[7]    Notably, the Russian Joint-Stock Companies law constrains a true shareholder's ability to sue the corporation's own directors on behalf of the corporation.  Under the Russian law, a stockholder must own at least one percent of the company's stock in order to file a claim against a member of the board of directors for harm caused by a director to the corporation.  (Ex. B, Federal Law No. 208-FZ of Dec. 26, 1995 on Joint-Stock Companies, art. 71(5).)  Here, plaintiffs are neither true shareholders (they are foreign ADR holders) and do not claim to own more than one percent of Yukos' stock.

law to pursue claims on behalf of corporation); <u>Batchelder v. Kawamoto</u>, 147 F.3d 915, 920 (9th Cir. 1998) (holding U.S. ADR holders in Japanese corporation lacked standing under Japanese law to pursue claims on behalf of corporation).  Accordingly, Counts I and V must be dismissed for lack of standing.[8]

## IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS

This Court should dismiss plaintiffs' Complaint on the independent ground of forum non conveniens.  Dismissal under forum non conveniens is appropriate "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'"  <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241 (1981) (quoting <u>Koster v. Lumbermens Mut. Cas. Co.</u>, 330 U.S. 518, 524 (1947)) (alterations in original).  In applying this standard, this Court should determine (1) whether there is an adequate alternative forum and (2) whether private interest and public interest factors weigh in favor of the alternate forum.  <u>Jackson v. American Univ., in Cairo</u>, 52 F. App'x 518, 518 (D.C. Cir. 2002) (citing <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241 (1981)).

Here, an adequate alternative forum plainly exists: the Russian Federation.  The United States Supreme Court has noted that ordinarily, the requirement that an adequate alternative

---

[8]    A distinct issue from standing is whether plaintiffs are the "real parties in interest" to bring the claim. <u>Whelan v. Abell</u>, 953 F.2d 663, 672 (D.C. Cir. 1992). Federal Rule of Civil Procedure 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). While it is clear that plaintiffs do not have standing to bring claims based on alleged injuries to Yukos, this Court could also conclude that plaintiffs are not the real parties in interest. <u>Whelan</u>, 953 F.2d at 672; <u>Labovitz v. Washington Times Corp.</u>, 900 F. Supp. 500, 501 n.2 (D.D.C. 1995), <u>aff'd</u>, 172 F.3d 897 (D.C. Cir. 1999). Instead, as demonstrated above, only Yukos may sue for harms directly suffered by it. Accordingly, under Rule 17(a), Yukos—and not the plaintiffs—is the real party in interest.

forum exists "will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." Piper Aircraft Co., 454 U.S. at 254 n.22. That requirement is easily satisfied in the present case, in which defendant Gazprom is a Russian corporation with its principal place of business in Moscow. (Compl. ¶ 31.) In fact, Yukos itself appealed the tax assessments underlying this action within the Russian court system. (Compl. ¶¶ 126-27.) Most importantly, Yukos itself has already brought a case against Gazprom in Russian courts seeking billions in damages.

Additionally, both private interests and public interests weigh overwhelmingly in favor of litigating this suit in the Russian Federation. Evaluating the private interests of the litigants requires an examination of "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). In this case, all of the acts and events challenged by plaintiffs occurred in the Russian Federation. Accordingly, it stands to reason that the sources of proof relevant to this case are located within the Russian Federation. Similarly, most witness will also be located in the Russian Federation. Plainly, this action is much more efficiently and properly pursued in the Russian Federation. The possibility that plaintiffs may encounter less favorable law or results in the Russian courts is not a factor given weight in a forum non conveniens analysis. Piper Aircraft Co., 454 U.S. at 250-51.

The public interest factors also demonstrate that this action must be pursued, if at all, in the Russian Federation. The public interest factors include administrative difficulties resulting from congestion of the court; whether the community's relation to the litigation justifies the imposition of jury duty upon the people of the community; the strength of the local interest of

having localized controversies decided at home; and the interest of the court in having the case tried in the forum whose laws will be applied. Gulf Oil Corp., 330 U.S. at 508-09. This litigation is tied exclusively to actors and events located in the Russian Federation. The central events of this dispute—focused on one of the major natural resources of the Russian Federation and the role of the Russian government in regulating its own citizens—are clearly of great importance to the Russian Federation and of minimal importance to this District. Given that Yukos is already asserting such a claim in Russia—which is for the presumed benefit of plaintiffs here—there is even less of a public interest in this District. Additionally, resolution of the issues in this case will require this Court to interpret and apply the laws of the Russian Federation, a factor weighing heavily in favor of dismissal. Id. at 509; Piper Aircraft Co., 454 U.S. at 260 n.29.[9] For these reasons, this Court should dismiss the present litigation on the grounds that the Russian Federation provides a more convenient and appropriate jurisdiction for the resolution of plaintiffs' claims.

