## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------- x
)
RICHARD ALLEN, *et al.*,                                           )
)
                           Plaintiffs,                      )
)
      v.                                                       )  Case No: 1:05-cv-02077-CKK
)   Hon. Colleen Kollar-Kotelly
RUSSIAN FEDERATION, *et al.*                                       )
)
                       Defendants                       )
)
)
------------------------------------------------------------------- x

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO DISMISS BY OAO ROSNEFTEGAZ, OAO ROSNEFT, AND SERGEY BOGDANCHIKOV

Richard W. Slack
(*pro hac vice*)
Gregory S. Coleman
(*pro hac vice*)
Meredith B. Parenti
Deborah A. Maher
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8004

Adam P. Strochak, Esq.
D.C. Bar No. 439308
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, D.C.  20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

TABLE OF CONTENTS

Table of Authorities ......................................................................................... iv

Preliminary Statement ....................................................................................... 1

Statement of Facts ............................................................................................. 4

Argument ........................................................................................................... 8

I.     Rosneftegaz Is Immune Under the Foreign Sovereign Immunities Act. ........................... 8

       A.     Rosneftegaz Is Immune as an Agency or Instrumentality of the State. ................. 8

       B.     None of the Exceptions to Sovereign Immunity Applies. .................................. 11

              1.     The Commercial-Activity Exception Does Not Apply ........................... 12

                     (a)     The acts that form the basis of this suit are sovereign rather than commercial in nature. ........................................................... 13

                     (b)     There is no direct effect in the United States. ............................... 15

              2.     The Expropriation Exception Does Not Apply ..................................... 17

              3.     The Noncommercial Torts Exception Does Not Apply .......................... 19

II.    Rosneftegaz, Rosneft, and Bogdanchikov Are Not Subject to the Court's Personal Jurisdiction. ................................................................................................. 19

       A.     The Court Lacks Statutory Authority to Assert Personal Jurisdiction Over This Dispute. ................................................................................ 20

       B.     Asserting Personal Jurisdiction Over Rosneftegaz, Rosneft, and Bogdanchikov Would Violate Due Process. ......................................................... 22

              1.     Plaintiffs Do Not Allege a *Prima Facie* Case of General Jurisdiction. ............................................................................ 22

              2.     Plaintiffs Also Fail to State a *Prima Facie* Case of Specific Jurisdiction. ............................................................................ 23

              3.     Exercising Personal Jurisdiction Would Offend Due Process Because It Would Unreasonably Burden Rosneftegaz, Rosneft, and Bogdanchikov, and Further No Interest of the District of Columbia. ........................................................................... 24

III.   The Act-of-State Doctrine Requires Dismissal of This Case. ......................................... 25

IV.    Plaintiffs Lack Standing to Bring the RICO, Conversion, and *Prima Facie* Tort Claims. .................................................................................................................. 27

V.    This Case Should Be Dismissed on Grounds of *Forum Non Conveniens* Because Russia Is an Adequate Alternative Forum and the Private and Public Interests Favor Dismissal. ............................................................................................................ 29

    A.    Russia Provides an Adequate Alternate Forum. .................................................. 31

    B.    The Private and Public Interests Weigh in Favor of Dismissal. .......................... 32

        1.    Private Interests........................................................................................ 32

            (a)    Access to Sources of Proof ........................................................ 33

            (b)    Convenience of the Parties........................................................ 34

        2.    The Minimal Interest of the Public in Retaining This Action in the District of Columbia Warrants Dismissal. ............................................... 34

            (a)    Burdening the Court.................................................................. 34

            (b)    Law of Another Jurisdiction ...................................................... 35

            (c)    Competing Interests of the Forum .............................................. 35

VI.    The Court Lacks Jurisdiction to Apply U.S. Federal Laws Extraterritorially. ................ 35

    A.    The United States Securities Laws Do Not Apply to Claims Where All Alleged Acts Occurred in a Foreign Country and Only Incidental Effects Are Felt in the United States................................................................................. 36

    B.    At a Minimum, the Federal Securities Laws Do Not Apply to the Claims of the Foreign Plaintiffs Where the Alleged Conduct Occurred Outside the United States. ....................................................................................................... 37

    C.    RICO Does Not Apply Where All Alleged Acts Occurred in a Foreign Country and Only Incidental Effects Are Felt in the United States..................... 38

VII.    Rosneftegaz, Rosneft, and Bogdanchikov Did Not Commit Securities Fraud. .............. 39

    A.    The Basic Elements of a § 10(b) Claim .............................................................. 40

    B.    The Complaint Alleges No False Statement by Rosneftegaz, Rosneft, or Bogdanchikov. .................................................................................................... 42

    C.    Plaintiffs Fail to Demonstrate Reasonable Reliance............................................ 43

    D.    Rosneftegaz, Rosneft, and Bogdanchikov Did Not Act with Scienter. .............. 45

E.   Rosneftegaz, Rosneft, and Bogdanchikov Owed No Duty to Plaintiffs. ............. 45

VIII.  Even If RICO Can Be Applied Extraterritorially, Plaintiffs' RICO Claim Against
Bogdanchikov Must Be Dismissed. ................................................................................... 46

A.   The RICO Claims Are Barred by the PSLRA. .................................................... 46

B.   The Predicate Acts Are Insufficiently Pleaded as a Matter of Law..................... 49

C.   Plaintiffs Have Not Alleged a Pattern of Racketeering Activity. ........................ 50

D.   Plaintiffs Have Alleged Neither an Association-in-Fact Enterprise Nor
Facts Capable of Showing That Bogdanchikov "Participated in the
Conduct of an Enterprise." ................................................................................... 52

IX.   The Common-Law Claims Should Be Dismissed. .......................................................... 53

A.   Russian Law Must Be Applied to Plaintiffs' Common-Law Claims. ................. 53

1.   Russia Has the Greater Governmental Interest in the Application of
Its Law. ..................................................................................................... 54

2.   Russia Has the Most Significant Relationship to This Dispute. .............. 55

B.   Plaintiffs' Common-Law Fraud and Deceit Claim Must Be Dismissed.............. 57

1.   Plaintiffs Do Not Allege Rosneftegaz, Rosneft, or Bogdanchikov
Made a False Statement. ........................................................................... 59

2.   Plaintiffs' Fraud Claim Must Be Dismissed Because They Fail to
Allege Reasonable Reliance. .................................................................... 59

3.   Plaintiffs' Claim for Damages for Fraud is Too Speculative to
Support Relief. .......................................................................................... 61

C.   Plaintiffs' Conversion Claim Should Be Dismissed. ........................................... 62

D.   Plaintiffs' Purported *Prima Facie* Tort Claim Should Be Dismissed. ................ 63

Conclusion ..................................................................................................................................... 64

Certificate of Service .................................................................................................................... 65

TABLE OF AUTHORITIES

CASES

Acree v. Iraq,
    370 F.3d 41 (D.C. Cir. 2004) ...................................................................................53

Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,
    176 F.3d 315 (6th Cir. 1999) ..................................................................................51

Antares Aircraft L.P. v. Nigeria,
    999 F.2d 33 (2d Cir. 1993)......................................................................................16

*Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992)...............................................................................9, 13, 14, 15

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989)...........................................................................................22, 36

Arriba Ltd. v. Petroleos Mexicanos,
    962 F.2d 528 (5th Cir. 1992) .............................................................................11, 15

Art Metal-U.S.A., Inc. v. United States,
    577 F.Supp. 182 (D.D.C. 1983) ..............................................................................63

Asahi Metal Indus. Co. v. Superior Court,
    480 U.S. 102 (1987)...........................................................................................24, 25

Austria v. Altmann,
    541 U.S. 677 (2004)...........................................................................................17, 25

*BCCI Holdings (Lux.), S.A. v. Mahfouz,
    828 F.Supp. 92 (D.D.C. 1993) ...................................................................... passim

Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.,
    189 F.3d 321 (3d Cir. 1999).....................................................................................46

Banco Nacional de Cuba v. Sabbatino,
    376 U.S. 398 (1964)..................................................................................................25

Bankers Trust Co. v. Rhoades,
    859 F.2d 1096 (2d Cir. 1988)...................................................................................34

Base Metal Trading Ltd. v. Russian Aluminum,
    98 F. App'x 47 (2d Cir. 2004) .................................................................................31

Basic Inc. v. Levinson,
    485 U.S. 224 (1988)................................................................62

Berman v. Metzger,
    No. 80-0394, 1981 WL 1596 (D.D.C. Feb. 9, 1981) ..................................43, 45

Bersch v. Drexel Firestone, Inc.,
    519 F.2d 974 (2d Cir. 1975)........................................................38

Blythe v. Deutsche Bank AG,
    399 F.Supp.2d 274 (S.D.N.Y. 2005)..................................................47

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)...............................................................20, 23

Byrd v. Corporacion Forestal y Industrial de Olancho S.A.,
    182 F.3d 380 (5th Cir. 1999) ......................................................13

Calvetti v. Antcliff,
    346 F.Supp.2d 92 (D.D.C. 2004) ...................................................59

Cent. Bank of Denver v. First Interstate Bank of Denver,
    511 U.S. 164 (1994)...............................................................4, 43

Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. Rosvoorouzhenie',
    172 F.Supp.2d 79 (2001) ..........................................................54

Chanoff v. U.S. Surgical Corp.,
    857 F.Supp. 1011 (D. Conn.), aff'd, 31 F.3d 66 (2d Cir. 1994) .......................58

Cicippio v. Iran,
    30 F.3d 164 (D.C. Cir. 1994) ......................................................19

Columbraria Ltd. v. Pimienta,
    110 F.Supp.2d 542 (S.D. Tex. 2000) ...............................................48

Cosmas v. Hassett,
    886 F.2d 8 (2d Cir. 1989) .........................................................50

*Croesus EMTR Master Fund L.P. v. Brazil,
    212 F.Supp.2d 30 (D.D.C. 2002)....................................................33, 34, 35

Dammarell v. Iran,
    370 F.Supp.2d 218 (D.D.C. 2005) ..................................................53

Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.,
    941 F.2d 1220 (D.C. Cir. 1991) ...........................................................49

*Dayton v. Czechoslovak Socialist Republic,
    834 F.2d 203 (D.C. Cir. 1987) .......................................................9, 10, 18

De Sanchez v. Banco Cent. de Nicar.,
    770 F.2d 1385 (5th Cir. 1985) .......................................................17, 18

DiLeo v. Ernst & Young,
    901 F.2d 624 (7th Cir. 1990) ...........................................................41

Dist. Telecomms. Dev. Corp. v. Dist. Cablevision, Inc.,
    638 F.Supp. 418 (D.D.C. 1985) .......................................................52

Doe I v. Israel,
    400 F.Supp.2d 86 (D.D.C. 2005) .....................................................39

Doe I v. Unocal Corp.,
    395 F.3d 932 (9th Cir. 2002) ...........................................................39

*Dole Food Co. v. Patrickson,
    538 U.S. 468 (2003)..............................................................9, 10, 22

Dunkwu v. Neville,
    575 A.2d 293 (D.C. 1990) ...............................................................55

EEOC v. Arabian Am. Oil Co.,
    499 U.S. 244 (1991)........................................................................35

EEOC v. St. Francis Xavier Parochial Sch.,
    117 F.3d 621 (D.C. Cir. 1997) ..........................................................4

Edmondson & Gallagher v. Alban Towers Tenants Ass'n,
    48 F. 3d 1260 (D.C. Cir. 1995) .........................................................51

El-Hadad v. United Arab Emirates,
    216 F.3d 29 (D.C. Cir. 2000) ...........................................................19

Ernst & Ernst v. Hochfelder,
    425 U.S. 185 (1976)........................................................................45

Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London,
    147 F.3d 118 (2d Cir. 1998)............................................................38

Fezzani v. Bear, Stearns & Co.,
    No. 99 CIV 0793, 2005 WL 500377 (S.D.N.Y. Mar. 2, 2005) ........................................46

First Nat'l City Bank v. Banco Nacional de Cuba,
    406 U.S. 759 (1972)...............................................................................................................25

Fla. Evergreen Foliage v. E.I. Du Pont de Nemours & Co.,
    165 F.Supp.2d 1345 (S.D. Fla. 2001), aff'd sub nom.,
    Green Leaf Nursery v. E.I. DuPont de Nemours & Co.,
    341 F.3d 1292 (11th Cir. 2003) ..........................................................................................47

Foley Bros., Inc. v. Filardo,
    336 U.S. 281 (1949)...............................................................................................................35

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
    528 U.S. 167 (2000)...............................................................................................................27

Gatz v. Ponsoldt,
    297 F.Supp.2d 719 (D. Del. 2003) .....................................................................................47

Greenpeace, Inc. (U.S.A.) v. France,
    946 F.Supp. 773 (C.D. Cal. 1996) .....................................................................................18

Gutman v. Howard Sav. Bank,
    748 F.Supp. 254 (D.N.J. 1990) ...........................................................................................58

Hammerman v. Peacock,
    607 F.Supp. 911 (D.D.C. 1985) ..........................................................................................41

Hanson v. Denckla,
    357 U.S. 235 (1958)...............................................................................................................23

Haven v. Rzeczpospolita Polska,
    68 F.Supp.2d 947 (N.D. Ill. 1999), aff'd, 215 F.3d 727 (7th Cir. 2000) ...........................14

Helicopteros Nacionales de Colom. v. Hall,
    466 U.S. 408 (1984)..........................................................................................................22, 23

Hemispherx Biopharma, Inc. v. Asensio,
    No. CIV A. 98-5204, 1999 WL 144109 (E.D. Pa. Mar. 15, 1999)....................................48

Herbage v. Meese,
    747 F.Supp. 60 (D.D.C. 1990), aff'd, 946 F.2d 1564 (D.C. Cir. 1991)............................11

*Hercules & Co. v. Shama Rest. Corp.,
    566 A.2d 31 (D.C. 1989) ..................................................................................................54, 55

Hilton v. Guyot,
        159 U.S. 113 (1895)...........................................................................26

Hirsh v. Israel,
        962 F.Supp. 377 (S.D.N.Y.), aff'd, 133 F.3d 907 (2d Cir. 1997).....................18

Hollinger Int'l, Inc. v. Hollinger Inc.,
        No. 04 C 0698, 2004 WL 2278545 (N.D. Ill. Oct. 8, 2004).......................46, 47

Howard v. Am. Online Inc.,
        208 F.3d 741 (9th Cir. 2000) ............................................................48

Howard v. SEC,
        376 F.3d 1136 (D.C. Cir. 2004) .........................................................45

Hutchings v. Manchester Life & Cas. Mgmt. Corp.,
        896 F.Supp. 946 (E.D. Mo. 1995)........................................................63

IMO Indus., Inc. v. Kiekert AG,
        155 F.3d 254 (3d Cir. 1998)..............................................................23

I. Meyer Pincus & Assocs. v. Oppenheimer & Co.,
        936 F.2d 759 (2d Cir. 1991)...............................................................4

*In re Baan Co. Sec. Litig.,
        103 F.Supp.2d 1 (D.D.C. 2000) ..............................................36, 27, 43

In re Copper Mountain Sec. Litig.,
        311 F.Supp.2d 857 (N.D. Cal. 2004) ....................................................4

In re Disaster at Riyadh Airport, Saudi Arabia on Aug. 19, 1980,
        540 F.Supp. 1141 (D.D.C. 1982)...............................................30, 31, 33

In re Enron Corp. Sec. Derivative & ERISA Litig.
        284 F.Supp.2d 511 (S.D. Tex. 2003) ...................................................48

In re Granite Partners L.P.,
        194 B.R. 318 (Bankr. S.D.N.Y. 1996).................................................29

In re Ikon Office Solutions, Inc.,
        86 F.Supp.2d 481 (E.D. Pa. 2000) .....................................................47

*In re Interbank Funding Corp. Sec. Litig.,
        329 F.Supp.2d 84 (D.D.C. 2004) .......................................................41

In re Newbridge Networks Sec. Litig.,
   926 F.Supp. 1163 (D.D.C. 1996) ............................................................42, 59

In re U.S. Office Prods. Sec. Litig.,
   326 F.Supp.2d 68 (D.D.C. 2004) .................................................40, 41, 42, 43

In re Vitamins Antitrust Litig.,
   94 F.Supp.2d 26 (D.C. Cir. 2000) .........................................................................22

In re Worldcom, Inc. Sec. Litig.,
   382 F.Supp.2d 549 (S.D.N.Y. 2005) .....................................................................58

In re Yukos Oil Co.,
   321 B.R. 396 (Bankr. S.D. Tex. 2005) ...........................................................8, 27

In re Yukos Oil Co. Sec. Litig.,
   No. 04 Civ. 5243, 2006 WL 800736 (S.D.N.Y. Mar. 30, 2006) .................26, 36

Indep. Order of Foresters v. Donaldson, Lufkin & Jenrette, Inc.,
   157 F.3d 933 (2d Cir. 1998) ..................................................................................44

Int'l Cargo Mgmt. Specialists, Inc. v. EG&G Dynatrend, Inc.,
   Civ. A. No. 91-1360, 1995 WL 170376 (D.D.C. Mar. 31, 1995) .....................59

Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement,
   326 U.S. 310 (1945) ........................................................................................19, 24

Integral Res. (PVT) Ltd. v. Istil Group, Inc.,
   No. 03-904, 2004 WL 2758672 (D. Del. Dec. 2, 2004),
   aff'd, 155 F. App'x 69 (3d Cir. 2005) ...............................................................58

Interbrew v. Edperbrascan,
   23 F.Supp.2d 425 (S.D.N.Y. 1998) .....................................................................37

Jackson v. Am. Univ.,
   52 F. App'x 518 (D.C. Cir. 2002) .......................................................................30

Jacoboni v. KPMG LLP,
   314 F.Supp.2d 1172 (M.D. Fla. 2004) ...............................................................46

Jin v. Ministry of State Sec.,
   254 F.Supp.2d 61 (D.D.C. 2003) ........................................................................53

Jungquist v. Sheikh Sultan Bin Khalifa Nahyan,
   115 F.3d 1020 (D.C. Cir. 1997) ...........................................................................21

Keeton v. Hustler Magazine, Inc.,
    465 U.S. 770 (1984)..................................................................................20, 23

Kowal v. MCI Commc'ns Corp.,
    16 F.3d 1271 (D.C. Cir. 1994) ...........................................................................41

Lakonia Mgmt. Ltd. v. Meriwether,
    106 F.Supp.2d 540 (S.D.N.Y . 2000)..................................................................29

