**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

RICHARD ALLEN, *et al.*,

              Plaintiffs,

    v.

RUSSIAN FEDERATION, *et al.*,

            Defendants.

1:05-cv-02077-CKK

Hon. Colleen Kollar-Kotelly

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
**ALEXEI B. MILLER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

*Attorneys for Defendant Alexei B. Miller*

William M. Sullivan, Jr. (DC Bar No. 467269)
Jane E. Chang (DC Bar No. 476545)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

OF COUNSEL

W. Gordon Dobie
Greg Vamos
Brooke B. Ward
Jennifer M. Erickson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................... 3

I.    THE COMPLAINT AGAINST MILLER MUST BE DISMISSED BECAUSE
      PERSONAL JURISDICTION OVER HIM DOES NOT EXIST ..................................... 3

      A.    The Complaint Contains No Facts Permitting Miller To Be Subject To General Or
            Specific Jurisdiction And Forcing Miller To Defend This Litigation In The
            District Of Columbia Would Violate Traditional Notions Of Fair Play And
            Substantial Justice ................................................................................................ 3

      B.    Personal Jurisdiction Cannot Exist Because Plaintiffs Failed To Effect Service On
            Miller ................................................................................................................... 4

II.   THE ACT OF STATE DOCTRINE, POLITICAL QUESTION DOCTRINE AND
      DOCTRINE OF COMITY ALL REQUIRE THE DISMISSAL OF THE COMPLAINT 7

III.  PLAINTIFFS LACK STANDING TO PURSUE COUNTS I AND V ............................ 7

IV.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF
      *FORUM NON CONVENIENS* .................................................................................... 7

V.    PLAINTIFFS' RICO CLAIMS AGAINST MILLER MUST BE DISMISSED ............... 7

      A.    RICO Cannot Be Applied Extraterritorially In This Case ....................................... 8

      B.    Plaintiffs Lack RICO Standing .............................................................................. 9

      C.    Plaintiffs' RICO Claims Are Barred By The PSLRA ........................................... 11

      D.    Plaintiffs Have Failed To Adequately Plead Their RICO Claims .......................... 13

            1.    Plaintiffs have not alleged a pattern of racketeering activity or the
                  "specific nature" of Miller's participation ................................................. 13

            2.    Count II fails to sufficiently plead that Miller acquired an interest in or
                  control over Yukos .................................................................................... 14

            3.    Count III fails to sufficiently plead an association-in-fact enterprise ....... 15

            4.    Count IV fails to sufficiently plead that Miller was a party to the alleged
                  conspiracy ................................................................................................ 16

VI.   PLAINTIFFS' SECURITIES FRAUD CLAIM IS FRIVOLOUS AND MUST BE
      DISMISSED ........................................................................................................... 17

VII.  PLAINTIFFS' COMMON LAW CAUSES OF ACTION FAIL UNDER U.S. LAW .... 19

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

*Cases*

Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315 (6th Cir. 1999) 15

Amalgamated Bank of New York v. Marsh, 823 F. Supp. 209 (S.D.N.Y. 1993) ........................ 14

Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006) ............................................................ 10

Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321 (3d Cir. 1999) ......................... 11

Bivens Garden Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898 (11th Cir. 1998)
.................................................................................................................................................. 11

Brennan v. Chestnut, 973 F.2d 644 (8th Cir. 1992) ...................................................................... 10

Cadle Co. v. Schultz, 779 F. Supp. 392 (N.D. Tex. 1991) ............................................................ 14

Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc., No. 86-2516, 1987 WL 11085 (D.D.C.
May 8, 1987) ............................................................................................................................. 5

Columbraria Ltd. v. Pimienta, 110 F. Supp. 2d 542 (S.D. Tex. 2000) ......................................... 13

District Telecomm. Dev. Corp. v. District Cablevision, Inc., 638 F. Supp. 418 (D.D.C. 1985) .. 16

Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260 (D.C. Cir. 1995) ........ 14

Florida Evergreen Foliage v. E.I. Du Pont De Nemours & Co., 165 F. Supp. 2d 1345 (S.D. Fla.
2001), aff'd 341 F.3d 1292 (11th Cir. 2003) ........................................................................... 12

Flynn v. Merrick, 881 F.2d 446 (7th Cir. 1989) ........................................................................... 10

Gatz v. Ponsoldt, 297 F. Supp. 2d 719 (D. Del. 2003) ................................................................. 13

Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 787 F. Supp. 458 (E.D. Pa. 1992),
rev'd on other grounds, 988 F.2d 476 (3d Cir. 1993) ................................................................ 6

Hemispherx Biopharma, Inc. v. Asensio, No. CIV. A. 98-5204, 1999 WL 144109 (E.D. Pa. Mar.
15, 1999) .................................................................................................................................. 13

Hollinger Int'l, Inc. v. Hollinger Inc., No. 04 C 0698, 2004 WL 2278545 (N.D. Ill. Oct. 8, 2004)
.............................................................................................................................................. 12, 13

Holmes v. Securities Investor Prot. Corp., 503 U.S. 258 (1992) .................................................. 10

Howard v. America Online Inc., 208 F.3d 741 (9th Cir. 2000) ..................................................... 13

IM Partners v. Debit Direct Ltd., 394 F. Supp. 2d 503 (D. Conn. 2005) ...................................... 5

In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511 (S.D. Tex. 2003)....... 13

In re Ikon Office Solutions, Inc., 86 F. Supp. 2d 481 (E.D. Pa. 2000).......................................... 12

In re Sunrise Sec. Litig., 916 F.2d 874 (3d Cir. 1990).................................................................. 10

In re Yukos Oil Co., 321 B.R. 396 (Bankr. S.D. Tex. 2005).......................................................... 5

Jones v. Meridian Towers Apartments, Inc., 816 F. Supp. 762 (D.D.C. 1993)............................ 16

Lakonia Mgmt. Ltd. v. Meriwether, 106 F. Supp. 2d 540 (S.D.N.Y. 2000) ................................ 10

Leach v. F.D.I.C., 860 F.2d 1266 (5th Cir. 1988)........................................................................ 10

