## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------- x

RICHARD ALLEN, et al.,                          )
                                      )

       Plaintiffs,                               )

                                       )
       v.                                         )     Case No: 1:05-cv-02077-CKK
                                       )     Hon. Colleen Kollar-Kotelly

RUSSIAN FEDERATION, et al.                      )

                                       )
       Defendants                                )

------------------------------------------------------------- x

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED JOINT MOTION TO DISMISS BY OAO ROSNEFTEGAZ, OAO ROSNEFT, SERGEY BOGDANCHIKOV, AND NIKOLAI BORISENKO

Richard W. Slack
(*pro hac vice*)
Gregory S. Coleman
(*pro hac vice*)
Meredith B. Parenti
Deborah A. Maher
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8004

Adam P. Strochak, Esq.
D.C. Bar No. 439308
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 6

    The Parties ................................................................................................................ 6

    The Russian Federation's Sovereign Acts with Respect to Yukos...................... 7

    Statements made "on behalf of" Rosneftegaz and Rosneft ................................. 8

    Yukos's Attempts to Avail Itself of a U.S. Bankruptcy Court ......................... 10

I.    ROSNEFTEGAZ IS IMMUNE UNDER THE FOREIGN SOVEREIGN
      IMMUNITIES ACT............................................................................................. 11

    A.    Rosneftegaz Is Immune as an Agency or Instrumentality of the State ................ 11

    B.    None of the Exceptions to Sovereign Immunity Applies ..................................... 13

         1.    The Commercial-Activity Exception Does Not Apply........................... 14

             (a)    The acts that form the basis of this suit are sovereign rather
                  than commercial in nature............................................................ 15

             (b)    There is no direct effect in the United States................................ 18

         2.    The Expropriation Exception Does Not Apply........................................ 20

II.   ROSNEFTEGAZ, ROSNEFT, BOGDANCHIKOV, AND BORISENKO ARE
      NOT SUBJECT TO THE COURT'S PERSONAL JURISDICTION ........................... 22

    A.    Post-Complaint Contacts Are Not Relevant to the Court's Jurisdiction.............. 23

    B.    The Court Lacks Statutory Authority to Assert Personal Jurisdiction Over
        This Dispute........................................................................................................ 24

         1.    The District's Jurisdictional Statutes Do Not Support Personal
             Jurisdiction.............................................................................................. 24

         2.    Plaintiffs Fail to Allege Sufficient Nationwide Contacts ........................ 25

    C.    Asserting Personal Jurisdiction Over Rosneftegaz, Rosneft,
        Bogdanchikov, and Borisenko Would Violate Due Process ............................... 27

         1.    Plaintiffs Do Not Allege a Prima Facie Case of General
             Jurisdiction.............................................................................................. 28

         2.    Plaintiffs Also Fail to State a Prima Facie Case of Specific
             Jurisdiction.............................................................................................. 29

         3.    Exercising Personal Jurisdiction Would Offend Due Process
             Because It Would Unreasonably Burden Rosneftegaz, Rosneft,
             Bogdanchikov, and Borisenko and Further No Interest of the
             District of Columbia ............................................................................... 30

i

**TABLE OF CONTENTS**
(continued)

Page

III.    THE ACT-OF-STATE DOCTRINE REQUIRES DISMISSAL OF THIS CASE ......... 31

IV.    PLAINTIFFS LACK STANDING TO BRING THE RICO, CONVERSION, CONSPIRACY TO COMMIT CONVERSION, UNJUST ENRICHMENT, AND EXPROPRIATION CLAIMS ................................................................................... 33

V.    THIS CASE SHOULD BE DISMISSED ON GROUNDS OF FORUM NON CONVENIENS BECAUSE RUSSIA IS AN ADEQUATE ALTERNATIVE FORUM AND THE PRIVATE AND PUBLIC INTERESTS FAVOR DISMISSAL ...................................................................................................... 36

    A.    Russia Provides an Adequate Alternate Forum ................................... 37

    B.    The Private and Public Interests Weigh in Favor of Dismissal .......................... 38

        1.    Private Interests.................................................................................. 38

            (a)    Access to Sources of Proof.......................................................... 39

            (b)    Convenience of the Parties........................................................... 40

        2.    The Minimal Interest of the Public in Retaining This Action in the District of Columbia Warrants Dismissal................................ 40

            (a)    Burdening the Court.................................................................... 40

            (b)    Russian Law Applies to Plaintiffs' Common-Law Claims.......... 41

            (c)    Competing Interests of the Forum .............................................. 42

VI.    THE COURT LACKS JURISDICTION TO APPLY U.S. FEDERAL LAWS EXTRATERRITORIALLY................................................................................ 42

    A.    The United States Securities Laws Do Not Apply to Claims Where All Alleged Acts Occurred in a Foreign Country and Only Incidental Effects Are Felt in the United States........................................................................ 42

    B.    At a Minimum, the Federal Securities Laws Do Not Apply to the Claims of the Foreign Plaintiffs Where the Alleged Conduct Occurred Outside the United States ........................................................................................... 44

    C.    RICO Does Not Apply Where All Alleged Acts Occurred in a Foreign Country and Only Incidental Effects Are Felt in the United States.................... 45

VII.    PLAINTIFFS HAVE FAILED TO STATE A VALID CLAIM OF EXPROPRIATION IN VIOLATION OF INTERNATIONAL LAW ............................ 46

VIII.    ROSNEFT, BOGDANCHIKOV, AND BORISENKO DID NOT COMMIT SECURITIES FRAUD ..................................................................................... 47

    A.    The Basic Elements of a § 10(b) Claim ............................................... 47

**TABLE OF CONTENTS**
(continued)

Page

B.  Plaintiffs Fail to Allege False Statements by Bogdanchikov, Borisenko, or Rosneft ................................................................................................. 49

    1.  The Amended Complaint Alleges No False Statement by Bogdanchikov or Borisenko ................................................................. 49

    2.  Rosneft's Alleged Statements Are Insufficient to State a Federal Securities Fraud Claim ..................................................................... 50

    3.  Bogdanchikov, Borisenko, and Rosneft Cannot Be Secondarily Liable for Statements Made by Others ......................................... 51

C.  Rosneft, Bogdanchikov, and Borisenko Owed No Duty to Plaintiffs ................ 52

D.  Plaintiffs Fail to Plead Reasonable Reliance ...................................................... 52

E.  Rosneft, Bogdanchikov, and Borisenko Did Not Act with Scienter.................... 54

F.  Plaintiffs Lack Standing to Bring a Securities Claim ......................................... 55

IX.  EVEN IF RICO CAN BE APPLIED EXTRATERRITORIALLY, PLAINTIFFS' RICO CLAIMS AGAINST BOGDANCHIKOV AND BORISENKO MUST BE DISMISSED ........................................................................................................ 56

A.  The RICO Claims Are Barred by the PSLRA ..................................................... 56

B.  The Predicate Acts Are Insufficiently Pleaded as a Matter of Law.................... 58

C.  Plaintiffs Have Not Alleged a Pattern of Racketeering Activity ......................... 60

X.  THE COMMON-LAW CLAIMS SHOULD BE DISMISSED ...................................... 61

A.  Russian Law Must Be Applied to Plaintiffs' Common-Law Claims .................. 61

    1.  Russia Has the Greater Governmental Interest in the Application of Its Law ....................................................................................... 62

    2.  Russia Has the Most Significant Relationship to This Dispute .............. 62

XI.  PLAINTIFFS' COMMON-LAW FRAUD AND DECEIT CLAIM MUST BE DISMISSED ........................................................................................................ 64

A.  Plaintiffs Have Not Alleged the Elements of Common-Law Fraud .................... 65

    1.  Plaintiffs Do Not Allege Bogdanchikov or Borisenko Made a False Statement........................................................................................ 65

    2.  Plaintiffs Fail to Plead with Particularity an Essential Element of Common Law Fraud Against Rosneft ................................................ 65

    3.  Plaintiffs Fail to Allege Reasonable Reliance ......................................... 66

    4.  Plaintiffs' Claim for Damages for Fraud is too Speculative to Support Relief........................................................................................ 67

**TABLE OF CONTENTS**
**(continued)**

Page

|   | B. | Plaintiffs that "Maintained" Their Yukos ADRs Cannot State a Claim ............ 67 |

XII. PLAINTIFFS HAVE FAILED TO PLEAD AN AIDING-AND-ABETTING COMMON-LAW FRAUD AND DECEIT CLAIM ........................................................ 69

XIII. PLAINTIFFS' CLAIM ALLEGING CONSPIRACY TO COMMIT COMMON-LAW CONVERSION SHOULD BE DISMISSED ........................................................ 70

XIV. PLAINTIFFS CONVERSION CLAIM SHOULD BE DISMISSED ............................ 72

XV. PLAINTIFFS FAIL TO STATE A CLAIM FOR RESTITUTION BASED ON UNJUST ENRICHMENT ........................................................................................ 73

CONCLUSION ............................................................................................................. 74

# TABLE OF AUTHORITIES

**Page**

Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n
    176 F.3d 315, 329 (6th Cir. 1999) ...................................................................61

Antares Aircraft L.P. v. Federal Republic of Nigeria,
    999 F.2d 33 (2d Cir. 1993)..............................................................................19, 20

Anza v. Ideal Steel Supply Corp.
    126 S.Ct. 1991 (2006)...........................................................................................35

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989).........................................................................................25, 42

Arriba Ltd. v. Petroleos Mexicanos,
    962 F.2d 528 (5th Cir. 1992) ..........................................................................14, 18

Asahi Metal Indus. Co. v. Super. Ct.,
    480 U.S. 102 (1987)........................................................................................30, 31

At the Airport v. ISATA, LLC
    No. 05 CV 3544, 2006 WL 1898057, (E.D.N.Y July 5, 2006) .........................36

BCCI Holdings (Lux.), Societe Anonyme v. Mahfouz,
    828 F.Supp. 92 (D.D.C. 1993)............................................37, 38, 39, 40, 41

Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.
    189 F.3d 321 (3d Cir. 1999)................................................................................56

Banco Nacional de Cuba v. Sabbatino,
    376 U.S. 398 (1964).........................................................................................31, 46

Base Metal Trading Ltd. v. Russian Aluminum,
    98 F. App'x 47 (2d Cir. 2004) .............................................................................38

Basic Inc. v. Levinson,
    485 U.S. 224 (1988)..............................................................................................67

Bennett v. Kiggins,
    377 A.2d 57 (D.C. 1977) .....................................................................................65

Berman v. Metzger,
    1981 WL 1596 (D.D.C. Feb. 9, 1981) ................................................................52

## TABLE OF AUTHORITIES
### (continued)

**Page**

Bersch v. Drexel Firestone, Inc.,
    519 F.2d 974 (2d Cir. 1975).................................................................................45

Blythe v. Deutsche Bank AG,
    399 F.Supp.2d 274 (S.D.N.Y. 2005)....................................................................57

Brazlin v. W. Sav. & Loan Ass'n
    No. 91-0078-PHX-SMM, 1994 WL 374286 (D. Ariz. Jan. 28, 1994) ...............35

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985).............................................................................23, 29, 30, 48

Bykov v. Radisson Hotels Int'l, Inc.
    No. 05-1280 ADM/JSM, 2006 WL 752942 (D. Minn. Mar. 22, 2006) ............35

Byrd v. Corporacion Forestal y Industrial de Olancho S.A.,
    182 F.3d 380 (5th Cir. 1999) ..............................................................................15

CTS Corp. v. Dynamics Corp. of Am.,
    481 U.S. 69 (1987)...............................................................................................38

Calvetti v. Antcliff,
    346 F.Supp.2d 92 (D.D.C. 2004) ........................................................................65

Central Bank of Denver v. First Interstate Bank of Denver,
    511 U.S. 164 (1994)...................................................................................5, 51, 52

Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. Rosvoorouzhenie',
    172 F.Supp.2d 79 (2001) .....................................................................................62

Cooper v. O'Connor
    99 F.2d 135 (D.C. Cir. 1938).........................................................................71, 72

Columbraria Ltd. v. Pimienta,
    110 F.Supp.2d 542 (S.D. Tex. 2000) ..................................................................57

Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil,
    212 F.Supp.2d 30 (D.D.C. 2002)..........................................................39, 40, 41

Danielsen v. Burnside-Ott Aviation Training Center, Inc.,
    941 F.2d 1220 (D.C. Cir. 1991) ..........................................................................59

## TABLE OF AUTHORITIES
### (continued)

Page

Daisley v. Riggs Bank, N.A.
        372 F.Supp.2d 61 (D.D.C. 2005) ...................................................70

Davis v. SPSS, Inc.
        385 F.Supp.2d 697 (N.D. Ill. 2005) ...............................................55

Dayton v. Czechoslovak Socialist Republic,
        834 F.2d 203 (D.C. Cir. 1987).........................................12, 22, 32

Decker v. Glenfed, Inc. (In re GlenFed, Inc. Sec. Litig.)
        60 F.3d 591 (9th Cir. 1995) ...........................................................52

de Sanchez v. Banco Cent. de Nicar.,
        770 F.2d 1385 (5th Cir. 1985) ................................................17, 21

DiLeo v. Ernst & Young,
        901 F.2d 624 (7th Cir. 1990) ........................................................49

Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin
        135 F.3d 837 (2d Cir. 1998)...........................................................52

Doe I v. State of Israel,
        400 F.Supp.2d 86 (D.D.C. 2005)...............................26, 27, 45, 61

Doe I v. Unocal Corp.,
        395 F.3d 932 (9th Cir. 2002) ........................................................45

Dole Food Co. v. Patrickson,
        538 U.S. 468 (2003).............................................................11, 25

Dove v. Wash. Metro. Area Transit Auth.
        402 F.Supp.2d 91 (D.D.C. 2005)..................................................70

Dunkwu v. Neville,
        575 A.2d 293 (D.C. 1990) .............................................................63

EEOC v. Arabian Am. Oil Co.,
        499 U.S. 244 (1991)......................................................................42

E.E.O.C. v. St. Francis Xavier Parochial Sch.,
        117 F.3d 621 (D.C. Cir. 1997).........................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page**

Edmondson & Gallagher v. Alban Towers Tenants Ass'n,
    48 F. 3d 1260 (D.C. Cir. 1995) ..................................................................60

Ernst & Ernst v. Hochfelder
    425 U.S. 185 (1976) ...................................................................................54

Fezzani v. Bear, Stearns & Co., Inc.,
    No. 99 CIV 0793, 2005 WL 500377 (S.D.N.Y. Mar. 2, 2005) ..........................66

Filartiga v. Pena-Irala
    630 F.2d 876, 881 (2d Cir. 1980) ...............................................................47

Filler v. Hanvit Bank
    No. 01 Civ. 9510, 2003 WL 22110773 (S.D.N.Y. 2003) ...............................69

Fla. Evergreen Foliage v. E.I. Du Pont de Nemours & Co.,
    165 F.Supp.2d 1345 (S.D. Fla. 2001) ........................................................56

Foley Bros., Inc. v. Filardo,
    336 U.S. 281 (1949) ...................................................................................42

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
    528 U.S. 167 (2000) ...................................................................................33

Garb v. Republic of Poland
    440 F.3d 579 (2d Cir. 2006) ...............................................14, 16, 17, 18

Gatz v. Ponsoldt,
    297 F.Supp.2d 719 (D. Del. 2003) .............................................................57

Gianascio v. Giordano
    No. 99 CV 1796 GBD, 2003 WL 22999454 (S.D.N.Y. Dec. 19, 2003) ............35

Goldin v. Primavera Familienstiftung, Tag Assocs. (In re Granite Partners L.P.)
    194 B.R. 318 (Bankr. S.D.N.Y. 1996) .......................................................34

Graves v. United States,
    961 F.Supp. 314 (D.D.C. 1997) .................................................................71

Green Leaf Nursery v. E.I. DuPont de Nemours & Co.
    341 F.3d 1292 (11th Cir. 2003) .................................................................57

viii

# TABLE OF AUTHORITIES
## (continued)

Page

Greenpeace, Inc. (U.S.A.) v. State of France,
 946 F.Supp. 773 (C.D. Cal. 1996) ................................................................22

GTE New Media Servs. Inc. v. BellSouth Corp.
 199 F.3d 1343 (D.C. Cir. 2000) ................................................................27

Gulf Oil Corp. v. Gilbert
 330 U.S. 501 (1947) ................................................................37

Gutman v. Howard Sav. Bank
 748 F.Supp. 254 (D.N.J. 1990) ................................................................69

Halberstam v. Welch,
 705 F.2d 472 (D.C. Cir. 1983) ................................................69, 70, 71, 72

Hammerman v. Peacock
 607 F.Supp. 911 (D.D.C. 1985) ................................................................49

Haven v. Rzeczpospolita Polska,
 68 F.Supp.2d 947 (N.D. Ill. 1999) ................................................................16

Helicopteros Nacionales de Colom. v. Hall,
 466 U.S. 408 (1984) ................................................................27, 28, 29

Hemispherx Biopharma, Inc. v. Asensio, No. CIV A. 98-5204,
 1999 WL 144109 (E.D. Pa. Mar. 15, 1999) ................................................................57

Herbage v. Meese,
 747 F.Supp. 60 (D.D.C. 1990) ................................................................14

Hercules & Co., Ltd. v. Shama Rest. Corp.,
 566 A.2d 31 (D.C. 1989) ................................................................61, 62, 63

Hirsh v. State of Israel,
 962 F.Supp. 377 (S.D.N.Y.) ................................................................21

Hollinger Int'l, Inc. v. Hollinger Inc.,
 No. 04 C 0698, 2004 WL 2278545 (N.D. Ill. Oct. 8, 2004) ................................................................56, 58

Howard v. America Online Inc.,
 208 F.3d 741 (9th Cir. 2000) ................................................................57

# TABLE OF AUTHORITIES
## (continued)

Page

Howard v. S.E.C.,
    376 F.3d 1136 (D.C. Cir. 2004) ...................................................................54

Hutchings v. Manchester Life and Cas. Mgmt. Corp.,
    896 F.Supp. 946 (E.D. Mo. 1995) ..........................................................34, 73

IMO Indus., Inc. v. Kiekert AG,
    155 F.3d 254 (3d Cir. 1998) ...............................................................29, 30

In re Baan Co. Sec. Litig.,
    103 F.Supp.2d 1 (D.D.C. 2000) ..................................................27, 43, 44, 50

In re Copper Mountain Sec. Litig.,
    311 F.Supp.2d 857 (N.D. Cal. 2004) .............................................................6

In re Disaster at Riyadh Airport, Saudi Arabia on Aug. 19, 1980,
    540 F.Supp. 1141 (D.D.C. 1982) ...........................................................36, 37, 39

In re Enron Corp. Sec. Derivative & ERISA Litig.,
    284 F.Supp.2d 511 (S.D. Tex. 2003) ..........................................................57

In re Ikon Office Solutions, Inc.,
    86 F.Supp.2d 481 (E.D. Pa. 2000) ............................................................56

In re Interbank Funding Corp. Sec. Litig.,
    329 F.Supp.2d 84 (D.D.C. 2004) ...........................................................48, 49

In re NAHC, Inc. Sec. Litig.,
    306 F.3d 1314 (3d Cir. 2002) ................................................................55

In re Newbridge Networks Sec. Litig.,
    926 F.Supp. 1163 (D.D.C. 1996) ...........................................................50, 66

In re U.S. Office Prods. Sec. Litig.,
    326 F.Supp.2d 68 (D.D.C. 2004) ...........................................................48, 49

In re Vitamins Antitrust Litig.,
    94 F.Supp.2d 26 (D.C. Cir. 2000) ............................................................26

In re Worldcom, Inc. Sec. Litig.,
    382 F.Supp.2d 549 (S.D.N.Y. 2005) .........................................................69

x

## TABLE OF AUTHORITIES
### (continued)

Page

In re Yukos Oil Co.,
    321 B.R. 396 (Bankr. S.D. Tex. 2005) ..................................................10, 11, 33

In re Yukos Oil Co. Sec. Litig.
    No. 04 Civ. 5243, 2006 WL 800736 (S.D.N.Y. Mar. 30, 2006) ..................32, 43

Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,
    157 F.3d 933 (2d. Cir. 1998)..............................................................53

Int'l Shoe Co. v. Washington Office of Unemployment Compensation & Placement,
    326 U.S. 310 (1945)..........................................................................30

Int'l Telecomm. Satellite Org. v. Colino
    No. 99-1266, 87-2749, 1992 WL 93129 (D.D.C. Apr. 15, 1992) ..................69

Integral Res. (PVT) Ltd. v. Istil Group, Inc.,
    2004 WL 2758672 (D. Del. Dec. 2, 2004)..............................................63

Interbrew v. Edperbrascan
    23 F.Supp.2d 425 (S.D.N.Y. 1998) ......................................................43

Jackson v. Am. Univ.,
    52 F. App'x 519 (D.C. Cir. 2002).........................................................36

Jacoboni v. KPMG LLP,
    314 F.Supp.2d 1172 (M.D. Fla. 2004)...................................................56

Jin v. Ministry of State Sec.,
    254 F.Supp.2d 61 (D.D.C. 2003) .........................................................61

Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.
    870 A.2d 58 (D.C. 2005) ....................................................................73

Joseph v. Algemene Bank Nederland, N.V.
    592 F.Supp. 141 (W.D. Pa. 1984).........................................................35

Jungquist v. Sheikh Sultan Bin Khalifa Nahyan,
    115 F.3d 1020 (D.C. Cir. 1997)...........................................................24

Keeton v. Hustler Magazine, Inc.,
    465 U.S. 770 (1984)......................................................................23, 29

## TABLE OF AUTHORITIES
### (continued)

**Page**

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Montonave Achille Lauro in
Amminstrazione Straordinaria
    937 F.2d 44 (2d Cir. 1991).................................................................................23, 24

Kowal v. MCI Commc'ns. Corp.,
    16 F.3d 1271 (D.C. Cir. 1994)..........................................................................49, 53

Lakonia Mgmt. Ltd. v. Meriwether,
    106 F.Supp.2d 540 (S.D.N.Y . 2000).......................................................................36

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972)............................................................................30, 31

McFarlane v. Esquire Magazine
    74 F.3d 1296 (D.C. Cir. 1996)..........................................................................23, 24

Magnus Elecs., Inc. v. Royal Bank of Can.,
    620 F.Supp. 387 (N.D. Ill. 1985) ............................................................................16

Martin v. Malhoyt
    830 F.2d 237 (D.C. Cir. 1987)..................................................................................70

Mayer v. Dell,
    1991 WL 21567 (D.D.C. Feb. 13, 1991) ................................................................49

Meng v. Schwartz,
    116 F.Supp.2d 92 (D.D.C. 2000)..............................................................................60

Meyer v. Reno
    911 F.Supp. 11 (D.D.C. 1996)..................................................................................72

Millicom Int'l Cellular, S.A. v. Republic of Costa Rica,
    995 F.Supp. 14 (D.D.C. 1998)..................................................................................22

Mwani v. bin Laden,
    417 F.3d 1 (D.C. Cir. 2005).........................................................................24, 25, 26

Naartex Consulting Corp. v. Watt,
    722 F.2d 779 (D.C. Cir. 1983)..................................................................................67

Nalls v. Rolls-Royce Ltd.,
    702 F.2d 255 (D.C. Cir. 1983).....................................................................38, 40, 41

# TABLE OF AUTHORITIES
## (continued)

Page

Nemariam v. Federal Democratic Republic of Ethiopia
    400 F.Supp.2d 76 (D.D.C. 2005) ................................................................21

Network Project v. Corp. for Pub. Broad.
    561 F.2d 963 (D.C. Cir. 1977) ...................................................................61

News World Commc'ns, Inc. v. Thompsen
    878 A.2d 1218 (D.C. 2005) ........................................................................73

Nordberg v. Lord, Day & Lord,
    107 F.R.D. 692 (S.D.N.Y. 1985) ................................................................34

N.S. Fin. Corp. v. Al-Turki
    100 F.3d 1046 (2d Cir. 1996)......................................................................45

Oetjen v. Cent. Leather Co.,
    246 U.S. 297 (1918).....................................................................................32

Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks Corp.,
    369 F.3d 27 (2d Cir. 2004)..........................................................................55

Pain v. United Techs. Corp.,
    637 F.2d 775 (D.C. Cir. 1980) ..............................................................36, 40

Pavlov v. Bank of N.Y. Co.,
    135 F.Supp.2d 426 (S.D.N.Y. 2001)...........................................................38

Peterson v. Royal Kingdom of Saudi Arabia,
    416 F.3d 83 (D.C. Cir. 2005) ................................................................20-21

Phoenix Consulting Inc. v. Republic of Angola,
    216 F.3d 36 (D.C. Cir. 2000) ......................................................................13

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981)........................................................................37, 41, 42

Poling v. Farrah
    131 F.Supp.2d 191 (D.D.C. 2001) ..............................................................27

Price v. Socialist People's Libyan Arab Jamahiriya,
    294 F.3d 82 (D.C. Cir. 2002).......................................................................29

# TABLE OF AUTHORITIES
## (continued)

Page

Pothoff v. Morin
    245 F.3d 710 (8th Cir. 2001) ...................................................................................35

Princz v. Federal Republic of Germany,
    26 F.3d 1166 (D.C. Cir. 1994) ..............................................................................18

RA Investments I, LLC v. Deutsche Bank AG,
    2005 WL 1356446 (N.D.Tex. 2005)......................................................................57

Rafferty v. NYNEX Corp.,
    60 F.3d 844 (D.C. Cir.. 1995) ................................................................................67

Reiffin v. Microsoft Corp.,
    104 F.Supp.2d 48 (D.D.C. 2000) ...........................................................................37

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992)..........................................................................11, 15, 16, 18

Republic of Austria v. Altmann,
    541 U.S. 677 (2004).................................................................................21, 31, 33

Ricaud v. Am. Metal Co.,
    246 U.S. 304 (1918)................................................................................................31

Richard v. Bell Atl. Corp.,
    946 F.Supp. 54 (D.D.C.  1996)..............................................................................25

Riggs Nat'l Corp. v. Comm'r of IRS,
    163 F.3d 1363 (D.C. Cir. 1999) .............................................................................33

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)...................................................................................52

Rong v. Liaoning Province Gov't
    452 F.3d 883 (D.C. Cir. 2006)...........................................................17, 18, 19, 20

Saleh v. Titan Corp.
    436 F.Supp.2d 55 (D.D.C. 2006) .........................................................11, 14, 15, 16

Saudi Arabia v. Nelson,
    507 U.S. 349 (1993)...........................................................................13, 14, 15, 16

xiv

**TABLE OF AUTHORITIES**
(continued)

**Page**

Schmid Labs. Inc. v. Hartford Accident & Indem. Co.,
    654 F.Supp. 734 (D.D.C. 1986) ...................................................................37

Schoenbaum v. Fristbrook,
    405 F.2d 200 (2d Cir. 1968) ..............................................................44, 45

Sears v. Likens
    912 F.2d 889 (7th Cir. 1990) ...............................................................36

SEC v. Berger
    322 F.3d 187 (2d Cir. 2003) ................................................................43

S.E.C. v. Lucent Techs., Inc.
    363 F.Supp.2d 708 (D.N.J. 2005) .......................................................51

Shulman v. Voyou, L.L.C.,
    251 F.Supp.2d 166 (D.D.C. 2003) ......................................................72

Siam Kraft Paper Co., Ltd. v. Parsons & Whittemore, Inc.
    400 F.Supp. 810 (D.D.C. 1975) .........................................................75

Small v. Fritz Cos.,
    65 P.3d 1255 (Cal. 2003) ....................................................................66

Smith v. Waste Mgmt., Inc.,
    407 F.3d 381 (5th Cir. 2005) ..............................................................20

Stender v. Lucky Stores, Inc.
    No. C-88-1467, 1991 WL 354882 (N.D. Cal. Dec. 19, 1991) ...........42

Stephen A. Goldberg Co. v. Remsen Partners, Ltd.,
    170 F.3d 191 (D.C. Cir. 1999) ...........................................................62

Stephenson v. Deutsche Bank AG,
    282 F.Supp.2d 1032 (D. Minn. 2003) .................................................57

Stevens v. Lowder
    643 F.2d 1078 (5th Cir. 1981) ............................................................35

Stutts v. De Dietrich Group
    No. 03-CV-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) ......46

## TABLE OF AUTHORITIES
### (continued)

Page

Talenti v. Clinton
    102 F.3d 573 (D.C. Cir. 1996) ...........................................................................35

Teague v. Bakker
    35 F.3d 978 (4th Cir. 1994) ..............................................................................61

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) ...............................................................................20

Tramontana v. S.A. Empresa de Viacao Aerea Rio Grandense,
    350 F.2d 468 (D.C. Cir. 1964) ..........................................................................63

TXU Energy Retail Co., LP v. Emanuel Med. Ctr., Inc.
    No. 3:02-CV-2400, 2003 WL 21281651 ...........................................................29

Tyrone Area Sch. Dist. v. Mid-State Bank & Trust, No. CIV 98-881,
    1999 WL 703729 (W.D. Pa. Feb. 9, 1999) .......................................................56

United States v. Crop Growers Corp.,
    954 F.Supp. 335 (D.D.C. 1997) ........................................................................52

United States v. Second Nat'l Bank,
    502 F.2d 535 (5th Cir. 1974) ............................................................................33

United States v. Zolicoffer
    869 F.2d 771 (3d Cir. 1989) .............................................................................59

United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n,
    33 F.3d 1232 (10th Cir. 1994) .....................................................................19, 20

Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.,
    878 A.2d 1226 (D.C. 2005) .........................................................................65, 66

Varnelo v. Eastwind Transport, Ltd.,
    2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) .......................................................41

Vietnam Veterans Found. v. Erdman,
    1987 WL 10143 (D.D.C. Mar. 30, 1987) ..........................................................67

Voest-Alpine Trading USACorp. v. Bank of China,
    142 F.3d 887 (5th Cir. 1998) ............................................................................11

# TABLE OF AUTHORITIES
## (continued)

Page

Weltover, Inc. v. Republic of Argentina
    941 F.2d 145 (2d Cir. 1991)..................................................................20

Wallace v. Abramson,
    1988 WL 63065 (D.D.C. 1988) ...........................................................59

Warren v. Mfrs. Nat'l Bank,
    759 F.2d 542 (6th Cir. 1985) ...............................................................34

Weinberger v. Rossi,
    456 U.S. 25 (1982)................................................................................42

W. Assocs. Ltd. v. Market Square Assocs.,
    235 F.3d 629 (D.C. Cir. 2001) .............................................................60

Whaley v. Auto Club Ins. Ass'n
    891 F.Supp. 1237 (E.D. Mich. 1995).................................................61

Wigfall v. Wolpoff & Abramson, LLP,
    2005 WL 3213955 (D.D.C. Nov. 1, 2005) .........................................62

World Wide Minerals, Ltd. v. Republic of Kazakhstan,
    296 F.3d 1154 (D.C. Cir. 2002) .....................................................31, 32

World-Wide Volkswagen Corp. v. Woodson
    444 U.S. 286 (1980)........................................................................29, 30

Wright v. Ernst & Young LLP
    152 F.3d 169 (2d. Cir. 1998).................................................................51

W.S. Kirkpatick & Co. v. Envt'l Tectonics Corp. Int'l,
    493 U.S. 400 (1990).............................................................................31

Zedan v. Kingdom of Saudi Arabia
    849 F.2d 1511 (D.C. Cir. 1988) ..........................................................19

Yadlosky v. Grant Thorton, L.L.P.,
    120 F.Supp.2d 622 (E.D. Mich. 2000)...........................................57, 61

Yukos Oil Co. v. Fin. Servs. Auth.
    [2006] EWHC 2044 (admin.) (Q.B.) ...................................................32

## TABLE OF AUTHORITIES
### (continued)

Page

Ziemba v. Cascade Int'l, Inc.
    256 F.3d 1194 (11th Cir. 2001) ........................................................................51

Zoelsch v. Arthur Anderson & Co.,
    824 F.2d 27 (D.C. Cir. 1987)..............................................................42, 43, 48, 49

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ........................................................................................26

15 U.S.C. § 78u-4(b)(2) ........................................................................................48

15 U.S.C. § 78aa ...................................................................................................26

15 U.S.C. § 78u-4(b) .............................................................................................48

15 U.S.C. § 78j(b) ............................................................................................48, 50

17 C.F.R. § 240.10b-5 ...........................................................................................50

18 U.S.C. § 151 .....................................................................................................58

18 U.S.C. § 152 ................................................................................................58, 59

18 U.S.C. § 1341 ..............................................................................................58, 59

18 U.S.C. § 1343 ..............................................................................................58, 59

18 U.S.C. § 1952 ..............................................................................................59, 60

18 U.S.C. § 1961(5) ..............................................................................................60

18 U.S.C. § 1962(b)-(d) ........................................................................................60

18 U.S.C. § 1962(b) ..............................................................................................61

18 U.S.C. § 1965(b) ..............................................................................................26

18 U.S.C. § 2314 ...................................................................................................58

28 U.S.C. § 1391(f)(4) ..........................................................................................12

## TABLE OF AUTHORITIES
### (continued)

Page

28 U.S.C. § 1330 .................................................................................................12, 13

28 U.S.C. § 1603(a) ...................................................................................................12

28 U.S.C. § 1603(b) ...................................................................................................12

28 U.S.C. § 1603(b)(2) ..............................................................................................11

28 U.S.C. § 1603(d) ...................................................................................................14

28 U.S.C. § 1604 ........................................................................................................12

28 U.S.C. § 1605(a)(2) .........................................................................................15, 19

28 U.S.C. § 1605(a)(3) .........................................................................................21, 22

28 U.S.C. § 1608 ........................................................................................................25

28 U.S.C. § 1608(b)(3)(B) .........................................................................................12

D.C. CODE § 13-334 ...................................................................................................25

D.C. CODE § 13-422 ...................................................................................................25

D.C. CODE § 13-423 ...................................................................................................24

D.C. CODE § 13-423(a)(4) ..........................................................................................24

FED. R. CIV. P. 4(h) .....................................................................................................25

FED. R. CIV. P. 4(k)(2) ..................................................................................24, 25, 26

FED. R. CIV. P. 12(b)(1) ...............................................................................................1

FED. R. CIV. P. 12(b)(2) ...............................................................................................1

FED. R. CIV. P. 12(b)(5) ...............................................................................................1

FED. R. CIV. P. 12(b)(6) ...............................................................................................1

FED. R. CIV. P. 9(b) ................................................................................1, 48, 49, 59

## TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
CIV.3D § 1068.1. ................................................................................................................26

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971) ..........................................63

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cont'd (1971 & Supp. 1988)...................63

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 712 (1986) ........21

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES
§ 702 & cmt.n (1987)........................................................................................................21

Defendants OAO Rosneftegaz, OAO Rosneft Oil Company, Sergey Bogdanchikov, and Nikolai Borisenko respectfully move to dismiss the amended complaint filed on July 13, 2006 (the "Amended Complaint") by certain holders of American Depository Receipts ("ADRs") of Yukos Oil Company pursuant to the Foreign Sovereign Immunities Act ("FSIA"), Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), 12(b)(6), 9(b), the Private Securities Litigation Reform Act ("PSLRA"), the Racketeering Influenced and Corrupt Organization Act ("RICO"), and the doctrine of *forum non conveniens.*

## PRELIMINARY STATEMENT

This motion seeks the dismissal of plaintiffs' Amended Complaint that was filed in the midst of a carefully negotiated briefing schedule after motions to dismiss had already been filed, and without any indication during the course of negotiating the schedule by plaintiffs that they intended to file an Amended Complaint.    The tactical filing of the Amended Complaint is but another chapter in the attempt by plaintiffs to make good on the threat by the organization financially backing this lawsuit to engage in a "lifetime of litigation" over the alleged renationalization of the assets of Yukos.[1]    Moreover, plaintiffs are at the same time pursuing litigation on different fronts in the Netherlands and London that plaintiffs have made clear in public statements are part of a scheme to disrupt the corporate activities at Rosneft, and to embarrass the Russian Federation and others.    In a stark example of gamesmanship, after delaying the resolution of the motion to dismiss in this case, plaintiffs sought and obtained in the Netherlands without notice to Rosneft or its counsel an *ex parte* attachment of Rosneft's shares in one of its holdings based on the relief it seeks in *this* case.    Despite plaintiffs' knowledge that

---

[1]  Plaintiffs have publicly admitted that this litigation is being financed by Group Menatep, Yukos's largest shareholder, which has promised that "[w]hoever buys Yuganskneftegaz is going to by buying themselves a lifetime of litigation."  Stephanie Kirchgaessner, US Shareholders Sue Russia Over Yukos, Fin. Times, Oct. 24, 2005; Guy Faulconbridge, Yukos Unit Up for Sale at Discount Price, Moscow Times, Oct. 13, 2004.

Rosneft is represented by counsel in this action, it did not give notice of the Dutch proceedings to Rosneft's counsel or the Court.   Regardless of plaintiffs' international gamesmanship, however, it is clear that their claims are fundamentally flawed and must be dismissed.

The filing of the Amended Complaint confirms that this action is nothing but a gross example of forum shopping by plaintiffs.   Plaintiffs have transparently attempted to secure a United States forum in the hopes of obtaining United States style discovery in an action that is unequivocally Russian-centric.   Indeed, plaintiffs now concede as much by pleading common-law claims under Russian law.   The defendants in this action are all Russian governmental entities, companies, and individuals; the alleged wrongful acts admittedly all took place entirely in Russia; and the company against which plaintiffs contend defendants took these wrongful actions, Yukos, is itself a Russian oil and gas company.

Rosneftegaz and Rosneft are both Russian companies with no operations of any kind in the United States.   Bogdanchikov, Rosneft's President, and Borisenko, First Vice President of Rosneft, both Russian citizens, are not alleged to have performed any act that forms the basis for this suit within the United States.   There are no alleged contacts with the United States by Borisenko, and the only alleged contacts by Bogdanchikov with the United States were two trips *after* the complaint was filed.   Yet, plaintiffs have attempted to hale Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko into a United States court without any justifiable basis.

The tortured claims brought by these ADR holders in order to shoehorn themselves into a United States court not surprisingly suffer from fundamental (and fatal) flaws.   The gravamen of the plaintiffs' Amended Complaint is that the Russian Federation engaged in a series of acts designed to renationalize the assets of Yukos, including levying unfair taxes upon Yukos, enforcing tax liens by foreclosing on and selling Yukos property in an auction to pay its tax

obligation, and improperly charging and convicting Yukos's former chief executive officer and other high-level officers with crimes under Russian law. The Amended Complaint also contends that Russian Federation President Vladimir Putin made a number of statements in his sovereign capacity that led plaintiffs to believe that the Russian Federation would not renationalize the assets of Yukos. Plaintiffs bring claims for federal securities fraud, and fraud against Rosneft, Bogdanchikov, and Borisenko. In addition a conversion claim was brought against Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko. Plaintiffs have also brought claims under the Racketeered Influenced and Corrupt Organizations Act ("RICO") against Bogdanchikov, Borisenko, and other defendants, but not Rosneftegaz and Rosneft. In addition, the Amended Complaint now adds claims against all defendants for conspiracy to commit conversion; common-law fraud and deceit under District of Columbia and Russian law; conspiracy to commit fraud and deceit and aiding and abetting fraud and deceit under District law; expropriation in violation of international law; and restitution based on unjust enrichment under District and Russian law.

First, because the Amended Complaint alleges that Rosneftegaz is 100-percent owned by the Russian Federation, and no exception applies, it is immune from suit as a sovereign under the FSIA. See Part I *infra*.

Second, the Court does not have personal jurisdiction over Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko. The Court has no jurisdiction over Rosneft and Rosneftegaz, which are Russian companies, because they (i) conduct no operations in the United States, (ii) have no relationship of any kind with the ADR holders of Yukos (which is a competing Russian energy company), and (iii) are not alleged to have directed any conduct to the United States related to the allegations in the Amended Complaint. Likewise, this Court does not have

personal jurisdiction over Bogdanchikov because he (i) has no alleged contacts to the United States except for two limited post-complaint contacts entirely unrelated to the basis for plaintiffs' suit, (ii) no relationship of any kind with the ADR holders of Yukos, and (iii) is not alleged to have directed any conduct toward the United States related to plaintiffs' claims. The Court has no personal jurisdiction over Borisenko because plaintiffs have failed to allege *any* contacts by him with the United States. <u>See</u> Part II *infra*.

Third, the Amended Complaint unabashedly seeks to have this Court scrutinize the sovereign acts of the Russian government in levying taxes against Yukos and enforcing its tax laws, conducting an auction of Yukos's assets to satisfy Yukos's tax debt, and enforcing its criminal laws. Under the act-of-state doctrine, courts are not permitted to scrutinize the acts of a foreign sovereign. Thus, the Court in analyzing the Amended Complaint must view as valid and proper each of the alleged acts. Because these sovereign acts are precisely the acts challenged in the Amended Complaint, it must be dismissed. <u>See</u> Part III *infra*.

Fourth, plaintiffs lack standing to bring their claims because the injury alleged in their RICO, conversion, conspiracy, expropriation, and unjust enrichment claims is at best a direct injury to Yukos, not the ADR holders. The theory of the Amended Complaint is that the Russian Federation and the other defendants conspired to renationalize the property of Yukos, and as a result the ADR holders allegedly suffered only an indirect diminution in the value of their ADRs. <u>See</u> Part IV *infra*.

Fifth, the action should be dismissed under the doctrine of *forum non conveniens* because all of the defendants are Russian, all of the challenged acts were committed in Russia, and Russian law applies to the common-law claims asserted herein. <u>See</u> Part V *infra*.

Sixth, Congress did not intend for federal securities laws or RICO to apply extraterritorially. The Court has no subject-matter jurisdiction over these claims because the conduct alleged by plaintiffs undisputedly occurred entirely outside the United States and was not directed in any way at the United States. See Part VI infra.

Seventh, plaintiffs have failed to state a valid claim of expropriation in violation of international law because plaintiffs do not allege that their property—the ADRs they either continue to hold or have already sold—was directly expropriated in violation of international law. See Part VII infra.

