UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------x
                                                         )
RICHARD ALLEN, *et al.*                                  )
                                                         )
        Plaintiffs,                              )    Case No: 1:05-cv-02077 (CKK)
                                                         )    Hon. Colleen Kollar-Kotelly
  v.                                                     )
                                                         )
RUSSIAN FEDERATION, *et al.*                             )
                                                         )
        Defendants.                              )
                                                         )
---------------------------------------------------------x


**CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**


# EXHIBIT 20

IN THE BOW STREET MAGISTRATES' COURT

THE GOVERNMENT OF THE RUSSIAN FEDERATION

v

ALEXANDER VIKTOROVICH TEMERKO

The Government of the Russian Federation seek the extradition of Mr Alexander Temerko in respect of conduct which had it occurred within the United Kingdom would have amounted to offences of Conspiracy to Defraud and of Conspiracy to Pervert the Course of Justice.

The proceedings are brought under the Extradition Act of 2003 and the Government of Russia is a Category 2 Territory.

The documentation leading to the request meets the requirements of the Act and it is conceded that the defendant Mr Temerko is the person being sought by the Russian Federation.

A number of issues arise, many of them being issues which are very similar to those considered by this court in recent extradition proceedings brought by the Russian Government. Neither party object to my continuing to hear this case but I should make it clear that in giving this decision I have done my best to assess only that evidence which has been given to me in these proceedings. The issues which I have to resolve are resolved solely on such facts as I am able to establish from the evidence that is before me in this case.

1

The Russian Government have satisfied me on the preliminary requirements of the Extradition Act and the defence now raise a number of the bars contained in the Extradition Act 2003.

The bars which the defence seek to advance are Section 81(a) (extraneous considerations) that the request is made "for the purpose of prosecuting him or punishing him on account of his .... political opinions".

Secondly under Section 81(b) (extraneous considerations) it is said that "he might, if returned be prejudiced at his trial or punished, detained or restricted in his personal liberty by reason of his political opinions".

The third bar is contained in Section 87 – Human Rights – and it is said that his rights under the European Convention particularly under Articles 3, 6 and 18 will be violated if he is returned and that he would not receive a fair trial.

The defence have provided me with a very detailed and extensive set of documents setting out the material on which they rely to say that this prosecution is politically motivated. In addition, a number of defence witnesses have been called to give evidence before me. Professor William Bowring is a Barrister and Professor of Human Rights and International Law at London Metropolitan University specialising in Russian Law and Criminal Justice. He is fluent in Russian and until now has visited Russia at least once a month for many years. He was the United Kingdom Government's adviser on Human Rights in Russia.

Professor Richard Sakwa is a Professor of Russian and European politics at the University of Kent with particular expertise in Russian politics.

Professor Thomas Walde is Professor of International Economic and Energy Law at the University of Dundee with a particular expertise in international and comparative oil and gas taxation particularly the political economy in relation to oil and gas in Russia.

Yuri Schmidt is a leading criminal defence lawyer specialising in Human Rights cases particularly those that have a political aspect. He has been in practice for 45 years and has been specialising in Human Rights for the last 17 years.

Yelena Liptser is a Russian lawyer practicing in Moscow with particular interests in Human Rights. She is currently a member of the defence team for Mr Lebedev.

Sabine Leutheusser-Schnarrenberger is a member of the Parliamentary Assembly of the Council of Europe and a member of the Committee on Legal Affairs and Human Rights. She was appointed the special Rapporteur to report to the Council of Europe on the monitoring of Russia's obligations under the Human Rights Convention.

All the witnesses gave their evidence in a measured and highly professional way. The Russian Government chose not to call any evidence in rebuttal. The challenge to their evidence therefore came in the form of cross-examination which was conducted carefully and thoroughly by Mr Caldwell and Mr Irving.

