UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------x
                                                         )
RICHARD ALLEN, *et al.*                                  )
                                                         )
            Plaintiffs,                                  )     Case No: 1:05-cv-02077 (CKK)
                                                         )     Hon. Colleen Kollar-Kotelly
        v.                                               )
                                                         )
RUSSIAN FEDERATION, *et al.*                             )
                                                         )
            Defendants.                                  )
                                                         )
---------------------------------------------------------x

**CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

# EXHIBIT 21

# Council of Europe

assembly.coe.int

Portail de l'Assemblée en français | Council of Europe portal | Search

## pace — Parliamentary Assembly
Council of Europe



Parliamentary Assembly
Assemblée parlementaire

**00 HOME**

**01 News**
    Press releases
    Newsletter
    Search

**02 Quick overview**
    Framework
    Working structure
    Procedure
    - Rules of Procedure and Complementary texts
    Secretariat
    Origins
    Download PACE Logo

**03 Committees**
    (Description, Terms of Reference, synopsis…)
    Reports under preparation

**04 All meetings**
    Sessions
    Standing Committee
    General Committees
    Conferences

**05 Documents**
    Adopted texts
    Working documents
    Verbatim records

**06 President**
    Curriculum Vitae
    Speeches
    Photographs

**07 Secretary General of the Assembly**

**08 Assembly List**
    Members
    Political groups
    Bureau, Committees and Sub-Committees

Parliamentary Assembly
Assemblée parlementaire

**Resolution 1418 (2005)[1]**

**The circumstances surrounding the arrest and prosecution of leading Yukos executives**

1. The Parliamentary Assembly, reaffirming its commitment to the rule of law as one of the Council of Europe's core values, is concerned by the shortcomings of the judicial process in the Russian Federation revealed by the cases of several former Yukos executives.

2. The rule of law requires the impartial and objective functioning of the courts and of the prosecutors' offices, free from undue influence from other branches of state power, and the strict respect of procedural provisions guaranteeing the rights of the accused.

3. The rule of law provides for the equality of all before the law, regardless of wealth or power.

4. The right to a fair trial, as protected by Article 6 of the European Convention on Human Rights (ECHR), includes the right to a fair and public hearing by an independent and impartial tribunal established by law, the presumption of innocence, and adequate time and facilities for the preparation of the defence. A fair trial requires the rights of the defence, the privileged lawyer-client relationship and the equality of arms for the defence and prosecution to be respected.

5. The public character of judicial proceedings, as guaranteed by Article 6 of the ECHR, is an important element of a fair trial, in the interests of the accused, but also of the public at large and its confidence in the correct functioning of the judiciary.

6. The Assembly stresses the importance of the independence of the judiciary, and of the independent status of judges in particular, and

National delegations
*(member states, special guest, observers)*

**09 Political groups websites**
   SOC
   EPP/CD
   ALDE
   EDG
   UEL

**10 Links**
   Council of Europe
   National parliaments
   International partners

**11 Communication Unit**

regrets that legislative reforms introduced in the Russian Federation in December 2001 and March 2002 have not protected judges better from undue influence from the executive and have even made them more vulnerable. Recent studies and highly publicised cases have shown that the courts are still highly susceptible to undue influence. The Assembly is particularly worried about new proposals to increase further the influence of the President's administration over the judges' qualification commission.

7. Facts pointing to serious procedural violations committed by different law-enforcement agencies against Mr Khodorkovsky, Mr Lebedev and Mr Pichugin, former leading Yukos executives, have been corroborated during fact-finding visits whilst some allegations appear to have been exaggerated by the defence team. On the whole, the findings call into question the fairness, impartiality and objectivity of the authorities, which appear to have acted excessively in disregard of fundamental rights of the defence guaranteed by the Russian Criminal Procedure Code and by the ECHR.

