## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------------------x
                                    )
RICHARD ALLEN, et al.               )
                                    )
            Plaintiffs,             )      Case No: 1:05-cv-02077 (CKK)
                                    )      Hon. Colleen Kollar-Kotelly
       v.                           )
                                    )
RUSSIAN FEDERATION, et al.          )
                                    )
            Defendants.             )
                                    )
-------------------------------------------------------x
```

## CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# EXHIBIT 65

**Court of arbitration of the City of Moscow**
10 Novaya Basmannay Str., Moscow 107996

**Claimant:**
Open Joint Stock Company
"Oil Company YUKOS"
26 Lenin Str., Nefteyugansk 628309, Khanty-
Mansiisk autonomous okrug, ,
Mailing address: 31a Dubininskaya Str., Moscow
115054

**Defendant:**
Ministry for Taxes and Levies of the Russian
Federation
23 Neglinnaya Str., Moscow 127381,

<u>APPLICATION</u>
**Seeking to declare unlawful Resolution of the Ministry of the Russian Federation for Taxes and Levies dated 14.04.2004 No. 14-3-05/1609-1**

The Ministry for Taxes and Levies of the Russian Federation conducted a Field Tax Audit of OAO NK YUKOS (hereinafter referred to as the Claimant, Taxpayer) in order to control activities performed by the Inspection of the Ministry for Taxes and Levies of the Russian Federation for Nefteyugansk from the standpoint of the aforesaid Company's compliance with tax legislation over the period from 01.01.2000 through 01.01.2001. In accordance with the results of the audit a Field Tax Audit Act No. 08-1/1 dated 29.12.2003 was executed (hereinafter referred to as the Act) **(Appendix 1)**.

The taxpayer disagreed with the conclusions made by the auditors and filed objections to the Audit Act. Upon consideration of the aforesaid objections the tax authority adopted its Resolution on 28.01.2004 No. 14-0-05/300 "On additional tax control measures" *(Appendix 2)*. Results of said control measures have not been provided to OAO NK YUKOS.

Deputy Minister of the Ministry for Taxes and Levies of the Russian Federation adopted Resolution No. 14-3-05/1609-1 dated 14.04.2004 in connection with OAO NK YUKOS "On holding the taxpayer fiscally liable for committing a tax offence" - hereinafter referred to as the Resolution *(Appendix 3)*. Objections of the taxpayer filed thereby in connection with the Tax Audit Act have not been accepted.

Pursuant to this Resolution it was suggested that the Defendant remit the amount of additionally charged taxes totaling **47,989,241,953.00 RUR**, default interest totaling **32,190,599,501.4 RUR** and fines totaling **19,195,696,780.00 RUR**.

Pursuant to the aforesaid Resolution the Defendant executed Demand No. 14-3-05/1610-8 от 14.04.2004 г. to pay taxes in the amount of <u>47,989,241,953.00RUR</u>, tax penalties totaling <u>32,190,599,501.04 RUR</u>, and Demand No. 14-3-05/1611-1 dated 14.04.2004 to pay fines in the amount of <u>19,195,696,780.00 RUR</u>. *(Appendix 4).*

1

**The Claimant appeals against the aforesaid Resolution due to the following reasons:**

Additional tax accruals of OAO NK YUKOS comprise amounts of tax benefits utilized by third parties. The application of such benefits is considered by the tax authority to be unlawful. Additional tax accruals are set out below in the table[1]:

| Entity | Utilization of tax allowances (RUR) | | | | | | |
|---|---|---|---|---|---|---|---|
| | VAT | Tax on POL Sales | Profits tax | Property tax | Motorway users tax | Housing stock and social amenities maintenance tax | TOTAL |
| OOO "Virtus" | - | - | 2 359 700 | - | - | - | 2 359 700 |
| OOO "Kverkus" | - | 2 314 934 306 | 484 015 000 | 9 799 460 | 55 165 845 | 167 507 627 | 3 031 422 238 |
| OOO "Muskron" | - | 951 345 | 3 643 219 | 70 220 | 1 598 221 | 1 138 334 | 7 401 339 |
| OOO "Trace" | - | - | 20 240 687 | 5 305 | 706 | 503 | 20 247 201 |
| OOO "Nortex" | - | 2 796 357 124 | 181 859 687 | 680 343 | 101 410 627 | 72 229 791 | 3 152 537 572 |
| OOO "Vald-Oil" | - | 985 969 309 | 162 154 920 | 857 000 | 96 289 488 | 59 161 000 | 1 304 431 717 |
| OOO "Mitra" | - | 12 074 163 | 15 049 253 | | - | | 27 123 416 |
| OOO "Business Oil" | - | 1 398 732 926 | 93 644 890 | 233 000 | 56 982 037 | 35 174 097 | 1 584 766 950 |
| OOO "Sibirskaya Transportnaya Companya" | - | - | 209 404 407 | - | 14 105 803 | 16 926 964 | 240 437 174 |
| OOO "Petroleum Trading" | - | - | 22 385 271 | 13 076 | 935 018 | - | 23 333 365 |
| OOO "YUKSAR" | 36 839 637 | - | 54 030 054 | 592 | 5 004 848 | | 95 875 131 |
| OOO "Ratmir" | 1 770 245 037 | - | 2 611 705 520 | 45 854 745 | 959 228 281 | 719 421 211 | 6 106 454 794 |
| OOO "U-Mordovia" | 2 045 653 454 | - | 1 829 048 807 | 3 814 829 | 215 510 832 | 161 633 124 | 4 255 661 046 |
| ZAO "YUKOS- M" | 9 697 309 558 | - | 11 981 693 000 | 4 901 419 | 1 411 406 247 | 1 058 554 685 | 24 153 864 909 |
| OOO "Alta-trade" | 467 486 102 | - | 2 491 817 840 | 16 883 484 | 644 587 568 | 483 440 676 | 4 104 215 670 |
| ZAO "Interneft" | - | - | 13 736 | 204 500 | 6 406 | - | 224 642 |
| OOO "Mars XXII" | - | - | 3 597 652 | - | 8 167 306 | 6 125 479 | 17 890 437 |
| **TOTAL** | 14 017 533 788 | 7 509 019 173 | 20 166 663 643 | 83 317 973 | 3 570 399 233 | 2 781 313 491 | 48 128 247 301 |
| Under-collection of taxes related to the final part of the Resolution | 14 043 369 356 | 7 509 019 173 | 20 001 319 996 | 83 820 701 | 3 570 399 235 | 2 781 313 492 | 47 989 241 953 |

Referring in the text of the Resolution to the unlawful nature of the application of tax allowances by third parties (in amounts as set out in the table), the tax authority makes an ungrounded conclusion that the Claimant, rather than those third parties shall pay the aforesaid taxes.

---

[1] This table has been executed on the basis of information contained in the descriptive part of the Resolution. However, amounts specified in the resolutive part of the Resolution vary from such information due to mathematical errors. The table of all additional tax accruals of OAO NK YUKOS with the account of errors made by the tax authority is set out in *Appendix 5*.

**A decision based on such imposition of third parties' obligations onto the Claimant demanding that the Claimant should pay taxes is deemed unlawful due to the following reasons:**

1. Establishment of the inter-relation of organizations specified in the Resolution with the Defendant may not be the basis for the conclusion that tax obligations of such organizations shall be imposed on the Defendant;

2. The conclusion about the right of tax authorities to additionally accrue taxes on OAO NK YUKOS, being the "actual owner", is not based on provisions of the law (nor based on the law is the conclusion of third parties that OAO NK YUKOS is the "actual owner");

3. Conclusions about additional tax accruals on third parties of OAO NK YUKOS result in double taxation;

4. The conclusion about the bad faith acts of OAO NK YUKOS is unlawful and unjustified;

5. The conclusion about the inter-relation of organizations contradicts provisions of Art. 20 of the Tax Code of the Russian Federation;

6. Additional VAT accrual was executed without consideration of all material circumstances related to arisen tax payment obligations of OAO NK YUKOS and third parties;

7. The conclusion about violations committed by OAO NK YUKOS is based on information about acts of third parties, rather than the Claimant:
   *- Unlawful nature of the utilization of tax benefits by third parties does not prove that the taxpayer in question violated tax legislation;*
   *- Conclusions about the unlawful utilization of tax benefits by third parties are not based on rules of tax legislation;*
   *- No failure to provide any documents by third parties may not serve as the evidence of tax law violation committed by the taxpayer in question.*

8. The resolution was adopted in breach of procedural rules of the Tax Code of the Russian Federation as:
   *- it was adopted pursuant to results of counter tax audits whose procedures were not complied with by tax authorities;*
   *- it was adopted pursuant to results of a repeated field tax audit whose procedures were not complied with by tax authorities;*
   *- it may not be adopted on the basis of results of a repeated field tax audit by a superior tax authority;*
   *- it is not based on the audit act;*
   *- it contains a conclusion about the application by the taxpayer of intentionally understated or nominal prices without complying with pricing controls (Art. 40 of the Tax Code of the Russian Federation);*

9. Allegations about the inter-relations of third parties with OAO NK YUKOS and unlawful nature of the application of said tax benefits by those third parties are unjustified.

**10. Moreover, the imposition of fiscal liability in the amount of 19,195,696,780.00 RUR is also unlawful because the effective term for holding the Taxpayer fiscally liable has expired.**

**11. Availability of gross mathematical errors distorting the amounts of additionally accrued taxes, calculated default interest and fines.**

**1.   Unlawful conclusions about the legal meaning of the inter-relation of parties.**

Conclusions provided in the Resolution are based on the assumption about the inter-relation of OAO NK YUKOS and 22 companies specified in the aforesaid Act, in connection with 17 thereof additional taxes have been accrued on OAO NK YUKOS. Names of such companies and additionally accrued taxes are set out in the Table of additional accruals on the basis of the aforesaid Resolution (*Appendix 5*).

The current legislation of the Russian Federation provides for a status of inter-related persons for taxation purposes and such status causes strictly prescribed legal consequences. Such legal consequences exclusively imply that if there is a fact of the inter-relation of persons a tax authority acquires a right to apply Art. 40 of the Tax Code of the Russian Federation, i.e. to adjust for taxation purposes (provided that other conditions set out in the same Art. 40 of the Tax Code of the Russian Federation are observed) results of transactions concluded by such companies. Such adjustment exclusively implies that it is allowed to apply market prices in order to determine results of such transactions for taxation purposes (paragraph 3 Art. 40 of the Tax Code of the Russian Federation), however, in such instance, the aforementioned Art. 40 of the Tax Code of the Russian Federation may be applied only to transactions between the inter-related parties themselves, excluding any other third parties. However, the tax authority, in its Resolution does not apply Art. 40 of the Tax Code of the Russian Federation. Moreover, no conclusions have been made by the tax authority about the market nature of prices or any lack thereof in connection with prices utilized by third parties.

**Current Russian legislation does not provide for any other legal consequences of the recognition of persons as inter-related parties, except potential application of Art. 40 of the Tax Code of the Russian Federation. Under Art. 44 of the Tax Code of the Russian Federation the obligation to pay taxes arises, varies or terminates provided that there exist grounds specified in the Tax Code of the Russian Federation. Current legislation does not provide for any obligation of a person to pay taxes from results of economic activities generated by any other person.**

Any government agency acts in accordance with the permissive principle of legal regulation and may perform only such acts that fall within the scope of authority thereof under current legislation. As set forth by Art. 30 of the Tax Code of the Russian Federation tax authorities shall act only within the scope of their authority and in accordance with Russian law. The scope of authority of tax authorities **and the scope of authority of any other agencies (including court or any law enforcement authorities) does not include a right to post (assign) revenues generated by one company to revenues generated by another company. The aforesaid authorities have no right to "assign" tax liabilities of one company to another company either.** Current legislation does not provide for such legal consequences of the inter-relation of companies.

The award of the Federal Arbitration Court for the North-Western okrug dated September 17, 2001 No. A56-12502/00 (*Appendix 6*) stated that the consequence of the inter-relation of taxpayers is deemed to be the application thereto of Art. 40 of the Tax Code of the Russian Federation.

**2.   Unlawful nature of the conclusion about the right of tax authorities to additionally accrue taxes on OAO NK YUKOS in the capacity of the "actual owner".**

4

When calculating tax amounts the Russian Tax Ministry utilizes the term "actual owner". However, such term is spelled out neither in the tax nor in the civil legislation.

The Russian Tax Ministry on page 99 of its Resolution specifies that "tax authorities determine the person that is deemed to be the actual owner based on actual relations arising between parties to transactions regardless of the fact that such persons are named to be owners of assets in documents filed in the course of the tax audit". Furthermore, on the basis of such assumption the Russian Tax Ministry concludes the following: "Thus, for OAO NK YUKOS, being the actual owner of oil and oil products, in the course of sales thereof a liability was created in connection with the payment of value added tax, motorway users tax, tax on POL sales (in part of sales of fuels and lubricants), and a housing stock and social amenities maintenance tax; and such liability remained unfulfilled within the established timeframe".

Thus, the Russian Tax Ministry has based its position pertaining to the additional accrual of taxes on the Claimant on two principal grounds:

Firstly, on the right of tax authorities to determine "actual owners" on the basis of "actual" relations arising between the parties to transactions, regardless of what persons are deemed to be owners strictly from the legal standpoint.

Secondly, on the assumption that in connection with the Claimant those were the existing actual relations and the Claimant is the "actual" owner of oil and oil products.

The position of the Russian Tax Ministry may not survive the criticism either in connection with the first or with the second ground.

1) The principal matter is that the tax authority has no right to subjectively at its sole discretion to determine tax liabilities of taxpayers. **The Russian Federation applies a principle of creation of tax liabilities only under provisions of the Russian law (Art. 57 of the Russian Constitution, Articles 3, 17, 23 of the Tax Code of the Russian Federation).** The Russian Tax Ministry in its Resolution tries to provide justification for a principally different approach in accordance with which a tax liability arises on the basis of the determination by the tax authority of an "actual owner" based on the actually existing circumstances. Under such approach a tax liability arises not on the basis of circumstances stipulated by the law, but rather on the basis of the discretion of the tax authority when qualifying thereby of "actually" existing relations.

