# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------------------- x
                                            )
RICHARD ALLEN, et al.,                      )
                                            )
                          Plaintiffs,       )
                                            )
       v.                                   )   Case No: 1:05-cv-02077-CKK
                                            )      Hon. Colleen Kollar-Kotelly
RUSSIAN FEDERATION, et al.                  )
                                            )
                          Defendants        )
                                            )
                                            )
------------------------------------------------------------------- x
```

**REPLY OF OAO ROSNEFTEGAZ, OAO ROSNEFT, SERGEY BOGDANCHIKOV, AND NIKOLAI BORISENKO TO PLAINTIFFS' CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Richard W. Slack
(*pro hac vice*)
Gregory S. Coleman
(*pro hac vice*)
Meredith B. Parenti
Deborah A. Maher
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Adam P. Strochak, Esq.
D.C. Bar No. 439308
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, D.C.  20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

TABLE OF CONTENTS

Table of Authorities ........................................................................................................... i

Preliminary Statement ...................................................................................................... 1

Argument .......................................................................................................................... 2

I.      Plaintiffs' Veil-Piercing and Agency Allegations Fail to Create Jurisdiction Under the FSIA Over Rosneftegaz or Rosneft ........................................................... 2

        A.      Dole Food Rejected a Veil-Piercing Theory ......................................... 3

        B.      Plaintiffs' Agency Allegations Do Not Create Jurisdiction .................. 6

        C.      Plaintiffs Have Failed to Allege Sufficient Facts to Establish Any Exceptions to Immunity .................................................................... 8

II.     Plaintiffs Have Failed to Establish Personal Jurisdiction Over Rosneftegaz, Rosneft, Bogdanchikov, or Borisenko ......................................................... 8

        A.      The FSIA Does Not Supply Plaintiffs with Personal Jurisdiction Over Rosneftegaz or Rosneft ...................................................................... 9

        B.      Plaintiffs Fail to Establish Any Statutory Authority to Assert Personal Jurisdiction Over Rosneft, Bogdanchikov, and Borisenko .................... 9

        C.      Asserting Personal Jurisdiction Over Rosneft Offends Due Process ................... 11

        D.      Plaintiffs Fail to Make a Prima Facie Case for Asserting Personal Jurisdiction Over Bogdanchikov and Borisenko ................................. 14

        E.      Asserting Personal Jurisdiction Over Rosneft, Rosneftegaz, Bogdanchikov, and Borisenko Would Offend Traditional Notions of Fair Play and Substantial Justice ............................................................... 16

III.    This Court Should Dismiss Plaintiffs' Derivative Causes of Action for RICO, Conversion, Conspiracy to Commit Conversion, Unjust Enrichment, and Expropriation Because Plaintiffs Lack Standing ............................................... 16

IV.     This Case Should Be Dismissed on Grounds of Forum Non Conveniens ...................... 21

        A.      Russia Is an Adequate Forum ........................................................... 22

        B.      Plaintiffs' Forum Shopping Deserves Little Deference ...................... 26

        C.      The Public and Private Factors Weigh in Favor of Dismissal ............ 28

                1.      The Private Interests Favor a Russian Forum ......................... 28

2.    The Interest of the Public in Retaining This Action in the District of Columbia Is Minimal ............................................................... 30

V.    Plaintiffs Fail to State a Claim for Securities Fraud ..................................... 30

A.    Rosneft, Bogdanchikov, and Borisenko Owed No Duty to Plaintiffs ............... 31

B.    Plaintiffs Fail to Allege Any False Statement by Rosneft, Bogdanchikov, or Borisenko ............................................................................................ 32

1.    Rosneft's Alleged Statements Are Insufficient to State a Federal Securities Fraud Claim ............................................................... 32

2.    The Amended Complaint Alleges No False Statement by Bogdanchikov or Borisenko ......................................................... 33

VI.    Plaintiffs' Common-Law Claims Should Be Dismissed ................................. 35

A.    Plaintiffs Fail to State a Claim for Conversion .................................................. 35

B.    Plaintiffs Fail to State a Claim for Restitution Based on Unjust Enrichment ...... 36

C.    Plaintiffs Fail to State Claims for Conspiracy to Commit Fraud and Conspiracy to Commit Conversion ..................................................... 38

VII.    Plaintiffs' Claim of Expropriation in Violation of International Law Must Be Dismissed ................................................................................................. 40

Conclusion .......................................................................................................... 43

Certificate of Service ........................................................................................... 44

TABLE OF AUTHORITIES

CASES

*ABB Daimler-Benz Transp. (N. Am.), Inc. v. Nat'l R.R. Passenger Corp.,
14 F.Supp.2d 75 (D.D.C. 1998) ...................................................................37

AD/SAT, Div. of Skylight, Inc. v. Assoc. Press,
181 F.3d 216 (2d Cir. 1999)..........................................................................39

Acosta v. JPMorgan Chase & Co.,
No. 05 Civ. 977, 2006 WL 229196 (S.D.N.Y. Jan. 30, 2006).....................23, 29

Aguinda v. Texaco, Inc.,
No. 93 Civ. 7527, 1994 WL 142006 (S.D.N.Y. April 11, 1994).......................23

BCCI Holdings (Lux.), S.A. v. Mahfouz,
828 F.Supp. 92 (D.D.C. 1993) ...................................................................29, 30

Banco Mercantil, S.A. v. Hernandez Arencibia,
927 F.Supp. 565 (D.P.R. 1996)......................................................................23

Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,
223 F.3d 1082 (9th Cir. 2000) .......................................................................14

Bank of Am. Corp. v. Lemgruber,
385 F.Supp.2d 200 (S.D.N.Y. 2005)..............................................................17

Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory",
283 F.3d 208 (4th Cir. 2002) .........................................................................16

*Base Metal Trading Ltd. v. Russian Aluminum,
98 F. App'x. 47 (2d Cir. 2004) ......................................................................25

Biton v. Palestinian Interim Self-Government Authority,
310 F.Supp.2d 172 (D.D.C. 2004) .................................................................13

Blanco v. Banco Indus. de Venez., S.A.,
997 F.2d 974 (2d Cir. 1993)...........................................................................22

Bowers v. Allied Inv. Corp.,
822 F.Supp. 835 (D. Me. 1993) ......................................................................33

Brazlin v. W. Sav. & Loan Ass'n,
No. 91-0078-PHX-SMM, 1994 WL 374286 (D. Ariz. Jan. 28, 1994) ..............17

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)..........................................................................................13, 14, 16

Bykov v. Radisson Hotels Int'l, Inc.,
    No. 05-1280-ADM/JSM, 2006 WL 752942 (D. Minn. Mar. 22, 2006) ...........................17

Cent. Freight Lines Inc. v. APA Transp. Corp.,
    322 F.3d 376 (5th Cir. 2003) .............................................................................................12

Chesley v. Union Carbide Corp.,
    927 F.2d 60 (2d Cir. 1991).................................................................................................23

Cooper v. O'Connor,
    99 F.2d 135 (D.C. Cir. 1938) ............................................................................................38

Corporacion Tim, S.A. v. Schumacher,
    418 F.Supp.2d 529 (S.D.N.Y. 2006)..................................................................................22

*Cowin v. Bresler,
    741 F.2d 410 (D.C. Cir. 1984) ...............................................................................17, 20, 36

Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil,
    212 F.Supp.2d 30 (D.D.C. 2002) ...............................................................................29, 30

Cumberland Oil Corp. v. Thropp,
    791 F.2d 1037 (2d Cir. 1986).............................................................................................19

Curaflex Health Servs. Inc. v. Bruni,
    877 F.Supp. 30 (D.D.C. 1995) ..........................................................................................36

*Doe I v. State of Israel,
    400 F.Supp.2d 86 (D.D.C. 2005) ...........................................................................10, 13, 16

*Dole Food Co. v. Patrickson,
    538 U.S. 468 (2003)....................................................................................................3, 4, 5

Dooley v. United Technologies Corp.,
    786 F.Supp. 65 (D.D.C. 1992) ..........................................................................................15

Eastman Kodak Co. v. Kavlin,
    978 F.Supp. 1078 (S.D. Fla. 1997) ...................................................................................25

*Ellipso, Inc. v. Mann,
    No. 05-1186, 2006 WL 1126814 (D.D.C. April 27, 2006)................................................38

Equity Group, Ltd. v. Painewebber Inc.,
    839 F.Supp. 930 (D.D.C. 1993),
    aff'd, 48 F.3d 1285 (1995) .............................................................................36

*Faulkner v. Verizon Communications, Inc.,
    156 F.Supp.2d 384 (S.D.N.Y. 2001)................................................................33

Films by Jove, Inc. v. Berov,
    250 F.Supp.2d 156 (E.D.N.Y. 2003) .........................................................25, 26

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,
    462 U.S. 611 (1983)...........................................................................................4

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
    905 F.2d 438 (D.C. Cir. 1990) ..........................................................................6

Foremost McKesson, Inc. v. Islamic Republic of Iran,
    No. 82-0220, 1989 WL 44086 (D.D.C. April 18, 1989)..............................19, 20

Gianascio v. Giordano,
    No. 99CV1796 GBD, 2003 WL 22999454 (S.D.N.Y. Dec. 19, 2003) .............17

Graves v. United States,
    961 F.Supp. 314 (D.D.C. 1997) .......................................................................39

Gutch v. Federal Republic of Germany,
    No. 05-2338, 2006 WL 2075259 (D.D.C. July 27, 2006) .................................20

HSBC USA, Inc. v. Prosegur Paraguay, S.A.,
    No. 03 Civ. 3336, 2004 WL 2210283 (S.D.N.Y. Sept. 30, 2004).....................25

Hall v. Clinton,
    285 F.3d 74 (D.C. Cir. 2002) ...........................................................................38

Hayden v. Pataki,
    No. 00 Civ. 8586, 2004 WL 1335921 (S.D.N.Y. June 14, 2004),
    aff'd, 449 F.3d 305 (2d Cir. 2006)....................................................................40

*Helicopteros Nacionales de Colom., S.A. v. Hall,
    466 U.S. 408 (1984).............................................................................11, 12, 15

Hutchings v. Manchester Life & Cas. Mgmt. Corp.,
    896 F.Supp. 946 (E.D. Mo. 1995)...............................................................17, 36

Ibrahim v. Titan Corp.,
    391 F.Supp.2d 10 (D.D.C. 2005) .....................................................................41

ICC Indus., Inc. v. Israel Discount Bank, Ltd.,
    No. 04 Civ. 6945, 2005 WL 1844616 (S.D.N.Y. July 29, 2005),
    aff'd, 170 Fed. App'x 766 (2d Cir. Mar. 16, 2006) ..........................................................26

In re Disaster at Riyadh Airport,
    540 F.Supp. 1141 (D.D.C. 1982) .....................................................................................29

In re Lorazepam & Chorozepate Antitrust Litigation,
    295 F.Supp.2d 30 (D.D.C. 2003) .....................................................................................37

In re Newbridge Networks Sec. Litig.,
    926 F.Supp. 1163 (D.D.C. 1996) .....................................................................................10

In re U.S. Office Prods. Sec. Litig.,
    326 F.Supp. 68 (D.D.C. 2004) .........................................................................................36

In re Yukos Oil Co. Sec. Litig.,
    No. 04-5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) .............................................34

Iragorri v. United Tech. Corp.,
    274 F.3d 65 (2d Cir. 2001) ...............................................................................................27

Jackson v. Am. Univ.,
    52 F. App'x 518 (D.C. Cir. 2002) ....................................................................................21

Joseph v. Algemene Bank Nederland, N.V.,
    592 F.Supp. 141 (W.D. Pa. 1984) ....................................................................................17

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,
    115 F.3d 1020 (D.C. Cir. 1997) .......................................................................................15

Kalamazoo Spice Extraction Corp. v.