---

[9] In deciding choice-of-law issues, the District of Columbia considers "the governmental policies underlying the applicable law and determine[s] which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review," and "(i) 'the place where the injury occurred'; (ii) 'the place where the conduct causing the injury occurred'; (iii) 'the domicile, residence, nationality, place of incorporation and place of business of the parties'; and (iv) 'the place where the relationship, if any, between the parties is centered." Dammarell v. Islamic Republic of Iran, No. Civ. A. 01-2224, 2005 WL 756090, at *18 (D.D.C. Mar. 29, 2005) (quoting Restatement (Second) of Conflict of Laws § 145). Under this test, Russian law applies to the allegations in the present Complaint. All of the acts causing injury alleged in the Complaint took place in the Russian Federation. (Compl. ¶¶ 81-170.) None of the plaintiffs is a resident of the District of Columbia, and all of the defendants are residents of the Russian Federation. These facts dictate an application of Russian law. See Minebea Co., Ltd. v. Papst, 377 F. Supp. 2d 34, 38 (D.D.C. 2005) (finding German law controlled where "[a] significant portion of the conduct alleged . . . occurred in Germany[,] [n]one of the relevant events occurred in New York, nor are any of the parties New York entities"). Further, the Russian Federation has a strong interest in having its laws applied to the present case. This consideration also requires an application of Russian law. See Century Int'l Arms, Ltd. v. Federal State Unitary Enter. State Corp. 'Rosvoorouzhenie', 172 F. Supp. 2d 79, 94 (D.D.C. 2001) (finding Russian law applied where the defendant was an agency or instrumentality of the Russian government and "Russia has an extremely strong interest in ensuring that its state-controlled agencies are not subjected to laws that contravene its own").

## V.   PLAINTIFFS' SECURITIES FRAUD CLAIM MUST BE DISMISSED BECAUSE U.S. SECURITIES LAW CANNOT BE APPLIED EXTRATERRITORIALLY TO THE CONDUCT ALLEGED

Plaintiffs have brought a claim under federal securities laws (Count VII) in an effort to declare quasi-criminal the statements of President Vladimir Putin, the sovereign regulatory actions of the Russian Federation, and the related, wholly foreign conduct of officials and entities such as Gazprom. Plaintiffs have invited the Court make these U.S. statutes the law of the land in the Russian Federation even though plaintiffs' alleged harm is incidental and wholly speculative.

The Court should refuse to apply U.S. securities fraud laws to the sovereign and foreign conduct plaintiffs challenge. It is a basic "principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" EEOC v. Arabian American Oil Co., 499 U.S. 244, 248 (1991) (quoting Foley Bros., Inc. v. Filardo, 336 U.S. 281, 284-85 (1949)). Further, there is a presumption against the extraterritorial application of United States' securities laws. In re Baan Co. Sec. Litig., 103 F. Supp. 2d 1, 9, 11 (D.D.C. 2000). When a plaintiff attempts to hold a party liable under the Exchange Act for actions committed outside the United States, the courts generally apply the "effects test" and inquire whether "acts done outside a jurisdiction [were] intended to produce and produc[ed] detrimental effects within it." Id. at 10. In addition, the connection between the defendant, the defendant's alleged statements, and the plaintiff must be concrete and clear before U.S. securities laws may be applied extraterritorially. See, e.g., Interbrew v. EdperBrascan Corp., 23 F. Supp. 2d 425, 429-30 (S.D.N.Y. 1998) (refusing to apply U.S. securities laws to a case against a Canadian corporation for misrepresentations it had made concerning the value of a third corporation, causing the plaintiff to buy stock in the third

28

corporation at an inflated price, despite the fact that some of the investors in the third company were Americans); cf. Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 989 (2d Cir. 1975) (finding securities laws did not apply when, despite claim that defendant provided misinformation concerning its securities, securities were never intended to be offered in the United States).

U.S. securities law cannot be applied in the instant case. All of the alleged conduct took place inside the Russian Federation, by entities (including the Russian government itself) that have no connection or relationship with these plaintiff-ADR purchasers. All of the alleged conduct occurred in connection with the governmental functions of the Russian Federation. It is especially clear that United States' securities laws cannot be applied to plaintiffs Thijssen or FCT America Limited because they are not even U.S. citizens and did not purchase ADRs on U.S. stock exchanges. See Nathan Gordon Trust v. Northgate Exploration, Ltd., 148 F.R.D. 105, 108 (S.D.N.Y. 1993) (holding securities laws did not apply to claims arising from transactions on foreign exchanges); Koal Indus. Corp. v. Asland, S.A., 808 F. Supp. 1143, 1155 (S.D.N.Y. 1992) (finding extraterritorial application of the securities laws was not available to a non-American investor).

Further, there is no claim, nor can there be, that any defendant intentionally directed any information or statement to these plaintiffs or that there is any relationship between the plaintiff-ADR purchasers and any of the defendants—such as issuer-buyer or shareholder-director in the same corporation—as to which extraterritorial jurisdiction could be appropriate. Gazprom is not alleged to have made any statements or to have any conceivable duty to the plaintiffs. As a result, any alleged statement or omission by Gazprom or the other defendants were clearly not "intended to" produce detrimental effects in the U.S. Because U.S. securities fraud statutes cannot be applied in this action, Count VII of the Complaint must be dismissed.