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972).............................................................................25

Magnus Elecs., Inc. v. Royal Bank of Can.,
    620 F.Supp. 387 (N.D. Ill. 1985) .......................................................................14

Mayer v. Dell,
    Civ. A. No. 90-0472, 1991 WL 21567 (D.D.C. Feb. 13, 1991) .........................41

McLaughlin v. Anderson,
    962 F.2d 187 (2d Cir. 1992)...............................................................................50

Meng v. Schwartz,
    116 F.Supp.2d 92 (D.D.C. 2000),
    aff'd, 48 F. App'x 1 (D.C. Cir. 2002) .................................................................50

Millicom Int'l Cellular, S.A. v. Costa Rica,
    995 F.Supp. 14 (D.D.C. 1998) ...........................................................................18

*Mwani v. bin Laden,
    417 F.3d 1 (D.C. Cir. 2005) ....................................................................20, 21, 22

N.S. Fin. Corp. v. Al-Turki,
    100 F.3d 1046 (2d Cir. 1996)..............................................................................39

Naartex Consulting Corp. v. Watt,
    722 F.2d 779 (D.C. Cir. 1983) ...........................................................................61

Nalls v. Rolls-Royce Ltd.,
    702 F.2d 255 (D.C. Cir. 1983) ...............................................................32, 34, 35

Nix v. Hoke,
    139 F.Supp.2d 125 (D.D.C. 2001), aff'd, 753 F.2d 1151 (D.C. Cir. 1985)........63

Nordberg v. Lord, Day & Lord,
    107 F.R.D. 692 (S.D.N.Y. 1985) ........................................................................28

Oetjen v. Cent. Leather Co.,
      246 U.S. 297 (1918)...........................................................................26

Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.,
      369 F.3d 27 (2d Cir. 2004), cert. denied, 543 U.S. 1050 (2005) ......................43

*Pain v. United Techs. Corp.,
      637 F.2d 775 (D.C. Cir. 1980) ........................................................30, 31, 32, 34

Pavlov v. Bank of N.Y. Co.,
      135 F.Supp.2d 426 (S.D.N.Y. 2001)
      vacated on other grounds, 25 F. App'x 70 (2d Cir. 2002) ................................32

Peterson v. Saudi Arabia,
      416 F.3d 83 (D.C. Cir. 2005)...........................................................17

Philp v. Macri,
      261 F.2d 945 (9th Cir. 1958) ..........................................................57

Phoenix Consulting Inc. v. Angola,
      216 F.3d 36 (D.C. Cir. 2000) ..........................................................10

Piper Aircraft Co. v. Reyno,
      454 U.S. 235 (1981) ......................................................................31

*Price v. Socialist People's Libyan Arab Jamahiriya,
      294 F.3d 82 (D.C. Cir. 2002) ...........................................................23

Princz v. Germany,
      26 F.3d 1166 (D.C. Cir. 1994) .........................................................15

RA Invs. I, LLC v. Deutsche Bank AG,
      No. Civ. A. 3:04-CV-1565-G, 2005 WL 1356446 (N.D.Tex. June 6, 2005) ...................47

Rafferty v. NYNEX Corp.,
      60 F.3d 844 (D.C. Cir.. 1995) ..........................................................61

Reiffin v. Microsoft Corp.,
      104 F.Supp.2d 48 (D.D.C. 2000) ........................................................30

Reves v. Ernst & Young,
      507 U.S. 170 (1993)........................................................................53

Ricaud v. Am. Metal Co.,
      246 U.S. 304 (1918).......................................................................26

Richard v. Bell Atl. Corp.,
    946 F.Supp. 54 (D.D.C. 1996) ...................................................................21

Riggs Nat'l Corp. v. Comm'r of IRS,
    163 F.3d 1363 (D.C. Cir. 1999) .................................................................27

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004).......................................................................43

SEC v. Berger,
    322 F.3d 187 (2d Cir. 2003).......................................................................36

Saudi Arabia v. Nelson,
    507 U.S. 349 (1993)......................................................................10, 13, 14

Schmid Labs. Inc. v. Hartford Accident & Indem. Co.,
    654 F.Supp. 734 (D.D.C. 1986) .................................................................30

Schoenbaum v. Firstbrook,
    405 F.2d 200 (2d Cir. 1968).......................................................................38

Schwartz v. Franklin Nat'l Bank,
    718 A.2d 553 (D.C. 1998) ..........................................................................63

Sears v. Likens,
    912 F.2d 889 (7th Cir. 1990) .....................................................................29

Shulman v. Voyou, L.L.C.,
    251 F.Supp.2d 166 (D.D.C. 2003) .............................................................62

Small v. Fritz Cos.,
    65 P.3d 1255 (Cal. 2003) ...........................................................................60

Smith v. Waste Mgmt., Inc.,
    407 F.3d 381 (5th Cir. 2005) .....................................................................17

Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court,
    482 U.S. 522 (1987)...................................................................................25

Stephen A. Goldberg Co. v. Remsen Partners, Ltd.,
    170 F.3d 191 (D.C. Cir. 1999) ..................................................................54

Stephenson v. Deutsche Bank AG,
    282 F.Supp.2d 1032 (D. Minn. 2003)........................................................47

Tarasevich v. Eastwind Transport Ltd.,
    No. 02 Civ. 1806, 2003 WL 21692759 (S.D.N.Y. July 21, 2003) ...................32

Teague v. Bakker,
    35 F.3d 978 (4th Cir. 1994) ........................................................................51

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) .......................................................................17

Tramontana v. S.A. Empresa de Viacao Aerea Rio Grandense,
    350 F.2d 468 (D.C. Cir. 1965) .................................................................56

Tyrone Area Sch. Dist. v. Mid-State Bank & Trust,
    No. CIV 98-881, 1999 WL 703729 (W.D. Pa. Feb. 9, 1999),
    aff'd, 202 F.3d 255 (3d Cir. 1999) ...........................................................47

United States v. Crop Growers Corp.,
    954 F.Supp. 335 (D.D.C. 1997) ...............................................................46

United States v. Richardson,
    167 F.3d 621 (D.C. Cir. 1999) .................................................................52

United States v. Second Nat'l Bank,
    502 F.2d 535 (5th Cir. 1974) ...............................................................15, 27

United States v. Turkette,
    452 U.S. 576 (1981) .................................................................................52

United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n,
    33 F.3d 1232 (10th Cir. 1994) .................................................................16

Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.,
    878 A.2d 1226 (D.C. 2005) ..................................................................59, 60

Varnelo v. Eastwind Transport, Ltd.,
    No. 02 Civ. 2084, 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) .........................31

Vietnam Veterans Found. v. Erdman,
    Civ. A. No. 84-0940, 1987 WL 10143 (D.D.C. Mar. 30, 1987).......................62

Virtual Def. & Dev., Int'l, Inc. v. Moldova,
    133 F.Supp.2d 9 (D.D.C. 2001) .............................................................53, 54

Voest-Alpine Trading USA Corp. v. Bank of China,
    142 F.3d 887 (5th Cir. 1998) .....................................................................9

W.S. Kirkpatick & Co. v. Envt'l Tectonics Corp. Int'l,
    493 U.S. 400 (1990).................................................................................26

W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Market Square Assocs.,
    235 F.3d 629 (D.C. Cir. 2001) ........................................................................51

Wallace v. Abramson,
    Civ. A. No. 85-4039, 1988 WL 63065 (D.D.C. June 7, 1988) .........................49

Warren v. Mfrs. Nat'l Bank,
    759 F.2d 542 (6th Cir. 1985) ..........................................................................28

Weinberger v. Rossi,
    456 U.S. 25 (1982)...........................................................................................36

Whaley v. Auto Club Ins. Ass'n,
    891 F.Supp. 1237 (E.D. Mich. 1995)..............................................................51

Wigfall v. Wolpoff & Abramson, LLP,
    No. Civ. A. 05-591, 2005 WL 3213955 (D.D.C. Nov. 1, 2005) ......................55

*World Wide Minerals, Ltd. v. Kazakhstan,
    296 F.3d 1154 (D.C. Cir. 2002) ......................................................................26

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980).................................................................................23, 24

Yadlosky v. Grant Thorton, L.L.P.,
    120 F.Supp.2d 622 (E.D. Mich. 2000).............................................................47

*Zoelsch v. Arthur Andersen & Co.,
    824 F.2d 27 (D.C. Cir. 1987) ..........................................................................36

S<small>TATUTES</small>

17 C.F.R. § 240.10b-5......................................................................................................42

15 U.S.C. § 78j(b) .....................................................................................................40, 42

15 U.S.C. § 78u-4(b)(1) ...................................................................................................40

15 U.S.C. § 78u-4(b)(2) ...................................................................................................40

15 U.S.C. § 78u-4(c)(1) ...................................................................................................39

18 U.S.C. § 152................................................................................................................49

18 U.S.C. § 1343........................................................................................................49, 50

18 U.S.C. § 1961(4) .................................................................................52

18 U.S.C. § 1961(5) .................................................................................50

18 U.S.C. § 1962(b) .................................................................................53

18 U.S.C. § 1962(b)-(d) ...........................................................................50

18 U.S.C. § 1962(c) .................................................................................52

18 U.S.C. § 1964(c) .................................................................................46

18 U.S.C. § 2314 ......................................................................................49

28 U.S.C. 1330 .........................................................................................10

28 U.S.C. § 1603(a) ..................................................................................9

*28 U.S.C. § 1603(b) .................................................................................9

28 U.S.C. § 1603(b)(2) ...........................................................................8, 9

28 U.S.C. § 1603(d) .................................................................................12

28 U.S.C. § 1604 ......................................................................................9

28 U.S.C. 1605-1607 ...............................................................................10

28 U.S.C. § 1605(a)(2) .........................................................................12, 13

28 U.S.C. § 1605(a)(3) .............................................................................18

28 U.S.C. § 1605(a)(5) .............................................................................19

28 U.S.C. § 1608(b)(3)(B) ........................................................................10

D.C. CODE § 13-334 .................................................................................21

D.C. CODE § 13-422 .................................................................................21

D.C. CODE § 13-423 .................................................................................20

D.C. CODE § 13-423(a) .............................................................................20

D.C. CODE § 13-423(a)(4) .........................................................................21

Fed. R. Civ. P. 9(b) ...................................................................................................... 1, 49

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 1

Fed. R. Civ. P. 12(b)(2) ..................................................................................................... 1

Fed. R. Civ. P. 12(b)(5) ..................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 58

**Other Authorities**

Restatement (Second) of Conflict of Laws § 6 (1971) ......................................... 55

Restatement (Second) of Conflict of Laws § 145 (1971 & Supp. 1988) ............................ 57

Restatement (Third) of Foreign Relations Law of the United States § 712 (1986) ................................................................................................................ 17

Defendants OAO Rosneftegaz, OAO Rosneft Oil Company, and Sergey Bogdanchikov respectfully move to dismiss the complaint filed by certain holders of American Depository Receipts ("ADRs") of Yukos Oil Company pursuant to the Foreign Sovereign Immunities Act ("FSIA"), Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), 12(b)(6), 9(b), the Private Securities Litigation Reform Act ("PSLRA"), the Racketeering Influenced and Corrupt Organization Act ("RICO"), and the doctrine of *forum non conveniens*.

## PRELIMINARY STATEMENT

This action is a gross example of forum shopping by plaintiffs. In filing this action, plaintiffs have attempted to secure a United States forum in the hopes of obtaining United States style discovery in an action that is unequivocally Russian-centric. The defendants in this action are all Russian companies and individuals, the alleged wrongful acts admittedly all took place entirely in Russia, and the company against which plaintiffs contend defendants took these wrongful actions, Yukos, is itself a Russian oil and gas company.

It is particularly evident that this Court is not the proper forum when one looks at the claims against Rosneftegaz, Rosneft, and Bogdanchikov. Rosneftegaz and Rosneft are both Russian companies with no operations of any kind in the United States. Neither Rosneftegaz nor Rosneft is alleged to have conducted any business whatsoever in the United States nor to have made any statement or representation concerning Yukos (or anything else). Bogdanchikov, Rosneft's President and a Russian citizen, is not alleged to have performed any act within the United States. In fact, there is not a single factual allegation anywhere in the complaint specifically directed towards Bogdanchikov, and the only time Bogdanchikov is mentioned by plaintiffs is in the list of defendants. Compl. ¶ 42. Yet, plaintiffs have attempted to hale Rosneftegaz, Rosneft, and Bogdanchikov into a United States court and hold them answerable to United States legal standards without any basis for doing so.

The tortured claims brought by these ADR holders in order to shoehorn themselves into a United States court not surprisingly suffer from fundamental (and fatal) flaws. The gravamen of the plaintiffs' complaint is that the Russian Federation engaged in a series of acts designed to renationalize the assets of Yukos, including levying unfair taxes upon Yukos, enforcing tax liens by foreclosing on and selling Yukos property in an auction to pay its tax obligation, and improperly charging and convicting Yukos's former chief executive officer and other high-level officers with crimes under Russian law. The complaint also contends that Russian Federation President Vladimir Putin made a number of statements in his sovereign capacity that led plaintiffs to believe that the Russian Federation would not renationalize the assets of Yukos. Plaintiffs do not allege that Rosneftegaz, Rosneft, or Bogdanchikov had any specific role in these sovereign acts. Plaintiffs bring claims for federal securities fraud, conversion, *prima facie* tort, and fraud against Rosneftegaz, Rosneft, and Bogdanchikov. Plaintiffs have also brought claims under the Racketeered Influenced and Corrupt Organizations Act ("RICO") against Bogdanchikov (and other defendants), but not Rosneftegaz and Rosneft.

First, the complaint alleges that Rosneftegaz is 100-percent owned by the Russian Federation and it is therefore immune from suit as a sovereign under the FSIA. See Part I *infra*.

Second, the Court does not have personal jurisdiction over Rosneft or Bogdanchikov. The Court has no jurisdiction over Rosneft and Rosneftegaz, which are Russian companies, because they (i) conduct no operations in the United States, (ii) have no relationship of any kind with the ADR holders of Yukos (which is a competing Russian energy company), and (iii) are not alleged to have directed any conduct to the United States. Likewise, this Court does not have personal jurisdiction over Bogdanchikov because he (i) has no contacts to the United States,

(ii) no relationship of any kind with the ADR holders of Yukos, and (iii) is not alleged to have directed any conduct toward the United States.    See Part II infra.

Third, the complaint unabashedly seeks to have this Court scrutinize the sovereign acts of the Russian government in levying taxes against Yukos and enforcing its tax laws, conducting an auction of Yukos's assets to satisfy Yukos's tax debt, and enforcing its criminal laws.    Under the act-of-state doctrine courts are not permitted to scrutinize the acts of a foreign sovereign. Thus, the Court in analyzing the complaint must view as valid and proper each of the alleged acts.    Because these sovereign acts are precisely the acts challenged in the complaint, it must be dismissed.    See Part III infra.

Fourth, the injury allegedly claimed by plaintiffs in their RICO, conversion, and prima facie tort claims is at best a direct injury to Yukos, not the ADR holders.    The ADR holders thus lack standing to bring these claims.    The theory of the complaint is that the Russian Federation and the other defendants conspired to renationalize the property of Yukos, and as a result the ADR holders allegedly suffered only an indirect diminution in the value of their ADRs. See Part IV infra.

Fifth, the action should be dismissed under the doctrine of forum non conveniens because all of the defendants are Russian, all of the challenged acts were committed in Russia, and Russian law applies to the common-law claims asserted herein.    See Part V infra.

Sixth, Congress did not intend for federal securities laws or RICO to apply extraterritorially.    The Court has no subject-matter jurisdiction over these claims because the conduct alleged by plaintiffs undisputedly occurred entirely outside the United States and was not directed in any way at the United States.    See Part VI infra.

Seventh, the federal securities law claim against Rosneftegaz, Rosneft, and Bogdanchikov is so fundamentally flawed that it strains any concept of good faith pleading. Rosneftegaz, Rosneft, and Bogdanchikov are simply not alleged anywhere in the complaint to have made any statement whatsoever—and needless to say no statement that was knowingly false or misleading. The only statements alleged to be false and misleading were made by President Putin. Compl. ¶ 105. The securities laws do not allow Rosneftegaz, Rosneft, and Bogdanchikov to be charged with secondary liability after Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164 (1994). See Part VII infra.

Eighth, the RICO claims (Counts II-IV) against Bogdanchikov must be dismissed because (i) the PSLRA bars these claims, (ii) no pattern of racketeering activity is alleged, (iii) Bogdanchikov is not alleged to have any interest or control over Yukos, and (iv) Bogdanchikov is not alleged to have participated in the conduct of the enterprise. See Part VIII infra.

Ninth, plaintiffs have failed to plead the common-law claims under applicable Russian law thus requiring dismissal. Even if, arguendo, the Court reviewed the common-law claims under the laws of the forum state, they do not state a claim. See Part IX infra.

## STATEMENT OF FACTS

This Statement of Facts is based on the allegations in the complaint, documents incorporated by reference in the complaint, and facts subject to judicial notice.[1]  See EEOC v.

---

[1] In addition to the facts alleged in the complaint, we have submitted with this motion the following documents attached to the Declaration of Richard W. Slack and that this Court can consider in deciding the motion to dismiss: (1) the complete remarks of President Putin (as opposed to the excerpts) from a speech given by him on October 27, 2003, see I. Meyer Pincus & Assocs. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991) ("'[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.'"); and (2) excerpts from Yukos's 2000, 2001, and 2002 annual report.  See In re Copper Mountain Sec. Litig., 311 F.Supp.2d 857, 864 (N.D. Cal. 2004) (taking judicial notice of press releases and transcripts of

St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice"). While the complaint is 64 pages and 250 paragraphs long, only *14* of these paragraphs even mention Rosneftegaz and Rosneft. Compl. ¶¶ 34-35, 70, 73, 77-79, 102, 162, 165, 167-70. Only *one* paragraph mentions Bogdanchikov. Compl. ¶ 42.

## **The Parties**

The twelve plaintiffs in this actions claim to own, or have previously owned, ADRs in Yukos, a Russian oil and gas company. Compl. ¶¶ 9-29, 46, 68. The two plaintiffs that account for approximately two-thirds of the total ADRs held by plaintiffs are citizens of the Netherlands and the Cayman Islands. Compl. ¶¶ 24-25. The remaining plaintiffs are American and reside in various states; none resides in the District of Columbia. Compl. ¶¶ 8-10, 12, 14, 15, 17, 19, 20, 22. Collectively, the plaintiffs claim to have paid approximately $3 million to purchase their Yukos ADRs. Compl. ¶¶ 8-29.