Macri v. Yamauchi, No. 01 C 50168, 2002 WL 390223 (N.D. Ill. Mar. 11, 2002) ...................... 6

Maintenance Dredging, Inc. v. Polaris Ins. Co., Ltd., No. Civ. A. 96-238, 1997 WL 394870 (E.D.
    La. July 9, 1997) ...................................................................................................................... 6

Marine Trading Ltd. v. Naviera Comercial Naylamp S.A., 879 F. Supp. 389 (S.D.N.Y. 1995).... 6

Martinez v. White, slip op., No. C 06-01595, 2006 WL 1530111 (N.D. Cal. June 2, 2006) ......... 6

Nix v. Hoke, 62 F. Supp. 2d 110 (D.D.C. 1999) ........................................................................... 9

North South Fin. Corp. v. Al-Turki, 100 F.3d 1046 (2d Cir. 1996) ............................................... 9

Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97 (1987) ............................................. 4

Pyramid Sec. Ltd. v. I.B. Resolution, Inc., 924 F.2d 1114 (D.C. Cir. 1991)............................... 15

Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843 (2d Cir. 1986)................................................... 10

Reves v. Ernst & Young, 507 U.S. 170 (1993)............................................................................. 16

Roeder v. Alpha Indus., Inc. , 814 F.2d 22 (1st Cir. 1987)........................................................... 10

Sparling v. Hoffman Constr. Co., 864 F.2d 635 (9th Cir. 1988) .................................................. 10

Tyrone Area Sch. Dist. v. Mid-State Bank & Trust, No. CIV 98-881, 1999 WL 703729 (W.D.
    Pa. Feb. 9, 1999) ..................................................................................................................... 12

United States v. Morrow, No. CRIM.A. 04-355, 2005 WL 1389256 (D.D.C. June 13, 2005).... 17

United States v. Richardson, 167 F.3d 621 (D.C. Cir. 1999) ....................................................... 15

United States v. Turkette, 452 U.S. 576 (1981)........................................................................... 16

Wade v. Hopper, 993 F.2d 1246 (7th Cir. 1993) ........................................................ 11

Wagh v. Metris Direct, Inc., 363 F.3d 821 (9th Cir. 2003) ...................................... 14

Warren v. Manufacturers Nat'l Bank, 759 F.2d 542 (6th Cir. 1985) ......................... 10

Western Assoc. Ltd. P'ship v. Market Square Assoc., 235 F.3d 629 (D.C. Cir. 2001).... 11, 14, 15

*Statutes*

15 U.S.C. § 78u-4(b)(4) ............................................................................................. 18

18 U.S.C. § 1962(b) ................................................................................................... 13

18 U.S.C. § 1962(c) ................................................................................................... 13

18 U.S.C. § 1962(d) .............................................................................................. 13, 16

18 U.S.C. § 1964(c) ................................................................................................. 9, 11

*Other Authorities*

H.R. Conf. Rep. No. 104-369 (1995) .......................................................................... 11

Hague Conference on International Law, Russian Federation Reservations and Declarations, available at http://www.hcch.net/index_en.php?act=status.comment& csid=418&disp=resdn. 5

Hague Conference on International Law, Status Report, available at http://www.hcch.net/index_en.php?act=conventions.status&cid=17 ........................................ 5

Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, reprinted in 28 U.S.C.A., Fed. R. Civ. P. 4 appendix ..... 5

*Rules*

Fed. R. Civ. P. 4(f)(1) ................................................................................................. 5

Fed. R. Civ. P. 4(f)(2)(C) ............................................................................................ 5

**INTRODUCTION**

Defendant Alexei B. Miller ("Miller") respectfully moves to dismiss the Complaint filed by plaintiffs, who are holders of American Depository Receipts in Yukos Oil Company, because plaintiffs have failed to provide a basis for jurisdiction over Miller, their claims are barred by the act of state doctrine, the political question doctrine, the doctrine of international comity and the doctrine of *forum non conveniens*, and plaintiffs' federal and common law claims are fatally defective on their face.

Although the Complaint purports to assert serious federal and common law claims against Miller "individually," the Complaint is bereft of a single paragraph alleging a single wrongful act by this alleged defendant. Making their filing against Miller even more egregious, plaintiffs have not alleged any facts subjecting Miller to the jurisdiction of this Court. Instead, in the section identifying "Defendants," the Complaint identifies Miller as the Chairman of the Management Committee of Gazprom. (Compl. ¶¶ 37, 45.) His name is not mentioned in the Complaint again.

This case against Miller is a sham and the Complaint should be dismissed for the following reasons:

First, plaintiffs have failed to plead any facts establishing the basis for personal jurisdiction over Miller. As noted above, there is not one fact alleged in the Complaint that Miller had any contact with the United States as it relates to plaintiffs' specific claims, nor does it allege that Miller has any general United States contacts or property, office or business activities in the United States.

Second, the act of state doctrine, political question doctrine and doctrine of international comity all require the dismissal of the Complaint given that plaintiffs essentially ask that this

Court overturn the Russian Federation's tax assessments against a company in which plaintiffs own ADRs, and the related law enforcement proceedings against Yukos.

Third, given that this matter involves primarily property, witnesses, documents and evidence located in Russia, *forum non conveniens* facts including all "public interest" concerns demonstrate that this matter should be brought in Russia.  Further, with an already pending Russian action by Yukos against Gazprom and others, dismissal is particularly warranted under a *forum non conveniens* analysis.

Fourth, as for plaintiffs' securities fraud claims, not only have plaintiffs failed to plead any false statement made by Gazprom, they certainly have not alleged any securities claim against its Chairman, Miller.

Fifth, with no specific allegations against Miller, plaintiffs hardly allege a criminal RICO case against Miller.

Finally, plaintiffs' common law claims fail to allege any of the necessary elements against Miller.

In the end, and because plaintiffs are apparently relying upon their allegations against Gazprom—which are deficient, Miller will not repeat the time-honored principles requiring the dismissal of plaintiffs' Complaint as already set forth in the brief filed by Gazprom.  Instead, Miller specifically incorporates and adopts those arguments, in full, set forth in the Statement of Points and Authorities in Support of OAO Gazprom's Motion to Dismiss Plaintiffs' Complaint ("Gazprom's Brief") filed on May 15, 2006 (Docket No. 31).