Eighth, the federal securities law claim against Rosneft, Bogdanchikov, and Borisenko is so fundamentally flawed that it strains any concept of good faith pleading. Bogdanchikov, and Borisenko are simply not alleged anywhere in the Amended Complaint to have made any statement whatsoever—and needless to say no statement that was knowingly false or misleading. The statements alleged to be false and misleading were made by President Putin and others and none of these statements on their face are attributed to Rosneft, Bogdanchikov or Borisenko. The securities laws do not allow defendants to be charged with secondary liability after Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164 (1994). See Part VIII infra. The only statements alleged to be false and misleading by Rosneft are two statements by its press secretary reported in the media regarding Rosneft's disinterest in any asset acquisitions or bidding for YNG. Am. Compl. ¶ 263. Yet plaintiffs have failed to allege that Rosneft had any duty to ADR holders of a competitor, that the statements were made with scienter, or that plaintiffs relied upon these statements. See Part VIII infra.

Ninth, the RICO claims (Counts II-IV) against Bogdanchikov and Borisenko must be dismissed because (i) the PSLRA bars these claims, (ii) no pattern of racketeering activity is

alleged, (iii) Bogdanchikov and Borisenko are not alleged to have any interest or control over Yukos, and (iv) Bogdanchikov and Borisenko are not alleged to have participated in the conduct of the enterprise.   See Part IX *infra.*

Tenth, plaintiffs' common-law claims should be dismissed because none states a claim. See Part X *infra.*

STATEMENT OF FACTS

This Statement of Facts is based on the allegations in the Amended Complaint, documents incorporated by reference in the Amended Complaint, and facts subject to judicial notice.[2]   See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice").

**The Parties**

The 43 plaintiffs in this action claim to own, or to previously have owned, ADRs in Yukos, a Russian oil and gas company.   Am. Compl. ¶¶ 12-59.   The two plaintiffs that account for approximately two-thirds of the total ADRs held by plaintiffs are citizens of the Netherlands and the Cayman Islands.   Am. Compl. ¶¶ 25-26 & Ex. A.   The remaining plaintiffs are American and reside in various states.   Am. Compl. ¶¶ 13-15, 27-55.   Collectively, the

---

[2] In addition to the facts alleged in the Amended Complaint, we have submitted with this motion the following documents attached to the Declaration of Richard W. Slack that this Court may consider in deciding the motion to dismiss: (1) the complete remarks of President Putin (as opposed to the excerpts) from a speech given by him on October 27, 2003; (2) the complete article that allegedly contains a statement by Rosneft entitled No Thanks: Rosneft May Not Be Interested In Yuganskneftegaz, NEFTE COMPASS, dated July 22, 2004, see I. Meyer Pincus & Assocs. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991) ("[W]hen 'plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.'"); and (3) excerpts from Yukos's 2000, 2001, and 2002 annual reports.   See In re Copper Mountain Sec. Litig., 311 F.Supp.2d 857, 864 (N.D. Cal. 2004) (taking judicial notice of press releases and transcripts of conference calls because "the court may take judicial notice of information that was publicly available to reasonable investors at the time the defendant made the allegedly false statements").

plaintiffs claim to have paid slightly more than $3 million to purchase their Yukos ADRs.   Am.

Compl. Ex. A.

Rosneft is a Russian oil and gas company that is indirectly owned by the Russian

Federation.  Am. Compl. ¶ 70.  As alleged in the Amended Complaint, all but one share of

Rosneft is owned by Rosneftegaz.  Am. Compl. ¶¶ 70, 74.  Rosneftegaz is, in turn, wholly

owned by the Russian Federation.  Am. Compl. ¶ 74.  Bogdanchikov is the President of

Rosneft.  Am. Compl. ¶ 81.  Borisenko is a First Vice President of Rosneft and represented

Gazpromneft at the auction of Yuganskneftegaz ("YNG").  Am. Compl. ¶ 279.  Rosneftegaz,

Rosneft, Bogdanchikov, and Borisenko are not alleged to have any offices, employees, property,

or bank accounts within the United States.   Rosneft and Rosneftegaz are not alleged to have any

shares listed on any exchange in the United States.

**The Russian Federation's Sovereign Acts with Respect to Yukos**

Yukos was privatized in the mid-1990s, after the collapse of the Soviet Union, because

the Russian Federation wanted to restructure the nation's oil and gas industry.  Am. Compl.

¶¶ 98-99.   In 2003, the Russian Federation began investigating certain criminal wrongdoing

related to Yukos.   The Russian Federation thereafter made a number of arrests as a result of its

investigation.  Am. Compl. ¶¶ 143-45, 158.   On June 21, 2003, Yukos's security manager,

Alexei Pichugin, was arrested on charges of murder.  Am. Compl. ¶ 143.   On July 2, 2003, the

chairman of Group Menatep, Platon Lebedev, was arrested on charges of tax evasion and fraud.

Am. Compl. ¶ 144.  On October 25, 2003, Mikhail Khodorkovsky, the chief executive officer of

Yukos, was arrested for tax evasion, theft of state property, and fraud.  Am. Compl. ¶ 145.  All

were tried, convicted, and sentenced to prison.  Am. Compl. ¶ 163.   A few days after

Khodorkovsky's arrest, the Russian Federation seized shares of common stock of Yukos held by

Yukos Universal Limited and Hulley Enterprises Limited (each a foreign corporation), amounting to approximately 51 percent of the equity of Yukos. Am. Compl. ¶¶ 177, 182. The Russian Federation is not alleged to have seized any of the ADRs held by plaintiffs (or any of the shares underlying these ADRs).

At the same time, the Russian Federation's Ministry of Taxes and Levies launched an investigation into whether Yukos had complied with Russia's tax laws. Am. Compl. ¶ 154. An audit revealed that Yukos had engaged in the largest tax evasion in Russian history—by defrauding the government and its citizens in 2000-2002 of more than $10 billion. Am. Compl. ¶¶ 205, 214, 220-21. Yukos challenged the tax demands in the Russian courts, but was unsuccessful. Am. Compl. ¶¶ 215, 245. The Russian courts confirmed the tax obligation of Yukos. Id.

**Statements made "on behalf of" Rosneftegaz and Rosneft**

During the Russian Federation's investigation of Yukos, Russian Federation President Putin gave a speech on October 27, 2003, at a meeting with members of the Russian government in Russia and stated in relevant part that:

> At the same time, I do understand the business community's concern because any action taken by the federal authorities often gets turned into some kind of campaign. I must make it clear that the Yukos case should in no way be seen as setting a precedent or giving rise to analogies and generalizations regarding the results of previous privatizations, and I would ask therefore that all speculation and hysteria on this issue come to an end and that the government not get drawn into this debate.

Am. Compl. ¶¶ 148; Ex. A (speech by Russian Federation President Vladimir Putin, October 27, 2003). This speech was thereafter reported in the press. Eight months later, on June 17, 2004, during Yukos's tax appeal to the Russian courts, President Putin stated that (i) the Russian Federation was "not interested in the bankruptcy of such a company as Yukos," and (ii) Yukos's

tax liability was being addressed by the courts.   Am. Compl. ¶ 226-27.   These statements were

allegedly made "on behalf of" Rosneftegaz and Rosneft as well as other defendants, id., but

plaintiffs do not allege they were attributed to these defendants when the statements were made.

The Amended Complaint now alleges that President Putin made several other statements in his

sovereign role allegedly "on behalf of" Rosneft—even though none of these statements is

attributed to Rosneft on their face.   A sample of these allegations are as follows:

- "On November 4, 2003, on the eve of an official visit to Italy and *on behalf of* Defendants Russian Federation and Rosneft, Putin stated to journalists, 'I am categorically opposed to the review of privatizations, even if the results were not ideal.   It is my deep conviction that this would have serious negative impact on the economy and the social welfare.   Therefore there will be no deprivatization.'" Am. Compl. ¶ 190. (emphasis added).

- "On November 6, 2003, in statements during an official press conference with Putin in Rome, EU Commission President Romano Prodi stated that Putin, speaking *on behalf of* Defendants Russian Federation and Rosneft, assured EU officials 'that the law will not be applied in a discriminatory way' to Yukos." Am. Compl. ¶ 192.   (emphasis added).

- "On December 23, 2004, at his annual year-end press conference in the Kremlin, speaking *on behalf of* Defendants Russian Federation and Rosneft, Putin defended the auction of YNG: 'Today the state, using absolutely legal market mechanisms, is securing its interests.   I consider this to be quite normal.'"   Am. Compl. ¶ 285. (emphasis added).

In addition to President Putin's statements, plaintiffs allege other statements by unnamed

speakers were also made "on behalf of" Rosneft—even though none of these statements are

attributed to Rosneft on their face.   These statements include:

- "'[A]n *unnamed government source*,' speaking *on behalf of* Defendants Russian Federation and Rosneft, told the Interfax news agency that no legal barriers were standing in the way of ExxonMobil's purchase of a larger stake in YukosSibneft." Am. Compl. ¶ 174 (emphasis added).

- "[A]n *advisor within the Russian government* stated *on behalf of* Defendants Russian Federation and Rosneft that, 'The deal between Yukos and ExxonMobil will be finalized.   There have been no objections from President Vladimir Putin.'"   Am. Compl. ¶ 175 (Emphasis added).

The Amended Complaint also now asserts that statements were made by third parties, allegedly "on behalf of" Rosneft without any explanation or any apparent reason on the face of the statements. See, e.g., Am. Compl. ¶¶ 151, 173, 265.

The 116-page Amended Complaint only alleges two statements were made by Rosneft. Am. Compl. ¶ 263.  According to the Amended Complaint, "Rosneft's press spokesman Alexander Stepanenko said that Rosneft was 'not planning any asset acquisition in the near future.  None.'"  Id.  A similar report regarding Rosneft was carried in the industry publication *Nefte Compass* on July 22, stating that Rosneft announced it is not interested in bidding for [YNG].  Id; Ex. B (Article from *Nefte Compass*).  The Amended Complaint is devoid of any allegation that Rosneftegaz, Bogdanchikov, or Borisenko made any statement.

**Yukos's Attempts to Avail Itself of a U.S. Bankruptcy Court**

In order to pay Yukos's large tax obligation, in late 2004 the Russian Federation announced that it would auction the shares held by Yukos in one of its operating subsidiaries, YNG.  In an effort to thwart the auction by the government, Yukos filed for bankruptcy protection in the United States District Court for the Southern District of Texas five days before the auction was scheduled to take place.  The bankruptcy court issued a temporary injunction against certain persons participating in the auction, but that injunction did not and could not bind the Russian government from proceeding with the auction.  Am. Compl. ¶¶ 276-79; see also In re Yukos Oil Co., 321 B.R. 396, 403 (Bankr. S.D. Tex. 2005).  Ironically, Yukos's bankruptcy filing and the injunctive relief it sought may have discouraged certain bidders from bidding or participating in the auction.  Only two companies appeared at the auction—Gazpromneft and Baikalfinansgroup ("BFG").  Am. Compl. ¶¶ 277, 279.  BFG acquired YNG for $9.3 billion at the auction.  Am. Compl. ¶ 278.  BFG was later purchased by Rosneft.  Am. Compl. ¶ 284.

On February 24, 2005, the bankruptcy court dismissed Yukos's voluntary bankruptcy petition. Among the factors that the bankruptcy court noted in its ruling were that: (i) because "most of Yukos' assets are oil and gas within Russia, its ability to effectuate a reorganization without the cooperation of the Russian government is extremely limited," (ii) "Yukos seeks to substitute United States law in place of Russian law, European Convention law, and/or international law," and (iii) "[Yukos's] impact on the entirety of the Russian economy, weighs heavily in favor of allowing resolution in a forum in which participation of the Russian government is assured." Yukos Oil Co., 321 B.R. at 411.

ARGUMENT

## I.    ROSNEFTEGAZ IS IMMUNE UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

### A.    Rosneftegaz Is Immune as an Agency or Instrumentality of the State

Based on the plain allegations in the Amended Complaint, Rosneftegaz has sovereign immunity under the FSIA. The Amended Complaint alleges that Rosneftegaz is wholly owned by the Russian Federation. Am. Compl. ¶ 70. Rosneftegaz is therefore immune from suit under 28 U.S.C. § 1603(b)(2) of the FSIA and the Supreme Court's decision in Dole Food Co. v. Patrickson, 538 U.S. 468, 474 (2003). See 28 U.S.C. § 1603(b)(2).

The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610 (1992). Thus, the FSIA "'sets forth the 'sole and exclusive standards to be used' to resolve all sovereign immunity issues raised in federal and state courts.'" Voest-Alpine Trading USA Corp. v. Bank of China, 142 F.3d 887, 891 (5th Cir. 1998) (citation omitted).

The FSIA provides that foreign states and their agencies or instrumentalities are immune from suit in the United States unless one of the specific exceptions enumerated in the act applies.

11

See <u>Dayton</u> v. <u>Czechoslovak Socialist Republic</u>, 834 F.2d 203, 205 (D.C. Cir. 1987); 28 U.S.C. §§ 1603(a), (b), 1604. The FSIA defines an "agency or instrumentality of a foreign state" to include "any entity—

(1)    which is a separate legal person, corporate or otherwise, and

(2)    which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3)    which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country."

28 U.S.C. § 1603(b).

There is no dispute in this case that Rosneftegaz satisfies subsections (b)(1) and (b)(3), and plaintiffs' Amended Complaint alleges that the Russian Federation wholly owns Rosneftegaz. Am. Compl. ¶ 70. Thus, Rosneftegaz is an agency or instrumentality of the Russian Federation.

Plaintiffs not only allege that Rosneftegaz is wholly owned by the Russian Federation, but also concede for purposes of this motion that Rosneftegaz is a foreign state or instrumentality for purposes of jurisdiction and venue. Am. Compl. ¶¶ 95-96 (citing 28 U.S.C. §§ 1330, 1391(f)(4), which provide, respectively, for jurisdiction against a "foreign state" and for venue in suit against a "foreign state or political subdivision thereof"). In addition, plaintiffs have conceded for purposes of this motion that Rosneftegaz is an agency or instrumentality of the Russian Federation by attempting to serve Rosneftegaz under a provision for service on an agency or instrumentality of a foreign state. See 28 U.S.C. § 1608(b)(3)(B); Docket No. 7, Letter from O. Thomas Johnson, Jr. to Nancy Mayer-Whittington, Clerk of Court, Nov. 16, 2005. Thus, Rosneftegaz is entitled to immunity from suit unless plaintiffs' allegations show that one of the statutory exceptions to the FSIA applies. See <u>Dayton</u>, 834 F.2d at 205. Plaintiffs have

not alleged that any of the FSIA's exceptions apply,[3] and even if they had, as a matter of law, no exceptions apply to create jurisdiction over Rosneftegaz.

Because Rosneftegaz solely challenges the legal sufficiency of the plaintiffs' jurisdictional allegations, the Court should take the plaintiffs' factual allegations as true and determine whether Rosneftegaz is immune from suit.[4]  See Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (citing Saudi Arabia v. Nelson, 507 U.S. 349, 351, 361 (1993)).

### B.    None of the Exceptions to Sovereign Immunity Applies

The Amended Complaint does not contain any allegations of improper conduct by Rosneftegaz.  The sole allegations about Rosneftegaz in the Amended Complaint are: (i) that it is a Russian company wholly owned by the Russian Federation and that it owns all but one share of Rosneft's stock, Am. Compl. ¶ 70; and (ii) that it is a holding company that "entered into a $7.1 billion agreement to purchase a 10.7 percent stake in Gazprom"—a transaction that is not challenged in this lawsuit.  Am. Compl. ¶ 129.  There is no allegation that Rosneftegaz made any public statements concerning Yukos (or anything else), or that Rosneftegaz had any dealings with Yukos (and certainly not with any of the Yukos ADR holders who are bringing this lawsuit).[5]

The Amended Complaint does allege in conclusory fashion that defendants executed a scheme to renationalize the assets of Yukos.  Am. Compl. ¶ 142.  Even these averments allege

---

[3] Plaintiffs merely allege that the Court has jurisdiction under 28 U.S.C. § 1330, and that defendants including Rosneftegaz are not "entitled to immunity under 28 U.S.C. §§ 1605-07."  Am. Compl. ¶ 95.

[4] Rosneftegaz reserves the right to challenge the facts alleged in the Amended Complaint at a later time if necessary, and accepts them as true solely for purposes of this motion.

[5] Even plaintiffs' Amended Complaint, which was filed after defendants filed their initial motions to dismiss, fails to point to *any* statements by Rosneftegaz.

no conduct by Rosneftegaz and cannot be attributed to Rosneftegaz. See Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 534, 537 (5th Cir. 1992) (rejecting plaintiff's generalized conspiratorial allegations of attribution); see also Herbage v. Meese, 747 F.Supp. 60, 65 (D.D.C. 1990) (dismissing on FSIA grounds and noting that "'[a] plaintiff's bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted' for purposes of a motion to dismiss" (citation omitted)), aff'd, 946 F.2d 1564 (D.C. Cir. 1991).  Even if, arguendo, the Court were to attribute the actions alleged in the Amended Complaint against others as being attributable to Rosneftegaz (which there is no basis for doing), the conduct occurred in Russia and was sovereign in nature.   The alleged goal of the challenged conduct was "ultimately [to] re-nationalize Yukos, without compensation . . . by seizing control of its assets and redistributing them to state-controlled entities and by appropriating for themselves any remaining economic benefits of ownership of Yukos." Am. Compl. ¶ 142.  Courts look to the gravamen of the complaint to determine the basis of the claim under the FSIA.  Garb v. Republic of Poland, 440 F.3d 579, 586 (2d Cir. 2006).   As discussed below, the renationalization of the assets of a company is an inherently sovereign—not commercial—act and a complaint alleging renationalization cannot state an exception to sovereign immunity.

### 1.    The Commercial-Activity Exception Does Not Apply

"A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d).  Although the FSIA does not define "commercial," the Supreme Court has explained that a state engages in commercial activity "where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns," and thus, "a foreign state engages in commercial activity . . . only where it acts in the manner of a private player within the market." Nelson, 507 U.S. at 360 (internal quotations omitted).

14

Section 1605(a)(2) identifies three types of actions that satisfy the commercial-activity exception:

(1)     a commercial activity carried on in the United States;

(2)     an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or

(3)     a commercial activity carried on of the foreign state elsewhere and that act causes direct effect in the United States.

28 U.S.C. § 1605(a)(2).  Because it is undisputed that the allegations in this case involve only activities carried on outside the United States, only the third clause of § 1605(a)(2) could potentially be applicable to plaintiffs' suit.

### (a)     The acts that form the basis of this suit are sovereign rather than commercial in nature

In determining whether an activity is commercial in nature, "the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" Weltover, 504 U.S. at 614.  The Supreme Court has held that the commercial activity at issue must form the basis of the lawsuit against the foreign state.  Nelson, 507 U.S. at 356 (stating that action "must be 'based upon' some 'commercial activity' . . . that had 'substantial contact' with the United States within the meaning of the Act").  A court must look to "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." Id. at 357.  Moreover, the connection between the plaintiffs' cause of action and the commercial acts of the foreign sovereign must be material.  Byrd v. Corporacion Forestal y Industrial de Olancho S.A., 182 F.3d 380, 389-90 (5th Cir. 1999).

The plaintiffs have asserted causes of action against Rosneftegaz, but the Amended Complaint does not contain *any* allegations that Rosneftegaz committed *any* wrongful act.  The

sole facts concerning Rosneftegaz alleged in the Amended Complaint are that it holds 100 percent of Rosneft's stock; that it was created as a holding company for the Russian Federation's Rosneft shares; and that Rosneftegaz entered into a $7.1 billion purchase of 10.7 percent of Gazprom's stock financed by a syndicate of western banks—a transaction that has nothing to do with the alleged wrongful conduct in the Amended Complaint.   Am. Compl. ¶¶ 61, 70, 74, 117, 129, 291.   Not only do plaintiffs fail to allege any basis under the FSIA to overcome Rosneftegaz's sovereign immunity, but these paltry allegations do not even remotely describe a commercial activity that has a direct effect in the United States.

But even the conduct of the other defendants (if somehow imputed to Rosneftegaz) does not constitute commercial activity causing a direct effect in the United States.   The gravamen of all of these causes of action is the Russian Federation's allegedly improper renationalization of Yukos's assets using its sovereign power to enforce its tax laws and to collect unpaid taxes.[6] These are hardly "the *type* of actions by which a private party engages in 'trade and traffic or commerce.'"   Weltover, 504 U.S. at 614.   As the Court explained in Nelson, conduct that amounts to a foreign country's abuse of the police power is "peculiarly sovereign in nature." 507 U.S. at 361.   The activities alleged involve inherently sovereign activities that fail to satisfy the FSIA's commercial-activity exception.   See Garb, 440 F.3d at 588 ("[A] State's exercise of its power to expropriate property within its borders is a decidedly sovereign act."); see also Haven v. Rzeczpospolita Polska, 68 F.Supp.2d 947, 954 (N.D. Ill. 1999), aff'd, 215 F.3d 727 (7th Cir. 2000); Magnus Elecs., Inc. v. Royal Bank of Can., 620 F.Supp. 387, 390 (N.D. Ill. 1985).