In the case of the Russian Federation v Maruev and Chernysheva I examined the evidence to see if I could be satisfied that the prosecution of Mr Khodorkovsky was politically motivated. In this case I am satisfied on the evidence of Professor Bowering, Professor Sakwa and Professor Walde that the case against Mr Khodorkovsky was politically motivated. I find

support for their view in the public statement of President Putin that he intended "to liquidate the Oligarchs as a class", that Mr Khodorkovsky had declared his intention to stand in an election as an opponent of Mr Putin, the detention of his co-defendant in Lefortovo Prison (being at the time, under the control of the FSB) and the obstacles being presented to the defence lawyers in their attempts to defend him. Professor Bowring also points to what he considers to be an unduly harsh sentence and the refusal to grant reasonable requests for an adjournment in the hearing of the appeal. The overwhelming weight of the background material indicates that Mr Khodorkovsky's case was a political trial. On the evidence now before me I am satisfied that Mr Khodorkovsky's case was politically motivated.

Mr Caldwell however stresses that whatever conclusion is reached in relation to Mr Khodorkovsky's case it does not apply to Mr Temerko's case where the offences charged are generally unrelated to Mr Khodorkovsky. They certainly are not the same conspiracies in which Mr Khodorkovsky was involved. In considering this issue I find as a fact that Mr Temerko held a senior position in Yukos and was effectively Mr Khodorkovsky's successor in managing the company. Mr Temerko has made many public statements in support of Mr Khodorkovsky and has a high profile involvement with the Open Russian Foundation. He was effectively Mr Khodorkovsky's Deputy.

I note that a number of criminal proceedings have been taken against present and former Yukos executives and others associated with them. Professor Sakwa, when asked where on the scale would Mr Temerko be put in terms of importance and profile replied "right at the top, he is second only to Mr Khodorkovsky himself".

I also attach weight to the Prosecutor General's announcement on the 13th May 2005 that "further charges may be made against Khodokovsky and Lebedev and that an International

4

Arrest Warrant was issued against Mr Temerko". I note from Mr Schmidt's evidence that the prosecution is being conducted by the same senior group of investigators. I can see no reason to doubt the evidence of Mr Schmidt that the authorities' underlying motives include the eradication of Khodorkovsky's power and influence and that Mr Temerko is central to this objective given his seniority in the company and proximity to Khodorkovsky.

In the absence of any evidence to the contrary I have come to the conclusion that the motivation for the charges against Mr Temerko are inextricably entwined with the motivation for the prosecution of Mr Khodorkovsky. I therefore find that the prosecution of Mr Temerko is politically motivated and the request for his extradition is made for the purpose prosecuting or punishing him on account of his political opinions.

I then have to consider whether he would be prejudiced at his trial or punished, detained or restricted in his personal liberty by reason of those political opinions.

It is never easy to anticipate actions that may or may not take place in the future. It is apparent that gradual changes are being made within the Russian Federation. For many years the Lefortovo Prison was used as an isolator institution and run by the FSB. In 1996 the Council of Europe obtained an undertaking that the prison would be transferred into the Ministry of Justice. That did not happen and Mr Pichugin and Mr Lebedev and other senior executives of the Yukos Company were incarcerated in that prison with its particular harsh regime. Because other defendants in a similar position to Mr Temerko's have been taken to the Lefortovo Prison, it seems highly likely that, if returned, Mr Temerko would also be detained there. In cross-examination, Mr Caldwell established that in the summer of this year the Lefortovo prison was indeed transferred to the Ministry of Justice. However, Mr Schmidt told me that it would be naïve to believe that the regime had changed since the

summer of this year. As he explained, the uniform would have changed but everything else remained the same. I heard uncontradicted evidence that defendants involved with Yukos had been denied medical treatment or independent medical examination and had been denied bail. I do not attach great weight to the absence of bail as it could reasonably be argued that there was a risk of absconding where substantial sums of money were involved.