8. The most serious corroborated shortcomings include the following:

i. despite specific requests of the defence lawyers, tests that could have established whether or not Mr Pichugin had been injected with psychotropic drugs were not carried out in good time; Mr Pichugin was also held in the "Lefortovo" prison, which is not subject to the usual controls of the Ministry of Justice and remains under the direct authority of the Federal Security Service (FSB), contrary to a specific commitment the Russian Federation undertook when joining the Council of Europe;

ii. shortcomings in medical attention to Mr Lebedev in prison: in the face of serious concern about Mr Lebedev's deteriorating state of health, the prison authorities have so far refused to allow him to be examined by independent doctors, despite repeated requests;

iii. delays in obtaining the prosecutor's permission have prevented the lawyers from entering into contact with their clients during a particularly critical time after their arrests, making it more difficult for them to organise their defence; a legislative reform abolishing the requirement of prior permission from the prosecutor's office for a lawyer to visit his or her client in prison has not been applied in practice, at least not in the case of the former Yukos executives;

iv. denial of access of Mr Lebedev's defence lawyers to the courtroom during the hearing to determine the matter of his pre-trial detention;

v. search and seizure of documents in the defence lawyers' offices; summoning of lawyers for questioning on their clients' cases; and alleged eavesdropping against defence lawyers. The prosecution must not be allowed to circumvent the privileged lawyer-client relationship by simply playing with case file numbers, especially when the cases are as closely related to one another as the criminal cases against MM. Khodorkovsky, Lebedev and Pichugin, and the tax cases against Yukos and its subsidiaries;

vi. unjustified restrictions on the publicity of certain court proceedings: members of the public have had extremely limited access to certain hearings – that were announced as public – whilst other hearings were or are being held *in camera*. In particular, all proceedings against Mr Pichugin have been held *in camera* even though only a small portion of the case file has been classified as secret; his lawyers have been placed under strict instructions not to discuss the proceedings in public, and even the reasons given in the final judgment may be kept secret;

vii. denial of bail (in particular regarding Mr Khodorkovsky): Mr Khodorkovsky was placed in pre-trial detention several months after Mr Lebedev's arrest on very similar grounds, an arrest that media reports interpreted as a "warning" to Mr Khodorkovsky. Mr Khodorkovsky's conduct showed that there was no risk of absconding or of interfering with evidence. After the completion of the pre-trial investigation, Mr Khodorkovsky and Mr Lebedev were kept in custody, which raises additional issues in light of the judgments of the European Court of Human Rights in the cases of Kalashnikov v. Russia and Letellier v. France. Also, following a recent legislative reform, persons accused of non-violent "economic crimes", such as those allegedly committed by Mr Khodorkovsky, are generally not placed in pre-trial detention.

viii. other unfair features of the trials against Mr Khodorkovsky, Mr Lebedev and Mr Pichugin: the court systematically allows the prosecutor to read out the minutes of the pre-trial interrogation of witnesses and to put pressure on the witness in the courtroom to simply confirm those minutes. This undermines the effectiveness of the right of the defence to question witnesses of the prosecution, whose pre-trial interrogation they are generally not able to attend. The defence lawyers are also not allowed to exchange written notes with the accused in the pre-trial detention centre and in the courtroom. They can only exchange notes after the court has first read them.

9. The Assembly notes that the circumstances surrounding the arrest and prosecution of the leading Yukos executives strongly suggest that they are a clear case of non-conformity with the rule of law and that these executives were – in violation of the principle of equality before the law – arbitrarily singled out by the authorities.

10. In particular, the allegedly abusive practices used by Yukos to minimise taxes were also used by other oil and natural resource companies operating in the Russian Federation, which have not been subjected to a similar tax reassessment, or its forced execution, and whose leading executives have not been criminally prosecuted. Whilst the law was changed in 2004 and the alleged "loophole" thus closed, the incriminated acts date back to 2000 and retrospective prosecution started in 2003.

11. Intimidating action by different law-enforcement agencies against Yukos and its business partners and other institutions linked to Mr Khodorkovsky and his associates and the careful preparation of this action in terms of public relations, taken together, give a picture of a co-ordinated attack by the state.