**Such approach of the Russian Tax Ministry is erroneous. Neither the tax legislation, nor the Civil Code of the Russian Federation utilizes the term "actual" owner.** Under the definition (Art. 209 of the RF Civil Code) the owner may be only a legal entity, i.e. the one possessing the appropriate legal powers to own, utilize and operate the owned item. Under Art. 11 of the Tax Code of the Russian Federation the aforesaid "legal" understanding of ownership shall serves as the basis for the determination of who and at what time sold goods, and the sales are defined in Art. 39 of the Tax Code of the Russian Federation as a transfer of the ownership right for consideration. Thus, **a model of the "actual" ownership invented by the Russian Tax Ministry is an obvious violation of tax legislation rules and in its essence is an attempt to justify the unlimited discretion of government officials serving in the tax authority when determining what tax liabilities of the taxpayer are.**

2) The claim of the Russian Tax Ministry about the proven nature of the fact that OAO NK YUKOS is the "actual" owner of oil and oil products is not based on circumstances specified in the Audit Act and Resolution. Specific facts and circumstances proving the inter-relation (affiliation) of persons stated in the Audit Act and in the Resolution, firstly, are not confirmed in any way by the tax authority with a reference to any documents attached to the Audit Act or Resolution, and secondly, may serve as grounds to conclude the proven nature of the fact that OAO NK YUKOS was the "actual" owner of oil and oil products.

OAO NK YUKOS is not (wither actual or legal) the owner of oil, for which it is deemed to be unlawfully liable to pay sales tax, as OAO NK YUKOS:

- Does not actually produce oil;
- Has no fixed assets for the production of oil;

- Has no fixed assets for the storage or transportation of oil;
- Does not employ any experts ensuring the production, storage and transportation of oil.

Specifically those facts were provided by the tax authority as the justification of the lack of any "actual ownership right" of companies that the tax authority believes to be affiliated. For instance, on page 11 of the Resolution it is stated that OOO Sibirskaya Transportnaya Companiya had no material resources required for the procurement and storage of oil.

The Resolution does not specify what actual relations between the parties to transactions are determined to be "actual ownership relations". In order to justify the conclusion about the actual ownership in the Resolution, it provides for only such legal categories and terms as:
- inter-relation (affiliation);
- participatory interest;
- promissory notes settlements, etc..

**At the same time, the tax authority has not provided any references to documents supporting the "actual relations" in order to justify the conclusion made thereby about the "actual ownership".**

The lack of appropriate equipment is one of the major arguments provided by the tax authority confirming that third parties conducted "sham" activities and were not actual owners of oil. However, OAO NK YUKOS does not have such equipment either. Subsequently, the conclusion of the Russian Tax Ministry about the actual performance of trading operations by OAO NK YUKOS, being the actual owner of oil, may not be supported by the forma logic rules.

The Resolution concludes that OAO NK YUKOS *evades the payment of taxes charged on production, refining and sale of oil and oil products*. However, **OAO NK YUKOS <u>did not produce, refine or sell oil and oil products</u>**.

### 3. Conclusions about additional accruals of third parties taxes on OAO NK YUKOS result in double taxation.

#### 3.1. While assigning OAO NK YUKOS revenues generated by third parties, tax authorities disregard corresponding expenses.

Tax authorities do not have a common approach towards the imposition of tax liabilities on OAO NK YUKOS: they assign thereto revenues generated by third parties, but fail to take into account expenses incurred by such third parties. However, when "re-imposing" revenues generated by one company to another, it would be logical to "re-impose" expenses incurred by such company as well. Otherwise there will be a lack of balance between the income and expenses of such companies – the company to which said revenues are assigned pays the tax without the account of its actual capability to pay such tax.

Subsequently, such approach of tax authorities is unlawful as it does not observe the constitutional principle of taxation – mandatory account of the actual capability to pay taxes (Resolution of the Constitutional Court of the Russian Federation dated May 27, 2003 No. 9-P – see *Appendix 7*).

#### 3.2. While "re-imposing" tax liabilities from one taxpayer onto another, tax authorities do not return taxes to the former.

Third parties mentioned in the Resolution, whose tax liabilities are imposed on OAO NK YUKOS believed that they were independent taxpayers and legal and "actual" owners of sold oil and oil products. Correspondingly, despite the applied benefits, as it is obvious from the Resolution, a significant portion of taxes specified in the Resolution was paid by said third parties.

6

The tax authority fails to note that taxes paid by third parties shall be recovered from the budget and returned to said third parties as the aforesaid third parties have no object of taxation as they are "actual non-owners" in accordance with the logic provided by the tax authority.

The question about the recovery of paid tax amounts is not discussed in the Resolution. In such instance, it is obvious that if OAO NK YUKOS is deemed to be the actual owner of everything owned by third parties, the taxes shall be reimbursed directly to OAO NK YUKOS.

### 4. Unlawful and poorly justified conclusion about bad faith acts of OAO NK YUKOS.

The tax authority believes that its acts related to the investigation of bad faith acts of OAO NK YUKOS may be based on the Determination of the Constitutional Court of the Russian Federation dated July 25, 2001 No. 138-O.

In the aforesaid determination of the Constitutional Court of the Russian Federation it is provided that the only consequence of unveiled bad faith acts of the taxpayer is the failure to apply to such bad faith taxpayer the general procedure designated in order to determine the tax payment time (Art. 45 of the Tax Code of the Russian Federation). In other words, a refusal to provide tax benefits, tax deductions, "re-imposition" of tax liabilities may not be justified by the reference to the bad faith acts of the taxpayer.

Moreover, in addition to the good faith acts of taxpayers (as applied to a specific case) the Constitutional Court in the determination spoke about the compliance of tax authorities with provisions of tax legislation. It is stated therein that *tax authorities shall <u>control</u> <u>duly</u> execution of tax liabilities*. The objective of any tax audit is the exertion of control over compliance with tax legislation (subparagraph 2 paragraph 1 Art. 32 of the Tax Code of the Russian Federation). The tax legislation says nothing about the "actual ownership"<u>, subsequently, there may not be such subject of the audit.</u>

**Thus, a conclusion about the bad faith acts of the taxpayer in such instance is deemed to be unjustified and unlawful as it was made in excess of powers granted to tax authorities.**

### 5. Unjustified claims of tax authorities about the affiliation of OAO NK YUKOS and third parties whose tax liabilities are imposed on OAO NK YUKOS.

The tax authority subjectively established the fact of the affiliation of almost all companies set out in the Resolution without any specification of criteria cited in Art. 20 of the Tax Code of the Russian Federation. Under the same Art. 20 of the Tax Code of the Russian Federation for taxation purposes affiliated parties are deemed to be organizations whose relations may influence the terms and conditions or economic results of their operations or operations of parties represented thereby, in particular, when one organization directly and (or) indirectly participates in the other organization and the total participatory interest amounts to over 20 percent. The share of indirect participation of one organization in the other through the sequence of other organizations is determined as the multiplication of indirect participatory interests of organizations being part of such sequence in one another. The affiliation criterion specified in subparagraph 1 paragraph 1 Art. 20 of the Tax Code of the Russian Federation is observed only in connection with a few companies set out in the Resolution.

In accordance with such criterion, if tax authorities can provide adequate evidence, OAO NK YUKOS may be recognized to be affiliated over the period in question with OOO Yuksar, ZAO Yukos-M, OOO Yu-Mordovia. In such instance, as it is stated in the Resolution, OAO NK YUKOS during the year 2000 held only 4 % of the authorized capital and only on December 22, 2000 received 100 % of stocks of ZAO 3AO Yukos-M (page 36 of the Resolution). However, despite the fact that the affiliation criterion as set out in subparagraph 1 paragraph 1 Art. 20 of the Tax Code of the Russian Federation (20 % shareholding) appears only within the last nine days of the period in question, conclusions presented in the Resolution state that the total

revenues of ZAO Yukos-M for the whole year 2000 is deemed to be revenues generated by OAO NK YUKOS.

It must be noted that upon completion of the year 2000 some companies specified in the Resolution became affiliated with OAO NK YUKOS, however, during the period in question they were not deemed to be affiliated. The list of such companies include: OOO MARS XXII, OOO Alta-Trade, OOO Ratmir. Conclusions of the tax authority about the affiliation of such companies with OAO NK YUKOS during the period in question (2000) are poorly justified.

In connection with the remaining 16 companies, i.e. OOO "Sibirskaya Transportnaya Companiya", OOO Kverkus, ZAO Interneft, OOO Mitra, OOO Vald-Oil, OOO Business-Oil, OOO Muskron, OOO Nortex, OOO Staf, OOO Kolrein, OOO Greis, OOO Plast, OOO Virtus, OOO Petroleum-Trading, OOO Saturn XXV, OOO Jupiter XXIV, are not affiliated with OAO NK YUKOS and OAO NK YUKOS has no information about foundation documents of said companies, change of their management and their tax liabilities.

It is also obvious that facts referred to in the Resolution in order to justify the affiliation of said companies and OAO NK YUKOS (employment of certain individuals in several of those companies, participation of certain companies in the capital of other companies, etc..) served as grounds for the Resolution without any reference to corresponding evidence. *As a result thereof, neither OAO NK YUKOS, nor the court may evaluate circumstances on which the position of the tax authority is based, as they have no documents or information used by the tax authority in order to justify the fact of the aforesaid affiliation of third parties and OAO NK YUKOS.*

At the same time, under paragraph 2 Art. 100 of the Russian Tax Code the Tax Audit Act shall contain facts related to tax legislation violations supported by documents that were disclosed in the course of the tax audit.

Under paragraph 3 Art. 101 of the Russian Tax Code the resolution to hold the taxpayer fiscally liable for a committed tax offence shall specify *circumstances of the tax offence committed by the taxpayer the way they were established in the course of the audit,* as well as documents and any other information confirming the aforesaid circumstances …

Under paragraph 6 Art. 101 of the Russian Tax Code any failure to meet the requirements of the said article by the tax authority officials may serve as grounds for the repeal by a higher tax authority or court of the resolution adopted by the tax authority.

Besides, Art. 108 of the Russian Tax Code provides that a taxpayer may be held fiscally liable only on the grounds and in the manner stipulated in the Russian Tax Code. **In other words, in part of the penalties the Resolution is obviously unlawful and shall be declared invalid.**

**6. Additional accrual of VAT was performed without consideration of all components of tax liabilities of OAO NK YUKOS and third parties.**

The unjustified nature of under-collected tax amounts pertaining to OAO NK YUKOS is due to the fact that the tax authority compared incomparable tax periods for the purposes of additional VAT accruals – the audited companies, being small businesses, have a tax period of one quarter (as it is stated for all companies in the Audit Act), and OAO NK YUKOS has a tax period of one month. In such instance, the reliability of VAT calculations causes serious doubts as generated revenues for the purposes of taxation directly depend on the accounting policy of the company, and without clarification of such matter it is impossible to combine revenues generated by one company (whose accounting policy is unknown) with revenues generated by OAO NK YUKOS whose accounting policy is **cash based**. Such circumstances make unreliable calculations of tax arrears, fines and default interest specified in the Audit Act.

Tax authorities do not have any common approach towards the imposition on OAO NK YUKOS of tax liabilities: the company has been "assigned" revenues generated by third parties, but, however, expenses of such parties are completely disregarded. **In such instance, it is obvious that the input VAT on expenses not accepted by the tax authority will reduce the total VAT additionally accrued under the Resolution.**

**7. Unlawful nature of conclusions made by the tax authority and based on the information about acts of third parties.**

**7.1. The unlawful nature of the utilization of tax benefits by third parties does not prove the fact of violation of tax legislation by the audited taxpayer.**

The Resolution states that a number of third parties listed therein applied tax benefits unlawfully. In accordance with the aforesaid assumption a conclusion is made that another taxpayer - OAO NK YUKOS- breached provisions of tax legislation and failed to pay to the budget material amounts of taxes.

Firstly, the legitimacy (illegitimacy) utilization by third parties of tax benefits may not serve as grounds for the conclusion about the breach of provisions of tax legislation by OAO NK YUKOS and its failure to pay taxes to the budget.

Secondly, under subparagraph 3 paragraph 1 Art. 21 of the Russian Tax Code the taxpayer has a right to use tax benefits provided there are grounds and in the manner stipulated by current tax legislation. The tax authority failed to prove the illegitimate utilization of tax benefits by third parties.

Under Art. 106 of the Russian Tax Code a tax offence is deemed to be a wrongfully committed (in violation of tax and levy legislation) act (action or omission to act) of a taxpayer, for which liability is established by the Russian Tax Code. Thus, one may single out components of a tax offence:

- act (action, omission to act) *of a taxpayer;*
- *unlawful nature of the act*;
- **guilt of the taxpayer;**
- sanctions provided for its committal.

Unlawful utilization of tax benefits by third parties is not deemed to compose a definition of a tax offence as OAO NK YUKOS failed to commit any acts. In such instance, an act (utilization of benefits) is committed by third parties. Officers of those companies, rather than OAO NK YUKOS, do the tax accounting, calculate taxes while applying tax benefits, prepare and file tax returns. If there is no wrongful act committed by OAO NK YUKOS, the question about its guilt may not be raised as there is no fault associated with OAO NK YUKOS related to the committal of unlawful act (the guilt under the legal doctrine is defined as the subjective attitude of the person towards publicly dangerous and wrongful act committed thereby). However, the tax authority establishes the guilt of the taxpayer provided that no wrongful act has been committed.

Special procedures shall be complied with in order to prove the unlawful nature of acts committed by third parties or taxpayers. Even if they are recognized as "actual non-owners", they still continue to be independent legal entities and independent taxpayers. A conclusion about the violation of tax legislation shall be made in accordance with results of the audit of such legal entity. However, the tax authority failed to conduct such audits.

A major part of its conclusions the tax authority is making on the basis of the availability of some unlawful tax evasion scheme. On page 2 of the Resolution the tax authority provides the following information in order to justify the availability of the unlawful tax evasion scheme:

1) Affiliation of persons participating in transactions, control over them exercised by OAO NK YUKOS;
2) Registration of oil owners in relaxed tax treatment territories;
3) Failure to conduct operations by "owners" in the place where they have been incorporated;
4) Fictitious commission fees of OAO NK YUKOS, the amount whereof is significantly smaller the remuneration paid on the agency services market;
5) Lower declaration of the price at which oil was purchased from producing companies and other shell organizations;

6) Accounting procedures performed by OOO YUKOS-Invest that is affiliated with OAO NK YUKOS;
7) Opening accounts of all organizations at the same banks affiliated with OAO NK YUKOS;
8) Application of promissory notes settlements between entities or settlements through offsets.

It was said above about the unlawful nature of a number of reasons provided by the tax authority in order to confirm the availability of the tax evasion scheme. However, some of those reasons require additional denial.

### *Application of various settlements types and termination of liabilities.*

The tax authority specified in its Resolution (page 3) that OAO NK YUKOS utilized offsets of mutual claims and settlements employing its own promissory notes.

It should be noted that the RF civil legislation (Art. 410 of the RF Civil Code) provides for offsets of similar counterclaims as one of the grounds for termination of a liability.

Under Art. 143 of the Civil Code promissory notes are deemed to be securities that under a general rule of Art. 128 of the RF Civil Code are part of the property that has an unlimited nature and has not been withdrawn from circulation. Any transfer for a consideration of the property that is capable of circulation under a contract is fully in line with provisions of the Russian civil legislation.