    Provisional Military Government of Socialist Ethiopia,
    616 F.Supp. 660 (W.D. Mich. 1985) ..........................................................................19, 20

Labadie Coal Co. v. Black,
    672 F.2d 92 (D.C. Cir. 1982) .............................................................................................6

Labovitz v. Washington Times Corp.,
    127 F.3d 897 (D.C. Cir. 1999) .........................................................................................36

Lakonia Mgmt. Ltd. v. Meriwether,
    106 F.Supp.2d 540 (S.D.N.Y. 2000) ................................................................................17

*McCreary v. Heath,
    No. 04-0623, 2005 WL 3276257 (D.D.C. Sept. 26, 2005)...............................................38

McKesson Corp. v. Islamic Republic of Iran,
    52 F.3d 346 (D.C. Cir. 1995) ..............................................................................................6

Mercier v. Sheraton Int'l, Inc.,
    981 F.2d 1345 (1st Cir. 1992)............................................................................................23

Meyer v. Reno,
    911 F.Supp. 11 (D.D.C. 1996) ..........................................................................................39

Mwani v. bin Laden,
    417 F.3d 1 (D.C. Cir. 2005) ....................................................................... passim

Naartex Consulting Corp. v. Watt,
    722 F.2d 779 (D.C. Cir. 1983) ..........................................................................................15

New World Commc'n, Inc. v. Thompsen,
    878 A.2d 1218 (D.C. 2005) ...............................................................................................37

Norex Petroleum Ltd. v. Access Indus. Inc.,
    416 F.3d 146 (2d Cir. 2005),
    cert. denied, __ U.S. __, 126 S.Ct. 2320 (2006) ..............................................................25

*Oceanic Exp. Co. v. ConocoPhillips, Inc.,
    No. 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006)...................................................37

Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,
    484 U.S. 97 (1987)...............................................................................................................9

*Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.,
    369 F.3d 27 (2d Cir. 2004),
    cert. denied, 543 U.S. 1050 (2005) ...................................................................................31

*Overseas Media, Inc. v. Skvortsov,
    441 F.Supp.2d 610 (S.D.N.Y. 2006)......................................................... passim

Pain v. United Techs. Corp.,
    637 F.2d 775 (D.C. Cir. 1980) ..................................................................................21, 29

Parex Bank v. Russian Sav. Bank,
    116 F.Supp.2d 415 (S.D.N.Y 2000)...................................................................................25

Pavlov v. Bank of N.Y. Co.,
   135 F.Supp.2d 426 (S.D.N.Y. 2001),
   vacated on other grounds, 25 F. App'x 70 (2d Cir. 2002) ...................................................2

Pepper v. Litton,
   308 U.S. 295 (1939)..........................................................................................................19

Pinker v. Roche Holdings Ltd.,
   292 F.3d 361 (3d Cir. 2002)..............................................................................................35

Piper Aircraft Co. v. Reyno,
   454 U.S. 235 (1981)..........................................................................................................28

Poling v. Farrah,
   131 F.Supp.2d 191 (D.D.C. 2001) ....................................................................................10

Pollux Holding Ltd. v. Chase Manhattan Bank,
   329 F.3d 64 (2d Cir. 2003)................................................................................................27

Pugh v. Socialist People's Libyan Arab Jamahiriya,
   No. 02-02026, 2006 WL 2384915 (D.D.C. May 11, 2006).............................................41

Purdue Research Found. v. Sanofi-Synthelabo, S.A.,
   338 F.3d 773 (7th Cir. 2003) ............................................................................................14

Reiffin v. Microsoft Corp.,
   104 F.Supp.2d 48 (D.D.C. 2000) ......................................................................................27

Roeder v. Alpha Indus., Inc.
   814 F.2d 22 (1st Cir. 1987)..........................................................................................31, 32

*Rong v. Liaoning Province Gov't ,
   452 F.3d 883 (D.C. Cir. 2006) ...........................................................................................7

Rosinka Joint Venture v. Williams,
   No. 93 0132624, 1993 WL 383301 (Conn. Super. Sept. 16, 1993)..................................25

Ross v. Bernhard,
   396 U.S. 531 (1970)..........................................................................................................20

Rux v. Republic of Sudan,
   461 F.3d 461 (4th Cir. 2006) ............................................................................................14

*Saleh v. Titan Corp.,
   436 F.Supp.2d 55 (D.D.C. 2006) .................................................................................10, 41

Sanchez-Espinoza v. Reagan,
 770 F.2d 202 (D.C. Cir. 1985) .......................................................41

Schmid Labs. Inc. v. Hartford Accident & Indem. Co.,
 654 F.Supp. 734 (D.D.C. 1986) ...................................................28

Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,
 81 F.3d 1224 (2d Cir. 1996)...........................................................27

Sears v. Likens,
 912 F.2d 889 (7th Cir. 1990) .........................................................17

*Shulman v. Voyou, L.L.C.,
 251 F.Supp.2d 166 (D.D.C. 2003) ................................................35

Siderman de Blake v. Republic of Argentina,
 965 F.2d 699 (9th Cir. 1992) ...................................................19, 20

Siewick v. Jamieson Sci. & Eng'g, Inc.,
 191 F.Supp.2d 17 (D.D.C. 2002), aff'd, 322 F.3d 738 (D.C. Cir. 2003)............................5

Siewick v. Jamieson Sci. & Eng'g, Inc.,
 322 F.3d 738 (D.C. Cir. 2003) .......................................................6

Smith v. Wash. Sheraton Corp,
 135 F.3d 779 (D.C. Cir. 1998) .......................................................36

Sosa v. Alvarez-Machain,
 542 U.S. 692 (2004).......................................................................40

Stevens v. Lowder,
 643 F.2d 1078 (5th Cir. 1981) .......................................................17

Stutts v. De Dietrich Group,
 No. 03-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006)............................40

Tarasevich v. Eastwind Transp. Ltd.,
 No. 02 Civ. 1806, 2003 WL 21692759 (S.D.N.Y. July 21, 2003) ...................24

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
 845 A.2d 1031 (Del. 2004) .......................................................17, 18

Torres v. Peru Copper Corp.,
 965 F.Supp. 899 (S.D. Tex. 1996), aff'd, 113 F.3d 540 (5th Cir. 1997) ...........................23

Transamerica Leasing, Inc. v. La Republica de Venezuela,
   200 F.3d 843 (D.C. Cir. 2000) .................................................................6, 7

Varnelo v. Eastwind Transport, Ltd.,
   No. 02 Civ. 2084, 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) .........................................24

World Wide Minerals, Ltd. v. Republic of Kazakhstahn,
   116 F.Supp.2d 98 (D.D.C. 2000), aff'd in part and remanded in part,
   296 F.3d 1154 (D.C. Cir. 2002) ...............................................................15

World Wide Minerals, Ltd. v. Republic of Kazakhstan,
   296 F.3d 1154 (D.C. Cir. 2002) ...............................................................15

## STATUTES & RULES

15 U.S.C. § 78aa ..........................................................................................10

18 U.S.C. § 1965(b) ....................................................................................10

28 U.S.C. § 1350 ........................................................................................41

28 U.S.C. § 1603(b) ......................................................................................4

28 U.S.C. § 1603(b)(2) ..................................................................................4

28 U.S.C. § 1605(a)(2) ..................................................................................8

28 U.S.C. § 1605(a)(3) ..................................................................................8

FED. R. CIV. P. 4(k)(2) ...............................................................................10

## OTHER AUTHORITIES

12B WILLIAM M. FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS
   (1984 & 2006 Supp.)....................................................................17, 18, 21

RESTATEMENT (SECOND) OF AGENCY (1958 & 2006 Supp.) ...........................................7

RESTATEMENT (SECOND) OF TORTS (1965 & 2006 Supp.) ...........................................36

RESTATEMENT (THIRD) OF FOREIGN RELATIONS (1987 & 2006 Supp.)........................................41

19 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE
   § 4514 (2d ed. 1996) .................................................................................41

## PRELIMINARY STATEMENT

Plaintiffs' 150-page brief repeatedly seeks to hold the Russian government and Russian companies to standards that would be inconceivable if applied to the government of the United States.   Specifically, the entire theory of the amended complaint is that the Russian government "levied illegal and confiscatory multi-billion dollar tax demands on Yukos sufficient to appropriate all of the company's economic value."   Opp. Br. at 2.   When the massive rhetoric in plaintiffs' brief is stripped away, the heart of the amended complaint seeks to challenge these tax levies by the Russian government upon a Russian company under Russian law.   If those tax levies against a Russian company are valid under Russian law, then there is nothing wrong with the Russian government requiring an auction of that company's assets to pay those tax levies. Nor is there anything unusual about significant tax levies forcing a company into bankruptcy—as allegedly happened to Yukos—and having equity holders of the company see their interests in the company devalued or even become worthless.   Plaintiffs' characterization of this conduct as a "creeping expropriation," "illegal," or a "sham," does not change the nature of the conduct being challenged.

The motion to dismiss by Rosneft, Rosneftegaz, Bogdanchikov, and Borisenko at its most basic level contends that United States courts should not be reviewing the propriety of the Russian government levying and collecting taxes on a Russian company under Russian law any more than the courts of other countries should be reviewing the decisions by the United States government to levy and collect taxes from United States companies under United States law— even where those companies have shareholders that reside all over the world.   Indeed, this is particularly true where, as here, the tax levies against Yukos and subsequent enforcement of the taxes are already the subject of extensive litigation in Russia.

Plaintiffs' theory fails in the most fundamental aspects: the claims are being brought by the wrong plaintiffs in the wrong forum.

**The wrong plaintiffs**.   Plaintiffs simply ignore the legion of cases that explain that individual shareholders have no standing to bring claims on behalf of an injured company—even when the acts being challenged drove the company into bankruptcy and the shareholders lost all of the value of their investment.   The acts being challenged here—improper tax levies on Yukos and the alleged "conversion" of Yukos's assets—are all classic injuries to the corporation.

**The wrong forum**.   In seeking to bring claims against Russian companies and Russian individuals for conduct that occurred wholly in Russia allegedly against a Russian company—Yukos—in a United States court, plaintiffs are trying to fit the proverbial square peg in a round hole.   For the first 68 pages of their brief, plaintiffs seek to explain why the Court has jurisdiction over foreign sovereigns, why companies without any operations in the United States whatsoever should be forced to litigate in United States courts, and why a case where every alleged wrongful act occurred in Russia should be litigated in the United States.   That there are numerous articles in which commentators voice opinions that Russian courts are unfair or will be unable to fairly adjudicate claims relating to former Yukos officers is of no weight.   Dozens of United States courts have recognized the Russian courts as providing an adequate forum to resolve disputes arising in Russia under Russian law.

## ARGUMENT

### I.   PLAINTIFFS' VEIL-PIERCING AND AGENCY ALLEGATIONS FAIL TO CREATE JURISDICTION UNDER THE FSIA OVER ROSNEFTEGAZ OR ROSNEFT

Plaintiffs do not dispute that Rosneftegaz is a sovereign under the FSIA.   More importantly, plaintiffs concede that none of Rosneftegaz's own acts establish jurisdiction over it under the FSIA.   In fact, plaintiffs say very little about Rosneftegaz other than to argue that it is a "sham" entity created by the Russian Federation to defeat jurisdiction and that its corporate veil should be pierced in order to give Rosneft sovereign status.   Opp. at 4-9.   Although nothing in the amended complaint sets forth any facts supporting its veil-piercing theory, plaintiffs now stake their entire FSIA jurisdictional argument on this unpleaded theory in an effort to manufacture jurisdiction over the Russian Federation and Rosneftegaz.   Plaintiffs matter-of-factly admit the purpose behind their veil-piercing scheme: "the Court can only exercise

jurisdiction over the Russian Federation pursuant to the expropriation exception if Rosneft . . . is considered an agency or instrumentality of the state."   Opp. at 9.[1]   Plaintiffs essentially admit they have no FSIA jurisdiction over Rosneftegaz absent their veil-piercing and agency theories.

As discussed below, Rosneft is not a sovereign under Dole Food Co. v. Patrickson, 538 U.S. 468 (2003), and plaintiffs cannot attribute Rosneft's conduct to Rosneftegaz consistent with the FSIA.   Even if it were appropriate to do so under the FSIA, plaintiffs fail to plead sufficient facts to establish that Rosneft's conduct can be attributed to its parent, Rosneftegaz.   Plaintiffs have failed to plead any conduct by Rosneftegaz that would subject it to jurisdiction under the FSIA, and plaintiffs' generalized allegations that defendants were involved in a scheme to renationalize Yukos cannot support their claim for attribution.   See Rosneft Br. at 13-14. Moreover, even if Rosneft is considered a sovereign under the FSIA in spite of Dole Food, its alleged conduct is insufficient to establish jurisdiction under any of the exceptions to the FSIA.

### A.    Dole Food Rejected a Veil-Piercing Theory

Plaintiffs in effect are attempting to force sovereign-immunity status on Rosneft—despite its inapplicability under Dole Food—so that they may then argue that one of the FSIA's exceptions to immunity applies and thereby create subject-matter and personal jurisdiction over Rosneftegaz and the Russian Federation.   See Opp. at 4-9.   Instead of relying on the statutory language in the FSIA, plaintiffs resort to a veil-piercing theory of jurisdiction rejected by the Supreme Court in Dole Food.   Plaintiffs point to language in Dole Food noting that "[t]he veil separating corporations and their shareholders may be pierced in some circumstances," 538 U.S.