## VI.    PLAINTIFFS' SECURITIES FRAUD CLAIMS ARE FRIVOLOUS AND MUST BE DISMISSED

In Count VII of their Complaint, plaintiffs defy logic and law and attempt to hold Gazprom—a corporation in which plaintiffs do not allege to have purchased or held any shares— liable for securities fraud under the United States Securities Exchange Act. As shown below, even if this Court permitted U.S. securities laws to be extended to embrace the alleged conduct of the Russian Federation and other Russian actors, plaintiffs' securities fraud claim is absurd and must be dismissed for failing to state essential elements of a claim under the Exchange Act.

To state a claim under Section 10(b) of the Exchange Act[10] and Rule 10b-5,[11] a plaintiff must allege: (1) a material misstatement or omission, (2) made with scienter, (3) made in connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 1631 (2005); see also IDT Corp. v. eGlobe Inc., 140 F. Supp. 2d 30, 33 (D.D.C. 2001). A plaintiff must plead securities fraud with particularity. Fed. R. Civ. P. 9(b). The PSLRA, which amended the Securities Exchange Acts of 1933 and 1934, mandates that a complaint alleging securities fraud "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Such allegations should include the "time,

---

[10]    Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

[11]    Rule 10b-5 provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
    (a) To employ any device, scheme, or artifice to defraud,
    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."
17 C.F.R. § 240.10b-5.

place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." In re U.S. Office Prods. Sec. Litig., 326 F. Supp. 2d 68, 73 (D.D.C. 2004).

### A.    The Complaint Fails To Plead Any Statement By Gazprom

The first flaw in plaintiffs' claim is that plaintiffs have failed to allege Gazprom made any statements or omissions, misleading or otherwise, in connection with any of the allegations in the Complaint.  The only allegations in the Complaint that could conceivably be read to include Gazprom are general, conclusory allegations regarding unspecified "misrepresentations and omissions" made by "all Defendants." (Compl. ¶¶ 85, 129, 136, 234, 241.)  Such allegations are plainly insufficient to meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b).  In re U.S. Office Prods. Sec. Litig., 326 F. Supp. 2d at 73; Lance v. United Mine Workers of Am. 1974 Pension Trust, 355 F. Supp. 2d 358, 363 (D.D.C. 2005), vacated on other grounds, 400 F. Supp. 2d 29 (D.D.C. 2005).  Nor can Gazprom be held liable for aiding and abetting an alleged securities fraud.  Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177 (1994).  Plaintiffs do not allege the time or place the unspecified misrepresentations were made and do not specifically identify Gazprom as having made any statements.  Consequently, their securities fraud claims must be dismissed.[12]

### B.    There Is No Plausible "Duty" Or Required Relationship Alleged In The Complaint

The second fatal flaw in plaintiffs' Exchange Act claim is that it is premised on the untenable position that either an omission or a misstatement by one corporation can form the

---

[12]    The only specific statements alleged in the Complaint are public statements made by Russian President Vladimir Putin. (Compl. ¶¶ 86, 138.)  Plaintiffs' attempt to assert liability as a result of even these statements is absurd; case law is devoid of any examples in which a foreign state was held liable for issuing misleading statements in connection with the purchase or sale of securities.

basis of an Exchange Act claim by shareholders of another, unrelated, antagonistic corporation. This proposition likewise does not withstand scrutiny. One company, especially an alleged competitor such as Gazprom, has no duty of disclosure to the shareholders of another company/competitor, such as Yukos. See Lindblom v. Mobile Telecomms. Techs. Corp., 985 F. Supp. 161, 161-62 (D.D.C. 1997) (finding a subsidiary had no duty of disclosure to shareholders of its parent); Gershon v. Wal-Mart Stores, Inc., 901 F. Supp. 128, 131 (S.D.N.Y. 1995) ("Even presuming that Wal-Mart was in possession of material non-public information . . . it still had no disclosure duty . . . because it lacked the requisite fiduciary relationship to Gitano shareholders."). In fact, shareholders cannot even sue their own corporation for failing to disclose material information about a competitor. Kowal v. MCI Comm'ns Corp., Civ. A. No. 90-2862, 1992 WL 121378, at *5 (D.D.C. May 20, 1992), aff'd, 16 F.3d 1271 (D.C. Cir. 1994) (finding MCI's omissions were not made "in connection with" the purchase or sale of securities because MCI had no duty to provide its shareholders information about AT&T's successful marketing campaign). It is plain that Yukos ADR purchasers have no basis to sue Gazprom for securities fraud.