Rosneft is a Russian oil and gas company that is indirectly owned by the Russian Federation. Compl. ¶ 34. Rosneft is a wholly owned subsidiary of Rosneftegaz. Compl. ¶ 35. Rosneftegaz is, in turn, wholly owned by the Russian Federation. Compl. ¶ 35. In June 2005, Rosneftegaz entered into a $7.1 billion agreement to purchase 10.7 percent of Gazprom. Compl. ¶ 73. Bogdanchikov is the President of Rosneft. Compl. ¶ 42. Rosneftegaz, Rosneft, and Bogdanchikov are not alleged to have any offices, employees, property, bank accounts, or other business activities within the United States.

---

conference calls because "the court may take judicial notice of information that was publicly available to reasonable investors at the time the defendant made the allegedly false statements").

**The Russian Federation's Sovereign Acts with Respect to Yukos**

Yukos was privatized in the mid-1990s, after the collapse of the Soviet Union, because the Russian Federation wanted to restructure the nation's oil and gas industry.   Compl. ¶¶ 56-58.   Yukos became the first fully privatized oil and gas company under the leadership of Mikhail Khodorkovsky and Group Menatep.   Compl. ¶¶ 58-59.   In 2003, the Russian Federation began investigating certain criminal wrongdoing by Khodorkovsky and members of Group Menatep as it related to Yukos.   The Russian Federation thereafter made a number of arrests as a result of its investigation.   Compl. ¶¶ 81-83, 90-96, 100, 105.   On June 21, 2003, Yukos's security manager, Alexei Pichugin, was arrested on charges of murder.   Compl. ¶ 81.   On July 2, 2003, the chairman of Group Menatep, Platon Lebedev, was arrested on charges of tax evasion and fraud.   Compl. ¶ 82.   On October 25, 2003, Khodorkovsky, the chief executive officer of Yukos, was arrested for tax evasion, theft of state property, and fraud.   Compl. ¶¶ 83-84.   All were tried, convicted, and sentenced to prison.   Compl. ¶¶ 90, 95.   A few days after Khodorkovsky's arrest, the Russian Federation seized shares of common stock of Yukos held by Yukos Universal Limited and Hulley Enterprises Limited (each a foreign corporation), amounting to approximately 51 percent of the equity of Yukos.   Compl. ¶¶ 104.   The Russian Federation is not alleged to have seized any of the ADRs held by plaintiffs (or any of the shares underlying these ADRs).

At the same time the Russian Federation was criminally prosecuting various Yukos officers, the Russian Federation's Ministry of Taxes and Levies launched an investigation into whether Yukos had complied with Russia's tax laws.   Compl. ¶ 89.   An audit revealed that Yukos had engaged in the largest tax evasion in Russian history—by defrauding the government and its citizens in 2000-2002 of more than $10 billion.   Compl. ¶¶ 126, 132, 134.   Yukos

challenged the tax demands in the Russian courts, but was unsuccessful.  Compl. ¶ 127.  The Russian courts confirmed the tax obligation of Yukos.  <u>Id.</u>

During the Russian Federation's investigation into Yukos's criminal wrongdoing and tax liability, Russian Federation President Putin gave a speech on October 27, 2003 at a meeting with members of the Russian government in Russia and stated in relevant part that:

> At the same time, I do understand the business community's concern because any action taken by the federal authorities often gets turned into some kind of campaign.  I must make it clear that the Yukos case should in no way be seen as setting a precedent or giving rise to analogies and generalizations regarding the results of previous privatizations, and I would ask therefore that all speculation and hysteria on this issue come to an end and that the government not get drawn into this debate.

Compl. ¶¶ 85-87; Ex. A (speech by Russian Federation President Vladimir Putin, October 27, 2003).  This speech was thereafter reported in the press.  Eight months later, on June 17, 2004, during Yukos's tax appeal to the Russian courts, President Putin stated that (i) the Russian Federation was "not interested in the bankruptcy of such a company as Yukos," (ii) Yukos's tax liability was being addressed by the courts, and (iii) the Russian Federation "will *try to* act so as not to destroy this company."  Compl. ¶ 138 (emphasis added).  Rosneftegaz, Rosneft, and Bogdanchikov are not alleged to have had any role in these public statements.

**<u>Yukos's Attempts to Avail Itself of a U.S. Bankruptcy Court</u>**

In order to pay Yukos's large tax obligation, in late 2004 the Russian Federation announced that it would auction the shares held by Yukos in one of its operating subsidiaries, Yuganskneftegaz ("YNG").  In an effort to thwart the auction by the government, Yukos filed for bankruptcy protection in the United States District Court for the Southern District of Texas five days before the auction was scheduled to take place.  The bankruptcy court issued a temporary injunction against certain persons participating in the auction, but that injunction did

not and could not bind the Russian government from proceeding with the auction.   Compl. ¶¶ 157-59;  see  also  In  re  Yukos  Oil  Co., 321  B.R.  396, 403 (Bankr.  S.D.  Tex.  2005). Unfortunately, it may well be that Yukos's bankruptcy filing and the injunctive relief it sought might have hurt, rather than helped, Yukos because it may have discouraged certain bidders from bidding  or  participating  in  the  auction.   Only  two  companies  appeared  at  the  auction— Gazpromneft and Baikalfinansgroup ("BFG").   Compl. ¶¶ 158, 160.   BFG acquired YNG for $9.3 billion at the auction.   Compl. ¶ 159.   BFG was later purchased by Rosneft.[2]

On February 24, 2005, the bankruptcy court dismissed Yukos's voluntary bankruptcy petition.   Among the factors that the bankruptcy court noted in its ruling were that:   (i) because "most of Yukos' assets are oil and gas within Russia, its ability to effectuate a reorganization without the cooperation of the Russian government is extremely limited," (ii) "Yukos seeks to substitute  United  States  law  in  place  of  Russian  law,  European  Convention  law,  and/or international law," and (iii) "[Yukos's] impact on the entirety of the Russian economy, weighs heavily  in  favor  of  allowing  resolution  in  a  forum  in  which  participation  of  the  Russian government is assured."   Yukos Oil Co., 321 B.R. at 411.

## ARGUMENT

## I.   ROSNEFTEGAZ IS IMMUNE UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

### A.   Rosneftegaz Is Immune as an Agency or Instrumentality of the State.

Based on the plain allegations in the complaint, Rosneftegaz has sovereign immunity under the FSIA.   The complaint alleges that Rosneftegaz is wholly owned by the Russian Federation.   Compl. ¶ 35.   Rosneftegaz is therefore immune from suit under 28 U.S.C.

---

[2]  Interestingly, the first time Rosneft is alleged to have had any involvement in the acts described in the complaint was *after* the auction had been completed and *after* all statements had been made by President Putin.   Compl. ¶ 162.

1603(b)(2) of the FSIA and the Supreme Court's decision in <u>Dole Food Co.</u> v. <u>Patrickson</u>, 538 U.S. 468, 474 (2003).    <u>See</u> 28 U.S.C. § 1603(b)(2).

The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state."    <u>Argentina</u> v. <u>Weltover, Inc.</u>, 504 U.S. 607, 618-19 (1992).    Thus, the FSIA "sets forth the sole and exclusive standards to be used to resolve all sovereign immunity issues raised in federal and state courts." <u>Voest-Alpine Trading USA Corp.</u> v. <u>Bank of China</u>, 142 F.3d 887, 891 (5th Cir. 1998) (citation omitted).

The FSIA provides that foreign states and their agencies or instrumentalities are immune from suit in the United States unless one of the specific exceptions enumerated in the act applies. <u>See</u> <u>Dayton</u> v. <u>Czechoslovak Socialist Republic</u>, 834 F.2d 203, 205 (D.C. Cir. 1987); 28 U.S.C. §§ 1603(a), (b), 1604.    The FSIA defines an "agency or instrumentality of a foreign state" to include "any entity --

    (1)    which is a separate legal person, corporate or otherwise, and

    (2)    which is an organ of a foreign state or political subdivision thereof, or *a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof*, and

    (3)    which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country."

28 U.S.C. § 1603(b) (emphasis added).

There is no dispute in this case that Rosneftegaz satisfies subsections (b)(1) and (b)(3), and plaintiffs' complaint alleges that the Russian Federation wholly owns Rosneftegaz, Compl. ¶ 35.    The Supreme Court in <u>Dole Food</u> held that, for purposes of the ownership prong of

§ 1603(b)(2), the foreign state itself must own a majority of the corporation's shares.   538 U.S.

at 474.   Thus, it qualifies as an agency or instrumentality of the Russian Federation.

Plaintiffs not only allege that Rosneftegaz is wholly owned by the Russian Federation,

but also concede for purposes of this motion that Rosneftegaz is a foreign state or instrumentality

for purposes of jurisdiction and venue.   Compl. ¶¶ 54-55 (citing 28 U.S.C. §§ 1330, 1391(f)(4),

which provide, respectively, for jurisdiction against a "foreign state" and for venue in suit against

a "foreign state or political subdivision thereof").   In addition, plaintiffs have conceded for

purposes of this motion that Rosneftegaz is an agency or instrumentality of the Russian

Federation by attempting to serve Rosneftegaz under a provision for service on an agency or

instrumentality of a foreign state.   See 28 U.S.C. § 1608(b)(3)(B); Docket No. 7, Letter from O.

Thomas Johnson, Jr. to Nancy Mayer-Whittington, Clerk of Court, Nov. 16, 2005.   Thus,

Rosneftegaz is entitled to immunity from suit unless plaintiffs' allegations show that one of the

statutory exceptions to the FSIA applies.   See Dayton, 834 F.2d at 205.   Plaintiffs have not

alleged that any of the FSIA's exceptions apply,[3] and even if they had, as a matter of law, no

exceptions to the FSIA apply to create jurisdiction over Rosneftegaz.   Because Rosneftegaz

solely challenges the legal sufficiency of the plaintiffs' jurisdictional allegations, the Court

should take the plaintiffs' factual allegations as true and determine whether Rosneftegaz is

immune from suit.[4]   See Phoenix Consulting Inc. v. Angola, 216 F.3d 36, 40 (D.C. Cir. 2000)

(citing Saudi Arabia v. Nelson, 507 U.S. 349, 351, 361 (1993)).

---

[3]  Plaintiffs merely allege that the Court has jurisdiction under 28 U.S.C. § 1330, and that defendants including Rosneftegaz are not "entitled to immunity under 28 U.S.C. §§ 1605-07."   Compl. ¶ 54.

[4]  Rosneftegaz reserves the right to challenge the facts alleged in the complaint at a later time if necessary, and accepts them as true solely for purposes of this motion.

**B.    None of the Exceptions to Sovereign Immunity Applies.**

The complaint does not allege that Rosneftegaz engaged in any conduct whatsoever, and certainly not any conduct that had a direct effect in the United States.   The sole allegations about Rosneftegaz in the complaint are: (i) that it is a Russian company wholly owned by the Russian Federation and that it owns 100% of Rosneft stock, Compl. ¶ 35; (ii) that it is a holding company that "entered into a $7.1 billion agreement to purchase a 10.7 percent stake in Gazprom"—a transaction that is not challenged in this lawsuit, Compl. ¶ 73; and (iii) that Rosneftegaz's purchase of its 10.7 percent stake in Gazprom was financed by a "syndicate of Western Banks."   Compl. ¶ 170.   There is no allegation that Rosneftegaz made any public statements concerning Yukos (or anything else), or that Rosneftegaz had any dealings with Yukos (and certainly not with any of the Yukos ADR holders who are bringing this lawsuit). Thus, based on the allegations in the complaint, there are no facts alleged that establish that Rosneftegaz did anything—and therefore it could not have committed any wrongful act with a direct effect in the United States.

The complaint does allege in conclusory fashion that defendants executed a scheme to renationalize the assets of Yukos.   See Compl. ¶ 80.   Of course, there are no facts alleged that set forth any conduct by Rosneftegaz and these conclusory allegations are insufficient to establish a conspiracy.   See Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 534, 537 (5th Cir. 1992) (rejecting plaintiff's generalized conspiratorial allegations of attribution); see also Herbage v. Meese, 747 F.Supp. 60, 65 (D.D.C. 1990) (dismissing on FSIA grounds and noting that "[a] plaintiff's bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion to dismiss") (citation omitted), aff'd, 946 F.2d 1564 (D.C. Cir. 1991).   Even if, *arguendo*, the Court were to treat all of the actions alleged in the complaint against others as being attributable to Rosneftegaz (which there is no basis for

11

doing), the above actions make it clear that any conduct occurred in Russia to a Russian company—Yukos—and was sovereign in nature.  The alleged goal of the challenged conduct was "ultimately [to] re-nationalize Yukos, without compensation . . . by confiscating its assets and redistributing them to state-controlled entities and by appropriating for the Russian Federation all of the economic benefits of ownership of Yukos."  Compl. ¶ 80.  As discussed below, the renationalization of the assets of a company is an inherently sovereign—not commercial—act and a complaint alleging renationalization as the basis of its claims does not provide an exception to sovereign immunity.

### 1.    The Commercial-Activity Exception Does Not Apply.

"A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  Although the FSIA does not define "commercial," the Supreme Court has explained that a state engages in commercial activity "where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns," and thus, "a foreign state engages in commercial activity . . . only where it acts in the manner of a private player within the market." Nelson, 507 U.S. at 360 (internal quotations omitted).

Section 1605(a)(2) identifies three types of actions that satisfy the commercial-activity exception:

> (1)    a commercial activity carried on in the United States;
>
> (2)    an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or
>
> (3)    a commercial activity carried on of the foreign state elsewhere and that act causes direct effect in the United States.

28 U.S.C. § 1605(a)(2).   Because it is undisputed that the allegations in this case involve only activities carried on outside the United States, only the third clause of § 1605(a)(2) could potentially be applicable to plaintiffs' suit.   The Supreme Court considered this clause in Weltover, and framed the proper inquiry as whether the lawsuit is "(1) 'based . . . upon an act outside the territory of the United States'; (2) that was taken 'in connection with a commercial activity' of [the foreign state] outside this country; and (3) that 'cause[d] a direct effect in the United States.'"   504 U.S. at 611.   The operative questions in this case are whether the acts are commercial in character and caused a direct effect in the United States.

**(a)     The acts that form the basis of this suit are sovereign rather than commercial in nature.**

In determining whether an activity is commercial in nature, "[t]he issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'"   Id. at 614 (emphasis in original).   The Supreme Court has held that the commercial activity at issue must form the basis of the lawsuit against the foreign state.   Nelson, 507 U.S. at 356 (stating that action "must be 'based upon' some 'commercial activity' . . . that had 'substantial contact' with the United States within the meaning of the Act").   A court must look to "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case."   Id. at 357. Moreover, the connection between the plaintiffs' cause of action and the commercial acts of the foreign sovereign must be material.   Byrd v. Corporacion Forestal y Industrial de Olancho S.A., 182 F.3d 380, 389-90 (5th Cir. 1999).

The plaintiffs have alleged causes of action against Rosneftegaz, but the complaint does not contain *any* allegations that Rosneftegaz committed *any* wrongful act.   The sole facts concerning Rosneftegaz alleged in the complaint are that it holds 100 percent of Rosneft's stock;

13

and that Rosneftegaz entered into a $7.1 billion purchase of 10.7 percent of Gazprom's stock financed by a syndicate of western banks—a transaction that has nothing to do with the alleged wrongful conduct in the complaint.    Compl. ¶¶ 35, 73, 170.

But even the conduct of the other defendants (if somehow imputed to Rosneftegaz) does not constitute commercial activity causing a direct effect in the United States.    The gravamen of all of these causes of action is the Russian Federation's allegedly improper renationalization of Yukos's assets using its sovereign power to enforce its tax laws and to collect unpaid taxes by holding an auction of Yukos's subsidiary.    These are hardly "the *type* of actions by which a private party engages in 'trade and traffic or commerce.'"    Weltover, 504 U.S. at 614 (emphasis in original).    As the Court explained in Nelson, conduct that amounts to a foreign country's abuse of the police power is "peculiarly sovereign in nature."    507 U.S. at 361.    The allegations that the Russian Federation effected a renationalization of the assets of Yukos, in effect, amount to an alleged "denial of justice" or, more specifically, a government taking of private property rights.    That is not the type of activity in which private parties can engage. Instead, as plaintiffs' own allegations make clear, the activities alleged involve inherently sovereign activities that fail to satisfy the FSIA's commercial-activity exception.    See Haven v. Rzeczpospolita Polska, 68 F.Supp.2d 947, 954 (N.D. Ill. 1999), aff'd, 215 F.3d 727 (7th Cir. 2000) (holding that expropriation of real property by Poland during and shortly after World War II did not qualify as commercial activity, noting that it is "obvious that governmental expropriation of private property under governmental authority—whether legitimate or illegitimate—the classic type of [sovereign activity]"); Magnus Elecs., Inc. v. Royal Bank of Can., 620 F.Supp. 387, 390 (N.D. Ill. 1985) (observing that governmental expropriation of

private property is the paradigmatic instance of sovereign activity and cannot be defined as commercial activity).

In addition, the acts alleged involve the Russian government's sovereign authority to levy and collect taxes from its own citizens and corporations, and it "has long been recognized that liens to guarantee payment of taxes are an important element of the sovereign's taxing power." United States v. Second Nat'l Bank, 502 F.2d 535, 545 (5th Cir. 1974). The exercise of the Russian government's sovereign taxing power does not constitute commercial activity.

<strong>(b)   There is no direct effect in the United States.</strong>

Under the commercial-activity exception, "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity.'" Weltover, 504 U.S. at 618 (citation omitted). The effect cannot be direct if "there are too many intervening elements between the asserted cause and effect." Princz v. Germany, 26 F.3d 1166, 1172 (D.C. Cir. 1994).

Plaintiffs allege that the Russian Federation renationalized certain assets of Yukos, and this resulted in a loss to Yukos and ultimately caused the Yukos ADRs to suffer a loss in value. Compl. ¶¶ 6, 179. Any effects in the United States caused by the Russian government's alleged takeover of a Russian company's assets in Russia through taxing authority exercised in Russia are far too attenuated to constitute a direct effect in the United States. First, to show that the commercial-activity exception applies to Rosneftegaz, plaintiffs would have to isolate the direct effect that Rosneftegaz's actions, in particular, had in the United States. See Weltover, 504 U.S. at 618 (direct effect must follow "as an immediate consequence of the defendant's . . . activity"); Arriba, 962 F.2d at 534, 537 (no jurisdiction under commercial-activity exception where plaintiff failed to allege a single activity by defendant "in or directly affecting the United States"). Plaintiffs make no specific allegations as to Rosneftegaz's involvement in the alleged expropriation of Yukos. "The requirement that an effect be 'direct' indicates that Congress did

15

not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States." United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n, 33 F.3d 1232, 1238 (10th Cir. 1994).