## **BACKGROUND**

Through their Complaint, plaintiffs have brought suit against the Russian Federation, high-ranking Russian Federation officials, Russian oil companies and certain corporate officers,

including Defendant Alexei B. Miller ("Miller"), and other Russian individuals and entities. According to the Complaint, Miller is the Chairman of the Management Committee of Gazprom, the largest oil and gas producer in Russia. (Compl. ¶¶ 31, 37, 72.) The Complaint does not allege that Miller is a citizen or resident of the United States, owns any property in the United States, has conducted any business in the United States or has ever traveled to the United States. In order to avoid overburdening the Court with duplicative pleadings, Miller incorporates by reference the Background section from Gazprom's Brief. (Gazprom Br. at 3-7.)

## ARGUMENT

### I.    THE COMPLAINT AGAINST MILLER MUST BE DISMISSED BECAUSE PERSONAL JURISDICTION OVER HIM DOES NOT EXIST

As noted above, the Complaint does not allege a single contact between Miller and the United States and does not allege that Miller is a resident of the United States, owns any property in the United States, has transacted any business in the United States or has ever traveled to the United States. As shown in Gazprom's Brief (Gazprom Br. § I at 8-16), because plaintiffs have not alleged any contacts by Miller with the United States, personal jurisdiction over Miller simply cannot and does not exist.

#### A.    The Complaint Contains No Facts Permitting Miller To Be Subject To General Or Specific Jurisdiction And Forcing Miller To Defend This Litigation In The District Of Columbia Would Violate Traditional Notions Of Fair Play And Substantial Justice

As demonstrated in Gazprom's Brief, general jurisdiction exists only when it is shown that the defendant has substantial contacts with the forum that "are so continuous and systematic that it could foresee being haled into a court" in the forum. (Gazprom Br. § I(A) at 9-10.) Far from alleging "continuous and systematic" contacts with the U.S. or this District, plaintiffs' allegations concerning Miller demonstrate his overwhelming connection to Russia and his lack

of any cognizable connection to the United States.  Plaintiffs allege that Miller is the Chairman of the Management Committee of Gazprom, a corporation plaintiffs admit is organized, headquartered and does business in the oil and gas industry in the Russian Federation.  (Compl. ¶¶ 31, 37.)  Beyond this basic description of Miller, there is not a single allegation in the Complaint that Miller had any property, assets or business activities in the United States or in this District.  As a result, the Complaint cannot support any theory of general jurisdiction over Miller.

The Complaint also fails to allege any facts supporting any plausible theory of specific personal jurisdiction over Miller.  Specific jurisdiction exists only when the defendant "purposefully" directs his actions at the relevant forum and the cause of action arises out of or relates to those activities.  (Gazprom Br. § I(B) at 11-14.)  Plaintiffs cannot show that their causes of actions against Miller arise from or relate to any possible activities by Miller in a U.S. forum.  As a result, the Complaint cannot support any theory of specific jurisdiction over Miller.

Even if plaintiffs did allege facts sufficient to demonstrate that Miller maintained minimum contacts with the United States—which plaintiffs have failed to do—this Court nevertheless should decline to exercise personal jurisdiction over Miller because doing so would violate traditional notions of fair play and substantial justice.  (Gazprom Br. § I(C) at 14-16.)

### B.    Personal Jurisdiction Cannot Exist Because Plaintiffs Failed To Effect Service On Miller

As a final matter, personal jurisdiction over Miller does not exist because Miller has not been properly served with process.  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).

Plaintiffs argue that they need not effect service on Miller pursuant to the Hague Convention.[1] But even assuming *arguendo* that the Hague Convention was not applicable to the service on Miller, plaintiffs' attempted service on Miller would *still* be insufficient. Plaintiffs claim that they effected service upon Miller under Federal Rule of Civil Procedure 4(f)(2)(C). (Docket Entry No. 39, Plaintiffs' Status Report at 4.)  Rule 4(f)(2)(C) states that "unless prohibited by the law of the foreign country," service may be effected "by (i) delivery to the individual personally of a copy of the summons and the complaint; or (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served." Fed. R. Civ. P. 4(f)(2)(C). The law is clear that to effect service under this section, the party to be served must be *personally* served or must *personally* sign the mail receipt. <u>E.g.</u>,

---

[1]     Plaintiffs have failed to properly effect service on Miller under the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), 20 U.S.T. 361, reprinted in 28 U.S.C.A., Fed. R. Civ. P. 4 appendix.  Plaintiffs admit they have made no attempt to serve Miller through the designated Central Authority.  (Docket Entry No. 39, Plaintiffs' Status Report at 2-3.)  However, Federal Rule of Civil Procedure 4(f)(1) requires that to make effective service in a country that has joined the Hague Convention, service on an individual in such a country must comply with the provisions of the treaty.  Fed. R. Civ. P. 4(f)(1); <u>see also</u> <u>Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc.</u>, Civ. A. No. 86-2516, 1987 WL 11085, at *7-*8 (D.D.C. May 8, 1987); <u>In re Yukos Oil Co.</u>, 321 B.R. 396, 410 n.9 (Bankr. S.D. Tex. 2005); <u>IM Partners v. Debit Direct Ltd.</u>, 394 F. Supp. 2d 503, 511 (D. Conn. 2005) (holding "[p]arties are bound to effect service pursuant to the Hague Convention in countries that are parties to the treaty").  As of 2001, the Russian Federation is a contracting nation to the Hague Convention.  <u>See</u> Hague Conference on International Law, Status Report, available at http://www.hcch.net/index_en.php?act=conventions.status&cid=17.  Although plaintiffs claim in their Status Report filed June 8, 2006 that Russia is no longer recognizing the Hague Convention with respect to the United States (Docket Entry No. 39), there has been no official statement from the Russian Federation that specifically supports plaintiffs' claim.