---

[6] "It has long been recognized that liens to guarantee payment of taxes are an important element of the sovereign's taxing power."   United States v. Second Nat'l Bank, 502 F.2d 535, 545 (5th Cir. 1974).   The exercise of the Russian government's sovereign taxing power does not constitute commercial activity.

16

Nor can plaintiffs obtain federal subject-matter jurisdiction under the FSIA by bringing what is essentially a takings claim and rephrasing it in terms of another FSIA exception, such as the commercial-activity exception. Garb, 440 F.3d at 588. "Federal courts have repeatedly rejected litigants' attempts to establish subject matter jurisdiction pursuant to other FSIA exceptions when their claims are in essence based on disputed takings of property." Id. (citing de Sanchez v. Banco Cent. de Nicar., 770 F.2d 1385, 1398 (5th Cir. 1985)); see also Rong v. Liaoning Province Gov't, 452 F.3d 883, 889-91 (D.C. Cir. 2006) (affirming holding that the commercial-activity exception did not apply to acts by a Chinese province to assume complete control over a public–private joint venture). Thus, while plaintiffs fail to allege that *any* exception to the FSIA applies, they cannot rely on the commercial-activities exception for what clearly amounts to an expropriation claim.

The D.C. Circuit recently affirmed a district court's holding that the commercial-activity exception did not apply to acts by a Chinese province to assume complete control over a public–private joint venture. See Rong, 452 F.3d at 889-91. The court explained that a private party in the market could not have assumed and exercised control over the joint venture and declared it to be state assets. Id. at 889-90. Significantly, the court rejected plaintiffs' argument that defendant's use of the shares after their expropriation—including transferring the shares at a "firesale" price—transformed the initial expropriation into a commercial activity. Id. at 890. At the time of the stock transfer, the province had already obtained control over the shares in a "quintessentially sovereign act," and subsequent acts by defendants could not change that act into a commercial activity. Id. As the court explained, if plaintiffs' "interpretation of commercial activity were correct, then almost any subsequent disposition of expropriated property could allow the sovereign to be haled into a federal court under FSIA." Id.; see also

Garb, 440 F.3d at 587 (stating that "subsequent commercial transactions involving expropriated property do not give rise to subject matter jurisdiction over claims arising from the original expropriation"). All of plaintiffs' allegations regarding defendants' actions taken after the Russian Federation had already gained control over YNG, both before and after plaintiffs filed suit (such as Rosneft's IPO), have no bearing whatsoever on the quintessentially sovereign act alleged of expropriating the assets of Yukos. As Rong makes clear, after-the-fact conduct cannot serve to transform the Russian Federation's alleged sovereign act of expropriation into a commercial activity.

### (b)    There is no direct effect in the United States

Under the commercial-activity exception, "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity.'" Weltover, 504 U.S. at 618 (citation omitted). The effect cannot be direct if "there are too many intervening elements between the asserted cause and effect." Princz v. Federal Republic of Germany, 26 F.3d 1166, 1172 (D.C. Cir. 1994).

Plaintiffs allege that the Russian Federation renationalized certain assets of Yukos, and this resulted in a loss to Yukos and ultimately caused the Yukos ADRs to suffer a loss in value. Am. Compl. ¶¶ 225, 310. Any effects in the United States caused by the Russian government's alleged takeover of a Russian company's assets in Russia through taxing authority exercised in Russia are far too attenuated to constitute a direct effect in the United States. First, to show that the commercial-activity exception applies to Rosneftegaz, plaintiffs would have to isolate the direct effect that Rosneftegaz's actions, in particular, had in the United States. See Weltover, 504 U.S. at 618 (direct effect must follow "as an immediate consequence of the defendant's . . . activity"); Arriba, 962 F.2d at 534, 537 (no jurisdiction under commercial-activity exception where plaintiff failed to allege a single activity by defendant "in or directly affecting the United

18

States"). Plaintiffs make no specific allegations as to Rosneftegaz's involvement in the alleged expropriation of Yukos. "The requirement that an effect be 'direct' indicates that Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States." United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n, 33 F.3d 1232, 1238 (10th Cir. 1994).

None of the allegations in the Amended Complaint amounts to a direct effect. "[T]he fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the [commercial-activity] exception." Antares Aircraft L.P. v. Federal Republic of Nigeria, 999 F.2d 33, 36 (2d Cir. 1993); see also Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1514 (D.C. Cir. 1988) (stating that "financial hardship fortuitously suffered *in the United States* is not a direct effect of Saudi Arabia's failure to honor a contract in Saudi Arabia") (emphasis in original); Rong, 452 F.3d at 891 (Henderson, J., concurring) ("A mere financial loss by a resident of the United States does not constitute a 'direct effect' in the United States."); see also United World Trade, 33 F.3d at 1239 (holding that to interpret § 1605(a)(2) to mean that any financial loss in the United States constitutes a direct effect "would give the district courts jurisdiction over virtually any suit arising out of an overseas transaction in which an American citizen claims to have suffered a loss from the acts of a foreign state;" yet the statute's language limiting jurisdiction to cases in which there is a "*direct* effect" in the United States makes it clear this was not Congress's intent). As the Second Circuit explained in Antares, mere financial loss in the United States cannot constitute a direct effect because such an amorphous standard would eviscerate the protections of the FSIA:

> [i]f a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states. Many commercial disputes, like the present one, can

be pled as the torts of conversion or fraud and would, if appellant is correct, result in litigation concerning events with no connection with the United States other than the citizenship or place of incorporation of the plaintiff.

Antares, 999 F.2d at 36.

Moreover, United States courts have long recognized that the type of harm alleged by plaintiffs—harm to Yukos that in turn caused a diminution of value of the ADRs—is indirect, rather than direct, in nature because it is not independent of any alleged harm to Yukos. See Smith v. Waste Mgmt., Inc., 407 F.3d 381, 384 (5th Cir. 2005) (quoting Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004); see also Part IV.A infra.

In addition, because any direct harm alleged was directly suffered by Yukos, a Russian corporation, that harm occurred in Russia, not the United States. See Rong, 452 F.3d at 892 (Henderson, J., concurring). "[C]ourts 'often look to the place where legally significant acts giving rise to the claim occurred' to determine the location of a 'direct effect.'" (quoting Weltover, Inc. v. Republic of Argentina, 941 F.2d 145, 152 (2d Cir. 1991), aff'd, 504 U.S. 607 (1992)). All of the acts alleged occurred in Russia to a Russian corporation, and the alleged eventual effects on American investors cannot constitute a direct effect in the United States.

### 2. The Expropriation Exception Does Not Apply

While plaintiffs do not even allege that the expropriation exception to the FSIA applies, it is clear that this exception does not apply to plaintiffs' claims against Rosneftegaz.

A claim under the expropriation exception to the FSIA must meet three requirements: "At issue must be (1) 'rights in property' that (2) were taken in violation of international law and (3) the property at issue (or any property exchanged for it) must either (a) be present in the United States 'in connection with a commercial activity carried on in the United States by the foreign state' or (b) 'owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality' engages in commercial activity in the United States." Peterson

v. <u>Royal Kingdom of Saudi Arabia</u>, 416 F.3d 83, 86-87 (D.C. Cir. 2005) (citing 28 U.S.C.

§ 1605(a)(3)).   The expropriation exception to the FSIA does not apply to plaintiffs' claims

most fundamentally because it is not a violation of "international law" for a country to

expropriate the property of its own nationals.   <u>See</u> <u>Republic of Austria</u> v. <u>Altmann</u>, 541 U.S.

677, 713 (2004) (Breyer, J., concurring) (noting the consensus view among the lower federal

courts); <u>de Sanchez</u>, 770 F.2d at 1395-98; RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW

OF THE UNITED STATES § 712 (1986).   Therefore, as a matter of law, the expropriation alleged in

this case could not violate international law because the alleged victim was Yukos, a citizen of

Russia at the time of the alleged taking.[7]

Although plaintiffs' Amended Complaint alleges a new cause of action asserting vaguely

that defendants expropriated Yukos's most important asset in violation of international law, <u>see</u>

Am. Compl. ¶¶ 409-14, they do not allege that defendants expropriated their ADRs.   <u>See</u> Part

VII <i>infra</i>.   The alleged loss in value to plaintiffs' ADRs cannot constitute an expropriation of

property.   Courts have held that intangible interests such as the contractual right to receive

payment do not amount to "property" under the expropriation exception.   <u>See</u> <u>de Sanchez</u>, 770

F.2d at 1395.   Instead, the exception "only applies where the property at issue is 'tangible

property,' i.e., physical assets that can be touched and seen, as opposed to intangible assets,

which lack a physical existence."   <u>Nemariam</u> v. <u>Federal Democratic Republic of Ethiopia</u>, 400

F.Supp.2d 76, 81 (D.D.C. 2005) (internal quotation marks omitted).   Thus, a decrease in value

of ADRs cannot qualify as "expropriated" property.

---

[7] Jurisdiction under the expropriation exception is limited "[b]ecause Congress intended this exception to provide a means to remedy a foreign government's expropriation of property in the United States."   <u>Hirsh</u> v. <u>State of Israel</u>, 962 F.Supp. 377, 383 (S.D.N.Y.), <u>aff'd</u>, 133 F.3d 907 (2d Cir. 1997).

Additionally, a taking of property "in violation of international law" cannot be established unless a claimant has first pursued and then exhausted the domestic remedies in the foreign state alleged to have caused the injury.  See Millicom Int'l Cellular, S.A. v. Republic of Costa Rica, 995 F.Supp. 14, 23 (D.D.C. 1998); Greenpeace, Inc. (U.S.A.) v. State of France, 946 F.Supp. 773, 783 (C.D. Cal. 1996).  Plaintiffs have not alleged that they made any attempt to pursue or exhaust their claims against defendants in the Russian Federation.

Even assuming plaintiffs could show a taking in violation of international law, they have not even alleged as the exception requires, that the expropriated property is present in the United States in connection with a commercial activity or that Rosneftegaz is engaged in a commercial activity in the United States.  28 U.S.C. § 1605(a)(3).  Consequently, there is no jurisdiction over Rosneftegaz under the third clause of the expropriation exception to the FSIA.  See Dayton, 834 F.2d at 206.

## II. ROSNEFTEGAZ, ROSNEFT, BOGDANCHIKOV, AND BORISENKO ARE NOT SUBJECT TO THE COURT'S PERSONAL JURISDICTION

Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko, are not subject to the personal jurisdiction of this Court and plaintiffs have not come close to alleging a *prima facie* case for personal jurisdiction over them.  Rosneftegaz is alleged to be wholly owned by the Russian Federation, while Rosneft is alleged to be indirectly owned by the Russian Federation.  All of their alleged conduct occurred in Russia.  Am. Compl. ¶ 70.  Neither is alleged to have any operations, employees, or real property in the United States, or to have made any statements directed to the United States.  Both companies' alleged wrongful conduct was with other Russian companies based in Russia.  There is no allegation that Rosneftegaz or Rosneft had any dealings with any plaintiff in this case.  The Amended Complaint is devoid of any allegations that would provide a basis for personal jurisdiction over Bogdanchikov and Borisenko.  There is

no allegation in the Amended Complaint that Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko "purposefully direct[ed]" any conduct toward the District of Columbia or the United States. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).

### A.    Post-Complaint Contacts Are Not Relevant to the Court's Jurisdiction

In a desperate attempt to allege any contacts with the United States, the Amended Complaint for the first time alleges that Bogdanchikov traveled to the United States *after* the complaint was filed in this case.  However, post-complaint contacts are not relevant to the personal-jurisdiction inquiry.  McFarlane v. Esquire Magazine, 74 F.3d 1296, 1300-01 (D.C. Cir. 1996) (stating that article written after plaintiff's complaint was filed "is . . . no basis for personal jurisdiction"); Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Montonave Achille Lauro in Amminstrazione Straordinaria, 937 F.2d 44, 52 (2d Cir. 1991) (explaining that "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed").  Thus, plaintiffs' allegations that Bogdanchikov went to the United States on two occasions allegedly to promote Russian oil and gas interests and to seek investors for Rosneft's initial public offering cannot be considered in determining personal jurisdiction.  See McFarlane, 74 F.3d at 1300-01; Klinghoffer, 937 F.2d at 52; Am. Compl. ¶¶ 80-81.[8]  Similarly unavailing is plaintiffs' transparent attempt to make the IPO and IPO-related contacts with the U.S. relevant to its suit by alleging in the Amended Complaint that "[t]he proceeds of the IPO are intended to carry out the scheme to, among other things, fund exploitation of unlawfully obtained Yukos asset YNG and to repay debt incurred in the execution of the scheme."  Am.

---

[8] The alleged purpose of the October trip was to discuss the prospect of delivering liquefied natural gas, or LNG, to the United States and securing U.S. investment in Russian hydrocarbon transportation infrastructure, Am. Compl. ¶ 80, which has nothing to do with the basis for plaintiffs' suit, and thus does not satisfy the requirement for specific jurisdiction that the "alleged injuries . . . 'arise out of or relate to'" the activities in the forum.  Burger King, 471 U.S. at 472 (citation omitted); see Part II.B.2 *infra*.

Compl. ¶ 73. The IPO is post-complaint conduct that cannot confer personal jurisdiction. <u>See</u> <u>McFarlane</u>, 74 F.3d at 1300-01; <u>Klinghoffer</u>, 937 F.2d at 52.

**B.     The Court Lacks Statutory Authority to Assert Personal Jurisdiction Over This Dispute**

No statutory basis for personal jurisdiction exists, because neither the District of Columbia's jurisdictional statutes nor Federal Rule of Civil Procedure 4(k)(2) (or any other federal statute) supports exercising personal jurisdiction over Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko.

**1.     The District's Jurisdictional Statutes Do Not Support Personal Jurisdiction**

The District's long-arm statute, D.C. CODE § 13-423, does not support specific jurisdiction. Plaintiffs' allegations make clear that none of § 13-423's jurisdictional conditions applies. The Amended Complaint does not contend that Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko has ever transacted business or contracted to supply services in the District, that any of the acts or omissions alleged in the Amended Complaint occurred in the District, or that Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko has an interest in real property in the District. And § 13-423(a)(4)—which applies to alleged wrongs committed outside the District and requires a higher level of contacts than the Due Process Clause—does not apply because the alleged injuries were not sustained in the District and because the Amended Complaint lacks allegations that Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko regularly does business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or services rendered in the District. <u>See</u> <u>Jungquist</u> v. <u>Sheikh Sultan Bin Khalifa Al Nahyan</u>, 115 F.3d 1020, 1032 (D.C. Cir. 1997); <u>Mwani v. bin Laden</u>, 417 F.3d 1, 9 (D.D.C. 2005).

Nor do the District's general jurisdiction statutes, D.C. CODE §§ 13-422 and 13-334, confer jurisdiction over Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko. Those provisions allow general personal jurisdiction when a defendant is "domiciled in, organized under the laws of, or maintain[s] its principal place of business in the District[,]" or when the defendant is "doing business" in the District of Columbia. Richard v. Bell Atl. Corp., 946 F.Supp. 54, 68 (D.D.C. 1996). But, as is apparent from the Amended Complaint, Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko lack any connections to the District.

## 2.     Plaintiffs Fail to Allege Sufficient Nationwide Contacts

Plaintiffs have failed to make a showing of sufficient nationwide contacts to support personal jurisdiction under rule 4(k)(2) or the nationwide service of process provisions of the Securities Exchange Act or RICO.

There are multiple independent reasons why jurisdiction fails under rule 4(k)(2), which acts as the federal rules' "*own* long-arm provision . . . in some circumstances." Mwani, 417 F.3d at 10. Rule 4(k)(2) prescribes those circumstances and authorizes federal courts to assert personal jurisdiction over a defendant only when four conditions are satisfied: (1) at least one of the claims against the defendant arises under federal law, (2) the summons has been properly served, (3) the defendant is not subject to the jurisdiction of any single state court, and (4) the exercise of federal jurisdiction is consistent with the Constitution and laws of the United States. Id. In this case, neither rule 4(k)(2) nor any other federal statute applies because Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko have not been properly served[9] and, as described below,

---

[9] Based on the pleadings, Rosneft is alleged to be owned indirectly by the Russian Federation and is therefore not a sovereign for FSIA purposes under Dole Food, 538 U.S. at 474. Consequently, Rosneft cannot be served under 28 U.S.C. § 1608 and service is faulty pursuant to FED. R. CIV. P. 4(h). This provides an independent basis for dismissal of the Amended Complaint against Rosneft. See Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 435 n.3 (1989).

because asserting personal jurisdiction would violate their constitutional due-process rights.[10]

Each of those deficiencies independently defeats any federal statutory basis for asserting

jurisdiction.  See In re Vitamins Antitrust Litig., 94 F.Supp.2d 26 (D.C. Cir. 2000).

"Whether the exercise of jurisdiction is 'consistent with the Constitution' for purposes of

Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a

whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth

Amendment."[11]  Mwani, 417 F.3d at 11.  Plaintiffs have failed to make a *prima facie* showing

that Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko had sufficient contacts with the nation as

a whole to justify the exercise of personal jurisdiction, as discussed below.  In a case asserting

federal question jurisdiction, courts apply the "fairness approach" to the national contacts test,

under which "a court may exercise jurisdiction over a defendant served under a federal

nationwide service statute if that defendant has minimum contacts with the United States and

maintenance of the suit would not offend fair play and substantial justice."  4 CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIV.3D § 1068.1.

Plaintiffs cannot meet that showing.

Nor have plaintiffs' made sufficient allegations to support personal jurisdiction under the

nationwide service of process provisions in the § 27 of the Securities Exchange Act and RICO.

See 15 U.S.C. § 78aa; 18 U.S.C. § 1965(b).  First, to take advantage of those provisions,

plaintiffs must have stated a properly pleaded claim under those statutes, which they have failed

to do.  Doe I v. State of Israel, 400 F.Supp.2d 86, 120 (D.D.C. 2005); Saleh v. Titan Corp., 436

---

[10] Moreover, if the Court dismisses the securities claims against Rosneft, Bogdanchikov, and Borisenko (and the RICO claim for Bogdanchikov and Borisenko), as it should, then the lack of a claim arising under federal law would nullify personal jurisdiction under rule 4(k)(2).  See Mwani, 417 F.3d at 10.

[11] Although the Fifth Amendment applies to this analysis, courts use the principles developed under the Fourteenth Amendment in International Shoe.  4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIV.3D § 1068.1.

F.Supp.2d 55, 59 (D.D.C. 2006); Parts VIII, IX *infra* (detailing deficiencies in securities and RICO claims).[12]    Absent a basis for jurisdiction under RICO or the Exchange Act, "plaintiffs must satisfy the traditional personal jurisdiction analysis under the District of Columbia long-arm statute and due process," which they cannot do.   Doe I, 400 F.Supp.2d at 120; see Part II. C *infra*.   Second, at least as to the securities claim, "the service of process provision of Section 27 by itself cannot give the Court personal jurisdiction over [defendant], because that provision necessarily is limited by the requirements of the venue provision contained within Section 27." Poling v. Farrah, 131 F.Supp.2d 191, 193 (D.D.C. 2001); see also In re Baan Co. Sec. Litig., 245 F.Supp.2d 117, 126 n.10 (D.D.C. 2003); cf. GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1350-51 (D.C. Cir. 2000) (construing Clayton Act's similar venue and service-of-process provision).   Because the venue provision provides for venue "in the district wherein any act or transaction constituting the violation occurred," a court has personal jurisdiction under this provision only if any act or transaction constituting the violation occurred in that district. Poling, 131 F.Supp.2d at 193.   Plaintiffs have failed to allege *any* act or transaction constituting the alleged securities violation in the District of Columbia, and thus may not take advantage of the nationwide service of process provision in the Exchange Act.

### C.    Asserting Personal Jurisdiction Over Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko Would Violate Due Process

For a defendant to be subject to the Court's jurisdiction, the Constitution requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"    Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984) (citation omitted).   Plaintiffs fail

---

[12] In fact, plaintiffs' securities and RICO claims are so utterly deficient that it is clear they were brought solely in an attempt to take advantage of nationwide service of process, but the deficiencies in those claims preclude this strategy.

to satisfy the "minimum contacts" requirement because they have not made a *prima facie* showing of either general *or* specific jurisdiction.

### 1.     Plaintiffs Do Not Allege a Prima Facie Case of General Jurisdiction

The Amended Complaint fails on its face to allege facts necessary to support general jurisdiction over Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko.   General jurisdiction, which permits a defendant to be sued in the forum for claims completely unrelated to its in-forum activities, is appropriate only when the defendant has engaged in "continuous and systematic general business contacts" with the forum.   Helicopteros, 466 U.S. at 416.   Plaintiffs do not allege that, during the operative time period prior to the filing of the complaint, Rosneft or Rosneftegaz were authorized to do business in the United States, had an agent for the service of process in the United States, performed operations or sold products that have reached United States markets, solicited business or signed a contract in the United States, recruited or hired a single employee here, maintained a United States office, owned real or personal property in the United States, or had United States shareholders.   See id. at 411 (listing potentially relevant contacts).   Plaintiffs also do not allege that Bogdanchikov or Borisenko engaged in any such conduct.