It is submitted on behalf of Mr Temerko that there was a substantial risk of discriminatory breaches in the right to a fair trial. In examining this evidence I have had particular regard to the evidence of Mr Schmidt and Miss Liptser. In particular, they told me of some of the events that occurred during Mr Khodorkovsky's trial and appeal. Mr Schmidt, an internationally respected Human Rights lawyer gave evidence of the difficulties the defence team had in preparing Mr Khodorkovsky's case. He told me of attempts to interrogate Mr Khodorkovsky's lawyers, of their offices being unlawfully searched and confidential and privileged documents seized. He told me of an incident in which he had been involved when prison guards seized documents from him and the Ministry of Justice then attempted to have him professionally disbarred by alleging that certain documents were being removed illegally from the prison. Mr Schmidt provided me with details of lawyers involved in the cases concerning Mr Khodorkovsky, Mr Lebedev and Mr Pichugin. Of nineteen individuals, twelve have been the subject of application for disbarment. Five have been subjected to searches, two assaulted, one detained in custody and two forced to leave Russia. I share Mr Schmidt's view that this catalogue defies belief "that so many lawyers could coincidentally face so many misfortunes accidentally or by genuine due process of law". I am satisfied that at least some of these lawyers suffered harassment and intimidation.

Miss Liptser told me of the difficulties that she had in securing access to Mr Lebedev to obtain his instructions and of the impediments which were put in her way in relation to Mr

6

Lebedev's trial, the appeal and now his appeal to the European Court. In cross-examination, it was suggested that there were a number of genuine reasons why immediate access to Mr Lebedev could not be given. Whilst I accept that this may well be right in respect of certain instances I am satisfied that even making those allowances there is a clear picture of prevarication and obstruction by the authorities which impinged upon proper preparation of the defence.

If the authorities took similar action in respect of Mr Temerko, there would undoubtedly be clear evidence that he would not receive a fair trial.

I therefore have to consider whether Mr Temerko would receive the same treatment were he to be returned to Russia and if so whether that was politically motivated. The witnesses before me have all concluded that it was highly unlikely, if not impossible, for Mr Temerko to receive a fair trial. I found their evidence accurate and compelling.

My assessment of their conclusions has been reinforced by events that have taken place during the course of the hearing of this extradition case. Professor Bowring who makes frequent journeys to Russia in the course of his work and is married to a Russian lady visited Moscow shortly after he had given the first part of his evidence in these proceedings. He was detained on entry for about six hours before being refused admission and his visa cancelled. He was deported and despite requests, no reasons were given. In absence of any explanation I have concluded that it is more likely than not that the actions of the Russian authorities were directly associated with the fact that Professor Bowring had given evidence to this court. I am therefore satisfied that the proceedings against Mr Temerko are politically motivated and that in detaining Professor Bowring before his evidence in this court had been completed there was a deliberate attempt to prevent a fair trial.

Mr Knowles has very carefully led me through the facts leading to the charge now preferred against Mr Temerko. In particular, he has drawn my attention to the chronology in which it can be noted that for approximately a year the Russian Federation pursued a Mr Kolesnikov alleging that he was solely responsible for this fraud. Further it can be pointed out that at the times that these frauds are alleged to have taken place, Mr Temerko was either not a member of the board or had no responsibility for the acquisition of oil which gives rise to the fraud. Mr Knowles submits that there is no evidence to implicate Mr Temerko. Under the Extradition Act, it is of course unnecessary for the Russian Federation to adduce evidence to support the charge. The defence however point out that having tendered this evidence it is open to this court to consider it to see whether the case has been deliberately constructed on a false basis and from that deduce that the prosecution is politically motivated.

Whilst I regard the paucity of evidence to be significant there are a number of possible explanations. It is possible that the evidence has been innocently but inaccurately provided or that there is other more convincing evidence which has not been tendered. As I cannot rule out those possibilities, I am unable to reach a conclusive finding that the factual basis provides evidence that the prosecution is politically motivated.

The final submission relates to the defendant's Human Rights. This submission substantially overlaps the submission under Section 81(b) and for reasons that I have already referred to I am satisfied that Mr Temerko's extradition would not be compatible with his Convention Rights in particular Article 6.

I am satisfied that the request for Mr Temerko's extradition is in fact made for the purpose of prosecuting or punishing him for his political opinions and I adopt the reasoning in

8

Re Asliturk in which political opinions were to be given a wide meaning and would include prosecution for political motives. I am satisfied under Section 81(b) that if he were extradited he would be prejudiced at his trial and punished or detained by reasons of his political opinions.

I find that the defendant's extradition is barred by virtue of Section 81 and by virtue of Section 87, I order his discharge.

Tim Workman
Senior District Judge
Bow Street Magistrates' Court
23rd December 2005