12. Making criminal charges against persons who made use of the possibilities offered by the law as it stood at the time of the incriminated acts, following a retroactive change of the tax law, raises serious issues pertaining to the principle of *nullum crimen, nulla poena sine lege* laid down in Article 7 of the ECHR and also to the right to the protection of property laid down in Article 1 of the Additional Protocol to the ECHR.

13. The circumstances of the sale by auction of Yuganskneftegaz to "Baikal Finance Group" and the swift takeover of the latter by state-owned Rosneft raises additional issues related to the protection of property (ECHR, Additional Protocol, Article 1). This concerns both the circumstances of the auction itself, resulting in a price far below the fair market-value, and the way Yukos was forced to sell off its principal asset, by way of trumped-up tax reassessments leading to a total tax burden far exceeding that of Yukos's competitors, and for 2002 even exceeding Yukos' total revenue for that year.

14. In view of paragraphs 8 to 13 above, the Assembly considers that the circumstances of the arrest and prosecution of leading Yukos executives suggest that the interest of the state's action in these cases goes beyond the mere pursuit of criminal justice, and includes elements such as the weakening of an outspoken political opponent, the intimidation of other wealthy individuals and the regaining of control of strategic economic assets.

15. The Assembly recognises the right, and even the duty, of law-enforcement bodies to bring to justice the perpetrators of criminal offences. It also recognises the legitimate right of the elected political leadership to pursue its political objectives, including in the economic sphere. However, it strongly objects to the use of law-enforcement procedures for such purposes. In this context, reference is made to the judgment of 19 May 2004 of the European Court of Human Rights in the Gusinskiy case, in which the Court found that the detention in remand of N-TV founder Gusinskiy violated Article 5 of the ECHR because the applicant's prosecution had been used to intimidate him into selling off his stake in N-TV to Gazprom.

16. The Assembly therefore, in general terms:

i. calls upon the Russian authorities to vigorously pursue and implement reform of the legal and judicial system and of law-enforcement agencies with a view to strengthening the rule of law and the protection of human rights, and to continue co-operating with the Council of Europe, in the framework of ongoing programmes;

ii. encourages the courts to assert their independence vis-à-vis the executive authorities in assessing the guilt or innocence of all accused persons, applying the law in conformity with the European Convention on Human Rights;

iii. invites the authorities in charge of pre-trial detention centres to ensure that lawyers' access to their clients in detention is no longer subjected to any conditions not prescribed by law – in particular, prior authorisation or

recommendation by the public prosecutor – and to provide the conditions for the effective exercise of the defence rights of the persons in their custody, including the respect of the privileged relationship between lawyers and their clients;

iv. urges the competent authorities to ensure that all pre-trial detention centres, including Lefortovo isolation centre in Moscow, be subject to supervision by the Ministry of Justice, in line with earlier commitments by the Russian Federation.

17. As regards more specifically the cases of the former leading Yukos executives, the Assembly:

i. requests the executive authorities of the Russian Federation to guarantee the full independence of the judicial proceedings against leading Yukos executives from any attempt to influence them and to take measures to stop any such attempt;

ii. requests the public prosecutors to carry out their work in these proceedings in a professional, impartial and objective manner, respecting the letter and spirit of the procedural protections for the accused laid down in the Russian Criminal Procedure Code and the European Convention on Human Rights and the principles set out in Recommendation Rec(2000)19 of the Committee of Ministers on the role of public prosecution in the criminal justice system;

iii. calls upon the courts to ensure effective public access to the hearings in the proceedings against the leading Yukos executives;

iv. urges the competent authorities to ensure in particular that only those parts of the trial against Mr Pichugin that are directly linked to information for which there is a legitimate need for secrecy remain closed to public scrutiny, in view of the importance attached by the European Convention on Human Rights to the principle of open court hearings;

v. urges the competent authorities to allow immediately an independent medical assessment of Mr Lebedev's state of health.

---

1. *Assembly debate* on 25 January 2005 (3rd Sitting) (see Doc.10368, report of the Committee on Legal Affairs and Human Rights, rapporteur: Ms Leutheusser-Schnarrenberger).
*Text adopted by the Assembly* on 25 January 2005 (3rd Sitting).