Besides, settlements utilizing promissory notes **as well as termination of liabilities through an offset do not change tax consequences of conducted business operations. Subsequently, such facts specified by the tax authority in the Resolution may not prove a tax offence committal.**

Besides, the tax authority failed to provide information about contracts, amounts and names of the parties with who such promissory notes settlements were executed. It is unclear if such settlements are related to operations in question.

### *Obtaining services of three banks by the organization in question.*

On page 3 of the Resolution the tax authority stated that "accounts of all organizations are opened in the same banks - OAO AKB Doveritelni i Investitsionni bank (Trust and Investment Bank), OAO KB Menatep St. Petersburg and AKB Solidarnost, and all of the aforesaid banks are affiliated with OAO NK YUKOS. No corresponding evidence was provided by tax authorities, nor it was specified how the availability of accounts in said banks may influence the adoption of decisions about transactions and their terms and conditions. **Under paragraph 3 Art. 845 of the RF Civil Code the bank may not determine and control areas of utilization of cash by the client and set forth any other restrictions not stipulated by the law or bank account agreement in connection with the client's right to utilize its funds at its discretion. No such restrictions were unveiled or confirmed by the tax authority. Art. 858 of the RF Civil Code also provides that any restriction of the client's rights to utilize monetary funds kept in the account is prohibited, unless monetary funds kept in the account need to be seized or operations with the account need to be suspended in instances as stipulated in current Russian law. Thus, the client determines what to do with its monetary funds, rather than the bank dictates to the client terms of business operations.**

**On the basis of the foregoing the conclusion of the tax authority that the availability of accounts of a number of legal entities at Trust and Investment Bank, Menatep St. Petersburg or AKB Solidarnost proves the affiliation thereof with OAO NK YUKOS is unlawful and unjustified.**

Following the logic of the Russian Tax Ministry, it would be possible to declare all other clients of the aforesaid banks affiliated with OAO NK YUKOS.

### 7.2. Conclusions about the unlawful utilization of benefits by third parties are not based on tax legislation rules.

On the basis of the contents of the Field Audit Act and the text of the Resolution one may conclude that the tax authority unlawfully decided that third parties recognized to be affiliated with the Claimant had no rights to utilize tax benefits for regional and local taxes.

General grounds for the conclusion about the unlawful utilization of tax benefits by all 17 companies include the claim of the auditors that in the territory of corresponding administrative and territorial units the aforesaid companies conducted no operations as they had no fixed assets for the storage of oil and oil was not transported to the territory of respective regions (for instance, ZATO Lesnoy.)

However, as it follows from the Audit Act the companies' operations did not comprise sales of oil or oil products in the territory of respective administrative and territorial units (for instance, ZATO), but they were rather focused on conducting trading operations and provision of agency services regardless of where oil products were located. Russian legislation does not obligate the company to conduct trading operations in the capacity of the agent solely at the place where the traded goods are located.

Determination of the Constitutional Court of the Russian Federation dated May 27, 2003 No. 9-P (*Appendix 7*) states that no acts preventing individuals from exercising their constitutional rights are allowed. Subsequently, an arbitrary cancellation of the taxpayer's right to utilize tax benefits set forth by the tax legislation is not allowed either as it restricts the freedom of the taxpayer to utilize its assets for business purposes.

**The court practice recognizes lawful utilization of tax benefits in a similar case.** For instance, the Federal Arbitration Court of the North-Western okrug in its Resolution dated June 5, 2002 pertaining to case No. A42-6604/00-15-818/01 (*Appendix 8*) considered the legitimacy of the utilization back in 1999 of additional tax benefits for the company registered in ZATO conducting oil products trading operations outside of ZATO and declared the utilization of such tax benefits lawful. In particular, the court specified that:

*"The fact of the state registration of the Company in the territory of the town of Snezhnogorsk and registration with tax authorities at the tax agency of ZATO is supported by resolution No. 273 of the Head of ZATO administration dated 27.04.99, state registration certificate of the legal entity No. 0335 and tax registration application dated 29.04.99.*

*Under the balance sheet the only fixed asset of the Company is deemed to be a computer that was located at 14/4 Sovetskaya Str., Snezhnogorsk as it is stated in the fixed assets stock-taking list.*

*The fact that during the year 1999 at least 70 percent of the average listed number of the Company's staff included permanent residents of ZATO and at least 70 percent of the payroll fund of the defendant was paid to permanent residents of ZATO is confirmed by the materials of the case.*

*The Inspection of the Russian Tax Ministry while adopting the disputable resolution believed that the Company failed to prove that its operations were conducted in the territory of ZATO. However, paragraph 1 Art. 5 of the law on ZATO does not link the provision of tax benefits with the nature of the taxpayer's operations - business or any other operations. The Company's Charter provides that the Company's core activity includes wholesale and retail trade. Materials of the case also provide that the taxable profits were generated by the taxpayer mainly from operations related to re-selling of oil products and provision of services to investors in the securities market.*

*Under such circumstances the investigation of the Company's possession of fixed assets for the storage and transportation of oil products in the territory of ZATO falls out of the scope of this case as in order to trade oil products, i.e. to conclude sale/purchase contracts, a company does not have to own specific fixed assets and such oil products do not have to be located in the territory of ZATO either.*

11

*A reference of the Inspection of the Russian Tax Ministry to the fact that the Company's General Director has no permanent registration in ZATO is unjustified as under paragraph 1 Art. 5 of the Law on ZATO the provision of tax benefits is linked to the permanent residence of at least 70 percent of the taxpayer's staff in the territory of ZATO, rather than the residence of the Company's manager in the aforesaid territory."*

Such court practice proves the legitimacy of the utilization by the companies specified in the Act and Resolution of regional and local tax benefits.

Besides, neither the Audit Act, nor Resolution contains any information stating that respective tax agreements with companies specified in the Act have been declared invalid by court. In such situation a conclusion of the auditors about the illegitimate nature of the utilized tax benefits is unreasonable. **A reference of the auditors to the non-proportionality of cash saved by the companies as a result of the application of tax benefits with payments that the companies remitted to the administrative and territorial units that provided such benefits is not based** on rules of law **as under the definition thereof (Art. 56 of the RF Tax Code) a tax benefit is a right not to pay a tax thus, any criterion of proportionality contradicts the essence of a tax benefit as a form of tax exemption.**

Besides, the tax authority failed to specify exactly where transactions with third parties were concluded.

Thus, any conclusions about the illegitimate utilization by the aforesaid companies of tax benefits have not been justified by the auditors. Moreover, **OAO NK YUKOS may not be held responsible for the utilization of tax benefits by other companies.**

In such instance, even if one assumes that benefits were utilized by the companies unlawfully, there are no legitimate grounds to hold the Defendant liable for the payment of taxes by the aforesaid companies that were additionally accrued due to unlawful utilization of tax benefits thereby. Thus, arbitration court practice, in particular, the one referred to by the tax authority on page 6 of the Resolution, allows to additionally accrue taxes on those taxpayers that unlawfully utilize tax benefits, but not on any third parties.

### 7.3. Failure of third parties to file documents does not prove that the audited taxpayer breached provisions of tax legislation.

The Resolution specifies that third parties allegedly deliberately failed to provide to tax authorities documents to conduct counter audits.

Firstly, acts of third parties – independent taxpayers (lawful or unlawful) may not prove the availability (lack) of a tax offence committed by the audited taxpayer - OAO NK YUKOS. Thus, the mere refusal of third parties to provide documents within the framework of scheduled counter audits may not serve as the basis for conclusions of the tax authority about the inadequate fulfillment of tax liabilities by OAO NK YUKOS.

Secondly, requiring the provision of documents under Decision of the Inter-regional Inspection No. 1 of the Russian Tax Ministry No. 47/395 dated 8 December 2003 is unlawful due to the circumstances described below. Subsequently, the conclusion of the tax authority about "deliberate non-provision of initial documents to conduct counter *audits"* is unreasonable and may not be taken into account.

## 8. Violation of procedural rules of tax legislation

### 8.1. Violation of the procedures of counter audits.

Under part 2 Art. 87 of the Russian Tax Code, if during on site and field tax audits tax authorities require to obtain information about activities performed by the taxpayer (levy payer) related to any other persons, the tax authority may demand that such persons provide documents *pertaining to operations performed by the audited taxpayer* (levy payer) (a counter audit).

Thus, the following are deemed to be required terms and conditions of the counter audit:

- *Conducting in-house or field tax audit of the taxpayer*. This provision of Art. 87 of the RF Tax Code means that it is impossible to conduct a counter audit as an independent tax audit without a simultaneous in-house or counter audit of the taxpayer;
- *Information pertaining to third parties is required about activities of the audited taxpayer*. In other words, a counter audit is directly linked with the subject of the principal audit (in-house or field audit), which excludes demand of the provision of documents not related to the conducted audit as well as conducting a counter audit under the Resolution of any other tax authority not conducting the principal tax audit;
- *Third parties may be required to provide only those documents that are related to the activities of the audited taxpayer*. In other words, required documents shall be exclusively related to the audited taxpayer.

Besides, Art. 87 of the RF Tax Code does not provide for any special decisions about conducting a counter audit as a counter audit is deemed to be requiring third parties whose activities are associated with activities performed by the audited taxpayer to present documents.

Under the Audit Act a tax audit was conducted on the basis of Resolution of the RF Tax Ministry No. 14-3-05/3239-1 dated December 08, 2003 in the form of the control exercised over activities of the Inspection of the RF Tax Ministry for Nefteyugansk for the term from 01.01.2000 through 01.01.2001.

Thus, a counter audit shall be conducted by the Ministry for Taxes and Levies of the Russian Federation without any additional Resolutions about the appointment of such audits.

At the same time, the Field Tax Audit Act of OAO NK YUKOS contain information about counter audits of the following organizations: OOO Alta-Trade, ZAO Yukos-M, OOO Ratmir, OOO Yu-Mordovia, OOO Yuksar, OAO NK YUKOS, OOO Sibirskaya Transportnaya Companiya, OOO Napravlenie, OOO Grund, OOO Kverkus, ZAO Interneft, OAO Mitra, ZAO Rosinvest, ZAO Transkrud, OOO Zavod kompaudirovania, OAO TD Angarsk-Nefto, OAO Lion, OAO Finco, ZSK Titan, OOO Vald-Oil, OOO Business Oil, OOO Mars XXII, OOO Nefte-Trade, OOO Muskron, OOO Nortex, OOO Mosenergomontazhmekhanizatsia, OOO TD YUKOS-M, OOO Staf, OOO Kvadrat, OOO Kolrein, OOO Flander, OOO Forest-Oil, OOO Alebra, OOO Grace, OOO Plast, OOO SK-STR, IP ZAO AIR.

Those organizations were audited under Resolution No. 47/395 dated December 8, 2003 (*Appendix 9*) of the Inter-regional Inspection for Major Taxpayers No. 1 of the Russian Tax Ministry. However, this tax authority is not deemed to be a tax authority conducting a tax audit of OAO NK YUKOS, – Russian Tax Ministry. In other words, the Inter-regional Inspection for Major Taxpayers No. 1 of the Russian Tax Ministry may not have appointed counter audits within the framework of the audit conducted by the Russian Tax Ministry. **Subsequently, Resolution No. 47/395 dated December 8, 2003 about conducting a counter audit is unlawful and causes no legal consequences for taxpayers specified therein. Evidence obtained in breach of the law may not be admitted by the court (paragraph 3 Art. 64 of the RF Arbitration Procedures Code).**

Besides, the aforesaid Resolution does not specify in connection with which taxpayer an in-house or field tax audit is conducted. The tax authority fails to specify exactly what documents related to activities performed by the audited taxpayer shall be presented by the aforesaid third parties.

Specification of OAO NK YUKOS among the list of third parties subject to a counter audit enables to conclude that in this particular case the Inter-regional Inspection for Major Taxpayers No. 1 of the Russian Tax Ministry conducts a field (in-house) audit of another taxpayer, different from OAO NK YUKOS, that maintains commercial relations with organizations set out in the list. Such assumption enables to conclude that inclusion of the counter audit results in the Resolution is unlawful as such information may not be considered as the one pertaining to a conducted audit and activities of the audited taxpayer.

**8.2. Breaching the procedure for conducting repeated field tax audits.**

Tax authorities shall be prohibited from carrying out repeated field tax audits in respect of the same taxes which are payable or paid by the taxpayer (levy payer) for a tax period which has been audited, except,

- Where such audit is carried out in connection with the re-organization or liquidation of a taxpayer - organization (levy payer - organization)
- Or by a higher tax authority by way of checking the activities undertaken by the tax authority that carried out the audit.

In such instance, under the field tax audit act No. 08-1/1 dated 29 December, 2003, the tax audit was conducted on the basis of Resolution of the Russian Tax Ministry No. 14-3-05/3239-1 dated December 8, 2003 in order to control activities undertaken by the Inspection of the Russian Tax Ministry for Nefteyugansk.

The Inter-regional Inspection No. 1 of the Russian Tax Ministry that adopted a Resolution about conducting a counter audit of the aforesaid organizations is not deemed to be higher authority for the Inspection of the Russian Tax Ministry for Nefteyugansk that is currently being controlled. Subsequently, the incorporation in the field tax audit act of OAO NK YUKOS of results of conducted counter audits under the Resolution of the Inter-regional Inspection No. 1 of the Russian Tax Ministry is unlawful. **Conclusions of the tax authority specified in the Resolution and based on materials (evidence) obtained in the course of counter audits are also unlawful.**

**8.3. Decision in connection with a taxpayer may not be adopted in accordance with results of a repeated audited conducted by a superior tax authority.**

Article 87 of the RF Tax Code grants a right to tax authorities to conduct a repeated audit. However, such right of the tax authority is directly linked with the subject of the repeated audit. Under part 3 Art. 87 of the RF Tax Code "it is prohibited *to conduct by the tax authorities of repeated field tax audits in respect of the same taxes subject to the payment or paid by the taxpayer (levy payer) for the already audited tax period, expect instances, when such audit is conducted ... by* **a superior tax authority by way of checking the activities undertaken by the tax authority that conducted the audit"**.

Subsequently, the subject of the repeated audit is deemed to be the control over activities of the **lower tax authority**. A decision adopted in accordance with results of control measures may not fall out of the scope of the controlled subject. Thus, conclusions made in accordance with results of the audit conducted in aforesaid circumstances shall be made in relation to the Inspection of the Russian Tax Ministry that controls the Claimant. In other words, it is not the taxpayer that shall be held liable, but rather officials of the lower tax authority.