---

[1] Plaintiffs are similarly dependent on Rosneft for their argument that the FSIA's commercial-activity exception is satisfied.   However, plaintiffs fail to identify any specific commercial conduct by Rosneft that is responsible for their alleged injuries, much less conduct that alleges direct and immediate effects in the United States.   See Federation Reply Part II.   In the interest of judicial economy, Rosneft, Rosneftegaz, Bogdanchikov, and Borisenko adopt and incorporate by reference the following sections of the reply briefs of the Russian Federation, the Ministers, and Gazprom: Federation Reply Parts I, II; Ministers' Reply Parts II, III, IV, V; Gazprom Reply Parts I, II, IV, V, VI.

at 475; Opp. at 5, but fail to acknowledge that this comment was contained in the Court's discussion that ultimately rejected this theory as not founded in the statutory language of the FSIA.   538 U.S. at 475-77.   The Court reasoned that when Congress intends to refer to informal ownership in other statutes, it does so by referring to "direct and indirect ownership," and that "[t]he absence of this language in 28 U.S.C. § 1603(b) instructs us that Congress did not intend to disregard structural ownership rules."   Id. at 476.

Significantly, the Court in Dole Food declined to examine Israeli law on veil-piercing or the extent of that country's involvement in the operations of nonmajority-owned entities because "[m]ajority ownership by a foreign state, not control, is the benchmark of instrumentality status" under §1603(b)(2).   Id. at 477.   As the Court emphatically explained, "'[e]ven if Israel exerted the control the Dead Sea Companies describe, that would not give Israel a 'majority of [the companies'] shares or other ownership interest.'   The statutory language will not support a control test that mandates inquiry in every case into the past details of a foreign nation's relation to a corporate entity in which it does not own a majority of the shares."   Id. (second alteration in original).   Thus, the Court held that "[a] corporation is an instrumentality of a foreign state under the FSIA only if the foreign state itself owns a majority of the corporation's shares."   Id. Because Rosneft is not majority owned by the Russian government, it does not meet the Dole Food criteria, and it is not an instrumentality of Russia.   Plaintiffs therefore cannot force an FSIA defense on Rosneft in an attempt to manufacture jurisdiction.

Nor does the pre-Dole Food Supreme Court decision in First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611 (1983) ("Bancec"), support plaintiffs' assertion that courts may disregard the corporate form of foreign corporate entities based on the foreign state's level of control over the entity.   See Opp. at 4.   Not only did the Court reject

this notion in <u>Dole Food</u>, 538 U.S. at 477, but <u>Bancec</u> stands only for the limited proposition that a defendant responding to a foreign government's suit in a United States court may obtain a setoff for the value of assets nationalized by the foreign government's bank.   462 U.S. at 613-16, 633.   Although the bank was a separate juridical entity from the Cuban government when it nationalized the assets, the Court held that a setoff was appropriate in light of the fact that the bank was subsequently dissolved and subsumed into the government's national bank and a government ministry.   <u>Id.</u> at 615, 632-33.   Rather than endorsing the routine application of veil-piercing principles to foreign governmental entities, the Court actually cautioned that doing so would negatively impact the ability of those entities to obtain credit and would contradict the FSIA and principles of comity.   <u>Id.</u> at 626-27.

Even if veil-piercing could create the jurisdiction plaintiffs otherwise lack, plaintiffs have not alleged—and could not allege—sufficient facts to pierce the corporate veil separating Rosneft and Rosneftegaz as well as that separating Rosneftegaz and the Russian Federation. <u>See</u> Federation Reply at 13-17.   Applying the non-FSIA case cited by plaintiffs, plaintiffs have failed to allege "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist."   <u>Siewick</u> v. <u>Jamieson Sci. & Eng'g, Inc.</u>, 191 F.Supp.2d 17, 21 (D.D.C. 2002), <u>aff'd</u>, 322 F.3d 738 (D.C. Cir. 2003); <u>see also</u> Federation Reply Part 13-17.[2]   Far from supporting plaintiffs' allegations that Rosneftegaz is a shell existing solely to defeat jurisdiction, plaintiffs' amended complaint alleges that, in addition to holding Rosneft's shares, Rosneftegaz owns 10.74% of Gazprom's shares.   Am. Compl. ¶¶ 61, 129, 291.   There are no allegations that corporate formalities were not followed, the corporations

---

[2]  The only claimed inequitable result cited by plaintiffs is the entirely circular justification that they fail to manufacture jurisdiction unless they can pierce the corporate veil and create jurisdiction.   <u>See</u> Opp. at 9.

were inadequately capitalized, funds were commingled.   See Labadie Coal Co. v. Black, 672 F.2d 92, 96, 98, 99 (D.C. Cir. 1982) (applying factors for veil-piercing in non-FSIA case); Siewick v. Jamieson Sci. & Eng'g, Inc., 322 F.3d 738, 741 (D.C. Cir. 2003) (affirming dismissal of veil-piercing claim in non-FSIA case where complaint did not allege that defendant's corporate form was a sham).

**B.     Plaintiffs' Agency Allegations Do Not Create Jurisdiction**

Nor have plaintiffs pointed to any statutory basis under the FSIA for attributing the conduct of Rosneft to Rosneftegaz or the other defendants under an agency theory.   Plaintiffs rely heavily on the D.C. Circuit's pre-Dole Food decision in McKesson Corp. v. Islamic Republic of Iran, 52 F.3d 346, 352 (D.C. Cir. 1995), to argue that a foreign government's "extensive involvement in the day-to-day operations" of an entity may justify attribution of the entity's conduct to the government.   Opp. at 5-7.   Even if McKesson is still good law after Dole Food, subsequent D.C. Circuit decisions have clarified that a foreign sovereign is not amenable to suit based upon the acts of an instrumentality unless the control by the sovereign "significantly exceeds the normal supervisory control exercised by any corporate parent over its subsidiary and . . . amounts to complete domination of the subsidiary."   See Transamerica Leasing, Inc. v. La Republica de Venezuela, 200 F.3d 843, 848 (D.C. Cir. 2000).   Plaintiffs fail to allege facts that amount to complete domination.   See Opp. at 5-6.   The Russian Federation's mere indirect ownership of Rosneft's shares through Rosneftegaz and the membership by certain government officials on Rosneft's board do not create agency status. Transamerica Leasing, 200 F.3d at 849 ("A sovereign does not create an agency relationship merely by owning a majority of a corporation's stock or by appointing its Board of Directors."); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 440, 448 (D.C. Cir. 1990) (same).   And despite the allegations of involvement by the Russian Federation in business

6

strategy, there is no allegation that the affairs of the Federation are "so intermingled that no distinct corporate lines are maintained." Transamerica Leasing, 200 F.3d at 849. "[M]ere involvement by the state in the affairs of an agency or instrumentality does not answer the question whether the agency or instrumentality is controlled by the state for purposes of FSIA." Foremost-McKesson, 905 F.2d at 440.

Nor do plaintiffs allege sufficient facts to establish an agency relationship because they have failed to allege that "the parent has manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors." Transamerica Leasing, 200 F.3d at 849 (citing RESTATEMENT (SECOND) OF AGENCY § 1 (1958 & 2006 Supp.)).

Even if plaintiffs could establish Rosneft as an agent of the Russian Federation, it would not create jurisdiction over this case because the only conduct alleged is sovereign rather than commercial in nature, and plaintiffs have failed to demonstrate that any of the exceptions to the FSIA apply. See Rong v. Liaoning Province Gov't, 452 F.3d 883, 889-91 (D.C. Cir. 2006) (holding that commercial-activity exception did not apply to sovereign act of expropriation);[3] Part I.C infra; Rosneft Br. at 17-18, Part I.B; Federation Reply at [20]. Moreover, plaintiffs fail to identify a single commercial act by Rosneft that is attributable to the Russian Federation or

---

[3] Plaintiffs fail in their strained efforts to distinguish Rong on the grounds that the decision depended on the government's declaration of nationalization. See Opp. at 18. Regardless of whether an expropriation is accomplished by government decree or a "creeping" expropriation as plaintiffs claim in their opposition, it is still a "quintessentially sovereign act." See Rong, 452 F.3d at 890; see also Federation Reply at 20-22.

any other defendant that is relevant to their claims, and thus any claim of agency has no bearing on the Court's jurisdiction.    See Federation Reply Part I.C.

      **C.**    **Plaintiffs Have Failed to Allege Sufficient Facts to Establish Any Exceptions to Immunity**

      Regardless of whether Rosneft is considered an instrumentality of the Russian Federation or whether its conduct may be attributed to Rosneftegaz, plaintiffs have utterly failed to establish that any of the FSIA's exceptions to immunity would apply.    See Federation Reply Part I.A; Rosneft Br. at Part I.    Plaintiffs have failed to plead any conduct by Rosneftegaz, and thus concede that it is not subject to jurisdiction absent their deficient veil-piercing and agency contentions.    Instead, they point only to post-complaint and commercial conduct by Rosneft that has nothing to do with the basis for their suit and fails to establish a foreign commercial activity with the direct and immediate effect in the United States required to satisfy the clause (3) of § 1605(a)(2)'s commercial-activity exception.    See Rosneft Br. at 14-20.    Nor do plaintiffs plead a taking of *plaintiffs*' property in violation of international law as required to satisfy the expropriation exception in § 1605(a)(3).    See Rosneft Br. at 20-22; Federation Reply Part I.A. Rather, Plaintiffs only allege a taking of the assets of Yukos, which as plaintiffs own allegations concede, are not owned or operated by an agency or instrumentality of the Russian Federation as required by § 1605(a)(3).    See Federation Reply Part I.    Plaintiffs' claims must therefore be dismissed.

**II.    PLAINTIFFS HAVE FAILED TO ESTABLISH PERSONAL JURISDICTION OVER ROSNEFTEGAZ, ROSNEFT, BOGDANCHIKOV, OR BORISENKO**

      Plaintiffs' personal jurisdiction argument rests on several tenuous assumptions: (1) the FSIA can supply them with personal jurisdiction over Rosneftegaz and Rosneft; (2) that inadequately pleaded federal claims will enable it to take advantage of nationwide service-of-process provisions; and (3) that isolated, sporadic contacts will satisfy the requirements of

general jurisdiction and due process.   Because all of these assumptions are faulty, plaintiffs' claims must be dismissed.

### A.    The FSIA Does Not Supply Plaintiffs with Personal Jurisdiction Over Rosneftegaz or Rosneft

Plaintiffs rely solely on the FSIA's grant of personal jurisdiction to assert personal jurisdiction over Rosneftegaz.   But because Rosneftegaz is immune from suit as a sovereign, and no exception applies under the FSIA, the Court has no personal jurisdiction over it.[4]   Nor can plaintiffs rely on the FSIA to establish personal jurisdiction over Rosneft because it is not a sovereign, see Part I supra, and plaintiffs have failed to allege sufficient minimum contacts to justify exercising personal jurisdiction over it.   See Part II.C infra.

### B.    Plaintiffs Fail to Establish Any Statutory Authority to Assert Personal Jurisdiction Over Rosneft, Bogdanchikov, and Borisenko

Although plaintiffs attempt to gloss over these requirements, to establish personal jurisdiction, they must both have statutory authorization for doing so and a constitutionally sufficient relationship between defendant and forum.   See Mwani v. bin Laden, 417 F.3d 1, 8 (D.C. Cir. 2005) (citing Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 103 n.6 (1987)).   Plaintiffs have disclaimed any reliance on the District of Columbia's long-arm statute and rely solely on rule 4(k)(2) and the service-of-process provisions in RICO and the Securities and Exchange Act as statutory authorization to serve Rosneft, Bogdanchikov, and Borisenko. See Opp. at 21 n.8.   However, plaintiffs have failed to make a *prima facie* case that they satisfy any of these provisions.   See Mwani, 417 F.3d at 7 (stating that plaintiff is required to make a *prima facie* case of personal jurisdiction).   Among other requirements, rule 4(k)(2) "only authorizes personal service '[i]f the exercise of jurisdiction is consistent with the Constitution

---

[4]  Contrary to plaintiffs' assertion, Rosneftegaz has never conceded that it was properly served under the FSIA.   See Opp. at 22 n.9.

and laws of the United States.'"    Doe I v. State of Israel, 400 F.Supp.2d 86, 109 (D.D.C. 2005)

(quoting FED. R. CIV. P. 4(k)(2)).[5]    However, as discussed below, the exercise of jurisdiction

over Rosneft, Bogdanchikov, and Borisenko offends due process because their contacts are

anything but continuous and systematic and there is no allegation that defendants purposefully

directed their conduct at the United States.    See Part II.C, E infra.    Therefore, plaintiffs cannot

rely on rule 4(k)(2).