Additionally, even if plaintiffs had alleged that Gazprom made some (unknown) affirmative, material misstatement, it too would be insufficient to form a basis for their claim. See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp., 369 F.3d 27, 28-29 (2d Cir. 2004). In Ontario, the Second Circuit affirmed the dismissal of a complaint brought by shareholders of JDS against Nortel, a company that had close business relationships with JDS. Id. The court found the JDS shareholders did not have standing to bring their suit against Nortel because, "instead of purchasing securities of the entity that made the alleged misrepresentations [Nortel], they purchased securities of a company that had a business

relationship with the misrepresenter [JDS]." Id. at 32. The Second Circuit went on to explain that in Blue Chip Stamps v. Manor Drug Stores, the Supreme Court had articulated a purchaser-seller requirement that "'limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates." Id. (quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 747 (1975)). This Court has reached a similar conclusion concerning misstatements made by another company, albeit with less explanation. Lindblom, 985 F. Supp. at 161-62 (finding statements were not issued "in connection with" the purchase or sale of a security, explaining simply: "[The subsidiary] was not selling stock."). Accordingly, any misstatement or omission that could possibly be attributed to Gazprom was simply not made "in connection with" the purchase or sale of Yukos ADRs.

### C.     The Complaint Fails To Plead Scienter On The Part Of Gazprom

Along with the failure to allege any statement or omission by Gazprom, the Complaint also fails to allege that Gazprom specifically engaged in any relevant misconduct with scienter. See Dura Pharm., Inc., 125 S. Ct. at 1631; IDT Corp., 140 F. Supp. 2d at 33. In order to properly plead scienter, plaintiffs must allege that Gazprom acted, at a minimum, in a reckless manner in making the false statement or omission; because plaintiffs have not plead that Gazprom made any specific statement or omission, it cannot show that the Gazprom acted recklessly with regard to its content. E.g., Phillips v. LCI Int'l, Inc., 190 F.3d 609, 621 (4th Cir. 1999). This is an independent reason to dismiss the securities fraud claim.

### D.     The Allegations In The Complaint Preclude Any Claim Of Reliance

Finally, it is simply implausible to assert that any Yukos ADR purchaser could "reasonably rely" on any position posited by an alleged adversary of Yukos; this is especially true given the multitude of allegedly high-profile, hostile actions taken against Yukos' assets

during the relevant time period.[13]  The requirement of "reliance"—sometimes phrased as one of

"causation"—is a "means of establishing the causal link between the misrepresentation or

omission and the injuries suffered by the private plaintiff, and of insuring that the federal

securities laws do not expose defendants to limitless liability or become transformed into merely

private enforcement mechanisms."  Berg v. First American Bankshares, Inc., No. 83-3887, 1985

WL 2232, at *5 (D.D.C. April 17, 1985); see also Dura Pharm., Inc. v. Brouda, 544 U.S. 336,

125 S. Ct. 1627, 1631 (2005); Basic Inc. v. Levinson, 485 U.S. 224, 248 (1988) (presumption of

reliance of individual plaintiffs on the integrity of the market price may be rebutted through

"[a]ny showing that severs the link between the alleged misrepresentation and either the price

received (paid) by the plaintiff, or his decision to trade at a fair market price").

        Here, any reliance or alleged loss suffered by a Yukos ADR purchaser on alleged

statements or omissions attributed to Gazprom would be unreasonable as a matter of law.  As

established above, Gazprom had no duty to Yukos shareholders.  Indeed, according to plaintiffs'

---

[13]       Specifically, plaintiffs allege they relied on two statements issued by President Putin on October 27, 2003
and June 17, 2004, allegedly intended to placate Yukos investors.  At the same time, however, the Complaint is
replete with allegations of conduct by the Russian Federation that fully contradict any possible placating statements,
including:  the June 21, 2003 arrest of Yukos security manager Alexei Pichugin (Compl. ¶ 81); the July 2, 2003
arrest of the chairman of the board of Group Menatep Platon Lebedev (Compl. ¶ 82); the October 9, 2003
"ransacking" of Mikhail Khodorkovsky's counsel's office (Compl. ¶ 91); the October 25, 2003 arrest of
Khodorkovsky (Compl. ¶ 83); the October 30, 2003 seizure of all Yukos common stock owned by YUL and
Hulley—approximately 51% of the equity of Yukos (Compl. ¶ 104); the November 28, 2003 announcement that the
Yukos-Sibneft merger was "on hold" (Compl. ¶ 101); the December 2003 "special" tax assessment conducted by the
Russian Federation resulting in $3.4 billion in taxes (Compl. ¶¶ 115-17); the Russian Tax Ministry's April 14, 2004
decision upholding that tax assessment (Compl. ¶ 126); the April 15, 2004 injunction obtained by the Russian
Federation freezing all Yukos assets (Compl. ¶ 130); the May 26, 2004 order of the Court of Arbitration upholding
the Russian Federation tax claims (Compl. ¶ 127); the June 30, 2004 injunction obtained by the Russian Federation
freezing Yukos assets (Comp. ¶ 130); the Russian Federation's July 1, 2004 demand of payment by Yukos for taxes
owed and rejection of Yukos' offer to collateralize the debt (Compl. ¶ 132); the July 20, 2004 announcement by the
Russian Federation that it intended to auction the YNG shares to discharge Yukos' tax liability (Compl. ¶ 142); the
August 31, 2004 freezing of Yukos' bank accounts (Compl. ¶ 133); the additional $4.1 billion tax levied by the
Russian Federation on September 3, 2004 (Compl. ¶ 134); the additional thirteen freeze orders obtained against
other Yukos subsidiaries on September 9, 2004 (Compl. ¶ 133); the Russian Federation's November 2, 2004
assessment that Yukos owed an additional $10 billion in taxes (Compl. ¶ 135); and the November 19, 2004
announcement by the Russian Federation that the auction of YNG would occur on December 19, 2004 (Compl. ¶
154).  Plaintiffs' purchases occurred in the midst of—and following—these contrary events.  (The final alleged
purchase occurred on November 25, 2004 (Compl. ¶ 25)).