None of the allegations in the complaint amounts to a direct effect. "[T]he fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the [commercial-activity exception]." Antares Aircraft L.P. v. Nigeria, 999 F.2d 33, 36 (2d Cir. 1993). As the Second Circuit explained in Antares, mere financial loss in the United States cannot constitute a direct effect because such an amorphous standard would eviscerate the protections of the FSIA:

> [i]f a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states. Many commercial disputes, like the present one, can be pled as the torts of conversion or fraud and would, if appellant is correct, result in litigation concerning events with no connection with the United States other than the citizenship or place of incorporation of the plaintiff.

Id.

To interpret § 1605(a)(2) to mean that any financial loss in the United States constitutes a direct effect "would give the district courts jurisdiction over virtually any suit arising out of an overseas transaction in which an American citizen claims to have suffered a loss from the acts of a foreign state." United World Trade, 33 F.3d at 1239. Yet the statute's language limiting jurisdiction to cases in which there is a "*direct* effect" in the United States makes it clear this was not Congress's intent. Id. (emphasis in original).

Moreover, United States courts have long recognized that the type of harm alleged by plaintiffs—harm to Yukos that in turn caused a diminution of value of the ADRs—is indirect, rather than direct, in nature because it is not independent of any alleged harm to Yukos. See

Smith v. Waste Mgmt., Inc., 407 F.3d 381, 384 (5th Cir. 2005) (quoting Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004)) ("The stockholder's claimed direct injury must be independent of any alleged injury to the corporation.  The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.").   See also Part IV.A infra.

Nor do plaintiffs' federal securities fraud and common-law fraud and deceit claims allege a direct effect in the United States because, among other things, plaintiffs have failed to allege any statements by Rosneftegaz.

### 2.        The Expropriation Exception Does Not Apply.

While plaintiffs do not even allege that the expropriation exception to the FSIA applies, it is clear that this exception does not apply to plaintiffs' claims against Rosneftegaz.

A claim under the expropriation exception to the FSIA must meet three requirements: "At issue must be (1) 'rights in property' that (2) were taken in violation of international law and (3) the property at issue (or any property exchanged for it) must either (a) be present in the United States 'in connection with a commercial activity carried on in the United States by the foreign state' or (b) 'owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality' engages in commercial activity in the United States."   Peterson v. Saudi Arabia, 416 F.3d 83, 86-87 (D.C. Cir. 2005) (citing 28 U.S.C. § 1605(a)(3)).   The expropriation exception to the FSIA does not apply to plaintiffs' claims most fundamentally because it is not a violation of "international law" for a country to expropriate the property of its own nationals.   See Austria v. Altmann, 541 U.S. 677, 713 (2004) (Breyer, J., concurring) (noting the consensus view among the lower federal courts); De Sanchez v. Banco Cent. de Nicar., 770 F.2d 1385, 1395-98 (5th Cir. 1985); RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 712 (1986).   Remarkably, plaintiffs do not allege that the

conduct by Rosneftegaz violated international law and do not reference any particular statute or treaty they contend has been violated.   Therefore, as a matter of law, the expropriations alleged in this case could not violate international law because the alleged victim was Yukos, a citizen of Russia at the time of the alleged taking.[5]

Additionally, a taking of property "in violation of international law" cannot be established unless a claimant has first pursued and then exhausted the domestic remedies in the foreign state alleged to have caused the injury.   See Millicom Int'l Cellular, S.A. v. Costa Rica, 995 F.Supp. 14, 23 (D.D.C. 1998); Greenpeace, Inc. (U.S.A.) v. France, 946 F.Supp. 773, 783 (C.D. Cal. 1996).   Plaintiffs have not alleged that they made any attempt to pursue or exhaust their claims against defendants in the Russian Federation.

Even assuming plaintiffs could show a taking in violation of international law, they have not even alleged as the exception requires, that the expropriated property is present in the United States in connection with a commercial activity or that Rosneftegaz is engaged in a commercial activity in the United States.   28 U.S.C. § 1605(a)(3); see, e.g., Compl. ¶¶ 1, 80, 140, 145, 182-84.   Consequently, there is no jurisdiction over Rosneftegaz under the third clause of the expropriation exception to the FSIA.   See Dayton, 834 F.2d at 206.

Nor could the alleged loss in value to plaintiffs' ADRs constitute an expropriation of property.   Courts have held that intangible interests such as the contractual right to receive payment do not amount to "property" under the expropriation exception.   See De Sanchez, 770 F.2d at 1395.   Thus, the ADRs themselves cannot qualify as expropriated property.   Even if the ADRs are "property" under this exception, there is no allegation that the ADRs have been

---

[5] Jurisdiction under the expropriation exception is limited "[b]ecause Congress intended this exception to provide a means to remedy a foreign government's expropriation of property in the United States." Hirsh v. Israel, 962 F.Supp. 377, 383 (S.D.N.Y.), aff'd, 133 F.3d 907 (2d Cir. 1997).

expropriated.    To the contrary, plaintiffs allege that they either freely sold their ADRs into the market, or retain them.

### 3.    The Noncommercial Torts Exception Does Not Apply.

Nor can plaintiffs rely on 28 U.S.C. § 1605(a)(5) of the FSIA, which applies to noncommercial torts for which money damages are sought for personal injury occurring in the United States and caused by the tortious conduct of a foreign state.    See 28 U.S.C. § 1605(a)(5); see also El-Hadad v. United Arab Emirates, 216 F.3d 29, 35 (D.C. Cir. 2000).    This exception to immunity is extremely limited and "requires that both the tortious act as well as the injury occur in the United States."    Cicippio v. Iran, 30 F.3d 164, 169 (D.C. Cir. 1994).[6]    There is no dispute that the alleged conduct occurred in Russia.    This exception therefore does not apply.

## II.    ROSNEFTEGAZ, ROSNEFT, AND BOGDANCHIKOV ARE NOT SUBJECT TO THE COURT'S PERSONAL JURISDICTION.

Rosneftegaz, Rosneft, and Bogdanchikov, Rosneft's president, are not subject to the personal jurisdiction of this Court or of any other court in the United States and plaintiffs have not come close to alleging a *prima facie* case for personal jurisdiction over them.[7]    Rosneft is alleged to be indirectly owned by the Russian Federation, and its alleged conduct occurred in Russia.    Compl. ¶ 34.    Rosneft is not alleged to have any operations or employees in the United States.    Rosneft is not alleged to have made any statements at all—and none directed to the United States.    Rosneft is not alleged to own any real property in the United States—and again, certainly none that has any relevance to this lawsuit.    Rosneft's alleged conduct was with

---

[6]  Congress primarily intended the exception to permit victims of traffic accidents to maintain suit against a foreign state in the United States.    See El-Hadad, 216 F.3d at 35.

[7]  Although the Court need not reach this argument as to Rosneftegaz because the FSIA is dispositive of plaintiffs' claims against it, Rosneftegaz is also entitled to have the claims dismissed because the Court has no personal jurisdiction over it given that Rosneftegaz has no contacts with the forum and thus exercising jurisdiction would "offend traditional notions of fair play and substantial justice."    Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (citations omitted).

other Russian companies based in Russia.   There is no allegation that Rosneft had any dealings

with any plaintiff in this case.   As for Bogdanchikov, the complaint is devoid of any allegations

against him—no less any allegations that would provide the basis for personal jurisdiction.

There is no allegation in the complaint that any conduct by Rosneftegaz, Rosneft, or

Bogdanchikov was "purposefully direct[ed]" toward the District of Columbia or the United

States.   Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton v. Hustler

Magazine, Inc., 465 U.S. 770, 774 (1984)).

### A.   The Court Lacks Statutory Authority to Assert Personal Jurisdiction Over This Dispute.

For a court to properly exercise personal jurisdiction over a defendant, Congress must

have provided a jurisdictional statute allowing District of Columbia courts to exercise personal

jurisdiction under the circumstances of the case, and the exercise of personal jurisdiction must

not offend constitutional due process.   See Mwani v. bin Laden, 417 F.3d 1, 8 (D.C. Cir. 2005).

Neither of those requirements is satisfied.   No statutory basis exists, because neither the District

of Columbia's jurisdictional statutes nor Federal Rule of Civil Procedure 4(k)(2) (or any other

federal statute) supports exercising personal jurisdiction over Rosneftegaz, Rosneft, or

Bogdanchikov.

D.C. CODE § 13-423,[8] the District's long-arm statute, does not support specific

jurisdiction.   Plaintiffs' allegations make clear that none of § 13-423's jurisdictional conditions

applies.   The complaint does not contend that Rosneftegaz, Rosenft, or Bogdanchikov has ever

---

[8] D.C. CODE § 13-423 permits jurisdiction when the particular claim arises from the defendant's "(1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; or (5) having an interest in, using, or possessing real property in the District of Columbia." D.C. CODE § 13-423(a).

transacted business or contracted to supply services in the District, that any of the acts or omissions alleged in the complaint occurred in the District, or that Rosneftegaz, Rosneft, or Bogdanchikov has an interest in real property in the District.  And § 13-423(a)(4)—which applies to alleged wrongs committed outside the District and requires a higher level of contacts than the Due Process Clause—does not apply because the alleged injuries were not sustained in the District and because the complaint lacks allegations that Rosneftegaz, Rosneft, or Bogdanchikov regularly does business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or services rendered in the District.  See Jungquist v. Sheikh Sultan Bin Khalifa Nahyan, 115 F.3d 1020, 1032 (D.C. Cir. 1997); Mwani, 417 F.3d at 9.

Nor do the District's general jurisdiction statutes, D.C. CODE §§ 13-422 and 13-334, confer jurisdiction over Rosneftegaz, Rosneft, or Bogdanchikov.  Those provisions allow general personal jurisdiction when a defendant is "domiciled in, organized under the laws of, or maintain[s] its principal place of business in the District," or when the defendant is "doing business" in the District of Columbia.  Richard v. Bell Atl. Corp., 946 F.Supp. 54, 68 (D.D.C. 1996).  But, as is apparent from the complaint, Rosneftegaz, Rosneft, and Bogdanchikov lack any connections to the District or even the United States.

Further, there are multiple independent reasons why jurisdiction fails under rule 4(k)(2), which acts as the federal rules' "*own* long-arm provision . . . in some circumstances."  Mwani, 417 F.3d at 10.  Rule 4(k)(2) prescribes those circumstances and authorizes federal courts to assert personal jurisdiction over a defendant only when four conditions are satisfied:   (1) at least one of the claims against the defendant arises under federal law, (2) the summons has been properly served, (3) the defendant is not subject to the jurisdiction of any single state court, and

(4) the exercise of federal jurisdiction is consistent with the Constitution and laws of the United States.  Id.  In this case, neither rule 4(k)(2) nor any other federal statute applies because Rosneftegaz, Rosneft, and Bogdanchikov have not been properly served[9] and, as described below, because asserting personal jurisdiction would violate their constitutional due-process rights.[10]  Each of those deficiencies independently defeats any federal statutory basis for asserting jurisdiction.  See In re Vitamins Antitrust Litig., 94 F.Supp.2d 26 (D.C. Cir. 2000).

**B.    Asserting Personal Jurisdiction Over Rosneftegaz, Rosneft, and Bogdanchikov Would Violate Due Process.**

For a defendant to be subject to the Court's jurisdiction, the Constitution requires that the defendant have "certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Helicopteros Nacionales de Colom. v. Hall, 466 U.S. 408, 414 (1984) (citation omitted).  Plaintiffs fail to satisfy the "minimum contacts" requirement because they have not made a *prima facie* showing of either general *or* specific jurisdiction.

**1.    Plaintiffs Do Not Allege a *Prima Facie* Case of General Jurisdiction.**

The complaint fails on its face to allege facts necessary to support general jurisdiction over Rosneftegaz, Rosneft, or Bogdanchikov.  General jurisdiction, which permits a defendant to be sued in the forum for claims completely unrelated to its in-forum activities, is appropriate only when the defendant has engaged in "continuous and systematic general business contacts"

---

[9]  Based on the pleadings, Rosneft is alleged to be owned indirectly by the Russian Federation and is therefore not a sovereign for FSIA purposes under Dole Food Company v. Patrickson, 538 U.S. 468, 474 (2003).  Consequently, Rosneft cannot be served under 28 U.S.C. § 1608 and service is faulty pursuant to FED. R. CIV. P. 4(h).  This provides an independent basis for dismissal of the complaint against Rosneft.  See Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 435 n.3 (1989).

[10]  Moreover, if the Court dismisses the securities claims against Rosneftegaz, Rosneft, and Bogdanchikov (and the RICO claim for Bogdanchikov), as it should, then the lack of a claim arising under federal law would nullify personal jurisdiction under rule 4(k)(2).  See Mwani, 417 F.3d at 10.

with the forum.  Helicopteros, 466 U.S. at 416.  Plaintiffs do not allege that Rosneft or

Rosneftegaz were authorized to do business in the United States, had an agent for the service of

process in the United States, performed operations or sold products that have reached United

States markets, solicited business or signed a contract in the United States, recruited or hired a

single employee here, maintained a United States office, owned real or personal property in the

United States, or had United States shareholders.  See id. at 411 (listing potentially relevant

contacts).  Plaintiffs also do not allege that Bogdanchikov engaged in any such conduct.

> ## 2.     Plaintiffs Also Fail to State a *Prima Facie* Case of Specific Jurisdiction.

When a forum seeks to assert specific jurisdiction over a foreign defendant, due process

is "satisfied if the defendant has 'purposefully directed' his activities at residents of forum . . .

and the litigation results from alleged injuries that 'arise out of or relate to' those activities."

Burger King, 471 U.S. at 472 (quoting Keeton, 465 U.S. at 774; Helicopteros, 466 U.S. at 414).

The defendant must have "purposely avail[ed] itself of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws."  Hanson v.

Denckla, 357 U.S. 235, 253 (1958).

As the D.C. Circuit has recognized, "minimum contacts do not exist in an intentional tort

case unless the defendant '*expressly aimed* its tortious conduct at the forum'; the mere fact that

the harm caused by the defendant was primarily felt in the forum because the plaintiff resided

there is not enough."  Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 95

(D.C. Cir. 2002) (quoting IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998)).

Moreover, the Supreme Court has "consistently held" that the "foreseeability of causing *injury*"

in another forum "is not a 'sufficient benchmark' for exercising personal jurisdiction."  Burger

King, 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295

(1980)).

Plaintiffs do not even allege—nor would they have any basis to—that Rosneft or Rosneftegaz targeted their conduct at the United States. Instead, the complaint expressly asserts that the alleged conduct occurred in Russia among Russian corporations. Compl. ¶¶ 30-44, 94-135, 144, 153-54, 157-58, 163, 166-67. The complaint alleges no conduct by Bogdanchikov—much less any conduct targeted at the United States.

### 3. Exercising Personal Jurisdiction Would Offend Due Process Because It Would Unreasonably Burden Rosneftegaz, Rosneft, and Bogdanchikov, and Further No Interest of the District of Columbia.

Even if Rosneftegaz, Rosneft, and Bogdanchikov had made constitutionally sufficient contacts with the forum—which they did not—exercising jurisdiction over them would still offend "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316. The Court should also place "significant weight" on the "reasonableness" and "fairness" factors of the due-process analysis. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113-16 (1987); World-Wide Volkswagen Corp., 444 U.S. at 292-94. Those include the burdens on the defendants, the procedural and substantive interests of other nations, and the interests of the forum in providing relief, which in this case all combine to make the exercise of personal jurisdiction constitutionally unreasonable. See Asahi, 480 U.S. at 114. Rosneftegaz, Rosneft, and Bogdanchikov would not only have to "traverse the distance" from their headquarters and homes in Russia but also have to submit their dispute "to a foreign nation's judicial system." Id. Exercising personal jurisdiction over the defendants would force most of the potential witnesses to travel thousands of miles, imposing travel and linguistic burdens on them and potentially compromising the integrity of the trial process. Given the "great care and reserve" that United States courts should observe "when extending our notions of personal jurisdiction into the international field," the Court should defer to Russia's strong interest in applying its

procedural and substantive policies to this matter.[11]    Id. at 115 (quotation omitted); see Part V

infra; see also Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir.

1972) (explaining that the principle of holding parties liable for torts committed outside the

forum "must be applied with caution, especially in an international context").

## III.    THE ACT-OF-STATE DOCTRINE REQUIRES DISMISSAL OF THIS CASE.

This case must be dismissed under the act-of-state doctrine because the allegations in the

complaint would require the Court to impermissibly second guess the decisions of the Russian

government and its courts.    "Unlike a claim of sovereign immunity, which merely raises a

jurisdictional defense, the act-of-state doctrine provides foreign states with a substantive defense

on the merits.    Under that doctrine, the courts of one state will not question the validity of

public acts (acts jure imperii) performed by other sovereigns within their own borders, even

when such courts have jurisdiction over a controversy in which one of the litigants has standing

to challenge those acts."    Altmann, 541 U.S. at 700; see also Banco Nacional de Cuba v.

Sabbatino, 376 U.S. 398, 401 (1964).

"The act of state doctrine, like the doctrine of immunity for foreign sovereigns, has its

roots . . . in the notion of comity between independent sovereigns."    First Nat'l City Bank v.

Banco Nacional de Cuba, 406 U.S. 759, 765 (1972).    "'Comity' . . . is the recognition which

one nation allows within its territory to the legislative, executive or judicial acts of another

nation, having due regard both to international duty and convenience, and to the rights of its own

citizens or of other persons who are under the protection of its laws."    Société Nationale

---

[11]  Because none of the plaintiffs is a District of Columbia resident and because Russian law applies to
plaintiffs' claims, the District does not even have an interest in applying its laws to the dispute.    Asahi,
480 U.S. at 114.

Industrielle Aérospatiale v. U.S. Dist. Court, 482 U.S. 522, 544 (1987) (quoting Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)).