Under the Hague Convention, an appropriate authority or judicial officer from the United States must send prescribed materials, including the translated summons and complaint and a formal request, to the designated Central Authority of the Russian Federation (The Ministry of Justice) and the Central Authority then will effect service.  Hague Convention, Arts. 3, 5; <u>see also</u> Hague Conference on International Law, Russian Federation Reservations and Declarations, available at http://www.hcch.net/index_en.php?act=status.comment&csid=418&disp=resdn.  Here, however, plaintiffs have attempted to serve Miller only by delivering a copy of the summons and complaint to Gazprom (Docket Entry No. 37) and by sending the summons and complaint to Miller at Gazprom via Federal Express (Docket Entry Nos. 35, 38).  Thus, the attempted service on Miller does not comply with the Hague Convention.

Notably, the Russian Federation has specifically objected to Article 10 of the Hague Convention which states that the Convention "shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad" unless the State of destination objects.  Hague Convention, Art. 10; Hague Conference on International Law, Russian Federation Reservations and Declarations, available at http://www.hcch.net/index_en.php?act=status.comment&csid=418&disp=resdn ("Service of documents by methods listed in Article 10 of the Convention is not permitted in the Russian Federation.").  Accordingly, the attempted service on Miller does not satisfy the Hague Convention and the Complaint must be dismissed.

<u>Martinez v. White</u>, slip op., No. C 06-01595, 2006 WL 1530111, at *1 (N.D. Cal. June 2, 2006) (granting defendants' motion to quash service under Rule 4(f)(2)(C) where plaintiffs delivered copy of summons and complaint addressed to defendant to reception area of jail where defendant was incarcerated and also sent summons and complaint via DHL Express to jail, court found that "plaintiffs have not offered evidence that supports a finding that the summons and complaint were personally delivered to plaintiff").[2]

Here, plaintiffs plainly concede that Miller was never personally served nor did Miller ever personally sign for the mailing. Plaintiffs admit that a private investigator left an envelope containing the summons and complaint with an unidentified security guard at Gazprom's headquarters. (Docket Entry No. 39, Plaintiffs' Status Report at 4.) Plaintiffs also admit that a copy of the summons and complaint were sent to Gazprom and signed for by "Fillipov" at the "Receptionist/Front Desk" area. (Docket Entry No. 39, Plaintiffs' Status Report at 4; Docket Entry No. 38, Ex. 1.) Plaintiffs thus concede that service was never personally made on Miller nor did Miller ever sign for any mailing and, therefore, plaintiffs' attempts at service do not meet the requirements of Rule 4(f)(2)(C). Thus, even if this Court were to assure the appropriateness of service under Rule 4(f)(2)(C), plaintiffs have not effected service on Miller and the Complaint must be dismissed.

---

[2]    <u>See also</u> <u>Macri v. Yamauchi</u>, No. 01 C 50168, 2002 WL 390223, at *3 (N.D. Ill. Mar. 11, 2002) (finding service ineffective under Rule 4(f)(2)(C)(ii) because "[m]ost importantly" the return receipt filed by plaintiff did not appear to have been signed by the defendant); <u>Maintenance Dredging, Inc. v. Polaris Ins. Co., Ltd.</u>, No. Civ. A. 96-238, 1997 WL 394870, at *1 (E.D. La. July 9, 1997) (denying motion to quash under Rule 4(f)(2)(C)(i) where defendant admitted to have been personally served at her home in Costa Rica); <u>Marine Trading Ltd. v. Naviera Comercial Naylamp S.A.</u>, 879 F. Supp. 389, 392 (S.D.N.Y. 1995) (finding service under Rule 4(f)(2)(C)(ii) "ineffective because there is no receipt signed by respondent and no other evidence of delivery"); <u>Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.</u>, 787 F. Supp. 458, 460-61 (E.D. Pa. 1992), rev'd on other grounds, 988 F.2d 476 (3d Cir. 1993) (finding delivery of summons and complaint to receptionist in building in which Spanish citizens maintained office did not constitute effective service, even if receptionist delivered documents to defendants).

II.   **THE ACT OF STATE DOCTRINE, POLITICAL QUESTION DOCTRINE AND DOCTRINE OF COMITY ALL REQUIRE THE DISMISSAL OF THE COMPLAINT**

As set forth in Gazprom's Brief, even if this Court could exercise personal jurisdiction over Miller, the Complaint nevertheless must be dismissed under principles preventing courts from adjudicating acts of state and political questions and from violating settled doctrines of international comity.  (Gazprom Br. § II at 18-22.)

III.  **PLAINTIFFS LACK STANDING TO PURSUE COUNTS I AND V**

As set forth in Gazprom's Brief, plaintiffs lack standing to bring Counts I and V of their Complaint, alleging "conspiracy and common law conversion" and "prima facie tort," because these causes of action seek to recover for alleged injuries to Yukos.  (Gazprom Br. § III at 22-25.)  Accordingly, Counts I and V of the Complaint must be dismissed because plaintiffs lack standing to bring these claims.

IV.  **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

As set forth in Gazprom's Brief, public and private interests weigh overwhelmingly in favor of litigating this suit in the Russian Federation, the location where Defendant Miller resides and has substantial contacts.  (Gazprom Br. § IV at 25-27.)  Further, Yukos itself is already asserting claims against Gazprom and others in the Russian Federation.  (Gazprom Br. at 7.)  Accordingly, plaintiffs' claims should be dismissed under the doctrine of *forum non conveniens*.

V.   **PLAINTIFFS' RICO CLAIMS AGAINST MILLER MUST BE DISMISSED**

Given that Miller's name only appears in the Complaint's list of defendants (and in the caption), it is readily apparent that plaintiffs have not alleged a viable RICO claim under 18

U.S.C. §§ 1962(b), (c) or (d).[3]    Specifically, Count II alleges that, through a pattern of racketeering activity, the defendants (defined to include Miller) "acquired an interest in and/or control of Yukos." (Compl. ¶ 192.)  Count III alleges that the defendants (defined to include Miller) formed an association-in-fact enterprise that engaged in a pattern of racketeering activity. (Compl. ¶ 202.)  And, Count IV alleges that the defendants (defined to include Miller) conspired to commit the violations alleged in Counts II and III.  (Compl. ¶ 217.)