The two alleged post-complaint trips to the United States by Bodganchikov cannot be considered, see Part II.A *supra*, but even if they could, those two lone contacts are by no means "continuous and systematic."   While plaintiffs allege that "Rosneft is extensively and actively engaged in U.S. commerce," including through contractual and other relationships and financial services in connection with its IPO, Am. Compl. ¶ 73, IPO post-complaint contacts are not relevant to the personal-jurisdiction inquiry.   Moreover, contacts with a forum through the use of financial services are not sufficient to confer personal jurisdiction.   See Siam Kraft Paper Co., Ltd. v. Parsons & Whittemore, Inc., 400 F.Supp. 810, 812 (D.D.C. 1975).   Nor does a defendant

subject itself to general jurisdiction merely by entering into contracts in the forum.    See
Helicopteros, 466 U.S. at 418 (holding that trip to Texas to negotiate the contract, accepting
checks drawn on a Texas bank, purchasing equipment, and sending personnel to Texas for
training were not continuous and systematic contacts); TXU Energy Retail Co., LP v. Emanuel
Med. Ctr., Inc., No. 3:02-CV-2400, 2003 WL 21281651, at *6 (N.D. Tex. May 28, 2003)
(finding defendant's contacts with forum by regularly entering into short-term contracts for
purchase of natural gas from Texas corporations were not continuous and systematic sufficient to
create general personal jurisdiction).    None of the contacts alleged by Rosneft of Bogdanchikov
is sufficient to create general jurisdiction.    Plaintiffs have not even alleged any contacts with the
U.S. by Rosneftegaz or Borisenko, and certainly no contacts that create general jurisdiction.

> **2.    Plaintiffs Also Fail to State a Prima Facie Case of Specific Jurisdiction**

When a forum seeks to assert specific jurisdiction over a foreign defendant, due process
is "satisfied if the defendant has 'purposefully directed' his activities at residents of the
forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those
activities." Burger King, 471 U.S. at 472 (quoting Keeton, 465 U.S. at 774; Helicopteros, 466
U.S. at 414).    As the D.C. Circuit has recognized, "minimum contacts do not exist in an
intentional tort case unless the defendant '*expressly aimed* its tortious conduct at the forum'; the
mere fact that the harm caused by the defendant was primarily felt in the forum because the
plaintiff resided there is not enough." Price v. Socialist People's Libyan Arab Jamahiriya, 294
F.3d 82, 95 (D.C. Cir. 2002) (quoting IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d
Cir. 1998)).    Moreover, the Supreme Court has "consistently held" that the "foreseeability of
causing *injury*" in another forum "is not a 'sufficient benchmark' for exercising personal
jurisdiction." Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 295 (1980)).

Plaintiffs do not even allege—nor would they have any basis to—that Rosneft or Rosneftegaz targeted their conduct at the United States. Nor do they allege any injuries that "arise out of or relate to" defendants' activities in the United States. See Burger King, 471 U.S. at 472. Instead, the Amended Complaint expressly asserts that the alleged conduct occurred in Russia among Russian corporations. Am. Compl. ¶¶ 60-84, 162-222, 249, 261, 277-80, 258-59. The Amended Complaint alleges no conduct by Bogdanchikov or Borisenko targeted at the United States during the relevant precomplaint time period that is related to the causes of action alleged.

3. **Exercising Personal Jurisdiction Would Offend Due Process Because It Would Unreasonably Burden Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko and Further No Interest of the District of Columbia**

Even if Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko had made constitutionally sufficient contacts with the forum—which they did not—exercising jurisdiction over them would still offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). The Court should also place "significant weight" on the "reasonableness" and "fairness" factors of the due-process analysis. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113-16 (1987); World-Wide Volkswagen Corp., 444 U.S. at 292-94. Those include the burdens on the defendants, the procedural and substantive interests of other nations, and the interests of the forum in providing relief, which in this case all combine to make the exercise of personal jurisdiction constitutionally unreasonable. See Asahi, 480 U.S. at 114. There is nothing fair about forcing Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko to travel thousands of miles to come to the U.S. to litigate, in a foreign tongue, a set of events that took place in Russia, are subject only to Russian law, and have nothing to do with the United States or its judicial system. Given the "great care and reserve" that United States courts should observe "when extending our notions of

personal jurisdiction into the international field[,]" the Court should defer to Russia's strong interest in applying its procedural and substantive policies to this matter.[13]  Id. at 115 (quotation omitted); see Part V infra; see also Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972) (explaining that the principle of holding parties liable for torts committed outside the forum "must be applied with caution, especially in an international context").

## III.    THE ACT-OF-STATE DOCTRINE REQUIRES DISMISSAL OF THIS CASE

This case must be dismissed under the act-of-state doctrine because the allegations in the Amended Complaint would require the Court to impermissibly second guess the decisions of the Russian government and its courts.  "Unlike a claim of sovereign immunity, which merely raises a jurisdictional defense, the act-of-state doctrine provides foreign states with a substantive defense on the merits.  Under that doctrine, the courts of one state will not question the validity of public acts (acts jure imperii) performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts."  Altmann, 541 U.S. at 700; see also Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964); World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1165 (D.C. Cir. 2002) (citing W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 405, 409 (1990)).

The alleged seizure of Yukos's assets by the Russian Federation is a classic case in which the act-of-state doctrine should apply.  See Ricaud v. Am. Metal Co., 246 U.S. 304 (1918) (holding that former owners of private property seized during the Mexican revolution could not sue the new owners of the property, because the new owners' titles derived from an act of state);

---

[13] Because Russian law applies to plaintiffs' claims, the District does not have any interest in applying its laws to the dispute.  Asahi, 480 U.S. at 114.

Oetjen v. Cent. Leather Co., 246 U.S. 297 (1918) (same); see also World Wide Minerals, 296 F.3d at 1166 (characterizing similar allegations that Kazakhstan expropriated shares of a formerly privatized uranium company and transferred them to a company wholly owned by the state "the classic act of state addressed in the case law"); Dayton, 834 F.2d at 206 (holding that claims for compensation arising from the nationalization of textile production plants in Czechoslovakia presented a "prime case" for the application of the act-of-state doctrine because the claims "invite[d] examination of the validity of a taking by a foreign state of real property located within its own territory").    As in World Wide Minerals and Dayton, plaintiffs' allegations would improperly require an American court to examine the validity of the Russian Federation's alleged taking of property in Russia.[14]

An English court recently reached the conclusion that the act-of-state doctrine barred consideration of the alleged expropriation of the assets of Yukos.    Yukos Oil Co. v. Fin. Servs. Auth., [2006] EWHC 2044 (admin.) (Q.B.) (Ex. F).    The case, brought by Yukos itself, challenged the listing and offering for sale of Rosneft shares for its IPO on the London Stock Exchange, arguing that the shares could not be listed because a significant portion of the value of Rosneft consisted of the assets of YNG, which were allegedly expropriated by the Russian Federation.    Id. at ¶¶ 5, 6.    The court rejected Yukos's argument that the case involved commercial activities because "[t]he underlying point has always been in this case that the mind behind the relevant events was the Russian Federation."    Id. at ¶ 82.    Thus, the court dismissed the case, holding that "that the answer is clear and it is that the Act of State doctrine does apply."

---

[14] This case is the polar opposite of that brought by Yukos investors against Yukos itself for securities fraud in In re Yukos Oil Co. Sec. Litig., No. 04 Civ. 5243, 2006 WL 800736 (S.D.N.Y. Mar. 30, 2006).    In that case, the court held that the act-of-state doctrine did not apply because the allegations concerned alleged misstatements and omissions by Yukos, rather than the propriety of the Russian Federation's tax enforcement and penal actions.    Id. at *6-*7.    By contrast, the allegations in this case would require the Court to question exactly what was not implicated in In re Yukos—the statements and official actions of the Russian Federation in allegedly confiscating the assets of Yukos.

Id. ¶ 90. The same conclusion is warranted in this case, which clearly arises out of the same alleged conduct and draws into question the same sovereign activities of the Russian Federation.

The act-of-state doctrine bars consideration of plaintiffs' claims for the additional reason that they would improperly require the Court to sit in judgment of the Russian Federation's sovereign authority to levy and collect taxes from its own citizens and corporations and to question matters already decided by Russian courts. See United States v. Second Nat'l Bank of N. Miami, 502 F.2d 535, 545 (5th Cir. 1974); Riggs Nat'l Corp. & Subsidiaries v. Comm'r of IRS, 163 F.3d 1363, 1367-69 (D.C. Cir. 1999). Because the Court cannot second guess the public acts of the Russian government and its courts on its own soil, this case must be dismissed.[15]

## IV. PLAINTIFFS LACK STANDING TO BRING THE RICO, CONVERSION, CONSPIRACY TO COMMIT CONVERSION, UNJUST ENRICHMENT, AND EXPROPRIATION CLAIMS

Plaintiffs have no standing to bring their RICO, conversion, conspiracy to commit conversion, unjust enrichment, and expropriation claims because they have, at best, alleged only an indirect injury. Am. Compl. ¶¶ 311-17, 330-50, 409-14. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180, 181 (2000), ("to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

---

[15] The decision by the Texas bankruptcy court in the Yukos matter supports, by contrast, application of the act-of-state doctrine here. In that case, the bankruptcy court was asked to decide the very different question of whether an entire bankruptcy proceeding should be dismissed because of the act-of-state doctrine. The bankruptcy court held that the function of marshalling Yukos's assets did not *necessarily* require the court to second guess the acts of the Russian government, but the court recognized that the act-of-state doctrine might well play a role in the bankruptcy going forward. As the court stated: "Although the acts of the Russian government doubtless have a significant impact upon the efforts of Yukos to reorganize itself financially, the filing and conduct of this chapter 11 case does not *in itself* require that this court sit in judgment of those acts." In re Yukos Oil, 321 B.R. at 409, 410 (emphasis added). But unlike the mere filing of a bankruptcy proceeding, this case requires the court to sit in judgment of precisely these sovereign acts and should be dismissed under the act-of-state doctrine.

opposed to merely speculative, that the injury will be redressed by a favorable decision"). The gravamen of each of plaintiffs' claims is that Defendants "have directly and wrongfully seized the most valuable asset *of Yukos*." Am. Compl. ¶ 313(b) (emphasis added); see also Am. Compl. ¶ 276 ("As a result of the Campaign to destroy the *company* by eliminating any opportunity to satisfy massive tax levies that were confiscatory on their face, Yukos filed for bankruptcy protection . . . .") (emphasis added); Am. Compl. ¶ 294 ("Defendants have taken their scheme to *expropriate Yukos* a step further by unlawfully seizing YNG") (emphasis added).

The entire basis for plaintiffs' alleged damages is that *Yukos* suffered damage (by having certain of its assets sold at auction to pay the taxes owed to the Russian government) and that plaintiffs' ADRs consequently decreased in value. Am. Compl. ¶ 310 ("Plaintiffs' ADRs are now worthless, and they have become worthless *because* Yukos's most valuable asset has been transferred to a state-owned commercial enterprise") (emphasis added); Am. Compl. ¶ 313(c) (defendants have "wrongfully seized all the benefits that otherwise would accrue to the owners of Yukos"); see also Am. Compl. ¶¶ 317, 340, 350, 414, 418.  However, diminution of value of shares is an indirect, not direct, injury to plaintiffs.  See Warren v. Mfrs. Nat'l Bank of Detroit, 759 F.2d 542, 544 (6th Cir. 1985); Nordberg v. Lord, Day & Lord, 107 F.R.D. 692, 698 (S.D.N.Y. 1985); Goldin v. Primavera Familienstiftung, Tag Assocs. (In re Granite Partners L.P.), 194 B.R. 318, 325 (Bankr. S.D.N.Y. 1996).

Plaintiffs thus lack standing to bring their conversion, conspiracy to commit conversion, unjust enrichment, expropriation, and RICO claims, all of which allege damage to the corporation, not the individual ADR holders.  See Hutchings v. Manchester Life & Cas. Mgmt. Corp., 896 F.Supp. 946, 947 (E.D. Mo. 1995) (dismissing plaintiff's complaint for lack of standing to bring a conversion claim because property was not owned by plaintiff personally but

34

by the corporation); Brazlin v. W. Sav. & Loan Ass'n, No. 91-0078-PHX-SMM, 1994 WL 374286, at *4 (D. Ariz. Jan. 28, 1994) (holding a shareholder did not have standing to sue directly to recover loss resulting from depreciation of the market value of corporate stock). Because the plaintiffs were not directly affected by the wrongs they allege, they lack standing to pursue these claims.  See Bykov v. Radisson Hotels Int'l, Inc., No. 05-1280 ADM/JSM, 2006 WL 752942, at *6 (D. Minn. Mar. 22, 2006) (dismissing unjust enrichment claims because company suffered the injury, not plaintiff (citing Pothoff v. Morin, 245 F.3d 710, 716-17 (8th Cir. 2001))); see also Gianascio v. Giordano, No. 99 CV 1796 GBD, 2003 WL 22999454, at *6-7 (S.D.N.Y. Dec. 19, 2003) (same); Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. 1981) (affirming dismissal of a conspiracy claim because plaintiff's injury arose only from loss in value of stock as a result of injury to corporation); Joseph v. Algemene Bank Nederland, N.V., 592 F.Supp. 141, 148 (W.D. Pa. 1984) (dismissing a civil conspiracy count for lack of standing because "diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right").

Similarly, plaintiffs lack standing to bring their expropriation claim, which alleges the expropriation of Yukos, not plaintiffs' ADRs.  See Talenti v. Clinton, 102 F.3d 573, 576-78 (D.C. Cir. 1996) (holding plaintiff had no standing to raise claim based on expropriation of property); Part VII infra.

Moreover, it is well settled that a plaintiff cannot bring an individual private action under RICO for injuries sustained by a corporation in which the plaintiff owns stock.  As stated recently by the Supreme Court in Anza v. Ideal Steel Supply Corp., 126 S.Ct. 1991 (2006), when the alleged harm from a RICO claim is indirect, the claim fails as to the fundamental element of proximate causation.  As in Anza, the alleged injury to plaintiffs—ADR holders of Yukos—is

indirect at best.  See Sears v. Likens, 912 F.2d 889, 892 (7th Cir. 1990);  see also At the Airport v. ISATA, LLC, No. 05 CV 3544, 2006 WL 1898057, at *6 (E.D.N.Y July 5, 2006); Lakonia Mgmt. Ltd. v. Meriwether, 106 F.Supp.2d 540, 550-51 (S.D.N.Y. 2000).

In sum, despite their attempt to plead a direct injury, plaintiffs only allege the diminution in value of their Yukos ADR shares as a result of the alleged renationalization of Yukos's assets. Only Yukos is alleged to be directly injured, not the ADR holders, and therefore, the ADR holders do *not* have standing to assert the RICO, conspiracy, conversion, unjust enrichment, and expropriation claims.

**V.    THIS CASE SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS* BECAUSE RUSSIA IS AN ADEQUATE ALTERNATIVE FORUM AND THE PRIVATE AND PUBLIC INTERESTS FAVOR DISMISSAL**

Dismissal on *forum non conveniens* grounds is appropriate if a "trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' *or* when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'"  See Jackson v. Am. Univ., 52 F. App'x 518, 519 (D.C. Cir. 2002).

In deciding a *forum non conveniens* motion, the court must first consider whether there is an alternate suitable forum.  See Pain v. United Techs. Corp., 637 F.2d 775, 784-85 (D.C. Cir. 1980), modification recognized, Jackson, 52 F. App'x at 518.  The court then must balance the private and public interest factors of the respective forums.  Id.

Although ordinarily a plaintiff's choice of forum receives deference by giving "considerable, but not conclusive, weight" to its initial choice, "this presumption in favor of the initial forum choice applies with less . . . force when the real parties in interest are foreign."  In re Disaster at Riyadh Airport, 540 F.Supp. 1141, 1144 (D.D.C. 1982).  In this regard, two of the plaintiffs, who account for slightly more than half of the total amount that plaintiffs claim to

have paid for the Yukos ADRs, are citizens of the Netherlands and the Cayman Islands. Am. Compl. ¶¶ 25-26 & Ex. A. Furthermore, these foreign plaintiffs did not purchase their ADRs on the OTC market in the United States but rather on the London Stock Exchange. Id.

Moreover, when plaintiffs select a jurisdiction as a result of forum shopping, as is the case here, the initial presumption in favor of plaintiffs' choice of forum is also given far less deference. See Reiffin v. Microsoft Corp., 104 F.Supp.2d 48, 54 n.12 (D.D.C. 2000) (citation omitted) ("'Circumstances in which a plaintiff's chosen forum will be accorded little deference include cases of . . . forum shopping.'"). Plaintiffs filed this claim in the United States despite their admissions that: (1) all the defendants are Russian; and (2) all the alleged wrongful acts occurred in Russia. See Schmid Labs. Inc. v. Hartford Accident & Indem. Co., 654 F.Supp. 734, 737 (D.D.C. 1986) ("[T]he common law doctrine of *forum non conveniens* [was] in part intended to prevent forum shopping . . . it is [not] in the interest of justice to encourage, or even allow a plaintiff to select one district exclusively or primarily to obtain . . . specific precedents"); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 n.15 (1981) ("[D]ismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law").

### A.    Russia Provides an Adequate Alternate Forum

Russia is not only an adequate—but a superior—alternate forum. Ordinarily, this requirement is met when the defendant is "amenable to process" in another jurisdiction. See BCCI Holdings (Lux.), S.A. v. Mahfouz, 828 F.Supp. 92, 95 (D.D.C. 1993) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947)). A foreign forum is not inadequate merely because (i) its justice system differs from that of the United States, (ii) plaintiffs may not be able to proceed on a particular legal theory or (iii) because their potential damages award may be smaller. See Disaster at Riyadh Airport, 540 F.Supp. at 1145 (citing Piper, 454 U.S. at 254

n.22). All of the defendants are Russian citizens (except for the Russian Federation itself) and would be subject to jurisdiction in Russia and amenable to process in Russia.

American courts have routinely recognized Russia as an adequate alternative forum for the adjudication of claims against Russian defendants and have dismissed such claims on *forum non conveniens* grounds. See, e.g., Base Metal Trading Ltd. v. Russian Aluminum, 98 F. App'x 47 (2d Cir. 2004) (unpublished) (holding Russia to be an adequate alternative forum for civil RICO, contract, and tortious interference claims); Pavlov v. Bank of N.Y. Co., 135 F.Supp.2d 426, 435 (S.D.N.Y. 2001) (holding Russia to be adequate alternative forum for conversion claim), vacated on other grounds, 25 F. App'x 70 (2d Cir. 2002).

**B.      The Private and Public Interests Weigh in Favor of Dismissal**

       **1.      Private Interests**

When examining and balancing private interests for dismissal on grounds of *forum non conveniens*, the court must consider several factors including:  (i) the ease of access to sources of proof, (ii) the availability of compulsory processes for attendance of unwilling witnesses, (iii) the cost of obtaining attendance of willing witnesses, and (iv) other practical problems that interfere with an easy, expeditious, and inexpensive trial. See Mahfouz, 828 F.Supp. at 96; see also Pain, 637 F.2d at 786.

No event relating to any of the claims occurred in the United States. See Nalls v. Rolls-Royce Ltd., 702 F.2d 255, 256 (D.C. Cir. 1983) (noting that the most critical fact, as to the balance of the factors of private interest, is that no event relative to plaintiffs' claim occurred in the United States). Any alleged wrongful conduct was carried out in Russia. The alleged confiscatory taxes were carried out by the Russian Ministry of Tax, under Russian tax law governed by the tax code of the Russian Federation. The alleged scheme to confiscate Yukos's property, including the auction of Yukos's asset, YNG, and the use of Russian bankruptcy

proceedings against Yukos admittedly took place in Russia. Russia, not the United States, is at the very core of the entire action.

### (a)    Access to Sources of Proof

Because none of the events underlying plaintiffs' claim took place in the United States, it is clear that all the witnesses and documentary evidence as to facts of this case and the events underlying plaintiffs' claim are in Russia. Rosneftegaz and Rosneft are located in Russia and their primary place of business is in Russia. Bogdanchikov and Borisenko work and live in Russia. Given the plain allegations of the Amended Complaint: (i) any current or former employees, government officials, or any other individual even tangentially related to the plaintiffs' alleged events are located in Russia, (ii) any documents and evidence that plaintiffs would seek to obtain are located in Russia, and (iii) any evidence is likely to be in Russian and will need to be translated for an American court—an imposition that would be avoided if the case were heard in a Russian court. See Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil, 212 F.Supp.2d 30, 39 (D.D.C. 2002) (dismissing on *forum non conveniens* grounds where witnesses and documents, including documents of the Brazilian government, were primarily located in Brazil).

Moreover, in considering the access to proof, it is critical to note that Russian witnesses would *not* be subject to the subpoena power of the American courts. See generally Mahfouz, 828 F.Supp. at 97 ("The availability of compulsory process for attendance of unwilling witnesses . . . also favors litigation of the instant dispute in London rather than here."); Disaster at Riyadh Airport, 540 F.Supp. at 1148 ("[A] United States forum would likely be unable to require the attendance of those foreign witnesses."). Russian courts would have the ability to compel such witnesses to testify and produce documents in an action pending before the court.