Any rights of the state agency are exercised within the scope of objectives and functions of this authority. This is recommended by the practice of dispute resolution by The Presidium of the Supreme Arbitration Court of the Russian Federation. For instance, in Resolution dated 9 July, 1996 No. 7127/95 the RF Supreme Arbitration Court (***Appendix 10***) specified that the tax police may not impose sanctions for the violation of exchange legislation as it "falls out of the scope of its objectives related to disclosure, *prevention and elimination of tax violations and offences"*. The Federal Arbitration Court of the Urals okrug in its Resolution dated December 3, 1997 on case No. Φ09-666/97-AK (***Appendix 11***) also stated that tax authorities may exercise their right to bring an action in court only if they are acting within the scope of their functions. **Art. 87 of the RF Tax Code specifies that the function of the superior tax authority conducting a repeated audit is deemed to be a control over activities performed by a lower organization.** Subsequently, a right of the superior tax inspection to adopt a decision on the basis of results of a repeated audit may not exceed the scope of its functions, i.e. **on the basis of results of such**

**audit a decision is adopted in connection with a controlled inspection rather than a taxpayer.**

All of the above is supported by Art. 9 of the Law of the Russian Federation "On Tax Authorities of the Russian Federation" in connection with which "superior tax authorities may cancel decisions of lower tax authorities if they violate the Constitution of the Russian Federation, *federal laws and other legal and regulatory acts of the Russian Federation".* **Superior tax authorities do not have a right to adopt a decision replacing the one adopted by a lower inspection.**

Thus, adoption of the decision about the charged taxes, **penalties and default interest in accordance with the results of the audit conducted in order to control activities of the tax inspection contradicts Art. 87 of the Russian Tax Code and Art. 9 of the Law of the Russian Federation "On Tax Authorities".**

This conclusion was supported by court practice. For instance, in its Resolution dated 29 November, 2000 on case No. KA-A40/5380-00 (*Appendix 12*) the Federal Arbitration Court of the Moscow okrug declared invalid the decision of the tax authority disputed by the taxpayer claiming that it was adopted" not on the basis of materials obtained in the course of the audit of the taxpayer, *but rather on the basis of results of the examination of the Inspection performed by a superior authority which contradicts Articles 88, 100 and 101 of the Russian Tax Code".*

### 8.4. Decision of the tax authority is not based on the audit act and evidence obtained in the course of the audit.

Under paragraph3 Art 101 of the Russian Tax Code a decision shall specify tax offence circumstances the way they were established by the conducted audit, documents and other information that support such circumstances.

In such instance, paragraph 1, 7 Art. 32, Art. 100 of the RF Tax Code obligate tax authorities to document all circumstances disclosed in the course of the audit in the audit act and submit this act to the taxpayer. These articles grant a right to the taxpayer to provide its objections to the audit act.

Subsequently, a decision shall be based on those circumstances, documents and information that were established in the course of the audit, documents in the audit act and disclosed to the taxpayer prior to the adoption of a decision so that the taxpayer could submit its objections.

**But, the Resolution contains information that is lacking in the audit act and thus, may not constitute a subject of the taxpayer's objections.** The aforesaid is supported by the following:

- Additional VAT accrual under the Resolution (14 043 369 356 RUR) exceeded the disclosed outstanding VAT under the Act (14 017 533 788 RUR.)
- Additional accrual of the property tax under the Resolution (83 820 701 RUR) exceeded the disclosed outstanding tax under the Act (83 611 001 RUR.)
- Additional accrual of the tax on POL sales under the Resolution (7 509 019 173 RUR) exceeded the disclosed outstanding tax under the Act (7 501 945 010 RUR.)
- Additional accrual of the profits tax under the Resolution (20 001 319 996 RUR.) exceeded the disclosed outstanding tax under the Act (19 085 735 662 RUR.).

On January 28, 2004 Deputy Minister of the Russian Federation for Taxes and Levies adopted Resolution No. 14-0-05/300 "On additional tax control measures".

Under tax control measures one should understand acts of tax authorities stipulated in Chapter 14 of the RF Tax Code that shall be executed in full compliance with corresponding rules of the aforesaid chapter. It means that under the results of such control measures and prior to the adoption of the Resolution on which the tax authority bases its demands hereunder one

shall execute another act. The taxpayer shall be given an opportunity to see the aforesaid act and provide its objections, if any. However, it was not done in this case.

Under Article 101.6 of the Tax Code of the Russian Federation, any failure by tax officers to comply with the requirements of the above Article may constitute grounds for invalidation of any Resolution of the tax authority by a higher tax authority or court.

This fact means a serious violation of the taxpayer's rights protection guarantees, including a taxpayer's rights to file objections.

As noted by the Presidium of the Supreme Arbitration Court in Clause 11 of Information Letter No. 71 of March 17, 2003 "Review of Arbitration Practice in Resolution of Cases Related to Enforcement of Certain Provisions of Part I of the Tax Code of the Russian Federation":

*" Adoption by the claimant [the tax authority] of an initial Resolution to take additional tax control measures evidences the fact that having reviewed **the audit materials** with due regard to Claimant's objections, it does not **consider** them **sufficient** to make a Resolution either to initiate or deny initiation of proceedings against the company for breaching tax legislation."*

**Taking into account the position of the Supreme Arbitration Court of the Russian Federation, the Resolution is not based on the tax audit materials, constitutes a gross violation of Articles 21, 32, 40, 100 and 101 of the Tax Code and is illegitimate.**

This position is supported by the Federal Arbitration Court of the Moscow Okrug, which declared in Resolution of October 18, 2002 re: Case No. KA-A40/7042-02 (***Appendix 13***) as follows:

*"Furthermore, under Article 101.3 of the Tax Code of the Russian Federation, any Resolution to hold a tax payer liable for breaching tax legislation shall detail the facts of the offence as ascertained by the conducted tax audit, documents and other information in evidence of the facts.*

*By virtue of the above, any facts ascertained through additional tax control measures following Resolution No. 168 of October 11, 2001 [to take additional measures] made by the tax authority may not be used in making a Resolution to take action for a tax offence based on the findings of the field tax audit.*

*Proceeding from the above, the courts of the first and second instances have justly invalidated the Resolution of the Tax Inspectorate. "*

Absence in the Resolution of the tax authority of any description of the facts of the tax offence committed by the tax payer <u>as ascertained by the conducted tax audit</u>, in violation of Article 101.3 of the Tax Code of the Russian Federation, in judicial practice constitutes the ground for invalidation of such Resolution (Resolutions of the Federal Arbitration Court of the Moscow Okrug dated October 13, 2003 re: Case No. KA-A41/7846-03, dated July 2, 2003 re: Case No. KA-A40/4407-03, and dated March 11, 2002 re: Case No. KA-A40/1138-02 – *Appendix 14*).

In Clause 30, Resolution No. 5 of February 28, 2001, the Plenary Session of the Supreme Arbitration Court of the Russian Federation highlighted that in each particular case, the court assesses the nature of violations committed by a tax officer and their impact on the legitimacy and validity of the Resolution made.

**Given the fact that the Resolution is not based on the Tax Audit Act, it cannot be declared lawful as otherwise it would mean substitution by the arbitration court of tax audit functions to issue legitimate and valid resolutions under Article 65 of the Administrative and Procedural Code of the Russian Federation and would violate tax payer rights guaranteed by Articles 21 and 22 of the Tax Code of the Russian Federation** (Resolution of the Federal Arbitration Court of the Moscow Okrug of July 27, 2001 re: Case No. KA-A41/3835-01 – *Appendix No. 15*).

### 8.5. Violation of the Price Control Procedure (Article 40 of the Tax Code of the Russian Federation)

Page 2 of the Resolution of the tax authority reads that "undercharged" or "nominal" prices are used for the above transactions with the above parties.

Article 40 of the Tax Code of the Russian Federation provides an exhaustive list of cases when tax authorities have the right to check applied prices when conducting a tax audit.

Thus, when exercising control over tax calculation completeness, tax authorities may check applied prices only with respect to:

1) transactions among affiliated persons;

2) commodity exchange (barter) operations;

3) foreign trade operations; and

4) in case of upward or downward deviation exceeding 20% against the price rates applied by the tax payer to identical (homogeneous) goods (work and/or services) within a short time period.

**The Resolution fails to designate the grounds on which the tax authority has audited the prices applied by the tax payer. Therefore, in this case, such control is deemed to be unlawful.**

The inadmissibility of the application of the rules under Article 40 of the Tax Code of the Russian Federation without valid grounds is, in particular, stated in Resolution No. 41/9 of the Plenary Session of the Supreme Court of the Russian Federation of June 11, 1999 "On Some Issues Related to Enactment of Part I of the Tax Code of the Russian Federation". The highest judicial instances have shown that in resolution of disputes related to pricing of goods, work and/or services for taxation purposes, courts should proceed from the fact that the transaction price quoted by the parties may be contested by tax authorities only in cases listed in Article 40.2 of the Tax Code of the Russian Federation. This fact is also systematically highlighted by federal arbitration courts.

Besides, under Article 40 of the Tax Code of the Russian Federation, there are three ways to define the transaction price for tax control purposes, which may be applied only sequentially:

• method of sales price for identical (homogeneous) goods (work and/or services);

• method of subsequent sales price; and

• cost method.

**The Resolution fails to designate, which pricing method for goods (work and/or services) was applied by the tax authority, and what sources of information were used.**

It should be noted that Article 40.1 of the Tax Code establishes a presumption that applied prices correspond to market prices until proven otherwise. The tax authority may prove maladjustment of prices only in accordance with the procedure set out by Article 40 of the Tax Code. **Since the tax authority has only declared the fact that the applied prices were not adjusted to market prices but failed to apply the procedure envisaged under Article 40 of the Tax Code of the Russian Federation, <u>the presumption that applied prices correspond to market prices has not been rebutted.</u>**

<u>Given the circumstances, the conclusion that the prices were undercharged or nominal contained in the Resolution is completely unlawful and unsubstantiated. The tax authority must rebut the presumption that applied prices correspond to market prices strictly in compliance with Article 40 of the Tax Code of the Russian Federation based on admissible evidence defined by Article 40 of the Tax Code of the Russian Federation.</u>

Furthermore, if after any price audit, it is ascertained that the applied prices are maladjusted, the tax authority may issue a motivated Resolution to charge extra taxes and penalties calculated as if the outcome of that transaction were assessed on the bases of application of market prices for respective goods, work or services (Article 40.4 of the Tax Code of the Russian Federation). *This means that in such case, the tax payer may not be held liable for a tax offence.*


**9. Unsubstantiated claims of affiliation of third parties with OAO NK YUKOS and illegitimate use of tax benefits by third parties.**

**9.1. Use of tax benefits by third parties registered in Trekhgorny.**

To prove the illegitimacy of the use of tax benefits by OOO Greis, OOO Nortex, OOO Kverkus, OOO Muskron, OOO Korlein, and OOO Plast, the tax authorities claim that the operations of said tax payers fail to comply with the requirements of Article 5 of Law of the Russian Federation No. 3297-1 of June 14, 1992 "On a Closed Administrative and Territorial Unit".

Under Article 5 of said Law (as amended in the audited period), additional tax benefits are granted by the respective local self-governance bodies to entities registered as tax payers with the tax authorities of closed administrative and territorial units in accordance with that Law. Such benefits are granted to entities owning at least 90 percent of their fixed assets and carrying out at least 70% of their operations in the area of the respective closed administrative and territorial units (among other things, at least 70% of the headcount of such entities must be permanent residents of the respective closed administrative and territorial unit and at least 70% of the payroll fund must be paid to the staff permanently residing in the respective administrative and territorial unit.)

Therefore, the principal criteria for possible use of tax benefits in closed administrative and territorial units (ZATO) are:

- registration with ZATO tax authorities;

- location of 90% of fixed assets in ZATO;

18

- conduct of 70% of operations in ZATO (including permanent residence of 70% of employees in ZATO accounting for at least 70% of the payroll fund.)

The tax authority confirms the fact of lawful registration of OOO Greis, OOO Nortex, OOO Kverkus, OOO Muskron, OOO Kolrein, OOO Plast with the tax authorities in ZATO Trekhgorny.

In the Resolution, the tax authorities did not disprove the fact of location of 90% of the fixed assets of the above companies in the area of ZATO. The tax authority only designated the book value of the fixed assets recorded in the balance sheets of the respective companies. Thus, according to the Resolution,

the value of the fixed assets of OOO Nortex is RUR 36,534, and the staff on the payroll is 4 people;

the value of the fixed assets of OOO Muskron is RUR 279,055 and the staff on the payroll is 7 people; and

the value of the fixed assets of OOO Kolrein is RUR 112,800 and the staff on the payroll is 3.5 (3 people reside in ZATO.)

The tax authority concludes that the above companies allegedly do not have any equipment to purchase or store oil products. However, according to the Resolution, the core business of the designated legal entities is trading and procurement. The Resolution does not give any breakdown of the available fixed assets. Besides, the tax authority has failed to designate whether there was any rented property. According to the accounting rules (applied by the tax authority) rented property is not included in the proprietary fixed assets. Among such equipment, there may have been equipment designated for oil storage, for example tank cars.

If the trading and procurement organizations listed in the Resolution sold oil products "off-the-wheels" no special-purpose equipment is required. Only appropriate communication facilities and general office equipment are required for such operations. This is confirmed by the text of the Resolution which reads that the above-listed trading organizations did not store oil. Trading operations without transfer of the title to the buyer/seller are not prohibited by effective laws.

The tax authority does not disprove the fact that more than 70% of the staff permanently reside in ZATO Tekhgorny and that their wages and salaries account for more than 70% of the payroll fund.

**Therefore, the conclusion that OOO Greis, OOO Nortex, OOO Kverkus, OOO Muskron, OOO Kolrein, and OOO Plast registered in Trekhgorny used the tax benefits unlawfully <u>has not been proven</u> by the tax authority.**

### 9.1.1. Affiliation of third parties registered in Trekhgorny with OAO NK YUKOS.

The Resolution concludes that OOO Nortex, OOO Kverkus, OOO Muskron, OOO Kolrein and OAO NK YUKOS are affiliated. This conclusion was based on the following:

&ndash; OOO Greis, OOO Nortex, OOO Kverkus, OOO Muskron, and OOO Kolrein have accounts opened with banks affiliated with OAO NK YUKOS;

19

&ndash;  OOO Greis, OOO Nortex, OOO Kverkus, OOO Muskron and OOO Kolrein are affiliated with each other as their founder is OOO Trigor;

&ndash;  OOO Nortex was registered on March 15, 2001 by consolidation with OOO Greis, OOO Kverkus, OOO Muskron, OOO Flander, OOO Kolrein, and OOO Algebra;

&ndash;  OOO Ratmir is affiliated with OAO NK YUKOS;

&ndash;  Accounting is maintained by a company affiliated with OAO NK YUKOS;

&ndash;  OOO Greis, OOO Nortex, OOO Kverkus, OOO Muskron and OOO Kolrein had business relations (sale and purchase of oil products) with companies affiliated with OAO NK YUKOS.