Plaintiffs do not dispute that to take advantage of the nationwide service-of-process

provisions in § 27 of the Securities Exchange Act and RICO, they must have stated a properly

pleaded claim under those statutes.    See Doe I, 400 F.Supp.2d at 120 (granting motions to

dismiss for lack of personal jurisdiction and holding that plaintiffs could not rely on RICO's

nationwide service-of-process provision absent a colorable RICO claim; instead, plaintiffs must

"satisfy the traditional personal jurisdiction analysis under the District of Columbia long-arm

statute and due process," which they failed to do); Saleh v. Titan Corp., 436 F.Supp.2d 55, 59

(D.D.C. 2006) (granting motions to dismiss for lack of personal jurisdiction because plaintiffs

failed to properly plead a RICO claim and could therefore not rely on its nationwide service-of-

process provision); see also 15 U.S.C. § 78aa; 18 U.S.C. § 1965(b); Rosneft Br. at 26-27.[6]

---

[5] Rule 4(k)(2) also applies only to "a claim arising under federal law."    Mwani, 417 F.3d at 10.
Because plaintiffs' securities and RICO claims are facially deficient, it has failed to provide a well-
pleaded basis for personal jurisdiction under rule 4(k)(2), as with the Exchange Act and RICO service-of-
process provisions, see Parts II.B, VI infra; Rosneft Br. at 26-27.    However, given that the case law on
rule 4(k)(2) is less developed in this area than in the securities and RICO contexts, defendants will focus
solely on the constitutional impediments to plaintiffs' relying on rule 4(k)(2).

[6] Although plaintiffs argue that the Court need not address the venue provisions of the Exchange Act,
they are incorrect that the mere publication of articles in the *Washington Post* satisfies the venue
requirement that an "act or transaction constituting the violation" occurred in the District.    See Poling v.
Farrah, 131 F.Supp.2d 191, 193 (D.D.C. 2001); Opp. at 23 n.12.    News articles published in a third
party's publication cannot impose liability under the Exchange Act absent a showing that the defendant
had some control over the final version of the article, In re Newbridge Networks Sec. Litig., 926 F.Supp.
1163, 1171 (D.D.C. 1996); see Rosneft Br. at 50, and thus there is no act constituting a violation that
occurred in the District.

Because plaintiffs' securities and RICO claims are facially deficient, see Rosneft Br. at Parts VIII, IX; see Part VI infra, plaintiffs cannot rely on the nationwide service-of-process provisions in those statutes, and instead must satisfy rule 4(k)(2) and the traditional personal jurisdiction analysis under due process, which they cannot do.   See Doe I, 400 F.Supp.2d at 120.

### C.    Asserting Personal Jurisdiction Over Rosneft Offends Due Process

Plaintiffs do not attempt to argue that the Court has specific personal jurisdiction over Rosneft, see Opp. at 21 n.8, but argue that general personal jurisdiction is appropriate because Rosneft's sporadic alleged contacts somehow amount to continuous and systematic contacts with the United States.   See Opp. at 29.   Plaintiffs' alleged isolated and sporadic post-complaint contacts can be summarized as: Rosneft's alleged supply of 20 percent of the oil from the tanker Belokamenka to the United States; business trips by Rosneft officials soliciting investment dollars in the United States; partnering with U.S. companies for bids on Russian oil and gas projects; and allegedly making false statements aimed at the U.S. securities markets, "including statements made by the Russian Federation on Rosneft's behalf."   Opp. at 30-31.   In addition, plaintiffs allege contacts by non-Rosneft people and institutions with the United States—such as the deputy chairman of a state Duma committee and other government officials—that have no bearing on whether Rosneft is subject to general personal jurisdiction.   See Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 417 (1984) (explaining that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").   Similarly, even if the brief, post-complaint business trips by Bogdanchikov and other Rosneft officials could be considered, see Rosneft Br. at 23-24, 28; Gazprom Reply at 4-5, they are not the type of continuous and systematic contacts that satisfy due process.

All of the alleged contacts taken together are far less extensive than those alleged in Helicopteros, in which the court held that a Texas court lacked general personal jurisdiction over a defendant whose contacts consisted of a trip by a corporate executive to Texas for a contract-negotiation session; accepting into its New York bank account checks drawn on a Texas bank; purchasing helicopters, equipment, and training services from a Texas corporation; and sending personnel to Texas for training. 466 U.S. at 416. The Court in Helicopteros rejected the argument that the brief presence of corporate employees in the forum constituted continuous and systematic contacts. Id. at 418. Even regular business trips to a forum do not warrant an inference that a defendant has continuous and systematic contacts there. Id. at 417-18.

Plaintiffs argue that Helicopteros is distinguishable because it did not involve a nationwide service-of-process provision, but regardless of which statutory basis for service plaintiffs rely on, the due-process inquiry is the same. "Whether the exercise of jurisdiction is 'consistent with the Constitution' for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment." Mwani, 417 F.3d at 11.

Nor do minimal sales of oil from a Russian tanker—even if it did eventually reach the U.S.—amount to continuous and systematic contacts. See Cent. Freight Lines Inc. v. APA Transp. Corp., 322 F.3d 376, 381 (5th Cir. 2003) (holding defendant's contacts with state were not substantial enough for general personal jurisdiction even though defendant routinely arranged and received shipments to and from state and sent sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts). As the *Economist* article cited by plaintiffs and the amended complaint make clear, the *Belokamenka* is moored in

Russian Arctic waters and there is no allegation that its sales of oil take place in the United States. See Am. Compl. 122; Federation Reply Part I.C.3.

Plaintiffs argue that Rosneft's alleged contacts are more significant than those found to satisfy personal jurisdiction in Mwani, 417 F.3d at 1, but fail to point out that Mwani dealt with specific jurisdiction, which plaintiffs have disclaimed, see Opp. at 21 n.8, rather than general jurisdiction.[7]   Moreover, Mwani invoked the "effects doctrine," which "requires that the defendants have intended that their actions cause injury in the United States," and "is reserved for 'unabashedly malignant actions' . . . . involving severe, even devastating, effects on the United States."   Doe I, 400 F.Supp.2d at 110 (citing Mwani, 417 F.3d at 4).   Plaintiffs in this case rely neither on specific personal jurisdiction over Rosneft nor point to unabashedly malignant conduct toward the United States that caused severe effects in the United States. Rather, "any harms suffered by or in the United States as a result of the actions challenged by plaintiffs were neither devastating nor severe—if felt at all, they are barely noticeable."   Id.

Plaintiffs also cite the contacts in Biton v. Palestinian Interim Self-Government Authority, 310 F.Supp.2d 172 (D.D.C. 2004), but the PLO's offices, agents, and extensive lobbying efforts throughout the United States far exceeded the sporadic and isolated contacts alleged in this case. Id. at 179-80.   Moreover, while the defendants in Biton maintained several bank accounts in the United States with deposits totaling $18 million, id. at 180, plaintiffs have alleged no bank accounts but only "contacts" with U.S. banks that are not in any way continuous or systematic. Opp. at 32.

---

[7] Even if plaintiffs were relying on specific jurisdiction, they have failed to allege that Rosneft purposefully directed its conduct at residents of the United States or that the "litigation results from alleged injuries that 'arise out of or relate to' those activities."   See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

Similarly, plaintiffs further confuse general and specific personal jurisdiction in arguing that the absence of physical contacts with a forum will not defeat personal jurisdiction. <u>See</u> Opp. at 24. Plaintiffs again rely on case law discussing the distinct standards for specific personal jurisdiction. <u>See</u> Opp. at 24; <u>Burger King Corp.</u> v. <u>Rudzewicz</u>, 471 U.S. 462, 474-76 (1985) (discussing specific personal jurisdiction); <u>Mwani</u>, 417 F.3d at 12 (same). Courts set a higher standard for establishing general personal jurisdiction, requiring that a "defendant's contacts be of the sort that *approximate* physical presence." <u>Bancroft & Masters, Inc</u>. v. <u>Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000) (citations omitted) (emphasis added); <u>see also</u> <u>Purdue Research Found.</u> v. <u>Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 787 (7th Cir. 2003). To be continuous and systematic, "[t]hese contacts must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in a[ ] [state] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." <u>Purdue Research Found.</u>, 338 F.3d at 787. Because plaintiffs' allegations do not meet this high standard, their claims must be dismissed.

### D. Plaintiffs Fail to Make a *Prima Facie* Case for Asserting Personal Jurisdiction Over Bogdanchikov and Borisenko

As with Rosneft, plaintiffs argue that the Court has personal jurisdiction over Bogdanchikov under rule 4(k)(2) because he allegedly has numerous contacts with the United States. <u>See</u> Opp. at 33-34. As with Rosneft, the alleged contacts are isolated and sporadic and insufficient to state a *prima facie* case of personal jurisdiction over Bogdanchikov: a 2005 trip to Texas and Washington, D.C., and a trip as part of a post-complaint delegation meeting with United States banks and investment funds. Even assuming that these contacts may all be

appropriately considered, they are neither continuous nor systematic.[8]   As discussed above,

even regular business trips to a forum do not constitute continuous and systematic contacts.   See

Helicopteros, 466 U.S. at 417-18.

Plaintiffs' only justification for exercising personal jurisdiction over Borisenko—despite

his admitted lack of physical or other contacts with the United States—is that he and the other

individual defendants are co-conspirators and that an unidentified "act in furtherance of the

conspiracy occurred in the United States."   Opp. at 36.   However, plaintiffs cannot rely on this

doctrine because "[m]ost courts utilize conspiracy jurisdiction warily and require that a plaintiff

'plead with particularity the conspiracy as well as the overt acts within the forum.'"   World

Wide Minerals, Ltd. v. Republic of Kazakhstahn, 116 F.Supp.2d 98, 108 (D.D.C. 2000), aff'd in

part and remanded in part, 296 F.3d 1154, 1168 (D.C. Cir. 2002).   Moreover, the overt act

within the forum must be "substantial."   World Wide Minerals, Ltd. v. Republic of Kazakhstan,

296 F.3d 1154, 1168 (D.C. Cir. 2002).[9]   Plaintiffs have failed to plead with particularity their

conspiracy allegations or any substantial overt act within the forum.   See Rosneft Br. at Parts

VIII.A, E, IX.B, XI.A.2, XII.   "'[B]ald speculation' or a 'conclusionary statement' that

individuals are co-conspirators is insufficient to establish personal jurisdiction under a

conspiracy theory."   Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1031

(D.C. Cir. 1997) (quoting Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C. Cir. 1983)),

---

[8]  Moreover, as discussed in Gazprom's reply, contacts made on behalf of an employer do not confer jurisdiction over a defendant in an individual capacity, Gazprom Reply at 9-10, and therefore the sporadic trips taken by Bogdanchikov and other Rosneft officials on Rosneft-related business cannot be considered.

[9]  The D.C. Circuit in World Wide Minerals implicitly disapproved of language in Dooley v. United Technologies Corp., 786 F.Supp. 65, 79-80 (D.D.C. 1992), (the primary case plaintiffs rely on for their conspiracy jurisdiction theory) that suggested a plaintiff need not plead an injury within the forum in cases brought under the District of Columbia long-arm statute, D.C. CODE § 13-423(a)(1).   In World Wide Minerals, a case brought under the D.C. long-arm statute, the court emphasized that plaintiffs must plead with particularity "overt acts within the forum taken in furtherance of the conspiracy."   296 F.3d at 1168.

abrogation in part on other grounds recognized by Rux v. Republic of Sudan, 461 F.3d 461, 475 (4th Cir. 2006); see also Doe I, 400 F.Supp.2d at 110 (declining to exercise personal jurisdiction based on a theory of civil conspiracy given plaintiffs' inadequate allegations of conspiracy). Because plaintiffs offer only speculation and conclusory statements regarding the alleged conspiracy and overt acts within the forum, they have failed to provide any basis to exercise personal jurisdiction over Borisenko, and their claims against him must be dismissed.

### E. Asserting Personal Jurisdiction Over Rosneft, Rosneftegaz, Bogdanchikov, and Borisenko Would Offend Traditional Notions of Fair Play and Substantial Justice

As detailed in Rosneft's opening brief, even if plaintiffs could provide a basis for exercising personal jurisdiction over Rosneft, Rosneftegaz, Bogdanchikov, and Borisenko, doing so would offend due process and place significant burdens on these defendants without furthering any interest of the District of Columbia.   See Rosneft Br. at 30-31.   Despite their claims to the contrary, plaintiffs have failed to point to any allegations that defendants purposefully directed their activities at forum residents.   See Opp. at 37; Burger King, 471 U.S. at 476-77.   Plaintiffs' alleged conduct had an effect on a Russian company, Yukos, and at most an incidental effect on Yukos's ADR holders who are dispersed in numerous countries. Subjecting these Russian defendants to the burdens of suit in the United States regarding claims that have no connection to the United States and challenging conduct not directed at the United States "would turn the notion of 'fair play and substantial justice' on its head."   See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory," 283 F.3d 208, 216 (4th Cir. 2002).