own Complaint, Gazprom's interests were adverse to Yukos. (E.g., Compl. ¶¶ 70, 75.) Furthermore, plaintiffs' "reliance" on or "loss" caused by the allegedly calming representation of the Russian Federation occurred when the highly public and publicized investigation and prosecution of Yukos, its officers, and its shareholders made clear that Yukos was in grave danger. E.g., Davidson v. Wilson, 973 F.2d 1391, 1400-01 (8th Cir. 1992) (rejecting investors' claims of reasonable reliance where misleading statements came from a party who owed no fiduciary duty to the investors, with whom the investors had no longstanding relationship, and where the investors had access to information that directly contradicted the statements); Harner v. Prudential-Bache Sec., Inc., 35 F.3d 565 (6th Cir. 1994) ("'[I]f the investor already possesses information sufficient to call the representations into question, he cannot claim later that he relied on or was deceived by the lie.'") (quoting Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 530 (7th Cir. 1985)) (unpublished opinion); Asher v. Baxter Int'l Inc., 377 F.3d 727, 732 (7th Cir. 2004) ("An investor who invokes the fraud-on-the-market theory must acknowledge that all public information is reflected in the price."). In addition, plaintiffs' conclusory allegation that they purchased "artificially inflated" Yukos ADRs and were "damaged thereby" (Compl. ¶ 248) is clearly insufficient to plead causation. Dura Pharm., Inc., 125 S. Ct. at 1630-31 (dismissing complaint alleging that plaintiffs "paid artificially inflated prices . . . and suffered damages thereby"). Plaintiffs fail to plead the requisite connection between each specific alleged misrepresentation and the economic loss it allegedly caused. Plaintiffs have failed to state a claim for securities fraud and Count VII must be dismissed.

## VII.    PLAINTIFFS' COMMON LAW CAUSES OF ACTION FAIL UNDER U.S. LAW

Plaintiffs have also attempted to allege a number of "common-law"[14] claims.  As shown below, assuming for the sake of argument that U.S. law governs these claims, they must also be dismissed.

### A.    Count I Of The Complaint Must Be Dismissed Because Plaintiffs Fail To Allege Gazprom Committed Essential Elements Of Conversion

Count I of the Complaint alleges the "unlawful conversion of . . . OAO NK Yukos Oil Company." (Compl. ¶ 181.)  This Count, however, must be dismissed because, in addition to lacking standing to bring this claim (see Section III), plaintiffs fail to allege that Gazprom ever exercised the required ownership, dominion, or control over plaintiffs' property.[15]

"Conversion is the unlawful exercise of ownership and dominion and control over the personal property of another in denial or repudiation of that person's right thereto." Calvetti v. Antcliff, 346 F. Supp. 2d 92, 106 (D.D.C. 2004); see also Shulman v. Voyou, L.L.C., 251 F. Supp. 2d 166, 170 (D.D.C. 2003).   Although Count I includes the general allegation that "Defendants . . . continue to retain possession of the property of Plaintiffs" (Compl. ¶ 183), this allegation is limited by more specific allegations in the Complaint. E.g., Johnson v. M.J. Uline Co., 40 A.2d 260, 260-61 (D.C. App. 1945) ("The [complaint's] general allegations must be considered as circumscribed by the [complaint's] more specific statements.").  Thus, plaintiffs' specific allegations—which preclude any suggestion that Gazprom has possession, custody, or

---

[14]    Throughout this motion, Gazprom cites to United States law in light of plaintiffs' reference to "common law" claims, without waiver of its argument that Russian law applies and requires dismissal of this lawsuit.

[15]    Although the heading in this section of the Complaint states that Count I is for "Conspiracy and Common Law Conversion," Count I makes no attempt to allege any elements of a conspiracy claim and never even mentions the words "conspire" or "conspiracy." (See Compl. ¶¶ 180-86).  Thus, Gazprom has assumed that Count I only purports to state a claim for conversion.  To the extent plaintiffs attempt to argue that Count I states a claim for conspiracy, that claim should be dismissed because plaintiffs fail to allege any elements of such a claim or to put Gazprom on notice as to the claim.

control of plaintiffs' property—are relevant to whether plaintiffs have stated a conversion claim against Gazprom.