The act-of-state doctrine is not simply a doctrine of abstention, but serves as "a rule of decision for the courts of this country, which requires that in the process of deciding a case, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." World Wide Minerals, Ltd. v. Kazakhstan, 296 F.3d 1154, 1165 (D.C. Cir. 2002) (internal quotations and alterations omitted) (citing W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp., Int'l, 493 U.S. 400, 405, 409 (1990)).

The alleged seizure of Yukos's assets by the Russian Federation is a classic case in which the act-of-state doctrine should apply. See Ricaud v. Am. Metal Co., 246 U.S. 304 (1918) (holding that former owners of private property seized during the Mexican revolution could not sue the new owners of the property, because the new owners' titles derived from an act of state); Oetjen v. Cent. Leather Co., 246 U.S. 297 (1918) (same); see also World Wide Minerals, 296 F.3d at 1166 (characterizing similar allegations that Kazakhstan expropriated shares of a formerly privatized uranium company and transferred them to a company wholly owned by the state "the classic act of state addressed in the case law"); Dayton v. Czechoslovak Socialist Republic, 834 F.2d 203, 206 (D.C. Cir. 1987) (holding that claims for compensation arising from the nationalization of textile production plants in Czechoslovakia presented a "prime case" for the application of the act-of-state doctrine because the claims "invite[d] examination of the validity of a taking by a foreign state of real property located within its own territory"). As in World Wide Minerals and Dayton, plaintiffs' allegations would improperly require an American court to examine the validity of the Russian Federation's alleged taking of property in Russia.[12]

---

[12] This case is the polar opposite of that brought by Yukos investors against Yukos itself for securities fraud in In re Yukos Oil Co. Sec. Litig., No. 04 Civ. 5243, 2006 WL 800736 (S.D.N.Y. Mar. 30, 2006).

In addition, plaintiffs' allegations would improperly require the Court to sit in judgment of the Russian Federation's sovereign authority to levy and collect taxes from its own citizens and corporations and to question matters already decided by Russian courts.   See United States v. Second Nat'l Bank, 502 F.2d 535, 545 (5th Cir. 1974).   The D.C. Circuit rejected a similar attempt to question the validity of a Brazilian minister's order for a Brazilian bank to pay income taxes, holding that doing so would violate the act-of-state doctrine.   See Riggs Nat'l Corp. v. Comm'r of IRS, 163 F.3d 1363, 1367-69 (D.C. Cir. 1999).   The court explained that the United States tax court had implicitly declared the Brazilian minister's order to pay taxes invalid, and the "act of state doctrine requires courts to abstain from even engaging in such an inquiry."   Id. at 1368.   Similarly, what plaintiffs attempt in this suit violates the act-of-state doctrine. Because the Court cannot second guess the public acts of the Russian government and its courts on its own soil, this case must be dismissed.[13]

**IV.   PLAINTIFFS LACK STANDING TO BRING THE RICO, CONVERSION, AND *PRIMA FACIE* TORT CLAIMS.**

It is well-settled law that in order for plaintiffs to have standing they must have sustained an injury.   See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,

---

In that case, the court held that the act-of-state doctrine did not apply because the allegations concerned alleged misstatements and omissions by Yukos, rather than the propriety of the Russian Federation's tax enforcement and penal actions.   Id. at *6-7.   By contrast, the allegations in this case would require the Court to question exactly what was not implicated in In re Yukos -- the statements and official actions of the Russian Federation in allegedly confiscating the assets of Yukos.

[13]   The decision by the Texas bankruptcy court in the Yukos matter supports, by contrast, application of the act-of-state doctrine here.   In that case, the bankruptcy court was asked to decide the very different question of whether an entire bankruptcy proceeding should be dismissed because of the act-of-state doctrine.   The bankruptcy court held that the function of marshalling Yukos's assets did not *necessarily* require the court to second guess the acts of the Russian government, but the court recognized that the act-of-state doctrine might well play a role in the bankruptcy going forward.   As the court stated: "Although the acts of the Russian government doubtless have a significant impact upon the efforts of Yukos to reorganize itself financially, the filing and conduct of this chapter 11 case does not *in itself* require that this court sit in judgment of those acts."   In re Yukos Oil Co., 321 B.R. 396, 410 (Bankr. S.D. Tex. 2005) (emphasis added).   But unlike the mere filing of a bankruptcy proceeding, this case raises precisely those issues and should be dismissed under the act-of-state doctrine.

180, 181 (2000) ("In *Lujan v. Defenders of Wildlife*, . . . we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision")).

The alleged injury in the RICO, conversion, *prima facie* tort claims is at best an indirect one that does not satisfy standing requirements. Compl. ¶¶ 180-86, 227-39. The gravamen of each of these claims is that "[Defendants] have directly and wrongfully seized the most valuable asset *of Yukos*." Compl. ¶ 182(b) (emphasis added); see also Compl. ¶ 228 ("Defendants . . . participat[ion] in the confiscation of plaintiffs' property *through* their participation in the uncompensated renationalization of Yukos and the distribution of *its* principal assets to state owned commercial enterprises" (emphasis added)) ¶ 179 ("Yukos's most valuable asset [YNG] has been transferred to a state owned commercial enterprise . . . ."). Thus, plaintiffs contend, as a result of defendants' actions, "[t]heir investment in Yukos, a company once valued in billions, is now all but worthless." Compl. ¶ 6. The entire basis for plaintiffs' alleged damages with respect to these counts is that *Yukos* suffered damage (by having certain of its assets sold at auction to pay the taxes owed to the Russian government) and that plaintiffs' ADRs consequently decreased in value.

Plaintiffs allege no other damage than a decrease in the value of their ADRs (nor could they). Compl. ¶¶ 179, 239. However, diminution of value of shares is an indirect, not direct, injury to plaintiffs. See Warren v. Mfrs. Nat'l Bank, 759 F.2d 542, 544 (6th Cir. 1985) ("[d]imunition [sic] in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in [its] own right"); Nordberg v. Lord, Day & Lord, 107 F.R.D. 692,

698 (S.D.N.Y. 1985) ("It is well settled that diminution in value of corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right" (internal citations omitted)); In re Granite Partners L.P., 194 B.R. 318, 325 (Bankr. S.D.N.Y. 1996) ("Where a corporation suffers an injury, and the shareholders suffer solely through a diminution in the value of their stock, the claim belongs to the corporation"). Only Yukos is alleged to be directly injured, not the ADR holders, and therefore, the ADR holders do *not* have standing to assert the RICO, conversion, and *prima facie* tort claims.

Similarly, it is well settled that a plaintiff cannot bring an individual private action under RICO for injuries sustained by a corporation in which the plaintiff owns stock. See Lakonia Mgmt. Ltd. v. Meriwether, 106 F.Supp.2d 540, 550-51 (S.D.N.Y. 2000) (dismissing RICO claims by shareholders where alleged injury was wholly derived from injury allegedly suffered by corporation); see also Sears v. Likens, 912 F.2d 889, 892 (7th Cir. 1990) ("Shareholders of a corporation do not have standing as individuals to bring a RICO action for diminution in the value of their stock caused allegedly by racketeering activities conducted against the corporation.").

Plaintiffs, Yukos ADR holders, only allege the diminution in value of their Yukos ADR shares as a result of the alleged renationalization of Yukos's assets. Any direct injury was therefore to Yukos, and the Yukos ADR holders lack standing.

**V.    THIS CASE SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS* BECAUSE RUSSIA IS AN ADEQUATE ALTERNATIVE FORUM AND THE PRIVATE AND PUBLIC INTERESTS FAVOR DISMISSAL.**

Dismissal on *forum non conveniens* grounds is appropriate if a "trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' *or* when the 'chosen forum [is] inappropriate because of considerations

affecting the court's own administrative and legal problems.'"    See Jackson v. Am. Univ., 52 F.

App'x 518 (D.C. Cir. 2002) (emphasis added).

In deciding a *forum non conveniens* motion, the court must first consider whether there is

an alternate suitable forum.    See Pain v. United Techs. Corp., 637 F.2d 775, 784-85 (D.C. Cir.

1980), modification recognized, Jackson, 52 F. App'x at 518.    The court then must balance the

private and public interest factors of the respective forums.    Id.

Although ordinarily a plaintiff's choice of forum receives deference by giving

"considerable, but not conclusive, weight" to its initial choice, "this presumption in favor of the

initial forum choice applies with less . . . force when the real parties in interest are foreign."    In

re Disaster at Riyadh Airport, Saudi Arabia on Aug. 19, 1980, 540 F.Supp. 1141, 1144 (D.D.C.

1982).    In this regard, two of the plaintiffs, who account for approximately two-thirds of the

total amount that plaintiffs claim to have paid for the Yukos ADRs, are citizens of the

Netherlands and the Cayman Islands.    Compl. ¶¶ 24-25.    Furthermore, these foreign plaintiffs

did not purchase their ADRs on the OTC market in the United States but rather on the London

Stock Exchange.    Id.

Moreover, where plaintiffs select a jurisdiction as a result of forum shopping, as is the

case here, the initial presumption in favor of plaintiffs' choice of forum is also given far less

deference.    See Reiffin v. Microsoft Corp., 104 F.Supp.2d 48, 54 n.12 (D.D.C. 2000)

("Circumstances in which a plaintiff's chosen forum will be accorded little deference include

cases of . . . forum shopping.").    Plaintiffs filed this claim in the United States despite their

admissions that:    (1) all the defendants are Russian; and (2) all the alleged acts occurred in

Russia.    See Schmid Labs. Inc. v. Hartford Accident & Indem. Co., 654 F.Supp. 734, 737

(D.D.C. 1986) ("[T]he common law doctrine of *forum non conveniens* [was] in part intended to

prevent forum shopping . . . it is [not] in the interest of justice to encourage, or even allow a plaintiff to select one district exclusively or primary to obtain . . . specific precedents"); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 n.15 (1981) ("[D]ismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely to harass the defendant or take advantage of favorable law").

### A. Russia Provides an Adequate Alternate Forum.

Under the threshold inquiry for dismissal on grounds of *forum non conveniens* as set forth in Pain, there can be no doubt that Russia is not only an adequate—but a superior—alternate forum. Ordinarily, this requirement is met when the defendant is "amenable to process" in another jurisdiction. See BCCI Holdings (Lux.), S.A. v. Mahfouz, 828 F.Supp. 92, 95 (D.D.C. 1993) (quoting Piper, 454 U.S. at 254 n.22 (citation omitted)). A foreign forum is not inadequate merely because (i) its justice system differs from that of the United States, (ii) plaintiffs may not be able to proceed on a particular legal theory or (iii) because their potential damages award may be smaller. See Disaster at Riyadh Airport, 540 F.Supp. at 1145 (citing Piper, 454 U.S. at 254 n.22).

Russia clearly meets the requirements for an adequate alternate forum. All of the defendants are Russian citizens (except for the Russian Federation itself) and would be subject to jurisdiction in Russia and amenable to process in Russia.

American courts have routinely recognized Russia as an adequate alternative forum for the adjudication of claims against Russian defendants and have dismissed such claims on *forum non conveniens* grounds. See, e.g., Base Metal Trading Ltd. v. Russian Aluminum, 98 F. App'x 47 (2d Cir. 2004) (holding Russia to be an adequate alternative forum for civil RICO, contract, and tortious interference claims); Varnelo v. Eastwind Transport, Ltd., No. 02 Civ. 2084, 2003 WL 230741, at *2, 18 (S.D.N.Y. Feb. 3, 2003) (holding Russia to be an adequate alternative

forum for claims); <u>Tarasevich</u> v. <u>Eastwind Transport Ltd.</u>, No. 02 Civ. 1806, 2003 WL 21692759, at *3 (S.D.N.Y. July 21, 2003) (holding Russia to be an adequate alternative forum for personal injury claims); <u>Pavlov</u> v. <u>Bank of N.Y. Co.</u>, 135 F.Supp.2d 426, 435 (S.D.N.Y. 2001) (holding Russia to be adequate alternative forum for conversion claim), <u>vacated on other grounds</u>, 25 F. App'x 70 (2d Cir. 2002).

**B.      The Private and Public Interests Weigh in Favor of Dismissal.**

**1.      Private Interests**

When examining and balancing private interests for dismissal on grounds of *forum non conveniens*, the court must consider several factors including:   (i) the ease of access to sources of proof, (ii) the availability of compulsory processes for attendance of unwilling witnesses, (iii) the cost of obtaining attendance of willing witnesses, and (iv) other practical problems that interfere with an easy, expeditious, and inexpensive trial.   <u>See</u> <u>Mahfouz</u>, 828 F.Supp. at 96; <u>see also</u> <u>Pain</u>, 637 F.2d at 786.

In balancing private interests, an apparent and critical flaw in plaintiffs' complaint is that *no* event relating to any of the claims occurred in the United States.   <u>See</u> <u>Nalls</u> v. <u>Rolls-Royce Ltd.</u>, 702 F.2d 255, 256 (D.C. Cir. 1983) (noting that the most critical fact, as to the balance of the factors of private interest, is that no event relative to plaintiffs' claim occurred in the United States).   Any alleged wrongful conduct was allegedly carried out in Russia.   The alleged confiscatory taxes were carried out by the Russian Ministry of Tax, under Russian tax law governed by the tax code of the Russian Federation.   The alleged scheme to confiscate Yukos's property, including the auction of Yukos's asset, YNG, admittedly took place in Russia. Simply put, Russia is at the very core of the entire action.

### (a)     Access to Sources of Proof

Because none of the events underlying plaintiffs' claim took place in the United States, it is clear that all the witnesses and documentary evidence as to facts of this case and the events underlying plaintiffs' claim are in Russia.   Rosneftegaz and Rosneft are located in Russia and their primary place of business is in Russia.   Bogdanchikov works and lives in Russia.   Given the plain allegations of the complaint: (i) any current or former employees, government officials, or any other individual even tangentially related to the plaintiffs' alleged events are located in Russia, (ii) any documents and evidence that plaintiffs would seek to obtain are located in Russia, and (iii) any evidence is likely to be in Russian and will need to be translated for an American court—an imposition that would be avoided if the case was heard in a Russian court. See Croesus EMTR Master Fund L.P. v. Brazil, 212 F.Supp.2d 30, 39 (D.D.C. 2002) (dismissing on *forum non conveniens* grounds where witnesses and documents, including documents of the Brazilian government, were primarily located in Brazil).

Moreover, in considering the access to proof, it is critical to note that Russian witnesses would not be subject to the subpoena power of the American courts.   See generally Mahfouz, 828 F.Supp. at 97 ("The availability of compulsory process for attendance of unwilling witnesses . . . also favors litigation of the instant dispute in London rather than here . . . ."); Disaster at Riyadh Airport, 540 F.Supp. at 1148 ("[A] United States forum would likely be unable to require the attendance of those foreign witnesses.").   Russian courts would have the ability to compel such witnesses to testify and produce documents in an action pending before the court.   It is clear that when examining the ease of access to proof, this factor strongly favors adjudication of plaintiffs' claims in Russia.

**(b)     Convenience of the Parties**

While some of the plaintiffs live in the United States and it may be more convenient for them to bring suit here rather than in Russia, the "plaintiff's citizenship and residence in the United States merits no special consideration in [the] balancing process" of deciding a motion to dismiss on *forum non conveniens* grounds.    Nalls, 702 F.2d at 256.    As most, if not all, of the key witnesses are located in Russia, it would be most inconvenient for them to travel and attend trial in the United States—if they were even willing to attend.    Furthermore, the exorbitant cost associated with the onerous burden on Rosneftegaz, Rosneft, and Bogdanchikov (and the other Russian defendants) defending themselves in a United States court strongly favors adjudication of plaintiffs' claims in Russia.    See Mahfouz, 828 F.Supp. at 98 ("Given the conclusion that more material witnesses are likely to be located in England than in the United States, the costs of obtaining willing witnesses, another relevant factor of the private interest balance, would be substantially reduced by litigating this matter in London").

**2.     The Minimal Interest of the Public in Retaining This Action in the District of Columbia Warrants Dismissal.**

The public interest factors that must be balanced are: (i) the burden imposed by the trial in the community, (ii) the degree of local public interest in the dispute, and (iii) whether foreign law will be applicable.    See Pain, 637 F.2d at 791-93 (citations omitted).

**(a)     Burdening the Court**

This case imposes an excessive burden on the Court in light of the fact that there is absolutely no connection between this suit and the District of Columbia.    See Croesus EMTR Master Fund L.P., 212 F.Supp.2d at 31 (dismissing on *forum non conveniens* grounds although the plaintiffs were American and "may have suffered losses, and some of the [b]onds at issue [in the litigation] may have been purchased in the United States" because "the marginal nature of the

United States' interest stands in stark contrast to the magnitude of Brazil's interest"); see also Nalls, 702 F.2d at 257 ("This suit causes the expense and harassment to defendants and witnesses, and imposes the burdens on our courts, which the *forum non conveniens* doctrine aims to prevent.").

### (b)    Law of Another Jurisdiction

Under the District of Columbia choice-of-law rules, Russian law will govern plaintiffs' common-law claims and consequently, the court will have to resolve questions of Russian law on the basis of expert testimony and affidavits as well as conduct independent research if necessary. See, e.g., Mahfouz, 828 F.Supp. at 98; Croesus EMTR Master Fund L.P., 212 F.Supp.2d at 40-41 (dismissing on *forum non conveniens* grounds where "litigation will require significant reliance upon Brazilian sources of proof and will turn upon unsettled issues of Brazilian law"). The application of Russian law further diminishes any remote interest the United States may have in the adjudication of plaintiffs' claims.

### (c)    Competing Interests of the Forum

Plaintiffs' claims have little or no connection to the United States and, therefore, are deserving of little, or no, time and attention of an American court.    In light of the fact that there is no underlying event alleged by plaintiffs that occurred in the United States, the interest the United States might have in conducting a trial is significantly diminished.

## VI.    THE COURT LACKS JURISDICTION TO APPLY U.S. FEDERAL LAWS EXTRATERRITORIALLY.

Under the longstanding principle of American law, "[the] legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."    Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285 (1949); Zoelsch v. Arthur Andersen & Co., 824 F.2d 27, 31 (D.C. Cir. 1987); see also EEOC v. Arabian Am. Oil Co., 499 U.S. 244,

248 (1991); <u>Argentine Republic</u> v. <u>Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 440 (1989);

<u>Weinberger</u> v. <u>Rossi</u>, 456 U.S. 25, 32 (1982).   The Court has no subject-matter jurisdiction to

apply United States federal laws to the plaintiffs' claims because Congress did not intend for

securities laws or RICO to apply extraterritorially.   See <u>Zoelsch</u>, 824 F.2d at 31-32

### A.    The United States Securities Laws Do Not Apply to Claims Where All Alleged Acts Occurred in a Foreign Country and Only Incidental Effects Are Felt in the United States.