As discussed below, plaintiffs' RICO claims against Miller (and all defendants) should be dismissed for four independent reasons:  (1) RICO cannot be applied extraterritorially in this case; (2) plaintiffs lack RICO standing; (3) plaintiffs' claims are barred by the PSLRA; and (4) plaintiffs have failed to adequately plead their RICO claims against Miller because they have not alleged a "pattern of racketeering activity" or Miller's participation in any such pattern, Count II fails to sufficiently plead that Miller has acquired an interest in or control over Yukos, Count III fails to plead an association-in-fact enterprise and Count IV fails to sufficiently allege that Miller was a party to the alleged conspiracy.

### A.      RICO Cannot Be Applied Extraterritorially In This Case

Plaintiffs seek to apply RICO to foreign defendants and foreign actions that, as discussed in Gazprom's Brief, occurred entirely within the Russian Federation and concerned the Russian Federation's sovereign powers.  This Court should not allow plaintiffs' RICO claims to proceed.

It is well settled that Congress did not reveal any intent to apply RICO to acts occurring wholly outside of the United States—particularly involving a sovereign's actions—and instead intended RICO to be applied only to a "controversy involving significant and material contact

---

[3]        As noted in Gazprom's Brief, on April 5, 2006, counsel for plaintiffs confirmed that plaintiffs are not asserting any RICO claim against Gazprom.  (Gazprom Br. at 2, n.1.)

with the United States."   North South Fin. Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d Cir. 1996).

In Doe I v. State of Israel, this Court recently reaffirmed that extraterritorial application of RICO may occur only in a narrow category of cases.   400 F. Supp. 2d 86, 114-16 (D.D.C. 2005).   The Court found that "Congress focused on the character of the activity—things in the nature of classic organized crime—and the substantial, deleterious effects that such activity has on the United States."   Id. at 115.   Critically, the Doe I Court ruled that even under this "generous construction of the statute," there "is no indication that Congress ever contemplated that RICO would lay the foundation for individual citizens to invalidate a foreign sovereign's internal policies . . . ."   Id. at 116.   Indeed, the Court refused to apply RICO to cover decisions taken by the State of Israel and its instrumentalities regarding the ownership and status of settlements in disputed territories.   Id.   Just as in Doe I, this Court must refrain from applying RICO to the actions alleged because doing so requires an invalidation of the official internal actions of a foreign sovereign and because there can be no claim that this wholly foreign conduct had "substantial, deleterious" effects in the U.S.   Accordingly, Counts II, III and IV should be dismissed.

### B.    Plaintiffs Lack RICO Standing

This Court should also dismiss plaintiffs' RICO claims because plaintiffs have no standing to bring them.   RICO confers a private right of action on "[a]ny person injured in his business or property by reason of a violation of section 1962(c) of this chapter."   18 U.S.C. § 1964(c).   To recover under § 1964(c), plaintiffs must show that the defendant's conduct is the proximate cause of their injury.   Nix v. Hoke, 62 F. Supp. 2d 110, 115 (D.D.C. 1999) (citing

Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (1992)); see also Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991, 1999 (2006).

Here, plaintiffs claim that they have been injured in their business and property because, as a result of defendants' alleged acts, plaintiffs' "investment in Yukos, a company once valued in the billions, is now all but worthless."  (Compl. ¶ 6; see also Compl. ¶¶ 179, 193, 205.)  This indirect injury to the ADR Holders is inadequate to support a RICO claim—particularly against Miller.  All circuits addressing such claims have held that a plaintiff cannot bring an individual action under RICO for injuries to the corporation in which the plaintiffs own stock, absent an injury that is separate and distinct from the injury sustained by the corporation or other shareholders.  E.g., Lakonia Mgmt. Ltd. v. Meriwether, 106 F. Supp. 2d 540, 551 (S.D.N.Y. 2000) ("A decrease in value of a holder's shares which 'merely reflects the decrease in value of the firm as a result of the alleged illegal conduct' is derivation rather than direct in nature and cannot confer individual standing under RICO.") (quoting Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir. 1986)).[4]  The only harm plaintiffs allege is the diminution in value of their

---

[4]     See also Roeder v. Alpha Indus., Inc. , 814 F.2d 22, 30 (1st Cir. 1987) (holding plaintiff "may not maintain an action under RICO in his own right . . . for injury to the corporation and the consequent decline in stock price affecting shareholders generally"); In re Sunrise Sec. Litig., 916 F.2d 874, 880 (3d Cir. 1990) ("Federal courts that have considered the question in shareholder suits all have held that shareholders lack standing to assert RICO claims where their injuries are not direct and distinct from any injury sustained by the corporation and shareholders generally."); Leach v. F.D.I.C., 860 F.2d 1266, 1273-74 (5th Cir. 1988) (affirming dismissal of claim where plaintiffs alleged their stock became worthless due to RICO violations, court found plaintiffs lacked standing under RICO because they had not alleged any injury that was distinct from any injury the corporation may have suffered); Warren v. Manufacturers Nat'l Bank, 759 F.2d 542, 544 (6th Cir. 1985) (holding "diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right" under RICO); Flynn v. Merrick, 881 F.2d 446, 450 (7th Cir. 1989) (holding "in a RICO action, absent a showing of individual and direct injury, shareholders in a corporation injured by a third party in violation of RICO do not have standing to bring individual causes of action"); Brennan v. Chestnut, 973 F.2d 644, 648 (8th Cir. 1992) ("A shareholder may not maintain an action for an injury to a corporation resulting in a diminution in the value of shares under RICO absent a showing of individual and direct injury to the shareholder."); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 640 (9th Cir. 1988) (holding plaintiffs had no standing as shareholders to assert RICO claim where alleged wrong was a fraud on the corporation, court found that circuits that have considered the issue "are unanimous in holding that there is no shareholder standing to assert RICO claims where the harm is derivative of harm to the corporation");

ADR shares as a result of defendants' acts allegedly aimed at Yukos to allegedly "re-nationalize" certain assets of the company. Because these are all clearly injuries suffered directly by Yukos, and not the shareholders, they do not give rise to shareholder standing. Thus, plaintiffs lack standing to assert any RICO claims and, therefore, plaintiffs' Counts II, III and IV should be dismissed.