It is clear that when examining the ease of access to proof, this factor strongly favors adjudication of plaintiffs' claims in Russia.

### (b)    Convenience of the Parties

While some of the plaintiffs live in the United States and it may be more convenient for them to bring suit here rather than in Russia, the "plaintiff's citizenship and residence in the United States merit no special consideration in [the] balancing process" of deciding a motion to dismiss on *forum non conveniens* grounds.  Nalls, 702 F.2d at 256.  As most, if not all, of the key witnesses are located in Russia, it would be most inconvenient for them to travel and attend trial in the United States—if they were even willing to attend.  Furthermore, the exorbitant cost associated with the onerous burden on Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko (and the other Russian defendants) defending themselves in a United States court strongly favors adjudication of plaintiffs' claims in Russia.  See Mahfouz, 828 F.Supp. at 98 ("Given the conclusion that more material witnesses are likely to be located in England than in the United States, the costs of obtaining willing witnesses, another relevant factor of the private interest balance, would be substantially reduced by litigating this matter in London").

### 2.    The Minimal Interest of the Public in Retaining This Action in the District of Columbia Warrants Dismissal

The public interest factors that must be balanced are:  (i) the burden imposed by the trial in the community, (ii) the degree of local public interest in the dispute, and (iii) whether foreign law will be applicable.  See Pain, 637 F.2d at 791-93.

### (a)    Burdening the Court

This case imposes an excessive burden on the Court in light of the fact that there is absolutely no connection between the acts complained of in this suit and the District of Columbia.  See Croesus EMTR Master Fund L.P., 212 F.Supp.2d at 40 (dismissing on *forum*

*non conveniens* grounds although the plaintiffs were American and "may have suffered losses, and some of the [b]onds at issue [in the litigation] may have been purchased in the United States" because "[t]he marginal nature of the United States' interest stands in stark contrast to the magnitude of Brazil's interest"); see also Nalls, 702 F.2d at 257 ("This suit causes the expense and harassment to defendants and witnesses, and imposes the burdens on our courts, which the *forum non conveniens* doctrine aims to prevent").

### (b)    Russian Law Applies to Plaintiffs' Common-Law Claims

Under the District of Columbia choice-of-law rules and as plaintiffs now concede in their pleading by amending the complaint to assert certain Russian common-law claims, Russian law will govern plaintiffs' common-law claims and consequently, the Court will have to resolve questions of Russian law on the basis of expert testimony and affidavits as well as conduct independent research if necessary.  See, e.g., Mahfouz, 828 F.Supp. at 98; Croesus EMTR Master Fund L.P., 212 F.Supp.2d at 41 (dismissing on *forum non conveniens* grounds where "litigation will require significant reliance upon Brazilian sources of proof and will turn upon unsettled issues of Brazilian law").  The application of Russian law further diminishes any remote interest the United States may have in the adjudication of plaintiffs' claims.

As stated by the United States Supreme Court, "[t]he doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law . . . the public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'"  Piper, 454 U.S. at 251 (citation omitted); see also Varnelo v. Eastwind Transport, Ltd., No. 02CIV.2084, 2003 WL 230741, at *27 (S.D.N.Y. Feb. 3, 2003) ("Although foreign choice of law is one factor favoring dismissal, 'it is well established that a court considering a *forum non conveniens* motion *should not* engage in a complex conflict of laws inquiry.'" (citations omitted) (emphasis added)).

41

Accordingly, this Court should dismiss plaintiffs' Amended Complaint on *forum non conveniens* because Russian law is likely to apply and this case would require the Court to "untangle problems . . . in law foreign to itself." Piper, 454 U.S. at 251.

### (c)    Competing Interests of the Forum

Plaintiffs' claims have little or no connection to the United States and, therefore, are deserving of little, or no, time and attention of an American court.   In light of the fact that there is no underlying event alleged by plaintiffs that occurred in the United States, the interest the United States might have in conducting a trial is significantly diminished.

## VI.    THE COURT LACKS JURISDICTION TO APPLY U.S. FEDERAL LAWS EXTRATERRITORIALLY

Under the longstanding principle of American law, "[the] legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285 (1949); Zoelsch v. Arthur Andersen & Co., 824 F.2d 27, 31 (D.C. Cir. 1987); see also EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991), superseded by statute on other grounds as stated in Stender v. Lucky Stores, Inc., No. C-88-1467, 1991 WL 354882 (N.D. Cal. Dec. 19, 1991); Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 440 (1989); Weinberger v. Rossi, 456 U.S. 25, 32 (1982).   The Court has no subject-matter jurisdiction to apply United States federal laws to the plaintiffs' claims because Congress did not intend for securities laws or RICO to apply extraterritorially. See Zoelsch, 824 F.2d at 31-32.

### A.    The United States Securities Laws Do Not Apply to Claims Where All Alleged Acts Occurred in a Foreign Country and Only Incidental Effects Are Felt in the United States.

The D.C. Circuit has observed that when Congress enacted the Exchange Act it "was concerned with extraterritorial transactions only if they were part of a *plan* to harm American

investors or markets." Zoelsch, 824 F.2d at 32 (emphasis added).    Courts consider two factors in evaluating whether subject-matter jurisdiction extends to predominantly foreign claims: "(1) whether the wrongful conduct occurred in the United States, and (2) whether the wrongful conduct had a substantial effect in the United States or upon United States citizens." SEC v. Berger, 322 F.3d 187, 192 (2d Cir. 2003); see also In re Baan Co. Sec. Litig., 103 F.Supp.2d 1, 9-10 (D.D.C. 2000) (same).    Plaintiffs attempt to have this Court assert jurisdiction over extraterritorial conduct where *none* of the alleged conduct by Rosneft, Bogdanchikov, and Borisenko occurred in the United States and the conduct at issue was not purposefully directed at the United States.    See Zoelsch, 824 F.2d at 32.    The Amended Complaint also fails to allege any act intentionally directed toward the United States.[16]    Plaintiffs merely allege in conclusory fashion that defendants' misstatements and omissions were "directed at U.S. and global securities markets."    Am. Compl. ¶¶ 10, 142, 147, 186, 224, 262.

While an incidental effect may have been felt by the Yukos ADR holders, only some of whom are residents of the United States and only some of whom purchased their ADRs on the American markets, that is not a substantial effect that warrants application of federal securities laws absent any conduct by a defendant in the United States or directed toward the United States. See Zoelsch, 824 F.2d at 30 (holding that American accounting firm that provided West German accountant with information did not directly cause investors' loss); Baan, 103 F.Supp.2d at 11 (rejecting subject-matter jurisdiction where only generalized effects were alleged and those effects were not related to claims of plaintiffs); Interbrew v. Edperbrascan, 23 F.Supp.2d 425, 430 (S.D.N.Y. 1998) ("[T]he parties, events, and harm (if any) due to the alleged fraud are

---

[16] In the case brought by Yukos investors against Yukos itself for securities fraud, the court held that [i]n the face of the overwhelmingly foreign nature of Defendants' alleged fraud, Plaintiffs have not established sufficient conduct by Defendants within the United States to confer federal subject matter jurisdiction over the putative class claims." In re Yukos Oil Co. Sec. Litig., 2006 WL 800736, at *10.

overwhelmingly foreign. Thus, the Amended Complaint fails to establish that this Court has subject matter jurisdiction under the effects test.")

Moreover, the link between the alleged fraudulent statements and plaintiffs in the United States is based on the fraud-on-the-market theory. Am. Compl. ¶ 398. There is no allegation that each (or any) plaintiff specifically and actually relied on the statements at issue.[17] A plaintiff cannot use the fraud-on-the-market theory to create subject-matter jurisdiction. Baan, 103 F.Supp.2d at 10 (stating that "employing [the fraud-on-the-market] doctrine to fulfill the requirements of the conduct test would extend the reach of the 1934 Act too far").

**B.    At a Minimum, the Federal Securities Laws Do Not Apply to the Claims of the Foreign Plaintiffs Where the Alleged Conduct Occurred Outside the United States**

Plaintiff FCT America Limited is a Cayman Island corporation that purchased and sold Yukos ADRs on the London Stock Exchange. Am. Compl. ¶¶ 26. Plaintiff Z.E. Thijssen is a citizen of and resides in the Netherlands and purchased Yukos ADRs on the London Stock Exchange. Am. Compl. ¶ 25. Collectively, these plaintiffs account for more than one half of the total amount that plaintiffs claim to have paid for the Yukos ADRs. Am. Compl. Ex. A. Notwithstanding that they are foreign plaintiffs, who purchased on foreign exchanges, they attempt to allege violations of United States federal securities laws in asserting claims against Rosneft, Bogdanchikov, and Borisenko. Am. Compl. ¶¶ 386-400.

In applying the Exchange Act, Congress intended "to protect *domestic investors* who have purchased foreign securities on American exchanges and to protect the domestic securities market." Schoenbaum v. Firstbrook, 405 F.2d 200, 206 (2d Cir. 1968), overruled on other

---

[17] Plaintiffs allege in wholly conclusory fashion that every one of the 43 plaintiffs saw and relied on every one of more than 30 statements in this case. This type of conclusory allegation need not be given any weight by the Court in this motion. See Part XI.A.3 *infra*.

grounds, <u>Schoenbaum</u> v. <u>Firstbrook</u>, 405 F.2d 215 (2d Cir. 1968) (en banc) (emphasis added). Thus, federal securities laws "[d]o not apply to losses from sales of securities to foreigners outside the United States unless acts (or culpable failures to act) within the United States directly caused such losses." <u>Bersch</u> v. <u>Drexel Firestone, Inc.</u>, 519 F.2d 974, 993 (2d Cir. 1975).

FCT American and Thijssen are not United States domestic investors and nor did they purchase the ADRs on an American exchange. The foreign plaintiffs in this case cannot avail themselves of United States federal securities law and, thus, at a minimum, Count VII must be dismissed as to Plaintiffs FCT American and Thijssen.

C.     **RICO Does Not Apply Where All Alleged Acts Occurred in a Foreign Country and Only Incidental Effects Are Felt in the United States**

For similar reasons, the RICO claims against Bogdanchikov and Borisenko must be dismissed because the RICO statute does not apply extraterritorially to conduct occurring entirely in Russia where only incidental effects were felt in the United States. It is well settled that the RICO statute does not apply beyond conduct within the United States and that it may only be applied in "[controversies] involving . . . significant and material contact with the United States." <u>N.S. Fin. Corp.</u> v. <u>Al-Turki</u>, 100 F.3d 1046, 1052 (2d Cir. 1996); <u>see also</u> <u>Doe I</u> v. <u>State of Israel</u>, 400 F.Supp.2d 86, 114-16 (D.D.C. 2005) (holding that "any effect on American commerce has been negligible, unforeseeable, and unintended [and h]ence, no relevant factor counsels in favor of applying RICO extraterritorially"); <u>Doe I</u> v. <u>Unocal Corp.</u>, 395 F.3d 932, 961 (9th Cir. 2002) (holding RICO statute inapplicable to alleged foreign conduct lacking sufficient effects in the United States). Accordingly, the RICO claims as to Bogdanchikov and Borisenko must be dismissed.

## VII.    PLAINTIFFS HAVE FAILED TO STATE A VALID CLAIM OF EXPROPRIATION IN VIOLATION OF INTERNATIONAL LAW

Even if plaintiffs could surmount the jurisdictional and other significant hurdles to bringing this suit, plaintiffs have failed to state a colorable claim for expropriation in violation of international law. Plaintiffs do not claim that their ADRs themselves were seized—which plaintiffs either retain or have sold—but instead attempt to concoct a fictional expropriation based merely on the diminution in value of their ADRs. Thus, they allege that defendants' actions have "depriv[ed] Plaintiffs and all owners of Yukos of any ability whatsoever to control their property." Am. Compl. ¶ 411. Yet the mere loss in value to shares that plaintiffs still retain indirectly caused by foreign government events entirely unconnected to plaintiffs does not amount to an expropriation in violation of international law. See Part IV *supra* (discussing indirect nature of plaintiffs' claims). Even if plaintiffs have stated a claim for an expropriation, which they have not, there is no private cause of action for plaintiffs' amorphous, alleged violation of international law. See Stutts v. De Dietrich Group, No. 03-CV-4058, 2006 WL 1867060, at *6-8 (E.D.N.Y. June 30, 2006). Moreover, it is not a violation of well-established, universally recognized norms of international law for a country to expropriate the property of its own citizens—or that of anyone else. Customary international law is comprised of "'those rules that States universally abide by, or accede to, out of a sense of legal obligation and mutual concern.'" Id. at *9 (citation omitted). Thus, "'for a principle to have ripened . . . into a settled rule of international law, it must command the general assent of civilized nations.'" Id. (citation omitted). However, expropriation is not a universally condemned practice. See Banco Nacional de Cuba, 376 U.S. at 428-30 (declining to consider the validity of the Cuban government's expropriation of a foreign-owned corporation's assets, noting the sharply conflicting views on the issue in capital-exporting, capital-importing, socialist and capitalist

nations); Filartiga v. Pena-Irala, 630 F.2d 876, 881 (2d Cir. 1980) (contrasting expropriation, which is not a universally recognized violation of international law, with torture, which is).

Nor is it a violation of *jus cogens* for state entities to seize the property of their own nationals in furtherance of the state's sovereign authority to levy taxes.  A state violates *jus cogens* only when it engages in "gross violations of internationally recognized human rights" such as genocide, murder, and slavery.  RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 702 & cmt. n (1987).

## VIII.   ROSNEFT, BOGDANCHIKOV, AND BORISENKO DID NOT COMMIT SECURITIES FRAUD

Plaintiffs' Amended Complaint fails to satisfy the most basic element of a securities fraud claim: an allegedly false statement made by the defendant.  Although the Amended Complaint adds nearly 30 statements made by various individuals, none of these statements were made by Borisenko or Bogdanchikov and only two were allegedly made by Rosneft.  The two statements allegedly made by Rosneft are simply not actionable for a host of fundamental reasons, including (1) Rosneft had no duty to the ADR holders of a competitor and therefore cannot be sued by them; and (2) there are no specific allegations of fact that the statements made were not thought to be absolutely true at the time they were made.  Moreover, Rosneft, Bogdanchikov, and Borisenko cannot be held secondarily liable for the statements made by others under Central Bank.  See Part VIII.B.3 *infra*.

### A.      The Basic Elements of a § 10(b) Claim

In order to state a claim under § 10(b) of the Exchange Act plaintiffs must allege that *each* defendant:

- made a material misstatement or omission of a material fact,

- with "scienter,"

- in connection with the purchase or sale of any security,

- upon which the plaintiff reasonably relied, and

- that plaintiff's reliance was the proximate cause of its injury.

In re Interbank Funding Corp. Sec. Litig., 329 F.Supp.2d 84, 90 (D.D.C. 2004); see also 15 U.S.C. § 78j(b).

Both the PSLRA and rule 9(b) of the Federal Rules of Civil Procedure impose on plaintiffs the further requirement that allegations of federal securities fraud be pleaded with particularity. The PSLRA requires that "a complaint alleging securities fraud "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); see also Interbank Funding Corp., 329 F.Supp.2d at 90 (dismissing complaint because plaintiff failed to plead facts showing why alleged misstatements were misleading).

In addition, the PSLRA imposes a strict requirement for pleading scienter—that is, intent to defraud—as to *each* defendant:

> [a] complaint *shall*, with respect to *each* act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2) (emphasis added). The PSLRA thereby requires a party to plead facts that support a "strong inference" that each defendant acted with scienter. See In re U.S. Office Prods. Sec. Litig., 326 F.Supp.2d 68, 75 (D.D.C. 2004) (dismissing fraud claim because it did not adequately plead facts giving rise to a "strong inference" of scienter); Interbank Funding Corp., 329 F.Supp.2d at 90 (same). The requisite "strong inference" of fraud must be established either by (i) alleging facts to show that the defendant had both motive and opportunity to commit fraud, or (ii) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. See Interbank Funding Corp., 329 F.Supp.2d at 90.

In addition to the stringent standards imposed by the PSLRA, rule 9(b) also requires that each allegation of fraud be pleaded with particularity. See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1277-78 (D.C. Cir. 1994); see also U.S. Office Prods., 326 F.Supp.2d at 75; Hammerman v. Peacock, 607 F.Supp. 911, 915 (D.D.C. 1985). "In other words, rule 9(b) requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud." U.S. Office Prods., 326 F.Supp.2d at 73 (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).

When multiple defendants are involved, as in this case, rule 9(b) requires specific facts that show that *each defendant* made a fraudulent statement. See Mayer v. Dell, No. 90-0472, 1991 WL 21567, at *4 (D.D.C. Feb. 13, 1991) (dismissing plaintiff's claims because they "fail[ed] to state with particularity the nature of each defendant's participation in the alleged fraud, what statements were made, when they were made, who made them, how those statements misled plaintiff, or what investments to which the statements pertained"). "'Conclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b).'" U.S. Office Prods., 326 F.Supp.2d at 74 (citation omitted).

**B.    Plaintiffs Fail to Allege False Statements by Bogdanchikov, Borisenko, or Rosneft**

**1.    The Amended Complaint Alleges No False Statement by Bogdanchikov or Borisenko**

Plaintiffs' Amended Complaint does not allege a single statement, much less a fraudulent statement, made by Bogdanchikov and Borisenko. Courts have repeatedly stated the obvious: the making of a false or misleading statement (or an omission of a material fact) is a necessary element of securities fraud claim. Interbank Funding Corp., 329 F.Supp.2d at 89 (stating that to have a cause of action under § 10(b) and rule 10b-5 a plaintiff must allege that each defendant, among other things, "made a material misstatement or omission of a material fact"); see also 15

49

U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Plaintiffs' securities fraud claim against Bogdanchikov and Borisenko therefore must be dismissed.

### 2.    Rosneft's Alleged Statements Are Insufficient to State a Federal Securities Fraud Claim

Plaintiffs allege that Rosneft made two statements. Am. Compl. ¶ 263. First, plaintiffs allege that on July 22, 2004—five months before Rosneft acquired any assets of YNG— "Rosneft's press spokesman Alexander Stepanenko said that Rosneft was 'not planning any asset acquisitions in the near future. None.'" Am. Compl. ¶ 263. Nothing in the Amended Complaint suggests that this was not true at the time the statement was made. Additionally, this statement came from an article in a third party's publication and, therefore, plaintiffs improperly base a claim on an alleged statement set forth in an article over which Rosneft had no control. See In re Newbridge Networks Sec. Litig., 926 F.Supp. 1163, 1171 (D.D.C. 1996) (holding that plaintiffs must allege that defendants had some control over the final version of the article, because spokespersons might be quoted inaccurately or out of context).

The second alleged statement made by Rosneft in the Amended Complaint is that "Rosneft, speaking on behalf of itself and Defendant Russian Federation, 'announced it is not interested in bidding for [YNG].'" Am. Compl. ¶ 263. However, this statement was not a quote by Rosneft, but instead merely the view of the author of the article. As such, it cannot properly be attributed to Rosneft. See Baan, 103 F.Supp.2d at 13 n.19. See No Thanks: Rosneft May Not Be Interested in Yuganskneftegas; NEFTE COMPASS (July 22, 2004). Moreover, there are no specific allegations in the Amended Complaint that this statement was false at the time it was allegedly made by the author of the article.

### 3. Bogdanchikov, Borisenko, and Rosneft Cannot Be Secondarily Liable for Statements Made by Others

Without alleging an *actual* misrepresentation by Rosneft, plaintiffs fail to state a claim because there is no secondary liability, such as conspiracy or aiding and abetting, under § 10(b). See Cent. Bank of Denver, 511 U.S. at 191 ("Because the text of § 10(b) does not prohibit aiding and abetting, we hold that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)."); Baan, 103 F.Supp.2d at 16 ("[M]aking a material misstatement or omission violates 10(b), but aiding, abetting, or conspiracy to do so does not.").

Additionally, "secondary actor[s] cannot incur primary liability under [§ 10(b)] for a statement not attributed to that actor at the time of its dissemination . . . that is, *in advance* of the investment decision." Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d. Cir. 1998) (emphasis added); see also Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1205 (11th Cir. 2001) ("Following the Second Circuit, we conclude that . . . the alleged misstatement or omission upon which a plaintiff relied must have been publicly attributable to the defendant at the time that the plaintiff's investment decision was made"); S.E.C. v. Lucent Techs., Inc., 363 F.Supp.2d 708, 720 (D.N.J. 2005) (same). Not one statement in the Amended Complaint was publicly attributed at any time, much less at the time of the statement, to Rosneft.

In this regard, plaintiffs' attempt to plead around Central Bank is both transparent and ineffective. In the original complaint, plaintiffs alleged statements by President Putin that they claimed were false and misleading. After reviewing defendants' motions to dismiss, plaintiffs have now alleged that these statements by President Putin were made "on behalf of" Rosneft (and others)—when there is nothing on the face of these statements that they were made on anyone else whatsoever. Am. Compl. ¶¶ 147, 226, 285. Similarly, the Amended Complaint alleges that numerous other statements by third parties were made "on behalf of" Rosneft.