**A.** The tax authority specified that OOO Nortex, OOO Kverkus, OOO Muskron, OOO Kolrein opened accounts with banks affiliated with OAO NK YUKOS:

1.  AKB DiB (Moscow);

2.  Bank Menatep SPB (St. Petersburg); and

3.  KB Solidarnost (Samara).

Firstly, the above banks are not affiliated with OAO NK YUKOS. The tax authority has failed to specify any features of affiliation, which it has identified among those entities.

Secondly, the tax authority has failed to specify in the Resolution how any affiliation among banks servicing third parties' accounts and OAO NK YUKOS may lead to affiliation of such third parties with OAO NK YUKOS.

Under Article 20 of the Tax Code of the Russian Federation, any persons may be declared affiliated, if the relations among such persons may affect the outcome of any goods (work or services) marketing transactions. Therefore, to prove affiliation, the tax authority must show a possible impact of the affiliation on transaction results, *i.e.*, in this particular case, the influence of OAO NK YUKOS on third parties' transactions through existing banking relations must be evidenced, which the tax authority has failed to do either in the Resolution or in the Act.

**As noted above, no bank is authorized to limit or impose any terms and conditions defining the use by any client of any funds on its accounts unless otherwise provided by law or the relevant bank account agreement.  The existence of any such agreements has not been proven.  For the same reason, the argument of the tax authority that the fact of opening accounts with the banks is the proof of the affiliation cannot be taken into consideration.**

**B.** The tax authority has stated that OOO Nortex, OOO Kverkus, OOO Muskron, and OOO Kolrein are affiliated since their founder is OOO Trigor.  However, according to the Resolution, OOO Trigor participatory interest was as follows:

OOO Nortex: prior to June 16, 2000 – 5%;

OOO Greis: prior to June 16, 2000 – 5%;

OOO Kverkus: prior to June 13, 2000 – 5%;

20

OOO Muskron: prior to April 7, 2000 – 5%;

OOO Kolrein: prior to June 16, 2000 – 5%; and

OOO Plast: prior to June 14, 2001– 5%.

Under Article 20.2 of the Tax Code of the Russian Federation, any persons may be declared affiliated if the relations between such persons may affect the outcome of goods (work or services) marketing transactions.

The tax authority has failed to specify in what particular way OOO Trigor's 5% interest in the above entities using tax benefits provided by law may affect the outcome of goods (work or services) marketing transactions among them or their transactions with any other persons.

Furthermore, the tax authority has failed to specify how OOO Trigor's 5% interest may be viewed as affiliation of OOO Nortex, OOO Kverkus, OOO Muskron, OOO Kolrein, OOO Plast with **OAO NK YUKOS.**

**C.** The tax authority referred to OOO Nortex reorganization by consolidation with OOO Greis, OOO Kverkus, OOO Muskron, OOO Flander, OOO Kolrein, and OOO Algebra on March 15, 2001 as a proof of the affiliation among the third parties and OAO NK YUKOS.

However, under Resolution No. 14-3-05/3239-1 of December 8, 2003, the OAO NK YUKOS tax audit was conducted for the period from January 1, 2000 until January 1, 2001. **Therefore, the information regarding consolidation of third parties in 2001 cannot be relevant to the tax audit of OAO NK YUKOS and is not related to the audited period.**

Besides, the tax authority has failed to specify in what particular way the subsequent consolidation may be viewed as affiliation among OOO Nortex, OOO Kverkus, OOO Muskron, OOO Kolrein, OOO Plast and **OAO NK YUKOS in 2000.**

**D**. To prove the affiliation of the third parties with OAO NK YUKOS the tax authority proceeded from the fact that OOO Ratmir is affiliated with OAO NK YUKOS.

It must be noted that notwithstanding the fact that OOO Ratmir became affiliated with OAO NK YUKOS after the end of 2000, however, no such affiliation existed in the audited period. The conclusion of the tax authority regarding the affiliation between that company and OAO NK YUKOS during the audited period (2000) is unsubstantiated. The tax authority has failed to show on what grounds OAO NK YUKOS could influence the terms and conditions of OOO Ratmir transactions in 2000.

The tax authority has also failed to specify in what particular way the relations between OOO Ratmir and the above entities using tax benefits provided by law could affect the outcome of goods (work and services) marketing transactions among themselves and their transactions with other parties.

**E.** To prove the affiliation between OOO Nortex and OAO NK YUKOS, the tax authority proceeded from the fact that OOO Nortex accounting was maintained by OOO YUKOS-Invest, an affiliate of OAO NK YUKOS.

As noted above, under Article 20 of the Tax Code of the Russian Federation, any persons may be declared affiliated, if relations between such persons may affect the outcome of goods (work or services) marketing transactions.

21

However, the tax authority has failed to specify how a specialized accounting company could affect the results of any transactions executed by its client. Under the Law on limited liability companies, day-to-day management of a company is exercised by its bodies who may generally make Resolutions regarding the terms and conditions of any transactions to be made. Accountants do not belong to such bodies.

**F.** The tax authority has declared that OOO Nortex, OOO Kverkus, OOO Muskron, and OOO Kolrein  have business relations (purchase and sale of oil products) with OAO NK YUKOS affiliates:

OOO YUKOS –M Trading House;

ZAO YUKOS PM;

OAO Kuibyshev Refinery;

OAO Syzran Refinery;

OAO Novokuibyshev Refinery; and

OOO YUKOS-Invest.

Under Article 20 of the Tax Code of the Russian Federation, any persons may be declared affiliated, if relations between such persons may affect the outcome of goods (work or services) marketing transactions.

The tax authority has also failed to specify in what particular way the affiliation of the above companies with OAO NK YUKOS could affect the outcome of transactions made by the entities using tax benefits provided by law.

**Therefore, the tax authority has failed to prove the affiliation of OOO Nortex, OOO Kverkus, OOO Muskron, and OOO Kolrein with <u>OAO NK YUKOS</u> in 2000.**

### 9.1.2.   Invalid conclusion regarding OAO NK YUKOS Tax Evasion.

Resolution claims that **OOO Nortex, OOO Kverkus, OOO Muskron, and OOO Kolrein** are affiliated, in particular, with the following entities:

OOO Trigor;

OOO YUKOS –M Trading House;

ZAO YUKOS PM;

OAO Kuibyshev Refinery;

OAO Syzran Refinery;

OAO Novokuibyshevsk Refinery; and

OOO Yukos-Invest.

However, it was concluded that it was OAO NK YUKOS who understated the tax amounts. It is obvious though that, such a conclusion (assuming that such approach is at all legitimate) would have been more logical with respect to the persons affiliated with OOO Nortex, OOO Kverkus, OOO Muskron, OOO Kolrein, and OOO Plast by law (Article 20 of the Tax Code of the Russian Federation, Article 106 of the Civil Code of the Russian Federation) – OOO Trigor and the companies' directors. The conclusion regarding the affiliation of those companies with OAO NK YUKOS cannot prove the conclusion that OAO NK YUKOS understated tax amounts as all the above persons had far better opportunities to affect the terms and conditions of transactions compared to OAO NK YUKOS.

Furthermore, the Resolution concludes that OAO NK YUKOS *evaded taxes on production, refining and sales of oils and oil products*. However, **OAO NK YUKOS** did not produce, refine or sell crude or oil products. Therefore, the Tax Ministry's conclusion is not true to fact.

**Similarly, OAO NK YUKOS did not act as oil purchase and refining commission agent or a merchandize agent for oil product sales in the domestic market on behalf of the companies designated herein.**

### 9.2. Use of tax benefits by third parties registered in Lesnoi.

#### 9.2.1. Invalid conclusion regarding unlawful use of benefits.

To prove the unlawful use of tax benefits by OOO Staf, OOO Mitra, OOO Wald-Oil, and OOO Business Oil, the tax authority claims that the operations of said tax payers do not comply with the requirements set out in Article 5 of Law of the Russian Federation No. 3297-1 of July 14, 1992 "On a Closed Administrative and Territorial Unit".

Under Article 5 of the above Law (as amended in the audited period), additional tax benefits are granted by the respective local self-governance bodies to entities registered as tax payers with the tax authorities of closed administrative and territorial units in accordance with this Law. Such benefits are granted to entities owning at least 90 percent of their fixed assets and carrying out at least 70% of their operations in the area of the respective closed administrative and territorial units (among other thing, at least 70% of the headcount of such entities must be permanent residents of the respective closed administrative and territorial unit and at least 70% of the payroll fund must be paid to the staff permanently residing in the respective administrative and territorial unit.)

Therefore, the principal criteria for the possibility to use tax benefits in closed administrative and territorial units (ZATO) are:

- registration with ZATO tax authorities;

- location of 90% of fixed assets in ZATO;

- conduct of 70% of operations in ZATO (including permanent residence of 70% of employees in ZATO accounting for at least 70% of the payroll fund.)

The tax authority confirms the fact of lawful registration of Wald-Oil (and other companies registered in ZATO Lesnoi) with the tax authorities in ZATO Lesnoi.

23

It the Resolution, the tax authority does not disprove the fact that 90% of the fixed assets of the above-listed companies are located in the ZATO area.

The tax authority comes to the conclusion that the above companies allegedly do not have any equipment to purchase or store oil products. However, according to the Resolution, the core business of the designated legal entities is trading and procurement. The Resolution does not give any breakdown of the available fixed assets. Besides, the tax authority has failed to designate whether there was any rented property. According to the accounting rules (applied by the tax authority), rented property is not included in the proprietary fixed assets. Among such equipment, there may have been equipment designated for oil storage, for example tanks cars.

If the trading and procurement organizations listed in the Resolution sold oil products "off-the-wheels", no special-purpose equipment is required. Only appropriate communication facilities and general office equipment are required for such operations. This is confirmed by the text of the Resolution which reads that the above-listed trading organizations did not store oil. Trading operations without transfer of the title to the buyer/seller are not prohibited by effective laws.

The tax authority does not disprove the fact that over 70% of the staff permanently reside in ZATO Lesnoi and that their wages and salaries account for more than 70% of the payroll fund.

### 9.2.2.   Invalid introduction of an additional criterion for application of benefits.

The Resolution actually adds an additional criterion for the possibility to use benefits, and namely, implementation of Lesnoi social and economic programs.

Under Article 56 of the Tax Code of the Russian Federation, tax benefits are deemed to be privileges granted to specific categories of payers of taxes and duties in accordance with tax legislation as compared to other payers of taxes and duties, including a possible tax exemption or deduction.

Therefore, the exhaustive list of conditions of the use of tax benefits is defined by *tax legislation*. Under Article 1.4 of the Tax Code of the Russian Federation, the legislation of the constituent entities of the Russian Federation on taxes and duties is composed of laws and other regulations on taxes and duties of the constituent entities of the Russian Federation adopted in accordance with the Tax Code.

The tax authority treats a possible purpose of the adoption of the law as a condition for the use of tax benefits. However, such purpose does not follow either from the wording of the Law or any other regulation. At the same time, **the Law contains an exhaustive list of conditions for granting benefits to specific categories of tax payers.**

Besides, even assuming a contradiction between the purpose of the law referred to by the tax authority and Article 5 of the Law on ZATO, which specified the conditions of the use of benefits, then under the rules of interpretation of laws, the content of specific norms rather than the grounds for adoption of the relevant law must be given precedence.[2]

---

[2] E. Vaskovsky. Law Interpretation and Enforcement Guidance.

### 9.2.3.   Invalid conclusion regarding non-compliance with the additional criterion of raising capital and strengthening the economic potential of ZATO Lesnoi

In its Resolution, the tax authority has failed to specify how it has concluded that the above companies failed to implement Lesnoi social and economic programs and violated the terms and conditions of the existing agreement among the companies and the Administration of Lesnoi.

Therefore, even accepting the additional criterion for the use of the benefits, it is impossible to see from the text of the Resolution how far the conclusion by the tax authority that the tax payer failed to meet the criterion is substantiated.

**Therefore, the conclusion made by the tax authority that OOO Staf, OOO Mitra, OOO Wald-Oil, and OOO Business-Oil registered in Lesnoi unlawfully used tax benefits is <u>unsubstantiated.</u>**

### 9.2.4.   Affiliation of third parties registered in Lesnoi with OAO NK YUKOS.

The Resolution concludes that OOO Staf, OOO Mitra, and OOO Wald-Oil are affiliated with OAO NK YUKOS.  The tax authority based its conclusion on the following:

- –   OOO Staf, OOO Mitra, and OOO Wald-Oil opened accounts with banks affiliated with OAO NK YUKOS;

- –   OOO Staf, OOO Mitra, and OOO Wald-Oil are affiliated because their founder is OOO Spetsproekt; and

- –   OOO Staf, OOO Mitra, and OOO Wald-Oil had business relations (purchase and sale of oil products) with companies affiliated with OAO NK YUKOS.

**A.** The tax authority declared that OOO Staf, OOO Mitra, and OOO Wald-Oil opened accounts with banks affiliated with OAO NK YUKOS:

1.   AKB DiB (Moscow) (later renamed as OAO Trust Investment Bank); and

2.   Menatep SPB (St. Petersburg).

Firstly, the above banks are not affiliated with OAO NK YUKOS. The tax authority has failed to specify any features of affiliation among those entities identified by it.

Secondly, the tax authority has failed to specify in the Resolution how any affiliation among banks servicing third parties' accounts and OAO NK YUKOS may lead to affiliation of such third parties and OAO NK YUKOS.

Under Article 20 of the Tax Code of the Russian Federation, any persons may be declared affiliated, if relations among such persons may affect the outcome of any goods (work or services) marketing transactions.  Therefore, to prove affiliation, the tax authority must show the possible impact of such relations on transaction results, *i.e.*, in this particular case, the influence of OAO NK YUKOS on third parties' transactions through existing banking relations must be evidenced.

**As noted above, no bank is authorized to limit or impose any terms and conditions defining the use by any client of any funds on its accounts unless otherwise provided by law**

**or the relevant bank account agreement.  The existence of any such agreements has not been proven.   For the same reason, the argument of the tax authority that the fact of opening accounts with the banks is a proof of the affiliation cannot be taken into consideration.**

**B.** The tax authority claimed that OOO Staf, OOO Mitra and OOO Wald-Oil are affiliated because their founder is OOO Spetsproekt.   However, according to the Resolution, the participatory interest of OOO Spetsproekt was as follows:

OOO Staf – 5%;

OOO Mitra – 5% and

OOO Wald-Oil – 5%,

Under Article 20.2 of the Tax Code of the Russian Federation, any persons may be declared affiliated for taxation purposes, if relations between such persons may affect the outcome of goods (work or services) marketing transactions.