### III.   THIS COURT SHOULD DISMISS PLAINTIFFS' DERIVATIVE CAUSES OF ACTION FOR RICO, CONVERSION, CONSPIRACY TO COMMIT CONVERSION, UNJUST ENRICHMENT, AND EXPROPRIATION BECAUSE PLAINTIFFS LACK STANDING

Plaintiffs simply ignore the long-standing and unchallenged body of law that prevents shareholders from bringing suit where the injury is to the corporation in which they hold stock.

Case after case has prevented claims by shareholders for the types of claims brought by ADR holders here: RICO,[10] conversion,[11] unjust enrichment,[12] and conspiracy.[13]    See Rosneft Br. at 34-36.

The determination whether a claim is direct or derivative turns on "[w]ho suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy."    Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004).    Plaintiffs' RICO, conversion, conspiracy to commit conversion, unjust enrichment, and expropriation claims are derivative because they seek to recover for a wrong allegedly done *to Yukos* as a corporate entity.    See Cowin v. Bresler, 741 F.2d 410, 414, (D.C. Cir. 1984) ("When an injury to corporate stock *falls equally upon all stockholders*, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively [o]n behalf of the corporation" (citations omitted)).    Yet a stockholder may only litigate as an individual if "the allegedly wrongful conduct violates a duty to the complaining shareholder independent of the . . . duties owed that party along with all other shareholders, or, where the conduct causes an injury to the shareholders distinct from any injury to the corporation itself."    Cowin, 741 F.2d at 415; see also Tooley, 845 A.2d at 1039 (same); 12B WILLIAM M. FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911 (1984 & 2006 Supp.).    If

---

[10]  See, e.g., Lakonia Mgmt. Ltd. v. Meriwether, 106 F.Supp.2d 540, 550-51 (S.D.N.Y. 2000); Sears v. Likens, 912 F.2d 889, 892 (7th Cir. 1990).

[11]  See, e.g., Bank of Am. Corp. v. Lemgruber, 385 F.Supp.2d 200, 223 (S.D.N.Y. 2005); Hutchings v. Manchester Life & Cas. Mgmt. Corp., 896 F.Supp. 946, 947 (E.D. Mo. 1995); Brazlin v. W. Sav. & Loan Ass'n, No. 91-0078-PHX-SMM, 1994 WL 374286, at *4 (D. Ariz. Jan. 28, 1994).

[12]  See, e.g., Bykov v. Radisson Hotels Int'l, Inc., No. 05-1280-ADM/JSM, 2006 WL 752942, at *6 (D. Minn. Mar. 22, 2006); Gianascio v. Giordano, No. 99CV1796 GBD, 2003 WL 22999454, at *6 -7 (S.D.N.Y. Dec. 19, 2003).

[13]  See, e.g., Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. 1981); Joseph v. Algemene Bank Nederland, N.V., 592 F.Supp. 141, 148 (W.D. Pa. 1984).

individual shareholders could maintain these types of actions, the result would be "as many suits against the wrongdoer as there were shareholders in the corporation."    Id.

Plaintiffs' false characterization of their claims as "direct" is not binding on the Court, which should "independently examine the nature of the wrong alleged and any potential relief to make its own determination of the suit's classification."    Tooley, 845 A.2d at 1035; 12B FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5908; see, e.g., Opp. at 81 ("Plaintiffs are pursuing their claims as directly injured parties and not derivatively on behalf of the corporation"); Opp. at 83 ("the injury sustained by the shareholders is distinct from any injury to the corporation and an individual action is appropriate").    Plaintiffs' claim that the defendants have expropriated the property of Yukos represents a classic derivative claim alleging injury to the corporation, or "to the whole body of its stock or property"—not to individual shareholders. 12B FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911.

Plaintiffs' amended complaint repeatedly alleges—and concedes—that the injury is to Yukos and is only felt derivatively by stockholders.    See Am. Compl. ¶ 2 (alleging "the seizure of *Yukos's most important asset* by the state" (emphasis added)); Am. Compl ¶ 249 (Defendants "[forced] Yukos to transfer any asset of value"); Am. Compl ¶ 237 (Defendants "[forced] the transfer of [Yukos's] most valuable assets"); Am. Compl ¶ 310 ("Defendants transfer[red] *Yukos's most valuable assets*"; "*Yukos's most valuable asset* has been transferred" (emphases added)); Am. Compl ¶ 313(b) (Defendants "have directly and wrongfully seized the most valuable asset of Yukos" (emphasis added)); Am. Compl. ¶ 320(a) (same); Am. Compl. ¶ 327 (same); Am. Compl. ¶ 411 (Defendants "[seized] *Yukos's most important asset*" (emphasis added)); Am. Compl. ¶ 416 (Defendants "[transferred] . . . *Yukos's most valuable asset*, YNG" (emphasis added)).

Plaintiffs simply ignore the well-recognized distinction between individual and corporate claims and attempt to cast themselves "[a]s individuals whose ownership rights in the company have been expropriated by Defendants."    Opp. at 81.    This characterization of their claim does not change the fact that (1) nobody has taken the property owned by plaintiffs—their ADRs—and (2) any alleged damage was to Yukos—a separate legal entity.    The shareholders of companies that have been forced into bankruptcy by illegal wrongful conduct do not somehow obtain rights to bring action on behalf of the company; to the contrary, those claims continue to belong to the company.[14]    Plaintiffs solely rely on three cases to support their argument that they have standing, but none of those cases discusses or addresses the issue of standing.    See Kalamazoo Spice Extraction Corp. v. Provisional Military Government of Socialist Ethiopia, 616 F.Supp. 660 (W.D. Mich. 1985); Foremost McKesson, Inc. v. Islamic Republic of Iran, No. 82-0220, 1989 WL 44086 (D.D.C. April 18, 1989); Siderman de Blake v. Republic of Argentina, 965 F.2d 699 (9th Cir. 1992).    Furthermore, the nature of the wrong alleged in those cases was entirely different from the wrong alleged here.    In Kalamazoo Spice Extraction, a majority shareholder alleged that *its stock* in an Ethiopian company was expropriated by the government. 616 F.Supp. at 661.    Thus, the wrong alleged was not—as here—injury to the corporation, but rather to the plaintiff individually, separate and distinct from the corporation.    Accordingly, the right of action belonged to the shareholder-plaintiff, not to the corporation.    Further, the court's statement in Kalamazoo that "[i]t would not make sense to distinguish between the expropriation

---

[14] In addition, at least under American law, when a company is in bankruptcy, as Yukos is in Russia, corporate causes of action are the property of the estate and their prosecution is the sole responsibility of the trustee, not the plaintiffs.    See, e.g., Pepper v. Litton, 308 U.S. 295, 306-07 (1939) (explaining that while normally a corporate claim is "enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee" (citation omitted)); see also Cumberland Oil Corp. v. Thropp, 791 F.2d 1037, 1042 (2d Cir. 1986) ("Making the pursuit of certain causes of action the sole responsibility of the trustee in bankruptcy furthers the fundamental bankruptcy policy of equitable distribution among creditors." (citations omitted)).

of the physical assets of a company . . . . and expropriation of a *controlling interest in the stock of the company*," might apply where there is an expropriation of the stock of a controlling shareholder, but it certainly has no application here.    Id. at 663 (emphasis added).[15]

In Foremost McKesson, minority shareholders in a corporation alleged that Iran, through its co-defendants on the corporation's board of directors, expropriated *their minority interest*. 1989 WL 44086, at *1.    The court recognized that "the nature of the actions complained of by [the minority shareholders] sound in the nature of a corporate dispute between majority and minority shareholders."    Id. at *4.    The minority shareholders' allegation that the majority shareholder denied the minority its share in earning and dividends, thereby "freezing out" the minority, id. at *4, *8 n.12, is a classic direct claim that does not involve injury to the corporation.    Cowin, 741 F. 2d at 415-16 ("[A]ction to compel the payment of dividends withheld will not inure to the benefit of the corporation; the shareholders alone will gain by a judgment in their favor and, therefore, each shareholder may sue for his own account." (citations omitted)).

Siderman de Blake involved the expropriation of a *closely held corporation* owned by four shareholders and the torture of one of its owners by Argentina.    965 F.2d at 704.    The expropriation action was apparently brought *derivatively* on behalf of the corporation, and not as a direct action.    Indeed, as is required in derivative suits, the corporation, the real party in interest, was a named defendant.    Id. at 699, 704.[16]    Further, Siderman de Blake involved an action by shareholders of a closely held corporation, not a publicly traded corporation like

---

[15] For example, in Gutch v. Federal Republic of Germany, No. 05-2338, 2006 WL 2075259, at *7 (D.D.C. July 27, 2006) (Opp. at 83-84), the court did not need to address Kalamazoo because the plaintiff could not allege it held "a controlling share of the company."    Id. at *10; see also Federation Reply Part I.A.

[16] See Ross v. Bernhard, 396 U.S. 531, 538 (1970) ("The corporation is a necessary party to [a derivative] action; without it the case cannot proceed.").

Yukos. This distinction is significant because courts in certain circumstances permit direct actions against the wrongdoers when shareholders in a closely held corporation are harmed, recognizing that requiring shareholders of a closely held corporation to file a derivative suit could exalt form over substance. 12B FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5911-50 ("Courts sometimes recognize the right of a close corporation shareholder to sue directly, as an individual, on a cause of action that would normally have to be brought derivatively.").

Because plaintiffs' RICO, conversion, gconspiracy, unjust enrichment, and expropriation claims are derivative of the alleged harm to Yukos, they have no standing to raise them and they should be dismissed.

## IV.    THIS CASE SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*

Although the jurisdictional infirmities in plaintiffs' case are dispositive, dismissal on *forum non conveniens* grounds is also appropriate. As defendants established in their opening briefs, Russia is an adequate alternate forum and the private and public interests weigh in favor of dismissal on *forum non conveniens* grounds. See Pain v. United Techs. Corp., 637 F.2d 775, 784-85 (D.C. Cir. 1980), modification recognized, Jackson v. Am. Univ., 52 F. App'x 518 (D.C. Cir. 2002).

Plaintiffs' amended complaint makes it clear that the U.S. was selected after an exercise in forum shopping. Despite the fact that this action, its claims, and the alleged wrongdoing are all centered in Russia, and the majority of the ADRs held by plaintiffs are held by foreign plaintiffs, plaintiffs filed their claims in a U.S. court at least in part to obtain discovery under U.S. rules. This action belongs in a Russian forum given the fact that all defendants in this action are Russian and have no direct connection to the U.S.; the alleged wrongful acts all took place entirely in Russia; and Yukos, the alleged center of plaintiffs' claims, is a Russian company.

Despite these facts, plaintiffs have attempted to haul defendants into a U.S. court with no connection to the underlying facts.

### A.    Russia Is an Adequate Forum

Plaintiffs' entire argument is premised on the notion that Russian courts are biased in deciding matters related to Yukos and have incorrectly decided these matters.   See Opp. at 40-68.   Plaintiffs' argument puts the proverbial rabbit in the hat.   Plaintiffs' disagreement with the Russian judiciary's decisions in Yukos matters does not render Russia an inadequate forum for adjudication of their claims.   Plaintiffs attempt to support their suspicions of possible bias against Yukos ADR holders with a litany of newspaper articles, press conference releases, unauthenticated expert reports and witness statements, foreign court opinions, and U.S. and foreign government resolutions and reports.   See Opp. Exs. 5-64.   But these opinions—which primarily address former Yukos officers and employees—are neither legally relevant nor sufficient to render Russia an inadequate forum.

Despite plaintiffs' encouragement to the contrary, the Court should not sit in judgment of the Russian judiciary.   U.S. courts have repeatedly recognized in the context of dismissing cases for *forum non conveniens* that "[i]t is not 'the business of our courts to assume responsibility for supervising the integrity of the judicial system of another sovereign nation.'" See Overseas Media, Inc. v. Skvortsov, 441 F.Supp.2d 610, 617-18 (S.D.N.Y. 2006) (quoting Blanco v. Banco Indus. de Venez., S.A., 997 F.2d 974, 982 (2d Cir. 1993)); see also Corporacion Tim, S.A. v. Schumacher, 418 F.Supp.2d 529, 535 (S.D.N.Y. 2006) ("American courts should be wary of branding other nations' judicial forums as deficient in the substance or procedures that their laws contain . . . . Such denunciations not only run counter to principles of international comity and could retard efforts to reform foreign tribunals, but also risk imposing on our judicial system the burden of serving as courtroom to the world for the adjudication of essentially foreign

disputes with only nominal connections with the United States."); Acosta v. JPMorgan Chase & Co., No. 05 Civ. 977, 2006 WL 229196, at *6 (S.D.N.Y. Jan. 30, 2006) ("The 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record." (citation omitted)); Aguinda v. Texaco, Inc., No. 93 Civ. 7527, 1994 WL 142006, at *2 (S.D.N.Y. April 11, 1994) ("[T]he courts of the United States are properly reluctant to assume that the courts of a sister democracy are unable to dispense justice.").[17]

As defendants established in their opening brief, an alternative forum is adequate if defendants are amenable to process in the foreign jurisdiction. See Overseas Media, 441 F.Supp.2d at 617 ("In the absence of extraordinary circumstances, as where the foreign court does not allow for litigation of the subject matter of the dispute or for recovery, amenability of process is sufficient to render a foreign forum adequate." (citing Piper, 454 U.S. at 254 n.22)). Plaintiffs contend that "not all Defendants have conceded that they are amenable to process in Russia . . . [and it] therefore appears that this case cannot be reinstated in Russia against all of the Defendants." Opp. at 43. However, as plaintiffs have alleged in their amended complaint and defendants assert in their motions to dismiss, all defendants are Russian citizens (except for the Russian Federation itself), living and working in the Russian Federation and would be subject to jurisdiction in Russia. See Rosneft Br. at 37-38; Ministers' Br. at 22-23; Gazprom Br. at 29.