Although plaintiffs claim that defendants "seized a majority of Yukos common stock, as described in paragraphs 104-106" of the Complaint (Compl. ¶ 182(a)), these paragraphs make <u>no</u> reference to Gazprom at all.  (Compl. ¶¶ 104-06.)  Thus, Paragraph 182(a) does not allege that Gazprom seized Yukos stock.  The Complaint also alleges that "Defendants . . . seized the most valuable asset of Yukos, as described in paragraphs 153-168" of the Complaint.  (Compl. ¶ 182(b).)  Paragraphs 153-68 make clear, however, that Gazprom is not alleged to have seized any assets of Yukos.  (Compl. ¶¶ 153-68.)  In addition to BFG, Gazpromneft is the only other defendant alleged to have shown up for—but not to have "substantively" participated in—the auction.  (Compl. ¶¶ 160, 162; <u>see also</u> Compl. ¶¶ 164, 169.)[16]  Thus, Paragraph 182(b) does not allege that Gazprom seized any Yukos assets.  Finally, Plaintiffs' conversion claim alleges that defendants engaged in "the imposition of enormous tax liabilities on Yukos."  (Compl. ¶ 182(c).)  However, the Complaint's allegations regarding the "Imposition of Confiscatory Taxes" do not relate to Gazprom.  (<u>See</u> Compl. ¶¶ 108-27; <u>see also</u> Compl. ¶¶ 130, 134-35, 141, 144.)  Thus, Paragraph 182(c) also fails to allege any conduct by Gazprom.

Because plaintiffs have failed to allege that Gazprom exercises ownership, dominion, or control over Yukos, plaintiffs' claimed property, their conversion claim should be dismissed.

**B.    Plaintiffs' "Prima Facie Tort" Claim Is Deficient**

Count V purports to state a claim for "prima facie tort" by alleging that "Defendants and each of them with a malevolent intent and without justification participated in the confiscation of

---

[16]    The Complaint acknowledges that Gazpromneft and Gazprom were separate entities at the time the Yukos assets were allegedly seized. (Compl. ¶ 32 ("Shortly before the . . . auction . . . , Gazprom sold Gazpromneft."); <u>see also</u> Compl. ¶ 158).)

Plaintiffs' property." (Compl. ¶ 228.) Count V of the Complaint must be dismissed because, in addition to plaintiffs' lack of standing (see Section III), the District of Columbia does not recognize a cause of action for prima facie tort. Nix v. Hoke, 139 F. Supp. 2d 125, 132 n.5 (D.D.C. 2001) ("District of Columbia law has not recognized a cause of action for prima facie tort.") (citing Schwartz v. Franklin Nat'l Bank, 718 A.2d 553, 556 (D.C. 1998) (noting that there is "no existing law in this jurisdiction" upon which to base a prima facie tort claim); Art Metal-U.S.A., Inc. v. United States, 577 F. Supp. 182, 184 (D.D.C. 1983) ("District of Columbia courts have not embraced a form of generic tort like the prima facie tort.")).

Even if this Court did apply a "prima facie tort" theory, Count V would still require dismissal because plaintiffs have failed to plead "prima facie tort" as required by the few jurisdictions that do recognize such an action. Generally, "prima facie tort" requires that the plaintiff "demonstrate the intentional infliction of harm, resulting in special damages, without any excuse or justification, by an act or acts that otherwise would be lawful. Moreover, the plaintiff must establish that malevolence was the sole motive for the defendant's otherwise lawful act." Montefusco v. Nassau County, 39 F. Supp. 2d 231, 238-39 (E.D.N.Y. 1999) (citations omitted); see also D'Andrea v. Rafla-Demetrious, 3 F. Supp. 2d 239, 252 (E.D.N.Y. 1996).

Here, plaintiffs fail to allege that the sole motive for Gazprom's (or any defendant's) alleged conduct was malevolence. (See, e.g., Compl. ¶ 228.) Plaintiffs' claim for "prima facie tort"—which incorporates paragraphs 1-226 of the Complaint (Compl. ¶ 227)—actually alleges that defendants had other motives for their alleged conduct, including the de facto "re-nationalization of Yukos" and financial enrichment. (Compl. ¶¶ 1, 80, 117, 128, 144, 152, 179, 195, 207.) However, "[w]hen there are other motives, such as profit, self-interest, or business

38

advantage, there is no recovery under the doctrine of <u>prima facie</u> tort." <u>Marcella v. ARP Films,</u>

<u>Inc.,</u> 778 F.2d 112, 119 (2d Cir. 1985) (applying New York law); <u>see also</u> <u>Lennon v. Seaman</u>, 63

F. Supp. 2d 428, 434 (S.D.N.Y. 1999) (applying New York law and dismissing prima facie tort

claim where, by incorporating preceding paragraphs into the claim, plaintiff had alleged motives

other than malice, including financial motives).  Additionally, courts that recognize a cause of

action for "prima facie tort" requires a plaintiff to allege special damages.  <u>D'Andrea</u>, 3 F. Supp.