The D.C. Circuit has observed that when Congress enacted the Exchange Act it "was

concerned with extraterritorial transactions only if they were part of a *plan* to harm American

investors or markets."   <u>Zoelsch</u>, 824 F.2d at 32 (emphasis added).   Courts consider two factors

in evaluating whether subject-matter jurisdiction extends to predominantly foreign claims:   "(1)

whether the wrongful conduct occurred in the United States, and (2) whether the wrongful

conduct had a substantial effect in the United States or upon United States citizens."   <u>SEC</u> v.

<u>Berger</u>, 322 F.3d 187, 192 (2d Cir. 2003); *see also* <u>In re Baan Co. Sec. Litig.</u>, 103 F.Supp.2d 1,

9-10 (D.D.C. 2000) (same).   Plaintiffs attempt in this case to have this Court assert jurisdiction

over extraterritorial conduct where *none* of the alleged conduct by Rosneft, Rosneftegaz, and

Bogdanchikov occurred in the United States and the conduct at issue was not purposefully

directed at the United States.   See <u>Zoelsch</u>, 824 F.2d at 32.   Rosneftegaz, Rosneft, and

Bogdanchikov are not alleged to have engaged in any conduct whatsoever in the United States.

The plaintiffs' complaint also fails to allege any act intentionally directed toward the United

States.[14]

---

[14]   In the case brought by Yukos investors against Yukos itself for securities fraud, the court held that "[i]n the face of the overwhelmingly foreign nature of Defendants' alleged fraud, Plaintiffs have not established sufficient conduct by Defendants within the United States to confer federal subject matter jurisdiction over the putative class claims."   <u>Yukos Oil Co. Sec. Litig.</u>, 2006 WL 800736, at *10.

While an incidental effect may have been felt by the Yukos ADR holders, only some of whom are residents of the United States and only some of whom purchased their ADRs on the American markets, that is not a substantial effect that warrants application of federal securities laws absent any conduct by a defendant in the United States or directed toward the United States.    See id. at 30 (holding that American accounting firm that provided West German accountant with information did not directly cause investors' loss); Baan, 103 F.Supp.2d at 11 (rejecting subject-matter jurisdiction where only generalized effects were alleged and those effects were not related to claims of plaintiffs); Interbrew v. Edperbrascan, 23 F.Supp.2d 425, 430 (S.D.N.Y. 1998) ("[T]he parties, events, and harm (if any) due to the alleged fraud are overwhelmingly foreign. Thus, the Complaint fails to establish that this Court has subject matter jurisdiction under the effects test.")

Moreover, the link between the alleged fraudulent statements and plaintiffs in the United States is based on the fraud-on-the-market theory.    See Compl. ¶ 248.    There is no allegation that each plaintiff specifically and actually relied on the statements at issue.    In any event, a plaintiff cannot use the fraud-on-the-market theory to create subject-matter jurisdiction.    Baan, 103 F.Supp.2d at 10 (stating that "employing [the fraud-on-the-market] doctrine to fulfill the requirements of the conduct test would extend the reach of the 1934 Act too far").

**B.      At a Minimum, the Federal Securities Laws Do Not Apply to the Claims of the Foreign Plaintiffs Where the Alleged Conduct Occurred Outside the United States.**

Plaintiff FCT America Limited is a Cayman Island corporation that purchased and sold Yukos ADRs on the London Stock Exchange.    See Compl. ¶¶ 25-26.    Plaintiff Z.E. Thijssen is a citizen of and resides in the Netherlands and purchased Yukos ADRs on the London Stock Exchange.    See Compl. ¶ 24.    Collectively, these plaintiffs account for approximately two-thirds of the total amount that plaintiffs claim to have paid for the Yukos ADRs.    See Compl.

¶¶ 24-25.    Notwithstanding that they are foreign plaintiffs, they attempt to allege United States federal securities laws in asserting claims against Rosneftegaz, Rosneft, and Bogdanchikov. See Compl. ¶¶ 240-50.

In applying the Exchange Act to extraterritorial conduct, Congress intended "to protect *domestic investors* who have purchased foreign securities on American exchanges and to protect the domestic securities market."    Schoenbaum v. Firstbrook, 405 F.2d 200, 206 (2d Cir. 1968) (emphasis added).    Thus, federal securities laws "[d]o not apply to losses from sales of securities to foreigners outside the United States unless acts (or culpable failures to act) within the United States directly caused such losses."    Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 993 (2d Cir. 1975); see also Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 128 n.12 (2d Cir. 1998) (reaffirming test announced in Bersch but stating "U.S. residence of individual investors--not American nationality--must be the focus of the . . . test").

FCT American and Thijssen are not United States domestic investors and nor did they purchase the ADRs on an American exchange.    The foreign plaintiffs in this case cannot avail themselves of United States federal securities law and, thus, at a minimum, Count VII must be dismissed as to Plaintiffs FCT American and Thijssen.

### C.    RICO Does Not Apply Where All Alleged Acts Occurred in a Foreign Country and Only Incidental Effects Are Felt in the United States.

For reasons similar to those set forth above in connection with the securities laws, the RICO claims against Bogdanchikov must be dismissed because the RICO statute does not apply extraterritorially to conduct occurring entirely in Russia where only incidental effects were felt in the United States.    It is well settled that the RICO statute does not apply beyond conduct within the United States and that it may only be applied in "[controversies] involving . . . significant and

material contact with the United States." N.S. Fin. Corp. v. Al-Turki, 100 F.3d 1046, 1052 (2d Cir. 1996); see also Doe I v. Israel, 400 F.Supp.2d 86, 114-16 (D.D.C. 2005) (holding that "any effect on American commerce has been negligible, unforeseeable, and unintended [and h]ence, no relevant factor counsels in favor of applying RICO extraterritorially"); Doe I v. Unocal Corp., 395 F.3d 932, 961 (9th Cir. 2002) (holding RICO statute inapplicable to alleged foreign conduct lacking sufficient effects in the United States).

Accordingly, the RICO claims as to Bogdanchikov must be dismissed.

## VII. ROSNEFTEGAZ, ROSNEFT, AND BOGDANCHIKOV DID NOT COMMIT SECURITIES FRAUD.

The so-called securities claim against Rosneftegaz, Rosneft, and Bogdanchikov fails in the most fundamental respect because the entire complaint is devoid of any alleged statement that Rosneftegaz, Rosneft, or Bogdanchikov made at any time, much less any alleged misstatement attributed to any of them. Without any allegation that Rosneftegaz, Rosneft, or Bogdanchikov said anything at all, its strains credulity to believe there is a good faith basis for bringing a claim against Rosneftegaz, Rosneft, or Bogdanchikov for securities fraud. The Court should be mindful of the requirement of § 21D(c)(1) of the Securities Exchange Act of 1934, as amended, which requires the Court to make specific findings with respect to each securities claim brought by a plaintiff that it complies with rule 11. See 15 U.S.C. § 78u-4(c)(1).

It is difficult, if not impossible, to analyze the allegations of the complaint in light of the requirements for bringing securities fraud claims, given that the two statements that are alleged to be fraudulent in the complaint are both alleged to have been made by President Putin in his sovereign role as President of Russia. Compl. ¶¶ 86, 105, 138. While it is at best dubious that statements by a head of state in his official capacity can ever be the basis for federal securities fraud claims in the United States, these statements are not actionable against Rosneftegaz, Rosneft, or Bogdanchikov under any rudimentary analysis of the federal securities laws.

### A.    The Basic Elements of a § 10(b) Claim

In order to state a claim under § 10(b) of the Exchange Act plaintiffs must allege that *each* defendant:

- made a material misstatement or omission of a material fact,

- with "scienter,"

- in connection with the purchase or sale of any security,

- upon which the plaintiff reasonably relied, and

- that plaintiff's reliance was the proximate cause of its injury.

In re Interbank Funding Corp. Sec. Litig., 329 F.Supp.2d 84, 90 (D.D.C. 2004); see also 15 U.S.C. § 78j(b).

Both the PSLRA and rule 9(b) of the Federal Rules of Civil Procedure impose on plaintiffs the further requirement that allegations of federal securities fraud be pleaded with particularity.  The PSLRA requires that "a complaint alleging securities fraud specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1) (citation omitted); see also Interbank Funding Corp., 329 F.Supp.2d at 90 (dismissing complaint because plaintiff failed to plead facts showing why alleged misstatements were misleading).

In addition, the PSLRA imposes a strict requirement for pleading scienter—that is, intent to defraud—as to *each* defendant:

> [a] complaint *shall*, with respect to *each* act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2) (emphasis added).  The Reform Act thereby requires a party to plead facts that support a "strong inference" that the defendant acted with scienter.  See In re U.S.

Office Prods. Sec. Litig., 326 F.Supp.2d 68, 75 (D.D.C. 2004) (dismissing fraud claim because it did not adequately plead facts giving rise to a "strong inference" of scienter); Interbank Funding Corp., 329 F.Supp.2d at 90 (same).   The requisite "strong inference" of fraud must be established either by (a) alleging facts to show that the defendant had both motive and opportunity to commit fraud, or (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.   See Interbank Funding Corp., 329 F.Supp.2d at 90.

In addition to the stringent standards imposed by the PSLRA, rule 9(b) also requires that each allegation of fraud be pleaded with particularity.   See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1277-78 (D.C. Cir. 1994); see also U.S. Office Prods., 326 F.Supp.2d at 75; Hammerman v. Peacock, 607 F.Supp. 911, 915 (D.D.C. 1985).   This means that the complaint "must specify:

     (1)     precisely what statements were made in what documents or oral representations or what omissions were made;

     (2)     the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) the same;

     (3)     the content of such statements and the manner in which they misled the plaintiff; and

     (4)     what the defendants obtained as a consequence of the fraud."

Hammerman, 607 F.Supp. at 916.   "In other words, rule 9(b) requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud."   U.S. Office Prods., 326 F.Supp.2d at 73 (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).

Where multiple defendants are involved, as in this case, rule 9(b) requires specific facts that show that *each defendant* made a fraudulent statement.   See Mayer v. Dell, Civ. A. No. 90-

0472, 1991 WL 21567, at *4 (D.D.C. Feb. 13, 1991) (dismissing plaintiff's claims because they "fail[ed] to state with particularity the nature of each defendant's participation in the alleged fraud, what statements were made, when they were made, who made them, how those statements misled plaintiff, or what investments to which the statements pertained"); In re Newbridge Networks Sec. Litig., 962 F.Supp. 166, 170 (D.D.C. 1997) (holding that the court must examine the particularity of each allegation of fraud separately to meet the rule 9(b) standard). "'Conclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b).'"    U.S. Office Prods., 326 F.Supp.2d at 74 (citation omitted).

> **B.**    **The Complaint Alleges No False Statement by Rosneftegaz, Rosneft, or Bogdanchikov.**

The most glaring shortfall is plaintiffs' utter failure to allege that Rosneftegaz, Rosneft, or Bogdanchikov even made a statement, much less a fraudulent statement.  Courts have repeatedly stated the obvious: the making of a false or misleading statement (or a omission of a material fact) is a necessary element of securities fraud claim.    Interbank Funding Corp., 329 F.Supp.2d at 89 (stating that to have a cause of action under 10(b) and rule 10b-5 a plaintiff must allege that each defendant, among other things, "made a material misstatement or omission of a material fact"); see also 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.    Nowhere in the 64-page complaint do plaintiffs state that Rosneftegaz, Rosneft, or Bogdanchikov made a fraudulent statement.

Instead of properly pleading the facts of each alleged fraud as required by the PSLRA and rule 9(b), plaintiffs rely entirely upon the statements of Russian Federation President Putin as their basis of liability against *all* defendants.    Compl. ¶¶ 86, 105, 138 & 163.    The attempt to charge Rosneftegaz, Rosneft, and Bogdanchikov with the statements of others is flatly not permitted under the federal securities laws, given the strict pleading requirements of the PSLRA

and rule 9(a), which demand that *each* defendant be apprised of the specific nature of the statements *it* made.   See <u>Berman</u> v. <u>Metzger</u>, No. 80-0394, 1981 WL 1596, at *6 (D.D.C. Feb. 9, 1981) (dismissing plaintiffs claims because, among other things, they "fail[ed] to distinguish among the defendants"); <u>U.S. Office Prods.</u>, 326 F.Supp.2d at 74 (noting that rule 9(b) was designed to ensure that defendants have notice of their alleged wrongs).

Furthermore, without alleging an actual misrepresentation by Rosneftegaz, Rosneft, or Bogdanchikov, plaintiffs fail to state a claim because there is no secondary liability, such as aiding and abetting, under § 10(b).   See <u>Cent. Bank of Denver</u>, 511 U.S. at 191 ("Because the text of § 10(b) does not prohibit aiding and abetting, we hold that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)."); <u>Baan</u>, 103 F.Supp.2d at 17 ("[M]aking a material misstatement or omission violates 10(b), but aiding, abetting, or conspiracy to do so does not.").[15]

### C.     Plaintiffs Fail to Demonstrate Reasonable Reliance.

Furthermore, plaintiffs fail to satisfy their burden to plead specific facts establishing reliance on any of the statements by President Putin.   <u>Rombach</u> v. <u>Chang</u>, 355 F.3d 164, 169 n.4 (2d Cir. 2004) ("[P]laintiff must plead . . . that plaintiff's reliance on defendant's action caused plaintiff injury.").   Indeed, plaintiffs cannot reasonably claim that they were unaware of the

---

[15]  Plaintiffs also lack standing to bring a securities claim because they traded in securities of a different issuer—Yukos—and not the stock of the company that allegedly made the false statement.   In <u>Ontario Pub. Serv. Employees Union Pension Trust Fund</u> v. <u>Nortel Networks Corp.</u>, 369 F.3d 27 (2d Cir. 2004), <u>cert. denied</u>, 543 U.S. 1050 (2005), plaintiffs were shareholders of JDS Uniphase Corporation ("JDS"). JDS had entered into an agreement with Nortel Networks Corporation ("Nortel") whereby Nortel would buy a business from JDS in return for Nortel stock.   Plaintiffs sued Nortel based on certain alleged misstatements by Nortel contending that these misstatements caused JDS stock to be materially inflated. The Second Circuit held that plaintiffs lacked standing to bring a § 10(b) suit "when the individual purchased the security of a company other than the one that made the misstatement."   Here, Rosneftegaz and Rosneft are competitors of Yukos. They are not alleged to have any relationship whatsoever with Yukos or the ADR holders.   Therefore, even if Rosneftegaz, Rosneft, or Bogdanchikov made a misrepresentation, which they did not, the fact that Yukos stock may have been affected in some way does not give Yukos ADR holders standing to bring suit against third parties.

foreseeable risks presented by Yukos's tax strategies, because Yukos in its public disclosures, advised investors of exactly the risks of which they now complain.   For example, in each of its annual reports from 2000 to 2002, Yukos included a disclosure of the uncertainties inherent in the Russian tax system:

> Russian tax legislation is subject to varying interpretations and constant changes, which may be retroactive.   Further, the interpretation of tax legislation by tax authorities as applied to the transactions and activities of the Company may not coincide with that of management.   As a result transactions may be challenged by tax authorities and the Company may be assessed additional taxes, penalties and interest.

2001 Yukos Annual Report (Ex. B at 67); see also 2000 and 2002 Yukos Annual Reports (Ex. C at 58; Ex. D at 62).

The 2002 annual report, management discussion and analysis ("MD&A") further warned plaintiffs that differences in its projections could occur "from a variety of factors including, but not limited to . . . changes in tax and other laws applicable to our business; [and] potential disruption or interruption of our production facilities due to accidents or political events."   2002 Yukos Annual Report, MD&A (Ex. D at 73).   The 2002 MD&A also warned the plaintiffs that "uncertainty related to Russian tax laws exposes us to enforcement measures and the risk of significant fines and could result in greater than expected tax burden."   Id.

Because Yukos disclosed to plaintiffs the risks presented by *Yukos's* tax strategies, Yukos investors were not justified in relying on any other representations to the contrary.   See Indep. Order of Foresters v. Donaldson, Lufkin & Jenrette, Inc., 157 F.3d 933, 940 (2d Cir. 1998) ("the warnings in the Offering Circulars and Prospectuses regarding the risks associated with the investments and the provisions in those documents disavowing any outside representations preclude a finding that [the plaintiff] reasonably relied upon them in purchasing [its investments]").

Plaintiffs' alleged reliance on the allegedly soothing statements of President Putin is also unreasonable as these statements were issued in a period when Yukos, its officers, and its shareholders were the subject of a public investigation; billions in tax assessments were being imposed against Yukos; key Yukos personnel had been arrested; and Yukos stock was declining in value.   Compl. ¶¶ 81-83, 91, 101, 104, 115-17, 126, 128, 130, 132-35.   Plaintiffs' purchases occurred in the midst of—and following—these contrary events, which negates, as a matter of law, any claim of reliance.

###### D.      Rosneftegaz, Rosneft, and Bogdanchikov Did Not Act with Scienter.

While plaintiffs have not alleged even a statement attributable to Rosneftegaz, Rosneft, or Bogdanchikov, there are certainly no facts pleaded to show that Rosneftegaz, Rosneft, or Bogdanchikov acted with scienter.   See Howard v. SEC, 376 F.3d 1136, 1141 n.4 (D.C. Cir. 2004) ("For securities violations, the Supreme Court has described scienter as 'a mental state embracing intent to deceive, manipulate, or defraud.'" (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976))).

Even if, *arguendo*, the statements made by President Putin were the basis for liability against Rosneftegaz, Rosneft, or Bogdanchikov, there are absolutely no facts alleged (and certainly no facts pleaded with specificity) to show that any of these defendants had any actual knowledge or reason to believe that the statements made at the time they were made were anything but true.

###### E.      Rosneftegaz, Rosneft, and Bogdanchikov Owed No Duty to Plaintiffs.

Rosneftegaz, Rosneft, or Bogdanchikov did not have any duty to the ADR holders of a competitor, Yukos.   See Berman, 1981 WL 1596, at *6 ("to particularize the alleged fraud the plaintiffs at a minimum must identify the 'agent, . . . fiduciary, . . . [or] person in whom the sellers had placed their trust and confidence'" (citation omitted)).   Rosneftegaz, Rosneft, and

Bogdanchikov simply had no duty to speak to the Yukos ADR holders and there is no allegation that they ever did so.   See, e.g., United States v. Crop Growers Corp., 954 F.Supp. 335, 350 (D.D.C. 1997) (dismissing federal securities fraud claims where defendant owed no duty to disclose information to plaintiff).