### C.      Plaintiffs' RICO Claims Are Barred By The PSLRA

Plaintiffs' RICO claims against Miller must be dismissed for the independent reason that all of plaintiffs' RICO claims are barred by the Private Securities Litigation Reform Act ("PSLRA"). Section 107 of the PSLRA amended § 1964(c) of the RICO statute to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). This "amendment was intended not simply 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent a plaintiff from 'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 327 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995)).

Plaintiffs specifically allege that defendants issued "misleading statements concerning the Defendants' actions aimed at the de facto re-nationalization of Yukos." (Compl. ¶¶ 193(c),

---

Bivens Garden Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 908 (11th Cir. 1998) (holding "a shareholder's injuries that result from racketeering activity directed toward a corporation are too indirect to sustain a RICO claim"); cf. Western Assoc. Ltd. P'ship v. Market Square Assoc., 235 F.3d 629, 635 (D.C. Cir. 2001) (finding to extent plaintiffs' partners in limited partnership suffered losses as a result of racketeering activity against the partnership, they were injured indirectly, which does not make them individual victims under RICO) (citing in support Wade v. Hopper, 993 F.2d 1246, 1250 (7th Cir. 1993) (affirming dismissal of shareholders' RICO claim against alleged looters of corporation because shareholders sued individually and not on the corporation's behalf)).

205(c).)  Plaintiffs allege this "scheme" was to secure new investors (at an inflated price) and prevent existing investors from selling their ADRs until Yukos assets were allegedly "re-nationalized."  These contentions plainly raise securities laws issues.

That the PSLRA bar is warranted here is confirmed by the fact that plaintiffs have brought securities laws claims in this lawsuit.  When, as here, plaintiffs bring their securities fraud claims on the same conduct as alleged in the RICO claims, courts find that the RICO claims are barred.  E.g., Florida Evergreen Foliage v. E.I. Du Pont De Nemours & Co., 165 F. Supp. 2d 1345, 1356-59 (S.D. Fla. 2001) (dismissing RICO claims under § 1964(c) after comparing RICO action with a shareholder action to determine if the predicate acts were actionable as securities fraud), aff'd 341 F.3d 1292 (11th Cir. 2003).[5]

Implicitly acknowledging the PSLRA bar to their RICO claims, plaintiffs have attempted to artfully plead around this bar.  Plaintiffs' Complaint divides plaintiffs into two groups:  (1) "Plaintiff Yukos ADR Holders," consisting of those plaintiffs who purchased Yukos ADRs before October 25, 2003 and have not sold; and (2) "Plaintiff Yukos ADR Purchasers," consisting of those plaintiffs who purchased Yukos ADRs after October 25, 2003.  (Compl. ¶¶ 11, 29.)  Only the Plaintiff Yukos ADR "Holders" brought the RICO law claims; only the Plaintiff Yukos ADR "Purchasers" brought the securities law claim.  (Compl. ¶¶ 188, 200.)

However, the PSLRA bars plaintiffs' RICO claims regardless of whether the *particular* plaintiff can bring the securities fraud claim.  All courts addressing the issue have held that it is not necessary that the particular RICO plaintiff be able to maintain a claim for securities fraud; if

---

[5]     See also In re Ikon Office Solutions, Inc., 86 F. Supp. 2d 481, 486 (E.D. Pa. 2000) (same); Tyrone Area Sch. Dist. v. Mid-State Bank & Trust, No. CIV 98-881, 1999 WL 703729, at *4 (W.D. Pa. Feb. 9, 1999) (finding "that the conduct involved in the . . . scheme is actionable under securities laws is evidenced by the SEC's commencement of a suit for violations of federal securities laws"); Hollinger Int'l, Inc. v. Hollinger Inc., No. 04 C 0698, 2004 WL 2278545, at *7 (N.D. Ill. Oct. 8, 2004) (finding RICO claim barred by PSLRA where predicate acts were an integral part of defendants' scheme and were similar to claims in SEC action).

the alleged conduct is actionable as securities fraud, the RICO claim is barred.[6]  Accordingly, plaintiffs' RICO claims must be dismissed.

### D.     Plaintiffs Have Failed To Adequately Plead Their RICO Claims

Aside from the problems with extraterritorial application of RICO, lack of standing and the PSLRA bar, Counts II, III and IV of plaintiffs' Complaint fail because plaintiffs have fallen far short of asserting violations of the United States Criminal Code against defendant Miller, who is listed as a defendant, but the Complaint otherwise lacks any allegations against him— despite having been named "individually."

### 1.     Plaintiffs have not alleged a pattern of racketeering activity or the "specific nature" of Miller's participation

Plaintiffs' RICO claims must be dismissed because plaintiffs have alleged only a single scheme (the alleged de facto re-nationalization of Yukos' assets), a single injury (the alleged loss of Yukos' economic value), and a single victim (Yukos).  To state a claim under RICO, a plaintiff must allege that the defendant engaged, or conspired to engage, in "a pattern of racketeering activity."  18 U.S.C. §§ 1962(b)-(d).  In this Circuit, it is "virtually impossible" for plaintiffs to state a RICO claim based on a "single scheme, single injury and few victims."

---

[6]     E.g., Howard v. America Online Inc., 208 F.3d 741, 749 (9th Cir. 2000) (precluding RICO action where claims implicated conduct which could have been actionable securities fraud despite plaintiffs' lack of standing to assert those claims); Gatz v. Ponsoldt, 297 F. Supp. 2d 719, 731 (D. Del. 2003) ("Whether plaintiffs were purchasers or sellers of securities would only be relevant to the inquiry of their standing to bring a securities fraud claim, whereas [§ 1964(c)] . . . applies regardless of whether a particular plaintiff has standing to bring a civil action under § 10b and Rule 10b-5."); In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 619 (S.D. Tex. 2003) (holding that the RICO bar applies "regardless of whether a particular plaintiff has standing to bring a cause of action under the securities laws"); Columbraia Ltd. v. Pimienta, 110 F. Supp. 2d 542, 548 (S.D. Tex. 2000) (holding RICO bar would apply even though plaintiff was time-barred from suing under Rule 10b-5); Hollinger Int'l, Inc. v. Hollinger Inc., No. 04 C 0698, 2004 WL 2278545, at *7 (N.D. Ill. Oct. 8, 2004) ("[T]he RICO bar operates irrespective of whether the RICO plaintiff has standing to bring a securities claim—i.e., was a purchaser or seller of the company's stock—as long as another plaintiff could bring a securities action based on the alleged conduct."); Hemispherx Biopharma, Inc. v. Asensio, No. CIV. A. 98-5204, 1999 WL 144109, at *4 (E.D. Pa. Mar. 15, 1999) (holding that the RICO amendment barred suit even though particular plaintiffs had no cause of action under Section 10(b)).

Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265 (D.C. Cir. 1995); see also Western Assocs. Ltd. P'ship v. Market Square Assocs., 235 F.3d 629, 634 (D.C. Cir. 2001) (finding plaintiffs' allegations of "only a single scheme, a single injury, and a single victim (or single set of victims)" could not support plaintiffs' RICO claim and were "more accurately characterized as a single effort to diminish the value of [plaintiffs'] partnership interest"). As a matter of law, therefore, plaintiffs' allegations cannot support a finding that there was a "pattern of racketeering activity."

Additionally, plaintiffs' RICO claims should be dismissed because plaintiffs fail to make any allegation that Miller participated in any alleged pattern of racketeering activity. E.g., Amalgamated Bank of New York v. Marsh, 823 F. Supp. 209, 216 (S.D.N.Y. 1993) (finding that "the complaint must disclose the specific nature of each defendants' alleged participation"). In fact, plaintiffs' Complaint contains absolutely no reference to Miller after the initial (and only) references to Miller in the list of defendants. (Compl. ¶¶ 37, 45). Accordingly, Counts II, III, and IV must be dismissed.

### 2. Count II fails to sufficiently plead that Miller acquired an interest in or control over Yukos

Count II must also be dismissed because it fails to establish that Miller—or any other defendant—"acquired an interest in or control of" Yukos. To avoid dismissal for failure to state a claim under § 1962(b), "a plaintiff must articulate how each defendant acquired or maintained an interest in an enterprise, or acquired control of an enterprise, by means of racketeering activity." Cadle Co. v. Schultz, 779 F. Supp. 392, 397 (N.D. Tex. 1991); see also Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003) (affirming dismissal of § 1962(b) claim because plaintiff "did not include more than the vaguest allusions to the acquisition or maintenance of any interest in or control of the alleged enterprise"); Advocacy Org. for Patients

& Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 329 (6th Cir. 1999) (affirming dismissal of § 1962(b) claim because plaintiff pled only a legal conclusion by "simply parrot[ing] the language of the RICO statute").

Here, plaintiffs' conclusory allegation that "all defendants acquired an interest in and/or control of Yukos," (Compl. ¶ 192), is grossly deficient and completely contradicted by other paragraphs of the Complaint that discuss the sale of certain Yukos' asset (Compl. ¶¶ 169-70). Indeed, plaintiffs have not alleged any facts capable of supporting any inference that Miller secured a proprietary interest in or operational control over Yukos. Accordingly, Count II must be dismissed.

### 3. Count III fails to sufficiently plead an association-in-fact enterprise

Plaintiffs' Count III, alleging a violation of § 1962(c) claiming that defendants were an association-in-fact that engaged in racketeering activity (Compl. ¶¶ 202, 205), also fails because plaintiffs have not sufficiently pled an association-in-fact enterprise nor have plaintiffs alleged any participation by Miller in the management or control of any such enterprise.

A violation of § 1962(c) requires "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Western Assocs. Ltd. P'ship v. Market Square Assocs., 235 F.3d 629, 633 (D.C. Cir. 2001) (quoting Pyramid Sec. Ltd. v. I.B. Resolution, Inc., 924 F.2d 1114, 1117 (D.C. Cir. 1991)). This Circuit specifically requires that an association-in-fact enterprise have three characteristics: "(1) a common purpose among the participants, (2) organization, and (3) continuity." United States v. Richardson, 167 F.3d 621, 625 (D.C. Cir. 1999). Here, however, Count III does not identify any organization or continuity among Miller and the defendants, who are the alleged participants in the enterprise. Additionally, an "'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of

15

activity in which it engages." United States v. Turkette, 452 U.S. 576, 583 (1981); see also District Telecomm. Dev. Corp. v. District Cablevision, Inc., 638 F. Supp. 418, 421 (D.D.C. 1985) (dismissing RICO allegations where the only "common denominator" among defendants in the alleged enterprise was their involvement in the particular transaction that was the subject of the suit, court stated that the enterprise must have an existence apart from the acts of racketeering).

Moreover, Count III fails because plaintiffs do not allege any facts demonstrating that Miller "participate[d] in the operation or management of the enterprise itself" required for liability under § 1962(c). Reves v. Ernst & Young, 507 U.S. 170, 179, 185 (1993) (holding that a defendant must have "*some* part in directing the enterprise's affairs") (emphasis in original); see also Jones v. Meridian Towers Apartments, Inc., 816 F. Supp. 762, 772 (D.D.C. 1993) (noting "the commission of predicate acts violates § 1962(c) 'only when those acts were through the vehicle through which a defendant conduct[ed] or participat[ed] . . . in the conduct of [the] enterprise's affairs'") (citation omitted) (alterations in original). Plaintiffs' Complaint, however, contains only conclusory allegations about the defendants generally and contains *no* specific allegations against Miller, much less that Miller participated in the operation or management of the alleged enterprise. Accordingly, plaintiffs' Count III should be dismissed.

### 4. Count IV fails to sufficiently plead that Miller was a party to the alleged conspiracy

Plaintiffs have fallen far short of asserting a viable claim against Miller under § 1962(d). (Compl. ¶¶ 211-26.)  Subsection (d) makes it unlawful "to conspire to violate any of the provisions of subsection (a), (b), or (c)" of RICO.  18 U.S.C. § 1962(d).  In order to prove a RICO conspiracy in violation of § 1962(d), a plaintiff must establish:  "(1) that two or more people agreed to commit a substantive RICO offense, and (2) that the defendant knew of and

agreed to the overall objective of the RICO offense." United States v. Morrow, No. CRIM.A. 04-355, 2005 WL 1389256, at *12 (D.D.C. June 13, 2005) (Kollar-Kotelly, J.) (citations omitted); see also Doe I v. State of Israel, 400 F. Supp. 2d at 120 (dismissing RICO conspiracy count, court found plaintiffs failed to adequately plead subjective agreement or intent of defendants necessary to form a conspiracy actionable under § 1962(d)) (citing Salinas v. United States, 522 U.S. 52, 63-65 (1997)).