Despite the addition of the disingenuous "on behalf of" language, plaintiffs cannot alter the nature of the securities fraud claims they seek to allege: in short, plaintiffs are attempting to hold Rosneft secondarily liable for statements made by others, which is barred by the Supreme Court's holding in Central Bank.

Moreover, general allegations of conspiracy are insufficient for primary liability under § 10(b) of the Exchange Act. See, e.g., Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 841-43 (2d Cir. 1998) ("[W]e agree with [the] various courts that [have held] the Supreme Court's reasoning in Central Bank applies not only to aiding and abetting claims, but to conspiracy claims as well."); Decker v. Glenfed, Inc. (In re GlenFed, Inc. Sec. Litig.), 60 F.3d 591, 592 (9th Cir. 1995) ("The [Supreme] Court's rationale precludes a private right of action for 'conspiracy' liability.").

### C.    Rosneft, Bogdanchikov, and Borisenko Owed No Duty to Plaintiffs

Rosneft, Bogdanchikov, and Borisenko had no duty to the ADR holders of a competitor of Rosneft, Yukos. See Berman v. Metzger, 1981 WL 1596, at *6 (D.D.C. Feb. 9, 1981) ("to particularize the alleged fraud the plaintiffs at a minimum must identify the 'agent, . . . fiduciary, . . . [or] person in whom the sellers had placed their trust and confidence'" (citation omitted)). Rosneft, Bogdanchikov, and Borisenko simply had no duty to speak to the Yukos ADR holders and there is no allegation that they ever did so. See, e.g., United States v. Crop Growers Corp., 954 F.Supp. 335, 350 (D.D.C. 1997) (dismissing federal securities fraud claims where defendant owed no duty to disclose information to plaintiff).

### D.    Plaintiffs Fail to Plead Reasonable Reliance

Furthermore, plaintiffs fail to satisfy their burden to plead specific facts establishing reliance on any of the statements. Rombach v. Chang, 355 F.3d 164, 169 n.4 (2d Cir. 2004) ("[P]laintiff must plead . . . that plaintiff's reliance on defendant's action caused plaintiff

injury."). Indeed, plaintiffs cannot reasonably claim that they were unaware of the foreseeable risks presented by Yukos's tax strategies, because Yukos in its public disclosures, advised investors of exactly the risks of which they now complain. For example, in each of its annual reports from 2000 to 2002, Yukos included a disclosure of the uncertainties inherent in the Russian tax system:

> Russian tax legislation is subject to varying interpretations and constant changes, which may be retroactive. Further, the interpretation of tax legislation by tax authorities as applied to the transactions and activities of the Company may not coincide with that of management. As a result transactions may be challenged by tax authorities and the Company may be assessed additional taxes, penalties and interest.

2001 Yukos Annual Report (Ex. D at 67); see also 2000 and 2002 Yukos Annual Reports (Ex. C at 58; Ex. E at 62).

The 2002 annual report, management discussion and analysis ("MD&A") further warned plaintiffs that differences in its projections could occur "from a variety of factors including, but not limited to . . . changes in tax and other laws applicable to our business; [and] potential disruption or interruption of our production facilities due to accidents or political events." 2002 Yukos Annual Report, MD&A (Ex. E at 73). The 2002 MD&A also warned the plaintiffs that "uncertainty related to Russian tax laws exposes us to enforcement measures and the risk of significant fines and could result in greater than expected tax burden." Id.

Because Yukos disclosed to plaintiffs the risks presented by *Yukos's* tax strategies, Yukos investors could not have been justified in relying on any other representations to the contrary. See Indep. Order of Foresters v. Donaldson, Lufkin & Jenrette, Inc., 157 F.3d 933, 940 (2d Cir. 1998) ("[T]he warnings in the Offering Circulars and Prospectuses regarding the risks associated with the investments and the provisions in those documents disavowing any outside

representations preclude a finding that [the plaintiff] reasonably relied upon them in purchasing [its investments].").

Plaintiffs did not allege, and cannot reasonably say, they relied on Rosneft's press spokesman's statement regarding not acquiring assets in the future when determining whether to purchase or hold onto their Yukos ADRs. The fact that Rosneft at the time did not plan on an acquisition does not directly bear on the affairs of Yukos.[18] Furthermore, plaintiffs' alleged reliance on the allegedly soothing statements of President Putin, Rosneft and others is also unreasonable as these statements were issued in a period when Yukos, its officers, and its shareholders were the subject of a public investigation; billions in tax assessments were being imposed against Yukos; key Yukos personnel had been arrested; and Yukos stock was declining in value. Am. Compl. ¶¶ 143-46, 196, 203-15. Plaintiffs' purchases occurred in the midst of— and following—these contrary events, which negates, as a matter of law, any claim of reliance.

### E.    Rosneft, Bogdanchikov, and Borisenko Did Not Act with Scienter

Plaintiffs have not pleaded facts to show that Rosneft, Bogdanchikov, or Borisenko acted with scienter. See Howard v. SEC, 376 F.3d 1136, 1141 n.4 (D.C. Cir. 2004) ("For securities violations, the Supreme Court has described scienter as 'a mental state embracing intent to deceive, manipulate, or defraud.'" (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976))).

Even if, *arguendo*, any of the statements were the basis for liability against Bogdanchikov or Borisenko, there are absolutely no facts alleged to show that any of these

---

[18] In fact, the majority of ADRs purchased were purchased prior to the alleged statements by Rosneft. Moreover, 15 of the 21 plaintiffs that purchased ADRs after July 22, 2004 (the date of Rosneft's alleged statements) had previously purchased ADRs. Therefore, they cannot claim that they reasonably relied on Rosneft's alleged statements in their decisionmaking.

defendants had any actual knowledge or reason to believe that the statements made at the time they were made were anything but true.

As for Rosneft's alleged statements, plaintiffs have failed to plead any facts with particularity to demonstrate that these statements were not believed to be true when made. See Davis v. SPSS, Inc., 385 F.Supp.2d 697, 712 (N.D. Ill. 2005) ("As the statement . . . was not false at the time it was made, it cannot serve as the basis for a securities fraud action."); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1330 (3d Cir. 2002) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.").

F.    **Plaintiffs Lack Standing to Bring a Securities Claim**

Plaintiffs also lack standing to bring a securities claim because they traded in securities of a different issuer—Yukos—and not the stock of the company that allegedly made the false statement. In Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp., 369 F.3d 27 (2d Cir. 2004), cert. denied, 543 U.S. 1050 (2005), plaintiffs were shareholders of JDS Uniphase Corporation ("JDS"). JDS had entered into an agreement with Nortel Networks Corporation whereby Nortel would buy a business from JDS in return for Nortel stock. Plaintiffs sued Nortel based on certain alleged misstatements by Nortel contending that these misstatements caused JDS stock to be materially inflated. The Second Circuit held that plaintiffs lacked standing to bring a § 10(b) suit "when the individual purchased the security of a company other than the one that made the misstatement." Id. at 28. Here, Rosneft is a competitor of Yukos and is not alleged to have any relationship whatsoever with Yukos or the ADR holders. Therefore, even if Rosneft, Bogdanchikov, or Borisenko made a misrepresentation—which they did not—the fact that Yukos stock may have been affected in some way does not give Yukos ADR holders standing to bring suit against third parties.

IX.    **EVEN IF RICO CAN BE APPLIED EXTRATERRITORIALLY, PLAINTIFFS' RICO CLAIMS AGAINST BOGDANCHIKOV AND BORISENKO MUST BE DISMISSED**

A.    **The RICO Claims Are Barred by the PSLRA**

Plaintiff Yukos ADR holders' RICO claims against Bogdanchikov and Borisenko are barred by the PSLRA and therefore must be dismissed as a matter of law.   The PSLRA amended the RICO statute to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]."   18 U.S.C. § 1964(c); see also Fezzani v. Bear, Stearns & Co., No. 99 CIV 0793, 2005 WL 500377, at *4 (S.D.N.Y. Mar. 2, 2005) (barring RICO claim under PSLRA where claim relied on securities fraud); Jacoboni v. KPMG LLP, 314 F.Supp.2d 1172, 1180 (M.D. Fla. 2004) (barring plaintiff's entire RICO claim because all predicate acts were "'in connection with' the purchase and transfer of securities, thereby implicating the PSLRA bar" even where plaintiff did not assert securities law claims).

As courts have recognized, when plaintiffs' securities law claims and RICO claims are based on the same alleged conduct, RICO claims are barred under § 1964(c).   See, e.g., Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 328 (3d Cir. 1999) (noting that the securities fraud action alleged the same conduct that "is at the heart of this RICO action"); Fla. Evergreen Foliage v. E.I. Du Pont de Nemours & Co., 165 F.Supp.2d 1345, 1356-59 (S.D. Fla. 2001) (dismissing RICO claims under § 1964(c) after comparing RICO action with a shareholder action to determine if the predicate acts were the same conduct alleged as securities fraud), aff'd sub nom., Green Leaf Nursery v. E.I. DuPont de Nemours & Co., 341 F.3d 1292 (11th Cir. 2003); In re Ikon Office Solutions, Inc., 86 F.Supp.2d 481, 486 (E.D. Pa. 2000) (same).[19]

---

[19] See also Tyrone Area Sch. Dist. v. Mid-State Bank & Trust, No. CIV 98-881, 1999 WL 703729, at *4 (W.D. Pa. Feb. 9, 1999) (finding that the conduct alleged in the RICO claims could be alleged as a violation of securities law where a separate SEC action was commenced), aff'd, 202 F.3d 255 (3d Cir. 1999); Hollinger Int'l, Inc. v. Hollinger

56

Plaintiffs' attempt to plead other predicate acts and their attempt to exclude allegations of fraud in the purchase or sale of securities from their RICO claims cannot help them evade the PSLRA bar because the alleged underlying conduct is the same. See Am. Compl. ¶¶ 330, 341, 351, 386-400; see also Blythe v. Deutsche Bank AG, 399 F.Supp.2d 274, 278 (S.D.N.Y. 2005); RA Invs. I, LLC v. Deutsche Bank AG, No. 3:04-CV-1565-G, 2005 WL 1356446, at *5 (N.D. Tex. June 6, 2005); Gatz v. Ponsoldt, 297 F.Supp.2d 719, 731 (D. Del. 2003).

Courts have also held plaintiffs' RICO claims are barred by the PSLRA even where the securities claims are found to be deficient (as they are here). See, e.g., Stephenson v. Deutsche Bank AG, 282 F.Supp.2d 1032, 1071 (D. Minn. 2003); Yadlosky v. Grant Thornton, L.L.P., 120 F.Supp.2d 622, 631-33 (E.D. Mich. 2000); Columbraria Ltd. v. Pimienta, 110 F.Supp.2d 542, 548 (S.D. Tex. 2000); Hemispherx Biopharma, Inc. v. Asensio, No. 98-5204, 1999 WL 144109, at *4-8 (E.D. Pa. Mar. 15, 1999).

Plaintiffs implicitly recognize the PSLRA bar to their RICO claims by dividing plaintiffs into two groups—one, Yukos ADR holders, asserting the RICO claims and the other, Yukos ADR purchasers, bringing the securities law claims. Am. Compl. ¶¶ 17, 59, 330-355, 336-400. But the PSLRA bars RICO claims based on predicate acts that *can* be alleged as securities fraud regardless of whether the particular plaintiff asserting RICO claims actually asserts the securities fraud claim. See In re Enron Corp. Sec. Derivative & ERISA Litig., 284 F.Supp.2d 511, 620 (S.D. Tex. 2003). Courts have thus held that the particular RICO plaintiff need not be the one to allege a claim for securities fraud. See id.[20] Plaintiffs' attempt to segregate the RICO claims

---

Inc., No. 04 C 0698, 2004 WL 2278545, at *8-9 (N.D. Ill. Oct. 8, 2004) (unpublished) (finding RICO claim barred by PSLRA where predicate acts were an integral part of defendants' alleged wrongful conduct upon which securities action was based).

[20] See, e.g., Howard v. Am. Online Inc., 208 F.3d 741, 749 (9th Cir. 2000) (precluding RICO action where claims implicated conduct that could have been alleged as securities fraud despite plaintiffs' lack of standing to assert those claims); Enron Corp. Sec. Derivative, 284 F.Supp.2d at 648 (holding that the RICO bar applies even if "a particular

from the securities claims by asserting them on behalf of different plaintiffs does not salvage the RICO claims, and they must be dismissed.

**B.    The Predicate Acts Are Insufficiently Pleaded as a Matter of Law**

The Amended Complaint alleges that defendants committed racketeering acts by the transport of illegally converted oil and gas in violation of 18 U.S.C. § 2314, receipt of bankruptcy estate property in violation of 18 U.S.C. § 152, interference with commerce involving acts of unlawful taking and wrongful use of color of official writing in violation of 18 U.S.C. § 1951, travel in interstate and foreign commerce with intent to carry on and maintain unlawful activity in violation of 18 U.S.C. § 1952, and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.    Am. Compl. ¶¶ 336, 347.    The alleged violation of § 2314 is based on "conversion of Yukos property."    Am. Compl. ¶ 336.    As discussed in Part IX.D *infra*, the plaintiffs' conversion claim should be dismissed because plaintiffs do not allege that *their* property, the ADRs, was converted and thus this allegation also fails as a predicate act for their RICO claims.    The alleged violation of § 1951 involves "use of governmental process and authority, including . . . imposition and collection of taxes, the seizure of private property for the satisfaction of tax liabilities and the application of national bankruptcy laws," Am. Compl. ¶ 336, yet, in light of the act-of-state doctrine, these allegations cannot serve as predicate acts either. See Part III *supra*.

Plaintiffs' allegations that defendants received bankruptcy estate property in violation of § 152 and committed mail fraud in violation of § 1341 and § 1343 each fail independently as predicate acts for their RICO claim because they are foreign acts not subject to those statutes and

---

plaintiff may not have a cognizable claim under the securities law"); Hollinger Int'l, 2004 WL 2278545, at *7 ("[T]he RICO bar operates irrespective of whether the RICO plaintiff has standing to bring a securities claim . . . as long as another plaintiff could bring a securities action based on the alleged conduct.").

because plaintiffs have failed to plead these with particularity. When fraud is an alleged predicate illegal act for a RICO claim, the allegations must conform to the pleading-particularity requirement set forth in rule 9(b), which provides that in averments of fraud, the complaint must specify the circumstances constituting fraud "with particularity." See FED. R. CIV. P. 9(b); Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1229 (D.C. Cir. 1991) (quoting rule 9(b)); Wallace v. Abramson, No. 85-4039, 1988 WL 63065, at *3 (D.D.C. June 7, 1988). Plaintiffs fail to point to *any* statement made by Bogdanchikov or Borisenko and assert only that defendants violated §§ 1341 and 1343 by "making, and causing to be made, false and fraudulent pretenses, representations and statements in furtherance of the scheme." See Am. Compl. ¶ 336. This fails to satisfy rule 9(b).

Plaintiffs also fail to specifically plead alleged conduct in violation of § 152 that "constitutes an offense involving fraud connected with a case under Title 11." Am. Compl. ¶ 336. Rather, plaintiffs make conclusory allegations that defendants "[unlawfully evaded] the Court Order prohibiting participation by various Defendants in the YNG auction, and knowingly and fraudulently receiving property from a debtor after the filing of a case under Title 11 of the U.S. Code, with intent to defeat the provisions of Title 11, through the use of sham transactions and straw entities." Am. Compl. ¶ 336.

Plaintiffs' allegations that defendants "travel in interstate and foreign commerce with intent to carry on and maintain unlawful activity" in violation of § 1952 also fail to make out a violation of § 1952, which requires plaintiffs to prove that defendants engaged in interstate travel or use of an interstate facility with the intent to promote unlawful activity. See United States v. Zolicoffer, 869 F.2d 771, 774 (3d Cir. 1989). "Unlawful activity" is "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

59

§ 1952(b)(2).   Plaintiffs have failed to allege any travel that Bogdanchikov or Borisenko engaged in with the intent to promote unlawful activity.   Plaintiffs merely allege that Bogdanchikov visited the U.S. to meet with executives of U.S. oil companies to promote Russian commercial oil and gas interests and in connection with Rosneft's IPO.   See Am. Compl. ¶¶ 80-81, 127-28.   Plaintiffs have not pleaded any facts that allege a violation of § 1952 by Borisenko.

### C.    Plaintiffs Have Not Alleged a Pattern of Racketeering Activity

Even if this Court found that plaintiffs have sufficiently pleaded the necessary predicate acts—which they have not—plaintiffs have failed to allege a "pattern" of racketeering activity as is required by the statute.   18 U.S.C. § 1962(b)-(d).   A "pattern of racketeering activity" constitutes two or more predicate acts of racketeering arising out of different conduct.   18 U.S.C. § 1961(5); see also Meng v. Schwartz, 116 F.Supp.2d 92, 95 (D.D.C. 2000), aff'd, 48 F. App'x 1 (D.C. Cir. 2002).   As the D.C. Circuit has noted, it is "virtually impossible for plaintiffs to state a RICO claim" based on only a "single scheme, [a] single injury, and few victims."   Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F. 3d 1260, 1265 (D.C. Cir. 1995); see also W. Assocs. Ltd v. Market Square Assocs., 235 F.3d 629, 634 (D.C. Cir. 2001) (same).

Plaintiffs attempt to allege three distinct "racketeering acts" to establish the necessary pattern, but each allegation involves the same event: the sale of YNG.   Alleging only a single scheme to "re-nationalize Yukos, without compensation to the company's owners," Am. Compl. ¶ 142, plaintiffs' only alleged injury is that their "ADRs are now effectively worthless . . . because Yukos's most valuable asset has been transferred to a state owned commercial enterprise."   Am. Compl. ¶ 310.   Plaintiffs have failed to establish a pattern of racketeering based on this single alleged scheme.

Furthermore, plaintiffs fail to make a single factual allegation anywhere in the Amended Complaint that Bogdanchikov or Borisenko participated in the alleged pattern of racketeering activity. Because plaintiffs have failed to establish a pattern of racketeering or any involvement by Bogdanchikov or Borisenko, their RICO claims must be dismissed in their entirety.[21]

## X.   THE COMMON-LAW CLAIMS SHOULD BE DISMISSED

Because plaintiffs' federal securities and RICO claims are wholly deficient, the Court should decline to exercise pendent jurisdiction over the state common-law claims. See Doe I, 400 F.Supp.2d at 120 n.13; see also Network Project v. Corp. for Pub. Broad., 561 F.2d 963, 970 (D.C. Cir. 1977) ("[W]hen state and federal claims are joined and the federal claims are dismissed before trial, the state claims should ordinarily be dismissed as well"). But even if the Court considers those claims, they are governed by Russian law and, in any event, fail to state a claim.

### A.   Russian Law Must Be Applied to Plaintiffs' Common-Law Claims

When a federal court is examining claims under supplemental jurisdiction and in actions under the FSIA, the court must apply the forum's choice-of-law principles. See Jin v. Ministry of State Sec., 254 F.Supp.2d 61, 68 (D.D.C. 2003). In evaluating choice-of-law principles, the court uses a "constructive blending" of two distinct analyses: the "'governmental interest analysis'" and the "'most significant relationship'" test. Hercules & Co. v. Shama Rest. Corp.,

---

[21] Furthermore, plaintiffs' Count IV RICO claim against Bogdanchikov and Borisenko must also be dismissed because they have failed to allege that either individual "acquired an interest in or control over" Yukos. Under 18 U.S.C. § 1962(b), it is unlawful to *acquire control* of an enterprise through a pattern of racketeering activity. § 1962(b) (emphasis added), which courts have held requires defendants to secure a proprietary interest in an enterprise, or the operational control associated with such a proprietary interest. See Whaley v. Auto Club Ins. Ass'n, 891 F.Supp. 1237, 1240-41 (E.D. Mich. 1995); Teague v. Bakker, 35 F.3d 978, 995 (4th Cir. 1994). Plaintiffs' conclusory statement in Count IV that defendants "acquired or maintained a direct or indirect interest in and/or control of Yukos through a pattern of racketeering activity," Am. Compl. ¶ 334, is not sufficient to maintain a RICO claim. See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 329 (6th Cir. 1999) (affirming dismissal of § 1962(b) claim where plaintiff did nothing more than plead a legal conclusion by parroting the language of the statute).

566 A.2d 31, 41 n.18 (D.C. 1989) (citation omitted); <u>see</u> <u>also</u> <u>Stephen A. Goldberg Co.</u> v.

<u>Remsen Partners, Ltd.</u>, 170 F.3d 191, 194 (D.C. Cir. 1999).

**1.    Russia Has the Greater Governmental Interest in the Application of Its Law**

"Under the governmental interests analysis as so refined, we must evaluate the

governmental policies underlying the applicable laws and determine which jurisdiction's policy

would be most advanced by having its law applied to the facts of the case under review."

<u>Hercules & Co.</u>, 566 A.2d at 41 (citation omitted).   Russia has a far greater interest in having its

law applied to the plaintiffs' common-law claims than the United States.   <u>See</u> <u>Century Int'l</u>

<u>Arms, Ltd.</u> v. <u>Fed. State Unitary Enter. State Corp. 'Rosvoorouzhenie'</u>, 172 F.Supp.2d 79, 94

(D.D.C. 2001) ("Russia has an extremely strong interest in ensuring that its state-controlled

agencies are not subjected to laws that may contravene its own, so as not to interfere with the

Russian government's ability to continue to transact business with North American companies").