The tax authority has failed to specify in what particular way OOO Spetsproekt 5% interest in the above entities using tax benefits provided by law may affect the outcome of goods (work or services) marketing transactions among them or their transactions with any other persons.

Furthermore, **the tax authority has failed to specify how OOO Spetsproekt 5% interest may be viewed as affiliation among OOO Staf, OOO Mitra, OOO Wald-Oil** and **OAO NK YUKOS.**

C. The tax authorities have claimed that OOO Staf, OOO Mitra and OOO Wald-Oil had business relations (purchase and sale of oil products) with OAO NK YUKOS affiliates:

OAO Angarsk Petrochemical Company;

OAO Achinsk Refinery; and

OAO Angarsk Polymer Plant.

Under Article 20.2 of the Tax Code of the Russian Federation, any persons may be declared affiliated if relations between such persons may affect the outcome of goods (work or services) marketing transactions.

The tax authority has failed to specify in what particular way the above fact affected the outcome of any transactions made by the entities using tax benefits provided by law.

**Therefore, the tax authorities have failed to prove any affiliation of OOO Staf, OOO Mitra, OOO Wald-Oil and OOO Business Oil with <u>OAO NK YUKOS</u> in 2000.**

**9.2.5.    Invalid conclusion about tax evasion by OAO NK YUKOS.**

In its Resolution, the tax authority claims that **OOO Staf, OOO Mitra, and OOO Wald-Oil** are affiliated, in particular, with the following entities:

OOO Spetsproekt;

OAO Angarsk Petrochemical Company;

OAO Achinsk Refinery; and

OAO Angarsk Polymer Plant.

However, it is concluded that it was OAO NK YUKOS who understated tax amounts.  It is obvious though that such conclusion (assuming that such approach is at all legitimate) would have been more logical with respect to persons affiliated with OOO Staf, OOO Mitra, and OOO Wald-Oil by law (Article 20 of the Tax Code of the Russian Federation, Article 106 of the Civil Code of the Russian Federation) – OOO Spetsproekt and the companies' directors.  The conclusion regarding the affiliation of those companies with OAO NK YUKOS cannot prove the conclusion that OAO NK YUKOS understated tax amounts as all the above persons had far better opportunities to affect the terms and conditions of transactions compared to OAO NK YUKOS.

Furthermore, the Resolution concludes that OAO NK YUKOS *evaded taxes on production, refining and sales of oil and oil products*. However, **OAO NK YUKOS <u>did not produce, refine or sell crude or oil products</u>**. Therefore, the Tax Ministry's conclusion is not true to fact.

### 9.3. Use of tax benefits by a third party registered in the Republic of Kalmykia.

#### 9.3.1. Invalid conclusion of unlawful use of allowances.

As stated in the Resolution of the Tax Ministry of the Russian Federation, OOO Siberian Transport Company (STC) used the following tax allowances in 2000:

- profit tax (subject to allocation to the budget of the Republic of Kalmykia);

- road tax; and

- housing and utilities maintenance tax.

The tax authority has agreed that OOO STC used the tax allowances pursuant to Law No. 12-II-3 of the of the Republic of the Republic of Kalmykia dated March 12, 1999 as an investor in the economy of the Republic of Kalmykia.  Under that Law, tax allowances are granted to a tax payer who meets the following criteria:

1. the tax payer is not a subsoil user in the Republic;

2. the tax payer is registered with the Ministry of Investment Policy of the Republic of Kalmykia as a company investing in the economy of the Republic of Kalmykia;

3. the company's investments meet the criteria set by the Ministry of Investment Policy of the Republic of Kalmykia in accordance with that Law.

The Resolution of the Tax Ministry does not disprove the fact that OOO STC meets all the requirements set out in the Law.

At the same time, the Resolution actually adds an additional criterion for possible use of tax allowances – compatibility of the amount of allowances granted and the amount of investments in the economy of the Republic of Kalmykia.  In the opinion of the Claimant, setting additional requirements other than those provided by tax legislation is illegitimate.

27

Under Article 56 of the Tax Code of the Russian Federation, tax benefits are deemed to be privileges granted to specific categories of payers of taxes and duties provided by tax legislation as compared to other payers of taxes and duties, including a possible tax exemption or deduction.

Therefore, the exhaustive list of conditions of the use of tax benefits is defined by *tax legislation*. Under Article 1.4 of the Tax Code of the Russian Federation, the legislation of the constituent entities of the Russian Federation on taxes and duties is composed of laws and other regulations on taxes and duties of the constituent entities of the Russian Federation adopted in accordance with the Tax Code, *i.e.*, enforcement legislation may not define conditions of the use of tax benefits (Resolutions of the Federal Arbitration Court of the North Caucasian Okrug regarding specific cases cited by the tax authority.)

### 9.3.2. Unjustified conclusion about the violation of the additional criterion of investments proportionality

Besides, the tax authority in its Resolution failed to specify what was the amount in which it calculated investments in the economy of the Republic of Kalmykia because in order to make a conclusion about the non-proportionality of obtained benefits and investments it is important at least to determine what the size of investments was. The Resolution fails to specify the method utilized for the calculation of investments made in the economy of the Republic of Kalmykia. Thus, even if one agrees to apply an additional criterion for the utilization of the benefit, it is impossible to understand from the text of the Resolution how well justified is the conclusion made by the tax authority that this criterion was not met by the taxpayer.

### 9.3.3. Unjustified conclusion about the lack of any operations in the territory of the Republic of Kalmykia.

The tax authority specified the following in order to prove the fictitious nature of operations conducted by OOO STK:

- The aforesaid company had no material resources required for trading and procurement operations in the territory of the Republic of Kalmykia;
- OOO STK had no persons in Elista that were responsible for the accounting and tax reporting functions;
- Directors are registered outside of the Republic of Kalmykia;
- During the examination of the premises located at the registered address of OOO STK in the year 2003 no company under the name of STK was found there.

**A.** The tax authority in order to justify conclusions about the unlawful utilization of benefits and non-performance of operations alleges that OOO STK has no equipment required to procure and store oil products. However, as it follows from the Resolution, the core activities of OOO STK include trading and procurement operations. The Resolution does not analyze the composition of available fixed assets. Besides, tax authorities failed to specify if any equipment was leased. Under accounting rules (and accounting information was utilized by tax authorities) leased property is not included in the company's own fixed assets. Such property could have included the equipment designated for the storage of oil, for instance, rail cars.

If trading and procurement organizations named in the Resolution traded oil products "off-the-wheels", no special equipment is required. For such purposes only appropriate telecommunications means and regular office equipment is required. This is confirmed by the text of the Resolution wherein it is stated that the above listed trading organization did not store oil. Trading operations without the transfer of goods into possession of the seller/buyer are not prohibited under current legislation.

28

**B.** The fact of the transfer of the accounting and tax reporting function to a specialized organization does not prove that the company conducted no operations in the Republic of Kalmykia.

Under Art. 54 of the RF Civil Code the location of a legal entity is determined by the place of its state registration. A legal entity is registered with state agencies at the place where its permanent executive body is located, and if a legal entity has no permanent executive body - at the place where any other body or person that may act without a proxy on behalf of the legal entity is located.

Thus, the civil legislation defines the location of a legal entity in accordance with the location of its executive bodies, and the accounting department is not deemed to be an executive body of a legal entity. In other words, a conclusion about the lack of operations of OOO STK in Kalmykia may not be justified by the performance of the accounting function by specialized organizations located outside of the Republic of Kalmykia.

**C.** The fact of the permanent residence of directors of OOO STK outside the territory of Kalmykia does not prove that the company conducted no operations in the Republic of Kalmykia.

Under Art. 3 of the Law of the Russian Federation "On the right of Russian citizens to free movement, choice of where to stay and reside inside the Russian Federation" Russian citizens are obligated to register **at the place where they are staying** and **at the place where they reside** inside the Russian Federation. *The registration itself or any lack thereof may not serve as grounds for the restriction or a condition for exercising rights and freedoms of citizens set forth by the Constitution of the Russian Federation, laws of the Russian Federation, Constitutions and laws of republics constituting the Russian Federation*.

Firstly, the tax authority specified the place of residence of Directors of OOO STK, which does not prove that they did not manage OOO STK in the town of Elista. **Otherwise, all companies should be registered at the place of registration of their general directors.**

Secondly, the tax authority failed to specify if the company's directors were registered in the town of Elista back in the year 2000 at the place where they stayed.

**D.** Unavailability of executive bodies of OOO STK at the registered address in the year 2003 does not prove that they were not located at that address during the audited period, i.e. in the year 2000. Besides, the tax authority failed to attach to the Resolution any premises examination protocol to which it referred. Under such circumstances the conclusion of the tax authority about the fictitious nature of the company's operations in the year 2000 is unmotivated.

### 9.3.4. Unlawful conclusion about the affiliation of OAO NK YUKOS with OOO STK.

The Resolution contains conclusions about the affiliation of OOO STK and OAO NK YUKOS.

Under Art. 20 of the RF Tax Code persons may be recognized to be affiliated, if relations of those parties may influence results of transactions related the sale of goods (works, services). Thus, in order to establish the fact of the affiliation the tax authority shall demonstrate the potential for any influence of said relations on results of the transactions. In other words, in this particular case one shall demonstrate the influence of OAO NK YUKOS on third party transactions through the established banking relations.

**The tax authority failed to specify or prove in the Resolution how on the basis of that indirect information provided in the Resolution, one could establish any potential influence of OAO NK YUKOS on transactions carried out by OOO STK.**

29

### 9.3.5. Unlawful conclusion about tax evasion of OAO NK YUKOS.

In its Resolution the tax authority states that OOO STK is affiliated with the following persons:

Garcia Antonio Valdes (Director of OOO STK);
Tatyana Ivanovna Khokhlova (Director of OOO STK);
ZAO STEP (participant of OOO STK);
A.A. Kolosov (Director of OOO STEP);
AOZT Polinep (participant of OOO STK);
OOO Sonata;
OOO Elbrus;
OOO Yu-Mordovia;
ZAO YUKOS-M;
AOZT Renmet;
OOO Fargoil;
OAO NK YUKOS.

However, a conclusion about the understated taxes is made exactly in connection with OAO NK YUKOS. Though it is obvious that such conclusion (provided it is lawful) would be more logical in connection with persons that are affiliated with OOO STK under current law (Art. 20 of the RF Tax Code, Art. 106 of the RF Civil Code) – ZAO STEP, AOZT Polinep, Garcia Antonio Valdes, T.I. Khokhlova. A conclusion about the affiliation of OOO STK and OAO NK YUKOS may not be the basis of the conclusion about taxes understated by OAO NK YUKOS as all above listed persons had a lot more opportunities to influence terms and conditions of the concluded transactions than OAO NK YUKOS.

Besides, another conclusion was made in the Resolution that OAO NK YUKOS **evades the payment of taxes on production, refining and sale of oil and oil products**. However, OAO NK YUKOS **did not produce, refine or sell oil and oil products**. Subsequently, the conclusion of the Russian Tax Ministry did not reflect the actual circumstances.

### 9.4. Utilization of tax benefits by third parties registered in the Republic of Mordovia.

#### 9.4.1. Unlawful conclusion about the wrongful utilization of benefits.

As it is stated in Resolution of the Russian Tax Ministry OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV, OOO Yu-Mordovia utilized benefits for the following taxes in the year 2000:

- Profits tax (in part paid to the budget of the Republic of Mordovia);
- Property tax;
- Motorway users tax;
- Housing and social amenities maintenance tax.

In such instance, the tax authority agreed that the above organizations utilized benefits in compliance with the Law of the Republic of Mordovia dated 09.03.1999 No. 9-Z and Resolutions of the Saransk Municipal Deputies Council. Pursuant to the aforesaid law tax benefits are granted to taxpayers meeting one of the below criteria:

- Performance of export operations, quarterly revenues wherefrom amounts to at least 15 percent of the total revenues of the organization;
- Wholesale trading of fuels and lubricants and other hydrocarbon raw materials, quarterly revenues wherefrom amounts to at least 70 percent of the total revenues of the organization;
- Other terms and conditions.

The Resolution of the Russian Tax Ministry does not state that the above companies fail to meet such criteria.

In such instance, the Resolution actually introduce additional criteria for the potential utilization of benefits:

- Criterion of the attraction of the capital to Mordovia;
- Criterion of the strengthening of the socio-economic potential of Mordovia.

Under Art. 56 of the RF Tax Code tax and levy benefits are deemed to be privileges over other taxes and levy payers which are provided for by tax and levy legislation and are granted to particular categories of taxpayers and levy payers, including the right not to pay a tax or levy or pay a lesser amount thereof.

Thus, an exhaustive list of terms and conditions for the utilization of tax benefits is set forth by the **tax and levy legislation**. Under paragraph 4 Art. 1 of the RF Tax Code the tax and levy legislation of constituent entities of the Russian Federation shall consist of laws and other regulatory legal acts concerning taxes and levies of constituent entities of the Russian Federation that have been adopted in accordance with the RF Tax Code.

The tax authority treats the objective of the law as a condition for using the tax benefits. Really, Art. 1 of Law No. 9-Z states that "this law sets forth special tax benefits for legal entities for the purposes of the creation of favorable conditions for the attraction of capital into the territory of the Republic of Mordovia, *strengthening socio-economic potential of the Republic of Mordovia, development of the securities market, creation of additional employment opportunities"*. However, the same article provides **that activities of legal entities enjoying tax benefits shall meet only requirements set out in Art. 2 of the aforesaid Law.**

In other words, the legislator, when adopting the law on tax benefits, presumed that tax benefits introduced by the law are designated for such purpose.

Besides, even if one assumes that there is an inconsistency between Article 1 of the Law in which an objective of the Law is set out and other rules of the Law, then under rules of interpretation of laws the contents of specific rules shall prevail over the grounds for introduction of the Law.[3]

### 9.4.2. Unjustified conclusion about the non-compliance of the additional criterion of the capital attraction and strengthening the economic potential of the Republic of Mordovia.

The tax authority in its Resolution failed to specify how it concluded that the aforesaid companies failed to attract capital to the Republic of Mordovia and facilitate the development of its potential.

Thus, if one agrees to apply the additional criterion for the utilization of the tax benefit, it is impossible to determine on the basis of the Resolution how well justified is the conclusion of the tax authority that such criterion was not met by the taxpayer.