---

[17] See also Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1351 (1st Cir. 1992) (finding Turkey to be an adequate alternative forum despite plaintiff's claim that Turkish courts had a profound bias against Americans and foreign women); Torres v. Peru Copper Corp., 965 F.Supp. 899, 903 (S.D. Tex. 1996) (finding that Peruvian judicial system was not so corrupt as to render Peru an inadequate alternative forum), aff'd, 113 F.3d 540 (5th Cir. 1997); Banco Mercantil, S.A. v. Hernandez Arencibia, 927 F.Supp. 565, 567 (D.P.R. 1996) (rejecting claim that courts of Dominican Republic were so corrupt as to provide an inadequate alternative forum); Chesley v. Union Carbide Corp., 927 F.2d 60, 66 (2d Cir. 1991) ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity . . . ." (quotation omitted)).

Plaintiffs attempt to distinguish the cases that have routinely recognized Russia as an adequate alternative forum for the adjudication of claims against Russian defendants, arguing they involved foreign entities or general allegations of bias.  See Opp. at 46, 46, n.26.   Yet even where U.S. plaintiffs have alleged that their litigation may face possible corruption in Russia due to the position of the plaintiff and have provided specific allegations of prejudice, U.S. courts have still held Russia to be an adequate forum.   See Overseas Media, Inc., 441 F.Supp.2d at 617 (granting motion to dismiss and holding that Russian court was an adequate alternative despite plaintiffs' allegations that the "'ultimate control person of the plaintiffs,' . . . is *persona non grata* in the eyes of the Russian government [and t]his perhaps raises the specter that the litigation process in a Russian forum might suffer from corruption").   For example, in Base Metal Trading Ltd. v. Russian Aluminum, 98 F. App'x. 47 (2d Cir. 2004), the court affirmed the district court's dismissal on *forum non conveniens* grounds, stating that "plaintiffs' concerns about violence and false criminal charges in Russia 'do not rise to the level of gravity at which courts within this Circuit have spared parties . . . from returning to a threatening forum' . . . [and w]ith respect to corruption in the Russian judicial system, we note that it is not 'the business of our courts to assume responsibility for supervising the integrity of the judicial system of another sovereign nation.'"   Id. at 50 (citations omitted); see also Varnelo v. Eastwind Transport, Ltd., No. 02 Civ. 2084, 2003 WL 230741, at *2, *18 (S.D.N.Y. Feb. 3, 2003) ("It seems inconceivable . . . that a Russian court would refuse to exercise jurisdiction . . . given that defendants have conceded Russian jurisdiction.   At least one court in this District has found defendants' consent to Russian jurisdiction sufficient to render the Russian forum adequate." (citation omitted)); Tarasevich v. Eastwind Transp. Ltd., No. 02 Civ. 1806, 2003 WL 21692759, at *3 (S.D.N.Y. July 21, 2003) (holding Russia to be an adequate alternative forum

for personal injury claims); <u>Pavlov</u> v. <u>Bank of N.Y. Co.</u>, 135 F.Supp.2d 426, 435 (S.D.N.Y. 2001) (holding Russia to be adequate alternative forum for conversion claim), <u>vacated on other grounds</u>, 25 F. App'x 70 (2d Cir. 2002); <u>Rosinka Joint Venture</u> v. <u>Williams</u>, No. 93 0132624, 1993 WL 383301, at *3 (Conn. Super. Sept. 16, 1993) (rejecting plaintiffs' argument that Russia's judicial system was in total disarray).[18]

The two cases cited by plaintiffs have nothing to do with Russian courts and are easily distinguished on the ground that both cases found a foreign judiciary other than Russia to be inadequate.   <u>See</u> Opp. at 44-46; <u>see</u> <u>HSBC USA, Inc.</u> v. <u>Prosegur Paraguay, S.A.</u>, No. 03 Civ. 3336, 2004 WL 2210283 (S.D.N.Y. Sept. 30, 2004) (holding that Paraguay was not an adequate forum where plaintiffs' agents were subject to physical danger and other people connected to the crime that was the subject of the litigation were killed); <u>Eastman Kodak Co.</u> v. <u>Kavlin</u>, 978 F.Supp. 1078, 1078 (S.D. Fla. 1997) (holding that Bolivia was not an adequate forum where plaintiffs brought claims under the Alien Tort Claims Act after being detained in life-threatening conditions and imprisoned to extort a settlement with U.S. employer).   In these cases, the U.S. courts had a much higher interest in adjudicating claims of natural plaintiffs who were subject to physical danger in life-or-death circumstances.

Plaintiffs also attempt to rely on <u>Films by Jove, Inc.</u> v. <u>Berov</u>, 250 F.Supp.2d 156 (E.D.N.Y. 2003), to support their proposition that Russian courts are unduly influenced and that this influence would prejudice the outcome of plaintiffs' claims if brought in Russia.   <u>See</u> Opp.

---

[18] Cases in which U.S. courts have found Russia not to be an adequate forum are limited to those instances in which the claims brought by plaintiffs are not recognized in Russia or would be precluded in Russia.   <u>See</u> <u>Norex Petroleum Ltd.</u> v. <u>Access Indus. Inc.</u>, 416 F.3d 146 (2d Cir. 2005), <u>cert. denied</u>, __ U.S. __, 126 S.Ct. 2320 (2006) (Russia is not an adequate alternative forum when plaintiff's claims would be deemed precluded by a prior adverse default judgment); <u>Parex Bank</u> v. <u>Russian Sav. Bank</u>, 116 F.Supp.2d 415 (S.D.N.Y 2000) (Russian courts did not provide alternate forum for litigation of Latvian bank's claims where litigation of the contract at issue was prohibited and not recognized as legally enforceable).   This is not the case here given that plaintiffs have pleaded their claims under Russian law.

at 56-57.    Films by Jove, however, has nothing whatsoever to do with a motion to dismiss on the grounds of *forum non conveniens*.    Rather, that court made a very different ruling declining to reconsider its denial of defendants' motion for summary judgment in light of a subsequent decision by a Russian court on the same subject.    The court exercised its discretion not to give deference to the Russian court given specific evidence of improper influence over the specific arbitration proceedings at issue.    250 F.Supp.2d at 216-17, 205.    Indeed, the court specifically distinguished the situation of *forum non conveniens* and refused to make "a sweeping condemnation of Russia's judiciary," noting that three courts "have recently considered, and rejected, allegations of bias and inadequate procedures in the Russian arbitrazh courts, in the context of determining whether Russia constitutes an 'adequate forum' under *a forum non conveniens* analysis."    Id. at 208, 207 n.47.[19]

### B.    Plaintiffs' Forum Shopping Deserves Little Deference

In determining the amount of deference to give a plaintiff's choice of forum, "a court should consider factors including, *inter alia* the availability of witnesses or evidence in the forum, the defendant's amenability to suit in the forum, and whether the plaintiff chose the forum for forum-shopping reasons."    See Overseas Media, Inc., 441 F.Supp.2d at 615 (quoting ICC Indus., Inc. v. Israel Discount Bank, Ltd., No. 04 Civ. 6945, 2005 WL 1844616, at *5 (S.D.N.Y. July 29, 2005), aff'd, 170 Fed. App'x 766 (2d Cir. Mar. 16, 2006)).    Because plaintiffs selected this jurisdiction as a result of forum shopping—indeed plaintiffs admit as much in their opposition brief—the initial presumption in favor of plaintiffs' choice of forum is given far less deference.

---

[19]  Plaintiffs in Films by Jove submitted evidence in the form of minutes from a "consultation meeting" between government officials and a representative from the court indicating various efforts that would be taken by parties in response to the litigation to protect state interests and an office memo from the court representative to the high court judge showing evidence that executive officials improperly pressured the high court to intervene on behalf of defendants.    250 F.Supp.2d at 208-09.    This is not the case here. Plaintiffs have failed to show any improper governmental influence with regard to a case brought by them in Russia.

See Reiffin v. Microsoft Corp., 104 F.Supp.2d 48, 54 n.12 (D.D.C. 2000) ("'Circumstances in which a plaintiff's chosen forum will be accorded little deference include cases of . . . forum shopping.'"); see also Iragorri v. United Tech. Corp., 274 F.3d 65, 72 (2d Cir. 2001) ("[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum—the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.").

Even where a plaintiff selects its "home forum," as plaintiffs allege they have done on behalf of a single individual plaintiff who they allege lives in the District of Columbia, "a court considering a motion for dismissal on the grounds of *forum non conveniens* does not assign talismanic significance to the citizenship or residence of the parties, and there is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens.*" Opp. at 41, 64, 66; Overseas Media, Inc., 441 F.Supp.2d at 616 (quoting Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 73 (2d Cir. 2003)); see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir. 1996) (granting dismissal under *forum non conveniens* doctrine despite plaintiffs being a New York corporation and an American individual, noting that under appropriate circumstances an "American plaintiff may be required to litigate abroad"). Indeed, it is particularly disingenuous for plaintiffs to claim that the District of Columbia is a convenient forum because one of the plaintiffs is a

District of Columbia resident (*i.e.*, his "home forum") given that when plaintiffs chose to file their original complaint in the District of Columbia, *none* of the plaintiffs resided in the District. That plaintiffs *added* a District of Columbia resident in the amended complaint confirms the forum-shopping intention of plaintiffs.   Opp. at 64.   Plaintiffs filed this claim in the United States despite their admissions that: (1) all the defendants are Russian; and (2) all the alleged wrongful acts occurred in Russia.   See Schmid Labs. Inc. v. Hartford Accident & Indem. Co., 654 F.Supp. 734, 737 (D.D.C. 1986) ("[T]he common law doctrine of *forum non conveniens* [was] in part intended to prevent forum shopping . . . .   [I]t is [not] in the interest of justice to encourage, or even allow a plaintiff to select one district exclusively or primarily to obtain . . . specific precedents"); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 n.15 (1981) ("[D]ismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law").

While plaintiffs assert that 40 of the 43 plaintiffs are U.S. citizens, they make no mention that two of the plaintiffs, who account for approximately two-thirds of the total ADRs held by plaintiffs, are citizens of the Netherlands and the Cayman Islands.   See Am. Compl. ¶¶ 25-26 & Ex. A.   Furthermore, these foreign plaintiffs did not purchase their ADRs on the OTC market in the United States but rather on the London Stock Exchange.   Id.

### C.    The Public and Private Factors Weigh in Favor of Dismissal

As defendants established in their opening brief, the private and public factors weigh heavily in favor of adjudicating such claims in Russia.   See Rosneft Br. at 38-40.

### 1.    The Private Interests Favor a Russian Forum

All of the factors the Court must consider in balancing the private interests in the forum point to Russia as a more convenient forum, including:  (i) the ease of access to sources of proof, (ii) the availability of compulsory processes for attendance of unwilling witnesses, (iii) the cost

of obtaining attendance of willing witnesses, and (iv) other practical problems that interfere with an easy, expeditious, and inexpensive trial.    See Rosneft Br. at 38-40, Ministers' Br. at 24-26, Gazprom Br. at 30-31; see also BCCI Holdings (Lux.), S.A. v. Mahfouz, 828 F.Supp. 92, 96 (D.D.C. 1993); Pain, 637 F.2d at 786.    The wrongful conduct alleged admittedly all took place in Russia.    See Opp. at 65.

Plaintiffs' allegations that they are "holders of U.S. securities governed by a U.S. deposit agreement, whose revenue stream is payable in the United States" are irrelevant.    Id. Defendants named in this action are not parties to the U.S. deposit agreement, nor do they have any contractual obligation to pay any money to plaintiffs.

None of the events underlying plaintiffs' claims took place in the United States.    Thus, all of the witnesses who would need to testify and be deposed concerning the underlying acts, including defendants, and all documentary evidence are in Russia.    See Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil, 212 F.Supp.2d 30, 39 (D.D.C. 2002) (dismissing on forum non conveniens grounds where witnesses and documents, including documents of the Brazilian government, were primarily located in Brazil).    Plaintiffs concede that many of the relevant documents will be in Russian.    See Opp. at 64.    "While plaintiffs are correct that this factor is not dispositive, it appropriately is considered in this analysis, as it would affect the ease and financial costs of trial."    Acosta, 2006 WL 229196, at *8.