2d at 252-53.  Plaintiffs, however, who request only "damages and compensation . . . as this

Court may deem just" (Compl. at p. 64), have made no attempt to plead special damages.

Because the District of Columbia does not recognize a claim for "prima facie tort," and

plaintiffs have failed to plead such a claim even if one were recognized, Count V should be

dismissed.

### C.    Plaintiffs' Common Law Fraud And Deceit Claim Is Fatally Deficient

Count VI of the Complaint alleges "Defendants made false and misleading statements"

that "induced plaintiffs to maintain their ownership of Yukos ADRs."  (Compl. ¶¶ 234, 231.)

This claim, however, should be dismissed because plaintiffs fail to plead fraud with the requisite

specificity and seek damages that are too speculative.

### 1.    Plaintiffs fail to plead fraud with specificity

To support their claim for fraud, plaintiffs must allege facts showing: "(1) a false

representation, (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4)

with the intent to deceive, and (5) action is taken on reliance upon the representation."  <u>Calvetti</u>

<u>v. Antcliff</u>, 346 F. Supp. 92, 100 (D.D.C. 2004) (citation omitted); <u>see also</u> <u>Virginia Academy</u>

<u>of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.</u>, 878 A.2d 1226, 1233

(D.C. App. 2005).  Fraud claims must be pled with particularity.  Fed. R. Civ. P. 9(b).

Therefore, plaintiffs must "plead with particularity the circumstances of the fraud, namely the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." United States ex rel. Fisher v. Network Software Assocs., 227 F.R.D. 4, 9 (D.D.C. 2005) (citing United States ex rel. Totten v. Bombardier Corp., 286 F.3d 542, 551-52 (D.C. Cir. 2002)). "In other words, Rule 9(b) requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud." In re U.S. Office Prods. Sec. Litig., 326 F. Supp. 2d 68, 73 (D.D.C. 2004).

As demonstrated in the section above discussing plaintiffs' flawed securities fraud claims, rather than plead the alleged fraud with particularity, plaintiffs rely upon general, conclusory allegations that never set forth any alleged statements by Gazprom. In fact, plaintiffs' Complaint fails to make any reference to any statement by Gazprom or by any agent of Gazprom. (Compl. ¶¶ 86, 105, 138, 235.) Moreover, plaintiffs provide only the conclusory allegation that they "relied on the false and deceptive statements by Defendants." (Compl. ¶ 239.)

Plaintiffs' vague allegation that "Defendants fraudulently misrepresented" the Russian Federation's interest in Yukos does not satisfy Rule 9(b). (Compl. ¶ 235.) "'[C]onclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b).'" In re U.S. Office Prods. Sec. Litig., 326 F. Supp. 2d at 74 (quoting Shekoyan v. Sibley Int'l Corp., 217 F. Supp. 2d 59, 73 (D.D.C. 2002)). Further, use of the term "defendants" without reference to any specific defendant is insufficient. Lance v. United Mine Workers of Am. 1974 Pension Trust, 355 F. Supp. 2d 358, 363 (D.D.C. 2005), vacated on other grounds, 400

F. Supp. 2d 29 (D.D.C. 2005).  Plaintiffs' allegations of misrepresentations by "Defendants" "could presumably include . . . any, some, all or none" of the sixteen Defendants.  Id.

Because Count VI "fails to reference the time, place and specific content in which the [alleged] representation . . . was made," it is "plead with little, if any, particularity."  Id. Plaintiffs' failure to satisfy Rule 9(b) has deprived Gazprom of notice of the claims against it. United States ex rel. Fisher, 227 F.R.D. at 9 (stating the purpose of Rule 9(b) is to provide a defendant with notice of the claim and prevent filing of claims as a "'pretext for the discovery of unknown wrongs'") (quoting Kowal v. MCI Comm'ns Corp., 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)).  Thus, Count VI against Gazprom should be dismissed.

### 2.  Plaintiffs' claim for damages from the alleged fraud is too speculative

Plaintiffs' fraud claim, brought only by the supposed "ADR Holders," is based on the theory that if they had full knowledge of the Russian Federation's allegedly true intentions with respect to Yukos' assets, then they would have sold their shares in Yukos earlier.  In particular, plaintiffs claim that had the "intent to re-nationalize [a Yukos asset] without compensation" been revealed, they "would have liquidated their Yukos ADRs at a far greater price than the price of the ADRs upon disclosure of Defendants' fraud."  (Compl. ¶ 239.)  This claim fails because plaintiffs cannot show non-speculative damages arising from any alleged misrepresentations.

A proper claim for fraud requires that the alleged fraud causes damage.  Damages are "restricted in all cases to such damages as were the natural and proximate consequences, or the direct consequences, of the fraud, and to such damages as can be clearly defined and ascertained."  Naartex Consulting Corp. v. Watt, 722 F.2d 779, 793 (D.C. Cir. 1983) (citations omitted).  "[I]t is elementary that a 'speculative' damage will not support an action for common law fraud."  Id. at 793 n.22.