### VIII.    EVEN IF RICO CAN BE APPLIED EXTRATERRITORIALLY, PLAINTIFFS' RICO CLAIM AGAINST BOGDANCHIKOV MUST BE DISMISSED.

### A.    The RICO Claims Are Barred by the PSLRA.

Plaintiff Yukos ADR holders' RICO claims against Bogdanchikov are barred by the PSLRA and therefore must be dismissed as a matter of law.   The PSLRA amended the RICO statute to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]."   18 U.S.C. § 1964(c); see also Fezzani v. Bear, Stearns & Co., No. 99 CIV 0793, 2005 WL 500377, at *4 (S.D.N.Y. Mar. 2, 2005) (barring RICO claim under PSLRA where claim relied on securities fraud); Jacoboni v. KPMG LLP, 314 F.Supp.2d 1172, 1186 (M.D. Fla. 2004) (barring plaintiff's entire RICO claim because all predicate acts were "'in connection with' the purchase and transfer of securities, thereby implicating the PSLRA bar" even where plaintiff did not assert securities law claims); Hollinger Int'l, Inc. v. Hollinger Inc., No. 04 C 0698, 2004 WL 2278545, at *8-9 (N.D. Ill. Oct. 8, 2004) (holding that alleged predicate acts—including setting up shell companies and sale of assets to related entities at below-market value that were not per se violations of securities laws—were an integral part of alleged scheme to defraud shareholder and, therefore, plaintiffs' RICO claim was barred).

As courts have recognized, where plaintiffs' securities law claims and RICO claims are based on the same alleged conduct, RICO claims are barred under § 1964(c).   See, e.g., Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 328 (3d Cir. 1999) (noting that the

securities fraud action alleged the same conduct that "is at the heart of this RICO action"); <u>Fla. Evergreen Foliage</u> v. <u>E.I. Du Pont de Nemours & Co.</u>, 165 F.Supp.2d 1345, 1356-59 (S.D. Fla. 2001) (dismissing RICO claims under § 1964(c) after comparing RICO action with a shareholder action to determine if the predicate acts were the same conduct alleged as securities fraud), <u>aff'd sub nom.</u>, <u>Green Leaf Nursery v. E.I. DuPont de Nemours & Co.</u>, 341 F.3d 1292 (11th Cir. 2003); <u>In re Ikon Office Solutions, Inc.</u>, 86 F.Supp.2d 481, 486 (E.D. Pa. 2000) (same).[16]

Plaintiffs' attempt to plead other predicate acts cannot help them evade the PSLRA bar to the RICO claims because the alleged underlying conduct is the same.    <u>See</u> Compl. ¶¶ 240-50; <u>see also</u>    <u>Blythe</u> v. <u>Deutsche Bank AG</u>, 399 F.Supp.2d 274, 278 (S.D.N.Y. 2005) ("[A] plaintiff cannot avoid the [PSLRA] bar by [other] predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses [is alleged as] securities fraud."); <u>RA Invs. I, LLC</u> v. <u>Deutsche Bank AG</u>, No. Civ. A. 3:04-CV-1565-G, 2005 WL 1356446, at *5 (N.D.Tex. June 6, 2005) ("[I]f the racketeering activity alleged to support a RICO claim . . . also amounts to securities fraud, the claim must be dismissed."); <u>Gatz</u> v. <u>Ponsoldt</u>, 297 F.Supp.2d 719, 731 (D. Del. 2003) ("A plaintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading.")

Courts have also held plaintiffs' RICO claims are barred by the PSLRA even where the securities claims are found to be deficient.    <u>See</u>, <u>e.g.</u>, <u>Stephenson</u> v. <u>Deutsche Bank AG</u>, 282 F.Supp.2d 1032, 1071 (D. Minn. 2003) (dismissing RICO claims under the PSLRA bar even though securities claims were also dismissed); <u>Yadlosky</u> v. <u>Grant Thorton, L.L.P.</u>, 120 F.Supp.2d

---

[16]  <u>See</u> <u>also</u> <u>Tyrone Area Sch. Dist.</u> v. <u>Mid-State Bank & Trust</u>, No. CIV 98-881, 1999 WL 703729, at *4 (W.D. Pa. Feb. 9, 1999) (finding that the conduct alleged in the RICO claims could be alleged as a violation of securities law where a separate SEC action was commenced), <u>aff'd</u>, 202 F.3d 255 (3d Cir. 1999); <u>Hollinger Int'l, Inc. v. Hollinger Inc.</u>, No. 04 C 0698, 2004 WL 2278545, at *8-9 (N.D. Ill. Oct. 8, 2004) (finding RICO claim barred by PSLRA where predicate acts were an integral part of defendants' alleged wrongful conduct upon which securities action was based).

622, 631-33 (E.D. Mich. 2000) (same); <u>Columbraria Ltd.</u> v. <u>Pimienta</u>, 110 F.Supp.2d 542, 548 (S.D. Tex. 2000) (holding RICO bar would apply even though plaintiff was time-barred from bringing claims under Rule 10b-5); <u>Hemispherx Biopharma, Inc.</u> v. <u>Asensio</u>, No. CIV A. 98-5204, 1999 WL 144109, at *4-*8 (E.D. Pa. Mar. 15, 1999) (dismissing RICO claims under the PSLRA bar despite finding plaintiff failed to adequately plead securities fraud claims).

Plaintiffs implicitly recognize the PSLRA bar to their RICO claims by dividing plaintiffs into two groups—one, Yukos ADR holders, asserting the RICO claims and the other, Yukos ADR purchasers, bringing the securities law claims.   <u>See</u> Compl. ¶¶ 11, 29, 187-226, 241.   But the PSLRA bars RICO claims based on predicate acts that *can* be alleged as securities fraud regardless of whether the particular plaintiff asserting RICO claims actually asserts the securities fraud claim.   <u>See</u> <u>In re Enron Corp. Sec. Derivative & ERISA Litig.</u>, 284 F.Supp.2d 511, 620 (S.D. Tex. 2003) ("[t]he language of [the PSLRA] does not require that the same plaintiff who sues under RICO must be the one who can sue under securities laws; its wording . . . does not make such a connection").   Courts have thus held that the particular RICO plaintiff need not be the one to allege a claim for securities fraud.   <u>See</u> <u>id.</u>[17]   Plaintiffs' attempt to segregate the

---

[17] <u>See</u>, <u>e.g.</u>, <u>Howard</u> v. <u>Am. Online Inc.</u>, 208 F.3d 741, 749 (9th Cir. 2000) (precluding RICO action where claims implicated conduct that could have been alleged as securities fraud despite plaintiffs' lack of standing to assert those claims); <u>Evergreen Foliage v. E.I. Du Pont de Nemours & Co.</u>, 165 F.Supp.2d 1345, 1358 (S.D. Fla. 2001)</u> ("the fact that Plaintiff-Growers are not DuPont shareholders and therefore cannot bring a securities fraud claim against DuPont does not preclude the use of Section 107 [of the PSLRA] to bar their claim" because it could have been brought by a different plaintiff); <u>In re Enron Corp. Sec. Derivative & ERISA Litig., 284 F.Supp.2d 511, 619 (S.D. Tex. 2003)</u> (holding that the RICO bar applies even if "a particular plaintiff does not have a cognizable claim under the securities law"); <u>Gatz</u>, 297 F.Supp.2d at 731 ("[§ 1964(c)] . . . applies regardless of whether a particular plaintiff has standing to bring a civil action under § 10b and Rule 10b-5."); <u>Hollinger Int'l, Inc. v. Hollinger Inc., No. 04 C 0698, 2004 WL 2278545, at *7 (N.D. Ill. Oct. 8, 2004)</u> ("[T]he RICO plaintiff operates irrespective of whether the RICO plaintiff has standing to bring a securities claim . . . as long as another plaintiff could bring a securities action based on the alleged conduct."); Columbraria Ltd. v. Pimienta, 110 F.Supp.2d 542, 548 (S.D. Tex. 2000) (holding RICO bar would apply even though plaintiff was time-barred from suing under Rule 10b-5).

RICO claims from the securities claims by asserting them on behalf of different plaintiffs does not salvage the RICO claims, and they must be dismissed.

**B.    The Predicate Acts Are Insufficiently Pleaded as a Matter of Law.**

The complaint alleges that defendants committed racketeering acts by the transport of illegally converted oil and gas in violation of 18 U.S.C. § 2314, receipt of bankruptcy estate property in violation of 18 U.S.C. § 152, and wire fraud in violation of 18 U.S.C. § 1343.   See Compl. ¶¶ 193, 205.   The alleged violation of § 2314 is based on "converted Yukos property" that was "a step in the uncompensated renationalization of Yukos."   See Compl. ¶¶ 193, 205. As discussed in Part IX.D *infra*, the plaintiffs' conversion claim should be dismissed because plaintiffs do not allege that *their* property, the ADRs, was converted and thus this allegation also fails as a predicate act for their RICO claims.

Plaintiffs' allegations that defendants received bankruptcy estate property in violation of § 152 and committed wire fraud in violation of § 1343 each fail independently as predicate acts for their RICO claim because they have failed to plead these with particularity.   Where fraud is an alleged predicate illegal act for a RICO claim, the allegations must conform to the pleading-particularity requirement set forth in rule 9(b), which provides that in averments of fraud, "the complaint must specify the circumstances constituting fraud 'with particularity.'"   See FED. R. CIV. P. 9(b); Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1229 (D.C. Cir. 1991) (quoting rule 9(b)); Wallace v. Abramson, Civ. A. No. 85-4039, 1988 WL 63065, at *3 (D.D.C. June 7, 1988) ("Rule 9(b) applies with full force when fraud is identified as a predicate act to a pattern of racketeering activity under RICO.").

Plaintiffs fail to specifically plead alleged conduct in violation of § 152 that "constitutes an offense involving fraud connected with a case under Title 11."   See Compl. ¶¶ 193, 205. Rather plaintiffs make conclusory allegations that defendants "unlawfully evaded the Court

Order prohibiting their participation in the YNG auction, and knowingly and fraudulently received property from a debtor after the filing of a case under Title 11 of the U.S. Code, with intent to defeat the provisions of Title 11, through the use of sham transactions and straw entities."  See Compl. ¶¶ 193, 205.

Plaintiffs' allegation that defendants engaged in wire fraud in violation of § 1343 also fails to meet the pleading-particularity requirement.  Rule 9(b) requires that the complaint "'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'"  McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992) (quoting Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)). Despite plaintiffs' conclusory allegation that Bogdanchikov and the other defendants engaged in wire fraud in violation of 18 U.S.C. § 1343, they fail to point to any statement made by Bogdanchikov.  See Compl. ¶ 193.  Plaintiffs assert only that defendants "issu[ed] misleading statements concerning the Defendants' actions aimed at the de facto re-nationalization of Yukos."  See Compl. ¶¶ 193, 205.  Plaintiffs fail to plead a single specific statement attributed to Bogdanchikov.  See Compl. ¶ 234.

### C.     Plaintiffs Have Not Alleged a Pattern of Racketeering Activity.

Even if this Court found that plaintiffs have sufficiently pleaded the necessary predicate acts—which they have not—plaintiffs have failed to allege a "pattern" of racketeering activity as is required by the statute.  18 U.S.C. §§ 1962(b)-(d).  A "pattern of racketeering activity" constitutes two or more predicate acts of racketeering arising out of different conduct. 18 U.S.C. § 1961(5); see also Meng v. Schwartz, 116 F.Supp.2d 92, 95 (D.D.C. 2000), aff'd, 48 F. App'x 1 (D.C. Cir. 2002).   As the D.C. Circuit has noted, it is "virtually impossible for plaintiffs to state a RICO claim" based on only a "single scheme, [a] single injury, and few victims."

Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F. 3d 1260, 1265 (D.C. Cir. 1995);

see also W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Market Square Assocs., 235

F.3d 629, 634 (D.C. Cir. 2001) (same).

      Plaintiffs attempt to allege three distinct "racketeering acts" to establish the necessary

pattern, but each allegation involves the same event: the sale of YNG.    Alleging only a single

scheme to "re-nationalize Yukos, without compensation to the company's owners," Compl. ¶ 80,

plaintiffs' only alleged injury is that their "ADRs are now effectively worthless . . . because

Yukos's most valuable asset has been transferred to a state owned commercial enterprise."

Compl. ¶¶ 179.   The only alleged victims are the plaintiff Yukos ADR holders, who are the

three sole plaintiffs who still hold ADRs.   Plaintiffs have failed to establish a pattern of

racketeering based on this single alleged scheme.

      Furthermore, plaintiffs fail to make a single factual allegation anywhere in the complaint

that Bogdanchikov participated in the alleged pattern of racketeering activity.   Because

plaintiffs have failed to establish a pattern of racketeering or any involvement by Bogdanchikov,

their RICO claims must be dismissed in their entirety.[18]

---

[18] Furthermore, plaintiffs' Count II RICO claim against Bogdanchikov must also be dismissed because they have failed to allege that he "acquired an interest in or control over" Yukos.   Under 18 U.S.C. § 1962(b), "it [is] unlawful to acquire control of an enterprise through a pattern of racketeering activity." In determining whether a defendant has acquired an interest or control, courts have held that the defendants must secure a proprietary interest in an enterprise, or the operational control associated with such a proprietary interest.   See Whaley v. Auto Club Ins. Ass'n, 891 F.Supp. 1237, 1240-41 (E.D. Mich. 1995) ("The type of 'interest contemplated in §1962(b) is not just any 'interest' but a proprietary one . . . and 'control' contemplated is the power gained over an enterprise's operations."); Teague v. Bakker, 35 F.3d 978, 995 (4th Cir. 1994) (finding defendant had control of the day-to-day operations). Plaintiffs fail to allege facts that support a finding that Bogdanchikov acquired any such proprietary interest or operational control over Yukos.   Plaintiffs merely make a conclusory statement in Count II that defendants "acquired an interest in and/or control of Yukos through a pattern of racketeering activity."   Compl. ¶ 192.   Conclusory allegations are not sufficient to maintain a RICO claim.   See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 329 (6th Cir. 1999) (affirming dismissal of § 1962(b) claim where plaintiff did nothing more than plead a legal conclusion by parroting the language of the statute).

**D.      Plaintiffs Have Alleged Neither an Association-in-Fact Enterprise Nor Facts Capable of Showing That Bogdanchikov "Participated in the Conduct of an Enterprise."**

In Count III, plaintiffs allege that defendants violated 18 U.S.C. § 1962(c) by forming and operating an association in fact that constituted an enterprise under RICO for the purpose of defrauding plaintiffs.   See Compl. ¶ 203-04.   Under RICO, an "enterprise" is "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).   Plaintiffs fail to allege an association-in-fact enterprise among defendants much less any facts that Bogdanchikov participated in the conduct of such an enterprise.

In analyzing RICO claims, the District of Columbia Circuit requires that an association-in-fact enterprise have three characteristics: "(1) a common purpose among the participants, (2) organization, and (3) continuity."   United States v. Richardson, 167 F.3d 621, 625 (D.C. Cir. 1999); see also Dist. Telecomms. Dev. Corp. v. Dist. Cablevision, Inc., 638 F.Supp. 418, 421 (D.D.C. 1985).   Courts have also been clear that "an enterprise is not a 'pattern of racketeering activity,' but is an entity separate and apart from the pattern of activity in which it engages." United States v. Turkette, 452 U.S. 576, 583 (1981).   The individuals must be organized by some means and the association must have a structure.   See id.   Absent from plaintiffs' complaint are any facts that establish that the defendants had a common purpose, that there was organization or even that the individuals were organized, or that there was an association that had a structure.   Therefore, plaintiffs' RICO claims must be dismissed for failure to allege an association in fact.

Furthermore, Count III fails because plaintiffs' complaint is devoid of any facts that show that Bogdanchikov conducted or participated, directly or indirectly, in the operation of Yukos. For RICO liability under 18 U.S.C. § 1962(c), the defendant "must participate in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (defendant must take "some part in directing the enterprise's affairs"). As with all of plaintiffs' claims, plaintiffs fail to allege that Bogdanchikov had any part in directing the alleged enterprise's affairs.

## IX.    THE COMMON-LAW CLAIMS SHOULD BE DISMISSED.

### A.    Russian Law Must Be Applied to Plaintiffs' Common-Law Claims.

Plaintiffs fail to point to any specific source of law for their causes of action, but rather simply allude to traditional United States torts of common-law conversion, *prima facie* tort, and common-law fraud. Compl. ¶¶ 180-86, 227-39. Such generic common-law claims cannot be the source of a federal cause of action under the FSIA, which requires that a sovereign be given notice of a particular cause of action arising under the laws of a particular jurisdiction. See Acree v. Iraq, 370 F.3d 41, 59 (D.C. Cir. 2004) ( "[A]s in any case, a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law."); Dammarell v. Iran, 370 F.Supp.2d 218 (D.D.C. 2005) ("[T]here are limits on the generality with which a cause of action can be plead even under notice pleading in a non-FSIA case.").

When a federal court is examining claims under supplemental jurisdiction and in actions under the FSIA, the court must apply the forum's choice-of-law principles. See Jin v. Ministry of State Sec., 254 F.Supp.2d 61, 68 (D.D.C. 2003); see also Virtual Def. & Dev., Int'l, Inc. v. Moldova, 133 F.Supp.2d 9, 15 (D.D.C. 2001) (holding that the goal expressed in § 1606 "of applying identical substantive laws to foreign states and private individuals cannot be

achieved . . . unless a federal court utilizes the same choice-of-law analysis in FSIA cases as it would if all the parties of the action were private").

In evaluating choice-of-law principles, the court uses a "constructive blending" of two distinct analyses: the "governmental interests" analysis and the "most significant relationship" test.  Hercules & Co. v. Shama Rest. Corp., 566 A.2d 31, 41 n.18 (D.C. 1989); see also Stephen A. Goldberg Co. v. Remsen Partners, Ltd., 170 F.3d 191, 194 (D.C. Cir. 1999); Virtual Def., 133 F.Supp.2d at 15.