Here, Count IV does not make *any* direct allegation against or *any* reference to Miller. (Compl. ¶¶ 211-26.)    Rather, plaintiffs make bare, conclusory allegations against the "conspirators" without any discussion of whether any of these "conspirators" knew of or agreed to the overall objective of the RICO offense.  Plaintiffs incorporate by reference the preceding 210 paragraphs of the Complaint into Count IV, but these paragraphs do not contain any allegation against Miller, much less any allegation that Miller "knew of and agreed to the overall objective of the RICO offense."  Plaintiffs have failed to allege *any* facts suggesting that Miller was part of a conspiracy.  Therefore, Count IV against Miller should be dismissed.

## VI.    PLAINTIFFS' SECURITIES FRAUD CLAIM IS FRIVOLOUS AND MUST BE DISMISSED

In Count VII of their Complaint, plaintiffs defy logic and law and attempt to hold Miller—the Chairman of the Management Committee of a corporation in which plaintiffs do not allege to have purchased or held any shares—liable for securities fraud under the United States Securities Exchange Act.  As demonstrated in Gazprom's Brief, even if this Court permitted U.S. securities laws to be extended to extraterritorially embrace the alleged conduct of Russian actors (Gazprom Br. § V at 28-29), plaintiffs' securities fraud claim is absurd and must be dismissed for failing to state essential elements of a claim under the Exchange Act.  (Gazprom Br. § VI at 30-35.)

The first flaw in plaintiffs' claim is that plaintiffs have failed to allege Miller made *any* statements or omissions, misleading or otherwise, in connection with any of the allegations in the Complaint. The only allegations in the Complaint that could conceivably be read to include Miller are general, conclusory allegations regarding unspecified "misrepresentations and omissions" made by "all Defendants." (Compl. ¶¶ 85, 129, 136, 234, 241.) As demonstrated in Gazprom's Brief, such allegations are plainly insufficient to meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b). (Gazprom Br. § VI(A) at 31.)

The second fatal flaw in plaintiffs' claim is that it is premised on the untenable position that either an omission or a misstatement by the Chairman of the Management Committee of one corporation can form the basis of an Exchange Act claim by shareholders of another, unrelated, antagonistic corporation. As shown in Gazprom's Brief, this proposition likewise does not withstand scrutiny. (Gazprom Br. § VI(B) at 31-33.)

Along with the failure to allege any statement or omission by Miller, the Complaint fails to allege that Miller specifically engaged in any misconduct with scienter. As demonstrated in Gazprom's Brief, because plaintiffs have not pled that Miller made any specific statement or omission, it cannot show that Miller acted with scienter in regard to its content. (Gazprom Br. § VI(C) at 33.) Plaintiffs fall far short of stating "with particularity facts giving rise to a strong inference" of Miller's scienter. 15 U.S.C. § 78u-4(b)(4). This is an independent reason to dismiss the securities fraud claim.

Finally, plaintiffs cannot claim that they could have reasonably relied on any (unknown) statement from Miller. (Gazprom Br. § VI(D) at 33-35.)

For all the above reasons, plaintiffs have failed to state a claim and Count VII must be dismissed.

## VII.    PLAINTIFFS' COMMON LAW CAUSES OF ACTION FAIL UNDER U.S. LAW

Plaintiffs have also attempted to allege a number of "common-law" claims.  As shown in Gazprom's Brief, assuming for the sake of argument that U.S. law governs, these claims must also be dismissed.  (Gazprom Br. § VII at 36-43.)

Count I of the Complaint, alleging the "unlawful conversion of . . . OAO NK Yukos Oil Company" (Compl. ¶ 181), must be dismissed because, in addition to lacking standing to bring this claim, plaintiffs fail to allege that Miller ever exercised the required ownership, dominion or control over plaintiffs' property.  (Gazprom Br. §§ III at 22-25, VII(A) at 36-37.)

Count V of the Complaint, which purports to state a claim for "prima facie tort" (Compl. ¶ 228), must be dismissed because, in addition to plaintiffs' lack of standing, the District of Columbia does not recognize a cause of action for such a tort and plaintiffs have failed to plead "prima facie tort" as required by the few jurisdictions that do recognize such an action. (Gazprom Br. §§ III at 22-25, VII(B) at 37-39.)

Count VI of the Complaint, alleging "Defendants made false and misleading statements" that "induced plaintiffs to maintain their ownership of Yukos ADRs" (Compl. ¶¶ 234, 231), must be dismissed because plaintiffs fail to plead fraud with the requisite specificity, seek damages that are too speculative and fail to allege reasonable reliance.  (Gazprom Br. § VII(C) at 39-43.) Notably, plaintiffs' fraud claim against Miller suffers the same fatal defect as its fraud claim against Gazprom:  plaintiffs provide only conclusory allegations and fail to make any reference to any statement by Miller.  (Compl. ¶¶ 239, 235.)  Thus, Count VI against Miller should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Alexei B. Miller respectfully requests that the Court promptly dismiss plaintiffs' Complaint in its entirety.

Dated:  June 20, 2006

Respectfully submitted,

_/s/ William M. Sullivan, Jr._____
William M. Sullivan, Jr. (DC Bar No. 467269)
Jane E. Chang (DC Bar No. 476545)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Telephone:  (202) 282-5000
Facsimile:  (202) 282-5100

OF COUNSEL

W. Gordon Dobie
Greg Vamos
Brooke B. Ward
Jennifer M. Erickson
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 558-5600

*Attorneys for Defendant Alexei B. Miller*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2006, this motion was electronically filed with the Clerk of the Court and that, in the same manner, an electronic copy was served on all counsel of record.

_____