Russia maintains a strong interest in having its law applied to the adjudication of disputes arising

within its borders and conducted by Russian companies registered within the state.   It is clear

that plaintiffs have brought this claim in the United States solely in an effort to attain United

States style discovery.   Furthermore, the District of Columbia has no interest in applying its law

in this case where there is absolutely *no connection* between the alleged wrongful acts and this

district.   <u>See</u> <u>Wigfall</u> v. <u>Wolpoff & Abramson, LLP</u>, No. 05-591, 2005 WL 3213955, at *2

(D.D.C. Nov. 1, 2005) ("Other than being the location of plaintiff's current residence, the

District of Columbia has no connection with the . . . issue"); <u>see also</u> note 13 *supra*.

**2.    Russia Has the Most Significant Relationship to This Dispute**

In determining which jurisdiction has the most significant relationship to the dispute,

there are four relevant factors this Court must consider:   (1) "the place where the injury

occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." Hercules & Co., 566 A.2d at 42 (adopting the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. d (1971 & Supp. 1988)).[22]

In evaluating the first two of these four factors, an apparent and critical flaw in plaintiffs' Amended Complaint is that *no* event relative to any of the claims occurred in the United States. The place of alleged direct injury to Yukos and the place where the conduct causing the alleged injury occurred was Russia. See Tramontana v. S.A. Empresa de Viacao Aerea Rio Grandense, 350 F.2d 468, 473 (D.C. Cir. 1965) (applying Brazilian law where "[t]he District of Columbia's connection with the occurrence and with the parties, and its interest in the resolution of the issue before us, are, if not wholly remote, certainly less than Brazil's"); Integral Res. (PVT) Ltd. v. Istil Group, Inc., No. 03-904, 2004 WL 2758672, at *3 (D. Del. Dec. 2, 2004) (holding Ukrainian law applied where the conduct causing the injury occurred in Ukraine), aff'd, 155 F. App'x 69 (3d Cir. 2005). Any alleged conversion of Yukos property took place in Russia. The alleged imposition of confiscatory taxes was carried out by the Russian Tax Ministry, under Russian tax law governed by the tax code of the Russian Federation. Any alleged acts of misleading and deceptive statements were made by the Russian President, and any alleged seizure of Yukos stock and property was allegedly carried out in Russia.

---

[22] Section 145 also references § 6 of the Restatement for courts to consider: "[w]hen there is no [state statutory directive on choice of law,] the factors relevant to the choice of the applicable rule of law include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination of the law to be applied." Dunkwu v. Neville, 575 A.2d 293, 296 (D.C. 1990) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)). The analysis under these principles is tantamount to that of § 145 and further supports the application of Russian law to plaintiffs' common-law claims.

The third factor of the Restatement, "the domicile, residence, nationality, place of incorporation and place of business of the parties," also points to Russian law. Russia is the place of business of Rosneftegaz and Rosneft. While some of the plaintiffs are citizens of the United States, residing in various states, it is significant that two of the plaintiffs, who account for more than half of the total amount that plaintiffs claim to have paid for the Yukos ADRs, are citizens of the Netherlands and the Cayman Islands and purchased their Yukos ADRs on the London Stock Exchange. Am. Compl. ¶¶ 24-25. The fact that a small number of ADRs were physically purchased in the United States is not enough to warrant the application of United States law to claims against third parties (as opposed to perhaps Yukos itself)—given that plaintiffs knew that they were investing in a Russian company.

The fourth factor—like the first two—focuses on the relationship between the parties by considering "the place where the relationship, if any, between the parties is centered." All alleged actions relevant to plaintiffs' claims occurred in Russia. Thus, under D.C. choice of law principles, Russian law must be applied to plaintiffs' claims.

## XI.    PLAINTIFFS' COMMON-LAW FRAUD AND DECEIT CLAIM MUST BE DISMISSED

Unlike the original complaint, plaintiffs' Amended Complaint includes not only those plaintiffs that "maintained their ownership of Yukos ADRs through December 19, 2004", but also those that "purchased Yukos ADRs at artificially inflated prices." Am. Compl. ¶ 357. For the following reasons, plaintiffs—regardless of whether they "maintained" or "purchased" their Yukos ADRs—fail to state a common-law fraud claim.[23]

---

[23] The common-law fraud and deceit claim as well as the aiding-and-abetting common-law fraud claim was alleged against Rosneft, Bogdanchikov, and Borisenko, but not Rosneftegaz.

**A.    Plaintiffs Have Not Alleged the Elements of Common-Law Fraud**

Plaintiffs' common-law fraud claim fails for the same reasons their federal securities fraud claim fails; mainly that they have not alleged facts to support a fraudulent statement, reasonable reliance, scienter, or that any duty was owed to them. See Part VIII *supra*. To support a claim for common-law fraud plaintiffs must allege facts that show:  "'(1) a false representation, (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.'" Calvetti v. Antcliff, 346 F.Supp.2d 92, 100 (D.D.C. 2004) (citation omitted); see also Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc., 878 A.2d 1226, 1233 (D.C. 2005).   Plaintiffs have not alleged the essential elements and therefore their claim is fatally flawed.

**1.    Plaintiffs Do Not Allege Bogdanchikov or Borisenko Made a False Statement**

Plaintiffs make the general assertion that "the Fraud Defendants made misstatements and omissions of material fact" but never plead a specific statement attributed to Bogdanchikov or Borisenko.  Am. Compl. ¶ 361.  Indeed, plaintiffs do not allege Bogdanchikov or Borisenko made any public statements.

**2.    Plaintiffs Fail to Plead with Particularity an Essential Element of Common Law Fraud Against Rosneft**

Plaintiffs have pleaded no facts with particularity as to the alleged Rosneft statements. See Bennett v. Kiggins, 377 A.2d 57, 59 (D.C. 1977) ("Fraud is never presumed and must be particularly pleaded.").  Plaintiffs have not even alleged that the Rosneft statements were made in reference to a material fact, with knowledge of its falsity, with intent to deceive, or that any action was taken in reliance on these statements.

### 3. Plaintiffs Fail to Allege Reasonable Reliance

Unlike a federal securities claim in which plaintiffs allege a "fraud on the market" theory, plaintiffs must allege specific allegations of reliance as to each plaintiff when pleading under the common law. Newbridge Networks, 926 F.Supp. at 1175 (dismissing plaintiff's common-law fraud claim because a "'fraud on the market' theory or a presumption of reliance [is not] applicable to [the] common law" and because plaintiff failed to "present individualized, specific allegations of reliance by each plaintiff"). Furthermore, not only must each plaintiff's reliance be reasonable, it must be substantial. See Va. Acad., 878 A.2d at 1238 ("'The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented, if his reliance is a *substantial* factor in determining the course of conduct that results in his loss.'") (emphasis added & citation omitted).

While plaintiffs make a general and unsubstantiated statement that the plaintiffs as a whole "were aware of the Fraud Defendants' misrepresentations, relied on them, and were injured as a result," Am. Compl. ¶ 362, this is clearly insufficient. To maintain their claims, plaintiffs need to plead that each plaintiff actually read or heard a statement made by Rosneft, Bogdanchikov, or Borisenko and then allege how that statement made each plaintiff act (or not act).[24] But plaintiffs do not plead specifics, but instead simply alleging in a conclusory fashion that plaintiffs "follow the English-language press and were aware of these public misstatements and omissions and were deceived by them." Am. Compl. ¶ 238. This is insufficient.

---

[24] This is especially important where plaintiffs maintained their securities and allege that if they knew the "truth" they would not have held their ADRs. See Small v. Fritz Cos., 65 P.3d 1255, 1265 (Cal. 2003) ("In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place.").

### 4.    Plaintiffs' Claim for Damages for Fraud is too Speculative to Support Relief

Plaintiffs' common-law fraud claim fails because plaintiffs do not plead any damages. In order to have a proper fraud claim, the plaintiff must allege facts establishing, if true, that the fraud caused damage. See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 793 (D.C. Cir. 1983). "'It is elementary that 'speculative' damage will not support an action for common law fraud.'" Rafferty v. NYNEX Corp., 60 F.3d 844, 851 (D.C. Cir. 1995) (quoting Naartex, 722 F.2d at 793 n.22).

Plaintiffs do not specifically allege how they were damaged by any statement of Rosneft, Bogdanchikov, or Borisenko. Instead, plaintiffs contend in conclusory fashion that if not for the "Russian Federation and the other Fraud Defendants['] . . . intentional misrepresentations" they would have "liquidated their Yukos ADRs at a far greater price than they in fact realized or than they now are worth, or they would not have purchased at all, or they would not have purchased at the artificially inflated prices paid." Am. Compl. ¶ 367. This is not only sheer speculation, it is counter to the premise that the public markets work freely and efficiently. See Basic Inc. v. Levinson, 485 U.S. 224, 246 n.24 (1988) (noting that the price of a stock traded on a well-developed market reflects all publicly available information).[25]

### B.    Plaintiffs that "Maintained" Their Yukos ADRs Cannot State a Claim

The Amended Complaint alleges that certain misrepresentations and omissions "induced plaintiffs to *maintain* their ownership of Yukos ADRs through and including December 19, 2004." Am. Compl. ¶ 357 (emphasis added). In particular, the fraud claim again points to the

---

[25] Moreover, the fact that two plaintiffs who bring this claim still retain their Yukos ADRs makes damages all the more uncertain. Plaintiffs ask this Court to guess *when* these plaintiffs would have sold their ADRs upon learning of the alleged scheme and the *value* they might have received for such ADRs. See Vietnam Veterans Found. v. Erdman, No. 84-0940, 1987 WL 10143, at *9 (D.D.C. Mar. 30, 1987) ("Damages for future consequences that are speculative or conjectural are not recoverable.").

public statements by President Putin, and others, and further alleges that all defendants took part in a scheme to "initiate[ ] . . . frivolous tax claims against Yukos," freeze Yukos's "majority interest in YNG," freeze Yukos's "Russian bank accounts," conduct a sham auction, and create a sham entity to buy the YNG stock.   Am. Compl. ¶ 364.

The entire premise of the plaintiffs' "holders" claim makes no sense.   The theory of the claim is that "but for" the public statements of President Putin and others, the plaintiffs would not have continued to hold their ADRs but would have sold them.   The problem is that unless these ADR holders would have somehow received an improper jump on the market, once the "truth" came out, the stock price would have efficiently adjusted.   In short, there can be no alleged damages when the statements complained of were public in nature.

Moreover, if we were to look at the alleged public statements made by Rosneft and then the reaction of those plaintiffs that held their Yukos ADRs, it becomes clear that none of these plaintiffs relied on those statements.   According to the Amended Complaint, the five plaintiffs who "held" ADRs, purchased them before October 25, 2003.   Am. Compl. Ex. A.   Those five plaintiffs held their ADRs notwithstanding (i) continuing announcements by Russian tax officials of massive tax assessments, which began in December 2003, (ii) the arrest of the company's CEO in October 2003 and other officers for criminal misconduct,[26] (iii) the repeated freezing of Yukos's assets, which occurred through the spring, summer, and fall of 2004, and (iv) the announcement of the Russian Federation on November 19, 2004, of the auction of YNG.   In fact, two plaintiffs continue to hold their ADRs to this day.   Id.   Given plaintiffs' insufficient pleading of reliance notwithstanding the disclosure of the "truth," this claim must be dismissed.

---

[26] In fact, all Yukos officers but Khodorkovsky were arrested in June 2003.

Furthermore, courts that have accepted fraud claims by holders (as opposed to purchasers and sellers) have typically required direct privity between the plaintiff and the defendant as an essential element of the claim.   See, e.g., In re Worldcom, Inc. Sec. Litig., 382 F.Supp.2d 549, 559 (S.D.N.Y. 2005) (noting the need for direct communications, such as face-to-face contact, in common-law fraud claims brought by holders); Gutman v. Howard Sav. Bank, 748 F.Supp. 254, 266 (D.N.J. 1990) (same).   Therefore, the Court has but another reason to dismiss the common-law claims against Rosneft, Bogdanchikov, and Borisenko.

## XII.    PLAINTIFFS HAVE FAILED TO PLEAD AN AIDING-AND-ABETTING COMMON-LAW FRAUD AND DECEIT CLAIM

In order to properly plead an aiding-and-abetting common-law fraud claim under D.C. law, plaintiffs must show: "(1) the party whom the defendant aids must perform the wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of the overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."[27]   Int'l Telecomm. Satellite Org. v. Colino, No. 99-1266, 87-2749, 1992 WL 93129, at *13 (D.D.C. Apr. 15, 1992) (unpublished); Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).   "'In alleging the requisite 'substantial assistance' by the aider and abettor, the complaint must allege that the acts of the aider and abettor proximately caused the harm to the [plaintiff] on which the primary liability is predicated. . . .   Aider and abettor liability will not attach where the injury was not a direct or reasonably foreseeable result of the defendant's conduct.'"   Filler v. Hanvit Bank, No. 01 Civ. 9510, 2003 WL 22110773, at *2 (S.D.N.Y. 2003) (citation omitted).   Plaintiffs have failed to demonstrate that primary liability exists and that Rosneft, Bogdanchikov, or Borisenko gave any

---

[27] It should be noted that very few cases in the District of Columbia have recognized an aiding-and-abetting common-law fraud claim and therefore it is unclear whether this theory is a viable cause of action in this jurisdiction.

substantial assistance. They have also failed to plead the aiding-and-abetting common-law fraud claim with particularity as required under rule 9(b). See id. at *3. Plaintiffs' conclusory assertions are insufficient to maintain this claim.

## XIII.  PLAINTIFFS' CLAIM ALLEGING CONSPIRACY TO COMMIT COMMON-LAW CONVERSION SHOULD BE DISMISSED

The Amended Complaint does not state a cause of action for conspiracy to commit conversion. "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort." Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983). Because no underlying tort—here, conversion—occurred, there could be no conspiracy. See Part V supra. This alone is fatal to plaintiffs' claims. See Dove v. Wash. Metro. Area Transit Auth., 402 F.Supp.2d 91, 99 (D.D.C. 2005) (stating that "[b]ecause the court has granted summary judgment as to all of the plaintiff's other claims . . . the court finds no tortious act to serve as a predicate for the plaintiff's conspiracy claim"); see also Daisley v. Riggs Bank, N.A., 372 F.Supp.2d 61, 73 (D.D.C. 2005) (same).

Further, plaintiffs have failed their burden on a motion to dismiss to plead facts as to each element of a conspiracy cause of action. See Martin v. Malhoyt, 830 F.2d 237, 258 (D.C. Cir. 1987) ("'[U]nsupported factual allegations which fail to specify in detail the factual basis necessary to enable [defendants] to intelligently prepare their defense, will not suffice to sustain a claim of governmental conspiracy to deprive [plaintiff] of [her] . . . rights.'" (citation omitted)). The elements of a conspiracy claim in this jurisdiction are: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement;

70

(4) which overt act was done pursuant to and in furtherance of the common scheme." Halberstam, 705 F.2d at 477.

Plaintiffs failed to plead any facts as to the alleged agreement among the defendants. Indeed, "[a] 'meeting of the minds' is an essential element of a conspiracy claim." Graves v. United States, 961 F.Supp. 314, 320 (D.D.C. 1997). Plaintiffs do not—because they cannot—allege facts that support a finding of an agreement among the defendants.

Plaintiffs' boilerplate allegations fail to allege how and when Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko purportedly came to know of the alleged conversion described in the Amended Complaint, let alone approved or acquiesced in any alleged wrongful conduct. Plaintiffs' contentions that Rosneft "is controlled by the Russian Federation," Am. Compl. ¶ 70; "acts as an agent and co-conspirator of the Russian Federation," Am. Compl. ¶ 71; "is subject to the direction and control of the Russian Federation through, inter alia, the appointment of high-ranking present and former officials of the Russian Federation to its board of directors and to controlling positions in Rosneft's management," Am. Compl. ¶ 71; "conducts its commercial activities as an agent for the Russian Federation," Am. Compl. ¶ 72; "is operated for the benefit of the Russian Federation," Am. Compl, ¶ 120; and that "[t]he Russian Federation dominates Rosneft's board of directors," Am. Compl. ¶ 119, are nothing but conclusory allegations that this Court need not rely upon on a motion to dismiss. There are no facts that create an agreement to commit any wrongful act. See Graves, 961 F.Supp. at 321 (holding that plaintiff failed to allege facts that would constitute conspiracy based on bare allegation of collusion, absent any factual allegation of agreement between defendants); Cooper v. O'Connor, 99 F.2d 135, 142 (D.C. Cir. 1938) ("Accusing [the defendants] jointly, or by way of a count in conspiracy, gives [plaintiff's] case no more virtue than if he had proceeded against each [defendant] singly."); see also Meyer

v. Reno, 911 F.Supp. 11, 15 (D.D.C. 1996) (dismissing plaintiff's claims for failure to assert factual basis to support conspiracy).

Moreover, plaintiffs have failed to plead facts that support an allegation that any of defendants committed an "unlawful act" or a "lawful act in an unlawful manner." Cooper, 99 F.2d at 142. While the plaintiffs allege that the Ministry of Tax's issuance and enforcement of its tax determinations were illegal, plaintiffs' accusations have already been heard and rejected by Russian courts. Am. Compl. ¶¶ 215, 245. There is nothing "unlawful" in a sovereign conducting an auction to satisfy a valid court judgment. Because there was nothing unlawful in the acts of the defendants, the injury that plaintiffs have alleged was similarly not caused by an "unlawful" act. Halberstam, 705 F.2d at 472. Plaintiffs' conclusory "conspiracy" allegations are no substitute for well-pleaded allegations of fact to support a conspiracy claim.

## XIV. PLAINTIFFS CONVERSION CLAIM SHOULD BE DISMISSED

Plaintiffs' conversion claim should be dismissed because any alleged direct damage from this claim is to Yukos, not the ADR holders. See Part IV supra. To state a claim for conversion, plaintiffs must plead an "'unlawful exercise of ownership, dominion, or control, over the personal property of another in denial or repudiation of that person's rights thereto.'" Shulman v. Voyou, L.L.C., 251 F.Supp.2d 166, 170 (D.D.C. 2003) (citation omitted). Plaintiffs fail to plead these elements.

As discussed above, there is nothing unlawful in a sovereign conducting an auction to satisfy a valid court judgment. Accordingly, there was no "unlawful" exercise of ownership, dominion or control over the property of another. Further, plaintiffs fail to allege that *their* property was converted. Plaintiffs allege that "they bring [a] claim for the unlawful conversion of property, namely OAO NK Yukos Oil Company, of which plaintiffs are partial owners." Am. Compl. ¶¶ 312, 319. Plaintiffs also allege that "the Defendants have directly and

unlawfully seized the most valuable asset of Yukos, YNG." Am. Compl. ¶¶ 313(b), 320(a).

Plaintiffs further allege that Defendants have unlawfully seized a majority of Yukos common

stock. Am. Compl. ¶¶ 177, 313(a). Yet plaintiffs, holders of ADRs, *never* owned the property

allegedly converted. Rather, the property at issue are the assets of Yukos, not the assets of the

plaintiffs. It is a settled rule of corporate law that "'[a] shareholder—even one who holds all the

shares—does not have legal ownership of the corporation property. The title remains in the

corporation.'" Hutchings v. Manchester Life & Cas. Mgmt. Corp., 896 F. Supp. 946, 947 (E.D.

Mo. 1995) (citation omitted). Because a corporation is a separate entity from its "owners," any

conversion claim belongs to the corporation. See id. at 947 (dismissing a shareholder's

conversion claim because cause of action belonged to corporation because plaintiffs do not

allege that *their* property was converted.).

## XV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RESTITUTION BASED ON UNJUST ENRICHMENT

Plaintiffs have failed to plead the necessary elements of an unjust enrichment claim.

"Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant;

(2) defendant retains the benefit; and (3) under the circumstances, the defendant's retention of

the benefit is unjust." News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C.

2005); see also Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co., 870 A.2d 58, 63

(D.C. 2005) ("Unjust enrichment occurs when a person retains a benefit (usually money) which

in justice and equity belongs to another."). Here, the ADR holders did not confer any benefit on

to Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko. As ADR holders, plaintiffs had no

relationship with Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko, much less one in which

they conferred upon them money or any other type of benefit. Plaintiffs' restitution claim must

be dismissed.

CONCLUSION

For the foregoing reasons, Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko respectfully request that the Court promptly dismiss the Amended Complaint with prejudice.

Dated:   September 8, 2006                    Respectfully submitted,

/s/ _____
Adam P. Strochak, Esq.
D.C. Bar No. 439308
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Richard W. Slack
(*pro hac vice*)
Gregory S. Coleman
(*pro hac vice*)
Meredith B. Parenti
Deborah A. Maher
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8004

ATTORNEYS FOR OAO ROSNEFTEGAZ,
OAO ROSNEFT, SERGEY BOGDANCHIKOV,
AND NIKOLAI BORISENKO