### 9.4.3. Unjustified conclusion about the lack of any operations in the territory of the Republic of Mordovia.

The tax authority in order to justify its conclusion about the fictitious nature of activities performed by OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV, OOO Yu-Mordovia stated that:

- In the territory of the Republic of Mordovia legal entities had no material resources required for trading and procurement operations;
- Companies had no persons in Mordovia responsible for the accounting and tax reporting functions;
- Directors are registered outside of the Republic of Mordovia.

**A.** The tax authority in order to justify conclusions about the unlawful utilization of benefits and non-performance of operations states that OOO MARS XXII, ZAO YUKOS-M,

---

[3] E. Vaskovsky. Manual for the interpretation and application of laws.

31

OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV and OOO Yu-Mordovia have no equipment required to procure and store oil products. However, as it follows from the Resolution, the core activities of OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV and OOO Yu-Mordovia include trading and procurement operations. The Resolution does not analyze the composition of available fixed assets. Besides, tax authorities failed to specify if any equipment was leased. Under accounting rules (and accounting information was utilized by tax authorities) leased property is not included in the company's own fixed assets. Such property could have included the equipment designated for the storage of oil, for instance, rail cars.

If trading and procurement organizations named in the Resolution traded oil products "off-the-wheels", no special equipment is required. For such purposes only appropriate telecommunications means and regular office equipment is required. This is confirmed by the text of the Resolution wherein it is stated that the above listed trading organization did not store oil. Trading operations without the transfer of goods into possession of the seller/buyer are not prohibited under current legislation.

**B.** The fact of the transfer of the accounting and tax reporting function to a specialized organization does not prove that the company conducted no operations in the Republic of Kalmykia.

Under Art. 54 of the RF Civil Code the location of a legal entity is determined by the place of its state registration. A legal entity is registered with state agencies at the place where its permanent executive body is located, and if a legal entity has no permanent executive body - at the place where any other body or person is located that may act without a proxy on behalf of the aforesaid legal entity.

Thus, the civil legislation defines the location of a legal entity in accordance with the location of its executive bodies, and the accounting department is not deemed to be an executive body of a legal entity. In other words, a conclusion about the lack of operations of OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV and OOO Yu-Mordovia may not be justified by the performance of the accounting function by specialized organizations located outside of the Republic of Mordovia.

**C.** The fact of the permanent residence of directors of OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV and OOO Yu-Mordovia outside the territory of Mordovia does not prove that the company conducted no operations in the Republic of Mordovia.

Under Art. 3 of the Law of the Russian Federation "On the right of Russian citizens to free movement, choice of where to stay and reside inside the Russian Federation" Russian citizens are obligated to register **at the place where they are staying** and **at the place where they reside** inside the Russian Federation. ***The registration itself or any lack thereof may not serve as grounds for the restriction or a condition for exercising rights and freedoms of citizens set forth by the Constitution of the Russian Federation, laws of the Russian Federation, Constitutions and laws of republics constituting the Russian Federation***.

<u>Firstly</u>, the tax authority specified the place of residence of Directors of companies, which does not prove that they did not manage companies in the Republic of Mordovia. **Otherwise, all companies should be registered at the place of registration of their general directors.**

<u>Secondly</u>, the tax authority failed to specify if the company's directors were registered in the Republic of Mordovia back in the year 2000 at the place where they stayed.

### 9.4.4. Unlawful conclusion about the affiliation of OAO NK YUKOS and persons registered in Mordovia during the whole year 2000.

Under Art. 20 of the RF Tax Code persons may be recognized to be affiliated, if relations of those parties may influence results of transactions related the sale of goods (works, services).

Thus, in order to establish the fact of the affiliation the tax authority shall demonstrate the potential for any influence of said relations on results of the transactions. In other words, in this particular case one shall demonstrate the influence of OAO NK YUKOS on third party transactions through the established banking relations.

The affiliation criterion set out in subparagraph 1 paragraph 1 Art. 20 of the RF Tax Code is met only in connection with several companies. Under this criterion OAO NK YUKOS can really be recognized to be affiliated (provided that the information of the tax authority contained in the Resolution is accurate) during the audited period with OOO Yuksar, ZAO Yukos-M. In such instance, as it is set out in the Resolution, OAO NK Yukos during the year 2000 had only 4 % of the authorized capital and only on December 22, 2000 obtained 100 % of stocks of ZAO Yukos-M. However, despite the fact the criterion of the affiliation set out in subparagraph 1 paragraph 1 Art. 20 of the RF Tax Code (20 % shareholding) arose only during the last nine days of the audited period, it is still concluded in the Resolution that the total revenues of ZAO Yukos-M for the whole year 2000 are deemed to constitute revenues of OAO NK YUKOS.

It should be noted that after the end of the year 2000 a number of companies specified in the Resolution became affiliated with OAO NK YUKOS, however, during the audited period they were not affiliated. The list of such companies includes OOO MARS XXII, OOO Alta-Trade, OOO Ratmir. Conclusions of tax authorities about the affiliation of those companies with OAO NK YUKOS during the audited period (2000 ) are not well justified.

The Resolution contains conclusions about the affiliation of OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV, OOO Yu-Mordovia with OAO NK YUKOS. The tax authority based its conclusion on the following:

– Opening of accounts at banks affiliated with OAO NK YUKOS
– Performance of the accounting function by the organization affiliated with OAO NK YUKOS;
– OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV, OOO Yu-Mordovia had business relations (sale/purchase of oil products) with companies affiliated with OAO NK YUKOS.

**A.** Tax authorities specified that Mordovian companies opened accounts at banks affiliated with OAO NK YUKOS:

▪ AKB DiB (Moscow);
▪ Menatep St. Petersburg (St. Petersburg);

Firstly, the aforesaid banks are not affiliated with OAO NK YUKOS. The tax authority failed to specify what affiliation features it disclosed in connection with those persons.

Secondly, the tax authority failed to specify how the affiliation of banks servicing third party accounts with OAO NK YUKOS may cause the affiliation of those third parties with OAO NK YUKOS.

Under Art. 20 of the RF Tax Code persons may be recognized to be affiliated, if relations of those parties may influence results of transactions related the sale of goods (works, services). Thus, in order to establish the fact of the affiliation the tax authority shall demonstrate the potential for any influence of said relations on results of the transactions. In other words, in this particular case one shall demonstrate the influence of OAO NK YUKOS on third party transactions through the established banking relations.

**As it was said above, the bank may not restrict or set any conditions for the utilization of cash kept in the bank's accounts by the bank's client, unless otherwise provided for in the law or any bank account agreement. There is no evidence that such agreements existed. Due to this a claim of the tax authority that opening of bank accounts could be viewed as grounds for the establishment of the affiliation may not be taken into account.**

**B.** When establishing the fact of the affiliation of third parties with OAO NK YUKOS, tax authorities assumed that the accounting function was performed by the organization affiliated with OAO NK YUKOS.

As it was said above, under Art. 20 of the RF Tax Code persons may be recognized to be affiliated, if relations of those parties may influence results of transactions related the sale of goods (works, services).

However, tax authorities failed to specify how a specialized organization performing only the accounting function could have influenced the results of transactions concluded by the organization that outsourced accounting services. Under the Law on Limited liability companies day-to-day management of the company is performed by its bodies that generally may adopt decisions about terms and conditions of concluded transactions. Accountants are not deemed to be on the list of such bodies.

**C.** Tax authorities specified that OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV, OOO Yu-Mordovia had business relations (sale/purchase of oil products) with companies allegedly affiliated with OAO NK YUKOS.

The term "affiliated companies" is not used in the tax legislation. Subsequently, the recognition of companies as affiliates causes no tax consequences. However, the Tax Code (Art. 20 of the RF Tax Code) provides for certain tax consequences for inter-related parties.

Under Art. 20 of the RF Tax Code persons may be recognized to be inter-related (affiliated), if relations of those parties may influence results of transactions related the sale of goods (works, services).

The tax authority failed to specify how the affiliation of those parties with OAO NK YUKOS could have influenced the results of transactions concluded by the said parties utilizing tax benefits provided by current legislation.

**Thus, tax authorities failed to justify the affiliation of OOO MARS XXII, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV, OOO Yu-Mordovia with OAO NK YUKOS in the year 2000.**

**Another conclusion of the tax authority about the unlawful utilization of tax benefits by companies set out in the Resolution registered in the Republic of Mordovia is also poorly justified.**

**Moreover, as provided in the Acts of field tax audits of OOO MARS XXII, OOO Alta-Trade, OOO Ratmir, ZAO YUKOS-M, OOO Yu-Mordovia for the year 2000 conducted by the Department of the Ministry for Taxes and Levies of the Russian Federation from 10.12.2003 through 30.12.2003 in accordance with the results of those audits no violations were disclosed in respect of those organizations in the year 2000 pertaining to the calculation and payment of taxes as well as the procedure of the utilization of tax benefits.**

### 9.4.5. Unlawful conclusion Неправомерность вывода об уклонении ОАО «НК «ЮКОС» от уплаты налогов.

In its Resolution the tax authority claims that OOO MARS XXII, ZAO YUKOS-M, OOO Alta-Trade, OOO Ratmir, OOO Saturn XXV, OOO Jupiter XXIV are affiliated with the following persons:

AOZT Polikant;
OOO A-Trust;
OOO Akra;
AOZT Renmet;
OOO Elbrus;
OOO Yu-Mordovia;

ZAO YUKOS-M;
AOZT Renmet;
OOO Fargoil;
OAO NK YUKOS.

However, a conclusion about the understated taxes is made exactly in connection with OAO NK YUKOS. Though it is obvious that such conclusion (provided that such approach is lawful) would be more logical in connection with persons that are affiliated with the above companies under current law (Art. 20 of the RF Tax Code, Art. 106 of the RF Civil Code). A conclusion about the affiliation of those companies with OAO NK YUKOS may not be the basis for the conclusion about taxes understated by OAO NK YUKOS as all above listed persons had a lot more opportunities to influence terms and conditions of the concluded transactions than OAO NK YUKOS.

Besides, a conclusion was made in the Resolution that OAO NK YUKOS evades the payment of taxes **on production, refining and sale of oil and oil products**. However, OAO NK YUKOS **did not produce, refine or sell oil and oil products**. Subsequently, the conclusion of the Russian Tax Ministry did not reflect the actual circumstances.


### 9.5. Utilization of tax benefits by OOO Yuksar registered in the town of Sarov.

When providing evidence of the unlawful utilization of tax benefits by OOO Yuksar tax authorities specify that its activities do not meet requirements set out in Art. 5 of the Law od the Russian Federation dated 14 July, 1992 No. 3297-1 "On the Closed Administrative and Territorial Unit" (ZATO).

Under Art. 5 of the aforesaid Law (in the version that was in effect during the audited period) additional tax and levy benefits are granted by respective local self-government authorities to organizations registered as taxpayers with tax authorities of closed administrative and territorial units as set forth in the aforesaid Law. A right to obtain said benefits is given to organizations holding at least 90 percent of their fixed assets and conducting at least 70 percent of their operations in territories of respective closed administrative and territorial units (including at least 70 percent of the average listed number of staff of such organizations shall comprise persons permanently residing in the territory of the respective closed administrative and territorial unit and at least 70 percent of the payroll fund shall be paid to staff permanently residing in the territory of the corresponding closed administrative and territorial unit).

Thus, principal criteria of potential utilization of tax benefits in ZATO are as follows:

- Registration with tax authorities of ZATO;
- 90 % of fixed assets are located in the territory of the corresponding closed administrative and territorial unit (ZATO);
- 70 % of operations are conducted in ZATO (including permanent residence of 70% of staff in ZATO and at least 70% of the total payroll fund paid to those 70% of staff permanently residing in ZATO).

Tax authorities confirm the lawful registration of OOO Yuksar with tax authorities of ZATO of the town of Sarov.

The tax authority in its Resolution did not deny the fact that 90% of fixed assets of the aforesaid limited liability company are located in the territory of ZATO. In such instance, tax authorities merely specified the book value of fixed assets recognized in the balance sheet of respective limited liability companies. For instance, it was stated in the Resolution that the value of fixed assets of OOO Yuksar amounts to 26 000 RUR.

In such instance, tax authorities allege that OOO Yuksar has no equipment required to procure and store oil products. However, as it follows from the Resolution, the core activities of all of the above legal entities include trading and procurement operations. The Resolution does not analyze the composition of available fixed assets. Besides,tax authorities failed to specify if any equipment was leased. Under accounting rules (and accounting information was utilized by

tax authorities) leased property is not included in the company's own fixed assets. Such property could have included the equipment designated for the storage of oil, for instance, rail cars.

If trading and procurement organizations named in the Resolution traded oil products "off-the-wheels", no special equipment is required. For such purposes only appropriate telecommunications means and regular office equipment is required. This is confirmed by the text of the Resolution wherein it is stated that the above listed trading organizations did not store oil. Trading operations without the transfer of goods into possession of the seller/buyer are not prohibited under current legislation.

Tax authorities do not deny that over 70% of the staff permanently reside in the territory of ZATO in the town of Sarov and that their salaries total over 70% of the payroll fund.

### 9.5.1. Unjustified conclusion about the unavailability of OOO Yuksar in the territory of the town of Sarov.

Under Art. 54 of the RF Civil Code the location of a legal entity is determined by the place of its state registration. A legal entity is registered with state agencies at the place where its permanent executive body is located, and if a legal entity has no permanent executive body - at the place where any other body or person that may act without a proxy on behalf of the legal entity is located.

Thus, the civil legislation defines the location of a legal entity in accordance with the location of its executive bodies, and the accounting department is not deemed to be an executive body of a legal entity. The tax authority does not deny that executive bodies of OOO Yuksar were located in the town of Sarov. In other words, a conclusion about the lack of any presence of the aforesaid company in the town of Sarov is not justified.

**Thus, a conclusion that OOO Yuksar registered in the town of Sarov unlawfully utilized tax benefits as set out in the Resolution is <u>unjustified and unlawful</u>.**

### 9.5.2. Unlawful conclusion about tax evasion of OAO NK YUKOS.

In its Resolution the tax authority claims that OOO Yuksar is affiliated with the following persons:

OAO Yuganskneftegaz;

G.V. Luxemburg;

ZAO Yukos-M;

OOO Yu-Mordovia;

OAO NK YUKOS.

However, a conclusion about the understated taxes is made exactly in connection with OAO NK YUKOS. A conclusion about the affiliation of those companies with OAO NK YUKOS may not be the basis for the conclusion about taxes understated by OAO NK YUKOS as all above listed persons had a lot more opportunities to influence terms and conditions of the concluded transactions than OAO NK YUKOS.