Plaintiffs do not address the fact that Russian witnesses would not be subject to the subpoena power of the American courts, and this factor strongly favors adjudication of plaintiffs' claims in Russia.    See generally Mahfouz, 828 F.Supp. at 97; In re Disaster at Riyadh Airport, 540 F.Supp. 1141, 1148 (D.D.C. 1982); Rosneft Br. at 39-40.

Plaintiffs' assertion that they "anticipate only a few non-party witnesses that they would want to subpoena . . . who now reside in the United States" is disingenuous.   Opp. at 63.   And even if plaintiffs' assertion is true, these individuals, who both formerly lived in Russia and worked for a Russian company, can travel to Russia to testify.   More importantly, because the majority, if not all, of the key witnesses are located in Russia, it would be inconvenient for them to travel and attend trial in the United States at great expense.   See Mahfouz, 828 F.Supp. at 98. Moreover, many witnesses would be unavailable for trial simply because they are beyond the subpoena power of the Court.   Furthermore, given the individual allegations against each defendant, plaintiffs would likely seek to call all defendants to testify, while all plaintiffs would not necessarily be required to attend the trial.

### 2.    The Interest of the Public in Retaining This Action in the District of Columbia Is Minimal

While plaintiffs make little mention of the fact they have pleaded Russian law claims, thus diminishing any interest the United States courts may have in adjudicating their claims, courts have held that where foreign law applies, this factor supports dismissal on *forum non conveniens* grounds.   See Opp. at 66; see, e.g., Mahfouz, 828 F.Supp. at 98; Croesus EMTR Master Fund L.P., 212 F.Supp.2d at 41.

Because plaintiffs' claims have little or no connection to the United States any interest the United States might have in conducting a trial is vastly outweighed by the great burdens of litigating this case outside of Russia.

### V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR SECURITIES FRAUD

The federal securities claims against Rosneft, Bogdanchikov, and Borisenko are defective in the most basic and fundamental respects.   These claims were obviously contrived for the purpose of asserting federal claims so that plaintiffs could argue that it can obtain jurisdiction

over foreign defendants based upon their contacts with the entire United States.    These sham securities claims against Rosneft, Bogdanchikov, and Borisenko run afoul of any good faith pleading requirements imposed by the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA").

### A.    Rosneft, Bogdanchikov, and Borisenko Owed No Duty to Plaintiffs

In their opening memorandum, Rosneft, Borisenko, and Bogdanchikov established that plaintiffs did not allege any relationship creating a duty between them and the plaintiff ADR holders.    See Rosneft Br. at 52.    Indeed, individuals cannot sue "when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase."    Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp., 369 F.3d 27, 34 (2d Cir. 2004), cert. denied, 543 U.S. 1050 (2005).    In response, plaintiffs apparently concede that the defendants owe no "general duty of disclosure" to Yukos ADR holders (and do not argue that there is any such general duty), but contend that once defendants did speak, "they had a duty to ensure that their statements were 'complete and accurate.'"    Opp. Br. at 96-97.    This argument is fundamentally flawed for numerous reasons. First, the issue is not whether a person who speaks has a duty to speak accurately, but *to whom* that duty runs.    Thus, when a U.S. company speaks, it does have a duty to its shareholders under U.S. law to speak accurately.    But every company in the world does not have a duty to the shareholders of every other company in the world that might trade the stock of that company based on their statements—and plaintiffs cite no case that recognizes any such duty.    For that reason, plaintiffs' reliance upon Roeder v. Alpha Indus., Inc. is misplaced.    814 F.2d 22, 27 (1st Cir. 1987); see Opp. at 96.    In Roeder, the court held that once Roeder spoke it had a duty to its own shareholders.    814 F.2d at 27.    That, of course, is not the issue here.

Additionally, plaintiffs' duty theory—although flawed—is completely inapplicable to Bogdanchikov and Borisenko given that neither is alleged to have made any statement. Plaintiffs offer no other theory why Bogdanchikov and Borisenko have a duty to Yukos ADR holders with whom they have no relationship.   Id.[20]

**B.    Plaintiffs Fail to Allege Any False Statement by Rosneft, Bogdanchikov, or Borisenko**

**1.    Rosneft's Alleged Statements Are Insufficient to State a Federal Securities Fraud Claim**

The amended complaint alleges Rosneft made two statements—neither is based on a public filing or other official corporate statement by Rosneft, but instead these alleged statements were purportedly set forth in two obscure energy publications.   See Am. Compl. ¶ 263.   First, plaintiffs allege that on July 22, 2004, *Platt's* reported that "Rosneft's press spokesman Alexander Stepanenko said that Rosneft was 'not planning any asset acquisitions in the near future.   None.'"   Am. Compl. ¶ 263.   The second alleged statement set forth in the weekly energy publication *Nefte Compass* was that Rosneft "announced it is not interested in bidding for [YNG]."   Id. (alteration in original).   The amended complaint alleges no facts (and certainly none with any specificity as required by both Rule 9(b) of the Federal Rules of Civil Procedure or the heightened pleading standards of the PSLRA) that establish that these statements were false at the time that they were made (or that Rosneft had any control over the statements that were published in these trade publications).

Other than repeating these statements, plaintiffs' opposition brief does not state with any particularity that these statements were false when made.   There are no facts alleged that at the time of these statements Rosneft was in fact "planning" any asset acquisitions or was at that time

---

[20] In the interest of judicial economy, Rosneft, Rosneftegaz, Bogdanchikov, and Borisenko adopt and incorporate by reference section II of Gazprom's reply brief discussing plaintiffs' securities law claims.

interested in bidding for YNG.  The fact that Rosneft ultimately acquired YNG through its purchase of BFG does not establish that the statements of intention were false when made. Indeed, plaintiffs' allegations amount to nothing more than "fraud by hindsight," which has been repeatedly rejected by the courts.  See Faulkner v. Verizon Communications, Inc., 156 F.Supp.2d 384, 396 (S.D.N.Y. 2001) (rejecting plaintiffs' argument that an inference of scienter must arise because of the temporal proximity between defendants' statement and subsequent action because "[t]o rule otherwise would be to conclude that the scienter element is satisfied whenever a change of mind closely follows a statement of intent" and "a plaintiff cannot establish a claim under § 10(b) or Rule 10b-5 through 'fraud by hindsight'"); Bowers v. Allied Inv. Corp., 822 F.Supp. 835, 838 (D. Me. 1993) (explaining that fraud by hindsight is an "attempt[] to infer from later events a prior knowledge concerning the likelihood of such events").

### 2.    The Amended Complaint Alleges No False Statement by Bogdanchikov or Borisenko

Plaintiffs concede that they have not alleged that Bogdanchikov or Borisenko made any statement whatsoever.  See Opp. Br. at 97-98. Instead, plaintiffs rely on a theory that Bogdanchikov and Borisenko committed some "manipulative and deceptive act" under § 10(b) of the Exchange Act by "creating BFG and effecting the auction of YNG."  Opp. Br. at 97-98. This unsupported theory of liability is wholly without merit.  There is not a single allegation of particularized fact establishing the basic elements of a securities claim based on this theory. First, there are no allegations that either Borisenko or Bogdanchikov created BFG or effected the auction of YNG and that if they did that it would constitute a manipulative act under the securities laws.  Second, there is not a single particularized allegation that could conceivably make the creation of BFG and the auction of YNG acts "in connection with" the sale of Yukos

securities.    Third, as discussed more fully below, Borisenko and Bogdanchikov had no duty to

Yukos ADR holders so that even if they did create BFG and effect the auction of YNG these

plaintiffs have no claims against them under the securities laws.    Fourth, there are no

particularized facts establishing that these acts were done with any intention to defraud United

States ADR holders of Yukos into buying shares at inflated prices.    Lastly, these alleged acts all

occurred in Russia and do not involve statements or actions directed at the United States, so it

would be improper to apply the securities laws to these acts extraterritorially.    See, e.g., Rosneft

Br. at 56-58.[21]

Plaintiffs' securities allegations pale in comparison to those recently dismissed by the

U.S. District Court for the Southern District of New York in In re Yukos Oil Company Securities

Litigation, in which plaintiffs, shareholders of Yukos, brought a securities fraud action against

Yukos itself based on alleged mistatements made by Yukos and its executives regarding the

financial health of the company.    No. 04-5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006).

Yukos shareholders alleged, among other things, that Yukos knowingly concealed the risk that it

might be subject to huge tax liabilities as a result of its decision to employ an "illegal tax

scheme."    Id. at *4.    The complaint detailed that tax scheme as involving the creation of sham

companies to avoid Russian taxes.    Id.    The court dismissed the claims because, among other

reasons, Yukos publicly disclosed to its ADR holders "the risks attendant to Russian tax

legislation and enforcement."    Id. at *16.    These disclosures by Yukos cautioned that

"'Russian tax legislation is subject to varying interpretations and [periodic/constant] changes,

which may be retroactive' and that 'transactions may be challenged by the tax authorities and the

Company may be assessed additional taxes, penalties and interest . . . .'"    Id.    The court found

---

[21]  Plaintiffs also half-heartedly assert this same theory of liability against Rosneft, see Opp. Br. at 96, but
this theory is just as flawed against Rosneft as it is against Bogdanchikov and Borisenko.

these disclosures sufficient to put plaintiffs on notice of the very risks—indeed the exact same conduct—of which the ADR holders in this action complain.   Plaintiffs' allegations in this case are far more attenuated than those rejected by the <u>Yukos</u> court.   Unlike the Yukos defendants who had a direct relationship with and duty to plaintiff shareholders, defendants in this case have no relationship with and no duty to plaintiff Yukos ADR holders.   If the <u>Yukos</u> plaintiffs failed to state a claim for securities fraud, certainly plaintiffs in this case have not come close to doing so, and their claims for securities fraud should be dismissed.

## VI.    PLAINTIFFS' COMMON-LAW CLAIMS SHOULD BE DISMISSED

### A.    Plaintiffs Fail to State a Claim for Conversion

Plaintiffs' conversion claim should be dismissed because they cannot establish any of the necessary elements of their claim: an "'unlawful exercise of ownership, dominion, or control, over the personal property of another in denial or repudiation of that person's rights thereto.'" <u>See</u> <u>Shulman</u> v. <u>Voyou, L.L.C.</u>, 251 F.Supp.2d 166, 170 (D.D.C. 2003) (citation omitted). First, plaintiffs cannot show that any of the defendants exercised dominion or control over *their* personal property or that their rights were repudiated or denied.   Plaintiffs own ADRs, and nobody has taken their ADRs from them.   While plaintiffs argue that they have some unspecified, tangible property rights in Yukos in addition to their rights to possess ADRs, <u>see</u> Opp. at 83-84, these unidentified rights cannot form the basis of a conversion claim.   As ADR holders, plaintiffs have no rights in the property of Yukos, but only intangible contractual rights *vis-à-vis* their depository bank.   <u>See</u> <u>Pinker</u> v. <u>Roche Holdings Ltd.</u>, 292 F.3d 361, 367 (3d Cir. 2002); Federation Reply Part I.A.   Because plaintiffs admittedly either retain or have sold their ADRs, no personal property of plaintiffs was converted by defendants' alleged conduct.   Even if plaintiffs could base their conversion claim on the entirely speculative theory that their ADRs suffered a loss in value, "[m]oney can be the subject of a conversion claim only if the plaintiff

has the right to a specific identifiable fund of money." <u>Curaflex Health Servs. Inc.</u> v. <u>Bruni</u>, 877 F.Supp. 30, 32 (D.D.C. 1995).   Plaintiffs do not have any specific right to an *identifiable* fund of money in Yukos or its assets.   Because plaintiffs' ADRs were not taken by defendants and because plaintiffs do not have any other rights for an identifiable fund of money in the corporate entity, plaintiffs cannot establish that their rights in property were converted.