Plaintiffs seek damages that are too speculative to support their fraud claim. To recover damages for their fraud claim, this Court would need to guess (1) <u>when</u> plaintiffs would have sold their stock and (2) the <u>value</u> that the stock would have had at the time of such a sale absent the alleged fraudulent misrepresentations. Plaintiffs' fraud claim would also require this Court to assume that plaintiffs would have been the only stockholders to "liquidate[] their Yukos ADRS." (Compl. ¶ 239.) Accepting the allegations in the Complaint as true, it is more likely plaintiffs <u>would not</u> have been damaged because, under plaintiffs' theory, "had accurate information been disclosed, in lieu of the alleged misrepresentations, an entire class of shareholders would have dumped their stock and 'there would have been no market for the stock at the artificially high price.'" <u>In re Worldcom, Inc. Sec. Litig.</u>, 336 F. Supp. 2d 310, 320 (S.D.N.Y. 2004) (citation omitted).

Plaintiffs' alleged damages are simply too speculative. "[A] plaintiff cannot recover profits which might have been realized if he had not been deceived, unless there is evidence by which such profits can be estimated with reasonable certainty." <u>Chanoff v. United States Surgical Corp.</u>, 857 F. Supp. 1011, 1018 (D. Conn. 1994) (denying claim that plaintiffs were fraudulently induced to retain stock because damages were "too speculative to be actionable") (citation omitted). Here, plaintiffs have no means to establish what the sale price would have been absent the alleged fraud or when they would have sold their stock. Rather, plaintiffs seek speculative damages for theoretical losses, and this is improper. <u>See Williams v. CWI, Inc.</u>, 777 F. Supp. 1006, 1009 (D.D.C. 1991) (denying plaintiffs' claim for "tax savings they claim they might have enjoyed" absent the alleged fraud because "[i]t would be too speculative to assume post hoc what investments they might have chosen and what savings they might have received"); <u>see also Vietnam Veterans Found. v. Erdman</u>, Civ. A. No. 84-0940, 1987 WL 10143, at *9

(D.D.C. March 30, 1987) (stating "plaintiffs . . . cannot recover for theoretical losses representing what they could have made" because "[d]amages for future consequences that are speculative or conjectural are not recoverable"). Accordingly, Count VI of the Complaint should be dismissed.

### 3.    Plaintiffs' alleged reliance was unreasonable

It is well established that a plaintiff's alleged reliance must be "objectively reasonable" in order to assert a viable fraud claim. E.g., Burman v. Phoenix Worldwide Indus., Inc., 384 F. Supp. 2d 316, 329 (D.D.C. 2005) ("[D]ismissal for failure to state a claim is proper when no reasonable person would have relied on the representation.") (citation omitted); One-O-One Enters., Inc. v. Caruso, 848 F.2d 1283, 1286 (D.C. Cir. 1988) (affirming dismissal of fraud claim where plaintiff could not reasonably have relied on the alleged misrepresentation). Under the reasoning of plaintiffs' Complaint, any alleged "reliance" on plaintiffs' part was simply unreasonable. As demonstrated above in connection with plaintiffs' securities fraud claims, Gazprom is alleged to have been adverse to Yukos. Moreover, plaintiffs' alleged "reliance" on the allegedly soothing statements of the Russian Federation occurred exactly when Yukos, its officers, and its shareholders were the subject of a very public investigation, billions in tax assessments were being imposed against Yukos, key Yukos personnel were being arrested, and Yukos stock was declining in value. (E.g., Compl. ¶¶ 81-85, 89, 90, 99-100, 104, 107, 117, 137.) These events made clear that Yukos was in serious legal and financial jeopardy. Plaintiffs' alleged reliance in spite of these events was not reasonable. This is an additional, dispositive basis to dismiss plaintiffs' fraud claim. Therefore, Count VI should be dismissed.

43

## CONCLUSION

For the foregoing reasons, Gazprom respectfully requests that the Court promptly dismiss the Complaint in its entirety.

Dated: May 15, 2006

/s/ William M. Sullivan, Jr.
William M. Sullivan, Jr. (DC Bar No. 467269)
Karen Sugden Manley (DC Bar No. 495029)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

*Attorneys for OAO Gazprom*

OF COUNSEL

W. Gordon Dobie
Greg Vamos
Brooke B. Ward
Jennifer M. Erickson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

44

**CONFIDENTIAL DRAFT**
**ATTORNEY WORK PRODUCT**
**SUBJECT TO JOINT-DEFENSE AND COMMON INTEREST PRIVILEGE**

## CERTIFICATE OF SERVICE

The undersigned verifies that on May 15, 2006, he caused a true and correct copy of OAO Gazprom's Motion to Dismiss Plaintiffs' Complaint and Statement of Points and Authorities in Support of OAO Gazprom's Motion to Dismiss to be served upon:

> O. Thomas Johnson, Jr.
> Mark E. Feldman
> COVINGTON & BURLING
> 1201 Pennsylvania Avenue NW
> Washington DC  20004

via facsimile and U.S. Mail.                     _Karen S. Manley_