> **1.    Russia Has the Greater Governmental Interest in the Application of Its Law.**

"Under the governmental interests analysis as so refined, we must evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." Hercules & Co., 566 A.2d at 41 (quotation and citation omitted).  Russia has a far greater interest in having its law applied to the plaintiffs' common-law claims than the United States. See Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. 'Rosvoorouzhenie', 172 F.Supp.2d 79, 94 (D.D.C. 2001) ("Russia has an extremely strong interest in ensuring that its state-controlled agencies are not subjected to laws that may contravene its own, so as not to interfere with the Russian government's ability to continue to transact business with North American companies.")  Russia maintains a strong interest in having its law applied to the adjudication of disputes arising from alleged wrongful acts occurring within its borders and conducted by Russian companies registered within the state.  It is clear that plaintiffs, only some of whom are residents of in the United States, have brought this claim in the United States solely in an effort to attain United States style discovery in total disregard for Russia's interest in

having its laws applied in the adjudication of these claims.   <u>See</u> note 11 *supra* and accompanying text.

Furthermore, the District of Columbia has no interest to apply its law in this case where there is absolutely *no connection* between the suit and this district.   <u>See</u> <u>Wigfall</u> v. <u>Wolpoff & Abramson, LLP</u>, No. Civ. A. 05-591, 2005 WL 3213955, at *2 (D.D.C. Nov. 1, 2005) ("Other than being the location of plaintiff's current residence, the District of Columbia has no connection with the . . . issue.").   Not one of the plaintiffs resides within this district.

## 2.    Russia Has the Most Significant Relationship to This Dispute.

In determining which jurisdiction has the most significant relationship to the dispute, there are four relevant factors this Court must consider:   (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered."   <u>Hercules & Co.</u>, 566 A.2d at 42 (adopting the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. d (1971 & Supp. 1988)).[19]

In evaluating the first two of these four factors, an apparent and critical flaw in plaintiffs' complaint is that *no* event relative to any of the claims occurred in the United States.   The place of alleged direct injury to Yukos and the place where the conduct causing the alleged injury

---

[19]  Section 145 also references § 6 of the Restatement for courts to consider: "[w]hen there is no [state statutory directive on choice of law,] the factors relevant to the choice of the applicable rule of law include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination of the law to be applied." <u>Dunkwu</u> v. <u>Neville</u>, 575 A.2d 293, 296 (D.C. 1990) (adopting the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)).   The analysis under these principles is tantamount to that of § 145 and further supports the application of Russian law to plaintiffs' common-law claims.

occurred was Russia.   See Tramontana v. S.A. Empresa de Viacao Aerea Rio Grandense, 350 F.2d 468 (D.C. Cir. 1965) (applying Brazilian law where "[t]he District of Columbia's connection with the occurrence and with the parties, and its interest in the resolution of the issue before us, are, if not wholly remote, certainly less than Brazil's"); Integral Res. (PVT) Ltd. v. Istil Group, Inc., No. 03-904, 2004 WL 2758672, at *3 (D. Del. Dec. 2, 2004) (holding Ukrainian law applied where the conduct causing the injury occurred in Ukraine), aff'd, 155 F. App'x 69 (3d Cir. 2005).   Any alleged conversion of property took place in Russia.   Plaintiffs' claims regarding the imposition of confiscatory taxes were carried out by the Russian Tax Ministry, under Russian tax law governed by the tax code of the Russian Federation.   Any alleged acts of misleading and deceptive statements were made by the Russian President, and any alleged seizure of Yukos stock and property was allegedly carried out in Russia.   Simply put, Russia is at the very core of the plaintiffs' entire action.

The third factor of the Restatement, "the domicile, residence, nationality, place of incorporation and place of business of the parties," also points to Russian law.   While some of the plaintiffs are citizens of the United States, residing in various states, it is significant that two of the plaintiffs, who account for approximately two-thirds of the total amount that plaintiffs claim to have paid for the Yukos ADRs, are citizens of the Netherlands and the Cayman Islands. Compl. ¶¶ 24-25.   Furthermore, these plaintiffs did not purchase the Yukos ADRs on the OTC market in the United States but rather on the London Stock Exchange.   Id.   The fact that a small number of ADRs were physically purchased in the United States is not enough to warrant the application of United States law to claims against third parties (as opposed to perhaps Yukos itself)—given that plaintiffs knew that they were investing in a Russian company.

According to the Restatement, "when the interest affected . . . is a business or financial one . . . the place of business is the more important contact." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e.   In evaluating this factor of the Restatement, Russia is the place of business of Rosneftegaz and Rosneft and therefore is the most important contact.   The fourth factor—like the first two—focuses on the relationship between the parties by considering "the place where the relationship, if any, between the parties is centered."   All alleged actions relevant to plaintiffs' claims occurred in Russia.

Plaintiffs' failure to plead the law applicable to this case, Russian law, mandates dismissal.   Philp v. Macri, 261 F.2d 945, 948 (9th Cir. 1958) (holding that plaintiff's complaint was properly dismissed because the plaintiff failed to plead Peruvian law, which governed the action:   "[w]here one country's judicial system is based on the Common Law and the other's on the Civil Law, both systems having been modified by statutory changes, there is little to recommend the employment of a presumption that the law of one is the same as the law of the other").   Nevertheless, plaintiffs' claims fail even if analyzed under the laws of the United States.

## B.    Plaintiffs' Common-Law Fraud and Deceit Claim Must Be Dismissed.

Count VI of the complaint alleges that certain misrepresentations and omissions "induced plaintiffs to *maintain* their ownership of Yukos ADRs through and including December 19, 2004."   Compl. ¶ 231 (emphasis added).   In particular, the fraud claim again points to the same public statements by President Putin and further alleges that all defendants took part in a scheme to "initiate" [ ] . . . frivolous tax claims against Yukos," freeze Yukos's "majority interest in YNG," freeze Yukos's "Russian bank accounts," conduct a sham auction, and create a sham

entity to buy the YNG stock.    Compl. ¶ 236.    This claim is brought only by the three plaintiffs that continue to hold their ADRs.[20]

The entire premise of the plaintiffs' "holders" claim makes no sense.    The theory of the claim is that "but for" the public statements of President Putin, the plaintiffs would not have continued to hold their ADRs but would have sold them.    The problem is that unless these ADR holders would have somehow received an improper jump on the market, once the "truth" came out, the stock price would have efficiently adjusted.    In short, there can be no alleged damages when the statements complained of were public in nature.

Courts that have accepted fraud claims by holders (as opposed to purchasers and sellers) have typically required direct privity between the plaintiff and the defendant as an essential element of the claim.    See, e.g., In re Worldcom, Inc. Sec. Litig., 382 F.Supp.2d 549, 559 (S.D.N.Y. 2005) (noting the need for direct communications, such as face-to-face contact, in common-law fraud claims brought by holders); Gutman v. Howard Sav. Bank, 748 F.Supp. 254, 266 (D.N.J. 1990) (explaining that holder claims are limited to situations involving direct communications); Chanoff v. U.S. Surgical Corp., 857 F.Supp. 1011, 1017 (D. Conn.) aff'd, 31 F.3d 66 (2d Cir. 1994) ("It is settled, however, that to recover for fraud, as for all torts generally a plaintiff must allege injury that is the direct and proximate result of the alleged misconduct."). This direct privity requirement (as opposed to allowing a claim based on a public statement) makes sense in order to explain how one shareholder could get a jump in selling on the market. Even if, *arguendo*, the Court were to allow such a claim, it should require privity as an essential

---

[20]  As discussed above, plaintiffs have not pleaded this claim under Russian law and there is no indication that Russian law would even recognize a tortured claim by holders (as opposed to buyers and sellers) of securities.    As such the complaint should be dismissed.    See Integral Res. (PVT) Ltd., 2004 WL 2758672, at *6 ("[T]he court must dismiss Integral's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because it does not state a cause of action under Ukrainian law." (citation omitted)).

element.   Because Rosneftegaz, Rosneft, and Bogdanchikov are not alleged to be in privity with

plaintiffs, the common-law fraud claims should be dismissed.

Even applying the basic elements of a common-law fraud claim, Count VI should be

dismissed.   It is well-settled that in order to establish common-law fraud, a plaintiff must allege

facts showing:   "(1) a false representation, (2) in reference to [a] material fact, (3) made with

knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the

representation."   Calvetti v. Antcliff, 346 F.Supp.2d 92, 100 (D.D.C. 2004); see also Va. Acad.

of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc., 878 A.2d 1226, 1233

(D.C. 2005).   "A party alleging common-law fraud must establish each and every element

thereof by clear and convincing evidence."   Int'l Cargo Mgmt. Specialists, Inc. v. EG&G

Dynatrend, Inc., Civ. A. No. 91-1360, 1995 WL 170376, at *17 (D.D.C. Mar. 31, 1995).   The

common-law fraud claim is a concocted brew.   It should be dismissed.

### 1. Plaintiffs Do Not Allege Rosneftegaz, Rosneft, or Bogdanchikov Made a False Statement.

Plaintiffs make the general assertion that "[d]efendants made false and misleading

statements," but never plead a specific statement attributed to Rosneftegaz, Rosneft, or

Bogdanchikov.   Compl. ¶ 234.   Indeed, plaintiffs do not allege Rosneftegaz, Rosneft, or

Bogdanchikov made any public statements.

### 2. Plaintiffs' Fraud Claim Must Be Dismissed Because They Fail to Allege Reasonable Reliance.

Unlike a federal securities claim in which plaintiffs allege a "fraud on the market" theory,

plaintiffs must allege specific allegations of reliance as to each plaintiff when pleading under the

common law.   In re Newbridge Networks Sec. Litig., 926 F.Supp. 1163, 1175 (D.D.C. 1996)

(dismissing plaintiffs common-law fraud claim because a "'fraud on the market' theory or a

presumption of reliance [is not] applicable to [the] common law" and because plaintiff failed to

"present individualized, specific allegations of reliance by each plaintiff"). Furthermore, not only must each plaintiffs' reliance be reasonable, it must be substantial. See Va. Acad., 878 A.2d at 1238 ("'The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented, if his reliance is a *substantial* factor in determining the course of conduct that results in his loss.'" (emphasis added))).

In the case at hand, plaintiffs make a general and unsubstantiated statement that the plaintiffs as a whole "relied on the false and deceptive statements by Defendants in deciding to retain their Yukos ADRs." Compl. ¶ 239. But this is clearly insufficient. To maintain their claims, plaintiffs need to plead that each plaintiff actually read or heard a statement made by Rosneftegaz, Rosneft, or Bogdanchikov and then allege how that statement made each plaintiff act (or not act). This is especially important in a holders case in which plaintiffs allege that if they knew the "truth" they would not have held their ADRs. See Small v. Fritz Cos., 65 P.3d 1255, 1265 (Cal. 2003) ("In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place."). But plaintiffs do not plead that they heard or read any statement by Rosneftegaz, Rosneft, or Bogdanchikov, nor do they plead when each plaintiff would have sold his ADRs.

Even were one to look at President's Putin's statements (which were allegedly made in October 2003 and June 2004), and treat those, *arguendo*, as having been made by Rosneftegaz, Rosneft, or Bogdanchikov, the complaint's allegations make it clear that none of the plaintiffs relied on those statements.

According to the complaint, the three plaintiffs who "held" ADRs, purchased them before October 25, 2003.   Those three plaintiffs held their ADRs notwithstanding (i) continuing announcements by Russian tax officials of massive tax assessments, which began in December 2003, (ii) the arrest of the company's CEO in October 2003 and other officers for criminal misconduct,[21] (iii) the repeated freezing of Yukos's assets, which occurred through the spring, summer, and fall of 2004, and (iv) the announcement of the Russian Federation on November 19, 2004, of the auction of YNG.   In fact, these three plaintiffs continue to hold their ADRs to this day.   Given plaintiffs' insufficient pleading of reliance notwithstanding the disclosure of the "truth," this claim must be dismissed.

### 3.    Plaintiffs' Claim for Damages for Fraud is Too Speculative to Support Relief.

Plaintiffs' common-law fraud claim fails because plaintiffs do not plead any damages. In order to have a proper fraud claim, the plaintiff must allege facts establishing, if true, that the fraud caused damage.   See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 793 (D.C. Cir. 1983) ("In order to state a claim for common-law fraud, the plaintiff must allege that the fraud caused him damage . . . ."). "'It is elementary that 'speculative' damage will not support an action for common law fraud.'"   Rafferty v. NYNEX Corp., 60 F.3d 844, 851 (D.C. Cir. 1995) (quoting Naartex, 722 F.2d at 793).

Plaintiffs do not specifically allege how they were damaged by any statement of Rosneftegaz, Rosneft, or Bogdanchikov.   Instead, plaintiffs contend in conclusory fashion that if they had knowledge of the Russian Federation's alleged "intent to re-nationalize Yukos without compensation" they would have "liquidated their Yukos ADRs at a far greater price than the price of the ADRs upon disclosure of Defendants' fraud."   Compl. ¶ 239.   However,

---

[21]  In fact, all Yukos officers but Khodorkovsky were arrested in June 2003.

plaintiffs do not plead facts as to how they would have been able to properly get a jump on the market and sell their Yukos ADRs at a *higher* price if the alleged scheme to renationalize was publicly known.   This is not only sheer speculation, it is counter to the premise that the public markets work freely and efficiently.   See Basic Inc. v. Levinson, 485 U.S. 224, 227 n.24 (1988) (noting that the price of a stock traded on a well-developed market reflects all publicly available information).   Moreover, the fact that the three plaintiffs that bring this claim still retain their Yukos ADRs makes damages all the more uncertain.   Plaintiffs ask this Court to guess *when* plaintiffs would have sold their ADRs upon learning of the alleged scheme and the *value* they might have received for such ADRs.   See Vietnam Veterans Found. v. Erdman, Civ. A. No. 84-0940, 1987 WL 10143, at *9 (D.D.C. Mar. 30, 1987) ("Damages for future consequences that are speculative or conjectural are not recoverable.").

### C.     Plaintiffs' Conversion Claim Should Be Dismissed.

Plaintiffs' conversion claim should be dismissed because any alleged direct damage from this claim is to Yukos, not the ADR holders, and the claim is not properly pleaded under applicable Russian law.   Nevertheless, if the Court applied the law of this forum, the conversion claim should still be dismissed.   To state a claim for conversion, plaintiffs must plead an "unlawful exercise of ownership, dominion, or control, over the personal property of another in denial or repudiation of that person's rights thereto."   Shulman v. Voyou, L.L.C., 251 F.Supp.2d 166, 170 (D.D.C. 2003) (citations omitted).

Plaintiffs allege that "they bring [a] claim for the unlawful conversion of property, namely OAO NK Yukos Oil Company, of which Plaintiffs are partial owners."   Compl. ¶ 181. Indeed, plaintiffs, holders of ADRs, *never* owned the property allegedly converted.   Rather, the property at issue are the assets of Yukos, not the assets of the plaintiffs.   It is a settled rule of corporate law that "[a] shareholder—even one who holds all the shares—does not have legal

ownership of the corporation property.   The title remains in the corporation."   <u>Hutchings</u> v.
<u>Manchester Life & Cas. Mgmt. Corp.</u>, 896 F.Supp. 946, 947 (E.D. Mo. 1995) (citation omitted).
Because a corporation is a separate entity from its "owners," any conversion claim belongs to the
corporation.   <u>See id.</u> at 947 (dismissing a shareholder's conversion claim because "[i]n his
claim for conversion, plaintiff admits that the property at issue is not owned by plaintiff
personally but is owned by [the corporation].   Therefore, the cause of action for conversion
belongs to the corporation . . . and not plaintiff").   Because plaintiffs do not allege that *their*
property, the ADRs, was converted, plaintiffs' conversion claim should be dismissed.

###    D.    Plaintiffs' Purported *Prima Facie* Tort Claim Should Be Dismissed.

In Count V plaintiffs purport to state a claim for *prima facie* tort.   Plaintiffs allege that
"[d]efendants and each of them with a malevolent intent and without justification participated in
the confiscation of Plaintiffs' property through their participation in the uncompensated re-
nationalization of Yukos and the distribution of its assets to state-owned commercial
enterprises."   Compl. ¶ 228.   Just like the conversion claim, the *prima facie* tort claim should
be dismissed because any alleged direct damage from this claim is to Yukos, not the ADR
holders, and the claim is not properly pleaded under applicable Russian law.   But, even under
the law of this forum, the *prima facie* tort claim should be dismissed because the District of
Columbia does not recognize a cause of action for *prima facie* tort.   <u>See Nix</u> v. <u>Hoke</u>, 139
F.Supp.2d 125, 132 n.5 (D.D.C. 2001) ("District of Columbia law has not recognized a cause of
action for *prima facie* tort."); <u>Art Metal-U.S.A., Inc.</u> v. <u>United States,</u> 577 F.Supp. 182, 184
(D.D.C. 1983) ("District of Columbia courts have not embraced a form of generic tort like the
*prima facie* tort."), <u>aff'd</u>, 753 F.2d 1151 (D.C. Cir. 1985); <u>Schwartz</u> v. <u>Franklin Nat'l Bank</u>, 718
A.2d 553, 556-57 (D.C. 1998) (same).

CONCLUSION

For the foregoing reasons, Rosneftegaz, Rosneft, and Bogdanchikov respectfully request that the Court promptly dismiss the complaint with prejudice.


Dated:   May 15, 2006                          Respectfully submitted,


                                               /s/ Adam. P. Strochak
                                               Richard W. Slack
                                               (*pro hac vice*)
                                               Gregory S. Coleman
                                               (*pro hac vice*)
                                               Meredith B. Parenti
                                               Deborah A. Maher
                                               WEIL, GOTSHAL & MANGES LLP
                                               767 Fifth Avenue
                                               New York, NY 10153
                                               Telephone: (212) 310-8000
                                               Facsimile: (212) 310-8004

                                               Adam P. Strochak, Esq.
                                               D.C. Bar No. 439308
                                               WEIL, GOTSHAL & MANGES LLP
                                               1300 Eye Street, N.W., Suite 900
                                               Washington, D.C. 20005
                                               Telephone: (202) 682-7000
                                               Facsimile: (202) 857-0940

                                               **ATTORNEYS FOR OAO ROSNEFTEGAZ, OAO ROSNEFT, AND SERGEY BOGDANCHIKOV**

**CERTIFICATE OF SERVICE**

I certify that on May 15, 2006, this memorandum was filed electronically with the clerk of the court, and that, in the same manner, an electronic copy was served on all counsel of record.

/s/_____
Adam P. Strochak