Besides, another conclusion was made in the Resolution that OAO NK YUKOS **evades the payment of taxes on production, refining and sale of oil and oil products**. However, OAO NK YUKOS **<u>did not produce, refine or sell oil and oil products</u>**. Subsequently, the conclusion of the Russian Tax Ministry did not reflect the actual circumstances.

### 9.6. Utilization of tax benefits by ZAO Interneft and OOO Petroleum-Trading registered in the Evenkiiski autonomous okrug.

### 9.6.1. Unjustified conclusion about the lack of any operations in the territory of the Evenkiiski autonomous okrug.

36

In order to justify its conclusion about the fictitious nature of operations of ZAO Interneft and OOO Petrleum-Trading the tax authority stated:

- Directors are registered outside of the Evenkiiski autonomous okrug;
- Founders of the companies were legal entities located outside of the Evenkiiski autonomous okrug;
- In the territory of the Evenkiiski autonomous okrug the companies had no material resources required for conducting trading and procurement operations;

**A.** The fact of the permanent residence of directors of the aforesaid companies outside of the territory of the Evenkiiski autonomous okrug does not prove that the company conducted no operations in the same Evenkiiski autonomous okrug.

Under Art. 3 of the Law of the Russian Federation "On the right of Russian citizens to free movement, choice of where to stay and reside inside the Russian Federation" Russian citizens are obligated to register **at the place where they are staying** and **at the place where they reside** inside the Russian Federation. *The registration itself or any lack thereof may not serve as grounds for the restriction or a condition for exercising rights and freedoms of citizens set forth by the Constitution of the Russian Federation, laws of the Russian Federation, Constitutions and laws of republics constituting the Russian Federation.*

<u>Firstly</u>, the tax authority specified the place of residence of Directors of the aforesaid companies, which does not prove that they did not perform their job responsibilities in the Evenkiiski autonomous region where the companies are registered with state agencies.

<u>Secondly</u>, the tax authority failed to specify if the company's directors were registered in the Evenkiiski autonomous region back in the year 2000 at the place where they stayed.

**B.** The tax authority unlawfully concluded that the company conducted no operations in the Evenkiiski autonomous okrug because the company's founders were located outside the Evenkiiski autonomous okrug. There is a great number of Russian legal entities in Russia with 100% foreign capital participation, but it does not mean that such legal entities conduct no operations in the territory of the Russian Federation.

**C.** The tax authority in order to justify conclusions about the unlawful utilization of benefits and non-performance of operations alleges that the above companies have no equipment required to procure and store oil products. However, as it follows from the Resolution, the core activities of those companies include trading and procurement operations. The Resolution does not analyze the composition of available fixed assets. It is only stated in the Resolution that the value of fixed assets amounted to 90 000 RUR.

Besides, tax authorities failed to specify if any equipment was leased. Under accounting rules (and accounting information was utilized by tax authorities) leased property is not included in the company's own fixed assets. Such property could have included the equipment designated for the storage of oil, for instance, rail cars.

If trading and procurement organizations named in the Resolution traded oil products "off-the-wheels", no special equipment is required. For such purposes only appropriate telecommunications means and regular office equipment is required. This is confirmed by the text of the Resolution wherein it is stated that the above listed trading organizations did not store oil. Trading operations without the transfer of goods into possession of the seller/buyer are not prohibited under current legislation.

**9.6.2. Unlawful conclusion about the affiliation of OAO NK YUKOS with companies registered in the Evenkiiski autonomous okrug.**

The Resolution contains conclusions about the affiliation of ZAO Interneft and OOO Petroleum-Trading with OAO NK YUKOS. Tax authorities based their conclusion on the following:
- Closure of accounts of ZAO Interneft and OOO Petroleum-Trading at banks affiliated with OAO NK YUKOS
- ZAO Interneft and OOO Petroleum-Trading had business relations (sale/purchase of oil products) with companies affiliated with OAO NK YUKOS

**A.** Tax authorities stated that ZAO Interneft and OOO Petroleum-Trading opened accounts at banks affiliated with OAO NK YUKOS:
- AKB DiB (Moscow);
- Bank Menatep SPB (Tomsk);
- KB Nefteenergobank;
- MIKB Rossita;
- KB Soyuzny.

Firstly, the aforesaid banks are not affiliated with OAO NK YUKOS. The tax authority failed to specify what affiliation features it disclosed in connection with those persons.

Secondly, the tax authority failed to specify how the affiliation of banks servicing third party accounts with OAO NK YUKOS may cause the affiliation of those third parties with OAO NK YUKOS.

Under Art. 20 of the RF Tax Code persons may be recognized to be affiliated, if relations of those parties may influence results of transactions related the sale of goods (works, services). Thus, in order to establish the fact of the affiliation the tax authority shall demonstrate the potential for any influence of said relations on results of the transactions. In other words, in this particular case one shall demonstrate the influence of OAO NK YUKOS on third party transactions through the established banking relations.

**As it was said above, the bank may not restrict or set any conditions for the utilization of cash kept in the bank's accounts by the bank's client, unless otherwise provided for in the law or any bank account agreement. There is no evidence that such agreements existed. Due to this a claim of the tax authority that opening of bank accounts could be viewed as grounds for the establishment of the affiliation may not be taken into account.**

**B.** Tax authorities specified that ZAO Interneft and OOO Petroleum-Trading had business relations (sale/purchase of oil products) with companies affiliated with OAO NK YUKOS:

OAO NK YUKOS;

ZAO Petroleum-und-Gas

Under Art. 20 of the RF Tax Code persons may be recognized to be affiliated, if relations of those parties may influence results of transactions related the sale of goods (works, services).

Tax authorities failed to specify how the affiliation of the aforesaid organizations with OAO NK YUKOS could have influenced the results of transactions concluded by organizations utilizing tax benefits provided under current law.

**Thus, tax authorities failed to provide sufficient grounds to prove the affiliation of ZAO Interneft and OOO Petrleum-Trading with OAO NK YUKOS in the year 2000.**

**10. Expiration of the term during which a person may be held fiscally liable.**

Under Art. 113 of the Tax Code of the Russian Federation a person may not be called to account for the committal of a tax offence if a period of three years (the limitation period) has elapsed from the day on which it was committed or from the day following the end of the tax period during which the offence was committed. The measurement of the limitation period from the day following the end of the tax period during which the offence was committed shall apply

for tax offences stipulated in Articles 120 and 122 of the Tax Code of the Russian Federation. The audited tax period (2000) ended on December 31, 2000. The limitation period for tax offences of that tax period commenced on January 01, 2001 and under Art. 6.1 expired on January 01, 2004.

Thus, **at this point fines specified by the auditors amounting to 19,195,696,780.00 RUR may not be applied to OAO NK YUKOS because of the expiration of the limitation period, which is supported by paragraph 36 of Resolution of the Plenary meeting of the Supreme Arbitration Court of the Russian Federation dated 28 February, 2001 No. 5 "On several aspects of the application of part 1 of the Tax Code of the Russian Federation".**


**11. Unlawful nature of the Resolution due to gross arithmetical errors contained therein that distort amounts of additionally accrued taxes, calculated default interest and fines.**

**11.1.    Inconsistency of numerical amounts of additionally accrued taxes contained in the descriptive and final parts of the Resolution.**

The analysis of information provided in the Resolution enables to make a conclusion about the illegitimacy of additional accruals of taxes, default interest an fines performed in respect of the taxpayer as set out in the final part of the Resolution as they are inconsistent with the figures stated in the descriptive part of the Resolution. For instance, the total amount of additionally accrued taxes as set out in the final part of the Resolution is 47,989,241,953 RUR. If one sums up the tax arrears per each organization mentioned in the descriptive part of the Resolution, the total tax arrears may be estimated as 47,963,406,382.00 RUR. In other words, the total excessively accrued taxes of OAO NK YUKOS amount to 25,835,571.00 RUR. (see the Table of deviations - *Appendix 16*) only due to the inconsistency of amounts provided in various sections of the Resolution.

**11.2.    Errors contained in the amounts named by the tax authority to be unlawfully utilized benefits for specific companies.**

For specific companies named in the Act whose tax liabilities were "re-imposed" on the Claimant (OOO Yuksar, ZAO Yukos-M, OOO Yu-Mordovia, OOO MARS XXII, OOO Alta-Trade, OOO Ratmir) OAO NK YUKOS has information about their tax liabilities for the year 2000, obtained copies of their tax returns, which enabled to make a conclusion about arithmetical errors contained in the calculations made by the tax authority in connection with additionally accrued taxes of those companies on OAO NK YUKOS.

Thus, amounts of deviations related to additional tax accruals for the aforesaid companies are as follows («+» -«excessively accrued»; «-» «under-accrue taxes») (see the Table of deviations - *Appendix 16*):

|                    |                  |
|--------------------|------------------|
| OOO Yuksar -       | 69 211 RUR;      |
| OOO Ratmir -       | -1 618 037 RUR;  |
| OOO Yu-Mordovia-   | - 31 RUR;        |
| ZAO Yukos-M -      | 141 370 RUR;     |
| OOO Alta-Trade, -  | 151 746 383 RUR; |
| OOO MARS XXII, -   | -502 728 RUR.    |

The total of excessively accrued taxes on such grounds amounts to – **148 218 130 RUR.**

In other words, solely because of arithmetical errors the tax authority unlawfully additionally accrued on the Claimant the total taxes of 167 053 701 RUR. Subsequently, respective portions of penalties and default interest were accrued unlawfully as well.

Thus, the conducted audit and Resolution of the Ministry of the Russian Federation for Taxes and Levies grossly violate rights of the taxpayer, conclusions of the auditors do not correspond with the actual circumstances, are poorly grounded, contradict the constitutional principles of taxation as well as provisions of Articles 3, 8, 19, 20, 21, 22, 23, 30, 31, 40, 87, 89, 100, 106, 108, 10 9, 113, 122 etc. of the Tax Code of the Russian Federation:

- Unlawful conclusions about the legal meaning of the affiliation of parties;
- Unjustified conclusions about the affiliation of 17 companies with OAO NK YUKOS;
- Unlawful conclusion about a tax offence committed by OAO NK YUKOS together with the utilization of tax benefits by third parties;
- Additional accruals of taxes, default interest and fines as set out in the Resolution are unlawful because of arithmetical errors contained therein;
- Unjustified conclusion about the unlawful utilization of regional and local tax benefits;
- Violation of the order of the audit;
- Expiration of the term during which a person may be held fiscally liable.

On the basis of the foregoing and Articles 27, 198 of the Arbitration Procedural Code of the Russian Federation

### WE SEEK:

to declare unlawful Resolution of the Ministry of the Russian Federation for Taxes and Levies dated 14.04.2004 No. 14-3-05/1609-1 "On holding fiscally liable for the committal of a tax offence".

### Appendices:

1. Copy of the Field Tax Audit Act dated 29.12.2003  No. 08-1/1

2. Copy of Resolution of the Ministry for Taxes and Levies of the Russian Federation No. 14-0-05/300 "On additional tax control measures".

3. Copy of Resolution of the Ministry for Taxes and Levies of the Russian Federation No. 14-3-05/1609-1 dated 14.04.04 "On holding the taxpayer fiscally liable for the committal of a tax offence".

4. Copy of Demand No. 14-3-05/1610-8 dated 14.04.2004 and Demand No. 14-3-05/1611-1 dated 14.04.2004.

5. Table of all additional accruals with the account of errors made by the tax authority in the Resolution.

6. Copy of the Award of the Federal Arbitration Court of the North-Western okrug dated 17 September 2001 No. A56-12502/00.

7. Copy of Resolution of the Constitutional Court of the Russian Federation dated 27 May, 2003 No. 9-P.

8. Copy of the Award of the Federal Arbitration Court of the North-Western okrug dated 5 June, 2002 on case No. A42-6604/00-15-818/01.

9. Copy of Resolution No. 47/395 dated 8 December, 2003 of the Inter-regional inspection for major taxpayers No. 1 of the Ministry for Taxes and Levies of the Russian Federation.

10. Copy of Resolution dated July 9, 1996 No. 7127/95 of the Supreme Arbitration Court of the Russian Federation.

40

11. Copy of the Award of the Federal Arbitration Court of the Urals okrug dated December 3, 1997 on case No. Ф09-666/97-АК.

12. Copy of the Award dated 29 November, 2000 on case No. KA-A40/5380-00 of the Federal Arbitration Court of the Moscow okrug.

13. Copy of the Award of the Federal Arbitration Court of the Moscow okrug dated 18 October, 2002 on case No. KA-A40/7042-02.

14. Copies of Awards of the Federal Arbitration Court of the Moscow okrug dated October 13, 2003 on case No. KA-A41/7846-03, dated July 2, 2003 on case No. KA-A40/4407-03, dated March 11, 2002 on case No. KA-A40/1138-02.

15. Copies of Awards of the Federal Arbitration Court of the Moscow okrug dated July 27, 2001 on case No. KA-A41/3835-01.

16. Table of inconsistencies related to additional accruals contained in the Resolution and returns of OOO Yuksar, OOO Ratmir, OOO Yu-Mordovia, ZAO Yukos-M, OOO Alta-Trade, OOO MARS XXII.

17. Two original documents supporting the fact of the state fee payment: payment order marked by the bank and statement of the bank account.

18. Notarized copy of the state registration certificate of OAO NK YUKOS.

19. Notarized copy of the Articles of Association of OAO NK YUKOS.

20. Notarized copy of the certificate of tax registration of OAO NK YUKOS.

21. Documents confirming powers of the person that signed the application: original proxy dated 01.09.02 No. Yu-159/02, copy of the hiring order No.117/k dated 26.06.03, notarized copies of Minutes No. 1 of the extraordinary general stockholders meeting of OAO NK YUKOS dated 28.03.00 (on adoption of the decision about the transfer of executive body powers of OOO YUKOS-Moscow»), statements of Minutes No. 120/1-6 of the meeting of the Board of Directors of OAO NK YUKOS held in absentia dated 11.04.00 (on adoption of the decision about the approval of terms and conditions of the Contract for the transfer of powers of executive bodies), Contract for the transfer of powers of executive bodies dated 03.05.00, Addendum Agreement to the aforesaid Contract dated 05.03.00, Certificate of state registration of OOO YUKOS-Moscow", Charter of OOO YUKOS-Moscow", Extract of Resolution No. 8 of the sole participant of OOO YUKOS-Moscow about the election of V.S. Shakhnovsky as the Company's President.

22. Original postal receipt supporting the registered mail sent to the defendant with a notice of delivery of a copy of the application and copies of documents attached to the statement of claim that the defendant does not have.


May 6, 2004

**Representative of**
**OAO NK YUKOS**                                               **E.V. Aleinikova**
**(acting under a proxy)**

41