Plaintiffs argue that even if their ownership interests are intangible, the tort of conversion extends to intangible property rights that are merged or incorporated into a transferable document such as their ADRs.   <u>See</u> Opp. at 84 (citing <u>Equity Group, Ltd.</u> v. <u>Painewebber Inc.</u>, 839 F.Supp. 930 (D.D.C. 1993), <u>aff'd</u>, 48 F.3d 1285 (1995)).   But even if plaintiffs' intangible rights merged into their ADRs, plaintiffs have pointed to no specific interference by defendants in any intangible rights belonging to them.   <u>See</u> RESTATEMENT (SECOND) OF TORTS § 242 cmt. e (1965 & 2006 Supp.) (stating that while there may be conversion of an intangible right customarily identified with and merged in a document, there must be "interference with the intangible rights themselves").   As explained above, Part III <u>supra</u>, plaintiffs allege that defendants "converted" the assets of Yukos, not the ADRs or any other interests of plaintiffs.[22]

### B.    Plaintiffs Fail to State a Claim for Restitution Based on Unjust Enrichment

Plaintiffs ask this Court to ignore the well-established elements of an unjust enrichment claim and order restitution against Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko, as well

---

[22] <u>Smith v. Wash. Sheraton Corp</u>, 135 F.3d 779, 786 (D.C. Cir. 1998); <u>Labovitz</u> v. <u>Wash. Times Corp.</u>, 127 F.3d 897 (D.C. Cir. 1999); <u>In re U.S. Office Prods. Sec. Litig.</u>, 326 F.Supp. 68 (D.D.C. 2004); and <u>Cowin</u>, 741 F.2d at 414, all stand for the proposition that shareholders do not have standing to sue for loss that occurred primarily to the corporation.   Plaintiffs cannot distinguish these cases on the ground that these cases did not discuss conversion claims.   Opp. at 83 n.41.   As explained previously, at Part III, the pertinent inquiry in a standing analysis is not the type of claim alleged but rather who suffered the wrong, and where the recovery should go.   Plaintiffs' attempt to distinguish <u>Hutchings</u>, 896 F.Supp. at 947, on the ground that this case discussed standing to bring a conversion claim under Missouri law is similarly unavailing as plaintiffs do not—because they cannot—plead that this Circuit's standing principles are any different.

as other defendants, even though plaintiffs have absolutely no relationship, whether based in contract or equity, with defendants.

An unjust enrichment claim "occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." New World Commc'n, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005); see also Oceanic Exp. Co. v. ConocoPhillips, Inc., No. 04-332, 2006 WL 2711527, at *20 (D.D.C. Sept. 21, 2006) (dismissing plaintiffs' unjust enrichment claim because they failed to allege that they had conferred a direct benefit on defendants). Plaintiffs simply did not confer a benefit on Rosneftegaz, Rosneft, Bogdanchikov, Borisenko, or any other defendant. See ABB Daimler-Benz Transp. (N. Am.), Inc. v. Nat'l R.R. Passenger Corp., 14 F.Supp.2d 75, 92 (D.D.C. 1998) ("A plaintiff is not entitled to employ the legal fiction of quasi-contract to 'substitute one promisor or debtor for another.' Furthermore, 'there must be an objective expectation by defendant to pay plaintiff.'" (citations omitted)).

Plaintiffs misread the only case on which they rely. See Opp. at 88-89. In re Lorazepam & Chorozepate Antitrust Litigation, 295 F.Supp.2d 30, 51 (D.D.C. 2003), supports dismissal of plaintiffs' unjust enrichment claims. In that case, plaintiff insurance companies brought suit seeking to recover for overpayments for certain drugs, alleging that the drug companies conspired to increase the prices. The court held the insurers were directly injured because their money was being paid to the drug companies either directly or by reimbursing money to policy holders who paid for the drugs. Id. at 51. Thus, the insurance companies were directly harmed and could maintain an action for unjust enrichment. By contrast, plaintiffs' ADRs represent merely an interest in Yukos. It was the property of Yukos that was allegedly taken. For In re Lorazepam to be analogous to this case, the unjust enrichment claims

against the defendant drug companies would have had to be brought by the *shareholders* of the plaintiff insurance companies, not the actual insurance companies that were out of pocket millions of dollars.

Because plaintiffs cannot satisfy the elements of their restitution claim, it must be dismissed.

### C.    Plaintiffs Fail to State Claims for Conspiracy to Commit Fraud and Conspiracy to Commit Conversion

Plaintiffs do not dispute that in the absence of an underlying tort, there can be no conspiracy.   See Opp. at 86. Because no underlying torts for conversion or fraud occurred—plaintiffs' conspiracy allegations should be dismissed.   Further, plaintiffs fail to satisfy the elements of a conspiracy claim.   In order to show conspiracy, a plaintiff must plead *facts* establishing: "(1) an agreement to take part in an unlawful action or a lawful action in an unlawful manner; and (2) an overt tortious act in furtherance of the agreement that causes injury."   Ellipso, Inc. v. Mann, No. 05-1186, 2006 WL 1126814, at *3 (D.D.C. April 27, 2006) (quoting Hall v. Clinton, 285 F.3d 74, 82-83 (D.C. Cir. 2002)).   Conclusory allegations of an agreement are insufficient to plead conspiracy.   McCreary v. Heath, No. 04-0623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (dismissing conspiracy claim where plaintiffs failed to specify how the defendants "acted in concert").

As defendants established in their opening briefs, see Rosneft Br. at 71; Gazprom Br. at 66, plaintiffs do not—because they cannot—show that the defendants acted with an explicit or a tacit agreement.   Indeed, plaintiffs' allegation that Gazprom, Gazpromneft, Rosneft, and the Russian Federation colluded to "conduct . . . the auction of YNG" (Opp. at 87) lacks any specific factual allegation other than conclusory allegations.   Cooper v. O'Connor, 99 F.2d 135, 142 (D.C. Cir. 1938) ("Accusing [the defendants] jointly, or by way of a count in conspiracy, gives

[plaintiff's] case no more virtue than if he had proceeded against each [defendant] singly."); see also Meyer v. Reno, 911 F.Supp. 11, 15 (D.D.C. 1996) (dismissing plaintiff's claims for failure to assert factual basis to support conspiracy).

Plaintiffs contend that "individuals serving simultaneously as officials of the Russian Federation and executives of one or more of Defendant enterprises" acted in concert in a "conspiratorial scheme."   Opp. at 87.   But this allegation fails to state the *facts* that support the finding of an agreement among those individuals to engage in an illegal conduct.   Graves v. United States, 961 F.Supp. 314, 320 (D.D.C. 1997) (stating that a conspiracy requires pleading of *specific* facts that show a "meeting of the minds" among conspirators).   As explained in Rosneft's opening memorandum, Rosneft Br. at 71, plaintiffs' boilerplate allegations fail to allege how and when individuals in Rosneftegaz, Rosneft, and the other defendants purportedly came to know of the alleged conversion or fraud described in the amended complaint, let alone approved or acquiesced in any alleged wrongful conduct.

Plaintiffs' motive allegations are similarly insufficient to state a conspiracy claim (even under general notice pleading standards).   See Opp. at 87.   Indeed, "conduct as consistent with permissible [action] as with illegal conspiracy does not, standing alone, support an inference of . . . conspiracy."   AD/SAT, Div. of Skylight, Inc. v. Assoc. Press, 181 F.3d 216, 233 (2d Cir. 1999) (citation omitted).   That is, "if [the defendants'] conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy."   Id. Otherwise, bare motive allegations would be sufficient to plead conspiracy.   While plaintiffs allege that defendants' actions were motivated, *inter alia*, by a desire to eliminate Yukos as a competitor, defendants' conduct was not less consistent with an equally plausible explanation of a Russian government validly levying taxes on a delinquent corporation, and enforcing those

taxes by auctioning the corporate property to satisfy the tax debts.    The fact that Rosneft, a large

Russian energy company, ended up with certain assets of Yukos (after paying nearly $10 billion)

makes perfect sense as the act of a company in the same industry acting in its own best interest.

Plaintiffs' conspiracy allegations accordingly must be dismissed.

## VII. PLAINTIFFS' CLAIM OF EXPROPRIATION IN VIOLATION OF INTERNATIONAL LAW MUST BE DISMISSED.

While plaintiffs spend over four pages arguing why, under an inapplicable statute a party

might be able to bring a private cause of action for violations of international law, they fail to

explain how they state a claim for expropriation in violation of international law when (1) they

own no property that was allegedly expropriated, and (2) even if they could state a claim for the

expropriation of an asset of Yukos that they do not own, it is well established that a country does

not violate international law by expropriating the property of its own nationals.    See Opp. at 89-

93; Rosneft Br. at 21, 46-47; Ministers' Br. at 56.    In response to the irrefutable case law

establishing that expropriation is not a universally condemned practice that violates international

law, see Rosneft Br. at 46-47 (citing cases), plaintiffs merely respond, without citation to

authority, that "the world has changed" because of the Supreme Court's application of the Alien

Tort Statute in Sosa v. Alvarez-Machain, 542 U.S. 692, 732 (2004).    Opp. at 93 n.50, 69-70.

But since Sosa was decided courts have enforced the long-standing limits on the authority of

plaintiffs to bring private rights of action founded on international law.    See, e.g., Stutts v. De

Dietrich Group, No. 03-4058, 2006 WL 1867060, at *8 (E.D.N.Y. June 30, 2006); Hayden v.

Pataki, No. 00 Civ. 8586, 2004 WL 1335921, at *7 (S.D.N.Y. June 14, 2004), aff'd, 449 F.3d

305 (2d Cir. 2006).    Those limits, therefore, remain in place today.

Moreover, Sosa arose in the context of the Alien Tort Statute, a federal statute that grants

jurisdiction to federal courts over "any civil action by an alien for a tort only, committed in

violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350; see also

Pugh v. Socialist People's Libyan Arab Jamahiriya, No. 02-02026, 2006 WL 2384915, at *13

(D.D.C. May 11, 2006). However, courts recognize that where plaintiffs' domestic federal and

state-law claims address the same area as the alleged international law claim, there is no need to

resort to the vagaries of customary international law. See Pugh, 2006 WL 2384915, at *14

(citing 19 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 4514, at 480-

81 (2d ed. 1996)). Because plaintiffs' claim for expropriation in violation of international law

duplicates the relief sought in their other claims, the Court need not address it.

Even assuming plaintiffs could bring a federal common-law claim based on customary

international law, plaintiffs have not stated such a claim for at least three reasons.

First, levying against Yukos's assets to pay outstanding tax debts is an offset of assets

against liabilities, not an uncompensated "taking" of property in violation of international law.

See Federation Reply Part I.B.1; Federation Br. at 10-11.

Second, plaintiffs' allegations, at best, support the conclusion that the Russian Federation

has, through tax assessment and collection efforts in Russia, seized and sold an asset of Yukos

Oil Company in Russia. Not only is it not a violation of international law for a sovereign to

expropriate property from its own nationals, but plaintiffs have not alleged facts supporting the

conclusion that the Russian Federation (or any other defendant) has taken Yukos Oil Company

as a whole. See Rosneft Br. at 21, 46-47.

Third, plaintiffs fail to even address the fact that the law of nations does not reach private,

non-state conduct. See Sanchez-Espinoza v. Reagan, 770 F.2d 202, 206-07 (D.C. Cir. 1985);

Ibrahim v. Titan Corp., 391 F.Supp.2d 10, 14 (D.D.C. 2005). Within the last six months, a

District of Columbia federal district court confirmed that whatever impact Sosa may have had on

private rights of actions under international law against sovereigns, it has had no impact on the D.C. Circuit law limiting the law of nations to claims against state actors. See Saleh, 436 F.Supp.2d at 57-58; see also RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 712 (1987 & 2006 Supp.) (describing expropriation of property as a state-sponsored offense of the law of nations). Thus, plaintiffs' expropriation claim could conceivably run only against sovereign defendants.

Because plaintiffs have failed to properly allege a claim for expropriation, it should be dismissed.

CONCLUSION

For the foregoing reasons, Rosneftegaz, Rosneft, Bogdanchikov, and Borisenko respectfully request that the Court promptly dismiss the complaint with prejudice.

Dated:    November 9, 2006                    Respectfully submitted,


                                             /s/ _____
                                             Adam P. Strochak, Esq.
                                             D.C. Bar No. 439308
                                             WEIL, GOTSHAL & MANGES LLP
                                             1300 Eye Street, N.W., Suite 900
                                             Washington, D.C. 20005
                                             Telephone: (202) 682-7000
                                             Facsimile: (202) 857-0940

                                             Richard W. Slack
                                             (*pro hac vice*)
                                             Gregory S. Coleman
                                             (*pro hac vice*)
                                             Meredith B. Parenti
                                             Deborah A. Maher
                                             WEIL, GOTSHAL & MANGES LLP
                                             767 Fifth Avenue
                                             New York, NY 10153
                                             Telephone: (212) 310-8000
                                             Facsimile: (212) 310-8007

                                             **ATTORNEYS FOR OAO ROSNEFTEGAZ,
                                             OAO ROSNEFT, SERGEY BOGDANCHIKOV,
                                             AND NIKOLAI BORISENKO**

**CERTIFICATE OF SERVICE**

I certify that on November 9, 2006, this reply was filed electronically with the clerk of the court, and that, in the same manner, an electronic copy was served on all counsel of record.

/s/_____
Adam P. Strochak